IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) SFF-TIR, LLC;<br>(2) STUART FAMILY FOUNDATION, INC.;<br>(3) ALAN STUART 2012 GST FAMILY TRUST;<br>(4) STUART 2005 GST FAMILY TRUST;<br>(5) CELEBRATION, LLC;<br>(6) ANURAG AGARWAL;<br>(7) PETER BUCKLEY;<br>(8) VINCENT SIGNORELLO; and<br>(9) RODNEY M. REYNOLDS,<br><br>             Plaintiffs,<br><br>      -against-<br><br>(1) CHARLES C. STEPHENSON, JR.;<br>(2) CYNTHIA A. FIELD;<br>(3) PETER BOYLAN III;<br>(4) LAWRENCE FIELD;<br>(5) CYPRESS ENERGY PARTNERS-TIR, LLC;<br>(6) CEP CAPITAL PARTNERS, LLC;<br>(7) CYPRESS ENERGY HOLDINGS, LLC; and<br>(8) TULSA INSPECTION RESOURCES, LLC,<br><br>             Defendants. | Case No. 14-CV-369-TCK-TLW<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, by their undersigned counsel, as and for their Complaint, allege as follows:

**NATURE OF THE ACTION**

1.     Plaintiffs are former minority shareholders of Tulsa Inspection Resources, Inc. ("TIR" or the "Company").

2.     Plaintiffs bring this action to challenge Defendants' self-dealing conduct in orchestrating a cash-out merger (the "Merger") of the Company into Tulsa Inspection Resources, LLC ("TIR LLC"), an entity wholly owned and controlled by Defendants.

1

3.      Defendants conducted the Merger in a grossly unfair and deceptive manner, as a result of which they paid a grossly inadequate price for Plaintiffs' stock.

4.      At the time of the Merger, TIR was – and its successor, from which Plaintiffs were forcibly excluded, continues to be – a leading oil and natural gas pipeline inspection company.  It had been generating stable, steadily increasing profits.  Further, TIR was poised for significant further growth due to the tremendous demand for its unique services and expertise created by increasingly stringent industry regulation.

5.      Defendants acquired Plaintiffs' stock at a price far below the fair value of TIR's shares through the Merger.

6.      Indeed, it was Alan Stuart – a principal of the Plaintiffs who comprise the "Stuart Group," as further described below – who first called Defendants' attention to the Company's value.

7.      In early 2013, the Stuart Group developed a model showing that, properly managed, the Company's shares would be worth well in excess of one million dollars per share.  The Stuart Group proposed to work collaboratively with Defendants to realize that goal for the benefit of all shareholders.

8.      After being shown the Company's true value, Defendants did not wish to share that value with the Company's other shareholders.  Instead, Defendants embarked upon a scheme of self-dealing.

9.      As the first step in this scheme, Defendants rebuffed the Stuart Group's overtures to realize the Company's long-term value jointly and cooperatively.

10.    Defendants instead acquired a block of shares from certain other shareholders who sought liquidity and who, unlike Plaintiffs, were willing to sell at a minority discount that did not take into account the Company's future prospects.

11.    Defendants represented to these shareholders that Defendants were paying a fair price for these shares.  In fact, Defendants were secretly planning, after acquisition of these shares, to undertake an initial public offering of a master limited partnership in an entity comprised in part of TIR's asserts.  Defendants planned to exchange their own TIR shares and the additional shares acquired from these shareholders for far more valuable equity in that master limited partnership.  Defendants failed to disclose that material information when they acquired the shares.

12.    By acquiring these additional shares, Defendants gained a stranglehold on the Company.

13.    Defendants used that increased control to oust Alan Stuart and Plaintiff Rodney Reynolds from the Company's Board of Directors, leaving the remaining minority shareholders with no Board representation, no access to financial information, and no ability to influence the Company's decisions.  Next, Defendants acquired the few other outstanding TIR shares, as well as stock warrants that would have given certain lenders the right to exchange their warrants for additional TIR shares.

14.    Defendants then turned their attention to squeezing out Plaintiffs.

15.    Defendants first sought to acquire Plaintiffs' shares in a fraudulent October 31, 2013 tender offer (the "Tender Offer").  In the Tender Offer, Defendants failed to disclose to Plaintiffs the fact that on September 20, 2013, Defendants already had filed, under seal, a draft

registration statement for an initial public offering ("IPO") of a master limited partnership ("MLP") that would control the Company.

16.    When Defendants' filing became public, Defendants further sought to pressure Plaintiffs by stating, in an amended filing on November 19, 2013, that they would penalize those remaining shareholders who did not tender their shares by charging them with a substantial, arbitrary, and unauthorized interest expense.  Defendants proposed to impose this expense on minority shareholders who did not tender their shares even though Defendants did not, and had no intention to, tender their own shares.

17.    When Plaintiffs did not tender their shares, Defendants used their control over TIR to vote Plaintiffs' minority stake in the Company out of existence by unilaterally entering the Merger.

18.    The Merger canceled Plaintiffs' shares in TIR and gave Plaintiffs the right to a cash payment of $451,000 per share.  In contrast, the Merger enabled Defendants to exchange their own TIR shares for equity in a new entity, Defendant TIR LLC.  The equity consideration received by Defendants was considerably greater than the cash merger that Plaintiffs received.

19.     In addition, the Merger offered Plaintiffs the alternative to seek appraisal rights, but only on the basis of materially incomplete information and materially false statements.

20.    The Merger was unfair both procedurally and substantively.  It was unfair procedurally because, as the December 11, 2013 Merger notice admits, Defendants stood on both sides of the Merger.  On one hand, Defendants were the controlling shareholders of TIR and dominated TIR's Board of Directors.  At the same time, Defendants owned and controlled TIR LLC, the entity into which TIR was merged.  Thus, Defendants had direct and substantial conflicts of interest with respect to the Merger.

21.     Despite their admission that they stood on both sides of the Merger, the Defendants did not take any measures to ensure that Plaintiffs' interests as minority shareholders were protected.  For example, Defendants did not:

      a.      form a special committee to consider the proposed merger;

      b.      perform or commission any appraisal;

      c.      engage any independent financial advisor or other third party to perform any valuation analysis;

      d.      disclose the value of the equity consideration paid to TIR's majority shareholders, or provide any means to compare the value of that equity consideration to the cash consideration paid to TIR's minority shareholders;

      e.      require a majority-of-the-minority vote for the Merger to be approved; or

      f.      employ any other legitimate procedure to ensure that the Merger process was fair.

22.     Defendants also knowingly made material omissions and misrepresentations of fact in connection with the Merger.  Defendants stated that the Merger terms provided not simply fair value, but a premium over fair value, to the minority shareholders.  In fact, Defendants knew the opposite to be true, both because Plaintiffs themselves had shared with Defendants financial projections showing that the shares were worth several multiples of that price, and because Defendants' own financial presentations, including but not limited to an April 8, 2013 term sheet previously presented to the Company's shareholders, so stated.

23.    Defendants themselves, rather than accepting such inadequate consideration, used the Merger to obtain 100% ownership of the Company precisely because they knew the shares were worth considerably more than the price paid to Plaintiffs.  Defendants knew this not only because of the Company's value as a stand-alone entity, but also because of the pending IPO from which they had forcibly excluded Plaintiffs.

24.    For all of these reasons, the Merger was a procedurally flawed action by Defendants to prevent Plaintiffs from realizing the full value of their shares and excluded Plaintiffs from sharing in the anticipated growth of the Company.

## JURISDICTION AND VENUE

25.    This Court has original jurisdiction over this matter pursuant to Section 27 of the Securities Exchange Act of 1934, as amended ("Exchange Act"), 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as this is a civil action arising out of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b).

