# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF OKLAHOMA

SFF-TIR, LLC; STUART FAMILY
FOUNDATION, INC.; ALAN STUART
2012 GST FAMILY TRUST; STUART
2005 GST FAMILY TRUST;
CELEBRATION, LLC; ANURAG
AGARWAL; PETER BUCKLEY; VINCENT
SIGNORELLO and RODNEY M. REYNOLDS,

      Plaintiffs,

vs.                                      No. CIV 14-0369 JB/FHM

CHARLES C. STEPHENSON, JR.;
CYNTHIA A. FIELD; PETER BOYLAN, III;
LAWERENCE FIELD;
CYPRESS ENGERGY PARTNERS-TR, LLC;
CEP CAPITAL PARTNERS, LLC;
CYPRESS ENERGY HOLDINGS, LLC and
TULSA INSPECTION RESOURCES, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Reconsideration of Order Granting Plaintiffs' Motion for Partial Summary Judgment on Breach of Fiduciary Duty (Doc. 272) and Memorandum Opinion and Order (Doc. 274), filed May 9, 2017 (Doc. 280)("Motion for Reconsideration"). The Court held hearings on April 26, 2017, and June 29-30, 2017. The primary issues are: (i) whether the Court erred in its interpretation and application of Delaware's entire-fairness standard in its Order, filed April 12, 2017 (Doc. 272), and in its Memorandum Opinion, filed April 25, 2017 (Doc. 274)("MO"); and (ii) whether the Court correspondingly erred when it granted the Plaintiffs' request for partial summary judgment on breach of fiduciary duty. The Court analyzes the Defendants' Motion for Reconsideration under

the United States Court of Appeals for the Tenth Circuit's multifactor test in Servants of the Paraclete v. Does, 204 F.3d 1005 (10th Cir. 2000), and takes the further step of using its permitted discretion to examine an interlocutory order using de novo review. The Court concludes that this analysis provides no sound reason for the Court to grant the Defendants' Motion for Reconsideration. The Court, accordingly, denies the Motion for Reconsideration.

## FACTUAL BACKGROUND

The Court adopts the factual background it previously stated in its Memorandum Opinion and Order, filed April 25, 2017 (Doc. 274). Defendant "Charles Stephenson is the owner of Regent Private Capital." Defendants' Motion for Summary Judgment on Acquiescence Defense and Brief in Support ¶ 1, at 7, filed April 3, 2015 (Doc. 83)("Defendants' Acquiescence MSJ")(stating this fact).[1] See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment on Acquiescence Defense ¶ 1, at 8, filed April 20, 2015 (Doc. 84)("Response to Defendants' Acquiescence MSJ")(not disputing this fact). "Defendant Cynthia Field is the daughter of Defendant Charles Stephenson." Plaintiffs' Memorandum of Law in

---

[1]During the December 27 and 28, 2016, hearing in this case, both parties agreed that there is significant overlap between the factual sections in the Defendants' Acquiescence MSJ and the Defendants' Second Motion for Summary Judgment and Brief in Support, filed September 14, 2015 (Doc. 154)("Defendants' Estoppel MSJ"). See Transcript of Motion Hearing Before the Honorable James O. Browning, United States District Judge (taken December 28, 2016), filed January 23, 2017 (Doc. 250)("December Tr."), at 370:7-374:14 (DeMuro, Kagen, Court). The Defendants indicated at the hearing that they do not object, in the light of this fact, to the Court writing the factual sections for the Defendants' two motions for summary judgment together. See December Tr. at 374:9-14 (DeMuro). The parties also agreed that they approved of the Court's proposal to fold the facts from Plaintiffs' MSJ into a single factual section along with the facts from the Defendants' Acquiescence MSJ and the Defendants' Estoppel MSJ. The Court, therefore: (i) refers to facts common to both the Defendants' Acquiescence MSJ and the Defendants' Estoppel MSJ collectively by referring to the paragraph in the Defendants' Acquiescence MSJ; and (ii) places all facts from across the three summary judgment motions into a preliminary biographical section followed by facts reported in as near to chronological order as overlapping time periods permit.

Support of Motion for Partial Summary Judgment on Breach of Fiduciary Claims ¶ 1, at 3, filed September 14, 2015 (Doc. 157)("Plaintiffs' MSJ")(stating this fact).  See Defendants' Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Breach of Fiduciary Duty Claims (Doc. 157), at 2, filed October 5, 2015 (Doc. 170)("Response to Plaintiffs' MSJ")(not disputing this fact).  "Defendant Lawrence Field is the husband of Defendant Cynthia Field and the son-in-law of Defendant Charles Stephenson."  Plaintiffs' MSJ ¶ 2, at 3 (stating this fact).  See Response to Plaintiff's MSJ at 2 (not disputing this fact).  "Defendant CEP-TIR, LLC['s] . . . principals are Defendants Stephenson, Cynthia Field and Peter Boylan, [sic] III."  Plaintiffs' MSJ ¶ 3, at 3 (stating this fact).[2]  "In 2009, Regent and Mr. Stephenson individually became together TIR Inc.'s largest shareholder owning approximately 40% of the TIR Inc. shares."  Defendants' Acquiescence MSJ ¶ 1, at 7 (stating this fact).[3]  "At the same time a number of the Plaintiffs associated with Alan Stuart acquired a minority interest in TIR Inc."  Defendants' Acquiescence

---

[2]In the Plaintiffs' MSJ, the Plaintiffs word the fact as follows: "Defendant CEP-TIR, LLC is a Delaware corporation whose principals are Defendants Stephenson, Cynthia Field and Peter Boylan, III."  Plaintiffs' MSJ ¶ 3, at 3.  The Defendants dispute that CEP-TIR, LLC is a corporation, maintaining that it "is a limited liability company, not a corporation."  Response to Plaintiffs' MSJ at 2.  The Defendants do not dispute that Stephenson, Field, or Boylan is a principal of CEP-TIR.  See Response to Plaintiffs' MSJ at 2.  Because the Defendants do not dispute this latter assertion, the Court deems it to be undisputed and amends the fact's text to reflect that the fact's elements that are undisputed.

[3]In Response to Defendants' Acquiescence MSJ ¶ 2, at 8, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger."  Response to Defendants' Acquiescence MSJ ¶ 2, at 8.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  The Court has previously noted that arguing a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8 (D.N.M. March 31, 2011)(Browning, J.).  The Plaintiffs' assertion that the entire fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

MSJ ¶ 3, at 7 (stating this fact).[4] "Alan Stuart is a 'seasoned, successful, long-term investor with more than 40 years' experience in business development, investment management, and corporate governance.'" Defendants' Acquiescence MSJ ¶ 4, at 7 (stating this fact).[5] "The Defendant Lawrence Field, the son-in-law of Mr. Stephenson and an officer of Regent, became the chairman, and Alan Stuart became a member of the board of directors of TIR Inc." Defendants' Acquiescence MSJ ¶ 5, at 7 (stating this fact). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "In February 2013, Alan Stuart prepared a proposal for Mr. Field, which he named 'Project Poirot' to acquire control of TIR, Inc. at $369,507 per share which he later increased to $385,175." Defendants' Acquiescence MSJ ¶ 6, at 7 (stating this

---

[4] In Response to Defendants' Acquiescence MSJ ¶ 2, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[5] In Response to Defendants' Acquiescence MSJ ¶ 2, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing a proposed fact at the summary- judgment stage is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

fact).[6]  "On February 11, 2013, Stuart purchased individual shareholder J.W. Lorett's TIR Inc.

shares for $275,000 per share."  Defendants' Acquiescence MSJ ¶ 7, at 7 (stating this fact).[7]  "On

March 21, 2013, Stuart presented an offer to the TIR board for TIR Inc. shares of $380,382 per

share."  Defendants' Acquiescence MSJ ¶ 8, at 7 (stating this fact).[8]  "On May 16, 2013, Alan

---

[6]In Response to Defendants' Acquiescence MSJ ¶ 6, at 7, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger."  Response to Defendants' Acquiescence MSJ ¶ 2, at 8.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  The Court has previously noted that arguing a proposed fact at the summary- judgment stage is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[7]In Response to Defendants' Acquiescence MSJ ¶ 7, at 9, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger."  Response to Defendants' Acquiescence MSJ ¶ 2, at 8.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  The Court has previously noted that arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[8]In Response to Defendants' Acquiescence MSJ ¶ 8, at 7 the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger."  Response to Defendants' Acquiescence MSJ ¶ 2, at 8.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  The Court has previously noted that arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the

Stuart revised his offer to the board, increasing the repurchase price to $413,143 per share." Defendants' Acquiescence MSJ ¶ 9, at 8 (stating this fact).[9] "The Defendants [Charles C.] Stephenson, [Peter] Boylan, and [Cynthia A.] Field were principals in Cypress Energy Partners-TIR, LLC ("Cypress Energy Partners"). Defendants' Acquiescence MSJ ¶ 10, at 8 (stating this fact)(brackets added). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "In 2013, two TIR Inc. directors (Alan Stuart on the one hand and Lawrence Field on the other hand) [sought] to acquire control of TIR Inc." Defendants' Acquiescence MSJ ¶ 11, at 8 (stating this fact)(relying on Videotape Deposition of Rodney Reynolds Taken on Behalf of the Defendants (taken November 17, 2014), filed April 3, 2015 (Doc. 83-11)("Reynolds Depo.").[10]

_____

Plaintiffs' admission of the fact.

[9]In Response to Defendants' Acquiescence MSJ ¶ 9, at 8, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[10]The Defendants state in the Defendants' Acquiescence MSJ that, in 2013, "two TIR Inc directors (Alan Stuart on the one hand and Lawrence Field on the other hand) engaged in a competition to acquire control of TIR Inc." Defendants' Acquiescence MSJ ¶ 11, at 8. The Plaintiffs purport to dispute this fact, relying on a June 14, 2013, email from the Special Committee attaching a proposed Standstill and Indemnity Agreement that depicts a series of direct, independent offers to shareholders rather than a competition between Stuart and Field to acquire control of TIR, Inc. See Response to Defendants' Acquiescence MSJ ¶ 3, at 8. The Court concludes that, whether the bids were competitive or independent, they indicate that Stuart and Field both sought to acquire control of TIR, Inc. The Court therefore amends the fact as the Defendants state it in the Defendants' Acquiescence MSJ to reflect the elements of the fact that the parties do not dispute.

"In June 2013, the Defendants [completed] the bidding process to acquire control of TIR Inc." Defendants' Acquiescence MSJ ¶ 13, at 8 (stating this fact)(relying on Affidavit of Randall Lorett, filed April 3, 2015 (Doc. 83-2)("Lorett Aff.").[11]

"On June 26, 2013, Defendant CEP-TIR, LLC acquired 26.45 shares of TIR from certain other shareholders, known as the Pooled Shareholders, in *voluntary* sales transactions." Plaintiffs' MSJ ¶ 4, at 3 (emphasis in the original)(stating this fact). See Response to Plaintiffs' MSJ at 2 (not disputing this fact). "Defendants subsequently referred to this share acquisition as the 'Control Acquisition.'" Plaintiffs' MSJ ¶ 5, at 3 (stating this fact). See Response to Plaintiff's MSJ at 2 (not disputing this fact). "Between June 2013 and October 2013, CEP-TIR LLC also [acquired] certain other outstanding shares of TIR." Plaintiffs' MSJ ¶ 6, at 3 (stating this fact).[12] "As a result of these transactions, Defendants CEP-TIR, LLC, Stephenson, and Cynthia Field . . . became, collectively, the majority shareholders of TIR, owning at least 69.4% of the outstanding shares." Plaintiffs' MSJ ¶ 7, at 3 (stating this fact). See Response to

---

[11]The Defendants state in the Defendants' Acquiescence MSJ that, in "June 2013, the Defendants won the bidding process to acquire control of TIR Inc." Defendants' Acquiescence MSJ ¶ 13, at 8. The Plaintiffs purport to dispute this fact, relying on a June 14, 2013, email from the Special Committee attaching a proposed Standstill and Indemnity Agreement that depicts a series of direct, independent offers to shareholders rather than a competition between Stuart and Field to acquire control of TIR, Inc. See Response to Defendants' Acquiescence MSJ ¶ 3, at 8-9. The Court does not see in the fact as written any indication that the Defendants here assert any competitive bidding between the two camps, aside perhaps from the Plaintiffs' use of the verb "won." To reflect the factual elements that are undisputed, the Court therefore amends the fact as the Defendants state it in the Defendants' Acquiescence MSJ.

[12]In the Plaintiffs' MSJ, the Plaintiffs word the fact as follows: "Between June 2013 and October 2013, CEP-TIR LLC also certain other outstanding shares of TIR." Plaintiffs' MSJ ¶ 6, at 3. The fact is written as a sentence fragment without any verb. The Defendants purport to dispute the fact solely on the basis of "avoidance of doubt" and add the word "acquired" to the fact. Response to the Plaintiffs' MSJ at 2. Because of (i) the obvious scrivener's error; and (ii) the Plaintiffs' repeated assertions elsewhere that CEP-TIR LLC acquired the outstanding TIR shares, the Court deems the fact -- with the Defendants' interpolation of the verb "acquired" -- to be undisputed.

Plaintiffs' MSJ at 2 (not disputing this fact). CEP-TIR, LLC, Stephenson, and Field "thereby collectively gained control of TIR." Plaintiffs' MSJ ¶ 8, at 4 (stating this fact). See Response to Plaintiffs' MSJ at 2 (not disputing this fact).

"From June 2013 through December 23, 2013, the Plaintiff SFF-TIR, LLC was represented by legal counsel." Defendants' Acquiescence MSJ ¶ 14, at 8 (stating this fact).[13] "From June 2013 through December 23, 2013, the Plaintiffs Stuart Family Foundation, Inc.; Alan Stuart 2012 GST Family Trust; Stuart 2005 GST Family Trust; and Celebration, LLC were represented by legal counsel." Defendants' Acquiescence MSJ ¶ 15, at 8 (stating this fact).[14] "Each of the individual Plaintiffs executed and delivered a proxy to SFF-TIR, LLC to act on his or her behalf with respect to his or its TIR Inc. shares which proxies were in effect on November

---

[13]In the Response to Defendants' Acquiescence MSJ ¶ 14, at 8 the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion and so does not materially affect the Plaintiffs' admission of the fact.

[14]In Response to Defendants' Acquiescence MSJ ¶ 15, at 8 the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

2, 2013." Defendants' Acquiescence MSJ ¶ 16, at 8 (stating this fact).[15]   "[T]he Plaintiffs, led by Alan Stuart, attempted to negotiate a sale of their minority block of shares to Cypress for a substantially higher share price." Defendants' Acquiescence MSJ ¶ 19, at 9 (stating this fact).[16]

"Following the June 26, 2013 Control Acquisition, and after certain resignations, TIR's Board of Directors had three members as of October 31, 2013: Defendant Lawrence Field, Defendant Peter Boylan, and Randall Lorett, the President and CEO of TIR." Plaintiffs' MSJ ¶ 10, at 4 (stating this fact).[17]   "On September 20, 2013, Cypress Energy Partners Limited

---

[15]In Response to Defendants' Acquiescence MSJ ¶ 16, at 8, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[16]The Plaintiffs purport to dispute this fact "to the extent that it suggests that there was a winner-take-all competition in 2013 to acquire control of TIR." Response to Defendants' Acquiescence MSJ ¶ 6, at 9. The Plaintiffs then continue: "Plaintiffs otherwise admit that Plaintiffs attempted to negotiate a substantially higher sale price for their shares, except that Plaintiffs object to this fact as immaterial and irrelevant." Response to Defendants' Acquiescence MSJ ¶ 6, at 9. The Court sees no evidence in the fact, as the Defendants state it, that the Defendants suggest the existence of a winner-take-all competition in 2013. Furthermore, contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[17]The Defendants purport to dispute this fact "[f]or avoidance of doubt," indicating that

Partnership filed a Registration Statement (including the prospectus) for the public offering of partnership units of TIR shares, pursuant to the confidentiality provisions of the Jumpstart Our Business Startups Act." Defendants' Acquiescence MSJ ¶ 20, at 9 (stating this fact). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "As of November 2, 2013, all plaintiffs had granted proxies to Plaintiff SFF-TIR to vote their TIR Inc. shares and agreed among themselves not to sell their TIR Inc. shares for less than $654,632." Defendants' Acquiescence MSJ ¶ 21, at 9 (stating this fact).[18] "On October 31, 2013, Cypress and TIR Inc. made a Tender Offer [Letter from Cypress Energy Partners to Shareholders of Tulsa Inspection Resources, Inc. (dated October 31, 2013), filed September 15, 2015 (Doc. 158-3)(Tender Offer)] to TIR Inc.'s remaining shareholders, including the Plaintiffs, for $451,000." Defendants' Acquiescence MSJ ¶ 22, at 9 (stating this fact). See Response to Defendants' Acquiescence MSJ

_____

TIR, Inc.'s board of directors "had three members -- Mr. Field, Mr. Boylan, and Mr. Lorett -- and two vacant positions as of October 31, 2013." Response to Plaintiffs' MSJ at 3 (relying on Letter from Cypress Energy Partners to Shareholders of Tulsa Inspection Resources, Inc. at 3 (dated October 31, 2013), filed September 15, 2015 (Doc. 158-3)). The Court notes that this observation is a difference without a distinction. Analogously, if one says that a person is holding up three fingers on one hand, that statement is the equivalent of saying that one is holding up three fingers on one hand and that the other two fingers on the hand are not being held up. Furthermore, the Defendants do not dispute that L. Field., Boylan, and R. Lorett were the only three sitting TIR, Inc. board members as of October 31, 2013; the Court deems this fact to be undisputed.

[18]In Response to Defendants' Acquiescence MSJ ¶ 23, at 9, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

¶ 1, at 8 (not disputing this fact).

> The Tender Offer disclosed (i) that the Registration Statement had been filed, (ii) that Cypress Energy intended to enter into an underwriting agreement for the public offering of master limited partnership units and that the equity of TIR Inc. might be dropped into the new publicly traded entity, and (iii) the purchase of shares (and share prices) by which the Defendants acquired TIR Inc. shares.

Defendants' Acquiescence MSJ ¶ 23, at 9 (stating this fact)(relying on Videotaped Deposition of

Anurag Agarwal (taken September 29, 2014), filed April 3, 2015(Doc. 83-20)("Agarwal Depo.

Ex. 1").[19] In a section called "Certain Conflicts of Interest," the Tender Offer states:

---

[19]The Plaintiffs purport to dispute this fact. According to the Plaintiffs, the Tender Offer contains material misstatements and omissions:

> First, the Tender Offer failed to disclose (i) the value Defendants would receive for their interests in TIR as a result of the MLP IPO; (ii) the fact that Defendants had projected internally, and to third parties (including underwriters for the MLP IPO), that TIR would reach $21 million adjusted EBITDA by the end of 2013; (iii) and TIR's substantial growth in revenues, headcount and EBITDA month-over-month. . . . While the Tender Offer included financials for September 2012 and September 2013, it did not include any financials showing the unprecedented growth the Company was experiencing on a monthly basis. The Tender Offer also included affirmative misstatements: (i) it claimed certain issues with accounts receivable for TIR Canada were "material," even as just days earlier internal documents show Defendants had concluded the impaired accounts receivable amounted to less than the $300,000 reserve Defendants had set aside to address the issue (which can hardly be described as "material" in light of TIR's projected $21M adjusted EBITDA for 2013); and (ii) to support the offer price of $451,000 per share, it claimed Defendants had purchased TIR shares from 13 unnamed shareholders at a price of $451,000 or lower in October 2013. Not only did this conflict with Defendants' earlier promise on June 26, 2013 that it would buy out all TIR shareholders at the same price, but also with numerous internal statements by Defendants that they in fact had purchased from only 4 TIR shareholders at a price of $451,000 or less in October 2013.

Response to Defendants' Acquiescence MSJ ¶ 7, at 9 (internal citation omitted). The Court notes, however, that the fact as the Defendants word it in their Defendants' Acquiescence MSJ asserts certain items that were disclosed; it does not touch on items that the Plaintiffs may have failed to disclose. See Defendants' Acquiescence MSJ ¶ 22, at 9. Moreover, alleged misstatements in the disclosure about other issues does not fall within this asserted fact's scope. Because the Plaintiffs do not dispute the assertion that the tender offer disclosed that (i) the Registration Statement had been filed; (ii) that Cypress Energy intended to enter into an

> "As a result of the June Acquisition, Mr. Boylan, and Mr. Field (who is affiliated with Mr. Stephenson and Ms. Field) may each be deemed to have a conflict of interest related to this Offer." *Id.* [Tender Offer] at 2.

> "As a result of the foregoing potential conflicts of interest, the TIR Board has not been asked to and is not making any recommendation to you regarding this Offer." *Id.* [Tender Offer at 2]

> "None of the Purchasers, nor any of their respective affiliates has performed or commissioned any appraisal, or engaged any independent financial advisor or other third party to perform any valuation analysis or provide any opinion respecting the value of the Shares in connection with this Offer." *Id.* [Tender Offer at 2]

Plaintiffs' MSJ ¶ 12, at 4 (stating this fact)(internal citation omitted). <u>See</u> Response to Plaintiffs' MSJ at 2 (not disputing this fact). The merger between TIR, Inc. and TIR, LLC "enabled the Controlling Shareholder Defendants to exchange their own TIR shares for equity in the new entity, Defendant TIR LLC, in proportion to their prior shareholders in TIR." Plaintiffs' MSJ ¶ 15, at 4 (stating this fact). <u>See</u> Response to Plaintiffs' MSJ at 2 (not disputing this fact). "The Merger was approved and carried out by the following Defendants: [(i)] The Controlling Shareholder Defendants, *i.e.*, Defendants CEP-TIR, LLC, Stephenson, and Cynthia Field; and [(ii)] TIR Directors Lawrence Field and Peter Boylan III . . . ." Plaintiffs' MSJ ¶ 16, at 4-5 (bullets and internal citations omitted)(stating this fact). <u>See</u> Response to Plaintiffs' MSJ at 2 (not disputing this fact). "TIR's Rule 30(b)(6) witness, Dan O'Keefe, admitted that because the Board composition had not changed, the same conflicts of interest that existed at the time of the Tender Offer also existed at the time of the Merger." Plaintiffs' MSJ ¶ 18, at 5 (stating this fact). <u>See</u> Response to Plaintiffs' MSJ at 2 (not disputing this fact).

    "On November 13, 2013, Cypress Energy's SEC Registration Statement containing the

---

underwriting agreement for the public offering of Master Limited Partnership units and that the equity of TIR Inc. might be dropped into the new publicly traded entity; and (iii) the purchase of shares (and share prices) by which the Defendants acquired TIR Inc. shares, the Court deems this fact to be undisputed.

prospectus for the sale of partnership units in the master limited partnership became public." Defendants' Acquiescence MSJ ¶ 24, at 9 (stating this fact). <u>See</u> Response to Defendants' Acquiescence MSJ ¶ 1, 8 (not disputing this fact). "Shortly after November 13, 2013, the Plaintiffs analyzed or had analyzed by one or more of their representatives the Registration Statement." Defendants' Acquiescence MSJ ¶ 25, at 9 (stating this fact).[20] "By November 26, 2013, the Plaintiffs had received and either personally reviewed the October 31 Tender Offer or had had the October 31 Tender Offer reviewed by legal counsel or SFF-TIR, LLC on their behalf." Defendants' Acquiescence MSJ ¶ 26, at 9 (stating this fact).[21] "The Plaintiffs did not accept the October 31 Tender Offer." Defendants' Acquiescence MSJ ¶ 27, at 9 (stating this fact). <u>See</u> Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "The

---

[20]In Response to Defendants' Acquiescence MSJ ¶ 25, at 9, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. <u>See</u> N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." <u>Lowery v. City of Albuquerque</u>, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[21]In Response to Defendants' Acquiescence MSJ ¶ 26, at 9, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. <u>See</u> N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." <u>Lowery v. City of Albuquerque</u>, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

Plaintiffs could not have tendered their shares in response to the Tender Offer no matter what the Offer said or did not say; the Plaintiffs had contractually agreed prior to the Tender Offer not to sell their TIR Inc. shares for less than $654,632." Defendants' Acquiescence MSJ ¶ 28, at 9 (stating this fact).[22] "By November 26, 2013, the Plaintiffs had received and either (i) personally reviewed or (ii) had had reviewed by legal counsel or SFF-TIR, LLC on their behalf the Cypress Energy Partners Limited Partnership registration Statement." Defendants' Acquiescence MSJ ¶ 29, at 10 (stating this fact).[23]

> The SEC Registration Statement included the following information respecting Cypress Energy Partners Limited Partnership and the Initial Public Offering: (a) Prospectus; (b) List of risks to its business; (c) Capitalization; (d) Cash distribution policy, projections and partnership agreement provisions relating to cash distributions; (e) Historical and projected financial data: (f) Management

---

[22]In Response to Defendants' Acquiescence MSJ ¶ 28, at 9, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[23]In Response to Defendants' Acquiescence MSJ ¶ 29, at 10, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

discussion and analysis of financial condition; (g) detailed descriptions of the industries in which Cypress Energy Partners was engaged, Cypress' business and Cypress' management; (h) Cypress Energy Partners' partnership agreement; (i) Underwriting information; (j) complete audited financial statements (as of September 30, 2013).

Defendants' Acquiescence MSJ ¶ 30, at 10 (stating this fact)(relying on Austin Aff.) .[24] "As of November 2013, TIR had (a) revenues of $346.6 million, which was and [sic] 28 percent higher than TIR's budgeted figure; (b) pretax profits of $1.6 million; and (c) $9 million year to date, which were all were [sic] the 'highest numbers [TIR] had had historically" as of that time. Plaintiffs MSJ ¶ 26, at 6 (last set of bracketed material in the original)(stating this fact)(citing O'Keefe Depo. at 297:16-299:13). See Response to Plaintiffs' MSJ at 2 (not disputing this fact). "TIR did not do a valuation [to inform] its merger consideration offer." Plaintiffs' MSJ ¶ 27, at 6 (internal quotation marks omitted)(stating this fact).[25] "Defendants did not disclose to Plaintiffs

---

[24]The Plaintiffs purport to dispute this fact. According to the Plaintiffs, the

S-1 Registration Statement (the "S-1") did not disclose material information in Defendants' possession, including the pricing information for the IPO [Initial Public Offering] and how many limited liability company units in the Merger Sub Defendants would receive in exchange for their TIR shares, or the value of such equity merger consideration. Moreover, the projected financial data contained in the S-1 was incomplete as it did not include yearend 2013 EBITDA [Earnings Before Interest, Tax, Depreciation, and Amortization] projections for TIR, or the fact that Defendants had projected internally that year-end 2013 revenues would exceed $360 million (and by year-end, they in fact reached nearly $380 million).

Response to Defendants' Acquiescence MSJ ¶ 8, at 10. The Court notes that the fact, as the Defendants word it, indicates what information the Registration Statement included and not what it excluded. See Defendants' Acquiescence MSJ ¶ 30, at 10. One might argue that the canon of construction expressio unius est exclusio alterius suggests that the Defendants' choice to list ten items that they assert the Registration Statement contains means that other items were not included. Whether accurate or inaccurate, such an interpretation is irrelevant; the Plaintiffs do not dispute the inclusion of the ten items that the Defendants assert are in the Registration Statement. Because the Plaintiffs do not dispute this fact, the Court deems it to be undisputed.

[25]The Defendants purport to dispute this fact, indicating:

TIR's internal October and November 2013 financial statements . . . showing record-breaking revenues or TIR's November 16, 2013 management projections . . . of even higher revenues through 2018."  Plaintiffs' MSJ ¶ 28, at 6 (internal citations omitted)(stating this fact).  <u>See</u> Response to Plaintiffs' MSJ at 2 (not disputing this fact).  "On November 26, 2013, the plaintiffs claimed each share of TIR Inc. was worth $650,000."  Defendants' Acquiescence MSJ ¶ 32, at 10 (stating this fact).[26]  "On November 29, 2013, Defendants advised that the Defendants could not negotiate any purchase during the tender offer period."  Defendants' Acquiescence MSJ ¶ 33, at 10 (stating this fact).[27]

---

TIR offered the same or higher share price to Plaintiffs than TIR had offered Pooled Shareholders and other selling shareholders in the intervening months.  No appraisal was appropriate.  Aware of its performance through October and November 2013, TIR nonetheless stated in the Merger Notice that it believed $451,000 per share "represents a premium over the fair value of such shares."

Response to Plaintiffs' MSJ at 3 (quoting Notice to Former Shareholders of Tulsa Inspection Resources, Inc. of Shareholder Action and Appraisal Rights at 2, (dated December 11, 2013) filed September 15, 2015 (Doc. 158-5))(internal citation omitted).  The Defendants' assertion that an appraisal was not appropriate is a legal question and not a factual question.  The Defendants do not dispute the Plaintiffs' assertion in this fact that the Defendants did not commission another valuation to inform their merger consideration offer.  Because the Defendants do not dispute this fact, the Court deems it to be undisputed.

[26]In Response to Defendants' Acquiescence MSJ ¶ 32, at 10, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger."  Response to Defendants' Acquiescence MSJ ¶ 2, at 8.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  <u>See</u> N.D. Okla. LCvR56.1(c).  The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  <u>Lowery v. City of Albuquerque</u>, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[27]In Response to Defendants' Acquiescence MSJ ¶ 33, at 10, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness

"The TIR Board unanimously approved the Merger in a consent dated December 9, 2013 signed by all three Directors."  Plaintiffs' MSJ ¶ 19, at 5 (stating this fact).  See Response to Plaintiffs' MSJ at 2 (not disputing this fact).  "CEP-TIR, LLC, Stephenson, and Cynthia Field, the majority shareholders in TIR, approved the Merger in a similar consent dated December 9, 2013 signed by all three of the majority shareholders."  Plaintiffs' MSJ ¶ 20, at 5 (stating this fact).  See Response to Plaintiffs' MSJ at 2 (not disputing this fact).  "Plaintiffs were all minority shareholders of TIR at the time of the Merger, owning the 32.882 outstanding shares that were canceled by the Merger."  Plaintiffs' MSJ ¶ 21, at 5 (stating this fact).  See Response to Plaintiff's MSJ at 2 (not disputing this fact).  "The Merger Agreement stated in its 'Governing Law' provision . . . that 'the provisions of this Agreement relating to mechanics or the effects of the Merger under Delaware law shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.'"  Plaintiffs' MSJ ¶ 22, at 5 (stating this fact)(quoting Merger Agreement at § 8.04).[28]

"On December 9, 2013, Cypress and TIR exercised their statutory right to cash-out the

---

standard of review that governs the Tender Offer and Merger."  Response to Defendants' Acquiescence MSJ ¶ 2, at 8.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[28]The Defendants purport to dispute this fact "[f]or avoidance of doubt," insisting that the "laws of the State of Oklahoma are applicable to Plaintiffs' breach of fiduciary duty claims . . . and unjust enrichment claim . . . ."  Response to Plaintiffs' MSJ at 3.  This objection is legal rather than factual.  The Defendants do not dispute that the merger agreement language is as the Plaintiffs' report it in this fact.  Because the Defendants do not dispute this fact, the Court deems the fact to be undisputed.

Plaintiffs . . . ." Defendants' Acquiescence MSJ ¶ 34, at 10 (stating this fact)(relying on Notice to Former Shareholders of Tulsa Inspection Resources, Inc. of Shareholder Action and Appraisal Rights (dated December 11, 2013), filed April 3, 2015 (Doc. 83-27).[29] "On December 11, 2013, the Plaintiffs received timely after-the-fact notice of the Merger and their appraisal rights in accordance with the Oklahoma statutes." Defendants' Acquiescence MSJ ¶ 37, at 11 (stating this fact). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "The Merger Agreement (dated December 9, 2013), filed April 3, 2015 (Doc. 83-27), provides that:

> For the avoidance of doubt, any former shareholder who surrenders his, her or its share certificate (or acceptable evidence of share ownership for payment of Merger Consideration pursuant to **Section 2.02** [payment provisions], shall be deemed to have (a) accepted the Merger Consideration and (b) forever waived any appraisal rights pursuant to this **Section 2.03** [provisions respecting dissenting share], Section 1091 of the [Oklahoma General corporation Act], or otherwise.

Defendants' Acquiescence MSJ ¶ 38, at 11 (citing Agarwal Depo. Ex. 7)(stating this fact). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "On December 18-20, 2013, each Plaintiff delivered his or its TIR Inc. share certificates to the Defendant CEP-TIR, along with stock powers, pursuant to the provisions of the Merger Agreement."

---

[29]In the Defendants' Acquiescence MSJ, the Defendants word this fact as follows: "On December 9, 2013, Cypress and TIR exercised their statutory right to cash-out the Plaintiffs at $451,000 per share." Defendants' Acquiescence MSJ ¶ 34, at 10. The Plaintiffs purport to dispute this fact, asserting that they dispute it "to the extent it suggests that Defendants had any right to cash-out Plaintiffs for an unfair price," adding that the fact "is otherwise admitted." Response to Defendants' Acquiescence MSJ ¶ 9, at 10. The Court notes that the Plaintiffs do not contest the Defendants' assertion that the Defendants' statutory rights included cashing out the Plaintiffs, but only that these statutory rights did not also encompass the right to cash the Plaintiffs out at "an unfair price." Response to Defendants' Acquiescence MSJ ¶ 9, at 10. Whether $451,000.00 is a fair share price for TIR, Inc. shares at the time the merger was effected is a legal question rather than a factual question, or at least a fact for the jury to find -- a legal question or jury question that the Court discussed at length in its analysis of the Defendants' Acquiescence MSJ and the Plaintiffs' Estoppel MSJ in its MOO. The Court therefore reports the fact as it is undisputed.

Defendants' Acquiescence MSJ ¶ 39, at 11 (stating this fact).[30]  "On December 23, 2013, the

Defendant TIR LLC paid . . . Plaintiffs . . . the $451,000 per share Merger Consideration."

Defendants' Acquiescence MSJ ¶ 40, at 11 (stating this fact).[31]  "As of December 9, 2013 (the

date on which the Merger was consummated) and as of December 18-20, 2013 (the date on

which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the Defendants

had acquired control of TIR Inc."  Defendants' Acquiescence MSJ ¶41, at 11 (stating this fact).[32]

---

[30]The Plaintiffs purport to dispute this fact, indicating that they dispute the fact "to the extent Defendants suggest Plaintiffs' delivery of their shares pursuant to the Merger Agreement was a voluntary choice. Rather, Plaintiffs as minority shareholders were forcibly squeezed out of TIR, as evidenced by the 'after-the-fact' December 11, 2013 Merger Notice, which informed Plaintiffs that their shares had already been cancelled."  Response to Defendants' Acquiescence MSJ ¶ 12, at 10 (relying on Agarwal Depo. Ex. 7).  Because (i) the fact as the Defendants assert it does not speak to whether the share certificate delivery was voluntary or involuntary; and (ii) the Plaintiffs do not dispute the asserted fact that each Plaintiff delivered his or its share certificates, along with stock powers, to CEP-TIR between December 18 and December 20, 2013, the Court deems the fact to be undisputed.

[31]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows: "On December 23, 2013, the Defendant TIR LLC paid, and the Plaintiffs accepted, the $451,000 per share Merger Consideration."  Defendants' Acquiescence MSJ ¶ 40, at 11.  The Plaintiffs purport to dispute the entire fact as the Defendants assert it, maintaining that the "Plaintiffs did not 'accept' the $451,000 per share merger consideration, but were forcibly cashed out."  Response to Defendants' Acquiescence MSJ ¶ 13, at 10.  As is true for Defendant's undisputed fact 39, discussed in footnote 30, <u>supra</u>, the dispute with respect to this fact centers on the transaction's voluntariness, and not whether the transaction took place for the amount that the Plaintiffs indicate.  Consequently, the Court amends the fact as the Defendants assert it to reflect the fact's elements that are undisputed.

