IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

SFF-TIR, LLC; STUART FAMILY
FOUNDATION, INC.; ALAN STUART
2012 GST FAMILY TRUST; STUART
2005 GST FAMILY TRUST;
CELEBRATION, LLC; ANURAG
AGARWAL; PETER BUCKLEY; VINCENT
SIGNORELLO and RODNEY M. REYNOLDS,

    Plaintiffs,

vs.                                                                                                   No. CIV 14-0369 JB/FHM

CHARLES C. STEPHENSON, JR.;
CYNTHIA A. FIELD; PETER BOYLAN, III;
LAWERENCE FIELD;
CYPRESS ENERGY PARTNERS-TIR, LLC;
CEP CAPITAL PARTNERS, LLC;
CYPRESS ENERGY HOLDINGS, LLC and
TULSA INSPECTION RESOURCES, LLC,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Proposed Final Jury Instructions, filed July 27, 2017 (Doc. 319-1)("Plaintiffs' Jury Instructions"). The Plaintiffs' proposed Instruction No. 18 reads:

    Another method of valuation about which you heard testimony is the Leveraged Buyout Method, which is also referred to as an "LBO model." Mr. Wilcox used an LBO model.

    An LBO model is not a methodology for determining the value of a company. Instead, an LBO model determines the range of prices that a potential buyer can pay and still achieve a particular rate of return on its investment.

    What a potential buyer using an LBO model would be willing to pay diverges from "fair value" because (i) the buyer needs to achieve a specified rate of return, and (ii) because of limits on the amount of debt that the company can support and that the potential buyer can use to finance the deal.

> As a result, use of an LBO model will undervalue the company as a going concern. The fact that the amount that a shareholder received may have been close to the highest price that a bidder using an LBO model would be willing to pay does not establish that the shareholder received "fair value." Because it is not possible to quantify the exact degree of mispricing that results from use of an LBO model, no weight should be given to a price determined using such a model.

Plaintiffs' Jury Instructions at 32-33 (footnotes omitted).

In support of the final sentence of their proposed Instruction No. 18, the Plaintiffs cite In re Appraisal of Dell, Inc., 2016 WL 3186538, at *51 (Del. Ch. 2016). See Plaintiffs' Jury Instructions at 33. The holding of In re Appraisal of Dell, Inc., however, is more fact bound and case specific than the Plaintiffs' sweeping instruction: "Because it is impossible to quantify the exact degree of the sale process mispricing, this decision does not give weight to the Final Merger Consideration." In re Appraisal of Dell, Inc., 2016 WL 3186538, at *51. That the sale process in In re Appraisal of Dell, Inc. used LBO models was only one of several factors that rendered the merger consideration an unreliable guide vis-à-vis fair value. See 2016 WL 3186538, at *29-37, *40-44. What is more, while the outcome of the sale process was not "the most reliable evidence" regarding fair value, it was "sufficient to exclude the possibility, advocated by the petitioners' expert, that the Merger undervalued the Company by $23 billion." 2016 WL 3186538, at *44.

The Plaintiffs' proposed Instruction No. 18 suffers from another, more fundamental flaw in that the Supreme Court of Delaware has, in a recent case, disapproved of In re Appraisal of Dell Inc.'s reasoning. In re Appraisal of Dell, Inc. indicates that an LBO model was unreliable vis-à-vis fair price, because

> a financial sponsor determines whether and how much to bid by using an LBO model, which solves for the range of prices that a financial sponsor can pay while

still achieving particular IRRs.[1] What the sponsor is willing to pay diverges from fair value because of (i) the financial sponsor's need to achieve IRRs of 20% or more to satisfy its own investors and (ii) limits on the amount of leverage that the company can support and the sponsor can use to finance the deal.