26.    This Court has supplemental jurisdiction over this matter under 28 U.S.C. § 1367(a), in that the claims asserted under state law are so related to the Exchange Act claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

27.    Alternatively, this Court also has jurisdiction over the subject matter under 28 U.S.C. § 1332 in that it is a claim or controversy between citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

28.    Venue is proper in this District and in this Division because the Defendants reside in this District and Division, and the claims arose in this District and Division.

## PARTIES

### The Plaintiffs

29.     Plaintiffs SFF-TIR, LLC,  Stuart Family Foundation, Inc., Alan Stuart 2012 GST Family Trust, Stuart 2005 GST Family Trust, and Celebration LLC (collectively, the "Stuart Group") are affiliated entities.  The Stuart Group's principal, Alan Stuart, is a seasoned, successful, long-term investor with more than 40 years' experience in business development, investment management, and corporate governance.  The Stuart Group made its initial investment in TIR in 2009.  Alan Stuart served as a director of TIR until Defendants used their control to oust him on June 26, 2013.  Immediately before the Merger, the Stuart Group's members collectively held 20.892 shares of TIR stock.

30.     Plaintiff SFF-TIR, LLC is a Delaware limited liability company.  It is owned by Stuart Family Fund, LLC, a limited liability company whose members are citizens of Connecticut, New York, Florida, Massachusetts, Rhode Island, Ohio and England.

31.     Plaintiff Stuart Family Foundation, Inc. is a Connecticut corporation having its principal place of business in Connecticut.

32.      Plaintiff Alan Stuart 2012 GST Family Trust is a Connecticut trust.  Its trustee is a citizen of Connecticut.

33.     Plaintiff Stuart 2005 GST Family Trust is a Connecticut trust.   Its trustee is a citizen of Connecticut.

34.     Plaintiff Celebration, LLC is a Delaware limited liability company.  It is owned by Celebration II, L.P., a limited partnership.  The general partner of Celebration II, L.P. is a trust whose trustees are citizens of Connecticut.  The limited partners of Celebration II, L.P. are citizens of California and Massachusetts.

7

35.    Plaintiff Anurag Agarwal ("Agarwal") is a citizen of New York.  Immediately before the Merger, Agarwal owned 7.82 shares of TIR common stock.

36.    Plaintiff Rodney M. Reynolds ("Reynolds") is a citizen of Canada.  Immediately before the Merger, Reynolds owned 2.67 shares of TIR common stock.

37.    Plaintiff Peter Buckley ("Buckley") is a citizen of Connecticut.  Immediately before the Merger, Buckley owned one share of TIR common stock.

38.    Plaintiff Vincent Signorello ("Signorello") is a citizen of Florida.  Immediately before the Merger, Signorello owned 0.5 shares of TIR common stock.

<u>The Defendants</u>

39.    Defendants are affiliated individuals and corporate entities.  The four individual Defendants – Charles Stephenson ("Stephenson"), his daughter Cynthia Field, her husband (and Stephenson's son-in-law) Lawrence Field, and Peter Boylan III ("Boylan") – directly or indirectly own, control and manage the corporate Defendants.

40.    Upon information and belief, Defendants Stephenson, Cynthia Field, Lawrence Field, and Boylan are citizens of Oklahoma.

41.    At all times relevant to this action, Stephenson and/or Cynthia Field owned and controlled, and Lawrence Field managed, Regent Capital Partners, LLC ("Regent").

42.    Throughout the relevant period, Lawrence Field was a director and chairman of the Board of Directors of TIR.  From June 26, 2013 until the Merger, Boylan was also a director of TIR.  At the time of the Merger, Lawrence Field and Boylan (the "Director Defendants") comprised two-thirds of the Company's Board of Directors.

43.     Stephenson, Cynthia Field and Boylan dominated TIR prior to the Merger by virtue of their direct ownership of shares of TIR and/or ownership of Regent and other entities that directly or indirectly owned TIR's shares.

44.     At the time of both the Tender Offer and the Merger, Defendants Stephenson, Cynthia Field and Cypress Energy Partners-TIR, LLC (the "TIR Controlling Shareholder Defendants") were the controlling shareholders of TIR.

45.     Defendant Cypress Energy Partners-TIR, LLC ("CEP-TIR") is a Delaware limited liability company having its principal place of business in Tulsa, Oklahoma.  Upon information and belief, its sole member is Cypress Energy Investments, LLC which, in turn, is wholly owned by Defendant Cypress Energy Holdings, LLC ("Cypress Energy Holdings").

46.     Defendant Cypress Energy Holdings is a Delaware limited liability company having its principal place of business in Tulsa, Oklahoma.  Upon information and belief, Defendant Cypress Energy Holdings is beneficially owned by Defendants Stephenson, CEP Capital Partners, LLC, and Cynthia Field, and trusts of which Cynthia Field is the trustee.

47.     Defendant CEP Capital Partners, LLC is a Delaware limited liability company having its principal place of business in Tulsa, Oklahoma.  Upon information and belief, CEP Capital Partners, LLC is owned and controlled by Stephenson, Cynthia Field, and/or affiliates of Boylan.  Upon information and belief, its members (and any constituent limited liability companies, corporations or partnerships) are all citizens of Oklahoma.

48.     Defendant TIR LLC is a Delaware limited liability company having its principal place of business in Tulsa, Oklahoma.  Upon information and belief, its members are Defendants Stephenson, Cynthia Field, CEP-TIR and Cypress Energy Partners, LLC, a wholly-owned subsidiary of Cypress Energy Partners, L.P.  Upon information and belief, all of the partners of

Cypress Energy Partners, L.P. are citizens of the United States, and none of its partners is a

citizen of the same state as any Plaintiff.

## RELEVANT FACTS

Background

49.      TIR was founded in 2003.  Before the Merger, TIR was a leading independent

provider of turn-key inspection and integrity services for the oil and gas industry in the United

States.  TIR's inspectors performed a variety of inspection and integrity services on midstream

pipelines, gathering systems and distribution systems, including data collection and supervision

of third party construction, inspection, maintenance and repair projects.  In August 2012, the

Company incorporated a new subsidiary, Tulsa Inspection Resources-Nondestructive

Examination, Inc. ("TIR-NDE"), to provide nondestructive testing ("NDT") services to existing

and potential customers.  The Company acquired valuable patented NDT technology to deliver

those services.

50.      At the time of the Merger, TIR was enjoying stable, steadily increasing profits.

As Defendants well knew, TIR was also poised for substantial additional growth.  That demand

arose from, among other things, the growth of increasingly stringent industry regulation as well

as increased need for TIR's services from oil and gas companies.  Those companies were

producing more oil and gas, and consequently needed to call, more and more, on TIR to provide

inspections, maintenance and repair services.

51.      As Defendants themselves stated in a publicly-filed document on November 13,

2013, the U.S. Department of Transportation Pipeline and Hazardous Materials Safety

Administration ("PHMSA") regulates the interstate oil and natural gas pipeline inspection

industry.  Due to the impact of PHMSA regulations and oversight, potential fines for non-

compliance at both federal and state levels, and the costs associated with spill remediation, pipeline operators have been required to develop and implement comprehensive integrity management programs.

52.     This regulation accounted at least in part for the significant growth that TIR had experienced in the demand for its services as well as its prospects for significant future growth. As Defendants stated in the same publicly-filed document, the PHMSA had recently published:

- Proposed regulations to increase the maximum administrative civil penalties for violation of the pipeline safety laws and regulations to $200,000 per violation per day, with a maximum of $2,000,000 for a related series of violations.