[32]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows: "As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the Defendants had acquired control of TIR Inc."  Defendants' Acquiescence MSJ ¶ 41, at 11 (relying on Videotaped Deposition of Nathan Allen at 73:17-74:2 (taken February 25, 2015), filed April 3, 2015 (Doc. 83-23)("Allen Depo.").  The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'"  Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 41, at 11).  The Plaintiffs clarify that they received <u>cash</u> merger consideration but did not receive <u>equity</u> merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants

"As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the transactions by which the Defendants acquired controlling shares of TIR, Inc. and the prices paid for those shares."  Defendants' Acquiescence MSJ ¶ 42, at 11 (stating this fact).[33]

---

received."  Response to Defendants' Acquiescence MSJ ¶ 14, at 10.  Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial as what 'Plaintiffs knew' concerning the Merger process [because knowledge] has no bearing upon the entire fairness of the Merger."  Response to Defendants' Acquiescence MSJ ¶ 14, at 10.  The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact:  "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[33]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the transactions by which the Defendants acquired controlling shares of TIR, Inc. and the prices paid for the shares.

Defendants' Acquiescence MSJ ¶ 42, at 11 (relying on Allen Depo. at 73:17-74:2).  The Plaintiffs purport to dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'"  Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 42, at 11).  The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received."  Response to Defendants' Acquiescence MSJ ¶ 14, at 10.  Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger [because knowledge] process has no bearing upon the entire fairness of the Merger."  Response to Defendants' Acquiescence MSJ ¶ 14, at 10.  The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla.

"Defendants admit that they did not: [(i)] Form a special committee of disinterested directors or other disinterested persons to consider the proposed merger; [(ii)] Engage any independent financial advisor or other third party valuation analysis; or [(iii)] Require a majority-of-the-minority vote for the Merger to be approved."  Plaintiffs' MSJ ¶ 23, at 5-6 (bullets and internal citations omitted)(stating this fact).  See Response to Plaintiffs' MSJ at 3 (not disputing this fact).  "There is no other evidence that Defendants employed any of the above devices at the time of, and in connection with, the Merger."  Plaintiffs' MSJ ¶ 24, at 6 (stating this fact).  See Response to Plaintiffs' MSJ at 3 (not disputing this fact).

> As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the Defendants' conflicts of interest between their positions as officers, directors and shareholders of TIR Inc. and their positions as officers, directors, and equity owners of Cypress Energy and its Affiliates.

Defendants' Acquiescence MSJ ¶ 43, at 11 (stating this fact)(relying on Allen Depo. at 108:3-112:3).[34]

---

LCvR56.1(c).  The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[34]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

> As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the Defendants' conflicts of interest between their positions as officers, directors and shareholders of TIR Inc. and their positions as officers, directors, and equity owners of Cypress Energy and its Affiliates.

Defendants' Acquiescence MSJ ¶ 43, at 11.  The Plaintiffs dispute this fact only insofar as it

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the intentions of the Defendants respecting the organization of a master limited partnership, the exchange of shares of TIR Inc. for units of ownership in the master limited partnership, and an initial public offering of units of ownership in the master limited partnership.

Defendants' Acquiescence MSJ ¶ 44, at 12 (stating this fact)(relying on Allen Depo. at 191:8-193:4).[35]

---

"incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'"  Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 43, at 11).  The Plaintiffs clarify that they received <u>cash</u> merger consideration but did not receive <u>equity</u> merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received."  Response to Defendants' Acquiescence MSJ ¶ 14, at 10.  Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger."  Response to Defendants' Acquiescence MSJ ¶ 14, at 10.  The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  <u>See</u> N.D. Okla. LCvR56.1(c).  The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  <u>Lowery v. City of Albuquerque</u>, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[35]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the intentions of the Defendants respecting the organization of a master limited partnership, the exchange of shares of TIR Inc. for units of ownership in the master limited partnership, and an initial public offering of units of ownership in the master limited partnership.

Defendants' Acquiescence MSJ ¶ 44, at 11.  The Plaintiffs purport to dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'"  Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 44, at 11).  The Plaintiffs clarify that they received <u>cash</u> merger consideration but did not receive <u>equity</u> merger consideration in the Merger Sub, "which

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the Defendants had not performed or commissioned any appraisal, or engaged any independent financial advisor or other third party to perform any valuation analysis or provide any opinion respecting the value of the TIR, Inc. shares.

Defendants' Acquiescence MSJ ¶ 45, at 12 (stating this fact)(relying on Allen Depo. at 99:5-104:24, Agarwal Depo. at 42:1-44:17, and Agarwal Depo. Ex. 1).[36]

_____

was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[36]In Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the Defendants had not performed or commissioned any appraisal, or engaged any independent financial advisor or other third party to perform any valuation analysis or provide any opinion respecting the value of the TIR, Inc. shares.

Defendants' Acquiescence MSJ ¶ 45, at 12. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 45, at 12). The Plaintiffs clarify that they received <u>cash</u> merger consideration but did not receive <u>equity</u> merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the Defendants had not obtained the approval of a majority of the minority in effecting the Merger: the Plaintiffs were the remaining TIR Inc. minority shareholders. As a group, the Plaintiffs had demanded in September to sell their shares for a price in excess of $600,000 per share, and in November had agreed amongst themselves not to accept the Tender Offer.

Defendants' Acquiescence MSJ ¶ 46, at 12 (stating this fact).[37] "As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on

_____

fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[37]In Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the Defendants had not obtained the approval of a majority of the minority in effecting the Merger: the Plaintiffs were the remaining TIR Inc. minority shareholders. As a group, the Plaintiffs had demanded in September to sell their shares for a price in excess of $600,000 per share, and in November had agreed amongst themselves not to accept the Tender Offer.

Defendants' Acquiescence MSJ ¶ 46, at 12. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 46, at 12). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact,

which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the Defendants had not formed a special committee to consider the proposed Merger." Defendants' Acquiescence MSJ ¶ 47, at 12 (stating this fact)(relying on Allen Depo. at 272:3-273:17).[38]

> As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR

---

nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[38]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

> As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the Defendants had not formed a special committee to consider the proposed Merger.

Defendants' Acquiescence MSJ ¶ 47, at 12. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 47, at 12). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

Inc. shares . . . ), the Plaintiffs had been provided the financial statements of TIR Inc. for 2011 and 2012, and for the nine month period ending September 30, 2013.

Defendants' Acquiescence MSJ ¶ 48, at 12 (stating this fact)(relying on Allen Depo. at 83:18-84:1, 223:21-224:3).[39] "As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs had received the Registration Statement." Defendants' Acquiescence MSJ ¶ 49, at 12 (stating this fact)(relying on Allen Depo. at 194:2-11).[40]

---

[39]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs had been provided the financial statements of TIR Inc. for 2011 and 2012, and for the nine month period ending September 30, 2013.

Defendants' Acquiescence MSJ ¶ 48, at 12. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 48, at 12). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[40]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows: "As of

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs believed that the Defendants did not believe (and had no reasonable basis to believe) that $451,100 per TIR Inc. share represented a premium over the fair value of such shares.

Defendants' Acquiescence MSJ ¶ 50, at 13 (stating this fact)(relying on Allen Depo. at 206:11-208:25).[41]

---

December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs had received the Registration Statement." Defendants' Acquiescence MSJ ¶ 49, at 12. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 49, at 12). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[41]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs believed that the Defendants did not believe (and had no reasonable basis to believe) that $451,100 per TIR Inc. share represented a premium over the fair value of such shares.

Defendants' Acquiescence MSJ ¶ 50, at 13. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 50, at 13). The Plaintiffs clarify that they received cash merger

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the dates on which the Plaintiffs surrendered their TIR Inc. shares . . . ), Plaintiffs believed both Plaintiffs' financial presentations and Defendants' financial presentations showed the TIR Inc. shares were worth several multiples of $451,000.

Defendants' Acquiescence MSJ ¶ 51, at 13 (stating this fact)(relying on Complaint, filed July 3, 2014 (Doc. 1)).[42]

---

consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[42]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the dates on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), Plaintiffs believed both Plaintiffs' financial presentations and Defendants' financial presentations showed the TIR Inc. shares were worth several multiples of $451,000.

Defendants' Acquiescence MSJ ¶ 51, at 13. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 51, at 13). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact,

On February 4, 2014, Plaintiff SFF-TIR, LLC by its Managing Member, Alan Stuart, sent a letter to the investors in Plaintiff SFF-TIR in the form and content of [Letter from Alan Stuart to SFF-TIR, LLC investors (dated February 12, 2014), filed April 3, 2015 (Doc. 83-31)("Letter to SFF-TIR, LLC Investors")], which stated, in part, as follows

> "We are pleased to inform our investors in SFF-TIR, LLC ('SFF[-]TIR') we were able to liquidate our equity position in Tulsa Inspection Resources, Inc. ('TIR'). On December 23, 2013 we received cash consideration of $451,000 per share for a total cash consideration of $5,763,780. The investment in TIR has generated 2.47x our original investment with a net annualized IRR of 40.42%."

Defendants' Acquiescence MSJ ¶ 53, at 13 (stating this fact)(quoting Letter to SFF-TIR, LLC Investors 1, filed April 3, 2015 (Doc. 83-32)).[43]

> After . . . December 18-20, 2013, Defendants CEP-TIR, Charles Stephenson, and Cynthia Field, believing the Plaintiffs to have waived all claims to additional consideration for their shares, contributed 50.1% of the member interest in TIR LLC to Cypress Energy Partners Limited Partnership, and Cypress Energy Partners Limited Partnership effected a sale of partnership units to the public pursuant to the Registration Statement.

---

nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

[43]The Plaintiffs do not dispute this fact, but they maintain that it is "immaterial and irrelevant." Response to Defendants' Acquiescence MSJ ¶ 16, at 11. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). The Court has previously noted that arguing at the summary-judgment stage that a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so does not materially affect the Plaintiffs' admission of the fact.

Defendants' Acquiescence MSJ ¶ 54, at 13 (stating this fact)(relying on Austin Aff. ¶ 5, at 2-3). "On July 3, 2014, the Plaintiffs filed this action." Defendants' Acquiescence MSJ ¶ 55, at 13 (stating this fact)(relying on Complaint). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact).

## PROCEDURAL BACKGROUND

With this Memorandum and Opinion, the Court resolves and decides the Defendants' Motion for Reconsideration. In this section, the Court will summarize the Motion for Reconsideration, the Plaintiffs' response, and the Defendants' reply. The Court also recapitulates the parties' arguments during the motion hearing, during which the parties largely adhered to the points and arguments they raised in their briefings.

### 1. Plaintiffs' Motion for Partial Summary Judgment on Breach of Fiduciary Duty Claims.

The Plaintiffs filed Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment on Breach of Fiduciary Duty Claims on September 14, 2015. See Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment on Breach of Fiduciary Duty Claims, filed September 14, 2015 (Doc. 157)("Plaintiffs' MSJ"). With this motion, the Plaintiffs seek partial summary judgment on two claims: (i) the Plaintiffs' First Claim for Relief against the Controlling Shareholder Defendants; and (ii) the Plaintiffs' Second Claim for Relief against the Director Defendants, for breach of fiduciary duty. See Plaintiffs' MSJ at 7.

In relation to these claims, the Plaintiffs first petition the Court to grant partial summary judgment holding that the entire-fairness standard governs the merger, because the merger was a

self-dealing transaction.[44]  See Plaintiffs' MSJ at 9-10.  The Plaintiffs insist that a showing of

self-dealing suffices to require the Court to apply the entire-fairness doctrine, see Plaintiffs' MSJ

at 11, and that the undisputed material evidence shows that the merger was self-dealing, as

corporate fiduciaries stood on both sides of the transaction and -- the Plaintiffs assert -- did

nothing to disable themselves from this conflict, see Plaintiffs' MSJ at 12-13.  The need for the

entire-fairness standard to apply is especially acute in this case, the Plaintiffs contend, because (i)

the Defendants had a direct interest in making the "fair value" as low as possible as owners and

directors of the surviving entity, Plaintiffs' MSJ at 13; and (ii) the Defendants made a

determination to allocate different consideration to themselves and to the Plaintiffs when they

obtained for themselves the benefit of TIR, Inc.'s rapidly increasing cash flow as qualified

income for the profitable MLP[45] IPO they planned to conduct and to award themselves equity in

---

[44]The entire-fairness standard, the Plaintiffs assert, imposes both a substantive and a procedural requirement on directors and controlling shareholders.  See Plaintiffs' MSJ at 9. Substantively, the Plaintiffs maintain, the entire-fairness standard requires proof that the merger is the product of both fair dealing and fair price.  See Plaintiffs' MSJ at 9.  Procedurally, the Plaintiffs contend, the entire-fairness standard imposes the burden of persuasion on the defendant directors and controlling shareholders, throughout the trial, to prove that the challenged merger met the entire-fairness test's substantive requirements.  See Plaintiffs' MSJ at 9.

The Plaintiffs define "fair dealing" by reference to Weinberger v. UOP, Inc., 457 A.2d 701 (Del. 1983), indicating that fair dealing "'embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained.'"  Plaintiffs' MSJ at 10 (quoting Weinberger v. UOP, Inc., 457 A.2d at 711).  The Plaintiffs also define "fair price" by reference to Weinberger v. UOP, Inc., indicating that fair price "'relates to the economic and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock.'"  Plaintiffs' MSJ at 10 (quoting Weinberger v. UOP, Inc., 457 A.2d at 711)).

[45]An MLP, a master limited partnership, is a state law entity that has publicly traded securities listed on major exchanges, but that differ from corporations in that revenue is passed through to the shareholders for tax purposes.  See Michael Cumming, Morningstar. What Is a Master Limited Partnership?, August 9, 2007, http://news.morningstar.com/articlenet/article .aspx?id=203288 (last visited August 26, 2017).  MLPs typically are found only in the energy sector.  See David T. Kwon, Vanguard Research, User's Guide to Master Limited Partnerships,

that public entity while denying the same benefit to the Plaintiffs, see Plaintiffs' MSJ at 13-14.

The Defendants also petition the Court to grant partial summary judgment holding that the Defendants bear the burden throughout the trial to prove the merger's entire fairness, because they used no procedural mechanisms to cure their conflict of interest. See Plaintiffs' MSJ at 9-10, 15. As the Plaintiffs read Delaware law, the Defendants may shift the burden of persuasion on the entire-fairness issue only by either (i) showing that a well-functioning committee of independent directors approved the transaction; or (ii) showing that a majority of the minority shareholders approved the merger transaction via an informed vote. See Plaintiffs' MSJ at 15. The Plaintiffs insist that the Defendants took neither of these curative measures. See Plaintiffs' MSJ at 15-17. Accordingly, the Plaintiffs seek for the Court to grant summary judgment that the Defendants bear the burden to prove entire fairness at trial. See Plaintiffs' MSJ at 17.

Under the entire-fairness standard, the Plaintiffs argue, the undisputed material facts show that the Defendants breached their fiduciary duty of fair dealing. See Plaintiffs' MSJ at 17. The Plaintiffs allege that the Defendants intentionally structured the merger so that it was not negotiated with the Plaintiffs and never obtained the Plaintiffs' approval. See Plaintiffs' MSJ at 18. The Plaintiffs assert that the Defendants intended the merger transaction to eliminate the Plaintiffs as stockholders to prevent them from receiving any benefit from the planned Cypress

Sept. 2014, https://personal.vanguard.com/pdf/ISGPMLP.pdf (last visited August 26, 2017). At the time of the case's merger, companies formed MLPs to secure a variety of benefits, including the following: (i) monetization of assets at fair market value; (ii) high value of assets in a separate company; (iii) lower cost of capital; (iv) tax benefits upon contribution and ongoing tax benefits; (v) retention of control over assets; (vi) incentive distribution rights; (vii) ability to limit fiduciary duties to public unitholders; (viii) high-yield security with reliable distributions; (ix) one taxation level, leaving more cash available for distribution; (x) expected increases in distributions; (xi) potential unit appreciation; (xii) limited liability similar to corporate common stock; (xiii) tax shield typically equivalent to 80-90% of cash distributions; and (xiv) tax-deferred portion not taxable until unitholder sells securities. See Paul Hastings LLP, Master Limited Partnership Overview: August 2013, slide 5, https://www.paulhastings.com/docs/default -source/PDFs/mlp-primer.pdf (last visited August 26, 2017).

Energy Partners, L.P. IPO and that the Defendants forced the Plaintiffs out at a price which greatly underestimated the true share value. See Plaintiffs' MSJ at 18-20. As the Plaintiffs see it, the Defendants' alleged failure to use any procedures to determine independently fair value, by itself, establishes their breach of duty, even if the Defendants believed that the price they offered is fair. See Plaintiffs' MSJ at 20-21. The Plaintiffs reject the proposition that the Defendants could have discharged their duties simply by following the statutory merger procedure and offering the Plaintiffs an appraisal. See Plaintiffs' MSJ at 21. The Defendant, therefore, reiterate their request that the Court grant partial summary judgment that: (i) the entire fairness standard governs the Plaintiffs' claims for breach of fiduciary duty; and (ii) the Defendants bear the burden of proving that the merger satisfies the entire fairness standard. See Plaintiffs' MSJ at 22. The Defendants further ask the Court to grant partial summary judgment holding that Defendants CEP-TIR, LLC, Stephenson, C. Field, L. Field, and Boylan are liable for breaches of the duty of entire fairness, reserving for trial the issue of damages. See Plaintiffs' MSJ at 22.

### 2. **The Defendants' Response to the Plaintiffs' MSJ.**

The Defendants filed the Defendants' Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Breach of Fiduciary Duty Claims (Doc. 157) on October 5, 2015. See Defendants' Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Breach of Fiduciary Duty Claims, filed October 5, 2015 (Doc. 170)("Response to Plaintiffs MSJ"). The Defendants argue that the Court should deny the Plaintiffs' MSJ for four reasons: (i) the Plaintiffs, being fully informed, acquiesced in the merger and cannot now be heard to challenge it; (ii) the undisputed facts establish that the merger process was fair as a result of the statutory appraisal which was the Plaintiffs' exclusive remedy; (iii) Oklahoma common-law

clean-hands doctrine and the Oklahoma common law of estoppel bar the Plaintiffs' breach-of-fiduciary-duty claims; and (iv) the Plaintiffs have waived their breach-of-fiduciary-duty claims contractually and by conduct under the Oklahoma common law of waiver. <u>See</u> Response to Plaintiffs' MSJ at 7.

The Defendants insist, first, that the Plaintiffs, being fully informed, acquiesced in the merger and cannot now be heard to challenge it. <u>See</u> Response to Plaintiffs' MSJ at 7-9. Referring the Court to its discussion on this point in the Defendants' Acquiescence MSJ, the Defendants maintain that the only facts relevant to this proposition are the facts establishing the Plaintiffs' knowledge when they surrendered their share in exchange for the payment of the merger consideration pursuant to the merger agreement's terms. <u>See</u> Response to Plaintiffs' MSJ at 8. According to the Defendants, if the Plaintiffs had knowledge of the facts they allege in their Complaint on the date that the Plaintiffs surrendered their shares, the defense of acquiescence bars their claims. <u>See</u> Response to Plaintiff's MSJ at 8. The Defendants then contend that the Plaintiffs admit having had such knowledge at that time. <u>See</u> Response to Plaintiff's MSJ at 8.

Revisiting a taxonomy that they had used in earlier briefings, the Defendants indicate that the Plaintiffs had only four choices regarding how to proceed when they confronted a merger which they opposed: (i) obtain payment of the merger consideration; (ii) have their shares appraised; (iii) seek a statutory appraisal of their shares, and sue for rescission and rescissionary damages; or (iv) file suit seeking rescission and rescissionary damages. <u>See</u> Response to Plaintiffs' MSJ at 8-9. The Defendants emphasize that the Plaintiffs did not have the option to obtain the merger consideration, and then file suit seeking rescission and rescissionary damages. <u>See</u> Response to Plaintiffs' MSJ at 9.

Switching gears, the Defendants then assert that the undisputed facts establish that the

merger process was fair, and that the alleged lack of an independent committee or appraisal does not "support a claim for a quasi-appraisal trial on the Merger price." Response to Plaintiffs' MSJ at 9-10. The Defendants argue that the Plaintiffs fundamentally misconceive the entire fairness doctrine, which the Defendants say shifts the burden to a defendant to prove both fair process and fair price. See Response to Plaintiffs' MSJ at 10. By definition, the Defendants maintain, entire fairness cannot apply where the undisputed facts show that the merger process was fair. See Response to Plaintiffs' MSJ at 11. The Defendants insist yet again that it was fair under Oklahoma law, which expressly grants the majority the right to cash out a merger without the consent of, or even prior notice to, the minority shareholders. See Response to Plaintiffs' MSJ at 11. According to the Defendants, minority shareholders have a right under Oklahoma law to have a court appraise their shares but not to the formation of an independent committee. See Response to Plaintiffs' MSJ at 11.

After walking the Court through a condensed chronology of the merger and the events leading to it, see Response to Plaintiffs' MSJ at 11-15, the Defendants turn their attention to the clean-hands doctrine, see Response to Plaintiffs' MSJ at 16. As the Defendants read the doctrine, Oklahoma common law requires that, to receive equity, a person must do equity. See Response to Plaintiffs' MSJ at 16 (citing Krumme v. Moody, 910 P.2d 993 (Okla. 1995)).[46] The Defendants insist that Stuart orchestrated the litigation after having (i) illicitly vied for TIR, Inc.'s control of in 2012 and 2013; (ii) directly solicited TIR, Inc.'s shareholders; (iii) attempted to hold the merger hostage with the end of extracting a higher price; and (iv) delivering his shares -- with braggadocio -- when he discovered that he lacked veto power over the merger.

---

[46]The Defendants cite this case as Krumme v. Moody, 810 P.2d 1262, 1269 (1995). See Response to Plaintiffs' MSJ at 16. This citation appears to be an incorrect one, directing the Court to McDonald v. Humphries, located at 810 P.2d 1262, 1269 (1995). McDonald v. Humphries is the case that the Supreme Court of Oklahoma overruled in Krumme v. Moody.

See Response to Plaintiffs' MSJ at 17.  The Defendants urge the Court not to lend its aid to one who allegedly "has been guilty of such inequitable conduct."  Response to Plaintiffs' MSJ at 17.

The Defendants then insist that the Oklahoma common law of estoppel also bars the Plaintiffs' breach-of-fiduciary-duty claims.  See Response to Plaintiffs' MSJ at 17.  As the Defendants read the law, equitable estoppel prevents a party from taking a legal position inconsistent with an earlier statement or action that places the counterparty at a disadvantage.  See Response to Plaintiffs' MSJ at 17 (citing W. Keeton et al., Prosser and Keeton on the Law of Torts § 05, at 733 (5th ed. 1984)).  Drawing on a 1956 case from the Supreme Court of Oklahoma, the Defendants explain that "[e]quitable estoppel holds a person to . . . a position assumed, where otherwise inequitable consequences would result to another, who, having a right to do so under the circumstances, has in good faith relied thereon."  Response to Plaintiffs' MSJ at 17-18 (quoting Apex Siding and Roofing Co. v. First Federal Savings and Loan Ass'n, 1956 OK 195, 195, 301 P.2d 352, 355)(internal quotation marks omitted)(ellipses in the Response to Plaintiffs' MSJ).  According to the Defendants, the Plaintiffs are estopped to unwind the merger, because the Defendants, in reliance on the Plaintiffs' "voluntary and knowing surrender of their share certificates," (i) contributed 50.1% of their member interests in TIR, Inc. LLC to Cypress Energy Partners Limited Partnership; and (ii) effected a sale of partnership units to the public pursuant to the Registration Statement.  Response to Plaintiffs' MSJ at 18.

As the Defendants see it, the Plaintiffs also waived their breach-of-fiduciary-duty claims contractually and by conduct under the Oklahoma common law of waiver.  See Response to Plaintiffs' MSJ at 18.  Under Oklahoma law, the Defendants say, waiver is the "intentional relinquishment of a known right."  Response to Plaintiffs' MSJ at 18 (citing Barringer v. Baptist Healthcare of Okla., 2001 OK 29, 22 P.3d 695, 700).  Dusting off a Supreme Court of Oklahoma

case from nearly a century ago, the Defendants explicate that waiver "may be achieved contractually, provided that the contract is founded on a valuable consideration and made by the party whose benefit is being waived." Response to Plaintiffs' MSJ at 18 (citing Smith v. Minneapolis Threshing Mach. Co., 1923 OK 84, 214 P.2d 178, 180). The Defendants then intone their earlier repeated assertion that, in December, 2013, the Plaintiffs delivered their share certificates to the Defendants "to induce the Defendants to pay the Merger consideration," and in accordance with a merger agreement that expressly provided that any former shareholder who surrendered share certificates would be deemed to have forever waived any appraisal rights "pursuant to the Oklahoma appraisal statute or otherwise." Response to Plaintiffs' MSJ at 18. Extending their argument on this point, the Defendants insist that the Plaintiffs even waived their right to a quasi-appraisal under Oklahoma common law, as delivering the share certificates and accepting merger consideration for them constitutes an implied waiver in Oklahoma. See Response to Plaintiffs' MSJ at 19 (citing Barringer v. Baptist, 22 P.3d at 701).

 **3.    The Plaintiffs' Reply to the Plaintiffs' MSJ.**

The Plaintiffs filed the Plaintiffs' Reply Memorandum of Law in Further Support of Motion for Partial Summary Judgment on Breach of Fiduciary Duty Claims on October 19, 2015. See Plaintiffs' Reply Memorandum of Law in Further Support of Motion for Partial Summary Judgment on Breach of Fiduciary Duty Claims, filed October 19, 2015 (Doc. 177)("Reply to Plaintiffs' MSJ"). The Plaintiffs first assert that the undisputed material facts establish that the Plaintiffs are entitled to judgment as a matter of law that the controlling shareholders and director defendants breached their fiduciary duty of fair dealing. Reply to Plaintiffs' MSJ at 3. According to the Plaintiffs, the Defendants could have created a level playing field designed to protect the Plaintiffs' interests as minority shareholders by (i)

appointing an independent special committee; (ii) engaging an independent financial advisor or other third party to perform a valuation analysis; (iii) condition merger approval on a fully informed vote of the majority of minority shareholders; or (iv) providing an "opportunity for genuine negotiations regarding the merger." Reply to Plaintiffs' MSJ at 3 (quoting In re <u>Sunbelt</u> <u>Beverage Corp. S'Holder Litig.</u>, 2010 WL 26539, at *5 (Del. Ch. January 5, 2010)(Chandler, C.). The Plaintiffs assert that the Defendants undertook none of these protections and that "[l]iability inexorably follows," where the Defendants "approved a squeeze out merger, devoid of procedural protections, as a final means of forcing [the Plaintiffs] out of the company and obtaining [their] . . . stake . . . ." Reply to Plaintiffs' MSJ at 4-5 (bracketed material and first set of ellipses in the Reply to Plaintiffs' MSJ)(quoting <u>Sunbelt</u>, 2015 WL 5052214, at *5). According to the Plaintiffs, the Defendants admit that they did not go through the motions of establishing fair dealing and that there is no fact left warranting a trial on the issue, because the "Defendants cannot possibly prove the independence of measures they never took." Reply to Plaintiffs' MSJ at 5 (emphatic italics removed).

Turning to the fair price issue, the Plaintiffs insist that fair price is relevant only to the amount of damages which the Defendants must pay on account of their failure to deal fairly with the Plaintiffs. <u>See</u> Reply to Plaintiffs' MSJ at 6. For three reasons, the Plaintiffs insist, the fair price issue is not before the Court on the Plaintiffs' MSJ or on any other pending motion, and must abide trial. <u>See</u> Reply to Plaintiffs' MSJ at 6. First, the Plaintiffs note, neither the Plaintiffs nor the Defendants has moved for summary judgment on fair price, and fair value is "a quintessentially factual -- and sharply-disputed -- issue, which can only be resolved at trial by expert testimony." Reply to Plaintiffs' MSJ at 6. Second, the Plaintiffs contend, the Defendants fail to address the underlying procedure used to adopt the merger. <u>See</u> Reply to Plaintiffs' MSJ

at 6.  Third, the Plaintiffs emphasize, fiduciaries employing grossly inadequate process can be found liable even if the transaction price might otherwise be considered fair.  See Reply to Plaintiffs' MSJ at 6 (citing In re Nine Sys. Corp. S'Holders Litig., 2014 WL 4383127, at *47 (Del. Ch. Sept. 4, 2014)).

The Plaintiffs then dismiss the Defendants' frequent invocation of the Plaintiffs' merger consideration acceptance, arguing that the acceptance is irrelevant to and does not meet the Defendants' burden to prove fair dealing.  See Reply to Plaintiffs' MSJ at 7.  According to the Plaintiffs, fair dealing required the Defendants to take prophylactic measures to remove the taint of their own conflict; post-merger conduct, e.g., share surrender when fully informed, is irrelevant to a showing of fair dealing.  See Reply to Plaintiffs' MSJ at 7-8.  Likewise, the Plaintiffs insist, the limited exception to entire fairness for short-form mergers that the Defendants invoke -- the availability of a statutory appraisal -- has no application to this conflicted long-form merger.  See Reply to Plaintiffs' MSJ at 8.  According to the Plaintiffs, statutory appraisal, unlike the entire-fairness doctrine, does not provide a complete remedy for unfair dealing.  See Reply to Plaintiffs' MSJ at 8-9.  Furthermore, the Plaintiffs insist, statutory appraisal applies only to short-form mergers, and the Defendants admit that the merger in this case was effected pursuant to 18 O.S. § 1090.2 -- the long-form merger statute.  See Reply to Plaintiffs' MSJ at 9.

In concluding, the Plaintiffs assert that the Defendants cannot escape their personal liability by mischaracterizing the Plaintiffs' fiduciary duty claims as claims for "quasi-appraisal." Reply to Plaintiffs' MSJ at 10.  Distinguishing quasi-appraisal from statutory appraisal, the Plaintiffs maintain that the former is a damages award at the conclusion of a trial in which a defendant's liability for breach of fiduciary duty has been established.  See Reply to Plaintiffs'

MSJ at 10 (citing In re Orchard Enters., Inc., 88 A.3d 1, 42, 47-48 (Del. Ch. 2014)). The Defendants' lexical legerdemain, the Plaintiffs assert, is "merely a variant of their failed arguments of acquiescence, estoppel, waiver and unclean hands." Reply to Plaintiffs' MSJ at 10. Accordingly, the Plaintiffs repeat their petition from the Plaintiffs' MSJ that the Court grant partial summary judgment that: (i) the entire fairness standard governs the Plaintiffs' claims for breach of fiduciary duty; (ii) the Defendants bear the burden of proving that the merger satisfies the entire-fairness standard; and (iii) the Defendants CEP-TIR, LLC, Stephenson, C. Field., L. Field, and Boylan are liable for breaching their duty of entire fairness, reserving for trial the damages issue. See Reply to Plaintiffs' MSJ at 10.

**4.      December 28, 2016 Hearing.**

The Court held a hearing on the Plaintiffs' MSJ on December 28, 2016. See Transcript of Motion Hearing Before the Honorable James O. Browning United States District Judge at 507:16-543:17, filed January 23, 2017 (Doc. 250)("December Tr.")(Court, DeMuro, Kagen). The parties argued the Plaintiffs' MSJ at the end of two days of hearings, and the Court previously had advised the parties that it had a hard deadline for closing the day's hearing so that it could make the return trip to Albuquerque for a separate case. Noting that the day's hard deadline was only an hour away, the Plaintiffs conveyed that they were hesitant to begin discussion on a motion that the parties might not have sufficient time to argue fully. See Tr. at 507:19-508:3 (Kagen). The Court then asked whether it could ask the Plaintiffs a few questions about the Plaintiffs' MSJ then instead of hearing a full-blown argument, and the Plaintiffs readily agreed. See Tr. at 508:4-8 (Court, Kagen).

The Court first asked the Plaintiffs what the factual basis is for the Plaintiffs' MSJ. See Tr. at 508:10-12 (Court). The Plaintiffs responded that the Plaintiffs' MSJ is based entirely on

undisputed facts, but they did not immediately accept the Court's invitation to describe what those facts are. See Tr. at 508:21-509:25 (Kagen). Instead, the Plaintiffs summarized for the Court the three orders that they were seeking to obtain in the Plaintiffs' MSJ. See Tr. at 509:1-510:5 (Kagen). First, the Plaintiffs said, they wanted an order that says that the entire-fairness standard governs the Plaintiffs' claims for breach of fiduciary duty -- a standard that the Plaintiffs asserted the Defendants have conceded applies. See Tr. at 509:1-9 (Kagen). Second, the Plaintiffs indicated, they want an order that the Defendants bear the burden of proof that the merger was entirely fair to the minority shareholders, i.e., that it was the product of both fair dealing and fair price. See Tr. at 509:10-15 (Kagen). Third, the Plaintiffs stated, they want an order that the Defendants are liable for breaching their duty of entire fairness, because the undisputed material facts shows that the Defendants have not and cannot meet their burden to show fair dealing. See Tr. at 509:22-510:2 (Kagen). According to the Plaintiffs, they seek to reserve for trial the issue of damages resulting from that breach of fiduciary duty. See Tr. at 510:2-5 (Kagen).

The Defendants, seemingly returning full circle to their assertion early in the morning of the hearing's first day that they were bearing tidings of good news, see supra, told the Court:

> I think I can simplify this because Mr. Kagen is correct. We've got an area of agreement, which is a great way to end the day for anybody in the courtroom. And that is, we agree that if Your Honor denies the acquiescence motion outright and says it's no longer an issue, or even if you submit that to the trial, which we think you should, the trial court at a minimum, that if we don't get dismissed on acquiescence, okay, and it's a trial issue, we agree that the entire fairness standard applies to the fiduciary duty claims.

Tr. at 510:10-19 (DeMuro). To ensure that it correctly interpreted what the Defendants were saying, the Court probed the Defendants with a collection of short questions. See Tr. at 510:23-511:19 (Court, DeMuro). Because of the exchange's importance, the Court recites the exchange

verbatim here:

> THE COURT: But you would agree with his statement that the entire fairness standard governs Plaintiffs' claims for breach of fiduciary duty if the acquiescence motion is denied?
>
> MR. DEMURO: Correct.
>
> THE COURT: And would you also agree that the Defendants bear [the] burden of proving that the merger satisfies the entire fairness standard if the acquiescence motion for summary judgment is denied?
>
> MR. DEMURO: As it pertains to the fiduciary duty claim, yes.

Tr. at 510:23-511:8 (Court, DeMuro). Inquiring about the Defendants' assertion that they might still quibble what the jury instruction looks like regarding the entire fairness standard and from what specific case law the jury instruction would be pulled, the Court asked the Defendants whether their quibble would just be about the Defendants' liability under the entire-fairness standard. See Tr. at 511:9-10 (Court). The Defendants responded "that's the claim, yes." Tr. at 511:11 (DeMuro). The Court then turned to the Plaintiffs and asked whether, in writing its opinion, it could subsume all the facts relevant to the Plaintiffs' MSJ into the factual sections combined from the Defendants' two summary judgment motions so that it might write one opinion to decide all the motions which the Court had heard over the previous two days. See Tr. at 511:18-513:7 (Court). The Defendants asserted that the Court could not glean sufficient facts about the merger's history from the Defendants' summary judgment motions to accomplish that feat; the Court, the Plaintiffs asserted, needs also to incorporate facts from Plaintiffs' MSJ. See Tr. at 512:8-516:24 (Kagen). As one example, the Plaintiffs said, if entire fairness rather than the business-judgment rule applies, then the burden to prove entire fairness shifts to the Defendants from the case's beginning to its end. See Tr. at 518:10-521:4 (Kagen)(citing In re

Nine Systems, affirmed in Fuchs v. Wren Holdings, LLC, 129 A.3d 882 (Del. 2015).[47] As another example, the Plaintiffs continued, the facts in the Defendants' two summary judgment motions do not provide sufficient detail about the parties involved for the Court to see -- or in the Plaintiffs' opinion, to show -- how none of the individual Defendants was a disinterested actor in the merger transaction. See Tr. at 521:5-523:19 (Kagen).