2016 WL 3186538, at *29 (footnotes omitted). In DFC Global Corp. v. Muirfield Value Partners, LP, ___ A.3d ____, 2017 WL 3261190 (Del. August 1, 2017), the Supreme Court of Delaware assessed a similar line of reasoning:

> The Court of Chancery also found that it would not give dispositive weight to the deal price because the prevailing buyer was a financial buyer that "focused its attention on achieving a certain internal rate of return and on reaching a deal within its financing constraints, rather than on [the company's] fair value."

2017 WL 3261190, at *2 (quoting In re Appraisal of DFC Glob. Corp., 2016 WL 3753123, at *22 (Del. Ch. July 8, 2016))(alteration in the original).

The Supreme Court of Delaware's response: "To be candid, we do not understand the logic of this finding." DFC Glob. Corp. v. Muirfield Value Partners, LP, 2017 WL 3261190, at *2. The Supreme Court of Delaware elaborated:

> Any rational purchaser of a business should have a targeted rate of return that justifies the substantial risks and costs of buying a business. That is true for both strategic and financial buyers. It is, of course, natural for all buyers to consider how likely a company's cash flows are to deliver sufficient value to pay back the company's creditors and provide a return on equity that justifies the high costs and risks of an acquisition. But, the fact that a financial buyer may demand a certain rate of return on its investment in exchange for undertaking the risk of an acquisition does not mean that the price it is willing to pay is not a meaningful indication of fair value. . . . The "private equity carve out" that the Court of Chancery seemed to recognize, in which the deal price resulting in a transaction won by a private equity buyer is not a reliable indication of fair value, is not one grounded in economic literature or this record. For these reasons, we remand to the Court of Chancery to reconsider the weight it gave to the deal price in its valuation analysis.

---

[1]Calculating an investment's Internal Rate of Return ("IRR") translates the investment's anticipated returns, in future dollars, into an annual interest rate based on the initial cost of the investment. See Amy Gallo, *A Refresher on Internal Rate of Return*, HARVARD BUSINESS REVIEW (Mar. 17, 2016), https://hbr.org/2016/03/a-refresher-on-internal-rate-of-return.

- 3 -

DFC Glob. Corp. v. Muirfield Value Partners, LP, 2017 WL 3261190, at *2.  The Plaintiffs' proposed Instruction No. 18 -- particularly its statement that an LBO model diverges from fair value because: "(i) the [hypothetical LBO] buyer needs to achieve a specified rate of return, and (ii) because of limits on the amount of debt that the company can support and that the potential buyer can use to finance the deal," Plaintiffs' Jury Instructions at 33 -- is contrary to Delaware law even if it accurately reflects the holding of In re Appraisal of Dell, Inc.

In light of the Supreme Court of Delaware opinion, the Court will strike all but the first two paragraphs of the Plaintiffs' proposed Instruction No. 18.  While the Plaintiffs can argue that an LBO model undervalued Tulsa Inspection Resources, Inc., Delaware law does not support a sweeping statement regarding the relationship between an LBO model and fair value generally.

**IT IS ORDERED** that the Court will not give the last two paragraphs of the Plaintiffs' proposed Instruction No. 18 in the Plaintiffs' Proposed Jury Instructions, filed July 27, 2017 (Doc. 319-1).

                                                                        
_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jamison A. Diehl
Akin Gump Strauss Hauer & Feld LLP
New York, New York

-- and --

R. Stratton Taylor
Toney Daniel Foster
Mark H. Ramsey
Clinton Derek Russell
Taylor Burrage Foster Mallett Downs Ramsey & Russell
Claremore, Oklahoma

-- and --

Stuart Kagen
Daniel A. Cohen
Joshua C. Gillette
Kyla Janine Grant
Kagen & Caspersen
New York, New York

    *Attorneys for the Plaintiffs*

Frederic Dorwart
Paul DeMuro
Sarah Wishard Poston
Nora Rose O'Neill
Fredric Dorwart Lawyers
Tulsa, Oklahoma

    *Attorneys for the Defendants*