- Proposed gas transmission pipeline regulatory changes to strengthen integrity management plan requirements, bring more pipeline mileage under integrity management, and strengthen and expand other requirements related to valve spacing, corrosion control, and underground gas storage caverns.

- Advisory guidance on verification of records related to pipeline maximum allowable operating pressure, which could result in additional pressure testing of pipelines.

- Advisory guidance stating that it will focus near-term enforcement efforts on recordkeeping and integrity management.

53.     As Defendants concluded in publicly-filed documents based on the foregoing factors, among others:

11

> We believe this climate of increasingly stringent regulation and the
> significant increase in penalties for violations of safety requirements
> embodied in the 2011 Pipeline Safety Act will cause pipeline operators to
> increase the number and types of pipeline inspections they conduct, and
> thereby increase demand for third-party inspection and integrity services.

54.    With vastly increasing sums to be spent annually on inspection, repair and maintenance services, it was clear that the need for larger, more sophisticated pipeline services companies such as TIR was significant and growing, and that the regulatory framework would be a major driver of stable and increasing demand for TIR's services for years to come.

55.    Moreover, as Defendants knew, increasing U.S. oil and natural gas production required commensurate investment in infrastructure to process and transport the oil and natural gas from producing regions to end markets.  In turn, that increase in oil and natural gas infrastructure investment would likely result in higher spending on TIR's inspection and integrity services.  It would also necessarily subject the incremental pipeline infrastructure to regulatory oversight and mandatory inspection programs.

56.    For example, a report submitted to the American Petroleum Institute in December 2013, the same month in which the Merger occurred, estimated that between 2014 and 2025, over $890 billion will be invested in U.S. oil and gas infrastructure, and that cumulative investment in U.S. crude oil pipelines alone will total nearly $38 billion.

The Stuart Group Develops a Plan to Increase the Shares' Value

57.    Starting in January 2013, the Stuart Group worked with Defendant Lawrence Field and TIR senior management to develop a detailed model to increase the value of TIR's shares.  That model, based upon then-available historical financial data, showed that the

Company's shares could be worth approximately $1.35 million each in 2017.  The Stuart Group expected to continue to work closely with Regent and management to develop the Company's growth prospects.

58.     On March 7, 2013, Defendant Lawrence Field requested the most recent model, stating that "I know Charlie [Stephenson] is anxious to see it."

59.     The Stuart Group took this as an expression of interest by Defendants Lawrence Field and Stephenson to work with the Stuart Group to maximize the long-term value of the Company's stock.

60.     In fact, the Defendants had other plans.

Defendants Hatch Their Scheme

61.     Upon information and belief, Field and Stephenson had no intention to share the Company's substantial value, which the Stuart Group had demonstrated, with any other shareholder.  Instead they schemed, together with Defendant Boylan, to appropriate this value entirely for themselves.

62.     Upon information and belief, Boylan himself had a history of regulatory trouble with the Securities Exchange Commission ("SEC").  The SEC had filed a Complaint against Boylan in an action captioned *SEC v. Boylan*, Civil Action No. CV 04-6569, in the Central District of California.  The Complaint accused Boylan of misleading investors in a prior company of which he was co-President and co-Chief Operating Officer, and manipulating earnings by structuring certain transactions so as to fraudulently overstate the company's reported "advertising" revenues.  Boylan agreed to pay $600,000 in disgorgement and civil penalties to settle the SEC charges.  *See* SEC Litigation Release No. 18826.

63.     On March 27, 2013, Lawrence Field and Boylan met with Alan Stuart in Connecticut.  Boylan was previously unknown to the Stuart Group and had no official role or history of involvement with TIR.  In fact, Defendant Boylan was CEO of the affiliate into which Defendants planned to merge TIR.

64.     At the time, Boylan was the President and Chief Executive Officer of Cypress Energy Partners, LLC ("Cypress"), a company providing environmental and "water solutions" services to the gas and oil industry.  According to the April 8, 2013 term sheet (discussed below), Cypress was itself owned and controlled by Regent, which in turn was owned and controlled by Defendants Stephenson, Lawrence Field and Cynthia Field.  Subsequently, it became apparent that Cypress not only was controlled by Regent but was the entity with which Defendants would merge TIR.

65.     Stuart, who had previously shared his model for increasing TIR's value, expected a cordial discussion with Field and Boylan on how to grow TIR together.

66.     Instead, Boylan, who himself held no position within TIR, told Stuart that the Company had no use for him, that the TIR Board wanted him to have no further involvement in the Company, and that Boylan expected never to see Stuart again.

67.     Soon thereafter, on April 8, 2013, Boylan sent Stuart a term sheet (the "Term Sheet") on behalf of Cypress.

68.     The Term Sheet claimed, falsely, that "[s]enior TIR management expressed a very strong desire … to have Regent serve as majority shareholder and to provide the necessary capital to grow the company."  The Term Sheet further claimed, falsely, that "Regent travelled to Connecticut to meet with the Stuart Group to discuss their thoughts and ideas," and that "[a]s a result of the meeting with Stuart," Regent prepared the proposal contained in the Term Sheet.

69.     The Term Sheet did not in fact reflect any "thoughts and ideas" provided by the Stuart Group, nor did the Term Sheet seek to "grow the Company."  Instead, the Term Sheet sought to extract the Company's cash flow to benefit an entirely separate affiliate of Regent, *i.e.*, Cypress, which Regent planned to take public as a "master limited partnership" ("MLP").

70.     Regent needed TIR's substantial cash flow to accomplish its goal of taking Cypress public because Cypress itself:

- was a cash-starved company, with no working capital of its own;

- was then operating at a loss; and

- was therefore ineligible as a stand-alone company to raise money through an initial public offering of an MLP.

71.     Upon information and belief, an MLP is a limited partnership that is publicly traded on a securities exchange, and that seeks to combine the tax benefits of a limited partnership with the liquidity of publicly traded securities.  Federal law limits MLPs to enterprises that engage in certain businesses, mostly pertaining to the use of mineral natural resources, including oil and natural gas, as well as certain passive-type income such as interest, dividends and real property rents.

72.     Upon information and belief, to qualify for MLP status, a partnership must generate at least 90 percent of its income from qualifying sources, which include activities related to the production, processing or transportation of oil and natural gas, and must make quarterly distributions to the limited partners.  Because of the stringent provisions on MLPs and quarterly distribution requirement, a pipeline business such as TIR, which earned very stable income from providing services relating to the transport of oil, gasoline or natural gas, would be ideally suited to support an MLP.

73.     The Term Sheet made plain that Regent planned to use the Company to service Cypress's wholly separate needs.  It stated that "Regent controls [Cypress]"; that Cypress has a "private letter ruling ('PLR') pending" with the Internal Revenue Service; and that Cypress "*is exploring the possibility of TIR's line of business becoming qualifying income for an MLP*" (emphasis added).

74.     The latter statement was particularly shocking because it admitted that Regent, acting without the knowledge or approval of TIR's shareholders or Board of Directors, sought government approval to use TIR's income to support an MLP for a wholly independent company, *i.e.*, Cypress, in which Regent had an interest, but TIR's shareholders did not.

75.     After receiving the Term Sheet, Alan Stuart spoke with Randall Lorett, the Company's then-President and CEO.  Lorett informed Stuart that Lawrence Field had told Lorett, falsely, that Alan Stuart was trying to fire Lorett.  Stuart assured Lorett this was not the case.

76.     In fact, senior TIR management viewed Regent's involvement unfavorably. Lorett suggested that Stuart should seek election as Chairman of TIR's Board in place of Field, because of Field's lack of leadership.