Veering a bit from the question at that point, the Plaintiffs began to delve into their legal arguments regarding the liability issue in Plaintiffs' MSJ. See Tr. at 523:20 (Kagen). The Plaintiffs asserted that, because the Defendants were not disinterested actors in the merger transaction, Delaware law required them to put into place protections to safeguard minority shareholders' rights at the time of the merger on December 9, 2013. See Tr. at 524:4-546:13 (Kagen)(citing In re Cornerstone Therapeutics Inc., Stockholder Litig., 115 A.3d 1173 (Del. 2015); In re Sunbelt Beverage Corp. S'holder Litig., 2010 WL 26539 (Del. Ch. Jan. 5, 2010)(Chandler, C.), as revised Feb. 15, 2010; Weinberger v. UOP, Inc., 457 A.2d 701 (Del. 1983); Zutrau v. Jansing, 2014 WL 3772859 (Del. Ch. July 31, 2014)(Parsons, V.C.); and Rice[48]). The Plaintiffs maintained that the Defendants did not "have to follow a particular recipe" when it came to designing or implementing these protections, but that the Defendants needed to take some protections to avoid entire-fairness review. Tr. at 526:14-18 (Kagen). The Plaintiffs alleged, however, that the Defendants took no prophylactic actions to protect minority shareholders' rights at all. See Tr. at 526:18-24 (Kagen). On account of this lack of prophylactic action and what the Plaintiffs asserted is the Defendants' inability to demonstrate fair process,

---

[47]At the hearing, the Plaintiffs did not provide the case name or citation for the case they alleged affirmed In re Nine Systems. The Court has backfilled the case name and citation based on Westlaw's report of In re Nine Systems' subsequent history.

[48]It is not clear from the Plaintiffs' motion filings or from the hearing transcript to which case "Rice" refers.

the Plaintiffs contended that Delaware law says that liability attaches to the Defendants.  See Tr. at 527:10-528:23 (Kagen)(citing In re Trados Inc. S'holder Litig., 73 A.3d 17 (Del. Ch. 2013)(Laster, V.C.); Owen v. Cannon, 2015 WL 3819204 (Del. Ch. June 17, 2015)(Bouchard, C.); In re Celera Corp.; and Lampton Welding Supply Co. v. Stobaugh, 2012 WL 5398790 (N.D. Okla. Nov. 2, 2012)(Kern, J.))).   After offering the Court their thoughts on how the opinion should be structured, the Plaintiffs then concluded their argument.  See Tr. at 530:1 (Kagen). The Court then asked the Defendants the same question it had asked the Plaintiffs -- whether the Defendants objected to the Court's plan to pull the facts from the Plaintiffs' MSJ into one factual pool along with the facts from the Defendants' two summary judgment motions.  See Tr. at 530:5-13 (Court).  The Defendants responded that this approach is identical to the approach that they would take were they the Court.  See Tr. at 530:14-533:2 (DeMuro).

The Court then permitted the Defendants to present their argument on the liability issue that the Plaintiffs raise in the Plaintiffs' MSJ, asking first whether the Defendants could point to any case that disputes the Plaintiffs' assertion that the Defendants' failure to take prophylactic protections is a per se violation of entire fairness  See Tr. at 533:8-13 (Court).  The Defendants went even further, indicating that no case exists that supports the Plaintiffs' position.  See Tr. at 533:14-25 (DeMuro).  The Defendants insisted that having a burden-shifting rule in entire-fairness standard cases would be nonsensical if failure to take steps to protect the minority shareholders resulted in per se violation of the entire fairness standard.  See Tr. at 534:18-535:24 (DeMuro).

The Court asked the Defendants what they would emphasize as proof that their merger process was entirely fair if the burden only shifts rather than that there is a per se violation.  See Tr. at 535:25-536:16 (Court).  The Defendants adduced (i) the bidding process, by which, the

Defendants said, they had established a premium value for the TIR, Inc. shares; (ii) the arm's-length share sales that the Defendants disclosed to shareholders; and (iii) the Plaintiffs' concession that they were fully informed of all the material facts regarding the merger.  See Tr. at 536:19-537:25 (DeMuro).  The Plaintiffs then quickly argued a reply to Plaintiffs' MSJ, noting that the Court only had twelve minutes left before it would be forced to stop argumentation for the day.  See Tr. at 539:14-17 (Kagen).  According to the Plaintiffs, their belief that the merger price was fair is insufficient to prevent liability from attaching if the merger transaction and cash-out were not procedurally fair.  See Tr. at 539:18-540:24 (Kagen).  The Plaintiffs maintained that this insufficiency is evident from In re Nine Systems, in that the minority shareholders in that case "got an amazing price" for their shares, but that the defendant company directors had not provided sufficiently fair process.  Tr. at 540:25-541:6 (Kagen).  The court in that case, the Plaintiffs contended, decided that the defendant directors still were liable, because of the lack of fair process, ultimately holding that there were no damages to award on account of the fair price but still awarding the plaintiffs millions of dollars in attorney fees.  See Tr. at 541:7-13 (Kagen).  The Plaintiffs then closed their argument by reiterating and summarizing some of their previous points.  See Tr. at 541:22-543:2 (Kagen).

Starting to draw the hearing to a close, the Court divulged to the parties:

I got to look at these cases, . . . but I'm inclined to agree what I have read so far with Mr. Kagen, that you got to point to something more than the bidding process and those sort of things, you got to have some reasonable substitute for probably the things that pass for procedural fairness.  I'm not seeing them here.

So I think if I stick with the inclinations I've had on the two other motions, motions for summary judgment, it's going to lead me to probably grant the motion that the Plaintiff has here on breach of fiduciary duty, leaving us . . . really a valuation trial.  So that's what I'm envisioning right at the present time as I head back to Albuquerque to work on this opinion.

Tr. at 543:4-17 (Court).

## 5.     **Memorandum Order and Opinion.**

The Court published the Memorandum Opinion and Order which the Defendants move the Court to reconsider on April 25, 2017.  See SFF-TIR, LLC v. Stephenson, 2017 WL 1487439, at *1 (D.N.M. April 25, 2017)(Browning, J.)("MO").  The MO resolved six motions, turning therefore to an analysis of the Plaintiffs' MSJ on the MO's page 303.  See MO at 303, 2017 WL 1487439, at *133.  The Court granted the Plaintiffs' request for summary judgment, concluding that: (i) the entire fairness standard governs the Plaintiffs' claims for breach of fiduciary duty; (ii) the Defendants bear the burden of proof that the merger was entirely fair to the minority shareholders; and (iii) the Defendants are liable for breaching their duty of entire fairness, because the undisputed material facts show that the Defendants did not put into place sufficient safeguards protecting minority shareholder rights to meet this burden.  See MO at 303, 2017 WL 1487439, at *133.  The Court concluded, however, that the Plaintiffs' and the Defendants' competing valuation assumptions, models, projections, and experts do not allow the Court to calculate damages at the time the Court issued the MO.  See MO at 303, 2017 WL 1487439, at *133.  Accordingly, the Court left a determination of damages to be resolved at trial. See MO at 303, 2017 WL 1487439, at *133.

As relates to its first conclusion about the entire fairness doctrine's applicability, the Court determined -- through reference to an earlier portion of the MO, see MO at 303, 2017 WL 1487439, at *133 -- that when the Court sits in a diversity case, Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)("Erie") requires the Court to interpret state law as the state's highest court would interpret it.  See MO at 277, 2017 WL 1487439, at *122 (citing 304 U.S. at 64).  Beginning its analysis with Weinberger v. UOP, Inc., the Court noted that the defendants in that case made no attempt to structure the challenged merger transaction on an arm's-length basis.  See MO at 277,

2017 WL 1487439, at *122 (citing 457 A.2d at 710). Consequently, the Court wrote, the Delaware Supreme Court had held that: (i) the "lack of structures or procedures that would keep the merger decision at arm's length violated the company's fiduciary duty to its minority shareholders"; (ii) such a violation had no safe harbor under Delaware law; and (iii) the Delaware Supreme Court was required to examine the contested merger under the entire fairness standard. See MO at 277-78, 2017 WL 1487439, at *122.

The Court then assessed the Delaware Supreme Court's holding four years after Weinberger v. UOP, Inc. in Bershad. See MO at 278, 2017 WL 1487439, at *122. Contrasting the defendants in Weinberger v. UOP, Inc. with the defendants in Bershad, the Court indicated that the defendant company in Bershad took multiple steps to safeguard minority shareholders' rights during the merger process before they were cashed out. See MO at 278, 2017 WL 1487439, at *122 (citing Bershad, 535 A.2d passim). The Court recounted that at the same meeting in which the defendant board of directors in Bershad decided that a merger might be beneficial, it hired a nationally-recognized investment bank the proposed cash-out share offer price's fairness. See MO at 278, 2017 WL 1487439, at *122. After the investment bank had reported its independent opinion that the cash-out share offer price was fair, the Court continued, the defendant board of directors in Bershad scheduled a shareholder meeting at which a large majority of the company's minority shareholders approved of the merger. See MO at 278-79, 2017 WL 1487439, at *122 (citing Bershad, 535 A.2d at 843).

The Court consequently determined that the Bershad court did not diverge from Weinberger v. UOP, Inc.'s rule that the entire fairness test should apply in cash-out mergers, instead holding that the entire fairness standard is necessary to "'protect those rights of minority shareholders which have been tainted with unfairness.'" MO at 279, 2017 WL 1487439, at *122

(quoting Bershad. 535 A.2d at 848). The Court nevertheless identified a twist in Bershad, i.e., that in a merger case in which the defendant company put substantial structures in place to ensure that a controlling shareholder did not steamroll minority shareholders, the defendants "'retain the burden of proving complete disclosure of all material facts relevant to the merger vote.'" MO at 279, 2017 WL 1487439, at *122 (quoting Bershad, 535 A.2d at 846). The Court read Bershad to shift the entire-fairness burden onto a case's plaintiffs, however, if a case's defendants prove complete disclosure of all material facts relevant to the merger vote. See MO at 279, 2017 WL 1487439, at *122 (citing Bershad, 535 A.2d at 846). Phrasing the same conclusion another way, the Court said that a case's plaintiff must -- under such circumstances -- bear the burden of proving that the challenged merger was not entirely fair. See MO at 279, 2017 WL 1487439, at *122 (citing Bershad, 535 A.2d at 846).

Analyzing twenty-eight subsequent cases from the Delaware Courts of Chancery, the Court concluded that three decades of Supreme Court of Delaware and Delaware Court of Chancery cases show that Bershad has withstood the test of time. See MO at 279-282, 2017 WL 1487439, at *122-23. The Court considered it telling, however, that the Supreme Court of Delaware also had not dismantled limits on Bershad that nineteen Delaware Courts of Chancery cases had placed on the Bershad opinion over a span of thirty years. See MO at 281-282, 2017 WL 1487439, at *123. The Court interpreted that silence as a textbook example of the dog that did not bark.[49] See MO at 282, 2017 WL 1487439, at *122 & n.101. The Court accordingly

---

[49]The "dog didn't bark" canon derives from a short story from Sir Arthur Conan Doyle, in which Sherlock Holmes deduces the identity of the villain after realizing that the dog of the house did not bark when the individual came to the house. See Sir Arthur Conan Doyle. The Adventure of Silver Blaze, The Complete Sherlock Holmes 347 (A.C. Doyle Memorial ed. 1960). The Supreme Court of the United States repeatedly has invoked this unofficial canon of statutory construction. See, e.g., Zuni Pub. Sch. Dist. No. 89 v. Dep't of Ed., 550 U.S. 81, 88, 127 S. Ct. 1534, 167 L. Ed. 2d 449 (2007); Scheidler v. National Organization of Women, 547

determined that both the <u>Bershad</u> frame and subsequent Delaware Court of Chancery decisions that filled in the jigsaw puzzle of Delaware cash-out merger law indicate that the Court needed to apply the entire-fairness standard when it assesses the merger that the Plaintiffs' contest in this case. <u>See</u> MO at 282, 2017 WL 1487439, at *123.

The Court then concluded that under Delaware's entire-fairness standard, the burden of proving that the merger transaction was the product of both fair price and fair dealing defaults to the Defendants. <u>See</u> MO at 282, 2017 WL 1487439, at *124. The Court then listed two conditions under which the Court may shift the burden of evidence for proving entire fairness to a plaintiff: (i) the defendants set up a well-functioning committee of independent directors to examine and approve the merger; or (ii) a fully informed majority of the minority shareholders vote to approve the merger. <u>See</u> MO at 282, 2017 WL 1487439, at *124 (citing <u>Kahn v. Lynch Communication Systems, Inc.</u>, 638 A.2d 1110 (Del. 2014); <u>In re PNB Holding Co. Shareholder Litigation</u>, 32 Del. J. Corp. L. 654 (2006)(Strine, J.); <u>Clements v. Rogers</u>, 790 A.2d 1222 (2001)(Strine, J.)) Noting that this case's Defendants satisfied neither criterion that the Court deemed necessary to shift the evidentiary burden, the Court concluded that the evidentiary burden for proving the merger's entire fairness remains with the Defendants. <u>See</u> MO at 283, 2017 WL 1487439, at *124.

The Court then highlighted that the Defendants had agreed with the Plaintiffs at the December, 2016 motion hearing that, if the Court were to deny the Defendants' Acquiescence MSJ outright, that the entire-fairness standard applies to the Plaintiffs' fiduciary duty claims. <u>See</u> MO at 304, 2017 WL 1487439, at *134 (citing Transcript of Hearing Before the Honorable James O. Browning, United States District Judge, December 28, 2016, at 510:10-19 (DeMuro),

U.S. 9, 20, 126 S. Ct. 1264, 164 L.Ed 2d 10 (2006).

filed January 23. 2017 (Doc. 250)).  The Court then reproduced the following short exchange from the December, 2016 hearing on this point, deeming that exchange to be important:

> THE COURT: But you would agree with his statement that the entire fairness standard governs Plaintiffs' claims for breach of fiduciary duty if the acquiescence motion is denied?
>
> MR. DEMURO: Correct.
>
> THE COURT: And would you also agree that the Defendants bear [the] burden of proving that the merger satisfies the entire fairness standard if the acquiescence motion for summary judgment is denied?
>
> MR. DEMURO: As it pertains to the fiduciary duty claim, yes.

MO at 304, 2017 WL 1487439, at *134 (quoting Dec. Tr. at 510:23-511:8 (Court, DeMuro)).  The Court then recounted that when it inquired about the Defendants' assertion that they might still quibble what the jury instruction looks like regarding the entire-fairness standard and from what specific case law the jury instruction would be pulled, the Court had asked the Defendants whether their quibble would just be about the Defendants' liability under the entire-fairness standard.  See MO at 304, 2017 WL 1487439, at *134 (citing Dec. Tr. at 511:9-10 (Court)).  The Court noted that the Defendants confirmed that this characterization was correct.  See MO at 305, 2017 WL 1487439, at *134 (citing Dec. Tr. at 511:11 (DeMuro)).  Seeing "no sound reason to manufacture a controversy or disagreement between the parties," see MO at 305, 2017 WL 1487439, at *134, the Court concluded that: (i) the entire-fairness standard applies to the Plaintiffs' fiduciary duty claims; and (ii) the Defendants bear the burden of proving that the merger satisfies the entire-fairness standard with respect to the Plaintiffs' fiduciary-duty claims, see MO at 305, 2017 WL 1487439, at *134.

Applying the entire-fairness standard to the case's facts, the Court then determined that the Defendants are liable "for breaching their duty of entire fairness, because the undisputed

material facts show that the Defendants did not put into place sufficient safeguards protecting minority shareholder rights." MO at 305, 2017 WL 1487439, at *134 (capitalization omitted). The Court noted that a breach of fiduciary duty, under Delaware law, requires proof both that (i) a fiduciary duty existed; and (ii) the defendant breached that duty. See MO at 305, 2017 WL 1487439, at *134 (citing In re Mobilactive Media, LLC, 2013 WL 297950 (Del. Ch. January 25, 2013)(Parsons, V.C.); Palmer v. Reali, 211 F. Supp. 3d 655, 665 (D. Del. September 29, 2016)(Robinson, J.)(applying Delaware law)). Describing these two elements in greater detail, the Court explained:

> The entire fairness standard satisfies the first element by requiring a company to ensure that minority shareholders receive fair dealing and a fair price is the company cashes out their shares in a merger's wake. The Defendants can only avoid satisfying the second element in this case if they plausibly can show that they offered the Plaintiffs both fair dealing and fair price in the merger transaction. Under the entire fairness standard, the Defendants could show fair dealing under the following conditions: (i) the Defendants set up a well-functioning committee of independent directors to examine and approve the merger; or (ii) a fully-informed majority of the minority shareholders voted to approve the merger.

MO at 305-06, 2017 WL 1487439, at *134 (citing Kahn v. Lynch Communication Systems, Inc., 638 A.2d 1110 (Del. 1994); In re PNB Holding Co. Shareholder Litigation, 32 Del. J. Corp. L. 654 (2006)(Strine, J.); Clements v. Rogers, 790 A.2d 1222 (2001)(Strine, J.)). The Court then concluded that the Defendants satisfied neither criterion needed to shift the evidentiary burden. See MO at 306, 2017 WL 1487439, at *135. The Court noted that the Defendants did not form a special committee to consider the merger or schedule and hold a minority shareholder vote on the merger. See MO at 306, 2017 WL 1487439, at *135. Accordingly, the Court granted the Plaintiffs' request for summary judgment on the Defendants' liability for breaching their "fiduciary duty of fair dealing with respect to the merger transaction." MO at 307, 2017 WL 1487439, at *135.

The Court was not ready, however, to grant the Plaintiffs' request for summary judgment on damages, indicating that the Plaintiffs' and Defendants' competing valuation assumptions, models, projections, and experts did not allow the Court to calculate damages at the time it issued the MO. See MO at 307, 2017 WL 1487439, at *135. The Court wrote that the Defendants failed to hire an investment bank to appraise TIR, Inc. shares' fair value at the time the merger was effected and that the Plaintiffs involuntarily cashed out their shares. See MO at 307, 2017 WL 1487439, at *135 (citing Dec. Tr. at 138:10-12 (DeMuro)). Complicating proper valuation further, the Court said, were TIR, Inc.'s rapid growth after the time of the board member bidding war and contestable assumptions and classifications built in the parties' competing discounted cash flow models:

Delaware requires the discounted cash flow model, because it looks at the company's future earning value in a systematic and methodical way, and then discounts that value to net present value, discounting the money's time value and capital's weighted average cost. In this case, however, the share valuation math is less clear cut than the share valuation law. The DCF model incorporates substantial amounts of math complete with a fraternity's worth of Greek letters to camouflage relatively straightforward computation. The final summation is at best only as precise, however, as its least precise input. Moreover, precision is not the same as accuracy. This lack of equivalence between precision and accuracy is especially probable when a model uses multiple inputs, the parameters, values, or weights of which incorporate an element of subjective choice.

The valuation issue in this case therefore presents an analytical challenge, because (i) each variable in the DCF model leaves an appraiser with a degree of discretion to choose rates or coefficients that he or she concludes best fits [sic] present data and future trends; and (ii) TIR's status as a pipeline inspection company within the oil and gas industry leaves some [question] as to the proper SIC code for appraisers to use when computing TIR's cost of capital.

MO at 308, 2017 WL 1487439, at *135-36 (citations omitted).

**6.    Motion for Reconsideration.**

The Defendants filed their Motion for Reconsideration on May 9, 2017, requesting that

the Court reconsider its (i) Order; and (ii) Memorandum Opinion and Order to the extent relevant to the Defendants' alleged breach of fiduciary duty.  See Motion for Reconsideration at 1. According to the Defendants, the Court committed three errors of law in its Order and MO.  See Motion for Reconsideration at 1.  First, the Defendants assert, the Order and MO "implicitly and erroneously assume the entire fairness doctrine is a liability-imposing device rather than a burden of proof shifting standard of review."  Motion for Reconsideration at 1.  Second, the Defendants maintain, the Order and MO

> implicitly reject the settled law that the entire fairness doctrine is a <u>unitary test</u> based upon an analysis of both the fairness of the process <u>and</u> the fairness of the price, with: (i) fairness of price being the predominant consideration; and (ii) a finding of a "grossly unfair" process being a condition precedent to breach of fiduciary duty where the price is fair.

Motion for Reconsideration at 1 (emphases in original).  Third, the Defendants contend, the Order and MO fail, on a motion for summary judgment, to: (i) "resolve all reasonable inferences and doubts in Defendants' favor; and (ii) construe all evidence in the light most favorable to Defendants."  Motion for Reconsideration at 1.

In a quick preface, they maintain that they never have shied away from their burden to establish the merger's fairness under the entire fairness doctrine.  See Motion for Reconsideration at 2.  That asserted alacrity notwithstanding, the Defendants maintain that they do not accept the Court's conclusion that the Defendants have breached a fiduciary duty, because they did not (i) "buy" an independent appraisal; (ii) establish a fully functioning independent committee; or (iii) obtain a majority of a minority vote.  Motion for Reconsideration at 2.  The Defendants do not dispute that they failed to convene an independent committee immediately before the Merger, but insist that TIR, Inc. appointed an independent committee to represent TIR, Inc.'s and shareholders' interests in connection with the 2013 auction between Stuart and

Cypress Energy Partners.  See Motion for Reconsideration at 2 n.4.  The Defendants also do not dispute that they failed to hold a vote of the minority shareholders immediately before the Merger, averring nonetheless that, "for all practical purposes, a majority of the minority did approve the cash-out merger" insofar as "a majority of all TIR shareholders (excluding Defendants) voluntarily sold their shares to Defendants at, or below, the premium $451,000 cash-out merger price."  Motion for Reconsideration at 2 n.5.

The Defendants then contend that they exercised their statutory right to effect a merger in which the Plaintiffs were cashed out by written consent and after-the-fact written notice to the Plaintiffs.  See Motion for Reconsideration at 2.  The Defendants report that Oklahoma law expressly grants their right to conduct a cash-out merger in such a way.  See Motion for Reconsideration at 2-3.  The Defendants reason that they especially had a right to exercise their statutory right where the Plaintiffs, being fully informed of all material facts: (i) had been offered the opportunity to participate in the Cypress Energy Partners IPO business plan; (ii) rejected the Cypress Energy Partners MLP IPO business plan; (iii) agreed to a winner-take-all auction and then reneged on their agreement; (iv) attempted and failed to take control of TIR, Inc.; (v) attempted to extract a premium for their TIR, Inc. shares, erroneously thinking they had the power to block the Cypress Energy Partners business plan; and (vi) were offered a premium tender price for their TIR, Inc. shares and rejected the offer.  See Motion for Reconsideration at 3.  The Defendants further reason that, having exercised what they characterize as their undeniable statutory right, they breached no duty to the Plaintiffs as long as the Plaintiffs received fair value for their shares.  See Motion for Reconsideration at 3.  According to the Defendants, no statute provides, and no case has ever held, that a defendant exercising its statutory right to conduct a merger, who has paid the plaintiff a fair price, has breached a duty to

a plaintiff just by: (i) not "buying" an appraisal; (ii) not establishing an independent committee; and (iii) not obtaining a vote of a majority of the minority.  <u>See</u> Motion for Reconsideration at 3-4.  The Defendants contend that the Court is the first court so to decide and that this decision therefore constitutes an error which the Court should reconsider.  <u>See</u> Motion for Reconsideration at 4.  The Defendants assert that, in "a minute fraction of Delaware chancery proceedings applying the entire fairness standard," some chancellors have -- after conducting a full trial -- found a fair price but have nevertheless awarded attorney fees, costs, or other remedies when the defendants in those cases acted egregiously.  Motion for Reconsideration at 4.  The Defendants protest that no reading of this case's facts could lead the Court to conclude on a summary judgment motion that the Defendants completed the Merger in such a grossly unfair manner.  <u>See</u> Motion for Reconsideration at 4-5.

Moving to their second argument, the Defendants next aver that, even if the Court were to determine that the merger process was grossly unfair, such a determination would not entitle the Court to conclude that the Defendants failed to meet their burden of proving the merger's entire fairness.  <u>See</u> Motion for Reconsideration at 5.  According to the Defendants, the determination of entire fairness is "contextual and unitary."  Motion for Reconsideration at 5.  In other words, the Defendants say, the Court may not conclude that the Defendants breached their fiduciary duty unless and until the fair price issue is determined as well.  <u>See</u> Motion for Reconsideration at 5.  Furthermore, the Defendants contend, they have proffered substantial evidence -- creating genuine disputes as to material facts -- that they erected sufficient safeguards to protect the Plaintiffs.  <u>See</u> Motion for Reconsideration at 5.

Circling back to their first argument, the Defendants reassert that entire fairness defines only the Defendants' burden of proof and not the legal duty that the Defendants owed to the

Plaintiffs.  See Motion for Reconsideration at 6.  The Defendants contend that entire fairness is the burden of proof a defendant director or controlling shareholder must meet in an action challenging a merger in which the director or controlling shareholder stands on both sides of the transaction.  See Motion for Reconsideration at 6 (citing Kahn v. Lynch Communications Systems, Inc., 638 A.2d 1110, 1115-17 (Del. 1994)).  According to the Defendants, the entire-fairness doctrine holds a director and controlling shareholder ordinarily entitled to the business judgment rule's protection to a higher standard of proof when he or she stands on both sides of a transaction.  See Motion for Reconsideration at 6.  The Defendants insist, however, that the higher standard of proof does not make the director or controlling shareholder liable.  See Motion for Reconsideration at 6 (citing Kahn v. Lynch Communications Systems, Inc., 638 A.2d at 1115-17).  As the Defendants read Delaware case law, the Delaware courts have held that a defendant can avoid this shift of the burden of proof to the defendant if the defendant undertakes one or more procedural safeguards, including: (i) a fully functioning committee of independent directors; or (ii) a vote by the majority of the minority shareholders to approve the challenged merger.  See Motion for Reconsideration at 6 (citing Kahn v. M&F Worldwide Corp., 88 A.3d 635, 644-45 (Del. 2014)).

The Defendants concede that they did not use any of the established procedural safeguards that would enable them to avoid the shift of the burden of proof to them to prove the merger's entire fairness.  See Motion for Reconsideration at 6.  This concession notwithstanding, the Defendants emphasize that the entire-fairness standard is a burden of proof and not a burden of per se liability.  See Motion for Reconsideration at 7 (citing Cinerama v. Technicolor, 663 A.2d 1156, 1162 (Del. 1995)).  The Defendants assert that, under Delaware law:

> Because the decision that the procedural presumption of the business judgment rule has been rebutted does not establish substantive liability under the entire

fairness standard, such a ruling does not necessarily present an insurmountable obstacle for a board of directors to overcome. Thus, an initial judicial determination that a given breach of a board's fiduciary duties has rebutted the presumption of the business judgment rule does not preclude a subsequent judicial determination that the board action was entirely fair, and is, therefore, not outcome-determinative *per se*. To avoid substantive liability, <u>notwithstanding</u> the quantum of adverse evidence that has defeated the business judgment rule's protective procedural presumption, the board will have to demonstrate entire fairness by presenting evidence of the cumulative manner by which it otherwise discharged all of its fiduciary duties.

Motion for Reconsideration at 7 (quoting <u>Cinerama v. Technicolor</u>, 663 A.2d at 1163)(emphases in <u>Cinerama v. Technicolor</u>). The Defendants then reinforce this same position with citations to two subsequent Delaware Court of Chancery cases. <u>See</u> Motion for Reconsideration at 7 (citing <u>Reis v. Hazelett Strip-Casting Corp.</u>, 28 A.3d 442, 465 (Del. Ch. 2011); <u>In re Trados Inc. Shareholder Litigation</u>, 73 A.3d 17, 79 (Del. Ch. 2013)). The Defendants assert, therefore, that, even if the Court assumes that the Defendants did not use sufficient safeguards, that assumption does not of itself establish that the Defendants breached a fiduciary duty; it only establishes that the Defendants bear the burden to show the merger was fair. <u>See</u> Motion for Reconsideration at 7-8. The Defendants therefore maintain that the Court erred when it concluded in its Order and Opinion that the Defendants breached a fiduciary duty by failing the entire fairness standard. <u>See</u> Motion for Reconsideration at 8.

Circling back to their second argument, the Defendants then reasserted that the entire-fairness standard is a unitary test which precludes a finding of breach of fiduciary duty before a trial on fair price. <u>See</u> Motion for Reconsideration at 8. The Defendants contend that entire fairness requires a determination of both fair process and fair price, with fair price being the predominant factor. <u>See</u> Motion for Reconsideration at 8. The Defendants stress that there is no authority for the conclusion that a procedural device such as an appraisal, an independent committee of independent directors, or approval of a majority of the minority is the only way to

establish entire fairness.  <u>See</u> Motion for Reconsideration at 8.  According to the Defendants, logic rejects such a conclusion, because it would convert the entire-fairness doctrine into a liability test rather than a standard of review.  <u>See</u> Motion for Reconsideration at 8-9.

The Defendants maintain that it is clear that fair process "embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained."  Motion for Reconsideration at 9 (quoting <u>Weinberger</u>, 457 A.2d at 711).  As the Defendants understand it, these considerations extend far beyond the question whether directors employed one or more procedural devices to encompass the entire merger process.  <u>See</u> Motion for Reconsideration at 9 (citing <u>Kahn v. Lynch</u>, 638 A.2d 1110, 1112-13 (Del. 1994)).  Moreover, the Defendants contend, the Plaintiffs have acknowledged on the record that the specific procedural devices mentioned above are not the exclusive means to prove a fair process.  <u>See</u> Motion for Reconsideration at 9 (citing Transcript of Motion Hearing December Tr. at 68:21-69:7 (Kagen)).  The Defendants therefore conclude that the absence of these particular safeguards does not and cannot by itself justify a finding of unfair process -- much less a finding of a breach of fiduciary duty -- without consideration of fair price.  <u>See</u> Motion for Reconsideration at 10.

The Defendants then aver that fair price is the predominant factor in the entire-fairness analysis, so that a court cannot find a breach of fiduciary duty without first analyzing price.  <u>See</u> Motion for Reconsideration at 20.  Referring the Court to the Supreme Court of Delaware's decision in <u>Gatz Properties, L.L.C. v. Auriga Capital Corp.</u>, 59 A.3d 1206 (Del. 2012), the Defendants assert that the test for entire fairness "is <u>not a bifurcated one as between fair dealing and fair price</u>.  All aspects of the use must be examined as a whole, since the question is one of entire fairness.  Thus, all aspects of the transaction must be considered before making an [sic]

unitary determination."  Motion for Reconsideration at 10 (quoting <u>Gatz Properties, L.L.C. v.</u>

<u>Auriga Capital Corp.</u>, 59 A.3d at 1214).  Recapitulating their argument on this point as they

framed it at the case's February motion hearing, the Defendants quote verbatim from the hearing

transcript:

> In the <u>Trados</u> decision, your Honor, the court held that the court cannot make a
> finding of breach of fiduciary duty solely on the basis of finding that there was an
> unfair process and that the analysis is unitary.  Therefore, until the jury or the
> finder of fact has an opportunity to analyze the entire process, which means price
> and process, it would be error for this Court, in my view, based upon the <u>Trados</u>
> case . . . to find a breach of fiduciary duty until the trier of fact also considered
> whether there was a fair price.

Motion for Reconsideration at 10 (quoting Transcript of Hearing Before the Honorable James O.

Browning, United States District Judge 554:2-11, filed February 26, 2017 (Doc. 255)("February

Tr.")(DeMuro).  Digging more deeply into <u>In re Trados</u>, the Defendants assert that, in that case,

Vice Chancellor Noble addressed the situation where, after a trial, the process was deemed unfair

but the merger price fair.  <u>See</u> Motion for Reconsideration at 10.  The Defendants maintain that

the <u>In re Trados</u> court determined that the fair price satisfied that case's defendants' fiduciary

duties, even though the merger process was unfair on account of a lack of sufficient safeguards.

<u>See</u> Motion for Reconsideration at 10. Then invoking a separate decision by Vice Chancellor

Noble, the Defendants contend that <u>In re Nine Systems Corporation Shareholders Litigation</u>,

2014 WL 4383127 (Del. Ch. April 11, 2014)("<u>In re Nine Systems</u>"), confirms that the entire-

fairness doctrine is a unitary test based on an analysis of process and price, with price fairness

being the predominant consideration.  <u>See</u> Motion for Reconsideration at 10.  The Defendants

recount that the <u>In re Nine Systems</u> decision came only after an eleven-day trial, and that Vice

Chancellor Noble concluded that the defendants who breached their fiduciary duties were not

liable for monetary damages even though he granted the plaintiffs leave to petition the court for

an award of attorneys' fees and costs on the grounds that

> [t]he entire fairness standard of review has long mandated a <u>dual inquiry</u> into 'fair dealing <u>and</u> fair price' that this Court should weigh as appropriate to reach a '<u>unitary' conclusion</u> on the entire fairness of the transaction at issue. Delaware courts have contemplated this issue before. What united the resulting range of explications of this area of Delaware law is the principle that the entire fairness standard of review is principally *contextual*. That is, there is no bright-line rule on what is entirely fair.

Motion for Reconsideration at 12 (quoting <u>In re Nine Systems</u>, 2014 WL 4383127, at *1)(italicized emphasis in original, underlined emphasis added, and internal footnotes omitted). The Defendants assert that, taken together, <u>Trados</u> and <u>In re Nine Systems</u> stand for the proposition that, even though there may be an exception when the unfair process is grossly unfair, the entire-fairness standard is a unitary test. <u>See</u> Motion for Reconsideration at 12-13. The Defendants therefore ask the Court to reconsider pages 305-307 of its MO. <u>See</u> Motion for Reconsideration at 14.

Circling at that point to their third proposition, the Defendants contend that they have adduced substantial evidence to establish that the merger process was fair. <u>See</u> Motion for Reconsideration at 14. The Defendants first remind the Court that, when deciding a summary judgment motion, it must: (i) resolve all reasonable inferences and doubts in the favor of the nonmovant party; (ii) construe all evidence in the light most favorable to the nonmovant party; and (iii) refrain from deciding credibility issues. <u>See</u> Motion for Reconsideration at 15. Reciting their version of the merger story, the Defendants assert that overwhelming evidence exists that TIR, Inc. had engaged in a "more than fair process" to determine the company's value before the cash out. Motion for Reconsideration at 16 (emphasis omitted). According to the Defendants, they offered the Plaintiffs an opportunity to participate in the merger and established an independent special committee to establish an auction process before the alleged bidding war

between fully-informed rival camps of shareholders.  See Motion for Reconsideration at 16-21. The Defendants maintain that these facts establish -- at least to the standard that summary judgment requires -- that the Defendants employed a more than adequate procedural substitute for an independent committee at the time of the merger.  See Motion for Reconsideration at 21. The Defendants insist that a minority shareholder vote at the time of the merger would have been futile, because the Plaintiffs -- the only remaining minority shareholders -- had contractually bound themselves to accept no share price less than $654,632.00.  See Motion for Reconsideration at 22.  The Defendants reason that, construing all facts in the light most favorable to the Defendants and resolving all inferences in the Defendants' favor, the Court cannot conclude as a matter of law that the process leading up to the Merger was unfair to the Plaintiffs.  See Motion for Reconsideration at 22.