77.     On April 29, 2013, Alan Stuart, unaware that Lawrence Field, Stephenson and Boylan were in league with one another, wrote to Field.  Stuart noted that the Cypress Term Sheet was very one-sided in Cypress's favor.  He further urged that TIR instead continue to work to realize its future growth potential.  Stuart also discussed his conversation with Lorett and offered to serve as co-chairman to lighten the load of responsibility of the office.

The May 13, 2013 Board Meeting

78.     At a May 13, 2013 Board meeting, Lawrence Field delivered, without prior notice in the meeting agenda, a proposal from Regent and its affiliate, Cypress.

79.     Regent and Cypress proposed to form a new limited liability company ("Newco") that would purchase TIR's common stock from existing shareholders at a price of $422,650 per share.  Shareholders could choose between 100% payment in cash, a mix of cash and Newco equity, and payment to be made 100% in Newco equity.

80.     The proposal stated that Newco would be a "master limited partnership ('MLP') pass-through entity"; that Cypress was working on an MLP initial public offering; and that Cypress had obtained a private letter ruling from the IRS stating that pipeline inspection services – *i.e.*, the services provided by TIR, not Cypress – were eligible as MLP qualifying income.

81.     Regent and Cypress's proposal contained no financial disclosures concerning Cypress.  However, the proposal claimed that TIR shareholders who exchanged their shares for Newco shares would receive dividend distributions totaling approximately $1.2 million over the following five years.

<u>Defendants Augment Their Control of the Company and Begin Their Squeeze Play</u>

82.     On June 26, 2013, Defendants bought roughly 22% of the Company's voting stock (the "Pooled Shares") from certain shareholders who sought liquidity and were willing to accept a minority discount rather than realize the full long-term value of their shares.

83.      Defendants later described this transaction as the "Control Acquisition."  Other shareholders were at the mercy of the Regent-Cypress interests.

84.     At the time of the Control Acquisition, Defendants Stephenson and Cynthia Field, and their affiliate, Regent, owned a controlling block of TIR's shares.  Moreover, Lawrence Field, who managed Regent, was also Chairman of the Board of TIR.

85.     By virtue of the foregoing, Stephenson, Cynthia Field and Lawrence Field dominated TIR's affairs.

86.    Moreover, at the time of the Control Acquisition, Defendants Stephenson, Cynthia Field and Boylan owned and controlled, directly or through affiliates, Defendant CEP-TIR, in whose name Defendants acquired the Pooled Shares.

87.    Defendants therefore owed fiduciary duties to TIR's shareholders, including a duty to disclose all information material to their acquisition of the Pooled Shares.

88.    Upon information and belief, when they acquired the Pooled Shares, Defendants in fact had pending plans to use TIR's shares to support an IPO of a master limited partnership from which they intended to exclude all other TIR shareholders.  By virtue of their domination and control over TIR's affairs, Defendants alone had the ability to orchestrate an IPO.

89.    Acquiring the Pooled Shares was critical to Defendants' strategy.  Without that acquisition, Defendants would require the consent and participation of TIR's other common shareholders to conduct an IPO.

90.    Upon information and belief, when they acquired the Pooled Shares, Defendants had plans to exchange TIR's shares, in the course of the IPO, for master limited partnership units having far greater value.

91.    Upon information and belief, when they acquired the Pooled Shares, Defendants had received advice from outside financial consultants that, within the context of the planned IPO, valued TIR's shares at a price hundreds of thousands of dollars greater than the price paid to the Pooled Shareholders.

92.    Upon information and belief, Defendants falsely informed the Pooled Shareholders that Defendants were paying fair value for the Pooled Shares.

18

93.     Upon information and belief, Defendants failed to disclose, in breach of their fiduciary duties, their plans to exchange such shares, as well as their own TIR shares, for much more valuable equity in a master limited partnership in the course of a planned IPO.

94.     Upon acquiring the Pooled Shares, Defendants CEP-TIR, Stephenson, and Cynthia Field executed a written consent of shareholders to remove Alan Stuart, Rodney Reynolds and one other director from the TIR Board.  In their place, the controlling shareholders inserted Boylan, Cynthia Field, and Les Austin (another Cypress executive).

95.     Plaintiffs thus had no representation on the Board from that day forward.  They also had no access to Company financial information and no ability to influence the Company's decisions or actions.

96.     Defendants' use of the deceptive means to acquire the Pooled Shares, moreover, put them in a position where none of the remaining common shareholders could block their actions.  The Control Acquisition thus paved the way for the cash-out merger described further below.

Defendants' Undisclosed Federal Securities Filing

97.     On or about September 20, 2013, Defendants filed a sealed Form S-1 Registration Statement with the Securities Exchange Commission ("SEC") for an initial public offering of limited partnership interests in a master limited partnership called Cypress Energy Partners, L.P. (the "Filing").

98.     Because the Filing was sealed, Plaintiffs had no way to know of its existence at that time, nor did Defendants disclose this Filing to Plaintiffs.

99.     The direct or indirect sponsor of the MLP was Cypress Energy Holdings, which controlled the entity that was the subject of the MLP.  Upon information and belief, Cypress

Energy Holdings is itself owned by Defendants Stephenson, Cynthia Field (individually and as trustee) and CEP Capital Partners, LLC.

100.    Under the Filing, the MLP would permit its limited partners to participate in the income of two entities – a water services company (*i.e.*, Cypress) and a pipeline inspection company (*i.e.*, TIR).

101.    In fact, the operating income to support this MLP and to make the initial public offering possible came almost entirely from TIR.

102.    For the first six months of 2013, TIR had $133.4 million in revenues, and $4.4 million in operating income.  By contrast, Cypress's water services business had $10.6 million in revenues, and an operating loss of $952,000.

103.    Thus, TIR had more than ten times as much revenue as Cypress, was operating at a substantial profit, and had cash on hand to expand its operations.  By contrast, Cypress was operating at a loss, with no apparent access to the capital markets to expand its operations and insufficient cash flow to expand its business otherwise.

104.    In their sealed Filing, Defendants admitted the Company's tremendous growth potential and long-term value if it continued to operate as a stand-alone entity.

105.    At the same time, Defendants admitted that rather than operating the Company for the benefit of its current shareholders, Defendants planned to use the Company's cash flow to support an initial public offering for a combined TIR-Cypress entity in which they alone would participate.

106.    As for TIR's business, the Filing noted the Company's extraordinary year over year growth and stated that Defendants expected such robust growth to continue because:

- TIR's pipeline inspection and integrity services segment, which is driven primarily by the number and types of inspectors performing services for its customers, employed 1,285 inspectors as of June 30, 2013, up 71% from one year before and up 134% from two years earlier.

- TIR enjoyed substantial gross margins for its pipeline inspection and integrity services segment that were steadily increasing, going from $18.0 million for calendar year 2012 to $12.6 million in the first six months of 2013 alone, or $25.2 million on an annualized basis.

- TIR forecast that its revenue for the twelve months ending September 30, 2014 will be approximately $335.0 million, as compared to approximately $244.5 million for the year ending June 30, 2013.

107.     Defendants shared none of this information with Plaintiffs at the time of the Filing.

Defendants' Fraudulent Tender Offer

108.     From June 26, 2013 through October 2013, Defendants Stephenson, Cynthia Field, and CEP-TIR acquired the remaining shares of TIR owned by shareholders other than Plaintiffs, as well as stock warrants that would have given certain lenders the right to exchange those warrants for TIR shares.

109.     With every other shareholder out of the way, Defendants began wiping out Plaintiffs' right to participate in TIR's future growth and value.