**7.      Response to Motion for Reconsideration.**

The Plaintiffs filed Plaintiffs' Brief in Opposition to Defendants' Motion for Reconsideration on May 30, 2017.  See Plaintiffs' Brief in Opposition to Defendants' Motion for Reconsideration, filed May 30, 2017 (Doc. 281)("Response to Motion for Reconsideration"). The Plaintiffs insist that the Court should deny the Motion for Reconsideration.  See Response to Motion for Reconsideration at 3.  According to the Plaintiffs, the Court must restrict its review of a motion to reconsider an interlocutory order using three standards.  See Response to Motion for Reconsideration at 3.  First, the Plaintiffs assert, the Court must limit its review in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that a motion to reconsider challenges.  See Response to Motion for Reconsideration at 3.  Second, the Plaintiffs contend, the Court must consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and whether parties have

significantly relied on the Court's ruling.  <u>See</u> Response to Motion for Reconsideration at 3.

Third, the Plaintiffs maintain, the Court must consider the holding of <u>Servants of the Paraclete v.</u>

<u>Does</u>, 204 F.3d 1005 (10th Cir. 2000), which suggests that a court should grant motions for

reconsideration only when the movant presents: (i) new controlling authority; (ii) new evidence;

or (iii) a clear indication that the Court erred.  <u>See</u> Response to Motion for Reconsideration at 3

(citing <u>New Mexico v. Valley Meat Co., LLC</u>, 2015 WL 9703255, at *19 (D.N.M.

2015)(Browning, J.)(citing <u>Servants of the Paraclete v. Does</u>, 204 F.3d at 1005)).  According to

the Plaintiffs, the Court should deny the Motion for Reconsideration under those standards.  <u>See</u>

Response to Motion for Reconsideration at 3.

Scrutinizing the Motion for Reconsideration under the first standard, the Plaintiffs argue

that the Court's MO thoroughly addresses the specific conclusions that the Defendants challenge.

<u>See</u> Response to Motion for Reconsideration at 3.  The Plaintiffs note that the Court's MO (i)

makes thirty-nine pages of extensive factual findings that the record evidence supports; (ii)

dedicates twenty-six pages to describing the arguments that the parties made in their respective

briefs; (iii) spends eighty-seven pages recounting the arguments that the parties' counsel made at

oral argument; (iv) extensively discusses case law governing the entire-fairness standard and

minority shareholder rights in the context of a cash-out merger; and (v) explains its

determination of liability in an orderly and logical process.  <u>See</u> Response to Motion for

Reconsideration at 3.  Descrying a forest from these trees, the Plaintiffs opine that the Court

thoroughly considered -- and rejected -- the Defendants' arguments on the issues it now moves

the Court to reconsider.  <u>See</u> Response to Motion for Reconsideration at 3-4.

Examining the Motion for Reconsideration under the second standard, the Plaintiffs then

contend that reopening the liability determination would cause delay and confusion.  <u>See</u>

Response to Motion for Reconsideration at 4. The Plaintiffs maintain that the decision whether to reconsider an earlier ruling is properly affected by the stage a proceeding has reached. <u>See</u> Response to Motion for Reconsideration at 4. Asserting that stability becomes increasingly important as the proceeding nears final disposition lest reopening issues cause further delay or confusion, the Plaintiffs remind the Court that they filed Plaintiffs' MSJ more than twenty months ago. <u>See</u> Response to Motion for Reconsideration at 4. The Plaintiffs aver that both the "parties and the Court have poured massive amounts of time, energy and money into getting the liability determination right the first time." Response to Motion for Reconsideration at 4. According to the Plaintiffs, they have begun to prepare for trial in anticipation of the pending pretrial conference, and reopening the liability determination would significantly broaden the scope of issues to be tried. <u>See</u> Response to Motion for Reconsideration at 4. This broadening, the Plaintiffs maintain, in turn potentially would require the parties to revisit other pretrial motions that they argued and that the Court decided in conjunction with the liability determination, thereby further delaying what already has been a highly-protracted process. <u>See</u> Response to Motion for Reconsideration at 4. The Plaintiffs therefore conclude that the proceeding's late stage, the exhaustive opportunities which the Defendants have had to present their arguments, and the delay and confusion that would result were the liability determination reopened counsel against granting the Motion for Reconsideration. <u>See</u> Response to Motion for Reconsideration at 4.

Evaluating the Motion for Reconsideration under the third standard, the Plaintiffs insist that none of the factors which <u>Servants of the Paraclete v. Does</u> requires are present. <u>See</u> Response to Motion for Reconsideration at 4. The Plaintiffs assert that the Defendants do not present any new law or facts to support their motion, bottoming their Motion for Reconsideration

on what the Plaintiffs contend are specious arguments that the Court committed three errors of law. <u>See</u> Response to Motion for Reconsideration at 4. According to the Plaintiffs, each supposed error of law is chimerical. <u>See</u> Response to Motion for Reconsideration at 4.

With regard to the Court's first supposed error of law -- that the "order and Opinion *implicitly* and erroneously assume the entire fairness doctrine is a liability-imposing device rather than a burden of proof shifting standard of review," Response to Motion for Reconsideration at 5 (quoting Motion for Reconsideration at 1)(emphasis added in the Response to Motion for Reconsideration), the Plaintiffs maintain that the Defendants misread the Court's MO. <u>See</u> Response to Motion for Reconsideration at 5. The Plaintiffs agree with the Defendants that the entire-fairness standard is a test that seeks to determine whether a director or controlling shareholder has complied with his or her fiduciary duties. <u>See</u> Response to Motion for Reconsideration at 5 (citing <u>Reiss v. Hazelett Strip-Casting Corp.</u>, 28 A.3d 442, 465 (Del. Ch. 2011)). The Plaintiffs then say that finding that a transaction is not entirely fair subjects an interested party to liability for breach of his or her duty of loyalty. <u>See</u> Response to Motion for Reconsideration at 5 (citing <u>In re Cornerstone Therapeutics Inc. Stockholder Litigation</u>, 115 A.3d 1173, 1180-81 & n.30 (Del. 2015)). The Plaintiffs read the MO to conclude that Stephenson, Boylan, C. Field, and L. Field breached that duty, because the merger was not entirely fair to the Plaintiffs. <u>See</u> Response to Motion for Reconsideration at 5. According to the Plaintiffs, the MO's text makes it evident that the Court correctly applied the entire-fairness doctrine. <u>See</u> Response to Motion for Reconsideration at 5. The Plaintiffs insist that the MO correctly describes what must be proven to satisfy the entire fairness standard and who bears the burden of proof, stating:

> Under Delaware's entire-fairness standard, the burden of proving that the merger transaction was the product of both fair price and fair dealing defaults to the

> Defendants. The Court may shift the burden of evidence for proving entire fairness to the plaintiff under the following conditions: (i) defendants set up a well-functioning committee of independent directors to examine and approve the merger; and (ii) a fully informed majority of the minority shareholders voted to approve the merger.

Response to Motion for Reconsideration at 5 (quoting MO at 306, 2017 WL 1487439, at *124).

The Plaintiffs assert that the Court does not implicitly assume that the Defendants' failure to implement these burden-shifting procedures established per se liability. See Response to Motion for Reconsideration at 5. Instead, the Plaintiffs maintain, the MO cites this failure as a factor evincing unfair dealing. See Response to Motion for Reconsideration at 5 (citing MO at 306, 2017 WL 1487439, at *124). The Plaintiffs report that the Delaware Court of Chancery has taken the same approach in similar circumstances. See Response to Motion for Reconsideration at 5-6 (citing Seagraves v. Urstact Property Co., Inc., 1996 WL 159626, at *5 (Del. Ch. April 1, 1996)

> It is undisputed that the defendants did not institute any procedural safeguards designed to replicate arm's length bargaining or to assure that the interests of minority stockholders would be adequately protected. . . . [The] board's failure to implement any of these procedural safeguards is a factor evidenc[ing] the absence of fair dealing.

The Plaintiffs also note that the MO observes that the Defendants did not give Plaintiffs advance notice of the merger, characterizing this observation as another factor evidencing the absence of fair dealing, because advance notice is a fundamental fair process which cannot be dispensed with. See Response to Motion for Reconsideration at 6 (citing MO at 306, 2017 WL 1487439, at *124; Cole v. Kershaw, 2000 WL 1206672, at *8 (Del. Ch. August 15, 2000); Ross Holding and Management Co. v. Advance Realty Group, LLC, 2014 WL 4374261, at *19 (Del. Ch. 2014)).

The Plaintiffs assert that the liability determination also finds support in the MO's conclusions that: (i) the Defendants did not obtain a fairness opinion in connection with the

Merger; and (ii) as a result, the Defendants were in the dark about a fair cash-out share price.

See Response to Motion for Reconsideration at 6.  Quoting at length from the MO, the Plaintiffs

note that the Court said:

> The Defendants did not hire an investment bank to conduct a discounted cash flow analysis at the time of the merger.  Indeed, the Defendants did not contend that it [sic] hired an investment bank to calculate a fair price at the time of the merger at all.  The Defendants asserted at the motion hearing that this was a fiduciary choice, as the Defendants did not wish to pay a substantial amount of money for an investment bank fairness opinion that (i) would duplicate the Halifax[] Group['s] December 2012 appraisal; and (ii) would solicit whatever valuation the Defendants[] want[ed] to hear."  Were this the case about the merger of a mature corporation with little change in its market capitalization over short periods of time, the Defendants' argument might withstand some scrutiny.  As corporate financials demonstrate, however, revenues grew rapidly in the year after the December, 2012 appraisal, sprinting forward at an uneven pace month by month but generally running at a sixty percent year-on-year YTD growth.  To borrow a management consulting term, TIR was a rare corporate "star."  **_TIR's choice not to commission an updated investment bank fairness opinion kept even the Defendants in the dark about a fair cash-out price even if the Court were to interpret the facts in the light most favorable to Defendants._**

Response to Motion for Reconsideration at 6-7 (quoting MO at 285-86, 2017 WL 1487439, at

*124)(emphasis added, internal citations omitted).  According to the Plaintiffs, failure to obtain a

fairness opinion is a recognized factor that may evidence unfair dealing.  See Response to

Motion for Reconsideration at 7 (citing Cole v. Kershaw, 2000 WL 1206672, at *8).  Likewise,

the Plaintiffs continue, a director's failure to be adequately informed about the basis for the price

paid in a transaction subject to entire-fairness review, is another factor that may evidence unfair

dealing.  See Response to Motion for Reconsideration at 7 (citing In re Nine Systems Corp.

Shareholders Litigation, 2014 WL 4383127, at *36).  Summarizing, the Plaintiffs assert that the

MO's liability determination rests on conclusions that: (i) the Defendants did not set up a well-

functioning committee of independent directors to examine and approve the Merger; (ii) a fully

informed majority of the minority shareholders did not vote to approve the Merger; (iii) the

Defendants did not give the Plaintiffs advance notice of the Merger; (iv) the Defendants did not commission a fairness opinion in connection with the Merger; and (v) Defendants were in the dark about a fair cash-out share price.  <u>See</u> Response to Motion for Reconsideration at 7.  The Plaintiffs maintain that, based on these conclusions, the MO concludes that the "'Defendants did not put into place sufficient safeguards protecting minority shareholder right to meet'" their "'burden of proof that the merger was entirely fair to the minority shareholders.'"  Response to Motion for Reconsideration at 7 (quoting Opinion at 303).  According to the Plaintiffs, this holding has ample support in case law imposing liability where the defendants failed to implement adequate safeguards to protect minority shareholders' interest.  <u>See</u> Response to Motion for Reconsideration at 7-8 (citing <u>In re Sunbelt Beverage Corp. Shareholder Litig.</u>, 2010 WL 26539, at *5 (Del. Ch. 2010)(Chandler, C.); <u>Reis</u>, 28 A.3d at 464; <u>Oliver v. Boston Univ.</u>, 2006 WL 1064169, at *25 & n.38 (Del. Ch. 2006)(Noble, V.C.)).

The Plaintiffs then argue that the Court may determine entire fairness without a trial on fair price.  <u>See</u> Response to Motion for Reconsideration at 8.  According to the Plaintiffs, it is well established that, once entire fairness applies, a defendant must establish "'to the *court's* satisfaction that the transaction was the product of both fair dealing *and* fair price.'"  Response to Motion for Reconsideration at 8 (quoting <u>Cinerama, Inc. v. Technicolor, Inc.</u>, 663 A.2d 1156, 1163 (Del. 1995))(emphasis in original)(internal citation omitted in Response to Motion for Reconsideration).  The Plaintiffs insist that Delaware courts "'examine the transaction as a whole and both aspects of the test must be satisfied; a party does not meet the entire fairness standard simply by showing that the price fell within a reasonable range that would be considered fair.'"  Response to Motion for Reconsideration at 8 (quoting <u>William Penn Partnership v. Saliba</u>, 13 A.3d 749, 756-57 (Del. 2011)).  The Plaintiffs maintain that Delaware courts accordingly

oftentimes conclude that fairly priced transactions are not entirely fair on account of the absence of fair dealing.  See Response to Motion for Reconsideration at 8-9 (citing Oliver, 2006 WL 1064169, at *21-25 & n.238; Ross, 2014 WL 4374261, at *34; In re Nine Systems, 2014 WL 4383127, at *47; Dole Food, 2015 WL 505214, at *2 & 38).

Furthermore, the Plaintiffs contend, fair price is not necessarily the preponderant consideration in an entire-fairness analysis.  See Response to Motion for Reconsideration at 9. According to the Plaintiffs, the Supreme Court of Delaware clarified its decision in Weinberger v. UOP, Inc., 457 A.2d 701, 710-11 (Del. 1983), two years later in Rabkin v. Phillip A. Hunt Chem. Corp., 498 A.2d 1099 (Del. 1985), in which it explained:

> "While this duty of fairness certainly incorporates the principle that a cash-out merger must be free of fraud or misrepresentation, *Weinberger*'s mandate of fair dealing does not turn solely on issues of deception.  We particularly noted broader concerns respecting the matter of procedural fairness.  Thus, while 'in a non-fraudulent transaction . . . price *may* be the preponderant consideration,' it is not necessarily so."

Response to Motion for Reconsideration at 10 (quoting Rabkin v. Phillip A. Hunt Chem. Corp., 498 A.2d at 1104-05)(emphasis in Rabkin v. Phillip A. Hunt Chem. Corp.).  The Plaintiffs then refer the Court to the Supreme Court of Delaware's opinion in International Telecharge, Inc. v. Bomarko, 766 A.2d 437 (Del. 2000), in which the Supreme Court of Delaware doubled down on Rabkin v. Phillip A. Hunt Chem. Corp., indicating: "'When making a determination of a transaction's entire fairness[,] courts examine the transaction as a whole[,] looking at both fair price and fair dealing, without focusing on one component over another.'"  Response to Motion for Reconsideration at 10 (quoting International Telecharge, Inc. v. Bomarko, 766 A.2d at 440).

The Plaintiffs then note that the Defendants assert that a finding of grossly unfair process is the sole exception to a general rule that a court may not find a breach of fiduciary duty without first determining whether the price was fair.  See Response to Motion for Reconsideration at 10.

According to the Plaintiffs, the cases that the Defendants proffer in support of their position undermines it.  <u>See</u> Response to Motion for Reconsideration at 10.  In neither of the two cases, the Plaintiffs argue, did Vice Chancellor Noble assert that such gross unfairness is the only exception to the rule.  <u>See</u> Response to Motion for Reconsideration at 10.  The Plaintiffs insist that Vice Chancellor Noble rather held that gross fairness may be sufficient but is not necessary to such a liability finding.  <u>See</u> Response to Motion for Reconsideration at 10-11.  The Plaintiffs then propose that other Delaware courts' opinions echo Vice Chancellor Noble's position.  <u>See</u> Response to Motion for Reconsideration at 11 (citing <u>Oliver</u>, 2006 WL 1064169, at *25; <u>Ross</u>, 2014 WL 4374261, at *33-34).  As the Plaintiffs see it, in this case, as in <u>Oliver</u>, the Defendants have failed to prove fair dealing, because "'they did not put into place sufficient safeguards protecting minority shareholder rights.'"  Response to Motion for Reconsideration at 11 (quoting MO at 303, 2017 WL 1487439, at *133).  Consequently, the Plaintiffs contend, the MO's liability determination fully comports with the normative and policy considerations animating similar decisions in the Delaware Court of Chancery.  <u>See</u> Response to Motion for Reconsideration at 11-12.

The Plaintiffs then aver that a liability determination may, notwithstanding the Defendants' protestations, be made on summary judgment.  <u>See</u> Response to Motion for Reconsideration at 12.  The Plaintiffs argue that the Defendants cite no authority to the contrary, and that courts repeatedly have made liability determinations on summary judgment based on a defendant's failure to demonstrate fair dealing.  <u>See</u> Response to Motion for Reconsideration at 12 (citing <u>Merritt v. Colonial Foods, Inc.</u>, 505 A.2d 757, 765 (Del. Ch. 1986)(Allen, C.); <u>Pereira v. Cogan</u>, 267 B.R. 500, 509 (Bankr. S.D.N.Y. 2001)(Sweet, J.)).  Threading a needle, the Plaintiffs insist that, even though "a unitary analysis of both fair price and fair dealing must be

undertaken, it is not necessary to decide, on summary judgment or even after trial, whether the fair price prong is satisfied, because a finding of liability may be based on an absence of fair dealing alone." Response to Motion for Reconsideration at 12. In a footnote, the Plaintiffs then accuse the Defendants of misquoting the case on which they rely to argue to the contrary -- <u>Gatz Properties, L.L.C. v. Aguriga Capital Corp.</u> <u>See</u> Response to Motion for Reconsideration at 12 n.5. According to the Plaintiffs, the Defendants altered the Supreme Court of Delaware's opinion by "erroneously inserting into the quote the following non-grammatical sentence: 'Thus, all aspects of the transaction must be considered before making an [sic] <u>unitary determination</u>.'" Response to Motion for Reconsideration at 12 n.5 (quoting Motion for Reconsideration at 10). The Plaintiffs insist that the "phrase 'unitary determination' was authored by Defendants, not the *Gatz* court." Response to Motion for Reconsideration at 12 n.5 (emphasis added in the Motion for Reconsideration).

Turning their argument at that point to the summary judgment standards, the Plaintiffs take issue with the Defendants' argument that the MO and Order fail to (i) resolve all reasonable inferences and doubts in the Defendants' favor; and (ii) construe all evidence in the light most favorable to the Defendants. <u>See</u> Response to Motion for Reconsideration at 12. The Plaintiffs dismiss the argument as unsound, noting that the MO and Order both determine liability entirely on facts that neither party disputes, save a finding that the Defendants' failure to obtain a fairness opinion in connection with the merger left the Plaintiffs "'in the dark about a fair cash-out share price.'" Response to Motion for Reconsideration at 12 (quoting MO at 286, 2017 WL 1487439, at *126). According to the Plaintiffs, the Court made this last conclusion only after interpreting the undisputed facts in the light most favorable to the Defendants. <u>See</u> Response to Motion for Reconsideration at 12. Furthermore, the Plaintiffs continue, the Defendants, in their Motion for

Reconsideration, simply rehash the same arguments that they made or could have made when they responded to Plaintiffs' MSJ or during the hearing on the motion. <u>See</u> Response to Motion for Reconsideration at 13. The Plaintiffs urge the Court not to grant the Defendants a "mulligan on their failure to present persuasive argument and evidence" when they initially opposed the Plaintiffs' MSJ. Response to Motion for Reconsideration at 14 (quoting <u>New Mexico v. Valley Meat Co., LLC</u>, 2015 WL 9703255, at *20 (D.N.M. 2015)(Browning, J.)).

As the Plaintiffs see it, the Defendants' contentions in the Motion for Reconsideration also are insufficient on their face to warrant reconsideration for two additional reasons. <u>See</u> Response to Motion for Reconsideration at 14. First, the Plaintiffs say, the Defendants' assertion that "'in any reasonable business person's judgment' the history of sales of TIR shares at a price of $451,000 per share was 'a more than adequate substitute for an appraisal . . . [and] independent committee'" is irrelevant, because fair dealing is reviewed, not under the business-judgment rule, but rather under the more exacting entire-fairness rule. Response to Motion for Reconsideration at 14-15 (quoting Motion for Reconsideration at 21)(citing <u>Kahn v. Tremont Corp.</u>, 694 A.2d 422, 428 (Del. 1997)).

Second, the Plaintiffs argue, the speculative futility of a majority of the minority vote does not excuse the Defendants' unfair dealing. <u>See</u> Response to Motion for Reconsideration at 15. According to the Plaintiffs, what the Plaintiffs would have done if the Merger had been put to a vote of the minority shareholders is inherently unknowable, and the Delaware Court of Chancery ordinarily declines to engage in such speculation when reviewing a transaction for entire fairness. <u>See</u> Response to Motion for Reconsideration at 16 (citing <u>Dole Food</u>, 2015 WL 5052214, at *32; <u>Int'l Discharge</u>, 794 A.2d at 1181-82). The Plaintiffs further contend that the Defendants misconceive how a majority of the minority vote even functions, indicating that such

a vote "'only serves as a robust procedural protection when it is a non-waivable pre-condition to a transaction.'"  Response to Motion for Reconsideration at 16 (quoting <u>Frank v. Elgamal</u>, 2012 WL 1096090, at *10 n.71 (Del. Ch. March 30, 2012)(Noble, V.C.)).

Shifting gears, the Plaintiffs then argue that the Court should reaffirm its determination of the Defendants' liability if it decides to reconsider its Opinion.  <u>See</u> Response to Motion for Reconsideration at 17.  The Plaintiffs insist that, the Plaintiffs' theories notwithstanding, the history of sales of TIR, Inc. shares is not an appropriate substitute for an independent committee and appraisal.  <u>See</u> Response to Motion for Reconsideration at 17.  First, the Plaintiffs aver, the Defendants did not come to any well-informed judgment that the cash-out price they paid for TIR, Inc. shares was fair.  <u>See</u> Response to Motion for Reconsideration at 17-21.  Second, the Plaintiffs maintain, any reliance that the Defendants had on TIR, Inc. shares' prior sale prices when they pegged the cash-out price at $451,000.00 per share is further evidence of the Defendants' unfair dealing, because (i) the Defendants had a duty to consider TIR, Inc.'s going concern value as of the merger date; (ii) the sales price that the Defendants derived from the June, 2013, control transaction was stale; (iii) TIR, Inc.'s shares were not actively traded in a liquid market; and (iv) the control transaction was not a reliable fair value discovery mechanism. <u>See</u> Response to Motion for Reconsideration at 21.

Expanding on this first point, the Plaintiffs note that the Delaware definition of fair value entitles a shareholder to be paid for his or her proportionate interest in a going concern.  <u>See</u> Response to Motion for Reconsideration at 22 (citing <u>Merion Capital L.P. v. Lender Processing Services, Inc.</u>, 2016 WL 7324170, at *13 (Del. Ch. December 16, 2016)(Laster, V.C.)).  The Plaintiffs insist that the Delaware courts eschew reducing going concern value to market price on any given date.  <u>See</u> Response to Motion for Reconsideration at 22 (citing <u>In re Appraisal of</u>

Dell, Inc., 2016 WL 3186538, at *23 (Del. Ch. 2016 )(Laster, V.C.)). Reflecting this fact, the Plaintiffs reason, the Defendants had a duty to the minority shareholders to test the market price's reliability as a proxy for TIR, Inc. shares' fair value by estimating TIR, Inc.'s fundamental value as a going concern. See Response to Motion for Reconsideration at 22-23. According to the Plaintiffs, the Defendants' failure to validate the market price's reliability therefore is evidence of unfair dealing. See Response to Motion for Reconsideration at 23.

Unpacking their second point, the Plaintiffs insist that the cash-out share price that the Defendants derived from the control transaction was stale. See Response to Motion for Reconsideration at 23. After referring to the Court to Sunbelt in support of the proposition that the Delaware courts often have concluded that reliance on outdated valuation data is evidence of unfair dealing, see Response to Motion for Reconsideration at 23 (citing Sunbelt, 2010 WL 26539, at *6-7), the Plaintiffs observe that TIR, Inc.'s rapid revenue growth between the time of the control transaction and the merger date makes it unlikely that the price negotiated in June, 2013, would be the same as the company's fair value six months later, see Response to Motion for Reconsideration at 23. As the Plaintiffs see it, the Defendants, at minimum, had a duty of fair dealing to conduct a more thorough valuation at the time of the merger to determine whether the $451,000.00 per share price still reflected TIR, Inc.'s value. See Response to Motion for Reconsideration at 23-24.

Expounding on their third point, the Plaintiffs then contended that TIR, Inc. shares' sale price during the control transaction were especially unreliable, because the shares were not actively traded in a liquid market. See Response to Motion for Reconsideration at 24. Indeed, the Plaintiffs assert, the Delaware Court of Chancery has held that "'reliance on a price determined in a thinly traded, illiquid[] market is evidence of a price's unfairness.'" Response to

Motion for Reconsideration at 24 (quoting <u>Gesoff v. IIC Industries, Inc.</u>, 902 A.2d 1130, 1154 & n.134 (Del. Ch. 2006)(Lamb, V.C.)).  Adopting the <u>Gesoff v. IIC Industries, Inc.</u> court's stance, the Plaintiffs maintain that the Defendants' similar reliance on inherently unfair prices determined in a thinly traded, illiquid market, over which the Defendants has significant influence, is further evidence of their unfair dealing.  <u>See</u> Response to Motion for Reconsideration at 24.

The Plaintiffs then conclude their Response to Motion for Reconsideration by adding a fourth point that they had not previously signposted, partially revisiting their earlier assertion that the control transaction was not a reliable fair value discovery mechanism for two reasons.  <u>See</u> Response to Motion for Reconsideration at 24.  First, the Plaintiffs posit, neither Cypress Energy Partners nor Stuart was permitted to make a topping bid, with the resulting structural ceiling on the control transaction price making it a poor talisman for fair value in a competitive bidding environment.  <u>See</u> Response to Motion for Reconsideration at 24.  Second, the Plaintiffs maintain, it is undisputed that the shareholders who sold to Cypress Energy Partners in the control transaction -- <u>i.e.</u>, the pooled shareholders -- were not looking to maximize their shares' value.  <u>See</u> Response to Motion for Reconsideration at 25.  In analogous circumstance, the Plaintiffs argue, the Delaware Court of Chancery has held that fair value is not evident from such transactions with shareholders eager to sell their shares.  <u>See</u> Response to Motion for Reconsideration at 25 (citing <u>In re Appraisal of Dell, Inc.</u>, 2016 WL 3186538, at *37-44 (citing <u>Global GT LP v. Golden Telecom.</u>, 993 A.2d 497 (Del Ch. 2010)(Strine, V.C.))).

### 8.   <u>Reply to Motion for Reconsideration</u>.

The Defendants filed the Defendants' Reply in Further Support of Motion for Reconsideration (Doc. 280) on June 13, 2017.  <u>See</u> Defendants' Reply in Further Support of

Motion for Reconsideration (Doc. 280), filed June 13, 2017 (Doc. 287)("Reply to Motion for Reconsideration").   Abstracting their argument in emphatic tones at the start of the filing, the Defendants insist that not one case that the Plaintiffs cite in their Response to Motion for Reconsideration supports their argument that entire-fairness may be determined without a trial on fair price.   See Reply to Motion for Reconsideration at 1.   Working backward from this conclusion, the Defendants first argue that entire-fairness review requires a two-part analysis to determine liability and cannot be completed without a trial on fair price.   See Reply to Motion for Reconsideration at 1.   The Defendants repeat their contention from the Motion for Reconsideration that entire fairness is a two-part unitary standard under Weinberger v. UOP, Inc., maintaining that the Supreme Court of Delaware has consistently held that entire-fairness review comprises the dual components of fair dealing and fair price.   See Reply to Motion for Reconsideration at 2.   Consequently, the Defendants posit, the Delaware Courts of Chancery repeatedly have held that the fair price aspect of entire fairness review is not a remedial or damage calculation.   See Reply to Motion for Reconsideration at 2 (citing Reis v. Hazelett Strip-Casting Corp., 28 A.3d at 465).   According to the Defendants, a matter proceeds to the remedial phase in an entire-fairness case only if the transaction fails the fairness test.   See Reply to Motion for Reconsideration at 2.

In contrast, the Defendants assert, the Court's analysis of entire fairness in the Order and MO rest on an analysis of fair dealing only.   See Reply to Motion for Reconsideration at 2.   The Defendants quote at length from the MO in support of this proposition:

> Under the entire fairness standard, the Defendants could show fair dealing under the following conditions: (i) the Defendants set up a well-functioning committee of independent directors to examine and approve the merger; or (ii) a fully-informed majority of the minority shareholders voted to approve the merger.

> * * * *

> In this case, the Defendants satisfied neither criterion to shift the evidentiary burden. . . . The Court therefore grants the Plaintiffs' request for summary judgment on the Defendants' liability for breaching their fiduciary duty of fair dealing with respect to the merger transaction.

Reply to Motion for Reconsideration at 2-3 (quoting MO at 306-07, 2017 WL 1487439, at *134-35)(emphasis added in Reply to Motion for Reconsideration).   From this language, the Defendants ascertain that the Court clearly made a finding of a breach of fiduciary duty even though: (i) the entire fairness doctrine is only a burden-shifting doctrine, and not a liability doctrine; and (ii) the Court has not made any fair price determination.  See Reply to Motion for Reconsideration at 3.   Accordingly, the Defendants reason, the Motion for Reconsideration meets the third Servants of the Paraclete v. Does ground, i.e., that a court should grant reconsideration when it manifestly erred.  See Reply to Motion for Reconsideration at 3 (citing Servants of the Paraclete v. Does, 204 F.3d at 1005).

Delving further into this argument, the Defendants reemphasize that entire fairness cannot be determined before a consideration of fair price.   See Reply to Motion for Reconsideration at 3.  The Defendants assert that not one of the cases that the Plaintiffs proffer in their Response to the Motion for Reconsideration supports their argument that entire fairness may not be determined without a trial on fair price.  See Reply to Motion for Reconsideration at 3.  The Defendants contend that, in each of these cases, the court reached a conclusion as to liability only after considering both fair process and fair price.  See Reply to Motion for Reconsideration at 3 (citing In re Cornerstone Therapeutics Inc. Shareholder Litigation, 115 A.3d at 1173; William Penn Partnership v. Saliba, 13 A.3d at 758; Oliver v. Boston Univ., 2006 WL 1064169, at *25 n.238); Ross, 2014 WL 4374261, at *17; In re Nine Systems, 2014 WL 4383127, at *3; International Telecharge, Inc., 794 A.2d at 1161; In re Dole Food Co., Inc.

Stockholder Litigation, 2015 WL 5052214, at *3, *33-38; HMG/Courtland Properties, Inc. v. Gray, 749 A.2d 94, 116 (Del. Ch. 1999)(Strine, V.C.)).  As the Defendants report it, the courts in these cases found an absence of fair dealing and determined a breach of fiduciary duties only after a trial in which the evidence and full story came to light via examination and cross-examination.  See Reply to Motion for Reconsideration at 4.

Building upon this scaffolding, the Defendants then maintained that fair price is not only required but the paramount consideration for any court the question of entire fairness confronts. See Reply to Motion for Reconsideration at 5 (citing In re Dole Foods Co., Inc. Stockholder Litigation, 2015 WL 5052214, at *34)("The concept of 'process' is non-existent, but even under those circumstances, I believe that the controller who proved that the price was indeed fair would not have breached his duties.")  As the Defendants read the Delaware case law, neither Rabkin v. Phillip A. Hunt Chem. Corp. nor International Telecharge calls this principle into question, the Plaintiffs' contentions to the contrary notwithstanding.  See Reply to Motion for Reconsideration at 5-6.  The Defendants note that Rabking v. Phillip A. Hunt Chem. Corp. was decided thirty years before the Supreme Court of Delaware's decision in Kahn v. M&F Worldwide Corp., and the International Teleacharge court focused mainly on the obligation to consider both entire fairness elements together rather than on their importance relative to one another.  See Reply to Motion for Reconsideration at 6.  Moreover, the Defendants continue, the cases in which liability for rbeach of fiduciary duty rests on a finding of unfair dealing, after the price was found to be fair, universally involve transactions in which material information was withheld from the minority shareholders or the process was grossly unfair in other regards.  See Reply to Motion for Reconsideration at 6-7.  The Defendants conclude that the Plaintiffs' efforts to undermine the importance of the fair-price analysis are fruitless.  See Reply to Motion for Reconsideration at 7.

Shifting to their next main point, the Defendants insist that there are genuine issues of material fact whether the process was fair and that the trial should be a trial on fair process as well as fair value.  See Reply to Motion for Reconsideration at 7.  The Defendants reiterate that the Court's MO only identifies the absence of the two Kahn procedural safeguards -- independent committee and minority vote -- as grounds for concluding that the Defendants are liable for breach of fiduciary duty.  See Reply to Motion for Reconsideration at 7 (citing MO at 285-86 & 306, 2017 WL 1487439, at *124-25, 134-35).  The Defendants contest both these conclusions, averring that the evidence establishes that: (i) an independent committee was established; (ii) the Plaintiffs obstructed the committee's operation; and (iii) the Plaintiffs were fully informed.  See Reply to Motion for Reconsideration at 7-8.  The Defendants reiterate that the evidence also establishes that any effort to obtain a vote would have been in vain, because the Plaintiffs rejected the Cypress Energy Partners business plan, demanded to be cashed out, and formed a pact to extract a price in excess of fair market value, erroneously believing that their minority could block the merger.  See Reply to Motion for Reconsideration at 8.  According to the Defendants, when these facts are considered in tandem with the fact that the Plaintiffs point to no act of unfairness other than the absence of one or more of the safe harbors, the Defendants are manifestly entitled to a jury trial on the issue of procedural fairness.  See Reply to Motion for Reconsideration at 8.  The Defendants emphasize that the Court may not make this determination about whether the process was fair without hearing directly from the participants, including TIR, Inc.'s co-founder and CEO.  See Reply to Motion for Reconsideration at 8.  The Defendants assert that the pooled shareholders' sales of their shares and warrants provide some evidence of fair process for the cash out of the Plaintiffs, demanding that the Court not only backtrack on its liability determination but also reconsider its denial of the Defendants' right to a jury trial on fair

process.  See Reply to Motion for Reconsideration at 9-10.

### 9.    April, 2017, Hearing.

The Court held a hearing on April 26, 2017, during which the parties briefly touched upon the Defendants' intention to file the Motion for Reconsideration.  See Transcript of Motion Hearing Before the Honorable James O. Browning United States District Judge, April 26, 2017, filed June 5, 2017 (Doc. 282)("April Tr.").  Inserting their arguments as a verbal parenthesis within argument on another motion, the Plaintiffs maintained that the Motion for Reconsideration does not meet any of the standards that govern motions for reconsideration.  See April Tr. at 260:23-261:2 (Kagen).  The Plaintiffs asserted that, to get reconsideration pursuant to the Court's written MO, the Defendants would need to indicate that the Court has erred with regards to a fact -- i.e., not with regards to the law.  See April Tr. at 261:2-5 (Kagen).  The Plaintiffs began to protest that the Defendants had surprised them with the Motion for Reconsideration, but the Court interjected with a reminder that the Defendants, in fairness, had not received the Court's MO until the previous day.  See April Tr. at 261:20-22 (Court).  The Court then permitted the Defendants to argue their Motion for Reconsideration so that the Plaintiffs could respond to the motion intelligently.  See April Tr. at 261:20-22 (Court).

After assuring the Court that it meant no respect with its proposed Motion for Reconsideration, the Defendants insisted that the absence of procedural safeguards that lead to proof of entire fairness does not translate into a finding of liability.  See April Tr. at 261:24-262:2-14 (DeMuro).  The Court told the Defendants that it was not sure that it agreed with that proposition, explaining:

> I guess at the burden-shifting stage, which we, I think, all agreed that you bore that burden, that was when you, I think, needed to come forward with evidence of the procedural fairness.  And I guess that probably is where we are disagreeing, is that I didn't think that you showed that.