110.     They did this first by undertaking the fraudulent Tender Offer and, when that failed, unilaterally merging TIR into a new entity and forcibly cashing Plaintiffs' shares at an

unfair price. They took these acts without adopting any procedural safeguards designed to protect Plaintiffs' interests as minority shareholders.

111.    On October 31, 2013 Defendant Boylan mailed to Plaintiffs the Tender Offer by CEP-TIR and TIR to purchase all outstanding shares of Common stock of TIR at $451,000 per share.

112.    The Tender Offer admitted that because of "the … potential conflicts of interest, the TIR Board has not been asked to and is not making any recommendation to you regarding this Offer."

113.    The Tender Offer also admitted that "[t]he TIR Board has not performed or commissioned any appraisal, or engaged any independent financial advisor or other third party to perform any valuation analysis or provide any opinion respecting the value of the Shares."

114.    The Tender Offer further admitted that "[n]one of the Purchasers, nor any of their respective affiliates has performed or commissioned any appraisal, or engaged any independent financial advisor or other third party to perform any valuation analysis or provide any opinion respecting the value of the Shares in connection with this Offer."

115.    Nonetheless, the Tender Offer claimed that its terms "present the TIR Shareholders a fair opportunity to achieve liquidity through the tender of their Shares in accordance with this Offer."  It further claimed that the purpose of the Tender Offer was to support TIR's "long term growth and objectives."

116.    The Tender Offer omitted and/or misrepresented material information in numerous respects. *First*, although making reference to "current plans" to complete an initial public offering, Defendants failed to disclose that they already had filed a confidential draft registration statement on September 20, 2013.

117.    *Second,* Defendants failed to disclose that they planned to exchange their own

TIR shares, directly or indirectly, for shares of the MLP that was the subject of the registration

statement, while excluding Plaintiffs themselves from such an exchange.

118.    *Third*, Defendants failed to disclose the value of the consideration Defendants

would receive in exchange for contributing their TIR stock, directly or indirectly, to the MLP,

which was considerably greater than the cash consideration offered to Plaintiffs.

119.    *Fourth*, the purpose of the Tender Offer was not, as represented, to support the

Company's long-term growth nor to provide a fair opportunity for liquidity, but to enable

Defendants to obtain complete control of the Company to the exclusion of all other shareholders

to support the IPO.

120.    *Fifth*, the Tender Offer grossly undervalued Plaintiffs' shares.  The Stuart Group

itself had determined, based upon the historical financial data available in May 2013, that

Plaintiffs' shares would be worth over $1.4 million at the end of 2017.  Defendants themselves

projected in May 2013 that, under Defendants' proposed MLP structure (from which Plaintiffs

were excluded), TIR shareholders would receive $1.2 million in dividends per share by the end

of 2017, without having to give up their equity stake.

121.    Further, the Tender Offer was highly coercive.  The Tender Offer stated that

Defendants might in the future undertake a cash-out merger.  In such a merger, Defendants, in

their sole discretion, would force any non-tendering shareholders to accept cash, equity, debt

instruments, or other consideration that CEP-TIR and the Company, in their sole discretion,

deemed appropriate.

122.    While the Tender Offer was pending, Defendants ratcheted up the pressure on

Plaintiffs.  Defendants threatened to charge Plaintiffs a fee for the privilege of exercising their

right not to tender their shares.  Shockingly, this fee represented the notional interest expense on a loan that TIR did not actually incur.  Defendants threatened to charge that fee against any shareholder dividends paid to Plaintiffs.

123.    Defendants made that threat in an amended filing to their first publicly-available SEC registration statement.  In the amended filing on November 19, 2013,  Defendants stated (emphasis added):  "*The non-controlling interest holders in TIR [i.e., Plaintiffs] will be charged a fee* that will equal the interest expense TIR *would have* paid to incur $10 million in incremental borrowings under the mezzanine facilities to purchase the non-controlling interest holders' interest in TIR."

### The Cash-Out Merger

124.    Plaintiffs declined Defendants' Tender Offer.  On December 9, 2013, TIR and Defendants CEP-TIR, Stephenson, and Cynthia Field entered an Agreement and Plan of Merger (the "Merger Agreement").  Defendant Boylan executed the Merger Agreement on behalf of CEP-TIR.

125.    TIR's Board of Directors, which consisted of Randall Lorett and Defendants Lawrence Field and Boylan, approved the Merger.  The Merger Agreement recites that TIR's Board "has unanimously (a) determined that it is in the best interests of the Company and its shareholders, and declared it advisable, to enter into this Agreement with CEP-TIR, CCS [Charles Stephenson], CAF [Cynthia Field] and Merger Sub [TIR LLC], (b) approved the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby including the Merger, and (c) resolved, subject to the terms and conditions set forth in this Agreement, to recommend the adoption of this Agreement by the shareholders of the Company."

126.    The Merger Agreement states that it is "governed by and construed in accordance with the internal laws of Oklahoma without giving effect to any choice of law provision or rule … provided, however, the provisions of this Agreement relating to mechanics or the effect of the Merger under Delaware law shall be governed by and construed in accordance with the laws of the State of Delaware."

127.    Under the Merger, CEP-TIR, Stephenson and Cynthia Field exchanged their respective shares of TIR for corresponding ownership interests in TIR LLC.

128.    Plaintiffs, as minority shareholders, received quite a different treatment.  The Merger *canceled* each issued and outstanding share or fractional share of Company stock owned by Plaintiffs.  Those canceled shares or fractional shares were converted into a right to receive cash equal to $451,000 per whole share of Company stock, plus four percent interest compounded daily from the date of the Merger to the date of payment.

129.    The Merger was entirely devoid of any procedural safeguards for Plaintiffs as minority shareholders.  For example, despite previously acknowledging in the Tender Offer that its directors were fatally conflicted, the TIR Board:

- did not form a special committee to consider the Merger;

- did not perform or commission any appraisal with respect to TIR or the value of TIR shares in connection with the Merger;

- did not engage any independent financial advisor or other third party to perform any valuation analysis regarding TIR, the cash consideration paid to the minority shareholders or the equity consideration paid to the TIR Controlling Shareholder Defendants in connection with the Merger;

- did not engage in any negotiations with any minority shareholder or any representative of the minority shareholders;

- did not require a majority-of-the-minority vote for the Merger or utilize any other procedural device to ensure that the Merger process was fair; and

- did not permit the minority shareholders to vote on its terms.

130. Plaintiffs did not learn about this Merger until after the fact. On December 11, 2013, two days after the merger was consummated, TIR LLC delivered a Merger notice to Plaintiffs by email and U.S. mail.

131. The Merger notice informed Plaintiffs that, upon transmitting the requisite documentation, they would receive the Merger consideration of $451,000 per share.

132. The Merger notice contained misrepresentations and omissions of material fact. The notice stated that "the Surviving Entity [*i.e.*, TIR LLC] believes that the Cash Merger Consideration represents a premium over the fair value." Defendants did not believe and had no factual basis to make such statement for multiple reasons.

133. *First*, as noted above, neither Defendants nor the Company's Board had engaged a special committee, commissioned an appraisal, or engaged a financial advisor to determine the *fair value* of the shares, much less any *premium* over fair value. Defendants therefore had no factual basis to make any such statement.

134. *Second*, the $451,000 per share price did not represent *fair value*, much less a *premium* over fair value. Defendants themselves had previously projected that, under the MLP structure, a TIR shareholder would earn a *dividend* of over $1.2 million per TIR share by the end of 2017 – and still continue owning the shares, or an equivalent equity stake in the MLP. Around

26

May of 2013, the Stuart Group had done an internal analysis that determined, based upon then-available historical financial data for TIR, that the Company's shares would be worth over $1.4 million by the end of 2017.  That analysis, moreover, did not take into account the Company's past several months of financial results, which had rendered the shares even more valuable.