April Tr. at 262:15-22 (Court). The Defendants suggested that they and the Court may just be describing the same principle in two different ways. See April Tr. at 262:23-25 (DeMuro). The Defendants presented the two positions as faces of the same coin:

> If we are saying that even when the entire fairness burden-shifting review is applied, the defendant still gets to come forward and attempt to prove the fairness the entire fairness of the transaction. And I understand Your Honor to say, well, we haven't done that.

> But where that means we are, Your Honor, would be that -- that would mean that Your Honor has made a ruling that all inferences in our favor -- all inferences to be construed in our favor, number one, what is the process that we're talking about and what are the factors to be determined?

> Well, we know that the process that we're talking about is the process that led up to the merger which both parties agree started -- and by the plaintiffs' own admission in their pleadings and their expert -- started before the bidding process and that we have to evaluate that process to determine whether it was entirely fair and we don't have to show -- the absence of those procedural devices doesn't mean that it wasn't fair. We get to show substitutes. We get to say we didn't to [sic] that but we did this. And we have the right to show -- substitutes to show what, fairness.

April Tr. at 263:2-21 (DeMuro). The Defendants then continued their argument's main line, saying that fairness is a quintessential fact issue. See April Tr. at 263:22-23 (DeMuro). The Defendants confessed that they could not see how the Court -- making all inferences in the Defendants' favor -- can make a finding as a matter of law as to fairness. See April Tr. at 263:23-264:20 (DeMuro). According to the Defendants, they are entitled to prove substitutes, such as the Duff & Phelps auction process that led up to the bid, the arm's length transactions, and the fully-informed plaintiff group. See April Tr. at 20-24 (DeMuro).

The Defendants then returned to their argument that entire fairness analysis is not bifurcated. See April Tr. at 265:9-266:9 (DeMuro). The Defendants contended that they have a right to make an argument before the jury that the merger process was fair. See April Tr. at

266:9-20 (DeMuro). The Defendants concede that they are foreclosed from using the business-judgment rule and a number of other defenses when the entire-fairness standard of review applies. See April Tr. at 266:21-23 (DeMuro). The Defendants insist, however, that they are not foreclosed from telling their side of the story. See April Tr. at 266:23-267:1 (DeMuro). The Defendants assert that this reading is especially true, because (i) the Plaintiffs purportedly "locked themselves together arm in arm to a contractual price that was higher than [the Defendants] had already given a tender notice for," thereby making any minority vote inherently futile; and (ii) a premium bidding process and fully informed minority shareholders made an appraisal unnecessary   April Tr. at 267:19-268:6 (DeMuro).

The Court then offered the Plaintiffs an opportunity to argue against the Motion for Reconsideration. See April Tr. at 269:2-3 (Court). The Plaintiffs immediately expressed dismay that the "entire tenor and thrust of this argument . . . is fundamentally unfair to [the] plaintiffs." April Tr. at 269:12-15 (Kagen). Clarifying what they meant, the Plaintiffs stated that they filed the Plaintiffs' MSJ on September 14, 2015, and that the motion was fully briefed by October, 2015. See April Tr. at 269:16-19 (Kagen). The Plaintiffs averred that they were perplexed about how the Defendants could come into court one and a half years later to introduce new arguments, new cases, and new theories. See April Tr. at 269:20-270:10 (Kagen). The Plaintiffs then riposted the Defendants' contention that the Court had issued its decision granting Plaintiffs' MSJ with regard to liability just the previous day. See April Tr. at 270:11-12 (Kagen). According to the Plaintiffs, the Court issued the Order on the Plaintiffs' MSJ on March 31, 2017. See April Tr. at 270:12-19 (Kagen). During subsequent correspondence with the Defendants, the Plaintiffs alleged, the Defendants gave no hint that they intended to argue a motion for reconsideration. See April Tr. at 271:4-272:5 (Kagen). Beyond this purported procedural

unfairness in ambushing the Plaintiffs with the Motion for Reconsideration, the Plaintiffs protested, the Court's previous motion for reconsideration decisions in other cases, such as United States v. DeLeon, 2016 WL 7242579 (D.N.M. October 28, 2016)(Browning, J.), correctly flag three factors that govern when and how a court should adjudge a motion for reconsideration. See April Tr. at 272:5-273:1 (Kagen). First, the Plaintiffs maintained, the Court must assess how thoroughly the earlier ruling addressed the specific findings. See April Tr. at 273:2-3 (Kagen). According to the Plaintiffs, the Order was clear and thorough, and the MO was "extremely clear and very detailed." April Tr. at 273:4-6 (Kagen). Second, the Plaintiffs contended, the Court should consider the case's overall progress and posture. See April Tr. at 273:20-21 (Kagen). With the case rapidly barreling toward trial and the motion having been fully briefed in 2015, the Plaintiffs ascertain that the case's posture leaves no question that the Defendants are not entitled to a mulligan at this late stage. See April Tr. at 273:21-274:4 (Kagen). Third, the Plaintiffs posited, the Court should identify whether the movant presents any new controlling authority. See April Tr. at 274:5-8 (Kagen). The Plaintiffs maintained that the Defendants present no such new controlling authority in the Motion for Reconsideration. See April Tr. at 274:9-16 (Kagen).

After asserting that the Defendants had not satisfied any of the three United States v. DeLeon criteria, the Plaintiffs re-emphasized that countenancing the Motion for Reconsideration would put the Plaintiffs in an unfair and prejudicial spot, because the Defendants "ambushed" the Plaintiffs with it to "see if they can get this mulligan." April Tr. at 275:12-21 (Kagen). The Plaintiffs clarified that, if given adequate time to respond to the Motion for Reconsideration, their opposition would not rest solely on the ambush, although they wished to hear at least a justification or grounds for the Motion for Reconsideration, or the Defendants' alleged ambuscade. See April Tr. at 275:22-276:13 (Kagen).

The Court then asked the Plaintiffs whether anything it had concluded in its treatment of the Plaintiffs' MSJ that the Plaintiffs, standing behind the veil, would find difficult to defend in front of the Tenth Circuit.  See April Tr. at 276:20-24 (Court).  The Plaintiffs confessed that they saw nothing difficult to defend, adding that "the decision is well-reasoned."  April Tr. at 276:25-277:1 (Kagen).  The Plaintiffs nevertheless then noted:

> Your Honor does refer to the duty of entire fairness.  I will tell Your Honor that some Delaware Chancery Court cases refer to it in just that way.  And, in fact, I was listening to defense counsel and defense counsel did as well in the course of his argument.  He said you found we breached the duty of entire fairness.  I think that is a semantic issue at best and I don't think it raises any qualms.  If the Court wants, it could say that it found that they breached their fiduciary duty of fair dealing.
>
> Beyond that, no, I don't think there's anything in that decision that would give me discomfort before the Tenth Circuit.

April Tr. at 277:2-13 (Kagen).  Pressing the Plaintiffs on this point, the Court posed a hypothetical:

> Let's say we have a jury trial and I'm instructing the jury on basically what I have given either a partial summary judgment or directed verdict.  Does Mr. DeMuro have a point that I can't tell them they violated the fiduciary duty yet because until there's a determination of the fair price -- or the fair value, we can't yet say there's a violation of fiduciary duty?

April Tr. at 277:14-20 (Court).  The Plaintiffs insisted that they "don't believe [the Defendants have] a point.  The duty of entire fairness has two prongs, the duty of fair dealing and the duty of fair price."  April Tr. at 277:21-24 (Kagen).  Caveating that he was arguing this point off-the-cuff, the Plaintiffs' counsel asserted that the Defendants' position that the Court cannot establish breach of fiduciary duty without first evaluating price is without basis.  See April Tr. at 278:10-15 (Kagen).  Referring the Court to In re Nine Systems, the Plaintiffs indicated that, in that case, the defendants had no fair dealing whatsoever.  See April Tr. at 278:20-21 (Kagen).  After trial, the Plaintiffs recounted, the Delaware Court of Chancery found that the defendants had breached

fair dealing thoroughly and completely, but also found that the price which the plaintiffs received was a fair price. See April Tr. at 278:21-279:8 (Kagen). Reading the In re Nine Systems tea leaves, the Plaintiffs contended that the case indicts as a matter of law that, in the absence of fair dealing, liability is established. See April Tr. at 279:10-280:3 (Kagen). Therewith, the Plaintiffs finished their discussion of the Motion for Reconsideration. See April Tr. at 280:25 (Kagen).

On the following day of the hearing, the Court provided the parties with its inclination on the Motion for Reconsideration. See April Tr. at 370:23-371:18 (Court). The Court noted its nuanced position:

> I'm not inclined right at the moment to change what I have written but that's between us lawyers getting ready for trial. I think it's a different thing -- and I have not -- I'm not sure it's necessary . . . for me to tell the jury that I have found a breach of fiduciary duty. I think legally I have found that and I'm not inclined to change, but I'm not sure that it's necessary to tell the jury that. So that may take some of the . . . sting out of the opinion that I wrote.
>
> It seems to me that if I can avoid doing that and still write good jury instructions and be fair, I don't see any reason to get into that because that seems to me to be unfairly prejudicial, and I'd like the jury to focus on . . . what their task is to come up with fair value. And so that . . . may be some of [sic] assistance to you as we think and I write jury instructions and talk to this jury in a way that we don't have to say, this is what I've found, how did we get here? You know, I'm not sure we need to go back and tell them how we got there. We just need to focus them on what their job is.

April Tr. at 370:23-371:18 (Court). The Defendants thanked the Court for this insight into its thinking, emphasizing that any instruction or stipulation to the jury before trial that the Defendants breached the fiduciary duty of loyalty would be insurmountably prejudicial. See April Tr. at 371:19-372:3 (DeMuro). Shortly thereafter, the Court shared with the parties a fuller texture of its current inclination:

> I do think Mr. Kagen was right in the sense that -- or at least this struck home with me yesterday and last night as I thought about it and read your three-page document and looked at the cases, I began to look at those case -- that it's hard to -- if it's not bifurcated in the sense that -- and it is conjunctive -- if you violated

> one, or if you can't satisfy one, the fact that you can really satisfy the other doesn't mean that you have not violated the fiduciary duty. That's the reason I'm comfortable with what I have said and written.
>
> But give that some thought because I think that's -- that's a good way to think about it, that it is in the conjunctive. It's not a disjunctive, it's conjunctive. If you fail on one, you can't say, well, I got a really fair price, and therefore, that remedies everything. You still have a breach. But, you know, in the end it may not make any difference, the price may be the same, you know. But it -- but it is a -- it is a conjunctive rather than a disjunctive . . . and not bifurcated which are some of the cases you cited yesterday.

April Tr. at 373:2-22 (Court). Not convinced in the correctness of the Court's inclination, the Defendants there is no question that the In re Trados opinion held that the defendants in that case did not breach their fiduciary duty -- even though they had unfair process -- when common stock had the same value before and after. See April Tr. at 374:5-375:4 (DeMuro).

**10.** **June, 2017, Hearing.**

The Court held another hearing on June 29, 2017, during which the parties again argued the Defendants Motion for Reconsideration. See Transcript of Motion Hearing Before the Honorable James O. Browning United States District Judge, June 29, 2017, filed July 14, 2017 (Doc. 306)("June Tr."). While the Defendants were discussing another motion in the morning, they indicated that their stance and arguments on that motion hinged in part on some guidance on the Motion to Reconsider. See June Tr. at 47:17-19 (DeMuro). The Court obliged, signaling that its inclination had not changed since the April, 2017, hearing:

> I think we have to assume I'm not going to grant the motion to reconsider. We'll see if we have time to argue it. But I have reviewed the materials after I left here and what's been filed since and I'm not inclined to reverse it. I'll try to give you a more comprehensive opinion on it at some point. But I think for purposes of planning for the trial, we have to assume that I'm going to stick to the ruling that I gave.

June Tr. at 48:16-23 (Court). After lunch, the Court further illuminated its current position:

> I guess just from a simplistic viewpoint . . . it seems to me that the entire fairness

> [standard] is a conjunctive standard; it requires both procedural fairness and a fair price, and if you don't have one, then you violated the standard. And so it seems to me that once I made a determination that there wasn't procedural fairness and that there wasn't a genuine issue of material fact on that score, that I was right to then also say that there was not a satisfaction of the entire fairness standard and that there had been a breach of fiduciary duty.

June Tr. at 101:24-102:8 (Court). The Court then asked the Defendants to explain what "is wrong with that sort of simplistic analysis there and its consistency with Delaware law." June Tr. at 102:9-10 (Court). The Defendants repeated their position that the entire fairness standard is a unitary analysis. See June Tr. at 102:11-103:10 (DeMuro). The Defendants then presented a three-part proposition for why the Court had erred in granting the Plaintiffs' MSJ with regard to liability. See June Tr. at 103:12-22 (DeMuro). First, the Defendants asserted, the Court's attempt to transport decisional law from the Delaware Court of Chancery into a jury trial context is precise and perilous. See June Tr. at 103:23-104:5 (DeMuro). For example, the Defendants offered:

> [I]t is very perilous . . . to transport those Chancery Court findings into a summary judgment ruling because there is no case in Delaware, for example, that says just the absence of an independent appraisal fairness opinion leads to a breach of fair process, a breach of unfair process, because all of those cases -- statistically speaking, all of those cases happen after a trial.

June Tr. at 104:5-12 (DeMuro). The Defendants acknowledged that one Delaware court in one case granted partial summary judgment and found a breach of fiduciary duty under entire-fairness review without analyzing price fairness. See June Tr. at 104:13-20 (DeMuro). According to the Defendants, this lone exception -- among "hundreds of cases" that the parties collectively have reviewed -- proves the rule that entire fairness is a unitary standard. See June Tr. at 104:19-105:5 (DeMuro). The Defendants then advised the Court that its Order and MO put the Court "a lot out on the limb in that respect." June Tr. at 105:7 (DeMuro). Second, the Defendants insisted, the entire-fairness standard of review is a highly contextual analysis with no

"radiant principles" that hallmark a fiduciary breach or lack of a fiduciary breach. June Tr. at 105:8-18 (DeMuro). Third, the Defendants posited that this case's facts are unique, invoking their lengthy history of the merger transaction. See June Tr. at 106:3-107:13 (DeMuro). Seeming to take the Court to the woodshed on this point, the Defendants continued:

> So you've got that very unique fact pattern that I don't think is, number one, appropriate for summary judgment, and I just don't see in the court's analysis any weight at all -- any analysis at all -- given to those two facts other than just reciting them but the Court grappling in any way with that competitive bidding process and how . . . the jury should be . . . the fact-finder that decides whether the competitive bidding process that resulted in an admittedly premium value . . . [is] a sufficient proxy for the procedural protections . . . that trigger the entire fairness [standard], not the Court with respect. Similarly, with the fully informed, I don't see the Court's analysis of the significance of that fact on summary judgment with all facts decided in our favor.

June Tr. at 107:14-108:5 (DeMuro). The Defendants then explained that entire fairness is a judicial standard of review in the context of a conflicted transaction, with burden-shifting devices within that standard of review. See June Tr. at 108:6-19 (DeMuro). According to the Defendants, the core of the Court's purported error in the Order and MO, therefore, is that, on pages 305 to 307 of the MO, the Court

> essentially equates the absence of those two procedural devices and says, because the defendants didn't have an independent committee, defendants didn't have a majority of the minority vote, and therefore -- that's the court's language -- therefore, the court concludes that the defendants failed to meet their burden to prove they satisfied fiduciary duty.
>
> So what Your Honor has done there, with great respect, is collapsed the analysis. If that were the analysis, there would be no -- it's over, we're done, the case law wouldn't even go any further. It wouldn't be a burden-shifting device, it would be a liability-triggering test and that's decidedly what it is not. We've cited the cases, the Reis case, the Cinerama case. There's case after case which expressly says that the absence of those procedural devices does not trigger liability, it's not a liability test. That's exactly what the court has done and that is a big problem with respect to this order.
>
> Essentially, the court's order as it stands now basically has transformed that burden-shifting test into a liability test and that's not . . . the test . . . .

June Tr. at 108:23-109:18 (DeMuro).  The Defendants explained again that the absence of normal safeguards for minority shareholders, such as an appraisal and a minority shareholder vote, only shifts the burden to prove entire fairness rather than imposing liability.  See June Tr. at 110:1-111:8 (DeMuro).  The Defendants then insisted again that the bidding process is evidence that the Defendants met their burden of proving fair process.  See June Tr. at 111:8-117:1 (DeMuro).  The Defendants began to repeat their earlier assertion that the Court's analysis of the entire-fairness standard diverged from how Delaware Court of Chancery had interpreted the standard when the Court interrupted to ask:

> But is that because of the nature of them [cases in the Delaware Court of Chancery] all being bench trials rather than what we have here . . . [:] the jury determining some issues? . . . I mean, . . . you wouldn't -- you couldn't find a case that's doing what I'm doing in Delaware; right?

June Tr. at 117:14-19 (Court).  The Defendants, seemingly contrary to their previously stated position, noted that one case in the Delaware Court of Chancery does what the Court did in its MO.  See June Tr. at 117:20-22 (DeMuro).  According to the Defendants, the court in Merritt v. Colonial Foods, Inc. granted partial summary judgment.  See June Tr. at 117:20-22 (DeMuro).  Conceding that they were willing to "spot" the Plaintiffs Merritt v. Colonial Foods, Inc., the Defendants agreed with the Court that difficulties accompany importing equitable concepts from the Delaware Court of Chancery into a legal jury trial.  See June Tr. at 118:1-4 (DeMuro).  In a bit of jujitsu, however, the Defendants insisted that this difficulty demands that the Court be exceedingly cautious not to unfairly deprive the Defendants of their summary judgment rights.  See June Tr. at 118:5-8 (DeMuro).

Wending to their overarching argument, the Defendants then again emphasized that the entire-fairness standard is a standard of review, not a liability test, and that analysis of it

"requires a great deal of thought and nuanced thinking." June Tr. at 118:17-18 (DeMuro). The Defendants granted that the two entire-fairness prongs -- fair process and fair price -- are conjunctive: "You've got to have both under the entire fairness standard of review." June Tr. at 118:21-22 (DeMuro). In the next breath, however, the Defendants insisted that "a fair price has to be considered because it's a unitary determination . . . ." June Tr. at 118:22-24 (DeMuro).

The Court interjected at that point, asking what practical difference it would make, from an evidentiary standpoint and with regard to the jury trial, if the Court were to adopt the Defendants' interpretation of Delaware case law on this issue. See June Tr. at 119:2-9 (Court). The Defendants contended that they worried that the Tenth Circuit might overturn the Court. See June Tr. at 119:10-17 (DeMuro). Probing more deeply, the Court inquired whether the Defendants' position abrogates a federal court's authority to grant relief under rule 56 of the Federal Rules of Civil Procedure for issues and individual claims. See June Tr. at 119:18-23 (Court). The Defendants responded that their position could abrogate this power, but that this case's fact pattern is highly unique. See June Tr. at 119:24-120:5 (DeMuro). Returning to its original question, the Court again asked the Defendants what practical difference it would make were the Court to adopt the Defendants' position on this issue, given that it also was inclined to not reveal to the jury that it had concluded that the Defendants had breached their fiduciary duty: "Because if the jury doesn't know, or doesn't have to know, that I have concluded that there's a breach of fiduciary duty, that I've made a legal determination, I guess I'm still not sure what difference that makes to our trial." June Tr. at 120:8-12 (Court). The Defendants saw two ways that the liability determination would create a difference. See June Tr. at 120:13 (DeMuro). First, the Defendants asserted, a liability determination would cause reputational harm to the individual Defendants, "who have dedicated their career to building jobs and building companies

in Tulsa as well as other activities that we've talked about who now stand adjudged of having a breach of fiduciary duty."  June Tr. at 120:14-18 (DeMuro).  Second, the Defendants posited, the practical effect of summary judgment on liability is that it would erroneously cabin the discussion of other evidence that can go before the jury, because "process infects and affects price and price infects and affects process."  June Tr. at 121:5-13 (DeMuro).  The Defendants then concluded their argument on the Motion for Reconsideration.  See June Tr. at 126:14-15 (DeMuro).

The Court offered the Plaintiffs an opportunity to respond.  See June Tr. at 126:18-19 (Court).  The Plaintiffs immediately attacked the Defendants' arguments in their Motion for Reconsideration as replete with "egregious error."  June Tr. at 126:23-127:1 (Kagen).  Invoking Servants of the Paraclete v. Does, the Plaintiffs asserted that the Defendants do not get a mulligan simply because, despite having no new facts, they disagree with the Court's thorough and detailed ruling on the Plaintiffs' MSJ.  See June Tr. at 127:1-13 (Kagen).  Seeking to parry the Defendants' contention that the Court applied the law in a way that the Delaware Courts of Chancery have not, the Plaintiffs referred the Court to Merritt v. Colonial Foods, Inc., which the Plaintiffs maintained other courts had cited in subsequent cases.  See June Tr. at 127:23-128:3 (Kagen).  The Plaintiffs told the Court that the author of Merritt v. Colonial Foods, Inc. is Chancellor William Allen, to whom the Plaintiffs attached a prestigious pedigree: "Professor Allen is not only professor of law and business at the New York University School of Law, he serves of counsel to Wachtell Lipton, and is widely regarded presently as one of the preeminent national authorities on corporate governance."  June Tr. at 128:3-11 (Kagen).  The Plaintiffs drew the Court's attention to the Merritt v. Colonial Foods, Inc. court's order that the "plaintiff's motion for partial summary judgment on the issue of liability will be granted."  June Tr. at

128:12-19 (Kagen)(quoting Merritt v. Colonial Foods, Inc., 505 A.2d at 766). The Plaintiffs contended that they had found the black swan that disproves what they purport to be the Defendants' core argument, i.e., that no Delaware court ever has granted partial summary judgment on process under the entire fairness standard. See June Tr. at 128:18-19 (Kagen). The Plaintiffs then recounted the facts in Merritt v. Colonial Foods, Inc., painting the defendant in that case as having frozen out minority shareholders in a self-dealing transaction. See June Tr. at 128:20-129:22 (Kagen). According to the Plaintiffs, the Delaware Court of Chancery concluded that the defendants had employed unfair process and thereby breached their duty of fair dealing. See June Tr. at 129:23-131:14 (Kagen).

The Court interjected to nudge the Plaintiffs into discussing the Defendants' argument that the bidding process was evidence of fair process. See June Tr. at 131:20-132:1 (Court). As the Plaintiffs saw it, that argument holds water like a colander, insofar as the bidding process "was not the process used to freeze out these shareholders" and therefore is outside the scope of the cash-out the Plaintiffs challenge. June Tr. 132:2-8 (Kagen). In a verbal parenthesis, the Plaintiffs continued, multiple individual defendants, in deposition testimony, disclaimed any fiduciary duty that they had to the minority shareholders whom they forcibly cashed out. See June Tr. at 132:9-133:3 (Kagen). The main takeaway from Merritt v. Colonial Foods, Inc. in the Plaintiffs' estimation, however, was that "one of the top national authorities in corporate law, found and granted partial summary judg[ment] on the basis of process alone. He did not deal with the fairness of the price." June Tr. at 133:4-9 (Kagen). Noting that the Defendants had asserted that the Merritt v. Colonial Foods, Inc. considered price, the Plaintiffs directed the Court to footnote seven in Merritt v. Colonial Foods, Inc., the following portion of which the Plaintiffs displayed via the document camera:

"I note, for the guidance of the parties, that disposition of the pending motions has not required me to make any judgment concerning the fairness of the $3 per share merger price." . . . "It may be that such price fully reflected the fair value of the minority shares" . . . "even when a proportionate share of any value of the derivative claims may have had is considered." . . . "That determination cannot be made on this record."

June Tr. at 134:10-23 (Kagen)(quoting Merritt v. Colonial Foods, Inc., 505 A.2d at 766 n.7).

The Plaintiffs then agreed with the Defendants' conclusion that the case's facts are unique, but argued that the uniqueness arises from the fact that it is

a rare case indeed where defendants act in such a manner to throw out plaintiffs without even the semblance of a process and are freely and happily able on deposition to admit they didn't have a fiduciary duty at all and that it's plaintiffs' minority shareholders' responsibility to get their price. It's . . . remarkable and there are almost no cases on that basis because the law is so clear.

June Tr. at 135:1-9 (Kagen).

The Court asked the Plaintiffs whether anything in the MO would make the Plaintiffs uncomfortable if they were in a position where they needed to defend it in front of the Tenth Circuit. See June Tr. at 135:19-136:1 (Court). The Defendants insisted that they were comfortable with the MO but would phrase two conclusions in it differently. See June Tr. at 136:2-4 (Kagen). First, the Plaintiffs said, they would change the MO's wording when it describes the breach of fiduciary duty: "Your Honor stated that defendants breached the duty of entire fairness. I believe that is the duty of loyalty of which entire fairness is the applicable standard. I would -- if it were [up] to me, I would write that they breached the duty of loyalty."

June Tr. at 136:5-9 (Kagen). When the Court asked for clarification, the Plaintiffs continued:

It is a breach of the fiduciary duty of loyalty. There are two fiduciary duties -- three really -- a fiduciary duty of good faith, a fiduciary duty of care, and a fiduciary duty of loyalty. They have breached the fiduciary duty of loyalty because this transaction was not entirely fair. So I would say within the Opinion they breached the fiduciary duty of loyalty.

June Tr. at 136:12-18 (Kagen). To which assessment the Court followed up with the following

colloquy:

> THE COURT: So they didn't satisfy the standard of entire fairness, but they breached the duty of -- a breach of fiduciary duty --
>
> MR. KAGEN: That is correct.
>
> THE COURT: -- of loyalty?
>
> MR. KAGEN: That is absolutely correct.
>
> THE COURT: So you would term it different than what I termed it?
>
> MR. KAGEN: Yes.  It's a matter of semantics but I would -- I would change it.

June Tr. at 136:19-137:3 (Court, Kagen).  Turning to the second conclusion in the MO that they would phrase differently, the Plaintiffs indicated that they would incorporate a defendant-by-defendant recounting of how none of the defendants offered any process, individually or collectively, that demonstrated that they took care of the minority shareholders.  See June Tr. at 137:4-9 (Kagen).  According to the Plaintiffs, such a recounting defendant-by-defendant might be legally necessary, because each Defendant is individually liable for a breach of fiduciary duty.  See June Tr. at 137:11-16 (Kagen).  The Court questioned whether such a detailed account is legal necessary:

> I guess I would -- and maybe I'm not quite tracking here.  But since I don't find facts, that's not my job on summary judgment -- and I try to not even use that sort of word so that nobody things that I'm finding facts, I simply finding that -- or I even try to avoid that word -- I try to say I conclude that there's no genuine issue of material fact, tell me if that's what I see my task as being on those motion, what you would see me saying.  If the facts are okay, the factual background section is okay, what do you see me saying in the analysis that addresses your concern?

June Tr. at 138:21-139:5 (Court).  The Plaintiffs replied that the undisputed facts before the Court on the Plaintiffs' MSJ indicate that no individual Defendant took any action to ensure procedural fairness during the merger transaction.  See June Tr. at 139:6-11 (Kagen).  Expanding

on this assertion, the Plaintiffs continued: "Defense counsel makes a series of proclamations about what was considered in terms of setting this price. But in terms of the actual defendants found liable herein, none of them considered that and all of them have testified to the contrary." June Tr. at 139:21-24 (Kagen). The Plaintiffs reverted to a discussion about the parallels between Merritt v. Colonial Foods, Inc. and this case, including that there was no special committee or minority vote. See June Tr. at 140:15-141:9 (Kagen). The Court interjected, indicating that it understood the Defendants to be arguing that the bidding process substituted for these typical procedural safeguards. See June Tr. at 141:13-19 (Court). The Plaintiffs disagreed with that position, contending that: (i) no case supports the Defendants' interpretation; and (ii) the Defendants cannot attempt to smuggle actions taken years before the merger into an assessment whether the Defendants employed fair process at the time of the merger. See June Tr. at 142:8-19 (Kagen). Moreover, the Plaintiffs maintained, the undisputed evidence shows that the Defendants did not use the bidding war as a proxy for fair process; even after the bidding war, the Plaintiffs asserted, the Defendants in their individual depositions admitted that fiduciary duties to the minority shareholders had not been maintained as to them. See June Tr. at 142:23-145:8 (Kagen). The Plaintiffs then reiterated that they believed the Defendants to have "misrepresented flat out" Merritt v. Colonial Foods, Inc.'s holding. See June Tr. at 145:9-149:5 (Kagen).

The Court asked the Plaintiffs for their take on a case that the Defendants cited as having distinguished Merritt v. Colonial Foods, Inc. See June Tr. at 149:6-7 (Court). The Plaintiffs asserted that the case cited Merritt v. Colonial Foods, Inc. as valid law. See June Tr. at 149:8-11 (Kagen). The Plaintiffs then directed the Court to another case, William Penn Partnership v. Saliba. See June Tr. at 151:1-5 (Kagen). According to the Plaintiffs, the underlying facts in that

case and this case are very similar, involving a self-dealing transaction and fully informed minority shareholders. See June Tr. at 151:24-152:10 (Kagen). The Plaintiffs asserted that the court in William Penn Partnership v. Saliba determined that the transaction price had been fair but still held the case's defendants liable on the grounds of unfair process. See June Tr. at 152:11-154:25 (Kagen).

Making sure that it understood how the Plaintiffs were characterizing the holding in William Penn Partnership v. Saliba, the Court asked: "Did the . . . court find -- this is the other point that Mr. DeMuro makes, is that he uses this word 'unitary test' and that if in that situation there was a finding of fair price, there would be no breach of fiduciary duty." June Tr. at 155:1-5 (Court). The Plaintiffs asserted that Merritt v. Colonial Foods, Inc., International Telecharge, Inc. v. Bomarko, William Penn Partnership v. Saliba, and Reis v. Hazelett Strip-Casting Corp. all belie any such assertion about a unitary test, and that "[t]here is no way to argue contrarily. Price is not king." June Tr. at 155:6-158:1 (Kagen). Even more decisive, from the Plaintiffs' perspective, is the Supreme Court of Delaware's holding in Rabkin v. Phillip A. Hunt Chem. Corp., which the Plaintiffs argued supports the proposition that the weight a court should allocate to price vis-à-vis process depends on a specific case's facts. See June Tr. at 158:2-6 (Kagen).

The Court followed this exchange by asking the Plaintiffs whether they had any concerns about the content of the Court's MO that they had not yet voiced. See June Tr. at 158:9-14 (Court). The Plaintiffs attested that they had no such concerns. See June Tr. at 158:15 (Kagen). The Plaintiffs catalogued, however, numerous concerns they had about the Defendants' position, all of which they had discussed earlier in the hearing. See June Tr. at 158:18-161:21 (Kagen). The Court then offered the Defendants an opportunity to reply. See June Tr. at 161:23 (Court). The Defendants immediately pounced on the Plaintiffs' argumentative style as "bombastic" and

characterized the Plaintiffs' arguments as nearly as replete with straw men as a Wizard of Oz convention. June Tr. at 162:3-7 (DeMuro). Reiterating their concession from earlier in the hearing that they would "spot" the Plaintiffs <u>Merritt v. Colonial Foods, Inc.</u>, <u>see</u> June Tr. at 162:7 (DeMuro), the Defendants nevertheless contended that case -- the "one case in the history of the Delaware Chancery Court in which there's been a partial summary judgment without an evaluation of fair price" -- is the exception that proves the rule. June Tr. at 162:8-14 (DeMuro). The Defendants contested the Plaintiffs' reading of <u>William Penn Partnership v. Saliba</u>, insisting that case supports their position, "because there was a disclosure issue, because there was an analysis of appraisals, because there was a consideration of fair price before the finding." June Tr. at 162:15-18 (DeMuro). Seeking to distinguish this case's facts from the facts in <u>Merritt v. Colonial Foods, Inc.</u>, the Defendants took umbrage with the Plaintiffs' portrayal of the merger as a squeeze out that animus drove, recounting that the Defendants gave the Plaintiffs an opportunity to join them in the merger and kept the Plaintiffs fully informed. <u>See</u> June Tr. at 162:19-163:18 (DeMuro).

The Defendants then reemphasized that the tender offer is "absolutely critical and . . . ties everything together," insofar as it provides justification for the cash-out price. June Tr. at 163:19-24 (DeMuro). According to the Defendants, they already completed all of the negotiations that they previously described before the tender offer. <u>See</u> June Tr. at 163:25-164:2 (DeMuro). Thereafter, the Defendants continued, the Plaintiffs attempted to thwart the Defendants' efforts to negotiate with the mezzanine lenders. <u>See</u> June Tr. at 164:2-3 (DeMuro). The Defendants asserted that the tender offer had a deadline of one week before the merger was effected and, accordingly, was very proximate to the merger. <u>See</u> June Tr. at 164:4-8 (DeMuro). The Defendants described the tender offer as detailing the control acquisition and the

Defendants' methodology for calculating what they purport to be a fair share price. See June Tr. at 164:9-13 (DeMuro).

Adjusting their argument's trajectory slightly at that point, the Defendants countered the Plaintiffs' assertion that the Defendants did not know what a fiduciary duty is or that they owed a fiduciary duty to the Plaintiffs. See June Tr. at 164:14-16 (DeMuro). The Defendants noted that

> Mr. Boylan was acting as the agent of Mr. Stephenson, of Ms. Field, of Lawrence Field. He was the point person. He knows the ins and outs of fiduciary duty better than anybody in this courtroom and he didn't -- he was making a comment and [Plaintiffs' counsel Kagen] took it out of context.

June Tr. at 164:16-20 (DeMuro). Even were the Plaintiffs' assertion correct, the Defendants maintained, it would be immaterial, because the process that the Defendants provided was abundantly fair, including not only the tender offer but also (i) the Halifax Group offer; (ii) the competitive bidding process; and (iii) other arm's-length purchases. See June Tr. at 164:23-165:4 (DeMuro). According to the Defendants, they never hid the ball from the Plaintiffs. See June Tr. at 165:7-8 (DeMuro).

Turning their sights onto the Court's MO, the Defendants contended that the MO contains no explanation of the pre-merger bidding process' "unique significance." June Tr. at 165:15-18 (DeMuro). The Defendants maintained that they did not understand how, in light of such allegedly fair and superabundant process, the Court had decided that they were not entitled to present their side on the merger process' adequacy. See June Tr. at 166:15-21 (DeMuro). After all, the Defendants averred, the entire-fairness standard has "got to be a unitary determination . . . ." June Tr. at 166"22-23 (DeMuro). The Defendants again suggested that the Court's MO -- like Merritt v. Colonial Foods, Inc. -- is a statistical outlier and that In re Nine Systems requires that the Court additionally complete a director-by-director analysis if it concludes that the Defendants breached their fiduciary duty. See June Tr. at 167:7-11 (DeMuro).

After a short break, the Court asked the Plaintiffs to comment briefly on the Defendants'

argument that entire fairness is a burden-shifting device and not a device imposing liability.  See

June Tr. at 167:24-168:2 (Court).  The Plaintiffs asserted that the Defendants' characterization is

unmerited.  See June Tr. at 168:11-12 (Kagen).  According to the Plaintiffs, they have identified

at least six cases in which a court established that a self-dealing entity that had frozen out

minority shareholders was held to be liable under the entire-fairness standard for a fiduciary duty

breach even though the cash-out price was fair.  See June Tr. at 168:3-12 (Kagen).  The Plaintiffs

contended that one of the cases says that burden-shifting is almost an afterthought, an

irrelevancy, with the real focus instead on whether the individual controlling shareholders took

any procedural steps to ensure that the price was fair to the people whom they forced out.  See

June Tr. at 168:13-20 (Kagen).