135.    *Third*, Defendants did not disclose the value of the equity consideration in the MLP that they would receive in exchange for contributing a portion of TIR to the MLP.  Defendants studiously avoided making any such disclosure until after paying Plaintiffs the Merger consideration.

136.    In reliance upon the Merger notice, Plaintiffs exchanged their canceled shares for payment in December 2013.

137.    On January 14, 2014, Defendants conducted the initial public offering of the MLP.  As part of this process, Defendants exchanged roughly 50.1% of their interest in TIR LLC for units of the MLP.

138.    The foregoing facts show that Defendants not only knowingly or recklessly made misrepresentations and omissions of material fact in the Merger notice, but that the price paid was grossly unfair.  Contrary to the Merger notice, the price paid by Defendants in fact reflected a substantial discount, rather than a premium, to the fair value of Plaintiffs' shares.

## FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duty - Director Defendants)

139.    Plaintiffs repeat and reallege paragraphs 1-138 of the Complaint as if fully set forth herein.

140.    At all times relevant to this Complaint Defendants Lawrence Field and Boylan (the "Director Defendants") were directors of TIR.

141.    As such, the Director Defendants owed fiduciary duties of loyalty, good faith, fair dealing, disclosure and care to TIR's minority shareholders, including Plaintiffs.

142.    The Director Defendants had an obligation to ensure that any transaction undertaken on behalf of the Company was fair to TIR's minority shareholders, such as Plaintiffs, and to ensure that TIR's minority shareholders were provided with all material information required by them.

143.    The Director Defendants breached their respective duties because they did not take any measures to ensure that the interests of TIR's minority shareholders were properly protected during the events preceding the Tender Offer and the Merger, as well as during the Tender Offer and the Merger themselves.

144.    The Director Defendants have admitted to being conflicted with respect to the buy-out of Plaintiffs' TIR stock.  Despite that admission, and despite knowing that TIR's controlling shareholders stood on both sides of the Merger, the Director Defendants did not:

- form a special committee to consider the Merger;

- perform or commission any appraisal with respect to TIR or the value of TIR shares in connection with the Merger;

- engage any independent financial advisor or other third party to perform any valuation analysis respecting TIR, the cash consideration paid to the minority shareholders, or the equity consideration paid to the TIR Controlling Shareholder Defendants in connection with the Merger;

- engage in any negotiations with any minority shareholder or any representative of the minority shareholders;

28

- require a majority-of-the-minority vote for the Merger to be approved, or utilize any other procedural device to ensure that the Merger process was fair; or

- permit the minority shareholders to vote on its terms.

145.    In addition to the foregoing, the Director Defendants approved a Merger that provided the minority shareholders cash merger consideration that was both (a) grossly inadequate and unfair, and (b) different from and less valuable than the equity merger consideration received by the majority shareholders. The price was unfair for the following reasons, among others:

- The April 8, 2013 Term Sheet prepared by Boylan and distributed to TIR's shareholders by Lawrence Field projected that, in an MLP structure, TIR would yield dividends of over $1.2 million per share by the end of 2017;

- The Stuart Group's own analysis in May 2013, showed that, based upon then-available historical financial data, TIR's stock would be worth $1.4 million by the end of 2017, and more recent financial results indicated an even higher value;

- TIR's own financials showed that the Company was experiencing substantial growth in net revenues and EBIDTA, consistent with the statements and projections made in Defendants' public filings; and

- Defendants themselves later exchanged a portion of their interest in TIR LLC for equity in the MLP that had considerably higher value than $451,000 per share.

146.    The Director Defendants thus structured, approved and implemented the Merger using an unfair process, and misused corporate assets and opportunities to transfer TIR's assets and value to entities controlled by themselves for an unfair price.

147.    Because these Defendants were in a position to control the Company and because they had an interest in obtaining the lowest possible purchase price, applicable law imposed on these Defendants a duty of entire fairness with respect to all aspects of the Merger.

148.    Because of their conflicted positions, Defendants have the burden of proof to demonstrate that the Merger meets the standard of entire fairness, which consists of, among other things, fair process and fair price.

149.    By reason of the foregoing, the Director Defendants breached their fiduciary duties to Plaintiffs, including but not limited to their duty of entire fairness with respect to the Merger.

150.    The Director Defendants' conduct was intentional, wilful, wanton and malicious so as to justify an award of punitive damages.

### SECOND CLAIM FOR RELIEF
**(Breach of Fiduciary Duty – TIR Controlling Shareholder Defendants)**

151.    Plaintiffs repeat and reallege paragraphs 1-138 of the Complaint as if fully set forth herein.

152.    At the time of both the Tender Offer and the Merger, the TIR Controlling Shareholder Defendants were controlling shareholders of TIR.

153.    The TIR Controlling Shareholder Defendants stood on both sides of the Merger in which they exchanged their shares of TIR for shares of TIR LLC while simultaneously eliminating the equity held in TIR by the minority shareholders.  The TIR Controlling Shareholder Defendants also controlled TIR's Board.

154.    The TIR Controlling Shareholder Defendants owed a duty of loyalty, entire fairness and disclosure to Plaintiffs, as TIR's minority stockholders, in self-dealing transactions such as the Tender Offer and Merger.

155.    The TIR Controlling Shareholder Defendants breached their respective fiduciary duties in planning, structuring, and effectuating the Merger, which was not the result of a fair process or adequate disclosures, and by causing TIR's minority shareholders to be paid grossly inadequate merger consideration while, at the same time, paying significantly more valuable merger consideration to themselves.

156.    Because these Defendants were in a position to control the Company and because they had an interest in obtaining the lowest possible purchase price, applicable law imposed on these Defendants a duty of entire fairness with respect to all aspects of the Merger.

157.    Because of their conflicted positions, Defendants also have the burden of proof to demonstrate that the Merger meets the standard of entire fairness, which consists of, among other things, both fair process and fair price.

158.    By reason of the foregoing acts, Defendants Stephenson, Cynthia Fields and CEP-TIR breached their respective fiduciary duties to Plaintiffs, including but not limited to their duty of entire fairness with respect to the Merger.

159.    The TIR Controlling Shareholder Defendants' conduct was intentional, wilful, wanton and malicious so as to justify an award of punitive damages.

### THIRD CLAIM FOR RELIEF
### (Breach of Fiduciary Duty – Aiding and Abetting Liability)

160.    Plaintiffs repeat and reallege paragraphs 1-138 of the Complaint as if fully set forth herein.

161.    The TIR Controlling Shareholder Defendants knew that the Director Defendants owed fiduciary duties to the Plaintiffs.

162.    The TIR Controlling Shareholder Defendants knew that the Director Defendants breached their fiduciary duties in connection with the Merger by approving the Merger on behalf of TIR.

163.    The TIR Controlling Shareholder Defendants, who dominated and controlled the Board of Directors, participated in and/or substantially assisted the Director Defendants in committing said breaches in order to consummate the Merger.

164.    By reason of the foregoing, the TIR Controlling Shareholder Defendants are liable for aiding and abetting the Director Defendants' breaches of fiduciary duty.

165.     In addition, Defendants Cypress Energy Holdings and CEP Capital Partners, LLC, which are themselves directly or indirectly owned by Stephenson, Cynthia Field and Boylan, knew that the Director Defendants and the TIR Controlling Shareholders owed fiduciary duties to Plaintiffs.