The Court rephrased its question, indicating: "I think the point [the Defendants are]

making is that if there's not certain procedural safeguards in place, then that triggers a burden-

shifting.  So it's . . . not correct then for me to say because those same procedures are not present

that liability can be imposed."   June Tr. at 169:1-5 (Court).  The Plaintiffs argued that the

Defendants' position is inaccurate.  See June Tr. at 169:6-8 (Kagen).  The Plaintiffs explained:

> [T]he way it works is, where there is [sic] self-dealing parties on both sides of the
> issue, like here, the burden is on the defendants immediately to show that they
> have taken steps, whatever steps, they can show there's no set delineation of steps
> -- although there are several that have been recognized over the decades -- but the
> burden is on them to show that they took steps to ensure that the price paid, the
> process used to get that cash-out price, was entirely fair to the minority
> shareholders because they were deprived of a choice, it was an involuntary
> squeeze-out.  So the burden was on them to show that they took steps.  They took
> no steps.  The record is clear, no steps.

June Tr. at 169:9-20 (Kagen).  The Plaintiffs then reiterated their argument that there is no

evidence anywhere in the record that the Defendants ever considered or attempted to fulfill their

fiduciary duties towards the minority shareholders whom they cashed out.  See June Tr. at 170:1-11 (Kagen).

The Court then asked the Plaintiffs a second question, noting that the Defendants make "a point of calling the . . . entire fairness doctrine a unitary test that has to be based on both" fair process and fair price, and inquiring about the Plaintiffs' take on the Defendants' use of the words "unitary test."  June Tr. at 170: 13-17 (Court).  The Plaintiffs walked a knife's edge in their response:

> It is true that Delaware courts do say that entire fairness is a unitary test that has two components, . . . fair process and fair price.  However, the courts also say within them -- and I believe we've cited several to you -- that where process is lacking, completely gone, liability follows as a matter of course.  And that's been found in the six cases that we showed to Your Honor . . . .

June Tr. at 170:18-25 (Kagen).  The Court probed, asking the Plaintiffs how they understood the Defendants' intent when they use the adjective "unitary": "Why do they add that word up front if they have the second test?"  June Tr. 171:1-3 (Court).  The Plaintiffs referred the Court to Merritt v. Colonial Foods, Inc. and William Penn Partnership v. Saliba, but seemed not to directly answer the question.  See June Tr. at 170:18-173:6 (Kagen).  After a dispute arose over the Plaintiffs' representation of the Defendants' arguments, see June Tr. at 173:3-7 (Kagen, DeMuro), the Court permitted the Defendants to respond to the same two questions that it had posed to the Plaintiffs, see June Tr. at 173:8-16 (Court).  With regard to the first question, the Defendants expressed surprise that the Plaintiffs suddenly subscribed to the proposition that the lack of certain procedural devices automatically imposes liability on the Defendants under the entire fairness standard.  See June Tr. at 173:17-22 (DeMuro).  According to the Defendants, both black letter law and the Plaintiffs' position on the same question during the December 27, 2016, hearing make clear that there is no absolute requirement for specific devices to prove

procedural fairness.  <u>See</u> June Tr. at 173:22-174:9 (DeMuro).

Turning their attention to the Court's second question, the Defendants referred the Court to <u>In re Nine Systems</u>' first paragraph.  <u>See</u> June Tr. at 174:10-14 (DeMuro).  Appearing on the surface to make a large concession, the Defendants summarized <u>In re Nine Systems</u>: "The entire fairness standard of review has long mandated a dual inquiry into fair price -- fair dealing and fair price that this Court should weigh as appropriate to reach a unitary conclusion on the entire fairness of the transaction at issue."  June Tr. at 174:17-21 (DeMuro).  Compounding the apparent concession, the Defendants seemingly then begged the question, referring to the Court's statement earlier during the hearing that the entire-fairness standard words the requirements for fair process and fair price in the conjunctive,: "The point of your question, well, it's conjunctive, it's price and process, if you don't have one; therefore, the whole test fails.  That's not accurate because it's a unitary standard."  June Tr. at 175:3-6 (DeMuro).  The Defendants further conceded that there have been some cases in the Delaware Court of Chancery in which a court concluded that a merger transaction's procedure was so grossly unfair that, notwithstanding the fair price, liability attached to the defendants for breach of fiduciary duty under the entire fairness standard.  <u>See</u> June Tr. at 175:7-15 (DeMuro).  Nevertheless, the Defendants then insisted: "It is beyond peradventure of the doubt that the absence of those prophylactic devices [an appraisal and a minority shareholder vote] is not a liability-imposing device and it's beyond peradventure that it's a . . . unitary analysis."  June Tr. at 176:9-17 (DeMuro).

The Court thanked the Defendants for presenting their argument and then described its current inclination toward that argument.  <u>See</u> June Tr. at 176:18-177:18 (Court).  The Court explained:

> I've looked at it after our last hearing and certainly thought about it in conjunction with our hearing today.  I'm not inclined to change the bottom line.  I may go in

and, as Mr. Kagen says, clean up some language. I still don't think that when you look at my facts, which were based on the facts that were presented, I don't think either one of you asked for a defendant-by-defendant ruling. I think if you go back and look at my facts and where I got my facts, you'll see that that wasn't really requested.

So I think about all I can do on the facts that are here is simple say that, you know, there's no evidence in the record that the defendants either collectively or individually did anything to provide procedural fairness for the . . . minority shareholders. I think that's about as far as I can go. Whether that's enough to satisfy any requirement of an individual, I think that's about as far as I can go. But I think I probably . . . worked as hard as I can on this and probably the result you have is the best I can do other than maybe some cleaning up.

So I think that for purposes of the trial we're going to have to assume that I'm going to deny the motion. I'll try to take a look at it in the time we have. We have a fair number of things to do to get ready for trial. So the ruling I have made and associated rulings with it are going to be the ones that will stand for trial.

June Tr. at 176:19-177:18 (Court). The Court therewith concluded discussion about the Motion

for Reconsideration. See June Tr. at 177:19-20 (Court).

## LAW REGARDING MOTIONS TO RECONSIDER

Motions to reconsider in civil cases fall into three categories:

(i) a motion to reconsider filed within [twenty-eight][50] days of the entry of judgment is treated as a motion to alter or amend the judgment under rule 59(e); (ii) a motion to reconsider filed more than [twenty-eight] days after judgment is considered a motion for relief from judgment under rule 60(b); and (iii) a motion

---

[50]Former rule 59 provided for a ten-day period after entry of judgment to file motions to reconsider. In 2009, the rule was amended, extending the filing period to twenty-eight days:

Experience has proved that in many cases it is not possible to prepare a satisfactory post-judgment motion in 10 days, even under the former rule that excluded intermediate Saturdays, Sundays, and legal holidays. These time periods are particularly sensitive because Appellate Rule 4 integrates the time to appeal with a timely motion under these rules. Rather than introduce the prospect of uncertainty in appeal time by amending Rule 6(b) to permit additional time, the former 10-day periods are expanded to 28 days.

Federal Rules of Civil Procedure, Rule 59, Legal Information Institute, https://www.law.cornell.edu/rules/frcp/rule_59.

to reconsider any order that is not final is a general motion directed at the Court's inherent power to reopen any interlocutory matter in its discretion.  See Price v. Philpot, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005).

Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. 453, 462 (D.N.M. 2009)(Browning, J.).  See Computerized Thermal Imaging, Inc. v. Bloomberg. L.P., 312 F.3d 1292, 1296 (10th Cir. 2002). While the civil rules are not expressly applicable to criminal cases, the courts have used the principles somewhat interchangeably.  See United States v. Christy, 739 F.3d at 539-40; United States v. Huff, 782 F.3d 1221, 1223-24 (10th Cir. 2015).  The case law for the civil side can inform when a motion to consider is appropriate in a criminal case.  See United States v. Christy, 739 F.3d at 534, 539-40 (10th Cir. 2014); United States v. Huff, 782 F.3d at 1223-24.

**1.     Motions for Reconsideration Under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure.**

Courts may treat motions for reconsideration as a rule 59(e) motion when the movant files within twenty-eight days of a court's entry of judgment.  See Price v. Philpot, 420 F.3d at 1167 n.9.  If the movant files outside that time period, courts should treat the motion as seeking relief from judgment under rule 60(b).  See Price v. Philpot, 420 F.3d at 1167 n.9.  "[A] motion for reconsideration of the district court's judgment, filed within [rule 59's filing deadline], postpones the notice of appeal's effect until the motion is resolved."  Jones v. United States, 355 F. App'x 117, 121 (10th Cir. 2009)(unpublished).  The time limit in rule 59(e) is now twenty-eight days from the entry of a judgment.  See Fed. R. Civ. P. 59(e).

Whether a motion for reconsideration should be considered a motion under rule 59 or rule 60 is not only a question of timing, but also "depends on the reasons expressed by the movant." Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194, 1200 (10th Cir. 2011).  Where the motion "involves 'reconsideration of matters properly encompassed in a decision on the merits,'" a court considers the motion under rule 59(e).  Phelps

v. Hamilton, 122 F.3d 1309, 1323-24 (10th Cir. 1997)(quoting Martinez v. Sullivan, 874 F.2d 751, 753 (10th Cir. 1989)).   In other words, if the reconsideration motion seeks to alter the district court's substantive ruling, then it should be considered a rule 59 motion and be subject to rule 59's constraints.  See Phelps v. Hamilton, 122 F.3d at 1324.  In contrast, under rule 60,

> [o]n motion and just terms, the court may relieve a party or its legal representatives from a final judgment, order, or proceeding for the following reasons:
>
> > (1)     mistake, inadvertence, surprise, or excusable neglect;
> >
> > (2)     newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> >
> > (3)     fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> >
> > (4)     the judgment is void;
> >
> > (5)     the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> >
> > (6)     any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Neither a rule 59 nor a rule 60 motion for reconsideration is an appropriate vehicle

> to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion. . . .  Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.

Servants of the Paraclete v. Does, 204 F.3d at 1012.   "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."  Servants of the Paraclete v. Does, 204 F.3d at 1012.  A district court has considerable

discretion in ruling on a motion to reconsider. See Phelps v. Hamilton, 122 F.3d at 1324.

Rule 60 authorizes a district court to, "[o]n motion and just terms[,] . . . relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons," including "any other reason that justifies relief." Fed. R. Civ. P. 60(b). A court cannot enlarge the time for filing a rule 59(e) motion. See Brock v. Citizens Bank of Clovis, 841 F.2d 344, 347 (10th Cir. 1988)(holding that district courts lack jurisdiction over untimely rule 59(e) motions); Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp., No. 11-0103, 2012 WL 869000, at *2 (D.N.M. Mar. 8, 2012)(Browning, J.)("The Court may not extend the time period for timely filing motions under Rule 59(e) . . . ."). "A motion under rule 59 that is filed more than 28 days after entry of judgment may be treated as a Rule 60(b) motion for relief from judgment." 12 James Wm. Moore, Moore's Federal Practice § 59.11[4][b], at 59-32 (3d ed. 2012)(citations omitted). Nevertheless, a court will not generally treat an untimely rule 59(e) motion as a rule 60(b) motion when the party is seeking "'reconsideration of matters properly encompassed in a decision on the merits' contemplated by Rule 59(e)." Jennings v. Rivers, 394 F.3d 850, 854 (10th Cir. 2005).

Under some circumstances, parties can rely on rule 60(b)(1) for a mistake by their attorney or when their attorney acted without their authority. See Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the party has made an excusable litigation mistake or an attorney has acted without authority . . . ."). Mistake in this context entails either acting without the client's consent or making a litigation mistake, such as failing to file or to comply with deadlines. See Yapp v. Excel Corp., 186 F.3d at 1231. If the alleged incident entails a mistake, then it must be excusable, meaning that the party was not at fault. See Pioneer Inv. Servs. v.

- 104 -

Brunswick Assocs. LP, 507 U.S. 380, 394 (1993); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party."); Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding that attorney carelessness is not a basis for relief under Rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics. See Cashner v. Freedom Stores, Inc., 98 F.3d at 577. This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. at 397 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962))(internal quotation marks omitted).  The Tenth Circuit has held that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct" and has noted that those "who act through agents are customarily bound," even though, when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences."  Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002).

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted).  "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)."  Moore, supra, § 60.48[2], at 60-182.  Accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 n.11 (1988)("This logic, of course, extends beyond clause (1) and

suggests that clause (6) and clauses (1) through (5) are mutually exclusive."). "The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 (quoting Ackermann v. United States, 340 U.S. 193 (1950)).

Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief. See Ackermann v. United States, 340 U.S. at 202 ("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence. Subsection 6 of Rule 60(b) has no application to the situation of petitioner."). Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)]. In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured." Pierce v. Cook & Co., 518 F.2d at 723. However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6). Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

Van Skiver v. United States, 952 F.2d at 1244-45.

### 2. **Motions to Reconsider Interlocutory Orders.**

Considerable confusion exists among the bar regarding the proper standard for a district court to apply when ruling on a motion to reconsider one of its prior "interlocutory" or "interim" orders, i.e., an order that a district court issues while the case is ongoing, as distinguished from a

final judgment. This confusion originates from the fact that neither the Federal Rules of Civil Procedure nor the Federal Rules of Criminal Procedure mention motions to reconsider, let alone set forth a specific procedure for filing them or a standard for analyzing them. A loose conflation in terminology in Servants of the Paraclete v. Does, which refers to rule 59(e) motions in civil cases -- "motion[s] to alter or amend a judgment" -- as "motions to reconsider,"[51] compounded that baseline confusion. Fed. R. Civ. P. 59(e) (emphasis added); Servants of the Paraclete v. Does, 204 F.3d at 1005.

Final judgments are different from interlocutory orders. See Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies.")(emphasis added). In addition to ripening the case for appeal, see 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts . . . ."), the entry of final judgment narrows the district court's formerly plenary

---

[51]The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, who authored Servants of the Paraclete v. Does, refers to rule 59(e) motions as "motions to reconsider" several times throughout the opinion. 204 F.3d at 1005. He uses the term "motion to reconsider" as an umbrella term that can encompass three distinct motions: (i) motions to reconsider an interlocutory order, which no set standard governs, save that the district court must decide them "before the entry of . . . judgment," Fed. R. Civ. P. 54(b); (ii) motions to reconsider a judgment made within 28 days of the entry of judgment, which the Servants of the Paraclete v. Does standard governs; and (iii) motions to reconsider a judgment made more than 28 days after the entry of judgment, which rule 60(b) governs. There is arguably a fourth standard for motions to reconsider filed more than a year after the entry of judgment, as three of the rule 60(b) grounds for relief expire at that point.
   Much confusion could be avoided by using the term "motion to reconsider" exclusively to refer to the first category, "motion to amend or alter the judgment" exclusively to refer to the second category, and "motion for relief from judgment" exclusively to refer to the third category (and arguable fourth category). These are the terms that the Federal Rules of Civil Procedure -- and other Courts of Appeals -- use to describe (ii) and (iii). The Court agrees with Judge Kelly -- and all he likely meant by using motion to reconsider as an umbrella term is -- that, if a party submits a motion captioned as a "motion to reconsider" after an entry of final judgment, the court should evaluate it under rule 59(e) or 60(b), as appropriate, rather than rejecting it as untimely or inappropriate.

jurisdiction over the case in three ways. First, for the first twenty-eight days after the entry of a civil judgment, when the court can entertain motions under rules 50(b), 52(b), 59, and 60, the district court's jurisdiction trumps that of the Court of Appeals. <u>See</u> Fed. R. App. P. 4(a)(4)(B). Even if a party files a notice of appeal, the Court of Appeals will wait until after the district court has ruled on the post-judgment motion to touch the case. <u>See</u> Fed. R. App. P. 4(a)(4)(B). Second, after twenty-eight days, when the court may consider motions under rule 60, if a party has filed a notice of appeal, the Court of Appeals' jurisdiction trumps the district court's, and the district court needs the Court of Appeals' permission even to grant a rule 60 motion. Third, after twenty-eight days, if no party has filed a notice of appeal, district courts may consider motions under rule 60.

Final judgments implicate two important concerns militating against giving district courts free reign to reconsider their judgments. First, when a case is not appealed, there is an interest in finality. The parties and the lawyers expect to go home, quit obsessing about the dispute, and put the case behind them, and the final judgment -- especially once the twenty-eight day window of robust district court review and the thirty-day window of appeal have both closed -- is the disposition upon which they are entitled to rely. Second, when a case is appealed, there is the need for a clean jurisdictional handoff from the district court to the Court of Appeals. "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously," as doing so produces a "danger [that] a district court and a court of appeals w[ill] be simultaneously analyzing the same judgment." <u>Griggs v. Provident Consumer Discount Co.</u>, 459 U.S. 56, 58-59 (1982).

The Court of Appeals needs a fixed record on which to base its decisions -- especially given the collaborative nature of appellate decision-making -- and working with a fixed record

requires getting some elbow room from the district court's continued interference with the case. The "touchstone document" for this jurisdictional handoff is the notice of appeal, not the final judgment, see Griggs v. Provident Consumer Discount Co., 459 U.S. at 58 ("The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." (citations omitted)); Garcia v. Burlington N. R.R. Co., 818 F.2d 713, 721 (10th Cir. 1987)("Filing a timely notice of appeal pursuant to Fed. R. App. P. 3 transfers the matter from the district court to the court of appeals. The district court is thus divested of jurisdiction. Any subsequent action by it is null and void." (citations omitted)); Kirtland v. J. Ray McDermott & Co., 568 F.2d 1166, 1170 (5th Cir. 1978)("[I]t is the filing of the appeal, not the entering of a final judgment, that divests the district court of jurisdiction." (citations omitted)), but, because the final judgment starts the parties' thirty-day clock for filing a timely notice of appeal, the Federal Rules of Civil Procedure and the Tenth Circuit have chosen to curtail the district court's jurisdiction over the case in the roughly month-long period of potentially overlapping trial- and appellate-court jurisdiction that immediately follows the entry of final judgment, see Servants of the Paraclete v. Does, 204 F.3d at 1009 (noting that post-final judgment motions at the district court level are "not intended to be a substitute for direct appeal").

Rather than suddenly divesting the district court of all jurisdiction over the case -- potentially resulting in the district court being unable to rectify easily fixable problems with the final judgment before the case goes to the Tenth Circuit, or even requiring appeal of a case that might otherwise not need to be appealed -- the Federal Rules of Civil Procedure set forth a jurisdiction phased de-escalation process, wherein the district court goes from pre-final judgment plenary jurisdiction, to limited review for the first twenty-eight days post-final judgment, and,

finally, to solely rule 60 review after twenty-eight days.  In defining the "limited review" that

rule 59(e) allows a district court to conduct in the twenty-eight-day flux period, the Tenth

Circuit, in <u>Servants of the Paraclete v. Does</u>, incorporated traditional law-of-the-case grounds --

the same grounds that inform whether a court should depart from an appellate court's prior

decision in the same case -- into rule 59(e).  <u>See</u> <u>United States v. Alvarez</u>, 142 F.3d 1243, 1247

(10th Cir. 1998)(departing from the law-of-the-case doctrine in three exceptionally narrow

circumstances: "(1) when the evidence in a subsequent trial is substantially different; (2) when

controlling authority has subsequently made a contrary decision of the law applicable to such

issues; or (3) when the decision was clearly erroneous and would work a manifest

injustice")(citation omitted); <u>Servants of the Paraclete v. Does</u>, 204 F.3d at 1012 (incorporating

those grounds into rule 59(e)).

Neither of these concerns -- finality nor jurisdictional overlap -- is implicated when a

district court reconsiders one of its own interlocutory orders.  The Federal Rules do not

specifically mention motions to reconsider interlocutory orders, but rule 54(b) of the Federal

Rules of Civil Procedure makes the following open-ended proclamation about their mutability:

> When an action presents more than one claim for relief -- whether as a claim,
> counterclaim, crossclaim, or third-party claim -- or when multiple parties are
> involved, the court may direct entry of a final judgment as to one or more, but
> fewer than all, claims or parties only if the court expressly determines that there is
> no just reason for delay.  Otherwise, <u>any order or other decision</u>, however
> designated, <u>that adjudicates fewer than all the claims</u> or the rights and liabilities of
> fewer than all the parties does not end the action as to any of the claims or parties
> and <u>may be revised at any time before the entry of a judgment</u> adjudicating all the
> claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b)(emphases added).  Rule 54(b) thus (i) provides that a district court can

freely reconsider its prior rulings; and (ii) puts no limit or governing standard on the district

court's ability to do so, other than that it must do so "before the entry of judgment."  Fed. R. Civ.

P. 54(b).

The Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides: "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., 495 F.3d at 1225. In the Tenth Circuit, "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another." Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1252 (10th Cir. 2011)(emphasis added)(citing Been v. O.K. Indus., Inc., 495 F.3d at 1225). In this context, "the doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" Been v. O.K. Indus., Inc., 495 F.3d at 1225 (quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)). In short, a district court can use whatever standard it wants to review a motion to reconsider an interlocutory order. It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether.

The best approach, in the Court's eyes, is to analyze motions to reconsider differently depending on three factors. Cf. Been v. O.K. Indus., Inc., 495 F.3d at 1225 ("[T]he doctrine is merely a 'presumption, one whose strength varies with the circumstances.'")(citation omitted). First, the Court should restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges. How "thoroughly" a point was addressed depends both on the amount of time and energy the Court spent on it, and on the amount of time and energy the parties spent on it -- in briefing and orally arguing the issue, but especially if they developed evidence on the issue. A movant for reconsideration thus faces a steeper uphill challenge when the prior ruling

was on a criminal suppression motion, class certification motion, or preliminary injunction,[52] than when the prior ruling is, e.g., a short discovery ruling. The Court should also look, not to the overall thoroughness of the prior ruling, but to the thoroughness with which the Court addressed the exact point or points that the motion to reconsider challenges. A movant for reconsideration thus faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.

Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence that the parties may produce, and use those factors to assess the degree of reasonable reliance the opposing party has placed in the Court's prior ruling. See 18B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman & Catherine T. Struve, Federal Practice & Procedure § 4478.1 (2d ed.)("Stability

_____

[52]The Court typically makes findings of fact and conclusions of law in ruling on these motions. At first glance, it appears that the Federal Rules of Civil Procedure set forth additional standards -- beyond that which applies to other interlocutory orders -- for amending findings of fact and conclusions of law: **Amended or Additional Findings.** On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings -- or make additional findings -- and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." Fed. R. Civ. P. 52(b). This rule appears to limit motions to reconsider orders with findings of fact and conclusions of law to 28 days. The rule's use of the term "entry of judgment," its reference to rule 59, and its adoption of the same time period that applies to motions to alter or amend a judgment, all lead the Court to conclude, however, that rule 52(b) -- and its 28-day time limit -- does not apply to interlocutory orders. The time limit applies only to findings of fact and conclusions of law supporting a case-ending judgment -- such as those entered after a bench trial -- and to those giving rise to an interlocutory appeal that, if filed, divests the district court of its jurisdiction -- such as those entered in support of a preliminary injunction.

becomes increasingly important as the proceeding nears final disposition . . . . Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling."). For example, if a defendant (i) spends tens of thousands of dollars removing legacy computer hardware from long-term storage; then (ii) obtains a protective order in which the Court decides that the defendant need not produce the hardware in discovery; then (iii) returns the hardware to long-term storage, sustaining thousands more in expenses; and (iv) several months pass, then the plaintiffs should face a higher burden in moving the Court to reconsider its prior ruling that they faced in fighting the Motion for Protective order the first time.

Third, the Court should consider the <u>Servants of the Paraclete v. Does</u> grounds. The Court should be more inclined to grant motions for reconsideration if the movant presents (i) new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework; (ii) new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around; or (iii) a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the Court erred.

These three factors should influence the degree to which the Court restricts its review of a prior ruling, but they do not necessarily mean that the Court should always apply a deferential standard of review. The Court should pause before applying a standard of review to its own interlocutory orders that is more deferential than the standard that the Court of Appeals will apply to it, unless the Court concludes that the alleged error in the prior ruling was harmless, or the party moving for reconsideration waived its right to appeal the alleged error by not raising the appropriate argument. Even in circumstances where the Court concludes that it is insulated from reversal on appeal, there are principled reasons for applying a de novo standard. After all,

if the Court was wrong in its earlier decision, then, generally speaking, it is unjust to maintain that result -- although the Court should weigh this injustice against any injustice that would result from upending the parties' reliance on the earlier ruling, which is the balancing test that the three factors above represent.

What the Court means by "restricting its review" is less about applying a deferential standard of review -- although that may be appropriate in some circumstances -- and more about reducing (i) the depth of the Court's analysis the second time around -- thus conserving judicial resources; and (ii) the impositions that relitigation of the prior ruling will impose on the party opposing the motion for reconsideration. The Court should consider the time and expense that the party opposing reconsideration spent in winning the earlier ruling, and should try to prevent that party from having to bear the same impositions again. Even if the Court ultimately analyzes a motion to reconsider under the same standard that it analyzed the motion that produces the earlier ruling, it should analyze the motion in a different way -- one focused on reducing the litigation burdens of the party opposing reconsideration. For example, when a party moves the Court for a preliminary injunction, standard practice is that the Court holds an evidentiary hearing as a matter of course, regardless whether it looks as if the party has a good chance of prevailing. If the party loses and the Court denies the injunction, however, and the party moves for reconsideration, the party should not be entitled to the presumption of an evidentiary hearing merely because he or she received that presumption the first time the Court considered the motion.

In light of these statements, it is perhaps better to characterize the increased burden that a movant for reconsideration faces as one of production and not of persuasion. The Court analyzes motions to reconsider by picking up where it left off in the prior ruling -- not by starting anew.

Parties opposing reconsideration can do the same, and they may stand on whatever evidence and argument they used to win the earlier ruling. Movants for reconsideration, on the other hand, carry the full burden of production: they must persuade the Court, using only the evidence and argument they put before it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research; and they must convincingly refute both the counterarguments and evidence that the opposing party used to win the prior ruling, and any new arguments and evidence that the opposing party produces while opposing the motion to reconsider. Unlike the motion that produced the prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally. The deck is stacked against a movant for reconsideration, and if such a movant hopes to prevail, he or she must have not only a winning legal position, but the work ethic and tenacity to single-handedly lead the Court to his or her way of thinking.

Finally, the Tenth Circuit has applied the law regarding motions to reconsider in civil cases to the criminal context. See United States v. Christy, 739 F.3d at 539-40; United States v. Huff, 782 F.3d at 1223-24. The Tenth Circuit relies on civil cases for the principles that govern motions to reconsider in the criminal context. See United States v. Christy, 739 F.3d at 539 (applying the standard set forth in Servants of the Paraclete v. Does in the criminal context); United States v. Huff, 782 F.3d at 1224 (same). In United States v. Christy, the Tenth Circuit explained:

> Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them. A district court should have the opportunity to correct alleged errors in its dispositions.
>
> A motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law. Specific grounds include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest

injustice." A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier.

739 F.3d at 539 (internal citations omitted). The Tenth Circuit similarly applied the <u>Servants of the Paraclete v. Does</u> standard in determining whether the district court had properly granted a motion to reconsider its decision to suppress in the criminal context in <u>United States v. Huff</u>, explaining:

> We have held that a motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Specific situations where circumstances may warrant reconsideration include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994). We have specifically held that "[a] motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *United States v. Christy*, 739 F.3d at 539 (10th Cir. 2014).

<u>United States v. Huff,</u> 782 F.3d at 1224. The Court will thus use the same test that it has developed for motions to reconsider in the civil context for motions to reconsider in criminal cases. <u>See</u> <u>Anderson Living Trust v. WPX Energy Prod., LLC</u>, 312 F.R.D. 620, 642-49 (D.N.M. 2015)(Browning, J.).

## ANALYSIS

The Defendants move the Court to reconsider its interlocutory order granting the Plaintiffs' request for partial summary judgment on the issue of liability on the grounds that the Court allegedly erred when it applied the entire-fairness standard. Rule 54(b) of the Federal Rules of Civil Procedure and Tenth Circuit precedent put no limit or governing standard on the district court's ability to reconsider the challenged Order and MO "before the entry of judgment." Fed. R. Civ. P. 54(b). <u>See</u> <u>Been v. O.K. Indus.</u>, 495 F.3d at 1225 ("[D]istrict courts

generally remain free to reconsider their earlier interlocutory orders."). Nevertheless, the Court recognizes the risk of undue deference that inheres in an exercise in which a court applies a standard of review to its own order. Accordingly, the Court analyzes motions to reconsider its interlocutory orders based on three factors: (i) how thoroughly -- in terms of both time and energy expended -- its earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges; (ii) whether the motion for reconsideration is timely relative to the ruling it challenges; and (iii) whether the movant for reconsideration presents new controlling authority, new evidence, or a clear indication that the Court erred. In cases of harmless error, the Court also considers issues of judicial economy and the litigation burdens the parties would bear if required to relitigate the challenged issue.

Applying these factors, the Court concludes that the Defendants present no new controlling authority or new evidence that clearly indicates that the Court reached an erroneous conclusion in its thorough analysis of the entire-fairness standard in the MO. The Defendants correctly note that the Court employed obscurant language when discussing (i) the requirements under Delaware law for proving fair dealing; and (ii) the nexus between the entire-fairness standard and the fiduciary duty of loyalty. A de novo review of the entire-fairness standard shows that this language is harmless. Accordingly, with an eye to judicial economy and the parties' litigation burdens as the case quickly approaches trial, the Court clarifies the MO's language but denies the Defendants' Motion for Reconsideration.

## I. THE COURT THOROUGHLY ANALYZED THE ENTIRE-FAIRNESS STANDARD IN THE MO.

The Defendants insist that that Court does not adequately assess the question whether the price at which they cashed out the Plaintiffs' shares is fair. See Motion for Reconsideration at 1. The Defendants also maintain that the Court misreads Delaware law pertaining to the entire-

fairness standard.  <u>See</u> Motion for Reconsideration at 1.  The Defendants do not contend, however, that the Court cursorily considered the parties' arguments about what the entire-fairness standard entails.  <u>See</u> Motion for Reconsideration 2-23.  For their part, the Plaintiffs assert that the Court heard the parties discuss the entire-fairness standard at length during its motion hearing:

> The Opinion (i) makes extensive factual findings supported by record evidence (pp. 6-34), (ii) describes the arguments made by the parties in their respective briefs (pp. 35-49 & 64-74), (iii) recounts the arguments made by counsel at oral argument, (pp. 81-167), (iv) discusses case law governing the entire fairness standard and minority shareholder rights in the context of a cash-out merger (pp. 2176 [sic]-286 & 303-309), and (v) explains its determination of liability in an orderly and logical process (pp. 303-309).

Response to Motion for Reconsideration at 3.  The Court is more hesitant than the Plaintiffs are in using mere length of treatment as a proxy for depth of treatment; prolixity need not correlate with profundity.  Nevertheless, the Court concludes that its examination of the entire-fairness standard, the parties' arguments relating to the standard, and the undisputed facts are thorough.  With the parties' consent, the Court amasses all undisputed facts from the parties' three motions for summary judgment.  The Court then examines the parties' arguments regarding the entire-fairness doctrine -- as they present them in their briefs and during a motion hearing -- at considerable length.  In its law regarding section, the Court examines twenty-eight Delaware court cases over a three-decade period to identify the standard's requirements in the context of an involuntary cash-out merger.  <u>See</u> MO at 276-86, 2017 WL 1487439, at *123-24.  The Court then extensively analyzed how to determine liability under the entire-fairness standard.  <u>See</u> MO at 303-309, 2017 WL 1487439, at *124-26.

After reviewing the same subset of twenty-eight cases anew alongside additional cases out of the Delaware Court of Chancery and Supreme Court of Delaware in preparation of this

MO, the Court has not identified nearly as thorough a treatment of the entire-fairness standard. Indeed, in some cases the examination appears cursory in comparison. The Court, therefore, is reassured that it expended substantially greater than average time and energy assessing the entire-fairness standard's requirements. Also, significantly, the Defendants do not argue that the Court overlooks a genuine issue of material fact. Thus, the Court's careful work on the facts appears to survive intact. With motions for summary judgment, that is the district court's most important task, i.e., determining whether there are genuine issues of material fact. A district court can always get the law wrong; conclusions of the law are what Courts of Appeals are for. A district court has done its task well when it plows through the sod, as it has done here, and determines the undisputed facts.

## II.     THE MOTION FOR RECONSIDERATION IS TIMELY RELATIVE TO THE RULING IT CHALLENGES.

The Court filed the MO which the Defendants ask it to reconsider on April 25, 2017. See MO at 1, 2017 WL 1487439, at *1. Not even two days later, the Defendants advised the Court and the Plaintiffs during a motion hearing that they might move the Court to reconsider its decision to grant the Plaintiffs partial summary judgement on the issue of liability. See April Tr. at 466:4-11 (DeMuro). After assuring the Court that it meant no disrespect with its proposed Motion for Reconsideration, the Defendants insisted that the absence of procedural safeguards that lead to proof of entire fairness does not translate into a finding of liability. See April Tr. at 261:24-262:2-14 (DeMuro). The Court told the Defendants that it was not sure that it agreed with that proposition, explaining:

> I guess at the burden-shifting stage, which we, I think, all agreed that you bore that burden, that was when you, I think, needed to come forward with evidence of the procedural fairness. And I guess that probably is where we are disagreeing, is that I didn't think that you showed that.

April Tr. at 262:15-22 (Court).  The Defendants suggested that they and the Court may just be describing the same principle in two different ways.  See April Tr. at 262:23-25 (DeMuro).  The Defendants presented the two positions as faces of the same coin:

> If we are saying that even when the entire fairness burden-shifting review is applied, the defendant still gets to come forward and attempt to prove the fairness the entire fairness of the transaction.  And I understand Your Honor to say, well, we haven't done that.
>
> But where that means we are, Your Honor, would be that -- that would mean that Your Honor has made a ruling that all inferences in our favor -- all inferences to be construed in our favor, number one, what is the process that we're talking about and what are the factors to be determined?
>
> Well, we know that the process that we're talking about is the process that led up to the merger which both parties agree started -- and by the plaintiffs' own admission in their pleadings and their expert -- started before the bidding process and that we have to evaluate that process to determine whether it was entirely fair and we don't have to show -- the absence of those procedural devices doesn't mean that it wasn't fair.  We get to show substitutes.  We get to say we didn't to [sic] that but we did this.  And we have the right to show -- substitutes to show what, fairness.

April Tr. at 263:2-21 (DeMuro).  The Defendants then continued their argument's main line, saying that fairness is a quintessential fact issue.  See April Tr. at 263:22-23 (DeMuro).  The Defendants confessed that they could not see how the Court -- making all inferences in the Defendants' favor -- can make a finding as a matter of law as to fairness.  See April Tr. at 263:23-264:20 (DeMuro).  According to the Defendants, they are entitled to prove substitutes, such as the Duff & Phelps auction process that led up to the June, 2000, bid, the arm's length transactions, and the fully informed plaintiff group.  See April Tr. at 20-24 (DeMuro).

The Defendants then returned to their argument that entire fairness analysis is not bifurcated.  See April Tr. at 265:9-266:9 (DeMuro).  The Defendants contended that they have a right to make an argument before the jury that the merger process was fair.  See April Tr. at 266:9-20 (DeMuro).  The Defendants conceded that they are foreclosed from using the business-

judgment rule and a number of other defenses when the entire-fairness standard of review applies.  See April Tr. at 266:21-23 (DeMuro).  The Defendants insisted, however, that they are not foreclosed from telling their side of the story.  See April Tr. at 266:23-267:1 (DeMuro).  The Defendants assert that this intention is especially true, because (i) the Plaintiffs purportedly "locked themselves together arm in arm to a contractual price that was higher than [the Defendants] had already given a tender notice for," thereby making any minority vote inherently futile; and (ii) a premium bidding process and fully informed minority shareholders made an appraisal unnecessary   April Tr. at 267:19-268:6 (DeMuro).