166.    Defendants Cypress Energy Holdings and CEP Capital Partners, LLC knew that the Director Defendants and the TIR Controlling Shareholder Defendants breached their respective duties in connection with the Merger.

167.    Defendants Cypress Energy Holdings and CEP Capital Partners, LLC substantially assisted the Director Defendants and/or the TIR Controlling Shareholders in committing such breaches in order to consummate the Merger, which was a necessary precursor to conducting an initial public offering of the MLP.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

168.    Plaintiffs repeat and reallege paragraphs 1-138 of the Complaint as if fully set forth herein.

169.    The Controlling Shareholder Defendants forcibly cashed out Plaintiffs' TIR shares at a price of $451,000 per share when these Defendants knew that, in fact, the shares were worth considerably more.

170.    By doing so, these Defendants gained control of Plaintiffs' TIR shares for themselves at a fraction of the shares' true worth, to the detriment of Plaintiffs.

171.    It would be against equity and good conscience to permit Defendants to retain the benefits of this grossly unfair transaction.

## FIFTH CLAIM FOR RELIEF
### (Violation of Oklahoma Uniform Securities Act of 2004)

172.    Plaintiffs repeat and reallege paragraphs 1-138 of the Complaint as if fully set forth herein.

173.    Upon information and belief, Defendants made material misrepresentations and omissions to the Pooled Shareholders.  Defendants falsely told the Pooled Shareholders that Defendants were paying a fair price.  In breach of their fiduciary duties, Defendants failed to disclose their plans to convert the Pooled Shares into much more valuable equity through an IPO orchestrated by Defendants.

174.    But for Defendants' use of deception to acquire the Pooled Shares, Defendants could not have undertaken the Merger, canceled Plaintiffs' shares in TIR, and acquired those shares at an unfair price dictated by Defendants.

175.    Defendant CEP-TIR and Defendant TIR LLC's predecessor, TIR, made material misrepresentations and omissions of fact in the Tender Offer, including but not limited to the representation that the Tender Offer's terms "present the TIR Shareholders a fair opportunity to achieve liquidity through the tender of their Shares in accordance with this Offer."

176.    Defendant TIR LLC made material misrepresentations and omissions of fact in the Merger notice, including but not limited to its representation that the Merger consideration "represents a premium over the fair value."

177.    Defendants knew that these statements were untrue, and had no basis in fact for making any such representations, for the following reasons among others:

- CEP-TIR, TIR and TIR LLC had not adopted any procedure designed to establish a fair price;

- The Stuart Group had previously shown Stephenson and Lawrence Field that TIR's stock had a substantially greater value;

- TIR's own financial information showed that the Company was experiencing substantial growth in net revenues and EBIDTA, consistent with the statements and projections made in Defendants' public filings;

- The April 8, 2013 Term Sheet prepared by Boylan and distributed to TIR's shareholders by Lawrence Field projected that, in an MLP structure, TIR would yield dividends of over $1.2 million per share by the end of 2017; and

- In connection with the IPO that was originally hidden from Plaintiffs, Defendants planned to exchange a portion of their interest in TIR's

34

successor, TIR LLC, for equity in the MLP that had considerably

higher value than $451,000 per share.

178.   In reliance upon the information contained in the Tender Offer and the Merger

notice, Plaintiffs exchanged their TIR shares for the Merger consideration, causing Plaintiffs to

suffer a substantial loss.

179.    By reason of the foregoing, Defendants CEP-TIR and TIR LLC violated Section

1-501 of the Oklahoma Uniform Securities Act of 2004.

**SIXTH CLAIM FOR RELIEF**
**(Oklahoma Uniform Securities Act of 2004 – Control Person Liability)**

180.   Plaintiffs repeat and reallege paragraphs 1-138 of the Complaint as if fully set

forth herein.

181.   Upon information and belief, Defendants made material misrepresentations and

omissions to the Pooled Shareholders.  Defendants falsely told the Pooled Shareholders that

Defendants were paying a fair price.  In breach of their fiduciary duties, Defendants failed to

disclose their plans to convert the Pooled Shares into much more valuable equity through an IPO

orchestrated by Defendants.

182.   But for Defendants' use of deception to acquire the Pooled Shares, Defendants

could not have undertaken the Merger, canceled Plaintiffs' shares in TIR, and acquired those

shares at an unfair price dictated by Defendants.

183.   Defendant CEP-TIR and Defendant TIR LLC's predecessor, TIR, made material

misrepresentations and omissions of fact in the Tender Offer, including but not limited to the

representation that the Tender Offer's terms "present the TIR Shareholders a fair opportunity to

achieve liquidity through the tender of their Shares in accordance with this Offer."

184.    At the time of the Tender Offer, Defendants Stephenson, Cynthia Field and CEP-TIR were controlling shareholders of TIR.  Upon information and belief, these Defendants reviewed and approved the Tender Offer.

185.    At the time of the Tender Offer, Defendants Boylan and Lawrence Field were Directors of TIR, and thereby had the power to direct TIR's conduct.  Upon information and belief, these Defendants reviewed and approved the Tender Offer.

186.    At the time of the Tender Offer, Defendant Cypress Energy Holdings was the indirect controlling shareholder of CEP-TIR.  In turn, the controlling shareholders of Cypress Energy Holdings were Defendants Stephenson, Cynthia Field, and Defendant CEP Capital Partners, LLC, an entity that itself is owned and controlled by Stephenson and Cynthia Field and, indirectly, Boylan.  Upon information and belief, Defendants Cypress Holdings and CEP Capital Partners, through Stephenson, Cynthia Field and/or Boylan, reviewed and approved the Tender Offer.

187.    Defendant TIR LLC made material misrepresentations and omissions of fact in the Merger notice, including but not limited to its representation that the Merger consideration "represents a premium over the fair value."

188.    At the time of the Merger notice, Defendants Stephenson, Cynthia Field and CEP-TIR were controlling members of Defendant TIR LLC and, in that capacity, caused the Merger to occur.  Upon information and belief, these Defendants reviewed and approved the Merger notice.

189.    At the time of the Tender Offer, Defendants Boylan and Lawrence Field were Directors of TIR and, in that capacity, approved the Merger on behalf of TIR.  Upon information and belief, these Defendants reviewed and approved the Merger notice.

190.    At the time of the Merger notice, Defendant Cypress Energy Holdings was the indirect controlling shareholder of CEP-TIR.  In turn, the controlling shareholders of Cypress Energy Holdings were Defendants Stephenson, Cynthia Field, and Defendant CEP Capital Partners, LLC, an entity that itself is owned and controlled by Stephenson and Cynthia Field and, indirectly, Boylan.  Upon information and belief, Defendants Cypress Energy Holdings and CEP Capital Partners, LLC, through Stephenson, Cynthia Field and Boylan, reviewed and approved the Merger notice.

191.    By reason of the foregoing, under Section 1-509(G) of the Oklahoma Uniform Securities Act of 2004, Defendants Stephenson, Cynthia Field, Lawrence Field, Boylan, Cypress Energy Holdings and CEP Capital Partners, LLC are liable jointly and severally with and to the same extent as TIR LLC and/or CEP-TIR for any violation of the Oklahoma Uniform Securities Act of 2004.

## SEVENTH CLAIM FOR RELIEF
### (Violation of the Exchange Act)

192.    Plaintiffs repeat and reallege paragraphs 1-138 of the Complaint as if fully set forth herein.

193.    Upon information and belief, Defendants made material misrepresentations and omissions to the Pooled Shareholders.  Defendants falsely told the Pooled Shareholders that Defendants were paying a fair price.  In breach of their fiduciary duties, Defendants failed to disclose their plans to convert the Pooled Shares into much more valuable equity through an IPO orchestrated by Defendants.