The Plaintiffs immediately grasped that the Defendants likely would file a motion for reconsideration at the same hearing.  They expressed dismay, however, that the "entire tenor and thrust of this argument . . . is fundamentally unfair to [the] plaintiffs," because the Plaintiffs' MSJ had been fully briefed by October, 2015, and the Court had issued the Order coming to the same conclusion on March 31, 2017.  April Tr. at 269:12-270:19 (Kagen).  Remonstrating that the Defendants' possible future pursuit of reconsideration had blindsided them, the Plaintiffs nevertheless signaled that they fully understood the prospective motion's import and content by reciting to the Court the three bars that a motion for reconsideration must overleap under Servants of the Paraclete v. Does for a court to reconsider an earlier order.  See April Tr. at 271:4- 273:21 (Kagen).  The Plaintiffs also sought to persuade the Court that, with the case rapidly barreling toward trial and the motion having been fully briefings in 2015, the case's posture leaves no question that the Defendants are not entitled to a mulligan at this late stage. See April Tr. at 273:21-274:4 (Kagen).   The Defendants then filed their Motion for Reconsideration on May 9, 2017 -- just twelve days after the April, 2017, hearing.  See Motion for Reconsideration at 1.

Rule 59(e) of the Federal Rules of Civil Procedure sets the most stringent strictures for timeliness that the Court soundly can apply to a party's request for reconsideration of an interlocutory order. Under rule 59(e), a federal district court may consider motions to reconsider a final order within twenty-eight days of the court's entry of judgment. See Fed. R. Civ. P. 59(e). See Jones v. United States, 355 F. App'x 117, 121 (10th Cir. 2009)(unpublished). Because final judgments narrow the district court's formerly plenary jurisdiction over a case in various ways and implicate finality concerns that interlocutory orders do not implicate, parties reasonably have at least -- and likely more than -- twenty-eight days after a district court files an interlocutory order to move for that court to reconsider the order and for that motion to be deemed timely. Rule 54(b)'s plain language buttresses this intuition and reasoning, proclaiming:

> When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b)(emphasis added). Rule 54(b) thus (i) provides that a district court can freely reconsider its prior rulings; and (ii) puts no limit or governing standard on the district court's ability to do so, other than that it must do so "before the entry of judgment." Fed. R. Civ. P. 54(b). The Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides: "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., 495 F.3d at 1225. In short, a district court can use whatever standard or timeline it wants to review a motion to reconsider an interlocutory order.

The Court sees no sound reason to conclude that the Defendants' Motion for

Reconsideration is untimely.  On the very day after the Court granted the Plaintiffs partial summary judgment on the issue of liability, the Defendants advised the Plaintiffs and the Court that they might file a motion for reconsideration.  See April Tr. at 266-68.  The Defendants then filed the Motion for Reconsideration just fourteen days after the Court filed its MO -- half the lesser length of time that a defendant is allowed before filing a motion to reconsider a final judgment.  Although the Plaintiffs protest that the motion caught them flatfooted, they were able to respond cogently to the prospective motion for reconsideration once the topic arose during the April, 2017, hearing, and then were able to file their Response to Motion for Reconsideration within three weeks after the Defendants filed the Motion for Reconsideration -- and three months before the scheduled trial.  Consequently, the Court concludes that the Defendants' Motion for Reconsideration satisfies the requirement that it be timely with respect to the ruling that it challenges.

### III.    THE DEFENDANTS PRESENT NO NEW EVIDENCE TO SHOW THAT THE COURT COMMITTED HARMFUL ERROR, BUT ONLY ARGUMENT THAT IT DEPLOYED AMBIGUOUS LANGUAGE IN THE MO.

In the hearing that commenced the day after the Court issued the MO that contains rulings that the Defendants challenge in their Motion for Reconsideration, the Defendants expressed concern that the Court's ruling that the Defendants had not met their burden of proving fair dealing in their cash out of the minority shareholders is unmoored from Delaware case law.  See, e.g., April Tr. 366:6-23 (DeMuro).  The Defendants more thoroughly expressed their concern in their subsequent Motion for Reconsideration and during the June hearing.  See, e.g., Motion for Reconsideration at 8; June Tr. at 108:6-109:19 (DeMuro).  According to the Defendants, the Court committed three errors of law in its Order and MO.  See Motion for Reconsideration at 1.  First, the Defendants assert, the Order and MO "implicitly and erroneously

assume the entire fairness doctrine is a liability-imposing device rather than a burden of proof shifting standard of review." Motion for Reconsideration at 1. Second, the Defendants maintain, the Order and MO

> implicitly reject the settled law that the entire fairness doctrine is a <u>unitary test</u> based upon an analysis of both the fairness of the process <u>and</u> the fairness of the price, with: (i) fairness of price being the predominant consideration; and (ii) a finding of a "grossly unfair" process being a condition precedent to breach of fiduciary duty where the price is fair.

Motion for Reconsideration at 1 (emphases in original). Third, the Defendants contend, the Order and MO fail, on a motion for summary judgment, to: (i) "resolve all reasonable inferences and doubts in Defendants' favor; and (ii) construe all evidence in the light most favorable to Defendants." Motion for Reconsideration at 1. The Defendants further maintain that they do not accept the Court's conclusion that the Defendants have breached a fiduciary duty, because they did not (i) "buy" an independent appraisal; (ii) establish a fully functioning independent committee; or (iii) obtain a majority of a minority vote. <u>See</u> Motion for Reconsideration at 2.

The Defendants seek to compel the Court to reach the same conclusion by using the Motion for Reconsideration to present a set of facts. <u>See</u> Motion for Reconsideration at 2-4. Despite the absence of an independent committee or a minority vote to represent the interests of TIR, Inc. shareholders in connection with the merger, the Defendants maintain that the fact that a majority of the minority shareholders voluntarily sold their shares is a safeguard that satisfies their burden to show fair dealing. <u>See</u> Motion for Reconsideration at 2-3. They emphasize that the Plaintiffs were fully-informed of all material facts relating to the proposed merger and that the Plaintiffs also had rejected an opportunity to participate in the merger. <u>See</u> Motion for Reconsideration at 3. The Defendants rain down a monsoon of additional facts related to events preceding the merger, including that: (i) the disputed fact that Plaintiffs agreed to a winner-take-

all auction and then reneged on the agreement; (ii) the Plaintiffs attempted and failed to take control of TIR, Inc.; (iii) the Plaintiffs attempted to extract a premium for their TIR, Inc. shares on the mistaken belief that they could hold up the merger; and (iv) the Plaintiffs received a premium tender price offer for their shares but rejected the offer. <u>See</u> Motion for Reconsideration at 3.

Seeming to argue a backup alternative theory, the Defendants then assert that, even if Court were not satisfied that the Defendants had dealt fairly with the Plaintiffs, the allegedly unitary nature of the entire-fairness standard prevents the Court from holding that the Defendants failed to meet their burden of entire fairness without first examining the issue of price. <u>See</u> Motion for Reconsideration at 3-4; <u>id.</u> at 8. The Defendants admit that the Delaware Courts of Chancery have, on occasion, held that entire fairness was not met even when minority shareholders were offered a fair price for their shares. <u>See</u> Motion for Reconsideration at 4. Nevertheless, the Defendants insist, these determinations only happened after trial, <u>i.e.</u>, no court has decided the issue at the summary-judgment stage. <u>See</u> Motion for Reconsideration at 4-5.

The Defendants then argue that the MO proves that the Court misunderstands the entire-fairness standard. <u>See</u> Motion for Reconsideration at 6-8. Circling to their first argument, the Defendants reassert that entire fairness defines only the Defendants' burden of proof and not the legal duty that the Defendants owed to the Plaintiffs. <u>See</u> Motion for Reconsideration at 6. According to the Defendants, the entire-fairness doctrine holds a director and controlling shareholder ordinarily entitled to the business judgment rule's protection to a higher standard of proof when he or she stands on both sides of a transaction. <u>See</u> Motion for Reconsideration at 6. The Defendants insist, however, that the higher standard of proof does not make the director or controlling shareholder liable. <u>See</u> Motion for Reconsideration at 6 (citing <u>Kahn v. Lynch</u>

Communications Systems, Inc., 638 A.2d at 1115-17).  The Defendants therefore maintain that the Court erred when it concluded in its Order and MO that the Defendants breached a fiduciary duty by failing the entire-fairness standard.  See Motion for Reconsideration at 8.

Hedging their bets, the Defendants also remind the Court in the Motion for Reconsideration that the Court, when deciding a summary judgment motion, must: (i) resolve all reasonable inferences and doubts in the favor of the nonmovant party; (ii) construe all evidence in the light most favorable to the nonmovant party; and (iii) refrain from deciding credibility issues.  See Motion for Reconsideration at 15.  Reciting their version of the merger story, the Defendants assert that overwhelming evidence exists that TIR, Inc. had engaged in a "more than fair process" to determine the company's value before the cash out.  Motion for Reconsideration at 16 (emphasis omitted).  The Defendants maintain that these facts establish -- at least to the standard that summary judgment requires -- that the Defendants employed a more than adequate procedural substitute for an independent committee or minority vote at the time of the merger.  See Motion for Reconsideration at 21.  The Defendants reason that, construing all facts in the light most favorable to the Defendants and resolving all inferences in the Defendants' favor, the Court cannot conclude as a matter of law that the process leading up to the merger was unfair to the Plaintiffs.  See Motion for Reconsideration at 22.

At the June hearing, the Court shared that it had reviewed its entire-fairness ruling since the April hearing and remained convinced that the entire-fairness standard is a

> conjunctive standard; it requires both procedural fairness and a fair price, and if you don't have one, then you violated the standard.  And so it seems to me that once I made a determination that there wasn't procedural fairness and that there wasn't a genuine issue of material fact on that score, that I was right to then also say that there was not a satisfaction of the entire fairness standard and that there had been a breach of fiduciary duty.

June Tr. at 101:24-102:8 (Court).  The Defendants were, nevertheless, unwilling to retreat on this

point, proposing that the Court had erred in granting the Plaintiffs' MSJ with regard to liability. See June Tr. at 103:12-22 (DeMuro). Even though the Defendants acknowledged that one Delaware case granted partial summary judgment and found a breach of fiduciary duty under entire-fairness review without analyzing price fairness, see June Tr. at 104:13-20 (DeMuro), they insisted that the entire-fairness standard of review is a highly contextual analysis with no "radiant principles" that hallmark a fiduciary breach or lack of a fiduciary breach, June Tr. at 105:8-18 (DeMuro). The Defendants decried what they saw as the Court's complete lack of any consideration of the bidding process that preceded the merger in the Court's entire-fairness analysis in its MO:

> I just don't see in the court's analysis any weight at all -- any analysis at all -- given to those two facts other than just reciting them but the Court grappling in any way with that competitive bidding process and how . . . the jury should be . . . the fact-finder that decides whether the competitive bidding process that resulted in an admittedly premium value . . . [is] a sufficient proxy for the procedural protections . . . that trigger the entire fairness [standard] . . . .

June Tr. at 107:14-108:5 (DeMuro). According to the Defendants, the Court also mangled the entire-fairness standard on pages 305 to 307 of the Opinion, where the Defendants maintain that the Court

> essentially equates the absence of those two procedural devices and says, because the defendants didn't have an independent committee, defendants didn't have a majority of the minority vote, and therefore -- that's the court's language -- therefore, the court concludes that the defendants failed to meet their burden to prove they satisfied fiduciary duty. . . . Essentially, the court's order as it stands now basically has transformed that burden-shifting test into a liability test . . . .

June Tr. at 108:23-109:18 (DeMuro).

Wending back to their overarching argument, the Defendants then again emphasized that the entire fairness standard is a standard of review, not a liability test, and that analysis of it "requires a great deal of thought and nuanced thinking." June Tr. at 118:17-18 (DeMuro). The

- 127 -

Defendants granted that the two entire fairness prongs -- fair process and fair price -- are conjunctive: "You've got to have both under the entire fairness standard of review." June Tr. at 118:21-22 (DeMuro). In the next breath, however, the Defendants insisted that "a fair price has to be considered because it's a unitary determination . . . ." June Tr. at 118:22-24 (DeMuro).

The Court at one point in the hearing asked the Defendants what practical difference it would make were the Court to adopt the Defendants' position on this issue. See June Tr. at 120:8-12 (Court). The Defendants posited two ways that the liability determination would create a difference: (i) causing reputational harm to the individual Defendants; and (ii) erroneously cabining the discussion of other evidence that can go before the jury, because "process infects and affects price and price infects and affects process." June Tr. at 120:12-121:13 (DeMuro). Later, after the Court had provided the Plaintiffs with an opportunity to argue against the Motion for Reconsideration, the Court afforded the Defendants another chance to argue in favor of it. See June Tr. 162:1 (Court). The Defendants conceded that the Plaintiffs correctly identified Merritt v. Colonial Foods, Inc. as a Delaware case that contradicted the Defendants' position in the Motion for Reconsideration, see June Tr. at 162:7-14 (DeMuro), but otherwise largely again recited the long history of events preceding the cash-out, see June Tr. at 163:19-164:13 (DeMuro). The Defendants also reiterated their opinion that this case's facts are unique and that entire fairness is a unitary determination. See June Tr. at 165:15-167:11 (DeMuro).

The Court does not identify any material in either the Motion for Reconsideration or in the hearing transcript that presents new controlling authority, new evidence, or a clear indication that the Court erred. Reference to internal citations and footnotes in the MO demonstrate that the Court examined the controlling cases to which the Defendants advert. In the Defendants' recitation of the merger process' history -- even in the lengthier version which the Court

repeatedly has determined is not part of the merger transaction -- the Defendants have not presented any new facts of which the Court was not advised before it issued the MO. The Defendants also do not demonstrate convincingly that the Court erred in its application of the entire-fairness doctrine.

## IV. EVEN A DE NOVO REVIEW OF THE ENTIRE-FAIRNESS DOCTRINE DOES NOT UNCOVER EVIDENCE THAT THE COURT COMMITTED ERROR IN ITS RULING THAT THE DEFENDANTS ARE LIABLE FOR A BREACH OF FIDUCIARY DUTY.

The Court need not pursue a deeper analysis of the Motion for Reconsideration than the analysis it conducts above. Nevertheless, the Tenth Circuit has not cabined district courts' discretion to reconsider their interlocutory orders beyond what rule 54(b) of the Federal Rules of Civil Procedure and Servants of the Paraclete v. Does provide. See Been v. O.K. Indus., 495 F.3d at 1225 ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."). In other words, the Court is free to review its earlier liability ruling de novo if it so chooses. See Been v. O.K. Indus., 495 F.3d at 1225. On account of this ruling's centrality to the case and the case's upcoming trial, along with the Defendants' adamantine position that the Court erred in its entire-fairness analysis, the Court chooses to exercise its discretion to review its entire-fairness ruling de novo. The Court's reexamination of the entire fairness doctrine reaffirms its conviction that its ruling was correct even if its language left undesirable ambiguities. The Court therefore declines the Defendants' request that it reverse its previous ruling and allow the jury to decide the issue of the Defendants' liability for breach of fiduciary duty.

Directors of a Delaware corporation owe fiduciary duties of care and loyalty to all the corporation's shareholders, including its minority shareholders. See Mills Acq. Co. v. Macmillan, Inc., 559 A.2d 1261, 1280 (Del. 1989). The duty of loyalty, in a nutshell, mandates

that the corporation's interest and shareholders' interests take precedence over any interest that the directors possess independent of the shareholders. See Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993). Delaware offers directors no safe harbor for divided loyalties if they fail to discharge this duty. See Weinberger v. UOP., Inc., 457 A.2d at 710. See also McMullin v. Beran, 765 A.2d 910, 923 (Del. 2000).

Both parties agree that the Court should begin its analysis of the entire fairness standard with the Supreme Court of Delaware's decisions in Weinberger v. UOP, Inc. and Bershad, which combined to set the template for how courts are to adjudicate cash-out mergers. See, e.g., December Tr. at 313:4-9 (DeMuro); June Tr. at 130:12-14 (Kagen). In 1983, the Supreme Court of Delaware planted itself firmly as a guardian of minority shareholder's rights during corporate mergers in Weinberger v. UOP, Inc. Delaware historically usually had applied the business-judgment rule to corporate actions. In Weinberger v. UOP, Inc., however, the Supreme Court of Delaware found a case where the company to be subsumed in the merger made no "attempt to structure th[e] transaction on an arm's length basis." 457 A.2d at 710. The Defendants had allowed interested directors to have input into the special committee that the company had established to examine the merger and had not provided disinterested directors with important financial data. See 457 A.2d at 707-10. Concluding that the lack of structures or procedures which would keep the merger decision at arm's length violated the company's fiduciary duty to its minority shareholders, the Supreme Court of Delaware decided that such "divided loyalties" had no safe harbor in the state. Weinberger v. UOP, Inc., 457 A.2d at 710. Instead of reviewing such mergers under the deferential business-judgment rule, the Supreme Court of Delaware said that it would review them under the entire-fairness rule. See 457 A.2d at 710-11.

The Supreme Court of Delaware disserted at length on what this test needs to capture:

The concept of fairness has two basic aspects: fair dealing and fair price. The former embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained. The latter aspect of fairness relates to the economic and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock.

457 A.2d at 711. Lest this description be misinterpreted, the Supreme Court of Delaware then clarified that "the test for fairness is not a bifurcated one as between fair dealing and price. All aspects of the issue must be examined as a whole since the question is one of entire fairness." 457 A.2d at 711.

Four years later, the Supreme Court of Delaware saw a different fact pattern in the cash-out merger of minority shareholders in Bershad. In contrast with the defendants in Weinberger v. UOP, Inc., the defendant company in Bershad took multiple steps to safeguard minority shareholders' rights during the merger process before they were cashed out. See Bershad, 535 A.2d passim. At the same meeting in which the Curtiss-Wright board of directors decided that a merger might be beneficial, it hired a nationally recognized investment bank to evaluate the fairness of the proposed cash-out share offer price. See Bershad, 535 A.2d at 842. After the investment bank had reported its independent opinion that the cash-out share offer price was fair, see 535 A.2d at 843, the Curtiss-Wright board of directors scheduled a shareholder meeting at which a large majority of Curtiss-Wright's minority shareholders approved of the merger, see 535 A.2d at 843.

The Bershad court did not diverge from Weinberger v. UOP, Inc.'s rule that the entire-fairness test should apply in cash-out mergers, concluding that the entire-fairness standard is necessary to "protect those rights of minority shareholders which have been tainted with unfairness." 535 A.2d at 848. The Supreme Court of Delaware added a twist, however. In a

merger case in which the defendant company put substantial structures and processes in place to ensure that a controlling shareholder did not simply steamroll minority shareholders, the defendants "retain the burden of proving complete disclosure of all material facts relevant to the merger vote." 535 A.2d at 846. If the defendants prove complete disclosure, however, by an informed vote of a majority of the minority shareholders, they shift the entire-fairness burden onto the plaintiffs. See 535 A.2d at 846. In other words, the plaintiff must then bear the burden of proving that the merger was not entirely fair. See 535 A.2d at 846.

As the Court discussed in the MO, three decades of Supreme Court of Delaware and Delaware Court of Chancery cases have fleshed out the skeletal analysis that Weinberger v. UOP, Inc. and Bershad provide. See MO at 282-83, 2017 WL 1487439, at *123-24. As part of its assessment of the Defendants' Motion for Reconsideration, the Court therefore has reexamined twenty-eight Supreme Court of Delaware and Delaware Court of Chancery decisions related to cash-out mergers since 1987, along with the cases outside this set to which the parties referred in their briefing or at the motion hearing. The Court has paid particular attention to nine Supreme Court of Delaware cases during that time span. See Kahn v. M.F. Worldwide Corp., 88 A.3d 635 (Del. 2014); In Re Celera Corp. Shareholder Litigation, 59 A.3d 418 (Del. 2012); Montgomery Cellular Holding Co., Inc. v. Dobler, 880 A.2d 206 (Del. 2005); Aspen Advisors LLC v. United Artists Theatre CO., 861 A.2d 1251 (Del. 2004); Skeen v. Jo-Ann Stores, Inc., 750 A.2d 1170 (Del. 2000); M.P.M. Enterprises, Inc. v. Gilbert, 731 A.2d 790 (Del. 1999); Cede & Co., v. Technicolor, Inc., 684 A.2d 289 (Del. 1996); Kahn v. Lynch Communication Systems, Inc., 638 A.2d 1110 (Del. 1994); Cavalier Oil Corp. v. Harnett, 564 A.2d 1137 (Del. 1989).

The Court understands from this review that, under Delaware's entire-fairness standard, the Defendants typically could shift the burden for proving fair dealing under the following

conditions: (i) the defendants set up a well-functioning committee of independent directors to examine and approve the merger; and (ii) a fully informed majority of the minority shareholders voted to approve the merger. See, e.g., Kahn v. Lynch Communication Systems, Inc., 638 A.2d 1110 (Del. 1994); In re PNB Holding Co. Shareholder Litigation, 32 Del. J. Corp. L. 654 (2006)(Strine, J.); Clements v. Rogers, 790 A.2d 1222 (2001)(Strine, J.). In this case, the Defendants satisfied neither criterion needed to shift the evidentiary burden. The Defendants did not form a special committee to consider the merger, nor did they schedule and hold a minority shareholder vote on the merger. Instead, the Defendants informed minority shareholders after the merger had been consummated that their shares had been "automatically canceled and extinguished," and "converted into a right to receive an amount in cash equal to $451,000" a share. Merger Agreement § 2.01(a).

Nevertheless, as the Defendants assert in the Motion for Reconsideration, an independent committee and a minority vote are not the exclusive ways -- even if they are the standard ways -- for a corporation to ensure that procedural protections safeguard minority shareholders' rights in a self-dealing merger transaction. The Defendants maintain that it is clear that fair process "embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained." Motion for Reconsideration at 9 (quoting Weinberger v. UOP, Inc., 457 A.2d at 711). As the Defendants understand it, these considerations extend far beyond the question whether directors employed one or more procedural devices to encompass the entire merger process. See Motion for Reconsideration at 9 (citing Kahn v. Lynch, 638 A.2d 1110, 1112-13 (Del. 1994)). Moreover, the Defendants contend, the Plaintiffs have acknowledged on the record that the specific procedural devices mentioned above are not the exclusive means to prove a fair

process.  See Motion for Reconsideration at 9 (citing December Tr. at 68:21-69:7 (Kagen)).  The Defendants therefore conclude that the absence of these particular safeguards does not and cannot by itself justify a finding of unfair process -- much less a finding of a breach of fiduciary duty -- without consideration of fair price.  See Motion for Reconsideration at 10.

The Defendants are correct that less than clear language on pages 303 to 306 of the MO can be read to suggest that the only ways that corporate directors can prove fair dealing in a merger transaction is to have an independent committee or a minority shareholder vote.  Fair process, as Weinberger v. UOP, Inc. states, embraces questions of (i) when the merger transaction was timed; (ii) how it was initiated; (iii) how it was structured; (iv) how it was negotiated; (v) how it was disclosed to the directors; and (vi) how directors' and shareholders' approval for the merger was obtained.  See Weinberger v. UOP, Inc., 457 A.2d at 711; In re Nine Systems, 2014 WL 4383127, at *34.  The Court determines that the Defendants are not correct, however, in their assertion that what they deem to have been a bidding war for TIR, Inc. shares and an independent appraisal commissioned months before the merger transaction qualify as fair dealing even under the expansive Weinberger v. UOP, Inc. criteria.  As the Court already noted multiple times in each opinion it has filed in this case, the facts pertaining to and relevant to any determination of the merger transaction's entire fairness do not encompass the bidding war and the appraisal conduct related to it.  Reviewing the facts in the light most favorable to the Defendants, the Court concludes that fair dealing was not a hallmark of the merger transaction. Weinberger v. UOP, Inc. does not provide a court with an algorithm to weigh each of the six components it categorizes under fair process.  The Court concludes that each component in fact points in unfairness' direction.  First, TIR, Inc. initiated the merger with Cypress Energy Partners after TIR, Inc. board of directors resignations.  Compare Plaintiffs' MSJ ¶ 10, at 4 (stating the

fact of individual Plaintiffs' resignations from the board),[53] <u>with</u> Defendants' Acquiescence MSJ ¶ 20, at 9 (stating when the SEC registration for the merger occurred). <u>See</u> Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing the SEC registration's timing). Second, TIR, Inc. and Cypress Energy Partners structured and negotiated the merger in a way that certain shareholder subgroups received sweeteners alongside the tender price, such as promises of lucrative future employment or the option to gross up at a later date. <u>See</u> MO at 284-85, 2017 WL 1487439, at *125. Third, TIR, Inc. did not seek minority shareholders' approval -- by vote or otherwise -- before it cancelled their shares and presented the opposed minority shareholders with a fait accompli. <u>See</u> Defendants' Acquiescence MSJ ¶ 34, at 10 (stating this fact)(relying on Notice to Former Shareholders of Tulsa Inspection Resources, Inc. of Shareholder Action and Appraisal Rights (dated December 11, 2013), filed April 3, 2015 (Doc. 83-27).[54] The problem

---

[53]The Defendants purport to dispute this fact "[f]or avoidance of doubt," indicating that TIR, Inc.'s board of directors "had three members -- Mr. Field, Mr. Boylan, and Mr. Lorett -- and two vacant positions as of October 31, 2013." Response to Plaintiffs' MSJ at 3 (relying on Letter from Cypress Energy Partners to Shareholders of Tulsa Inspection Resources, Inc. at 3 (dated October 31, 2013), filed September 15, 2015 (Doc. 158-3)). The Court notes that this observation is a difference without a distinction. Analogously, if one says that a person is holding up three fingers on one hand, that statement is the equivalent of saying that one is holding up three fingers on one hand and that the other two fingers on the hand are not being held up. Furthermore, the Defendants do not dispute that L. Field., Boylan, and R. Lorett were the only three sitting TIR, Inc. board members as of October 31, 2013. The Court accordingly, as it discussed in the factual section of this opinion <u>supra</u> deems this fact to be undisputed.

[54]In the Defendants' Acquiescence MSJ, the Defendants word this fact as follows: "On December 9, 2013, Cypress and TIR exercised their statutory right to cash-out the Plaintiffs at $451,000 per share." Defendants' Acquiescence MSJ ¶ 34, at 10. The Plaintiffs purport to dispute this fact, asserting that they dispute it "to the extent it suggests that Defendants had any right to cash-out Plaintiffs for an unfair price," adding that the fact "is otherwise admitted." Response to Defendants' Acquiescence MSJ ¶ 9, at 10. The Court notes that the Plaintiffs do not contest the Defendants' assertion that the Defendants' statutory rights included cashing out the Plaintiffs, but only that these statutory rights did not also encompass the right to cash the Plaintiffs out at "an unfair price." Response to Defendants' Acquiescence MSJ ¶ 9, at 10. Whether $451,000.00 is a fair share price for TIR, Inc. shares at the time the merger was effected is a legal question rather than a factual question, or at least a fact for the jury to find -- a legal

with the Defendants' argument is that they do not present any evidence of procedural fairness. Despite the Defendants' argument to the contrary, a bidding war is not procedural fairness. The Defendants do no present a supporting case that says a bidding war is procedural fairness or evidence of procedural fairness. Thus, there is <u>no</u> evidence to create a genuine issue of material fact as to the issue of procedural fairness. Accordingly, because (i) every component points in in the direction of the absence of fair dealing; and (ii) the resulting sum axiomatically cannot point, therefore, in the direction of fair dealing, the Court concludes that the Defendants have not proven fair dealing in the merger.

The Defendants argue in the Motion for Reconsideration that, even if the Court deems that there was not fair dealing in the merger transaction, it is an error of law to rule that the Defendants' failure to prove fair dealing results in a failure of the Defendants to prove the transaction's entire fairness without a prior evaluation of whether the share price at which the Defendants cashed out the minority shareholders was fair. <u>See</u> Motion for Reconsideration at 8-9. According to the Defendants, the test for entire fairness "is <u>not a bifurcated one as between fair dealing and fair price</u>. All aspects of the use must be examined as a whole, since the question is one of entire fairness. Thus, all aspects of the transaction must be considered before making an [sic] <u>unitary determination</u>." <u>See</u> Motion for Reconsideration at 10 (quoting <u>Gatz Properties, L.L.C. v. Auriga Capital Corp.</u>, 59 A.3d at 1214)(emphases added in the Motion for Reconsideration).

During the motion hearing, the Plaintiffs asserted that the Defendants' contention that the entire-fairness standard requires a unitary determination is erroneous, directing the Court's

---

question or jury question that the Court discussed at length in its analysis of the Defendants' Acquiescence MSJ and the Plaintiffs' Estoppel MSJ in its MOO. The Court therefore reports the fact as it is undisputed.

attention to <u>Merritt v. Colonial Foods, Inc.</u>  In that case, decided by Chancellor Allen, whom the Plaintiffs characterized as one of the country's foremost experts in Delaware corporate law, the Plaintiffs noted that the court granted the case's plaintiffs "partial summary judgment on the issue of liability."  June Tr. at 128:12-19 (Kagen)(quoting <u>Merritt v. Colonial Foods, Inc.</u>, 505 A.2d at 766).  The Plaintiffs contended that they had found the black swan that disproves what they purport to be the Defendants' core argument, <u>i.e.</u>, that no Delaware court ever has granted partial summary judgment on process under the entire fairness standard.  <u>See</u> June Tr. at 128:18-19 (Kagen).  The Plaintiffs then recounted the facts in <u>Merritt v. Colonial Foods, Inc.</u>, painting the defendant in that case as having frozen out minority shareholders in a self-dealing transaction.  <u>See</u> June Tr. at 128:20-129:22 (Kagen).  According to the Plaintiffs, the Delaware Court of Chancery concluded that the defendants had employed unfair process and thereby breached their duty of fair dealing.  <u>See</u> June Tr. at 129:23-131:14 (Kagen).  The main takeaway from <u>Merritt v. Colonial Foods, Inc.</u>, in the Plaintiffs' estimation, therefore, was that "one of the top national authorities in corporate law, found and granted partial summary judg[ment] on the basis of process alone.  He did not deal with the fairness of the price."  June Tr. at 133:4-9 (Kagen).  Chancellor Allen wrote in footnote seven of the opinion in that case:

> I note, for the guidance of the parties, that disposition of the pending motions has not required me to make any judgment concerning the fairness of the $3 per share merger price. . . .  It may be that such price fully reflected the fair value of the minority shares . . . even when a proportionate share of any value of the derivative claims may have had is considered. . . . That determination cannot be made on this record.

<u>Merritt v. Colonial Foods, Inc.</u>, 505 A.2d at 766 n.7.  For their part, the Defendants conceded during the hearing that they read <u>Merritt v. Colonial Foods, Inc.</u> the same way that the Plaintiffs read it.  <u>See</u> June Tr. at 162:6-11 (DeMuro).  The Defendants would have the Court treat the decision, however, as an aberration.  <u>See</u> June Tr. at 162:11-14 (DeMuro).  According to the

Defendants, <u>Merritt v. Colonial Foods, Inc.</u> is not a black swan; it is an ugly duckling, a lone exception -- among "hundreds of cases" that the parties collectively reviewed -- that proves the rule that entire fairness is a unitary standard. June Tr. at 104:19-105:5 (DeMuro). <u>Cf.</u> Hans Christian Andersen, The Ugly Duckling, <u>in</u> <u>Complete Fairy Tales</u> 165-70 (2014)(1843). The Defendants strenuously urged the Court not to replicate what they discern as <u>Merritt v. Colonial Foods, Inc.</u>'s misunderstanding of the entire-fairness standard. <u>See</u> June Tr. at 105:7 (DeMuro).

The Court hesitates to take the Plaintiffs' invitation to reflexively make <u>Merritt v. Colonial Foods, Inc.</u> the lodestar for its analysis based solely on an appeal to the opinion's author's credentials. <u>Cf.</u> Aristotle, Posterior Analytics (Hugh Tredennick & E.S. Forster trans.)(Loeb Classical Library ed. 1960)(characterizing appeals to authority as logical fallacies). Instead, starting from first principles upon which the parties agree, the Court notes that the entire-fairness standard has two prongs: fair process and fair price. Analysis of these two prongs, the parties agree, must lead the Court to a unitary determination whether the Defendants meet their burden to prove the entire fairness of the merger transaction. <u>See</u> June Tr. at 166:22-23 (DeMuro); <u>id.</u> at 170:18-20 (Kagen). Where the parties essentially diverge, however, is in how the Court should interpret the word "and." The Plaintiffs appear to interpret "and" to be multiplicative, so that a complete absence of fair process always results in a failure to prove a transaction's entire fairness. <u>See</u>, <u>e.g.</u>, June Tr. at 133:21-22 (Kagen). The Defendants, in contrast, seem to interpret "and" to be additive, such that a defendant can prove entire fairness by summing zero fair process with manifestly fair price. <u>See</u>, <u>e.g.</u>, April Tr. 256:8-15 (DeMuro).

The Court acknowledges that, in theory, both interpretations of the word "and" are possible. Under the <u>Erie</u> doctrine, a federal court sitting in diversity must apply state law as the highest court in the state would apply it. See <u>Erie</u>, 304 U.S. at 79. The Supreme Court of

Delaware has not clearly and explicitly indicated, however, how the "and" conjoining the two prongs of the entire fairness standard is to be interpreted.[55] The Delaware Court of Chancery noted in In re Emerging Communications, Inc. Shareholders Litigation, 2004 WL 1305745 (Del. Ch. May 3, 2004), after determining that the price paid in an interested merger was unfair:

> In this case, this Court's determination of [the corporation's] "fair value" disposes of both [the] appraisal action and the "fair price" aspect of the plaintiffs' fiduciary duty claim. The determination that price is not fair raises a preliminary, threshold question of whether in this case any "fair dealing" analysis need be undertaken at all. It is arguable that where (as here) the merger price is found to be unfair, it would be difficult, if not impossible, for the merger to be found "entirely fair" even if the process leading up to the merger involved fair dealing. That supposition, if correct, would lead to the result that where the merger price is found not to be fair, that finding establishes, *ipso facto*, the unfairness of the merger, thereby obviating the need for any analysis of the process oriented issues. The Supreme Court has not yet addressed that question, however.

2004 WL 1305745, at *28. The Court therefore must channel Wittgenstein[56] to assess how the

[55]The United States Court of Appeals for the First Circuit came to the same conclusion in Baldwin v. Bader, 585 F.3d 18, 22 (1st Cir. 2009), characterizing Delaware law "ambiguous guidance about how fairness is determined and the relationship of fair price to other fairness factors . . . ." 585 F.3d at 22 (applying Delaware law). The Supreme Court of Delaware nevertheless suggested in Kahn v. Tremont Corp., 694 A.2d 422 (Del. 1997), that the multiplicative approach offers the correct interpretation of the conjunctive requirements for proving a transaction's entire fairness, deciding that a fair price does not always salvage fair dealing so that the entire-fairness burden is met. See 694 A.2d at 432. The Supreme Court of Delaware similarly suggested in Cinerama, Inc. v. Technicolor, Inc. in 1995 and again in Emerald Partners v. Berlin in 2001 that the multiplicative approach is correct. See Cinerama, Inc. v. Technicolor, Inc., 663 A.2d at 1163 (emphasizing that both fair process and fair price are required for a merger to be entirely fair); Emerald Partners v. Berlin, 787 A.2d at 97 ("To demonstrate entire fairness, the board must present evidence of the cumulative manner by which it discharged *all* of its fiduciary duties.")(emphasis in original). See also Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993)("Under the entire fairness standard of judicial review, the defendant directors must establish to the *court's* satisfaction that the transaction was the product of both fair dealing *and* fair price.")(emphasis in original).