194.    But for Defendants' use of deception to acquire the Pooled Shares, Defendants could not have undertaken the Merger, canceled Plaintiffs' shares in TIR, and acquired those shares at an unfair price dictated by Defendants.

37

195.    Defendant CEP-TIR and Defendant TIR LLC's predecessor, TIR, made material misrepresentations and omissions of fact in the Tender Offer, including but not limited to the representation that the Tender Offer's terms "present the TIR Shareholders a fair opportunity to achieve liquidity through the tender of their Shares in accordance with this Offer."

196.    Defendant TIR LLC made material misrepresentations and omissions of fact in the Merger notice, including but not limited to its representation that the Merger consideration "represents a premium over the fair value."

197.    Defendants knew that these statements were untrue, and had no basis in fact for making any such representations, for the following reasons among others:

- CEP-TIR, TIR and TIR LLC had not adopted any procedure designed to establish a fair price;

- The Stuart Group had previously shown Stephenson and Lawrence Field that TIR's stock had a substantially greater value;

- TIR's own financial data showed that the Company was experiencing substantial growth in net revenues and EBIDTA, consistent with the statements and projections made in Defendants' public filings;

- The April 8, 2013 Term Sheet prepared by Boylan and distributed to TIR's shareholders by Lawrence Field projected that, in an MLP structure, TIR would yield dividends of over $1.2 million per share by the end of 2017; and

- In connection with the IPO that was originally hidden from Plaintiffs, Defendants planned to exchange a portion of their interest in TIR's

successor, TIR LLC, for equity in the MLP that had considerably

higher value than $451,000 per share.

198.    In reliance upon the information contained in the Tender Offer and the Merger

notice, Plaintiffs exchanged their TIR shares for the Merger consideration, causing Plaintiffs to

suffer a substantial loss.

199.    By reason of the foregoing, Defendants CEP-TIR and TIR LLC violated Section

10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

### EIGHTH CLAIM FOR RELIEF
### (Securities Exchange Act – Control Person Liability)

200.    Plaintiffs repeat and reallege paragraphs 1-138 of the Complaint as if fully set

forth herein.

201.    Upon information and belief, Defendants made material misrepresentations and

omissions to the Pooled Shareholders.  Defendants falsely told the Pooled Shareholders that

Defendants were paying a fair price.  In breach of their fiduciary duties, Defendants failed to

disclose their plans to convert the Pooled Shares into much more valuable equity through an IPO

orchestrated by Defendants.

202.    But for Defendants' use of deception to acquire the Pooled Shares, Defendants

could not have undertaken the Merger, canceled Plaintiffs' shares in TIR, and acquired those

shares at an unfair price dictated by Defendants.

203.    Defendant CEP-TIR and Defendant TIR LLC's predecessor, TIR, made material

misrepresentations and omissions of fact in the Tender Offer, including but not limited to the

representation that the Tender Offer's terms "present the TIR Shareholders a fair opportunity to

achieve liquidity through the tender of their Shares in accordance with this Offer."

204.    At the time of both the Tender Offer and the Merger notice, Defendants Stephenson, Cynthia Field and CEP-TIR were controlling shareholders of TIR.  Upon information and belief, these Defendants reviewed and approved the Tender Offer.

205.    At the time of the Tender Offer, Defendants Boylan and Lawrence Field were Directors of TIR, and thereby had the power to direct TIR's conduct.  Upon information and belief, these Defendants reviewed and approved the Tender Offer.

206.    At the time of the Tender Offer, Defendant Cypress Energy Holdings was the indirect controlling shareholder of CEP-TIR.  In turn, the controlling shareholders of Cypress Energy Holdings were Defendants Stephenson, Cynthia Field, and Defendant CEP Capital Partners, LLC, an entity that itself is owned and controlled by Stephenson and Cynthia Field and, indirectly, Boylan.  Upon information and belief, Defendants Cypress Holdings and CEP Capital Partners, LLC, through Stephenson, Cynthia Field and/or Boylan, reviewed and approved the Tender Offer.

207.    Defendant TIR LLC made material misrepresentations and omissions of fact in the Merger notice, including but not limited to its representation that the Merger consideration "represents a premium over the fair value."

208.    At the time of the Merger notice, Defendants Stephenson, Cynthia Field and CEP-TIR were controlling members of Defendant TIR LLC and, in that capacity, caused the Merger to occur.  Upon information and belief, these Defendants reviewed and approved the Merger notice.

209.    At the time of the Tender Offer, Defendants Boylan and Lawrence Field were Directors of TIR and, in that capacity, approved the Merger on behalf of TIR.  Upon information and belief, these Defendants reviewed and approved the Merger notice.

210.    At the time of the Merger Notice, Defendant Cypress Energy Holdings was the indirect controlling shareholder of CEP-TIR.  In turn, the controlling shareholders of Cypress Energy Holdings were Defendants Stephenson, Cynthia Field, and Defendant CEP Capital Partners, LLC, an entity that itself is owned and controlled by Stephenson and Cynthia Field and, indirectly, Boylan.  Upon information and belief, Defendants Cypress Energy Holdings and CEP Capital Partners, LLC, through Stephenson, Cynthia Field and Boylan, reviewed and approved the Merger notice.

211.    By reason of the foregoing, Defendants Stephenson, Cynthia Field, Lawrence Field, Boylan, Cypress Energy Holdings and CEP Capital Partners, LLC are jointly and severally liable, as controlling persons of TIR, TIR LLC and/or CEP-TIR under Section 20(a) of the Exchange, to the same extent as the persons they controlled, for any violation of the Securities Exchange Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment against Defendants:

A.    rescinding the Merger and permitting Plaintiffs to recover their shares of TIR, together with all income Defendants received on Plaintiffs' securities;

B.    in the alternative, awarding compensatory and/or rescissionary damages in favor of Plaintiffs against all Defendants, jointly and severally;

C.    awarding Plaintiffs punitive damages;

D.    awarding Plaintiffs their costs and expenses incurred in this action, including an award of experts' fees and of reasonable attorneys' fees and expenses;

E.     awarding pre-judgment interest at the maximum legal rate running from the date

       Plaintiffs received payment for their respective shares to the date of judgment

       herein;

F.     awarding post-judgment interest at the maximum legal rate running from the date

       of judgment herein until the date the judgment is paid in full, plus costs;

G.     requiring Defendants to pay forthwith the judgment amount awarded in favor of

       Plaintiffs; and

H.     granting Plaintiffs such other and further relief as the Court deems just and

       proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury in this action for all issues so triable.

Dated:  July 3, 2014

                           Respectfully submitted,

                            s/  Stratton Taylor
                           STRATTON TAYLOR, OBA # 10142
                           MARK H. RAMSEY, OBA # 11159
                           CLINT RUSSELL, OBA # 16063
                           **TAYLOR, FOSTER, MALLETT, DOWNS,**
                              **& RAMSEY & RUSSELL**
                           400 West Fourth Street | P.O. Box 309
                           Claremore, OK 74018
                           918-343-4100 | 918-343-4900 fax


                           And

Stuart Kagen (*pro hac vice application to be submitted*)
Daniel A. Cohen (*pro hac vice application to be submitted*)
**KAGEN LAW FIRM**
570 Lexington Avenue Suite 1600
New York, New York 10022
(212) 880-2045

And

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Jamison A. Diehl (*pro hac vice application to be submitted*)
One Bryant Park
New York, New York 10036
(212) 872-1000
**Attorneys for Plaintiff**