[56]Ludwig Wittgenstein is considered one of the twentieth century's greatest philosophers and played a central role in twentieth-century analytic philosophy. See Ludwig Wittgenstein, Stanford Encyclopedia of Philosophy (March 3, 2014), https://plato.stanford.edu/entries/wittgenstein/ (last visited Aug. 25, 2017). In Wittgenstein's Philosophical Investigations, he rejected the predominant Augustinian tradition of the philosophy of language captured in the

Delaware Courts of Chancery have interpreted the entire-fairness standard's "and"; nothing in the Erie doctrine suggests that a state's intermediate courts cannot clarify the contours of a state supreme court's decisions. See, e.g., West v. American Tel. & Tel. Co., 311 U.S. 223 (1940)("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."). The Delaware Courts of Chancery's unique stature fortifies the Court's conclusion that examining its decisions related to the entire-fairness standard is wise and prudent. Legal scholars and even the Supreme Court of Delaware hold Delaware's Court of Chancery decisions in unique esteem. One former longtime chief justice of the Supreme Court of Delaware expressed this opinion in a law review article after his retirement:

> The Court of Chancery makes much of our corporate law. The judges of that court perform prolifically and promptly in an extraordinary manner on the ground, daily, as the world's most respected business trial court. . . . About 85% to 90% of the court's final judgments in corporate cases are never appealed. The low rate of appeal is due to several factors, including the extraordinarily high international respect for the expertise of the court; the fact that those judgments are mostly correct; the fact that they usually are affirmed on appeal anyway; the fact that many cases are decided by interlocutory order . . . ; and the practical reality that business must move on from the answer provided by the Court of Chancery. This phenomenon is a high tribute to that court and is the chief reason that Delaware is the prevailing corporate domicile of choice.

E. Norman Veasey, What Happened in Delaware Corporate Law and Governance from 1992-2004? A Retrospective on Some Key Developments, 153 U. Pa. L. Rev. 1399, 1408 (2005).

The Court recognizes that -- as the Defendants' and Plaintiffs' different interpretations of

---

Confessions to assert that in many cases words do not possess a metaphysical meaning separate from their use. See Ludwig Wittgenstein, Philosophical Investigations 51 (P.M.S. Hacker & Joachim Schulte eds.)(4th ed. 2009)("Philosophical Investigations"). Instead, Wittgenstein posits, "the meaning of a word is its use in the language." Philosophical Investigations at 43; cf. id. at 66.

the conjunctive suggest -- that a split has arisen in Delaware Court of Chancery cases whether what the Court here has shorthanded as the multiplicative or the additive interpretation of "and" is correct. The Delaware Court of Chancery lent the multiplicative interpretation of "and" greater purchase in In re Nine Systems when it explicitly rejected the notion that fair price alone could salvage the entire fairness of a transaction that showed no signs of fair dealing. See In re Nine Systems, 2014 WL 4383127, at *47.

> If the oft-repeated holding of the Delaware Supreme Court's decision in *Weinberger* regarding the entire fairness standard -- that the analysis is *not bifurcated* but is to be a *unitary conclusion* -- has any purchase, then, even if the fair price component may be the preponderant consideration for most non-fraudulent decisions or transactions, it must hold true that a grossly unfair process can render an otherwise fair price . . . not entirely fair.

(emphasis in original)(internal quotation marks omitted). In Owen v. Cannon, 2015 WL 3819204 (Del. Ch. June 17, 2015)(Bouchard, J.), the Delaware Court of Chancery again interpreted the burden of proving entire-fairness of a transaction to be met only when a controlling stockholder establishes "to the court's satisfaction that the transaction was the product of both fair dealing and fair price." 2015 WL 3819204, at *29 (citing Cinerama, Inc. v. Technicolor, Inc., 663 A.2d 1156, 1163 (Del. 1995))(emphases added). Shortly after Bershad, the Delaware Court of Chancery in Merritt v. Colonial Foods, Inc. considered "and" in the multiplicative sense, concluding that a complete lack of fair dealing permitted the court to assign liability for breach of fiduciary duty without examining the entire-fairness standard's fair price prong. See Merritt v. Colonial Foods, Inc., 505 A.2d at 766 n.7 ("I note, for the guidance of the parties, that disposition of the pending motions has not required me to make any judgment concerning the fairness of the $3 per share merger price."). This line of cases notwithstanding, the Defendants do not conjure an additive interpretation as some deus ex machina to salvage their argument. In In re Trados, the Delaware Court of Chancery held that a merger transaction

was fair even though "the defendant directors did not adopt any protective provisions, failed to consider the common stockholders, and sought to exit without recognizing the conflicts of interest presented by the Merger . . . ." In re Trados, 73 A.3d at 76.

The Court acknowledges the split.  It nevertheless determines that the Merritt line of cases chooses the more defensible interpretation in light of the history of Delaware merger law, the evil that Weinberger sought to redress, and other public policy reasons.  For the first century after Delaware's 1792 state constitution authorized it to charter corporations, see Del. Const. art. VIII, § 8 (1792), the state did so at a glacial pace. For four decades, an average of only one business per year incorporated in the state.[57] Then, feeling that even this small number disadvantaged the state in business contracts,[58] the state legislature nearly brought the glacier to a standstill by imposing onerous regulations on corporate certification.[59]

---

[57]This rate is based on the Court's calculation.  One incorporation took place over the time period 1792 to 1800.   See  2 Del. Laws 1025-1379; 3 Del. Laws 3-113.   Twelve incorporations took place 1800-1810.  See 3 Del. Laws 119-399; 4 Del. Laws 3-343.  Eighteen incorporations took place before enactment of a new state constitution in 1831.  See 6-8 Del. Laws.

[58]In 1819, the Supreme Court of the United States held in the landmark case Dartmouth College v. Woodward, 17 U.S. (4 Wheat) 518 (1819), that a corporate charter is a contract between the state and the corporation, and that the state cannot unilaterally change a corporate charter without running afoul of Article I, Section 10 of the Constitution of the United States of America, which bars states from enacting laws which would impair the obligations of contract. See U.S. Const. art. I § 8.  In response, states became warier about granting corporate charters.

[59]Under the Delaware General Incorporation Act of 1875, 15 Del. Laws 3, for instance,  a business that wished to incorporate in the state needed to have at least two Delawareans sign a certificate of incorporation that the business then could submit to an associate judge of the Superior Court in the county where the aspirant corporation planned to be situated.  The business could submit the certificate to a judge only during a court vacation and only after having published advanced notice of this action in the country newspaper for at least thirty days.  See 15 Del. Laws 3.   If the associate judge found nothing objectionable or detrimental to the commonweal in the aspirant corporation's objects, articles, or conditions, then the would-be corporation needed to post notice of this action in the country newspaper for at least three weeks. See 15 Del. Laws 3.  If no one raised an objection to the incorporation over that time period, then

The state climate began to change vis-à-vis corporations at the turn of the twentieth century. See generally Russell Carpenter Larcom, The Delaware Corporation 4 (2013)(1937). The citizenry was the first to warm to welcoming more corporations into the state, using the state constitutional convention of 1897 to supplant the state Legislature's exclusive authority to incorporate businesses via specific state acts with a general corporation law. See Del. Const. art. IX, § 2 (1897). The Legislature did not, however, lag too far behind. Enacting Delaware's first version of the General Corporation Law the following year, the Legislature simplified incorporation procedures, lowered corporate taxes, and granted corporations broad powers. See Act of March 10, 1899, 21 Del. Laws 303.

The change's timing, from Delaware's perspective, could not have been more propitious. A quarter century of economic development since the Civil War had interlinked regional American economies as never before,[60] a truth first hammered home via a golden spike connecting east and west at Promontory Point in Utah in 1869,[61] and then increasing with the rise of the first nationwide monopolies and trusts in American history. See, e.g., H.W. Brands, American Colossus: The Triumph of Capitalism, 1865-1890, at 43-69 (Oxford History of the United States)(2011). For the first few years, Americans seemed to get a rise out of vertical integration.[62] By the late 1880s, however, this golden age started to lose its luster for many

the judge -- in the next term of court -- had the option to file the incorporation certificate with the Delaware Secretary of State. See 15 Del. Laws 3.

[60]See, e.g., H.W. Brands, American Colossus: The Triumph of Capitalism, 1865-1890, at 43-69 (Oxford History of the United States)(2011).

[61]At the culmination of a three-day ceremony at Promontory Point stretching May 8-10, 1869, Civil War veterans from both the Union and the Confederacy collectively tapped a golden spike into the last tie on the transcontinental railroad. See Stephen E. Ambrose, Nothing Like It in the World: The Men Who Built the Transcontinental Railroad 356-368 (2000).

Americans as monopolists -- in a move at least as old as Aristotle[63] and one about which Adam Smith more recently had forewarned[64] -- used monopoly power to raise prices far above the marginal costs of production.[65]

A backlash against monopolies and trusts began in the several states, fifteen of which had incorporated antitrust provisions into their constitutions by 1890. See 2 Report of the United States Industrial Commission 264 (1900-1902)(on file with the University of California)(scanned version available via Google Books at https://archive.org/details/reportsindustri29clargoog). Under the spur of then-President Benjamin Harrison, Congress took up the antitrust crusade as well, clamping down on monopolies and corporate collusion that restrained interstate commerce in the Sherman Antitrust Act of 1890, 26 Stat. 209 (1890), codified at 15 U.S.C. §§ 1-7.[66] One weapon in the antitrust arsenal to defeat collusion became a prohibition on any corporation

---

[62]A common belief, indebted in part to an industrial application of the then-prevalent theory of Social Darwinism, was that vertical integration and national monopolization increased overall supply and the local market penetration of many consumer goods while decreasing prices thanks to economies of scale. See, e.g., Louis M. Hacker & Helene S. Zahler, 2 The Shaping of the American Tradition 809 (quoting Andrew Carnegie to this effect).

[63]See Aristotle, Politics 1259a.

[64]See Adam Smith, The Wealth of Nations 128.

[65]See, e.g., Gerald Leinwand, A History of the United States Federal Bureau of Corporations (1903-1914), at 13 (1962)(unpublished Ph.D. dissertation, New York University).

[66]For an overview of the radically different federal regulatory stance toward corporations in the years just before the Sherman Antitrust Act, see Theodore L. Taron, Congressional Concepts of Competition, 1865-1890 (1961)(unpublished Ph.D. dissertation, Yale University)(microfilmed by University Microfilms International), available with subscription via ProQuest Dissertations & Theses Global, https://search.proquest.com/docview/302130098. For an introduction to how much of a paradigm shift the Sherman Antitrust Act was, and how quickly it captured the fancy and channeled the energy of federal politicians from then-President Benjamin Harrison on down, see Charles W. Calhoun & Arthur M. Schlesinger, Benjamin Harrison 92-94 (2005).

acquiring stock in another corporation incorporated in another state.[67]

To sidestep state diversity, large numbers of businesses began to incorporate in just a few states, and the early beneficiary of this trend was New Jersey, which had rushed a statute through the state legislature shortly after the Sherman Antitrust Act was enacted that authorized New Jersey corporations to buy and sell other corporations' stock, and to issue their own stock as payment. See Edward Q. Keasbey, New Jersey and the Great Corporations, 13 Harv. L. Rev. 198, 200-04 (1899). Thousands of corporations flocked to New Jersey from New York and other states over the course of the 1890s. See Edward Q. Keasbey, New Jersey and the Great Corporations, 13 Harv. L. Rev. at 200-02.

When an ascendant Progressive Party in New Jersey began to more tightly regulate New Jersey corporations, Delaware sensed an opportunity to transplant corporations from its Garden State neighbors. See Joel Seligman, A Brief History of Delaware's General Corporation Law of 1899, 1 Del. J. of Corp. L. 271 (1976)("Seligman"). The Delaware state Legislature passed its 1899 General Corporation Law. An Act to Raise Revenue for This State By Taxing Certain Corporations, 22 Del. Laws 22 (1899)("1899 Law"). The 1899 Law, like the New Jersey laws it used as a template, was broadly affirmative in its statement of corporate powers. See Seligman at 273. It greatly simplified the process of incorporation and substantially lowered corporate taxes. Cf. Seligman at 273. Even more importantly, both because of its vivid counterpoint to Sherman Antitrust Act and for this case's purposes, the 1899 Law also granted to Delaware corporations (i) the express power to conduct business in any other state, territory, colony, or

---

[67]The intellectual progeny of John D. Rockefeller and the general counsel of Standard Oil, large stock purchases in other corporations had become the hallmark of trusts in the last decades of the nineteenth century, because they enabled corporations to evade state chartering restrictions on corporation size. See Harold Underwood Faulkner, Consolidation of Business in Roosevelt, Wilson, and the Trusts 1-18 (Edwin C. Rozwenc ed. 1950).

foreign country; (ii) the power to hold stocks and bonds of other companies; and (iii) the power

to merge.  See 1899 Law § 2.  A wave of incorporation requests quickly rolled in from New

Jersey over to Dover.  When Woodrow Wilson assumed the governorship of New Jersey in 1910

and allied himself with legislators from the Progressive Party to cinch the state's corporate

regulations even tighter, the wave swelled yet further. [68]  Painting the history of the ensuing

decade as a moral chiaroscuro, Seligman describes corporations' ascendancy vis-à-vis

shareholders in the 1899 Law's aftermath in the following manner:

> The corporation could conduct business in any way it chose as long as the State did not explicitly prohibit it.
>
> During the 1920's, the promoters and managers of Delaware corporations used this power of self-determination to assault the last vestiges of shareholder control.  Investors were disenfranchised through the proliferation of non-voting preferred and common shares and almost as completely disbarred through the inception of "restricted," "limited," or "contingent" voting shares.
>
> The power of self-determination also permitted a kindred attack on the public shareholder's property rights.  First fell the shareholder's "pre-emptive right."  Since 1807 State judicial decisions had universally recognized that each shareholder possessed an option to buy shares in subsequent issues of stock in his

---

[68]Wilson made corporate regulation a cornerstone of his gubernatorial years, noting in his Message to the New Jersey Legislature on January 17, 1911, the day that he assumed the governorship:

> Corporations are no longer hobgoblins which have sprung at us out of some mysterious ambush, not yet unholy inventions of rascally rich men, not yet the puzzling devices by which ingenious lawyers build up huge rights out of a multitude of small wrongs; but merely organizations of a perfectly intelligible sort which the law has licensed for the convenience of extensive business; organizations which have proved very useful but which have for the time being slipped out of the control of the very law that gave them leave to be and that can make or unmake them at pleasure.  We have now set ourselves to control them, soberly but effectively, and to bring them thoroughly within the regulation of the law. . . .  No man who wishes to enjoy the public confidence dare hold back, and, if he is wise, he will not resort to subterfuge.

Woodrow Wilson, Message to the New Jersey Legislature, January 17, 1911, reprinted in Thomas F. Fitzgerald, Manual of the Legislature of New Jersey 572 (1911).

corporation in the proportion which his holdings bore to the total number of shares before the new securities were offered to the general public. This option protected the value of the shareholder's original investment. Beginning in 1919, Delaware corporations began amending their charters to eliminate pre-emptive rights. Thereafter, management fear of "collapsing" the market in new securities issues remained the single practical constraint on self-favoritism.

Next challenged were shareholder's [sic] dividend rights. With the classification of stock, the board of directors [sic] "inherent" power to declare or not to declare dividends took on an unexpected meaning. Directors now "inherently" had the right to favor or prejudice particular shareholders each quarter. In 1928, this rule was taken to a new extreme when the Supreme Court of Delaware affirmed that even if a shareholder had purchased stock in reliance upon a guaranteed annual dividend specified in the charter, the board could subsequently amend the charter and not honor this "vested right."

By amendments in 1927 and 1929, the Delaware Legislature went further. "Blank Stock" was created. This permitted financiers to organize a corporation with large blocks of authorized but unissued stock whose "voting powers, designations preferences, . . . or rights" could be subsequently fixed by the board of directors. Similarly, "stock purchase options" could be issued prior to the public offering of shares. Such warrants permitted favored investors to buy corporate stock at a designated price any time during a specified term of years or in perpetuum [sic] when the market price of the stock rose sufficiently above the option price to guarantee the warrant-holder a risk-free profit. And "nimble" dividends were permitted. Under certain circumstance, directors could pay shareholders dividends out of the capital they had paid in for their shares.

The cumulative effect of these many broad financial mechanisms was, in the words of the Columbia Law School's Adolf Berle, to accord management "the power of confiscation . . . by using them or a combination of them, appropriately, the profits of the enterprise and also in considerable measure the underlying assets may be shifted from one group of stockholders to another."

Seligman at 273-75 (footnotes omitted). By 1932, approximately forty-two thousand corporations -- including one third of the corporations listed on the New York Stock Exchange -- called Delaware home. See John T. Flynn, Why Corporations Leave Home, Atlantic Monthly 270 (Sept. 1932).

After World War II, more than thirty states revised their corporate laws to bite into Delaware's incorporation market share. See William L. Cary, Federalism and Corporate Law: Reflections Upon Delaware, 83 Yale L.J. 663, 665-68 (1974). Delaware responded by revising

its own General Corporation law in 1963 to make it more corporation-friendly. See, e.g., Law of December 31, 1963, 54 Del. Laws 724 ("WHEREAS, the General Assembly of the State of Delaware declares it the public policy of the State to maintain a favorable business climate and to encourage corporations to make Delaware their domicile . . . ."). The legislative committee tasked with drafting the revisions even directly solicited suggestions from General Foods, Shell Oil, and at least 125 other major corporations of the day. See Comment, Law for Sale: A Study of the Delaware Corporation Law of 1967, 117 U. Pa. L. Rev. 861, 867-68 (1969). Barely a decade after the 1963 revisions, Delaware was home to approximately half of the thousand largest industrial corporations in the country. See Ralph Nader, Mark Green & Joel Seligman, Constitutionalizing the Corporation: The Case for the Federal Chartering of Giant Corporations 501-05 (1976). The proportion has grown even larger over time; today approximately two out of every three corporations in the United States -- more than one million business entities in all -- have chosen Delaware as their legal home. See State of Delaware, Division of Corporations, About Agency, http://corp.delaware.gov/aboutagency.shtml (last visited Aug. 26, 2017).

One perhaps unintended result of Delaware's strenuous efforts to supplant New Jersey as the dominant state of incorporation by becoming more corporation-friendly was that minority shareholder rights in merger transactions gradually eroded. In Weinberger v. UOP, Inc., the Supreme Court of Delaware placed itself athwart this erosion by holding that minority shareholders enjoy both fair process and fair price. See Weinberger v. UOP, Inc., 457 A.2d at 711. Much more comprehensive than fair price alone, the new entire-fairness standard that the Weinberger v. UOP, Inc. court created a requirement of fair dealing that "embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained." 457 A.2d

at 711.  In other words, even in cases where majority shareholders provides a fair price, a second element of procedural fairness -- fair dealing -- also is imperative.  Lack of fair process, as the Weinberger v. UOP, Inc. court saw it in light of Delaware's corporate law history, is an evil that the courts need to remedy.

Public policy rationales for safeguarding fair dealing in merger transactions that force out minority shareholders are as pronounced now as they were when the Supreme Court of Delaware decided Weinberger v. UOP, Inc. in 1983.  The Defendants' interpretation of the conjunction binding the entire-fairness standard's two prongs is that a corporation's directors can offer no process to minority shareholders but still rescue a merger's entire fairness by cashing minority shareholders out at a fair price.  Such an interpretation makes the entire-fairness standard's fair dealing prong meaningless, because "Price is king, price is king."  June Tr. at 122:6 (DeMuro).[69] It also creates a set of incentives that reinforce rather than remedy the evil that Weinberger v. UOP, Inc. seeks to exorcise from Delaware corporate law; corporations confident in the fairness of a cash-out price would have no self-interest in providing any process at all.[70]

---

[69] The Court realizes that this conclusion and quote from the motion hearing may be an overstatement of the Defendants' ultimate argument -- that a federal court does not have the ability to grant judgment on procedural fairness without having a trial.  In other words, the Defendants argue that a federal court cannot use rule 56 of the Federal Rules of Civil Procedure to decide either prong of the entire-fairness test, because they should be able to introduce all evidence of procedural fairness to show the price if fair.  The Defendants do not re-raise the issue in the Motion to Reconsider, but if that is what they contend Delaware means by "unitary" and "non-bifurcated," then the Court has declined to so hamstring a federal court.  See Fed. R. Civ. P. 56(e)(3).  If a federal court can decide procedural fairness on summary judgment, as the Court has said it can, then saying fair price could bail out the Defendants even if there is no procedural fairness would make the procedural prong meaningless.  If fair price is the ball game, this conclusion makes all of Delaware's discussion of the procedural fairness requirement empty rhetoric.

[70] It could be argued that a majority would always have some incentive to provide procedural fairness, because it might help to show that price is fair.  In the end, however, if fair price can always bail out the lack of procedural fairness, the law provides little incentive to

Consequently, despite the Delaware Court of Chancery's split on how to interpret the entire-fairness standard's conjunctive, the Court is convinced that the most natural reading of the word "and" as multiplicative is also the correct reading.[71] That is to say, zero fair process results in a failure to meet the burden of proving entire fairness regardless how fair the share price is at which the Defendants cashed out the minority shareholders. The Court is not the first federal court to reach such a conclusion. In ASARCO LLC v. Americas Mining Corp., 396 B.R. 278, 411 (Bankr. S.D. Tex. August 30, 2008)(Hansen, J.), the Bankruptcy Court for the United States District Court for the Southern District of Texas concluded that Weinberger v. UOP, Inc. required both fair dealing and fair price to meet the burden for proving a transaction's entire fairness. See ASARCO LLC v. Americas Mining Corp., 396 B.R. at 411 ("AMC has the burden to prove both fair dealing and fair price."). In In re Dwight's Piano Co., 424 B.R. 260 (Bankr. S.D. Ohio. September 9, 2009)(Rose, J.), the Bankruptcy Court for the United States District Court for the Southern District of Ohio ruled that both fair dealing and fair price are required for entire fairness, and that even comparatively minor lacks of procedure such as a lack of disclosure on the part of a CEO can render a transaction unfair. See In re Dwight's Piano Co., 424 B.R. at 284. In In re Adelphia Communications Corp., 323 B.R. 345 (Bankr. S.D.N.Y. March 24, 2005)(Lynch, J.), the Bankruptcy Court for the United States District Court for the Southern District of New York concluded that a self-dealing transaction "must be justified under both elements of a two-pronged inquiry into the fair process and the fair price of a transaction." In re

provide procedural fairness. It leaves to the majority, not the law, the decision whether it is in the majority's interest to provide procedural fairness. Such a result undercuts all of Delaware's discussion of the test being unitary and not bifurcated.

[71]The Court notes that the Defendants at one point even obliquely conceded this point in the June, 2017, motion hearing, arguing that the two entire-fairness prongs are conjunctive: "You've got to have both under the entire fairness standard of review." June Tr. at 118:21-22 (DeMuro).

Adelphia Communications Corp., 323 B.R. at 385. The Supreme Court of Delaware also

implicitly came down on the side of the multiplicative interpretation of "and" in 2011, holding in

William Penn Partnership v. Saliba that

> The concept of entire fairness consists of two blended elements: fair dealing and
> fair price. Fair dealing involves analyzing how the transaction was structured, the
> timing, disclosures, and approvals. Fair price relates to the economic and
> financial considerations of the transaction. We examine the transaction as a
> whole and both aspects of the test must be satisfied; a party does not meet the
> entire fairness standard simply by showing that the price fell within a reasonable
> range that would be considered fair.

William Penn Partnership v. Saliba, 13 A.3d at 756-57 (citing Cinerama, Inc. v. Technicolor,

Inc., 663 A.2d at 1162-63; HMG/Courtland Props., Inc. v. Gray, 749 A.2d 94, 116-17 (Del. Ch.

1999)).

In 2012, the Supreme Court of Delaware at first seems to have reversed its interpretation

of how to interpret the conjunctive "and" that it decided just one year earlier. In Americas

Mining Corp. v. Theriault, 51 A.3d 1213 (Del. 2012), the Supreme Court of Delaware wrote:

> A fair process usually results in a fair price. Therefore, the proponents of
> an interested transaction will continue to be incentivized to put a fair dealing
> process in place that promotes judicial confidence in the entire fairness of the
> transaction price. Accordingly, we have no doubt that the effective use of a
> properly functioning special committee of independent directors and the informed
> conditional approval of a majority of minority stockholders will continue to be
> integral parts of the best practices that are used to establish a fair dealing process.

> Although the entire fairness standard has two components, the entire
> fairness analysis is "not a bifurcated one as between fair dealing and fair price.
> All aspects of the issue must be examined as a whole since the question is one of
> entire fairness." In a non-fraudulent transaction, "price may be the preponderant
> consideration outweighing other features of the merger." Evidence of fair dealing
> has significant probative value to demonstrate the fairness of the price obtained.
> The paramount consideration, however, is whether the price was a fair one.

> The Court of Chancery found that the process by which the Merger was
> negotiated and approved was not fair and did not result in the payment of a fair
> price. Because the issues relating to fair dealing and fair price were so
> intertwined, the Court of Chancery did not separate its analysis, but rather treated

them together in an integrated examination. That approach is consistent with the inherent non-bifurcated nature of the entire fairness standard of review.

Americas Mining Corp. v. Theriault, 51 A.3d at 1244. At first blush, the third paragraph in the block quoted text might suggest that price, as the Defendants put it pithily at the June, 2017, hearing, is king of an integrative analysis. See June Tr. at 122:6 (DeMuro). Like Lavinia's famous first blush in the Aeneid, the first blush here gives an ultimately false impression. Cf. 2 Virgil, Aeneid 305 (G.P. Goold ed., H.R. Fairclough trans.)(Loeb Classical Library ed. 1918)(reporting how Lavinia's blush is wrongly interpreted as displaying secret love for the incorrect man). Read with an eye toward the structure of the Americas Mining Corp. v. Theriault court's opinion and, especially, the context of the paragraphs surrounding the block quoted text above, the Supreme Court of Delaware's ruling suggests a one-way ratchet that endorses the multiplicative interpretation of the conjunctive "and" in the entire-fairness standard. In the opinion's preceding section, the Americas Mining Corp. v. Theriault court speaks at length about the role of procedural devices such as an independent committee and a minority shareholder vote in shifting the entire-fairness burden from defendants to plaintiffs. See Americas Mining Corp. v. Theriault, 51 A.3d at 1241-42. Highlighting the leverage that fair process can provide Defendants in meeting their burden to prove entire fairness, the Americas Mining Corp. v. Theriault court emphasizes that fair process oftentimes can help demonstrate that a price which emerges from the process also is fair, whereas unfair process can demonstrate that a price which emerges from the process also is unfair. See Americas Mining Corp. v. Theriault, 51 A.3d at 1244. It is at this point in the opinion, in the subsequent paragraph, that the Americas Mining Corp. v. Theriault court begins the analysis block quoted on this and the previous page. See Americas Mining Corp. v. Theriault, 51 A.3d at 1244.

In context, the Americas Mining Corp. v. Theriault court's analysis, therefore, appears to

be a clarification that defendants should not misinterpret its preceding analysis as saying that process alone suffices to prove entire fairness. Entire fairness, the court reiterates, requires that "[a]ll aspects of the issue must be examined as a whole since the question is one of entire fairness." Americas Mining Corp. v. Theriault, 51 A.3d at 1244 (internal quotation marks omitted). Fair dealing has significant probative value to demonstrate the fairness of the price obtained, but by itself it cannot prove entire fairness in the absence of fair price as well. In conformity with what the Court has termed the multiplicative approach to the conjunctive "and," but understanding the test by means of an alternate metaphor, the Americas Mining Corp. v. Theriault court appears to capture the entire-fairness test as a sort of tuning fork. A tuning fork has two prongs, but the tuning fork qua tuning fork is a unitary object that only serves its purpose if both prongs function in unison. If one prong is missing, the tuning fork cannot prove that a note rings true when debate exists. Similarly, the Americas Mining Corp. v. Theriault court holds that both fair process and fair price are necessary to prove that a transaction is in accord with the entire-fairness standard's requirements. In other words, for a transaction to be entirely fair, it must be entirely -- procedurally and in valuation -- fair. This does not imply that the inverse also is true, i.e., that both fair dealing and fair price must be absent for a merger transaction to be proven to be entirely unfair. The facts in Americas Mining Corp. v. Theriault were such that the Supreme Court of Delaware affirmed the Delaware Court of Chancery in its holding that process and price both were unfair in that case, but the Supreme Court of Delaware did not mandate that both fair dealing and fair price be absent to prove entire unfairness.

Such a mandate, if it were to be read into Americas Mining Corp. v. Theriault, would not only signal that the Supreme Court of Delaware reversed its opinion from just one year earlier in William Penn Partnership v. Saliba without stating explicitly that it was reversing the decision,

but it also would stand at loggerheads with the aforementioned intent behind Weinberger v. UOP, Inc. and the natural reading of the conjunctive. The Court therefore concludes that, despite its appearance at first blush, the Supreme Court of Delaware decision in Americas Mining Corp. v. Theriault does not vary from the multiplicative understanding of the conjunctive enunciated in Merritt v. Colonial Foods, Inc. and its progeny or as multiple federal courts have understood it. To compare the entire-fairness standard to a tuning fork once more, if even one prong is missing, the defendants cannot sound a note demonstrating a merger transaction's entire fairness.

With regard to the In re Trados line of Delaware Court of Chancery cases which the Court deems to not reflect a correct interpretation of the entire-fairness standard's conjunctive "and," the Court is mindful that the Delaware Court of Chancery in In re Trados has held that a merger can satisfy the entire-fairness standard even though there was no fair process provided to minority shareholders. See In re Trados Inc. Shareholder Litigation, 73 A.3d at 17. At first glance, that holding is in tension with the Court's conclusion that the Defendants' failure to introduce any evidence indicating that the Plaintiffs were afforded a fair process justifies partial summary judgment with respect to the entire-fairness standard, notwithstanding a dispute of material fact regarding fair price. That tension is produced not by a disagreement between the Court and the Delaware Court of Chancery regarding the law but by the fact that the two courts address distinct legal issues. The Court needs to determine, on summary judgment, what legal effect to give to the Defendants' complete failure to introduce evidence regarding fair process. The Delaware Court of Chancery, on the other hand, needs to resolve factual disputes and determine the legal effect to give an all-things-considered judgment that minority shareholders did not receive fair process. This Court understands the Supreme Court of Delaware's admonition that the test for fairness is not a bifurcated one as between fair dealing and fair price,

see Weinberger v. UOP, Inc., 457 A.2d at 711, to mean that a strong showing on one factor can compensate for a completely nonexistent showing on the other factor. This understanding is in accord with In re Trados Shareholder Litigation as well as the other chancery opinions that the Court has surveyed.

The Court's unitary conclusion, consequently, is that the Defendants did not meet their burden for proving that the merger transaction was entirely fair.[72] This failure to prove the transaction's entire fairness is determinative for purposes of liability. See Emerald Partners v. Berlin, 787 A.2d 85, 93 (Del. 2001)("[T]he determination that a board has failed to satisfy the entire fairness standard will constitute the basis for a finding of substantive liability."); Cinerama, Inc. v. Technicolor, Inc., 663 A.2d at 1165. The Defendants did not have to appoint an independent committee or to hold a minority shareholder vote on the merger, but the absence of any prophylactic action -- whether it be an independent committee, a vote, or otherwise -- to ensure the merger's entire fairness means that, under Delaware law, liability for a breach of fiduciary duty attaches to the Defendants. See Merritt v. Colonial Foods, Inc., 505 A.2d at 766. See also See Emerald Partners v. Berlin, 787 A.2d 85, 93 (Del. 2001)("[T]he determination that a board has failed to satisfy the entire fairness standard will constitute the basis for a finding of substantive liability."); Cinerama, Inc. v. Technicolor, Inc., 663 A.2d at 1165.

The Court also notes that the proper interpretation of the conjunctive in this case in large

---

[72]The Defendants complain that, when they failed to provide an independent committee, a minority shareholder vote, or other standard procedural safeguards to protect minority shareholders' rights, that failure only shifts the burden to prove procedural fairness to the Defendants, not that it can be said as a matter of law that they did not provide procedural fairness. That statement is true, but here, the Defendants do not point to anything that could qualify as a procedural protection. The Court has already informed the parties of its position that a bidding war is not a proxy procedural process. See, e.g., MO at 166, 2017 WL 1487439, at *70. The Defendants do not point to anything else. Hence, not only did the Defendants have the burden of proving procedural fairness, but they also did not meet that burden of proof by creating a genuine issue of material fact on procedural fairness.

part will have no effect on the case's trial.  The Court has assured the parties that it will make every effort to withhold from the jury its conclusion that the Defendants are liable for breach of fiduciary duty.  See April Tr. at 370:23-371:24 (Court).  The only question before the jury is, therefore, whether the price that the Plaintiffs received for their shares is fair.  The jury can render two different verdicts: the price is fair or the price is unfair.  If the jury determines that the price is not fair, then both prongs of the entire-fairness standard have, after trial, been determined to be unfair, and liability attaches to the Defendants.  The sole way in which the interpretation of the entire-fairness standard's "and" can make a difference is if the jury determines that the price is fair; there will be no damages awarded to the Plaintiffs, but any error committed by reading the conjunctive "and" in a multiplicative rather than additive sense would not be moot.  The Plaintiffs would no doubt still seek the award of attorney fees.  Hence, the Court may see the Defendants approach the Court again with this issue if they prevail at trial, arguing that they should not have to pay attorney's fees for not proving procedural fairness.[73]

As the Court recognized earlier in this opinion supra, its use of language in pages 303 to 306 of the MO imprecisely refers to the Defendants' breach of fiduciary duty of entire fairness in a heading rather than referring to the Defendants' breach of fiduciary duty of loyalty of which entire fairness is the standard.  The Court's minor imprecision, rather than being any of the three errors that the Defendants propose, allowed a thorough analysis to be misconstrued on account of imprecise words, violating the principle that the "chief end of language in communication being to be understood, words serve not well that end . . . when any word does not excite in the hearer,

---

[73]The Court is not inviting a second motion to reconsider after trial.  If, however, the jury determines that the stock is worth only $100,000.00, the Defendants' arguments are going to look different when the Court has to consider the Plaintiffs' application for attorney fees even if the law should not change.

the same idea which it stands for in the mind of the speaker." John Locke, An Essay on Human Understanding, ch IX, § 3.II, at 425 (Roger Woolhouse, ed.)(1988)(1690). Because the semantic solecism does not infect or detract from the underlying analysis and does not create any substantive error, the Court denies the Defendants' Motion for Reconsideration.[74]

**IT IS ORDERED** that the Defendants' Motion for Reconsideration of Order Granting Plaintiffs' Motion for Partial Summary Judgment on Breach of Fiduciary Duty (Doc. 272) and Memorandum Opinion and Order (Doc. 274), filed May 9, 2017 (Doc. 280), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jamison A. Diehl
Akin Gump Strauss Hauer & Feld LLP (NY)
New York, New York

-- and --

R. Stratton Taylor
Mark H. Ramsey
Clinton Derek Russell
Taylor Burrage Foster Mallett Downs Ramsey & Russell
Claremore, Oklahoma

-- and --

---

[74]The Defendants note that the Court must complete a director-by-director analysis to determine at the individual level whether each defendant breached a fiduciary duty to the minority shareholders. See June Tr. at 167:7-11(DeMuro). The Court recognizes this standard, but it also highlights that the parties have not distinguished among the individual directors in this case's filings with regard to their fiduciary duties. The Court will not manufacture distinctions that the parties have not made to conform to what in this case would amount to a technicality. As the Court informed the parties at the June, 2017, motion hearing, the Court therefore by necessity does not conduct a director-by-director analysis.

Stuart Kagen
Daniel A. Cohen
Joshua C. Gillette
Kyla Janine Grant
Kagen & Caspersen
New York, New York

    *Attorneys for the Plaintiffs*

Toney Daniel Foster
Taylor Burrage Foster Mallett Downs Ramsey & Russell
Claremore, Oklahoma

    *Attorneys for Plaintiff Stuart 2005 GST Family Trust*

Frederic Dorwart
Paul DeMuro
Sarah Wishard Poston
Nora Rose O'Neill
Fredric Dorwart Lawyers
Tulsa, Oklahoma

    *Attorneys for the Defendants*