# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF OKLAHOMA

SFF-TIR, LLC; STUART FAMILY
FOUNDATION, INC.; ALAN STUART 2012
GST FAMILY TRUST; STUART 2005 GST
FAMILY TRUST; CELEBRATION, LLC;
ANURAG AGARWAL; PETER BUCKLEY;
VINCENT SIGNORELLO and RODNEY M.
REYNOLDS,

       Plaintiffs,

vs.                               No. CIV 14-0369 JB\FHM

CHARLES C. STEPHENSON, JR.; CYNTHIA
A. FIELD; PETER BOYLAN, III;
LAWERENCE FIELD; CYPRESS ENERGY
PARTNERS-TIR, LLC; CEP CAPITAL
PARTNERS, LLC; CYPRESS ENERGY
HOLDINGS, LLC; and TULSA INSPECTION
RESOURCES, LLC,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendants' Motion for Judgment and Statement in Support Thereof, filed September 27, 2017 (Doc. 457)("Motion for Judgment"); (ii) the Defendants' Motion for Reasonable Attorney Fees and Litigation Costs and Brief in Support, filed October 3, 2017 (Doc. 458)("Defendants' Original Motion"); (iii) the Defendants' Corrected Motion for Reasonable Attorney Fees and Litigation Costs and Brief in Support, filed October 3, 2017 (Doc. 459)("Defendants' Motion"); (iv) the Plaintiffs' Motion for Attorney's Fees, and Brief in Support, filed October 18, 2017 (Doc. 462)("Plaintiffs' Motion"); (v) the Defendants' Choice of Law Opening Brief Pursuant to Court's Request [Doc. 467], filed November 20, 2017 (Doc. 473)("Defendants' Brief"); (vi) the Plaintiffs' Brief Regarding Choice of Law Applicable to the Parties' Motions for Attorney's Fees, filed November 20, 2017

(Doc. 474)("Plaintiffs' Brief"); and (vii) the Defendants' Supplemental Brief in Support of their Corrected Motion for Reasonable Attorney Fees and Litigation Costs (Doc. 459), filed August 27, 2018 (Doc. 485)("Defendants' Supplemental Brief"). The Court held a hearing on August 15, 2018. See Minute Sheet at 1, filed August 15, 2018 (Doc. 484). The primary issues are: (i) whether Defendants Charles C. Stephenson, Jr., Cynthia A. Field, Peter Boylan, III, Lawrence Field, Cypress Energy Partners-TIR, LLC, CEP Capital Partners, LLC, Cypress Energy Holdings, LLC, and Tulsa Inspection Resources, LLC (collectively, "the Defendants") are able to recover their reasonable attorney's fees and litigation costs from the Plaintiffs SFF-TIR, LLC, Stuart Family Foundation, Inc., Alan Stuart 2012 GST Family Trust, Stuart 2005 GST Family Trust, Celebration, LLC, Anurag Agarwal, and Rodney M. Reynolds (collectively, "the Plaintiffs") under Oklahoma's offer-of-judgment statute, 12 Okla. Stat. Ann. § 1101.1, after a federal court jury ruled in the Defendants' favor on the fair price that they paid the Plaintiffs for their TIR, Inc. shares in the cash-out merger; (ii) whether the Plaintiffs are able to recover their reasonable attorney's fees and costs from the Defendants under Delaware law or Oklahoma law, because the Defendants did not use a fair process to determine the price that they paid the Plaintiffs for their TIR, Inc. shares; (iii) how much either the Plaintiffs or the Defendants are entitled to recover as attorney's fees and costs; and (iv) whether the Court should enter judgment that the Merger was entirely fair, because the jury found that the TIR, Inc. shares' fair price is $451,000.00. The Court concludes that: (i) the Defendants are entitled to attorney's fees under Oklahoma's offer-of-judgment statute, because Oklahoma law applies and the judgment awarded the Plaintiff is less than the Defendants' offers of judgment; (ii) the Plaintiffs are not entitled to attorney's fees under either Delaware law or Oklahoma law, because the Defendants'

pre-litigation conduct does not justify awarding and equitable remedy; (iii) the Defendants are entitled to $1,895,800.27 in attorney's fees, $147,748.33 in costs, for a total of $2,043,548.60 in attorney's fees and costs; and (iv) the Court will now enter judgment that the Plaintiffs are entitled to take nothing and that the Defendants are entitled to attorney's fees and costs, but the Court will not indicate that the Merger was entirely fair.

## **FACTUAL BACKGROUND**

The Court adopts the factual background it previously stated in its Memorandum Opinion and Order, 250 F. Supp. 3d 856, 869-89, filed April 25, 2017 (Doc. 274)("April 25 MOO"), and its Memorandum Opinion and Order, 264 F. Supp. 3d 1148, 1152-71, filed August 29, 2017 (Doc. 375)("Reconsideration MOO"). Defendant "Charles Stephenson is the owner of Regent Private Capital." Defendants' Motion for Summary Judgment on Acquiescence Defense and Brief in Support ¶ 1, at 7, filed April 3, 2015 (Doc. 83)("Defendants' Acquiescence MSJ")(stating this fact).[1] See Plaintiffs' Memorandum of Law in Opposition to Defendants'

---

[1]During the December 27 and 28, 2016, hearing in this case, both parties agreed that there is significant overlap between the factual sections in the Defendants' Acquiescence MSJ and the Defendants' Second Motion for Summary Judgment and Brief in Support, filed September 14, 2015 (Doc. 154)("Defendants' Estoppel MSJ"). See Transcript of Motion Hearing Before the Honorable James O. Browning, United States District Judge (taken December 28, 2016), filed January 23, 2017 (Doc. 250)("December Tr."), at 370:7-374:14 (DeMuro, Kagen, Court). The Defendants indicated at the hearing that they do not object, in the light of this fact, to the Court writing the factual sections for the Defendants' two motions for summary judgment together. See December Tr. at 374:9-14 (DeMuro). The parties also agreed that they approved of the Court's proposal to fold the facts from Plaintiffs' MSJ into a single factual section along with the facts from the Defendants' Acquiescence MSJ and the Defendants' Estoppel MSJ. The Court, therefore: (i) refers to facts common to both the Defendants' Acquiescence MSJ and the Defendants' Estoppel MSJ collectively by referring to the paragraph in the Defendants' Acquiescence MSJ; and (ii) places all facts from across the three summary judgment motions into a preliminary biographical section followed by facts reported in as near to chronological order as overlapping time periods permit.

Motion for Summary Judgment on Acquiescence Defense ¶ 1, at 8, filed April 20, 2015 (Doc. 84)("Response to Defendants' Acquiescence MSJ")(not disputing this fact). "Defendant Cynthia Field is the daughter of Defendant Charles Stephenson." Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment on Breach of Fiduciary Claims ¶ 1, at 3, filed September 14, 2015 (Doc. 157)("Plaintiffs' MSJ")(stating this fact). <u>See</u> Defendants' Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Breach of Fiduciary Duty Claims (Doc. 157), at 2, filed October 5, 2015 (Doc. 170)("Response to Plaintiffs' MSJ")(not disputing this fact). "Defendant Lawrence Field is the husband of Defendant Cynthia Field and the son-in-law of Defendant Charles Stephenson." Plaintiffs' MSJ ¶ 2, at 3 (stating this fact). <u>See</u> Response to Plaintiff's MSJ at 2 (not disputing this fact). "Defendant CEP-TIR, LLC['s] . . . principals are Defendants Stephenson, Cynthia Field and Peter Boylan, [sic] III." Plaintiffs' MSJ ¶ 3, at 3 (stating this fact).[2] "In 2009, Regent and Mr. Stephenson individually became together TIR Inc.'s largest shareholder owning approximately 40% of the TIR Inc. shares." Defendants' Acquiescence MSJ ¶ 1, at 7 (stating

---

[2]In the Plaintiffs' MSJ, the Plaintiffs word the fact as follows: "Defendant CEP-TIR, LLC is a Delaware corporation whose principals are Defendants Stephenson, Cynthia Field and Peter Boylan, III." Plaintiffs' MSJ ¶ 3, at 3. The Defendants dispute that CEP-TIR, LLC is a corporation, maintaining that it "is a limited liability company, not a corporation." Response to Plaintiffs' MSJ at 2. The Defendants do not dispute that Stephenson, Field, or Boylan is a principal of CEP-TIR. <u>See</u> Response to Plaintiffs' MSJ at 2. Because the Defendants do not dispute this latter assertion, the Court deems it to be undisputed and amends the fact's text to reflect that the fact's elements that are undisputed.

this fact).[3]  "At the same time a number of the Plaintiffs associated with Alan Stuart acquired a minority interest in TIR Inc." Defendants' Acquiescence MSJ ¶ 3, at 7 (stating this fact).[4]  "Alan Stuart is a 'seasoned, successful, long-term investor with more than 40 years' experience in business development, investment management, and corporate governance.'" Defendants' Acquiescence MSJ ¶ 4, at 7 (stating this fact).[5]  "The Defendant Lawrence Field, the son-in-law

---

[3]In Response to Defendants' Acquiescence MSJ ¶ 2, at 8, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger."  Response to Defendants' Acquiescence MSJ ¶ 2, at 8.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  The Court has previously noted that arguing a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8 (D.N.M. March 31, 2011)(Browning, J.).  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[4]In Response to Defendants' Acquiescence MSJ ¶ 2, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger."  Response to Defendants' Acquiescence MSJ ¶ 2, at 8.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  Arguing a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[5]In Response to Defendants' Acquiescence MSJ ¶ 2, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger."  Response to Defendants' Acquiescence MSJ ¶ 2, at 8.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  Arguing a proposed fact at the summary-judgment stage is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact:

of Mr. Stephenson and an officer of Regent, became the chairman, and Alan Stuart became a member of the board of directors of TIR Inc." Defendants' Acquiescence MSJ ¶ 5, at 7 (stating this fact). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "In February 2013, Alan Stuart prepared a proposal for Mr. Field, which he named 'Project Poirot' to acquire control of TIR, Inc. at $369,507 per share which he later increased to $385,175." Defendants' Acquiescence MSJ ¶ 6, at 7 (stating this fact).[6] "On February 11, 2013, Stuart purchased individual shareholder J.W. Lorett's TIR Inc. shares for $275,000 per share." Defendants' Acquiescence MSJ ¶ 7, at 7 (stating this fact).[7] "On March 21, 2013, Stuart

---

"Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[6]In Response to Defendants' Acquiescence MSJ ¶ 6, at 7, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing a proposed fact at the summary-judgment stage is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[7]In Response to Defendants' Acquiescence MSJ ¶ 7, at 9, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs'

presented an offer to the TIR board for TIR Inc. shares of $380,382 per share." Defendants'

Acquiescence MSJ ¶ 8, at 7 (stating this fact).[8] "On May 16, 2013, Alan Stuart revised his offer

to the board, increasing the repurchase price to $413,143 per share." Defendants' Acquiescence

MSJ ¶ 9, at 8 (stating this fact).[9] "The Defendants Stephenson, Boylan, and Field were

principals in Cypress Energy Partners-TIR, LLC" ("Cypress Energy Partners"). Defendants'

Acquiescence MSJ ¶ 10, at 8 (stating this fact)(brackets added). See Response to Defendants'

Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "In 2013, two TIR Inc. directors (Alan

Stuart on the one hand and Lawrence Field on the other hand) [sought] to acquire control of TIR

---

assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

    [8]In Response to Defendants' Acquiescence MSJ ¶ 8, at 7, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

    [9]In Response to Defendants' Acquiescence MSJ ¶ 9, at 8, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

Inc."  Defendants' Acquiescence MSJ ¶ 11, at 8 (stating this fact)(relying on Videotape

Deposition of Rodney Reynolds Taken on Behalf of the Defendants (taken November 17, 2014),

filed April 3, 2015 (Doc. 83-11)("Reynolds Depo.")).[10]  "In June 2013, the Defendants

[completed] the bidding process to acquire control of TIR Inc."  Defendants' Acquiescence MSJ

¶ 13, at 8 (stating this fact)(relying on Affidavit of Randall Lorett, filed April 3, 2015 (Doc. 83-

2)("Lorett Aff.")).[11]

"On June 26, 2013, Defendant CEP-TIR, LLC acquired 26.45 shares of TIR from certain

other shareholders, known as the Pooled Shareholders, in voluntary sales transactions."

Plaintiffs' MSJ ¶ 4, at 3 (emphasis omitted)(stating this fact).  See Response to Plaintiffs' MSJ at

2 (not disputing this fact).  "Defendants subsequently referred to this share acquisition as the

---

[10]The Defendants state in the Defendants' Acquiescence MSJ that, in 2013, "two TIR Inc directors (Alan Stuart on the one hand and Lawrence Field on the other hand) engaged in a competition to acquire control of TIR Inc."  Defendants' Acquiescence MSJ ¶ 11, at 8.  The Plaintiffs purport to dispute this fact, relying on a June 14, 2013, email from the Special Committee attaching a proposed Standstill and Indemnity Agreement that depicts a series of direct, independent offers to shareholders rather than a competition between Stuart and Field to acquire control of TIR, Inc.  See Response to Defendants' Acquiescence MSJ ¶ 3, at 8.  The Court concludes that, whether the bids were competitive or independent, they indicate that Stuart and Field both sought to acquire control of TIR, Inc.  The Court therefore amends the fact as the Defendants state it in the Defendants' Acquiescence MSJ to reflect the elements of the fact that the parties do not dispute.

[11]The Defendants state in the Defendants' Acquiescence MSJ that, in "June 2013, the Defendants won the bidding process to acquire control of TIR Inc."  Defendants' Acquiescence MSJ ¶ 13, at 8.  The Plaintiffs purport to dispute this fact, relying on a June 14, 2013, email from the Special Committee attaching a proposed Standstill and Indemnity Agreement that depicts a series of direct, independent offers to shareholders rather than a competition between Stuart and Field to acquire control of TIR, Inc.  See Response to Defendants' Acquiescence MSJ ¶ 3, at 8-9. The Court does not see in the fact as written any indication that the Defendants here assert any competitive bidding between the two camps, aside perhaps from the Plaintiffs' use of the verb "won."  To reflect the factual elements that are undisputed, the Court therefore amends the fact as the Defendants state it in the Defendants' Acquiescence MSJ.

'Control Acquisition.'" Plaintiffs' MSJ ¶ 5, at 3 (stating this fact). See Response to Plaintiff's MSJ at 2 (not disputing this fact). "Between June 2013 and October 2013, CEP-TIR LLC also [acquired] certain other outstanding shares of TIR." Plaintiffs' MSJ ¶ 6, at 3 (stating this fact).[12] "As a result of these transactions, Defendants CEP-TIR, LLC, Stephenson, and Cynthia Field . . . became, collectively, the majority shareholders of TIR, owning at least 69.4% of the outstanding shares." Plaintiffs' MSJ ¶ 7, at 3 (stating this fact). See Response to Plaintiffs' MSJ at 2 (not disputing this fact). CEP-TIR, LLC, Stephenson, and Field "thereby collectively gained control of TIR." Plaintiffs' MSJ ¶ 8, at 4 (stating this fact). See Response to Plaintiffs' MSJ at 2 (not disputing this fact).

"From June 2013 through December 23, 2013, the Plaintiff SFF-TIR, LLC was represented by legal counsel." Defendants' Acquiescence MSJ ¶ 14, at 8 (stating this fact).[13]

_____

[12]In the Plaintiffs' MSJ, the Plaintiffs word the fact as follows: "Between June 2013 and October 2013, CEP-TIR LLC also certain other outstanding shares of TIR." Plaintiffs' MSJ ¶ 6, at 3. The fact is written as a sentence fragment without any verb. The Defendants purport to dispute the fact solely on the basis of "avoidance of doubt" and add the word "acquired" to the fact. Response to the Plaintiffs' MSJ at 2. Because of (i) the obvious scrivener's error; and (ii) the Plaintiffs' repeated assertions elsewhere that CEP-TIR LLC acquired the outstanding TIR shares, the Court deems the fact -- with the Defendants' interpolation of the verb "acquired" -- to be undisputed.

[13]In the Response to Defendants' Acquiescence MSJ ¶ 14, at 8 the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a

"From June 2013 through December 23, 2013, the Plaintiffs Stuart Family Foundation, Inc.;

Alan Stuart 2012 GST Family Trust; Stuart 2005 GST Family Trust; and Celebration, LLC were

represented by legal counsel."  Defendants' Acquiescence MSJ ¶ 15, at 8 (stating this fact).[14]

"Each of the individual Plaintiffs executed and delivered a proxy to SFF-TIR, LLC to act on his

or her behalf with respect to his or its TIR Inc. shares which proxies were in effect on

November 2, 2013."  Defendants' Acquiescence MSJ ¶ 16, at 8 (stating this fact).[15]  "[T]he

Plaintiffs, led by Alan Stuart, attempted to negotiate a sale of their minority block of shares to

Cypress for a substantially higher share price."  Defendants' Acquiescence MSJ ¶ 19, at 9

_____

legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[14]In Response to Defendants' Acquiescence MSJ ¶ 15, at 8, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger."  Response to Defendants' Acquiescence MSJ ¶ 2, at 8.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[15]In Response to Defendants' Acquiescence MSJ ¶ 16, at 8, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger."  Response to Defendants' Acquiescence MSJ ¶ 2, at 8.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

(stating this fact).[16]

"Following the June 26, 2013 Control Acquisition, and after certain resignations, TIR's Board of Directors had three members as of October 31, 2013: Defendant Lawrence Field, Defendant Peter Boylan, and Randall Lorett, the President and CEO of TIR."  Plaintiffs' MSJ ¶ 10, at 4 (stating this fact).[17]  "On September 20, 2013, Cypress Energy Partners Limited Partnership filed a Registration Statement (including the prospectus) for the public offering of partnership units of TIR shares, pursuant to the confidentiality provisions of the Jumpstart Our

---

[16]The Plaintiffs purport to dispute this fact "to the extent that it suggests that there was a winner-take-all competition in 2013 to acquire control of TIR."  Response to Defendants' Acquiescence MSJ ¶ 6, at 9.  The Plaintiffs then continue: "Plaintiffs otherwise admit that Plaintiffs attempted to negotiate a substantially higher sale price for their shares, except that Plaintiffs object to this fact as immaterial and irrelevant."  Response to Defendants' Acquiescence MSJ ¶ 6, at 9.  The Court sees no evidence in the fact, as the Defendants state it, that the Defendants suggest the existence of a winner-take-all competition in 2013.  Furthermore, contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[17]The Defendants purport to dispute this fact "[f]or avoidance of doubt," indicating that TIR, Inc.'s board of directors "had three members -- Mr. Field, Mr. Boylan, and Mr. Lorett -- and two vacant positions as of October 31, 2013."  Response to Plaintiffs' MSJ at 3 (relying on Letter from Cypress Energy Partners to Shareholders of Tulsa Inspection Resources, Inc. at 3 (dated October 31, 2013), filed September 15, 2015 (Doc. 158-3)).  The Court notes that this observation is a difference without a distinction.  Analogously, if one says that a person is holding up three fingers on one hand, that statement is the equivalent of saying that one is holding up three fingers on one hand and that the other two fingers on the hand are not being held up.  Furthermore, the Defendants do not dispute that L. Field., Boylan, and R. Lorett were the only three sitting TIR, Inc. board members as of October 31, 2013; the Court deems this fact to be undisputed.

Business Startups Act." Defendants' Acquiescence MSJ ¶ 20, at 9 (stating this fact). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "As of November 2, 2013, all plaintiffs had granted proxies to Plaintiff SFF-TIR to vote their TIR Inc. shares and agreed among themselves not to sell their TIR Inc. shares for less than $654,632." Defendants' Acquiescence MSJ ¶ 21, at 9 (stating this fact).[18] "On October 31, 2013, Cypress and TIR Inc. made a Tender Offer [Letter from Cypress Energy Partners to Shareholders of Tulsa Inspection Resources, Inc. (dated October 31, 2013), filed September 15, 2015 (Doc. 158-3)(Tender Offer)] to TIR Inc.'s remaining shareholders, including the Plaintiffs, for $451,000." Defendants' Acquiescence MSJ ¶ 22, at 9 (stating this fact). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact).

> The Tender Offer disclosed (i) that the Registration Statement had been filed, (ii) that Cypress Energy intended to enter into an underwriting agreement for the public offering of master limited partnership units and that the equity of TIR Inc. might be dropped into the new publicly traded entity, and (iii) the purchase of shares (and share prices) by which the Defendants acquired TIR Inc. shares.

Defendants' Acquiescence MSJ ¶ 23, at 9 (stating this fact)(relying on Videotaped Deposition of Anurag Agarwal (taken September 29, 2014), filed April 3, 2015(Doc. 83-20)("Agarwal Depo.

---

[18]In Response to Defendants' Acquiescence MSJ ¶ 23, at 9, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

Ex. 1").[19]   In a section called "Certain Conflicts of Interest," the Tender Offer states:

>"As a result of the June Acquisition, Mr. Boylan, and Mr. Field (who is affiliated with Mr. Stephenson and Ms. Field) may each be deemed to have a conflict of interest related to this Offer." *Id.* [Tender Offer] at 2.

>"As a result of the foregoing potential conflicts of interest, the TIR Board has not

---

[19]The Plaintiffs purport to dispute this fact.  According to the Plaintiffs, the Tender Offer contains material misstatements and omissions:

>First, the Tender Offer failed to disclose (i) the value Defendants would receive for their interests in TIR as a result of the MLP IPO; (ii) the fact that Defendants had projected internally, and to third parties (including underwriters for the MLP IPO), that TIR would reach $21 million adjusted EBITDA by the end of 2013; (iii) and TIR's substantial growth in revenues, headcount and EBITDA month-over-month. . . . While the Tender Offer included financials for September 2012 and September 2013, it did not include any financials showing the unprecedented growth the Company was experiencing on a monthly basis.  The Tender Offer also included affirmative misstatements: (i) it claimed certain issues with accounts receivable for TIR Canada were "material," even as just days earlier internal documents show Defendants had concluded the impaired accounts receivable amounted to less than the $300,000 reserve Defendants had set aside to address the issue (which can hardly be described as "material" in light of TIR's projected $21M adjusted EBITDA for 2013); and (ii) to support the offer price of $451,000 per share, it claimed Defendants had purchased TIR shares from 13 unnamed shareholders at a price of $451,000 or lower in October 2013.  Not only did this conflict with Defendants' earlier promise on June 26, 2013 that it would buy out all TIR shareholders at the same price, but also with numerous internal statements by Defendants that they in fact had purchased from only 4 TIR shareholders at a price of $451,000 or less in October 2013.

Response to Defendants' Acquiescence MSJ ¶ 7, at 9 (internal citation omitted).  The Court notes, however, that the fact as the Defendants word it in the Defendants' Acquiescence MSJ asserts certain items that were disclosed; it does not touch on items that the Plaintiffs may have <u>failed</u> to disclose.   <u>See</u> Defendants' Acquiescence MSJ ¶ 22, at 9.   Moreover, alleged misstatements in the disclosure about other issues do not fall within this asserted fact's scope.  Because the Plaintiffs do not dispute the assertion that the tender offer disclosed that (i) the Registration Statement had been filed; (ii) that Cypress Energy intended to enter into an underwriting agreement for the public offering of Master Limited Partnership units and that the equity of TIR Inc. might be dropped into the new publicly traded entity; and (iii) the purchase of shares (and share prices) by which the Defendants acquired TIR Inc. shares, the Court deems this fact to be undisputed.

been asked to and is not making any recommendation to you regarding this Offer." *Id.* [Tender Offer at 2]

"None of the Purchasers, nor any of their respective affiliates has performed or commissioned any appraisal, or engaged any independent financial advisor or other third party to perform any valuation analysis or provide any opinion respecting the value of the Shares in connection with this Offer." *Id.* [Tender Offer at 2]

Plaintiffs' MSJ ¶ 12, at 4 (stating this fact)(internal citation omitted). <u>See</u> Response to Plaintiffs' MSJ at 2 (not disputing this fact). The merger between TIR, Inc. and TIR, LLC ("the Merger") "enabled the Controlling Shareholder Defendants to exchange their own TIR shares for equity in the new entity, Defendant TIR LLC, in proportion to their prior shareholders in TIR." Plaintiffs' MSJ ¶ 15, at 4 (stating this fact). <u>See</u> Response to Plaintiffs' MSJ at 2 (not disputing this fact). "The Merger was approved and carried out by the following Defendants: [(i)] The Controlling Shareholder Defendants, *i.e.*, Defendants CEP-TIR, LLC, Stephenson, and Cynthia Field; and [(ii)] TIR Directors Lawrence Field and Peter Boylan III . . . ." Plaintiffs' MSJ ¶ 16, at 4-5 (bullets and internal citations omitted)(stating this fact). <u>See</u> Response to Plaintiffs' MSJ at 2 (not disputing this fact). "TIR's Rule 30(b)(6) witness, Dan O'Keefe, admitted that because the Board composition had not changed, the same conflicts of interest that existed at the time of the Tender Offer also existed at the time of the Merger." Plaintiffs' MSJ ¶ 18, at 5 (stating this fact). <u>See</u> Response to Plaintiffs' MSJ at 2 (not disputing this fact).

"On November 13, 2013, Cypress Energy's SEC Registration Statement containing the prospectus for the sale of partnership units in the master limited partnership became public." Defendants' Acquiescence MSJ ¶ 24, at 9 (stating this fact). <u>See</u> Response to Defendants' Acquiescence MSJ ¶ 1, 8 (not disputing this fact). "Shortly after November 13, 2013, the

Plaintiffs analyzed or had analyzed by one or more of their representatives the Registration

Statement." Defendants' Acquiescence MSJ ¶ 25, at 9 (stating this fact).[20] "By November 26,

2013, the Plaintiffs had received and either personally reviewed the October 31 Tender Offer or

had had the October 31 Tender Offer reviewed by legal counsel or SFF-TIR, LLC on their

behalf." Defendants' Acquiescence MSJ ¶ 26, at 9 (stating this fact).[21] "The Plaintiffs did not

accept the October 31 Tender Offer." Defendants' Acquiescence MSJ ¶ 27, at 9 (stating this

fact). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "The

Plaintiffs could not have tendered their shares in response to the Tender Offer no matter what the

Offer said or did not say; the Plaintiffs had contractually agreed prior to the Tender Offer not to

---

[20]In Response to Defendants' Acquiescence MSJ ¶ 25, at 9, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[21]In Response to Defendants' Acquiescence MSJ ¶ 26, at 9, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

sell their TIR Inc. shares for less than $654,632." Defendants' Acquiescence MSJ ¶ 28, at 9 (stating this fact).[22] "By November 26, 2013, the Plaintiffs had received and either (i) personally reviewed or (ii) had had reviewed by legal counsel or SFF-TIR, LLC on their behalf the Cypress Energy Partners Limited Partnership registration Statement." Defendants' Acquiescence MSJ ¶ 29, at 10 (stating this fact).[23]

> The SEC Registration Statement included the following information respecting Cypress Energy Partners Limited Partnership and the Initial Public Offering: (a) Prospectus; (b) List of risks to its business; (c) Capitalization; (d) Cash distribution policy, projections and partnership agreement provisions relating to cash distributions; (e) Historical and projected financial data: (f) Management discussion and analysis of financial condition; (g) detailed descriptions of the industries in which Cypress Energy Partners was engaged, Cypress' business and Cypress' management; (h) Cypress Energy Partners' partnership agreement;

---

[22]In Response to Defendants' Acquiescence MSJ ¶ 28, at 9, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[23]In Response to Defendants' Acquiescence MSJ ¶ 29, at 10, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

(i) Underwriting information; (j) complete audited financial statements (as of September 30, 2013).

Defendants' Acquiescence MSJ ¶ 30, at 10 (stating this fact)(relying on Austin Aff.).[24] "As of November 2013, TIR had (a) revenues of $346.6 million, which was and [sic] 28 percent higher than TIR's budgeted figure; (b) pretax profits of $1.6 million; and (c) $9 million year to date, which were all were [sic] the 'highest numbers [TIR] had had historically'" as of that time. Plaintiffs MSJ ¶ 26, at 6 (last set of bracketed material in the original)(stating this fact)(citing O'Keefe Depo. at 297:16-299:13). See Response to Plaintiffs' MSJ at 2 (not disputing this fact). "TIR did not do a valuation [to inform] its merger consideration offer." Plaintiffs' MSJ ¶ 27, at 6 (internal quotation marks omitted)(stating this fact).[25] "Defendants did not disclose to Plaintiffs

_____

[24]The Plaintiffs purport to dispute this fact. According to the Plaintiffs, the

S-1 Registration Statement (the "S-1") did not disclose material information in Defendants' possession, including the pricing information for the IPO [Initial Public Offering] and how many limited liability company units in the Merger Sub Defendants would receive in exchange for their TIR shares, or the value of such equity merger consideration. Moreover, the projected financial data contained in the S-1 was incomplete as it did not include yearend 2013 EBITDA [Earnings Before Interest, Tax, Depreciation, and Amortization] projections for TIR, or the fact that Defendants had projected internally that year-end 2013 revenues would exceed $360 million (and by year-end, they in fact reached nearly $380 million).

Response to Defendants' Acquiescence MSJ ¶ 8, at 10. The Court notes that the fact, as the Defendants word it, indicates what information the Registration Statement included and not what it excluded. See Defendants' Acquiescence MSJ ¶ 30, at 10. One might argue that the canon of construction expressio unius est exclusio alterius suggests that the Defendants' choice to list ten items that they assert the Registration Statement contains means that other items were not included. Whether accurate or inaccurate, such an interpretation is irrelevant; the Plaintiffs do not dispute the inclusion of the ten items that the Defendants assert are in the Registration Statement. Because the Plaintiffs do not dispute this fact, the Court deems it to be undisputed.

[25]The Defendants purport to dispute this fact, indicating:

- 17 -

TIR's internal October and November 2013 financial statements . . . showing record-breaking revenues or TIR's November 16, 2013 management projections . . . of even higher revenues through 2018." Plaintiffs' MSJ ¶ 28, at 6 (internal citations omitted)(stating this fact). See Response to Plaintiffs' MSJ at 2 (not disputing this fact). "On November 26, 2013, the plaintiffs claimed each share of TIR Inc. was worth $650,000." Defendants' Acquiescence MSJ ¶ 32, at 10 (stating this fact).[26] "On November 29, 2013, Defendants advised that the Defendants could not negotiate any purchase during the tender offer period." Defendants' Acquiescence

---

TIR offered the same or higher share price to Plaintiffs than TIR had offered Pooled Shareholders and other selling shareholders in the intervening months. No appraisal was appropriate. Aware of its performance through October and November 2013, TIR nonetheless stated in the Merger Notice that it believed $451,000 per share "represents a premium over the fair value of such shares."

Response to Plaintiffs' MSJ at 3 (quoting Notice to Former Shareholders of Tulsa Inspection Resources, Inc. of Shareholder Action and Appraisal Rights at 2, (dated December 11, 2013) filed September 15, 2015 (Doc. 158-5))(internal citation omitted). The Defendants' assertion that an appraisal was not appropriate is a legal question, and not a factual question. The Defendants do not dispute the Plaintiffs' assertion in that fact that the Defendants did not commission another valuation to inform their merger consideration offer. Because the Defendants do not dispute this fact, the Court deems it to be undisputed.

[26]In Response to Defendants' Acquiescence MSJ ¶ 32, at 10, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

MSJ ¶ 33, at 10 (stating this fact).[27]

"The TIR Board unanimously approved the Merger in a consent dated December 9, 2013 signed by all three Directors." Plaintiffs' MSJ ¶ 19, at 5 (stating this fact). See Response to Plaintiffs' MSJ at 2 (not disputing this fact). "CEP-TIR, LLC, Stephenson, and Cynthia Field, the majority shareholders in TIR, approved the Merger in a similar consent dated December 9, 2013 signed by all three of the majority shareholders." Plaintiffs' MSJ ¶ 20, at 5 (stating this fact). See Response to Plaintiffs' MSJ at 2 (not disputing this fact). "Plaintiffs were all minority shareholders of TIR at the time of the Merger, owning the 32.882 outstanding shares that were canceled by the Merger." Plaintiffs' MSJ ¶ 21, at 5 (stating this fact). See Response to Plaintiff's MSJ at 2 (not disputing this fact). "The Merger Agreement stated in its 'Governing Law' provision . . . that 'the provisions of this Agreement relating to mechanics or the effects of the Merger under Delaware law shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.'" Plaintiffs' MSJ ¶ 22, at 5 (stating this fact)(quoting

---

[27]In Response to Defendants' Acquiescence MSJ ¶ 33, at 10, the Plaintiffs do not dispute this fact, but they contend that this fact is "immaterial and irrelevant under the entire fairness standard of review that governs the Tender Offer and Merger." Response to Defendants' Acquiescence MSJ ¶ 2, at 8. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

Merger Agreement at § 8.04).[28]

"On December 9, 2013, Cypress and TIR exercised their statutory right to cash-out the Plaintiffs." Defendants' Acquiescence MSJ ¶ 34, at 10 (stating this fact)(relying on Notice to Former Shareholders of Tulsa Inspection Resources, Inc. of Shareholder Action and Appraisal Rights (dated December 11, 2013), filed April 3, 2015 (Doc. 83-27).[29] "On December 11, 2013, the Plaintiffs received timely after-the-fact notice of the Merger and their appraisal rights in accordance with the Oklahoma statutes." Defendants' Acquiescence MSJ ¶ 37, at 11 (stating this fact). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "The Merger Agreement (dated December 9, 2013), filed April 3, 2015 (Doc. 83-27), provides that:

> For the avoidance of doubt, any former shareholder who surrenders his, her or its share certificate (or acceptable evidence of share ownership for payment of

---

[28]The Defendants purport to dispute this fact "[f]or avoidance of doubt," insisting that the "laws of the State of Oklahoma are applicable to Plaintiffs' breach of fiduciary duty claims . . . and unjust enrichment claim . . . ." Response to Plaintiffs' MSJ at 3. This objection is legal rather than factual. The Defendants do not dispute that the Merger Agreement language is as the Plaintiffs' report it in this fact. Because the Defendants do not dispute this fact, the Court deems the fact to be undisputed.

[29]In the Defendants' Acquiescence MSJ, the Defendants word this fact as follows: "On December 9, 2013, Cypress and TIR exercised their statutory right to cash-out the Plaintiffs at $451,000 per share." Defendants' Acquiescence MSJ ¶ 34, at 10. The Plaintiffs purport to dispute this fact, asserting that they dispute it "to the extent it suggests that Defendants had any right to cash-out Plaintiffs for an unfair price," adding that the fact "is otherwise admitted." Response to Defendants' Acquiescence MSJ ¶ 9, at 10. The Court notes that the Plaintiffs do not contest the Defendants' assertion that the Defendants' statutory rights included cashing out the Plaintiffs, but only that these statutory rights did not also encompass the right to cash the Plaintiffs out at "an unfair price." Response to Defendants' Acquiescence MSJ ¶ 9, at 10. Whether $451,000.00 is a fair share price for TIR, Inc. shares at the time the Merger was effected is a legal question rather than a factual question, or at least a fact for the jury to find -- a legal question or jury question that the Court discussed at length in its analysis of the Defendants' Acquiescence MSJ and the Plaintiffs' Estoppel MSJ in the April 25 MOO. The Court therefore reports the fact as it is undisputed.

Merger Consideration pursuant to **Section 2.02** [payment provisions], shall be deemed to have (a) accepted the Merger Consideration and (b) forever waived any appraisal rights pursuant to this **Section 2.03** [provisions respecting dissenting share], Section 1091 of the [Oklahoma General corporation Act], or otherwise.

Defendants' Acquiescence MSJ ¶ 38, at 11 (citing Agarwal Depo. Ex. 7)(stating this fact)(bold in original).  See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "On December 18-20, 2013, each Plaintiff delivered his or its TIR Inc. share certificates to the Defendant CEP-TIR, along with stock powers, pursuant to the provisions of the Merger Agreement."  Defendants' Acquiescence MSJ ¶ 39, at 11 (stating this fact).[30]  "On December 23, 2013, the Defendant TIR LLC paid . . . Plaintiffs . . . the $451,000 per share Merger Consideration."  Defendants' Acquiescence MSJ ¶ 40, at 11 (stating this fact).[31]  "As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20,

---

[30]The Plaintiffs purport to dispute this fact, indicating that they dispute the fact "to the extent Defendants suggest Plaintiffs' delivery of their shares pursuant to the Merger Agreement was a voluntary choice. Rather, Plaintiffs as minority shareholders were forcibly squeezed out of TIR, as evidenced by the 'after-the-fact' December 11, 2013 Merger Notice, which informed Plaintiffs that their shares had already been cancelled."  Response to Defendants' Acquiescence MSJ ¶ 12, at 10 (relying on Agarwal Depo. Ex. 7).  Because (i) the fact as the Defendants assert it does not speak to whether the share certificate delivery was voluntary or involuntary; and (ii) the Plaintiffs do not dispute the asserted fact that each Plaintiff delivered his or its share certificates, along with stock powers, to CEP-TIR between December 18 and December 20, 2013, the Court deems the fact to be undisputed.

[31]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows: "On December 23, 2013, the Defendant TIR LLC paid, and the Plaintiffs accepted, the $451,000 per share Merger Consideration."  Defendants' Acquiescence MSJ ¶ 40, at 11.  The Plaintiffs purport to dispute the entire fact as the Defendants assert it, maintaining that the "Plaintiffs did not 'accept' the $451,000 per share merger consideration, but were forcibly cashed out."  Response to Defendants' Acquiescence MSJ ¶ 13, at 10.  As is true for Defendant's undisputed fact 39, discussed in footnote 30, supra, the dispute with respect to this fact centers on the transaction's voluntariness, and not whether the transaction took place for the amount that the Plaintiffs indicate.  Consequently, the Court amends the fact as the Defendants assert it to reflect the fact's undisputed elements.

2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the Defendants had acquired control of TIR Inc." Defendants' Acquiescence MSJ ¶ 41, at 11 (stating this fact).[32] "As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the transactions by which the Defendants acquired controlling shares of TIR, Inc. and the prices paid for those shares." Defendants' Acquiescence MSJ ¶ 42, at 11 (stating this fact).[33]

---

[32]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows: "As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the Defendants had acquired control of TIR Inc." Defendants' Acquiescence MSJ ¶ 41, at 11 (relying on Videotaped Deposition of Nathan Allen at 73:17-74:2 (taken February 25, 2015), filed April 3, 2015 (Doc. 83-23)("Allen Depo."). The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 41, at 11). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial as what 'Plaintiffs knew' concerning the Merger process [because knowledge] has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[33]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

"Defendants admit that they did not: [(i)] Form a special committee of disinterested directors or other disinterested persons to consider the proposed merger; [(ii)] Engage any independent financial advisor or other third party valuation analysis; or [(iii)] Require a majority-of-the-minority vote for the Merger to be approved." Plaintiffs' MSJ ¶ 23, at 5-6 (bullets and internal citations omitted)(stating this fact). See Response to Plaintiffs' MSJ at 3 (not disputing this fact). "There is no other evidence that Defendants employed any of the above devices at the time of, and in connection with, the Merger." Plaintiffs' MSJ ¶ 24, at 6 (stating this fact). See Response to Plaintiffs' MSJ at 3 (not disputing this fact).

---

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the transactions by which the Defendants acquired controlling shares of TIR, Inc. and the prices paid for the shares.

Defendants' Acquiescence MSJ ¶ 42, at 11 (relying on Allen Depo. at 73:17-74:2). The Plaintiffs purport to dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 42, at 11). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger [because knowledge] process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the Defendants' conflicts of interest between their positions as officers, directors and shareholders of TIR Inc. and their positions as officers, directors, and equity owners of Cypress Energy and its Affiliates.

Defendants' Acquiescence MSJ ¶ 43, at 11 (stating this fact)(relying on Allen Depo.

at 108:3-112:3).[34]

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR

---

[34]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the Defendants' conflicts of interest between their positions as officers, directors and shareholders of TIR Inc. and their positions as officers, directors, and equity owners of Cypress Energy and its Affiliates.

Defendants' Acquiescence MSJ ¶ 43, at 11. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 43, at 11). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

Inc. shares . . . ), the Plaintiffs knew the intentions of the Defendants respecting the organization of a master limited partnership, the exchange of shares of TIR Inc. for units of ownership in the master limited partnership, and an initial public offering of units of ownership in the master limited partnership.

Defendants' Acquiescence MSJ ¶ 44, at 12 (stating this fact)(relying on Allen Depo. at 191:8-193:4).[35]

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the Defendants had not performed or commissioned any appraisal, or engaged any independent financial advisor or

---

[35]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the intentions of the Defendants respecting the organization of a master limited partnership, the exchange of shares of TIR Inc. for units of ownership in the master limited partnership, and an initial public offering of units of ownership in the master limited partnership.

Defendants' Acquiescence MSJ ¶ 44, at 11. The Plaintiffs purport to dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 44, at 11). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

other third party to perform any valuation analysis or provide any opinion respecting the value of the TIR, Inc. shares.

Defendants' Acquiescence MSJ ¶ 45, at 12 (stating this fact)(relying on Allen Depo. at 99:5-104:24, Agarwal Depo. at 42:1-44:17, and Agarwal Depo. Ex. 1).[36]

> As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the Defendants had not obtained the approval of a majority of the minority in effecting the Merger: the Plaintiffs were the remaining TIR Inc. minority shareholders. As a group, the Plaintiffs had

---

[36]In Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

> As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the Defendants had not performed or commissioned any appraisal, or engaged any independent financial advisor or other third party to perform any valuation analysis or provide any opinion respecting the value of the TIR, Inc. shares.

Defendants' Acquiescence MSJ ¶ 45, at 12. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 45, at 12). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

demanded in September to sell their shares for a price in excess of $600,000 per share, and in November had agreed amongst themselves not to accept the Tender Offer.

Defendants' Acquiescence MSJ ¶ 46, at 12 (stating this fact).[37]  "As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs knew the Defendants

---

[37]In Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

>   As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the Defendants had not obtained the approval of a majority of the minority in effecting the Merger: the Plaintiffs were the remaining TIR Inc. minority shareholders. As a group, the Plaintiffs had demanded in September to sell their shares for a price in excess of $600,000 per share, and in November had agreed amongst themselves not to accept the Tender Offer.

Defendants' Acquiescence MSJ ¶ 46, at 12.  The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'"  Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 46, at 12).  The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received."  Response to Defendants' Acquiescence MSJ ¶ 14, at 10.  Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger."  Response to Defendants' Acquiescence MSJ ¶ 14, at 10.  The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record.  See N.D. Okla. LCvR56.1(c).  Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

had not formed a special committee to consider the proposed Merger." Defendants'

Acquiescence MSJ ¶ 47, at 12 (stating this fact)(relying on Allen Depo. at 272:3-273:17).[38]

> As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs had been provided the financial statements of TIR Inc. for 2011 and 2012, and for the nine month period ending September 30, 2013.

Defendants' Acquiescence MSJ ¶ 48, at 12 (stating this fact)(relying on Allen Depo. at 83:18-

---

[38]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

> As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs knew the Defendants had not formed a special committee to consider the proposed Merger.

Defendants' Acquiescence MSJ ¶ 47, at 12. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 47, at 12). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

84:1, 223:21-224:3).[39]   "As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs had received the Registration Statement."  Defendants' Acquiescence MSJ ¶ 49, at 12 (stating this fact)(relying on Allen Depo. at 194:2-11).[40]

---

[39]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs had been provided the financial statements of TIR Inc. for 2011 and 2012, and for the nine month period ending September 30, 2013.

Defendants' Acquiescence MSJ ¶ 48, at 12.  The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'"  Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 48, at 12).  The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received."  Response to Defendants' Acquiescence MSJ ¶ 14, at 10.  Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger."  Response to Defendants' Acquiescence MSJ ¶ 14, at 10.  The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed.  Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c).  Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis."  Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8.  The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[40]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows: "As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs had received the Registration Statement."  Defendants'

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares . . . ), the Plaintiffs believed that the Defendants did not believe (and had no reasonable basis to believe) that $451,100 per TIR Inc. share represented a premium over the fair value of such shares.

Defendants' Acquiescence MSJ ¶ 50, at 13 (stating this fact)(relying on Allen Depo. at 206:11-

208:25).[41]

_____

Acquiescence MSJ ¶ 49, at 12. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 49, at 12). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[41]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the date on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), the Plaintiffs believed that the Defendants did not believe (and had no reasonable basis to believe) that $451,100 per TIR Inc. share represented a premium over the fair value of such shares.

Defendants' Acquiescence MSJ ¶ 50, at 13. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 50, at 13). The Plaintiffs clarify that they received cash merger

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the dates on which the Plaintiffs surrendered their TIR Inc. shares . . . ), Plaintiffs believed both Plaintiffs' financial presentations and Defendants' financial presentations showed the TIR Inc. shares were worth several multiples of $451,000.

Defendants' Acquiescence MSJ ¶ 51, at 13 (stating this fact)(relying on Complaint, filed July 3, 2014 (Doc. 1)).[42]

---

consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing that at the summary-judgment stage a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[42]In the Defendants' Acquiescence MSJ, the Defendants word the fact as follows:

As of December 9, 2013 (the date on which the Merger was consummated) and as of December 18-20, 2013 (the dates on which the Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration), Plaintiffs believed both Plaintiffs' financial presentations and Defendants' financial presentations showed the TIR Inc. shares were worth several multiples of $451,000.

Defendants' Acquiescence MSJ ¶ 51, at 13. The Plaintiffs dispute this fact only insofar as it "incorrectly states that 'Plaintiffs surrendered their TIR Inc. shares to obtain the Merger consideration.'" Response to Defendants' Acquiescence MSJ ¶ 14, at 10 (quoting Defendants' Acquiescence MSJ ¶ 51, at 13). The Plaintiffs clarify that they received cash merger consideration but did not receive equity merger consideration in the Merger Sub, "which was the 'Merger consideration' that the controlling shareholder Defendants received." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. Regarding the second half of the asserted fact's

On February 4, 2014, Plaintiff SFF-TIR, LLC by its Managing Member, Alan Stuart, sent a letter to the investors in Plaintiff SFF-TIR in the form and content of [Letter from Alan Stuart to SFF-TIR, LLC investors (dated February 12, 2014), filed April 3, 2015 (Doc. 83-31)("Letter to SFF-TIR, LLC Investors")], which stated, in part, as follows

> "We are pleased to inform our investors in SFF-TIR, LLC ('SFF[-]TIR') we were able to liquidate our equity position in Tulsa Inspection Resources, Inc. ('TIR'). On December 23, 2013 we received cash consideration of $451,000 per share for a total cash consideration of $5,763,780. The investment in TIR has generated 2.47x our original investment with a net annualized IRR of 40.42%."

Defendants' Acquiescence MSJ ¶ 53, at 13 (stating this fact)(quoting Letter to SFF-TIR, LLC Investors 1, filed April 3, 2015 (Doc. 83-32)).[43]

    After . . . December 18-20, 2013, Defendants CEP-TIR, Charles Stephenson, and

---

sentence, the Plaintiffs object that it is "immaterial[,] as what 'Plaintiffs knew' concerning the Merger process has no bearing upon the entire fairness of the Merger." Response to Defendants' Acquiescence MSJ ¶ 14, at 10. The Court has amended this asserted fact's text to reflect the fact's elements that are undisputed. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing a proposed fact at summary judgment is immaterial to the Court's disposition of the summary judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

[43]The Plaintiffs do not dispute this fact, but they maintain that it is "immaterial and irrelevant." Response to Defendants' Acquiescence MSJ ¶ 16, at 11. Contending that a fact is immaterial is not disputing a fact, nor is it specifically controverting a fact by directing the Court with particularity to the record. See N.D. Okla. LCvR56.1(c). Arguing at the summary-judgment stage that a proposed fact is immaterial to the Court's disposition of the summary-judgment motion is not effective to contest a fact: "Materiality is not proper grist for the statement of facts and is considered properly in the Court's legal analysis." Lowery v. City of Albuquerque, 2011 WL 1336670, at *4 n.8. The Plaintiffs' assertion that the entire-fairness standard is the operative standard is a legal conclusion, and not a factual assertion, and so it does not materially affect the Plaintiffs' admission of the fact.

> Cynthia Field, believing the Plaintiffs to have waived all claims to additional consideration for their shares, contributed 50.1% of the member interest in TIR LLC to Cypress Energy Partners Limited Partnership, and Cypress Energy Partners Limited Partnership effected a sale of partnership units to the public pursuant to the Registration Statement.

Defendants' Acquiescence MSJ ¶ 54, at 13 (stating this fact)(relying on Austin Aff. ¶ 5, at 2-3). "On July 3, 2014, the Plaintiffs filed this action." Defendants' Acquiescence MSJ ¶ 55, at 13 (stating this fact)(relying on Complaint). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact). "On July 3, 2014, the Plaintiffs filed this action." Defendants' Acquiescence MSJ ¶ 55, at 13 (stating this fact)(relying on Complaint). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing this fact).

## PROCEDURAL BACKGROUND

The Plaintiffs sued the Defendants -- TIR, Inc.'s directors and majority shareholders -- asserting that the Defendants owed fiduciary duties to the Plaintiffs, TIR, Inc.'s minority shareholders. See Complaint ¶¶ 141, 154, at 28, 31, filed July 3, 2014 (Doc. 1)("Complaint"). According to the Plaintiffs, the Defendants breached those duties when they implemented the Merger. See Complaint ¶¶ 142, 155, at 28, 31. On October 27, 2014, the Defendants offered to settle all claims against them "by offering a money judgment" for each Plaintiff and "against the Defendants in the total sum of $10,000.00." Defendants' Offer of Judgment Pursuant to Fed.R.Civ.P. 68 and 12 O.S. § 1101.1(B) at 2, 6, 10, 14, 18, 22, 26, 30, 34, filed October 3, 2017 (Doc. 459-1)("Offer of Judgment"). Because Buckley and Signorello accepted the Defendants' offers, Buckley and Signorello filed a stipulation dismissing the "action with prejudice to refiling all claims made herein without costs or fees to any party." Stipulation of Dismissal with Prejudice at 1, filed December 29, 2014 (Doc. 66). SFF-TIR, LLC, Stuart Family Foundation,

Inc., Alan Stuart 2012 GST Family Trust, Stuart 2005 GST Family Trust, Celebration, LLC, Agarwal, and Reynolds rejected the Defendants' Offer of Judgment, and they gave the following counteroffers to settle their claims: (i) SFF-TIR, LLC counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $6,903,360.00"; (ii) Stuart Family Foundation, Inc. counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $413,640.00"; (iii) Alan Stuart 2012 GST Family Trust counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $632,340.00"; (iv) Stuart 2005 GST Family Trust counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $632,340.00"; (v) Celebration, LLC counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $2,700,000.00"; (vi) Agarwal counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $4,222,800"; and (vii) Reynolds counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $1,441,800." Notice of Counteroffers at 2, 6, 10, 14, 18, 22, 26.

At the summary-judgment stage, the Court first determined that it has federal-question jurisdiction over the Plaintiffs' federal securities claims, and the Court considered sua sponte whether it has diversity jurisdiction over the case. See April 25 MOO, 250 F. Supp. 3d at 1022 ("Neither the Plaintiffs nor the Defendants have challenged federal diversity jurisdiction in this case. Rule 12(h)(3) of the Federal Rules of Civil Procedure allows, however, for the Court to raise this question sua sponte."). The Court concluded that it has diversity jurisdiction over the case. See April 25 MOO, 250 F. Supp. 3d at 1023 ("Based on [the Court's] analysis, which shows complete party diversity, the Court concludes that it has diversity jurisdiction to hear this

case.").  The Court then granted summary judgment to the Defendants on the Plaintiffs' federal securities claims and dismissed those claims.  See April 25 MOO, 250 F. Supp. 3d at 1045.

The Court also considered the contract defenses that the Defendants raised in the Defendants' Acquiescence MSJ and the Defendants' Second Motion for Summary Judgment and Brief in Support Thereof, filed September 14, 2015 (Doc. 154)("Defendants' Estoppel MSJ").  See April 25 MOO, 250 F. Supp. 3d at 1030-46.  The Court determined that Delaware law applies to the Defendants' acquiescence defense, and Oklahoma law applies to the Defendants' contract defenses of equitable estoppel, waiver, and unclean hands, and it concluded:

> [T]he Court evaluates the Defendants' Acquiescence MSJ.  The Court concludes that: (i) the Defendants did not set up a well-functioning committee of independent directors to examine and approve the merger; (ii) a fully-informed majority of the minority shareholders never voted to approve the merger; (iii) the evidentiary burden to prove the merger's entire fairness remains with the Defendants; (iv) when the Court interprets the facts in the light most favorable to the Plaintiffs, the Defendants do not meet this evidentiary burden; and (v) Delaware common law requires the Court to allow any case where the Defendant bears the burden to prove entire fairness to proceed to trial so that the entire fairness of the transaction can be evaluated.  Accordingly, the Court denies the Defendants' Acquiescence MSJ.
>
> Because the Court denies the Defendants' Acquiescence MSJ, . . . the Court assesses the Defendants' Estoppel MSJ.  The Court concludes that: (i) the Defendants' Estoppel MSJ largely duplicates the Defendants' Acquiescence MSJ's facts; (ii) the Defendants fail to demonstrate that they reasonably relied on the Plaintiffs' merger acceptance or that the alleged reliance caused the Defendants to suffer a detrimental change of position; (iii) the Defendants fail to demonstrate that the Plaintiffs waived their right to challenge the entire fairness of the contested merger transaction; (iv) the Defendants fail to demonstrate that the Plaintiffs undertook the allegedly fraudulent and deceitful conduct of which they complain, thereby failing to show that the Plaintiffs have unclean hands; (v) the Tenth Circuit is unlikely to support the Plaintiffs' contention that the forced-seller doctrine is good law within the Tenth Circuit, and therefore the Court should not expand SEC rule 10b-5 to include the forced-seller doctrine and should dismiss the Plaintiffs' federal securities claims; and (vi) the Supreme Court of Oklahoma likely would dismiss the Plaintiffs' state securities  claims and the Court, under

the Erie doctrine's required deference to a state's supreme court, should dismiss the Plaintiffs' state securities claims. Accordingly, the Court: (i) denies the Defendants' Estoppel MSJ in part as it relates to the Oklahoma common-law clean hands doctrine, the Oklahoma common law of waiver, and the Oklahoma common law of estoppel; and (ii) grants the Defendants' Estoppel MSJ in part as it relates to securities claims, dismissing the securities claims.

April 25 MOO, 250 F. Supp. 3d at 868.

Last, the Court determined that Delaware law governs the Plaintiffs' breach-of-fiduciary-duty claims, see April 25 MOO, 250 F. Supp. 3d at 867, 1026, and that the Defendants bear the burden of proving that the Merger is entirely fair to the minority shareholders, see April 25 MOO, 250 F. Supp. 3d at 1034. See also id. at 1047-48 ("The entire fairness standard . . . require[s] a company to ensure that minority shareholders receive fair dealing and a fair price if the company cashes out their shares in a merger's wake."). The Court also determined that the Defendants "do not present any evidence of [the Merger's] procedural fairness," and "zero fair process results in a failure to meet the burden of proving entire fairness regardless how fair the share price is at which the Defendants cashed out the minority shareholders." Reconsideration MOO, 264 F. Supp. 3d at 1233, 1242-43.[44] Accordingly, the Court entered partial summary judgment on the liability issue in favor of the Plaintiffs, but the Court left a determination of damages for trial. See April 25 MOO, 250 F. Supp. 3d at 1048-49. See also Reconsideration MOO, 264 F. Supp. 3d at 1246 ("The Court . . . will make every effort to withhold from the jury its conclusion that the Defendants are liable for breach of fiduciary duty. The only question before the jury is, therefore, whether the price that the Plaintiffs received for their shares is fair." (citation omitted)).

---

[44]The Court originally granted partial summary judgment to the Plaintiffs in the April 25 MOO, but the Court explained its reasoning more fully in the Reconsideration MOO.

The Court held a jury trial on damages in Tulsa, Oklahoma, from September 5, 2017, to September 14, 2017. See Minute Sheet at 1, filed September 14, 2017 (Doc. 448). The jury instructions directed the jury to determine the fair value of the Plaintiffs' TIR, Inc. shares. See Final Jury Instructions, Instruction No. 10, at 11, filed September 14, 2017 (Doc. 449). In particular, Instruction No. 19 states:

> One method of valuation about which you heard testimony is the Discounted Cash Flow Method. This is sometimes referred to as a DCF analysis or DCF valuation. Dr. Makholm and Mr. Wilcox each used a discounted cash flow analysis to value TIR.

> The discounted cash flow method of valuation merits the greatest confidence within the financial community. It is the best technique for valuing an entity when the necessary information regarding the required inputs is available. In determining the fair value of Plaintiffs' TIR, Inc. shares, you may give exclusive weight to a discounted cash flow analysis.

> When considering the weight to give a particular DCF valuation, you should prefer a DCF valuation that is based on financial projections prepared by TIR, Inc.'s management at around the time of the merger, unless there are compelling reasons not to do so. Such projections are entitled to great weight because they ordinarily reflect the best judgment of management, unbiased by litigation incentives.

> The creditability of projections prepared by management is enhanced if management submitted those projections to certain financial institutions -- i.e. a federally insured bank -- to obtain financing, because it is a federal felony to knowingly obtain any funds from some financial institutions by false or fraudulent pretenses or representations.

> You should regard with suspicion attempts by a party who produced such projections to later disclaim their reliability when that denial serves their litigation objective. You should also view with skepticism any post-merger adjustments made to management projections or the creation of new projections. You may completely discount an expert valuation that disregards contemporaneous management projections.

Final Jury Instructions, Instruction No. 19, at 21. In addition, Instruction No. 23 states:

> To be reliable evidence of fair value, a market price must be established in an active market. You may not defer to the market prices as a measure of fair value if the shares were not traded actively in a liquid market.

Final Jury Instructions, Instruction No. 23, at 25. The jury determined that the fair value of the Plaintiffs' TIR, Inc. shares, as of December 9, 2013, was $451,000.00, the price that the Plaintiffs received. <u>See</u> Special Verdict Form at 1, filed September 14, 2017 (Doc. 451). The Plaintiffs and Defendants now request attorney's fees and costs. <u>See</u> Defendants' Motion at 1; Plaintiffs' Motion at 1. The Defendants also request that the Court enter judgment before ruling on the attorney's fees issues. <u>See</u> Motion for Judgment at 1.

### 1. <u>The Plaintiffs' Letter</u>.

The Plaintiffs sent the Court a letter on September 25, 2017. <u>See</u> Letter from Stuart Kagen to the Honorable James O. Browning at 1 (dated September 25, 2017), filed September 25, 2017 (Doc. 455)("Plaintiffs' Letter"). The Plaintiffs request that the Court: (i) "direct that no judgment be entered in this matter until after the Court rules on Plaintiffs' forthcoming request for attorney's fees"; (ii) "set a briefing schedule for Plaintiffs' fee request"; and (iii) "order that Plaintiffs' fee request shall toll the time to appeal, pursuant to" rule 58(e) of the Federal Rules of Civil Procedure. Plaintiffs' Letter at 1. The Plaintiffs note that, in the Sept. 8 MOO, the Court reserved for itself the issue whether the Plaintiffs are entitled to attorney's fees. <u>See</u> Plaintiffs' Letter at 1. The Plaintiffs argue that "entry of judgment would be premature before the Court rules on Plaintiffs' request for attorney's fees" under rules 54 and 58 of the Federal Rules of Civil Procedure. Plaintiffs' Letter at 2. The Plaintiffs contend that, "[a]lthough Rule 58(b)(2)(A) provides for entry of judgment when the jury returns a special verdict, that provision does not apply where, as here, the jury's verdict 'adjudicates fewer than

all the claims' for relief under Rule 54(b)." Plaintiffs' Letter at 1 (quoting Fed. R. Civ. P. 54(b)). The Plaintiffs add that rule 58 is "'subject to Rule 54(b).'" Plaintiffs' Letter at 2 (quoting Fed. R. Civ. P. 58(b)(2)(A)). The Plaintiffs further argue that, because the jury's verdict is a "partial judgment," rule 58 does not apply, and "entry of judgment would be premature." Plaintiffs' Letter at 2. The Plaintiffs also ask the Court to "establish timing requirements for an attorney's fee motion." Plaintiffs' Letter at 3. Last, the Plaintiffs request that the Court

> enter an order under Rule 58(e) that Plaintiffs' motion for attorney's fees filed pursuant to the briefing schedule set by the Court shall be "a timely motion for attorney's fees . . . under Rule 54(d)(2)" which shall "have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59."

Plaintiffs' Letter at 4 (quoting Fed. R. Civ. P. 58(e)).

### 2.      The Motion for Judgment.

The Defendants filed the Motion for Judgment on September 27, 2017. See Motion for Judgment at 1. The Defendants ask the Court to enter judgment on the verdict that: "(i) the Plaintiffs take nothing and (ii) the December 2013 merger was entirely fair." Motion for Judgment at 1. The Defendants argue that the Plaintiffs are "entitled to take nothing" and the Defendants are "entitled to judgment," because the "jury found the fair value of the Plaintiffs' TIR, Inc. shares as of the time of the December 9, 2013 TIR merger was $451,000," which is how much the Plaintiffs received per share. Motion for Judgment at 2. Next, the Defendants argue that they are "entitled to judgment that the merger was entirely fair." Motion for Judgment at 3. The Defendants note that "fair price is the predominant inquiry in determining entire fairness." Motion for Judgment at 2. According to the Defendants, "no fraud or wrongdoing was evidenced in the merger." Motion for Judgment at 3. The Defendants also argue that,

although the Plaintiffs submitted "substantial argument and evidence" of unfair process, "the jury found fair price." Motion for Judgment at 6 (emphasis in original). The Defendants emphasize that, "[w]hile this Court found on summary judgment that Defendants failed to adduce any evidence of affirmative fair process, the jury found that the Defendants proved the ultimate fairness facts -- the Plaintiffs were fully informed and the Defendants paid the Plaintiffs the fair value." Motion for Judgment at 6 (emphasis omitted).

The Defendants attached two proposed judgments on the verdict. See Judgment, filed September 27, 2017 (Doc. 457-1)("First Judgment"); Judgment, filed September 27, 2017 (Doc. 457-2)("Second Judgment"). The Defendants explain that the First Judgment is a "proposed judgment on the verdict that finds (i) the Plaintiffs take nothing and (ii) the merger was entirely fair." Motion for Judgment at 2. The First Judgment states:

> On this ___ day of October, 2017, the Court hereby enters judgment on the verdict of jury (Doc. 451) in favor of Defendants and against Plaintiffs that (i) Plaintiffs recover nothing by way of their claims in this action, the action be dismissed on the merits, and the Defendants recover costs from the Plaintiffs and (ii) the merger of Tulsa Inspection Services, Inc. in Tulsa Inspection Services, LLC on December 9, 2013 was entirely fair.

First Judgment at 1. The Defendants propose that, "[i]n the event the Court declines, at this time, to enter judgment that the merger was entirely fair," then the Court should enter "a form of judgment on the verdict only." Motion for Judgment at 2. Accordingly, the Defendants propose that the Court enter the Second Judgment as the judgment on the verdict. See Motion for Judgment at 2. The Second Judgment states:

> On this ___ day of October, 2017, the Court hereby enters judgment on the verdict of the jury (Doc. 451) in favor of Defendants and against Plaintiffs that Plaintiffs recover nothing by way of their claims in this action, the action be dismissed on the merits, and the Defendants recover costs from the Plaintiffs.

Second Judgment at 1.

### 3.      **The Judgment Response.**

The Plaintiffs responded to the Motion for Judgment on October 18, 2017.  <u>See</u> Plaintiffs'
Response to Defendants' Motion for Judgment, filed October 18, 2017 (Doc. 463)("Judgment
Response").  The Plaintiffs argue that "it would be premature for the Court to enter judgment
until after the Court rules on Plaintiffs' request for their attorney's fees."  Judgment Response
at 5.  The Plaintiffs aver that the Defendants do not cite to authority that requires the Court to
enter judgment before the Court rules on attorney's fees.   <u>See</u> Judgment Response at 6.
According to the Plaintiffs, rule 54(d)(2)(B) of the Federal Rules of Civil Procedure "permits
Courts to establish the timing requirements for an attorney's motion: it states that a fee motion
must be filed no later than 14 days after the entry of judgment '[u]nless a . . . court order
provides otherwise.'"  Judgment Response at 7 (quoting Fed. R. Civ. P. 54(d)(2)(B), and citing
<u>Coshocton Grain Co. v. Caldwell-Baker Co.</u>, Case No. 14-cv-02589-DDC, 2017 WL 3605338,
at *63 (D. Kan. Aug. 22, 2017)(Crabtree, J.))(emphasis omitted)(alteration in Judgment
Response only).  The Plaintiffs assert that rule 54(b) contains a "*limited* exception permitting
courts to 'direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if
the court expressly determines that there is no just reason for delay.'"  Judgment Response at 8
(quoting Fed. R. Civ. P. 54(b))(emphasis in Judgment Response).  The Plaintiffs contend that,
under rule 54(b), the jury verdict is not a final order, but rather a partial order, because it
"'adjudicate[s] fewer than all the claims' for relief in this case.  Thus, the Court cannot 'adhere[]
strictly to the rule's requirement' to make the 'express determinations . . . that the [jury's verdict]

is a final order.'" Judgment Response at 8 (quoting <u>Schrock v. Wyeth, Inc.</u>, 727 F.3d 1273, 1278 (10th Cir. 2013))(alterations in Judgment Response). The Plaintiffs note that the "jury did not decide whether Plaintiffs are entitled to attorney's fees and costs as an equitable remedy for Defendants' breach of their fiduciary duty of loyalty," and thus the jury verdict is not a final order. Judgment Response at 9. According to the Plaintiffs, the Court's decision to "reserv[e] to itself the adjudication of . . . Plaintiffs' attorney's fees and costs . . . necessarily determined that the jury's verdict does not warrant entry of a final 'judgment adjudicating all the claims and all the parties' rights and liabilities' under Rule 54(b)." Judgment Response at 10.

The Plaintiffs also argue that there is "'just reason to delay review of the final order until [the Court] has conclusively ruled on all claims presented by the parties to the case.'" Judgment Response at 11 (quoting <u>Schrock v. Wyeth, Inc.</u>, 727 F.3d at 1278). The Plaintiffs aver that "[e]ntering judgment before ruling on Plaintiffs' request would have precisely the consequences that Delaware law forbids: Plaintiffs 'would [be] penalized for bringing a successful claim against the [Defendants] for breach of their fiduciary duty of loyalty.'" Judgment Response at 11 (quoting <u>Saliba v. William Penn P'ship</u>, 13 A.3d 749, 758-59 (Del. 2011)). The Plaintiffs assert that there is "'just reason for delay,'" because "Delaware law does not permit such a grossly inequitable result." Judgment Response at 11 (quoting Fed. R. Civ. P. 54(b)). The Plaintiffs argue that the Defendants "equate[] the jury's *verdict* with the '*judgment*' that Defendants rely on for purposes of their claim" that they are entitled to reasonable attorney's fees and litigation costs under 12 Okla. Stat. Ann. § 1101.1(B)(3) & (C). Judgment Response at 12 (quoting 12 Okla. Stat. Ann. § 1101.1(B)(3))(emphasis in Judgment Response and not in 1101.1(B)(3)). According to the Plaintiffs, "the Court should not convert the jury's verdict to a judgment,

because . . . the judgment in this case should include all aspects of the equitable remedy to which Delaware law entitles Plaintiffs, including their attorney's fees and costs."  Judgment Response at 12.  The Plaintiffs add that "entry of judgment based solely on the jury's verdict will result in needless, piecemeal litigation -- and potential piecemeal appeals -- about whether such a partial judgment entitled Defendants to enforce their offers of judgment."  Judgment Response at 12 (citing St. Paul Sober Living, LLC v. Bd. of Cty. Comm'rs, Garfield Cty., Colo., Civil Action No. 11-cv-00303-RBJ-MEH, 2013 WL 5303484, at *2 (D. Colo. Sept. 17, 2013)(Jackson, J.); Radian Asset Assurance Inc. v. Coll. of the Christian Bros. of N.M., No. CIV 09-0885 JB/DJS, 2011 WL 10977180, at *63-64 (D.N.M. Jan. 24, 2011)(Browning, J.)).

Next, the Plaintiffs argue that the Court should "deny Defendants' request to enter a judgment 'that . . . the December 2013 merger was entirely fair.'"  Judgment Response at 13 (quoting Motion for Judgment at 1).  The Plaintiffs note that the Court already has ruled that the Merger was not entirely fair and that the Defendants make "the very same legal argument they made twice before, that 'fair price is the predominant inquiry in determining entire fairness.'"  Judgment Response at 14 (quoting Motion for Judgment at 2-3).  The Plaintiffs aver that the Court has evaluated the Defendants' arguments in two separate Memorandum Opinion and Orders.  See Judgment Response at 14 n.6 (citing April 25 MOO, 250 F. Supp. 3d at 908, 1048, and Reconsideration MOO, 264 F. Supp. 3d at 1185, 1186, 1189).  The Plaintiffs say that the Court, in its Reconsideration MOO, "expressly stated that it 'is not inviting a second motion to reconsider after trial.'"  Judgment Response at 15 (quoting Reconsideration MOO, 264 F. Supp. 3d at 1246 n.73).  The Plaintiffs also argue that the jury did not decide whether the Merger was "entirely fair," and thus a judgment that the Merger was entirely fair would contradict the jury's

verdict.  Judgment Response at 15.  According to the Plaintiffs, "neither the jury's verdict nor anything else that occurred at trial warrants a judgment that the merger was entirely fair." Judgment Response at 16.  The Plaintiffs counter that most of the "'fair process evidence'" that the Defendants contend that the Plaintiffs presented at trial are arguments, and "[c]ounsel arguments . . . are not 'evidence.'"  Judgment Response at 16 (quoting Motion for Judgment at 6).  The Plaintiffs argue that "[n]either fair dealing nor entire fairness were at issue in the case," and, thus, "the jury's verdict . . . could not have stablished that the TIR merger was fair." Judgment Response at 17.

The Plaintiffs assert that, although the jury found that $451,000.00 is the fair value of their TIR, Inc. shares, this finding does "not establish the entire fairness of the TIR Merger given the Court's finding of the absence of fair dealing."  Judgment Response at 17.  The Plaintiffs also aver that there is "substantial risk that the jury's verdict was influenced by plainly improper elements of Defendants' closing argument, such as naked appeals to local bias."  Judgment Response at 18.  The Plaintiffs argue that, because of the Defendants' "improper arguments" and the "relatively short length of the jury's deliberations, . . . it is simply impossible to conclude that the jury's verdict determined anything about the entire fairness of the TIR merger."  Judgment Response at 20.

### 4.     **The Judgment Reply**.

The Defendants replied to the Judgment Response on October 30, 2017.  See Defendants' Reply in Support of Motion for Judgment, filed October 30, 2017 (Doc. 465)("Judgment Reply").  The Defendants reiterate that, "[b]ecause fair price is the predominant entire fairness inquiry and because the merger price was fair as now established by the jury, . . . [the] Court

should enter judgment now finding both that the Plaintiffs take nothing <u>and</u> that the merger was entirely fair." Judgment Reply at 1-2 (emphasis in original). The Defendants argue that the Merger consideration was fair, because the "jury has established the Plaintiffs were paid that to which they were entitled." Judgment Reply at 2. The Defendants contend that their Motion for Judgment does not raise the same arguments that they raised earlier in the case:

> Defendants acknowledge this Court has rejected Defendants' acquiescence and equitable defenses. Defendants acknowledge this Court has determined that Plaintiffs' attempt to take control of TIR, Plaintiffs' agreement to conduct a winner-take-all auction and subsequent breach of that agreement, and TIR's establishment of an independent committee to conduct the auction to which Plaintiffs and Defendants had agreed is not evidence of fair process in implementing the merger. Defendants do not here ask the Court to revisit those issues.

> What Defendants now state -- and what Plaintiffs wholly fail to address -- is the unchallengeable proposition that the predominant fact in determining entire fairness is fair price. Entire fairness can, therefore, only be determined <u>after</u> fair price is known. In this case, entire fairness could only have been determined <u>after</u> the jury determined fair price.

> This Court, having found Defendants failed to adduce evidence of fair process, properly determined that not the Court, but the jury, had to consider and determine fair value.

Judgment Reply at 2-3 (emphasis in original)(footnote omitted). The Defendants emphasize that they are not asking the Court to reconsider their earlier arguments, but rather, to determine that the Merger was fair, given that "the predominant fact has now been established -- the merger consideration was fair." Judgment Reply at 5. The Defendants summarize:

> The strong showing on fair price, which the Court expressly acknowledged "can compensate for a completely nonexistent showing on fair process," has been made. The Plaintiffs were, by their own admission, <u>fully informed</u>. The Defendants engaged in <u>no wrongful conduct</u>. The transaction was <u>non-fraudulent</u>. The Defendants merely <u>exercised their statutory right</u> to cash-out the minority at a fair price with after-the-fact notice.

Defendants' Motion for Judgment is, therefore, not an attempt to dissuade the Court from what the Defendants persist in believing were fundamental errors urged by the Plaintiffs and accepted by the Court. Defendants ask only that this Court, in accordance with the established law of Delaware and its own Memorandum Opinion and Order, recognize that fair value is the predominant inquiry in determining entire fairness and enter judgment on the jury verdict that the Plaintiffs take nothing <u>and</u> that the merger was entirely fair.

Judgment Reply at 5-6 (quoting Reconsideration MOO, 264 F. Supp. 3d at 1245)(emphasis in original)(footnotes omitted). The Plaintiffs further argue that, despite the "'concern over piecemeal litigation,'" the Supreme Court of the United States of America has held "that the pendency of an attorney fee request based on contract does not extend the time for appealing for a judgment." Judgment Reply at 6 (quoting <u>Ray Haluch Gravel Co. v. Cent. Pension Fund</u>, 571 U.S. 177, 186 (2014)).

**5.**     <u>**The Defendants' Motion.**</u>

The Defendants filed the Defendants' Motion on October 3, 2017. <u>See</u> Defendants' Motion at 1. The Defendants note that the Defendants' Motion "supersedes" the Defendants' Original Motion -- which the Defendants filed earlier the same day -- to "correct and clarify figures" in the Defendants' Original Motion. Defendants' Motion at 1 n.1. The Defendants assert that the Oklahoma offer-of-judgment statute's fee-shifting provisions apply "in diversity cases as a matter of substantive law under the traditional <u>Erie</u>[ Railroad Co. v. Tompkins, 304 U.S. 64 (1938)('<u>Erie</u>')] analysis." Defendants' Motion at 2-3 (citing <u>Scottsdale Ins. Co. v. Tolliver</u>, 636 F.3d 1273, 1280 (10th Cir. 2011)). The Defendants argue that, "[u]nder the clear and ambiguous application of the [Oklahoma] Statutory Offer of Judgment Statute, Defendants are entitled to both (i) reasonable attorney fees and (ii) reasonable litigation costs, each measured

from the date of the Defendants' offers on October 27, 2014." Defendants' Motion at 2. See 12 Okla. Stat. Ann. § 1101.1(B)(3). The Defendants maintain that, under 12 Okla. Stat. Ann. § 1101.1(B)(3), "if (i) a defendant files an offer of judgment, (ii) the offer is then rejected, and (iii) the judgment awarded the plaintiff is less than the amount of the offer of judgment, then the defendant shall be awarded both the defendant's reasonable attorney fees and the defendant's reasonable litigations costs." Defendants' Motion at 3 (footnote omitted)(emphasis in original). The Defendants note that: (i) "[o]n October 27, 2014, the Defendants made offers of judgment for $10,000 to each of the Plaintiffs," Defendants' Motion at 3 (citing Offer of Judgment at 2-36); (ii) Signorello and Buckley accepted the offers of judgment, see Defendants' Motion at 3 (citing Stipulation of Dismissal with Prejudice at 1); (iii) Plaintiffs SFF-TIR, LLC, Stuart Family Foundation, Inc., Alan Stuart 2012 GST Family Trust, Stuart 2005 GST Family Trust, Celebration, LLC, Anurag Agarwal, and Rodney M. Reynolds "rejected the Defendants' offers of judgments and counter-offered for $540,000 more per share than the $451,000 the jury found to be the fair value," Defendants' Motion at 4 (citing Notice of Counteroffer at 2, 6, 10, 14, 18, 22, 26, filed October 3, 2017 (Doc. 459-3))(emphasis in original); (iv) the "jury returned a verdict in favor of the Defendants, found that [] $451,000 was fair value, and awarded Plaintiffs zero damages," Defendants' Motion at 4 (citing Special Verdict Form at 1)(emphasis in original); and (v) SFF-TIR, LLC, Stuart Family Foundation, Inc., Alan Stuart 2012 GST Family Trust, Stuart 2005 GST Family Trust, Celebration, LLC, Agarwal, and Reynolds "recovered less than the Oklahoma Statutory Offer of Judgment made to them by the Defendants on October 27, 2014," Defendants' Motion at 4. The Defendants argue that they are "entitled to an award of

both their reasonable attorney fees and their reasonable litigation costs," because the Plaintiffs did not recover anything from the jury.  Defendants' Motion at 4.

The Defendants calculate their reasonable time spent in the case to be 7,536.1 hours.  See Defendants' Motion at 4 (citing Recapitulation of Defendants' Fees and Expenses October 27, 2014 through September 20, 2017 [Monthly Detail Follows] at 2-177, filed October 3, 2017 (Doc. 459-4)("Fees and Expenses"); Affidavit of Frederic Dorwart at 2-4, filed October 3, 2017 (Doc. 459-5)).  The Defendants note that, "[u]nder Oklahoma law, work performed by paralegals is compensable as an award of attorney fees."  Defendants' Motion at 1 n.4 (citing State Bank & Tr. Co. v. First State Bank of Tex., 242 F.3d 390, 2000 WL 1862690, at *15 (10th Cir. 2000)(unpublished); Taylor v. Chubb Grp. of Ins. Cos., 1994 OK 47, ¶ 12, 874 P.2d 806, 808-09).  The Defendants also request attorney's fees for "the period following September 20, 2017 until the Court enters judgment on this Application, which additional amount will be substantiated by a supplemental filing."  Defendants' Motion at 4.  They argue that their time spent calculations are reasonable, because they applied "both pre-billing and post-billing adjustments," and "exercised billing judgment in good faith."  Defendants' Motion at 5 (citing Fees and Expenses at 2-177, and Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Fallen v. GREP Sw., LLC, 427 F. Supp. 3d 1165 (D.N.M. March 30, 2017)(Browning, J.); In re Reconversion Techs., Inc., 216 B.R. 46, 57 (Bankr. N.D. Okla. 1997)(Michael, J.)).  The Defendants assert that they made a "good faith effort to exclude hours which are redundant, excessive, or otherwise did not add material value through counsel's pre-billing and post-billing adjustments."  Defendants' Motion at 5 (citing Ellis v. Univ. of Kans. Med. Ctr., 163 F.3d 1186, 1202 (10th Cir. 1998)).  The Defendants also note that they "have discounted by ten percent

certain time described in what could be characterized as block billing." Defendants' Motion at 5. According to the Defendants, the Court has concluded that, "when block-bill entry sufficiently allows the Court to determine the time allotted by the attorneys to specific tasks and the reasonableness of that time, no deduction is warranted." Defendants' Motion at 5 (citing Kelley v. Albuquerque, No. CIV 03-507 JB\ACT, 2005 WL 3663515, at *11, *13 (D.N.M. Oct. 24, 2005)(Browning, J.)).

The Defendants also argue that their hourly rates are reasonable. See Defendants' Motion at 6. The Defendants calculate their reasonable hourly rates for attorneys and paralegals to be $75.00 to $425.00 per hour. See Fees and Expenses at 2-177. According to the Defendants, their hourly rates "are usual and customary rates in Tulsa, Oklahoma for lawyers and paralegals of comparable skills and experience, as established by the annual surveys of rates charged by legal professionals in the Tulsa legal community." Defendants' Motion at 6 (citing Year 2016 Local Customary Rate Survey of Tulsa Law Firms at 2-29, filed October 3, 2017 (Doc. 459-7)("Tulsa Rates Surveys")). The Defendants note that the Tulsa Rates Surveys are "regularly used by Oklahoma courts to determine reasonable hourly rates in a variety of legal contexts." Defendants' Motion at 6 (citing In re Ridley, CASE NO. 11-81817-TRC, 2017 WL 3126888, *2-3 (Bankr. E.D. Okla. July 21, 2017)(Cornish, J.); Chatman v. Butler, No. 12-CV-182-JHP, 2013 WL 5729603, *2 (E.D. Okla. Oct. 22, 2013)(Payne, J.); In re Latshaw Drilling, LLC, 481 B.R. 765, 803-04 (Bankr. N.D. Okla. 2002); Affidavit of Frederic Dorwart at 2-3).

The Defendants also argue that they are entitled to reasonable litigation costs under Oklahoma law. See Defendants' Motion at 6 (citing 12 Okla. Stat. Ann. § 1101.1(B)(3)). The Defendants contend that "reasonable litigation costs cover more than ordinary costs authorized

by general statutory law" under Oklahoma's offer-of-judgment statute. Defendants' Motion at 7 (citing <u>Fuller v. Pacheco</u>, 2001 OK CIV APP 39, ¶¶ 29-33, 21 P.3d 74, 79-82; <u>Cullen v. Whitman Med. Corp.</u>, 197 F.R.D. 136, 151 (E.D. Va. 2000)(Brody, J.)). The Defendants request reasonable litigation costs for the following expenses: (i) expert witness fees totaling $199,086.24, <u>see</u> Defendants' Motion at 7 (citing Letters from Jason N. Wilcox to Fred Dorwart at 2-17 (dated June 30, 2015, July 31, 2015, August 31, 2015, October 13, 2015, February 6, 2017, April 27, 2017, August 31, 2017, and September 14, 2017), filed October 3, 2018 (Doc. 459-9)("Expert Witness Fees")); (ii) deposition costs totaling $55,928.45, <u>see</u> Defendants' Motion at 7 (citing Professional Reporters Invoices at 2-47, filed October 3, 2018 (Doc. 459-10)("Deposition Costs")); (iii) hearing/trial transcript costs totaling $17,014.58, <u>see</u> Defendants' Motion at 7 (citing Untitled Exhibit at 2-14, filed October 3, 2017 (Doc. 459-11)("Transcript Costs")); (iv) online legal research costs totaling $197,942.82, <u>see</u> Defendants' Motion at 7-8 (citing Fees and Expenses at 2-177); (v) technology specialist costs totaling $17,971.33 for services from a firm called Litgistix, <u>see</u> Defendants' Motion at 8 (citing Litgistix Invoice at 2-29, filed October 3, 2017 (Doc. 459-12)); and (vi) technology specialist costs totaling $91,366.00 for services from a firm called Avansic, <u>see</u> Defendants' Motion at 8 (citing Avansic Invoice at 2-61, filed October 3, 2017 (Doc. 459-13)).

The Defendants calculate the reasonable attorney's fees to be $2,658,353.09 before applying any adjustments. <u>See</u> Defendants' Motion at 8. The Defendants calculate the pre-billing adjustments to total $342,182.99, the post-billing adjustments to total $221,732.25, and the block-billing adjustments to total $16,107.80. <u>See</u> Defendants' Motion at 8. After deducting these adjustments, the Defendants calculate the total reasonable attorney's fees to be

$1,809,925.29.  See Defendants' Motion at 8.  The Defendants calculate the reasonable litigation costs to be $614,462.14.  See Defendants' Motion at 8.  Consequently, the Defendants request a total award of $2,424,387.43.  See Defendants' Motion at 9.

      **6.**      **The Plaintiffs' Response.**

      The Plaintiffs responded to the Defendants' Motion on October 24, 2017.  See Plaintiffs' Response to Defendants' Corrected Motion for Reasonable Attorney Fees and Litigation Costs (Doc. 464)("Plaintiffs' Response").  The Plaintiffs ask the Court to: (i) "hold Defendants' fee motion in abeyance"; (ii) "grant Plaintiffs' motion for reasonable attorney's fees and costs as part of Plaintiffs' remedy for Defendants' breach of the fiduciary duty of loyalty, and set a schedule for Plaintiffs to submit an application documenting their reasonable fees and costs"; (iii) "rule on Plaintiffs' application for fees and costs"; and (iv) "enter a judgment incorporating both the jury verdict and the Court's award of Plaintiff's attorney fees and costs."  Plaintiffs' Response at 2.  The Plaintiffs argue that, if their total judgment is larger than the "Defendants' offer of judgment (as to each Plaintiff), the Court should deny Defendants' fee motion, because . . . the Oklahoma offer of judgment statute . . . will not apply."  Plaintiffs' Response at 2.  According to the Plaintiffs, the Court should decide their fee motion first, "because Delaware law compels an award to Plaintiffs that will render Defendants' fee motion moot."  Plaintiffs' Response at 2.  The Plaintiffs further argue that the Court should deny the Defendants the fees and costs they request, because the "Defendants' offers of judgment were unreasonably low, and thus under Oklahoma law do not entitle them to fees or costs," and "the fees and costs Defendants have requested are unreasonable."  Plaintiffs' Response at 2.

The Plaintiffs argue that the "Court *cannot* rule on Defendants' fee motion," because the Court has not entered a judgment. Plaintiffs' Response at 3 (emphasis in original). The Plaintiffs contend that, although Oklahoma's offer-of-judgment statute applies where "'*the judgment awarded the plaintiff* is less than one or more offers of judgment,'" Plaintiffs' Response at 3 (quoting 12 Okla. Stat. Ann. § 1101.1(B)(3))(emphasis in Plaintiffs' Response), the Court has not ordered any judgments for the Plaintiffs, see Plaintiffs' Response at 3. According to the Plaintiffs, Oklahoma's offer-of-judgment statute "'does not authorize an award of attorney fees or costs unless there has been a judgment entered as to the action or the claim or claims included in the Offer, something that has not occurred here.'" Plaintiffs' Response at 3 (quoting Boston Ave. Mgmt., Inc. v. Associated Res., 2007 OK 5, ¶ 9, 152 P.3d 880, 884). The Plaintiffs argue that, because the Court has not entered a judgment, Oklahoma's offer-of-judgment statute "'does not authorize an award of attorney fees or costs' at this time." Plaintiffs' Response at 4 (quoting Boston Ave. Mgmt., Inc. v. Associated Res., 2007 OK 5, ¶ 9, 152 P.3d at 884).

The Plaintiffs argue that, because the Defendants cite no basis for recovery of fees and costs other than Oklahoma's offer-of-judgment statute, if the statute does not apply, then the "Defendants are not entitled to recover any of their attorney's fees or litigation costs." Plaintiffs' Response at 4. The Plaintiffs argue that "Delaware law compels an award to *Plaintiffs* of *Plaintiffs'* attorney's fees and costs," because the Court has concluded that the Defendants are liable for breach of the fiduciary duty of loyalty. Plaintiffs' Response at 4 (emphasis in original). According to the Plaintiffs, the Defendants' breach "render[s] the Oklahoma offer of judgment statute inapplicable." Plaintiffs' Response at 4. The Plaintiffs contend that, when the Court

enters judgment and if it decides to award the Plaintiffs fees and costs, "12 O.S. § 1101.1(C) requires that those 'attorney fees and costs otherwise recoverable shall be included in the amount of the compared judgment.'" Plaintiffs' Response at 5 (quoting 12 Okla. Stat. Ann. § 1101.1(C)). The Plaintiffs argue: "If . . . the Court awards each Plaintiff attorney's fees in an amount exceeding Defendants' offer of judgment to that Plaintiff, 'the judgment awarded the plaintiff' will not be 'less than [the] offer[] of judgment,' and thus Defendants shall not be 'entitled to reasonable litigation costs and reasonable attorney fees.'" Plaintiffs' Response at 5 (quoting 12 Okla. Stat. Ann. § 1101.1(B)(3))(alterations in Plaintiffs' Response).

The Plaintiffs next argue that "'it would be unfair and inequitable'" for the Plaintiffs to pay the Defendants' attorney's fees and litigation costs, because the "Defendants' breach of their fiduciary duty of loyalty made litigation necessary." Plaintiffs' Response at 5 (quoting William Penn P'ship v. Saliba, 13 A.3d 749, 759 (Del. 2011)). According to the Plaintiffs, "an award of Plaintiffs' attorney's fees and costs 'is supported by Delaware law in order to discourage outright acts of disloyalty by fiduciaries.'" Plaintiffs' Response at 5 (quoting William Penn P'ship v. Saliba, 13 A.3d at 759). The Plaintiffs ask the Court to exercise its discretion to fashion an equitable remedy by taking "into account Defendants' offers of judgment in determining what fee award is warranted to prevent Plaintiffs from being 'penalized for bringing a successful claim'" against the Defendants. Plaintiffs' Response at 5-6 (quoting William Penn P'ship v. Saliba, 13 A.3d at 759). The Plaintiffs explain:

> [I]f the Court awards Plaintiffs (collectively) a total of more than $80,000 in fees and costs, this would render moot Defendants' claim for fees and costs from October 27, 2014 forward based on their first offers of judgment. Moreover, if the Court awards Plaintiffs (collectively) more than $784,550 in fees and costs, this would render moot Defendants' claim for fees and costs from July 20, 2017

forward, based on their second, July 20, 2017 offers of judgment to all remaining
Plaintiffs.

Plaintiffs' Response at 6 (footnotes omitted). According to the Plaintiffs, "Delaware law
mandates that plaintiffs should not be penalized for suing to prove Defendants' breach of duty,
and Defendants should not be rewarded for that breach." Plaintiffs' Response at 6.

The Plaintiffs argue that "it would be inequitable to award Defendants their attorney's
fees or costs under their offers of judgment on the basis of the jury's $451,000 verdict."
Plaintiffs' Response at 7. The Plaintiffs note that the jury verdict determined that TIR, Inc.'s
shares were worth $2,550.00 "less than the amount necessary to nullify Defendants' first offers
of judgment." Plaintiffs' Response at 7. The Plaintiffs also contend that the Defendants' expert
calculated a damages amount that exceeds the Defendants' offers of judgment in October, 2014,
and on July 20, 2017. See Plaintiffs' Response at 8. The Plaintiffs also argue that, during the
closing arguments, the Defendants misstated the law, and thus the jury could have determined a
higher fair value for TIR, Inc.'s stocks, which would have resulted in damages that exceed the
Defendants' offers of judgment. See Plaintiffs' Response at 8-9. The Plaintiffs aver that the
"Court should award Plaintiffs their fees as a remedy for Defendants' breach, in an amount
sufficient to make Defendants' offers of judgment inapplicable." Plaintiffs' Response at 9.

The Plaintiffs next argue that none of the Defendants' offers of judgment was reasonable.
See Plaintiffs' Response at 9-10. According to the Plaintiffs, "'[t]he Oklahoma Supreme Court
has ruled that offers of judgment under § 1101.1 must be reasonable.'" Plaintiff's Response
at 10 (quoting Bryant v. Sagamore Ins. Co., 615 F. App'x 917, 921 (10th Cir.
2015)(unpublished)). The Plaintiffs assert that "'an unreasonable offer judgment negates

awarding litigation costs and attorney fees provided in § 1101.1(B).'" Plaintiffs' Response at 10 (quoting Hubbard v. Kaiser-Francis Oil Co., 2011 OK 50, ¶ 22, 256 P.3d 69, 75). The Plaintiffs argue that the Defendants' offers of judgment "were not reasonable or realistic offers intended to achieve settlement. Rather, they were purely a trial tactic so that Defendants could make an unreasonable offer of judgment and then . . . recover their litigation costs and reasonable attorney fees if they prevailed." Plaintiffs' Response at 10. The Plaintiffs assert that the Defendants "were well aware" that their offers of judgment exceeded the $451,000.00 merger consideration by about $2,500, and thus the offers were "not reasonable offers likely to lead to settlement." Plaintiffs' Response at 11.

The Plaintiffs also argue that the Defendants' requested fees and costs are unreasonable. See Plaintiffs' Response at 11. The Plaintiffs "request the opportunity to present their more specific objections to Defendants' fees and costs before the Court rules on Defendants' fee application." Plaintiffs' Response at 11-12. First, the Plaintiffs contend that they should not have to pay for "additional fees resulting from the delays in resolving the pretrial motions and bringing the case to trial." Plaintiffs' Response at 12. The Plaintiffs note that "the parties engaged in substantial trial preparation twice," because the district judges in the Northern District of Oklahoma recused themselves "before a June 2016 scheduled trial date, and after the parties had completed a pretrial order." Plaintiffs' Response at 12. Second, the Plaintiffs contend that they should not have to pay the Defendants' "fees or costs incurred for work on Plaintiffs' federal securities law claims." Plaintiffs' Response at 12. The Plaintiffs argue that Oklahoma's offer-of-judgment statute does not apply to the federal securities law claims, because the "Plaintiffs' securities law claims arose under the Court's federal question

jurisdiction." Plaintiffs' Response at 12. Third, the Plaintiffs contend that they should not have to pay the Defendants' "fees and costs for numerous meritless motions made by Defendants, all of which were denied, including a baseless sanctions motion . . . and a baseless motion to compel privileged information." Plaintiffs' Response at 12-13.

### 7. **The Defendants' Reply.**

The Defendants replied to the Plaintiffs' Response on November 7, 2017. See Defendants' Reply in Support of Motion for Reasonable Attorney Fees and Litigation Costs, filed November 7, 2017 (Doc. 470)("Defendants' Reply"). The Defendants note that the "Plaintiffs do not dispute that the Oklahoma Offer of Judgment Statute is applicable." Defendants' Reply at 1. The Defendants argue that the Court should enter judgment immediately, and that, when the Court enters judgment, "the Defendants are entitled to recover their reasonable fees and costs because Plaintiffs are not entitled to any offset of their own fees and costs." Defendants' Reply at 2.

The Defendants argue that the Plaintiffs "erroneously assert that any fees awarded to the Plaintiffs may be used to offset the Offers." Defendants' Reply at 3 (citing Plaintiffs' Response at 4)(emphasis in original). According to the Defendants, "only fees for work performed before the Offers were made can be used to determine whether Plaintiffs obtained a judgment more favorable than the Offers." Defendants' Reply at 3 (emphasis in original). The Defendants cite two reasons: (i) "[t]he provision of Delaware law granting a Chancery Court authority to award fees based on pre-litigation conduct offends Oklahoma public policy and has already been rejected under Oklahoma law"; and (ii) "[e]ven under Delaware law, Plaintiffs are not entitled to any fees or costs." Defendants' Reply at 3. The Defendants argue that they paid the Plaintiffs

the TIR, Inc. stock's fair value, the Plaintiffs were "fully informed leading up to and during the merger process," the Defendants did not engage in wrongful conduct, and the "transaction was not fraudulent." Defendants' Reply at 4 (emphasis omitted). The Defendants add that they "merely exercised their statutory right to cash-out the minority at a fair price with after-the-fact notice." Defendants' Reply at 4 (emphasis omitted). The Defendants aver that the Plaintiffs erroneously thought "they could legally block the merger" and, to stall the Merger, tried to "extract a far higher price than" the price received by shareholders. Defendants' Reply at 4. The Defendants argue that neither Delaware law nor Oklahoma law permits the Plaintiffs to recover fees and costs, because the Plaintiffs' "inequitable behavior establishes that Plaintiffs cannot . . . be rewarded for having wrongfully filed -- and lost -- this action." Defendants' Reply at 5. According to the Defendants, "Delaware law permits the court to award a losing plaintiff some of its fees and costs only where the pre-litigation conduct was egregious," Defendants' Reply at 5 (citing, e.g., Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d 225, 233 (Del. Ch. 1997), aff'd, 720 A.2d 542 (Del. 1998)), and, "[a]s a matter of Oklahoma constitutional law, Oklahoma has clearly rejected awarding fees based on pre-litigation conduct," Defendants' Reply at 5 (citing, e.g., Barnes v. Okla. Farm Bureau Mut. Ins. Co., 2004 OK 25, ¶¶ 13-14, 94 P.3d 25, 29 ("Barnes II")).

The Defendants next argue that their offers of judgment "were patently reasonable." Defendants' Reply at 6. The Defendants give four reasons why their offers of judgment are reasonable: (i) "the Offers were more than the jury awarded Plaintiffs"; (ii) two of the Plaintiffs, Signorello and Buckley, "each accepted the Offers which the non-settling Plaintiffs rejected"; (iii) the "Defendants made the Offers of Judgment only after Plaintiffs' action had been pending

for four months during which Defendants . . . incurred over $250,000 in legal expenses"; and (iv) TIR, Inc.'s shareholders who are not Plaintiffs "received no more than $451,000 per share in 2013," and some received far less money. Defendants' Reply at 6-7. According to the Defendants, "these four factors enable this Court to easily conclude the Offers were reasonable." Defendants' Reply at 7 (footnote omitted).

The Defendants also argue that their requested fees and costs are reasonable. See Defendants' Reply at 7. The Defendants assert that their "lode-star presentation of [] fees and expenses included careful billing discretion," and that they wrote off "$342,189.99 in pre-billing adjustments and an additional $237,840.05 in post-billing adjustments." Defendants' Reply at 7 (citing Defendants' Motion at 8). The Defendants aver that the "Plaintiffs allege, without authority, that work on federal claims cannot be awarded under the Oklahoma Offer of Judgment Statute . . . despite authority to the contrary." Defendants' Reply at 8 (citing Talbott v. Am. Isuzu Motors, Inc., 31 Fla. L. Weekly D2021, 934 So.2d 643, 646-47 (Fla. Dist. Ct. App. 2006)). According to the Defendants, the Plaintiffs' "four false allegations,"[45] which the Plaintiffs

---

[45]In the Sanctions Motion, the Defendants request that the Court sanction the Plaintiffs for making "four core allegations" in their Complaint without any factual basis. Motion for Sanctions at 2. These four allegations include:

Pooled Shareholders Allegations: "[D]efendants were secretly planning . . . to undertake an initial public offering of a master limited partnership in an entity comprised in part of TIR's asserts. Defendants planned to exchange their own TIR shares and the additional shares acquired from these shareholders for far more valuable equity in that master limited partnership. Defendants failed to disclose that material information when they acquired the shares."

Interest Expense Allegations: "[D]efendants further sought to pressure Plaintiffs by stating . . . that they would penalize those remaining shareholders

withdrew, "were common to both the Oklahoma Securities Act[, 71 Okla. Stat. Ann. § 408,]

claims and the Securities Exchange Act of 1934[, 15 U.S.C. § 78(a)-(qq),] claims." Defendants'

Reply at 8.[46]   The Defendants argue that the "forced seller doctrine[47] was integral to Plaintiffs'

---

who did not tender their shares by charging them with a substantial, arbitrary, and unauthorized interest expense."

Tender Offer Allegations: "The Tender Offer omitted and/or misrepresented material information in numerous respects. . . ." Doc. 1, p. 22 ¶5; p .22, ¶ 116, and "[i]n reliance upon the information contained in the Tender Offer . . . , Plaintiffs exchanged their TIR shares for the Merger consideration."

Merger Notice Allegations: The Merger notice contained misrepresentations and omissions of material fact. . . .   In addition, the Merger offered Plaintiffs the alternative to seek appraisal rights, but only on the basis of materially incomplete information and materially false statements[,]" and "[i]n reliance upon the information contained in the . . . .   Merger notice, Plaintiffs exchanged their TIR shares for the Merger consideration."

Sanctions Motion at 2 (quoting Complaint ¶¶ 11, 16, 116, 132, 136, 178, 198, at 3, 4, 22, 26, 27, 39)(citations omitted)(bullets and emphasis omitted).  In the Order, filed September 25, 2015 (Doc. 163)("Sept. 25 Order"), the Honorable Terence Kern, United States District Judge for the United States District Court for the Northern District of Oklahoma, granted the Plaintiffs' request in the Plaintiffs' Motion to Amend, filed July 31, 2015 (Doc. 134)("Motion to Amend"), to "file an amended complaint which removes the allegations challenged by Defendants in their Letter." Sept. 25 Order at 2.  Judge Kern denied, however, the Plaintiffs' request to "add any new allegations to their amended complaint." Sept. 25 Order at 2.  Accordingly, Judge Kern held that the "Plaintiffs' willingness to make the changes requested by Defendants moots the need for any further Rule 11 investigation, and Defendants' Motion for Sanctions is therefore denied." Sept. 25 Order at 3.

[46]The Plaintiffs' federal and state securities claims include the Plaintiffs' fifth, sixth, seventh, and eighth claims in the Complaint.  See Complaint at ¶¶ 168-211, at 33-41.

[47]SEC rule 10b-5, as the Supreme Court confirmed in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975), requires that one be a purchaser or seller of securities to pursue a private claim alleging fraud under Securities and Exchange Act of 1934's § 10(b).  See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. at 727-28.  The forced-seller doctrine, as the United States Court of Appeals for the Second Circuit first enunciated it in Vine v. Beneficial Finance Co., 374 F.2d 627, cert denied 389 U.S. 970 (1967), was a particularized response to the

difficulties many dissenting shareholders face when a short form merger situation requires dissenters to cash out -- constructively sell -- their shares. In the years since <u>Vine v. Beneficial Finance Co.</u>, the federal courts have gradually expanded the forced-seller doctrine to encompass situations where the fundamental nature of the plaintiff's investment has changed even in the absence of a sale as a consequence of circumstances beyond the plaintiff's control. In 1976, the Second Circuit reconfirmed its position from <u>Vine v. Beneficial Finance Co.</u> in <u>Green v. Santa Fe Industries, Inc.</u>, 533 F.2d 1283 (1976), <u>rev'd on other grounds in</u> 430 U.S. 462 (1977), ruling that minority shareholders in a company dissolved as part of a short-form merger have standing to bring suit under SEC rule 10b-5, alleging that the corporation's majority shareholders had breached their fiduciary duty to them by undervaluing the minority shares for purposes of the cash-out share price. <u>See</u> <u>Santa Fe Industries, Inc.</u>, 533 F.2d at 1292. Two years later, the Delaware Court of Chancery held, in <u>Valente v. Pepsico, Inc.</u>, 454 F. Supp. 1228 (Del. Ch. 1978), that shareholders confronted with an allegedly deceptive tender offer which resulted in the defendants obtaining sufficient stock to effect a short-form merger were forced sellers with standing on a rule 10b-5 claim. <u>See</u> <u>Valente v. Pepsico, Inc.</u>, 454 F. Supp. at 1236.

The Tenth Circuit and the United States Courts of Appeals for the Seventh Circuit are the only United States Courts of Appeals never to have endorsed the forced-seller doctrine in any form or at any level. The Tenth Circuit, in <u>Katz v. Gerardi</u>, 655 F.3d 1212 (10th. Cir. 2011), in an opinion that then-Judge and now Chief Judge Tymkovich wrote, and Judges Brorby and Matheson joined, noted that "[w]e have previously declined to adopt the fundamental change doctrine and we decline to do so again here for several reasons." 655 F.3d at 1221. One of these reasons was that "the doctrine only applies to claims under the 1934 Act, where Katz's claims here arise under the 1933 Act." 655 F.3d at 1221. The second reason is that the forced-seller doctrine is something of a misnomer, insofar as it only applies when the plaintiff purchases shares -- not when the plaintiff sells them. <u>See</u> 655 F.3d at 1221. Because that case's defendants had cashed Katz' shares out against Katz' will and Katz had not purchased new units in the post-merger entity, the Tenth Circuit held that the forced-seller doctrine did not apply. <u>See</u> 655 F.3d at 1221-22. The Tenth Circuit insisted that it was on solid ground on this second point, quoting from a Seventh Circuit opinion on the same case and facts when the Seventh Circuit heard the case's appeal regarding removal to federal court:

> Katz depicts himself as a buyer by characterizing the supposed failure to honor the terms of the A-1 Units as if he had sold those securities and "bought" what Katz calls "new A-1 Units," which he then sold for cash. (A "purchase" of "new A-1 Units" would have been involuntary, but an involuntary purchase is still a purchase.)
>
> What Katz calls the "fundamental change doctrine" that turns a sale into a purchase is word play designed to overcome the actual text of the securities laws, and this circuit follows the statutes rather than trying to evade them with legal fictions. Katz sold his units for cash; he did not buy any new security. The "new A-1 Units" are figments of a lawyer's imagination. Using legally fictitious (and

arguments concerning both the Oklahoma and Federal Acts . . . and Defendants' counter-argument," and, therefore, their work researching these laws "is not divisible and should not be excluded." Defendants' Reply at 8 (citing Travelers Indemn, Co. v. Hans Lingl Anlagenau, 189 F. App'x 782, 788 (10th Cir. 2006); Musket Corp. v. Star Fuel of Okla., 2016 WL 1057800, at *5 (W.D. Okla. March 14, 2016)(Miles-LaGrange, J.); Bank of Am., N.A. v. Unknown Successors of Lewis, 2014 OK CIV APP 78, ¶ 47, 336 P.3d 1034, 1046).

The Defendants counter the Plaintiffs' assertion that the Defendants' Motion for Sanctions Pursuant to Rule 11 and Brief in Support Thereof, filed August 4, 2015 (Doc. 142)("Sanctions Motion"), is "'baseless.'" Defendants' Reply at 9 (quoting Plaintiffs' Response at 11). The Defendants argue that their Sanctions Motion "was a necessary response to Plaintiffs' misuse of the Rule 11 process." Defendants' Reply at 9. According to the Defendants, the "Court: (i) permitted Plaintiffs to withdraw their false allegations; (ii) prohibited Plaintiffs from filing any additional allegations; and (iii) denied Defendants' Motion for Sanctions only because Plaintiffs' withdrawal of the false allegations mooted the Motion for Sanctions." Defendants' Reply at 9 (emphasis in original). The Defendants also counter the Plaintiffs' argument that the Defendants' delayed "production of 'thousands of responsive documents'" forced the Plaintiffs to file the Plaintiffs' Motion for a Discovery Conference and for an Order to Compel Defendants to Produce Responsive Documents, filed October 31, 2014 (Doc. 47)("Plaintiffs' Motion to Compel"), and their Memorandum of Law in Support of

---

factually nonexistent) "new A–1 Units" to nullify a legislative decision that only buyers have rights under the 1933 Act would be wholly unjustified.

Katz v. Gerardi, 552 F.3d 558, 560 (7th Cir. 2009)(citations omitted in Katz v. Gerardi, 655 F.3d at 1221).

Plaintiffs' Motion for a Discovery Conference and for an Order Compel Defendants to Produce Responsive Documents, filed October 31, 2014 (Doc. 48)("Motion to Compel Brief"). Defendants' Reply at 9 (quoting Plaintiffs' Response at 12). The Defendants note that the Court addressed "only two of the seven issues raised by Plaintiffs" in the Motion to Compel, because the "other information at issue in Plaintiffs' Motion [to Compel] had already been provided, mostly <u>before</u> the Motion [to Compel] was even filed." Defendants' Reply at 9 (emphasis in original). The Defendants also contend that the Court ordered production of TIR, Inc.'s financial reports pertaining to a shorter time period than what the Plaintiffs requested. <u>See</u> Defendants' Reply at 10. The Defendants argue that, before the Plaintiffs filed the Motion to Compel, the "Defendants had: (i) produced more than 212,000 pages of documents less than eight weeks after receiving the 38 far-reaching document requests; and (ii) responded to Plaintiffs' follow up requests with supplemental productions." Defendants' Reply at 10 (citing Defendants' Response to Plaintiffs' Motion for Discovery Conference and to Compel Production of Documents (Doc. 47), filed November 21, 2014 (Doc. 58)("Motion to Compel Response")). The Defendants conclude by arguing that "Oklahoma law should govern Plaintiffs' fee request," and that, whether Oklahoma law or Delaware law applies, the "Plaintiffs are not entitled to any fees or costs." Defendants' Reply at 10-11.

       **8.**     <u>**The Plaintiffs' Motion.**</u>

       The Plaintiffs filed the Plaintiffs' Motion on October 18, 2017. <u>See</u> Plaintiffs' Motion at 1. The Plaintiffs request, pursuant to rule 54(d)(2) of the Federal Rules of Civil Procedure, that the Court grant "them their reasonable attorney's fees and related expenses incurred in prosecuting this case through trial." Plaintiffs' Motion at 4. The Plaintiffs note that the Court

held in its Memorandum Opinion and Order, filed September 8, 2017 (Doc. 410)("Sept. 8 MOO"), that "'Delaware law governs the availability of attorney's fees and . . . the Court, not the jury, will determine whether the Plaintiffs will be able to recover their attorney's fees.'" Plaintiffs' Motion at 4 (quoting Sept. 8 MOO at 1). The Plaintiffs recount that, on April 25, 2017, the Court determined that the Defendants were liable for breaching their fiduciary duty of loyalty to the Plaintiffs and "held that the case would proceed to a trial on damages to determine the amount that Defendants were required to pay Plaintiffs for their breach." Plaintiffs' Motion at 5 (citing April 25 MOO, 250 F. Supp. 3d 856). The Plaintiffs note that, on September 14, 2017, "the jury returned a verdict finding that none of the Plaintiffs were entitled to receive damages." Plaintiffs' Motion at 6.

The Plaintiffs argue that, "[u]nder well-established Delaware law, the Court's finding that Defendants breached their fiduciary duty of loyalty to the Plaintiffs warrants an award to Plaintiffs of their attorney's fees as a remedy for that breach." Plaintiffs' Motion at 7. According to the Plaintiffs, the Supreme Court of Delaware has affirmed attorney's fees awards in similar situations where "fiduciaries were found to have breached their fiduciary duty of loyalty by failing to prove that a self-dealing transaction was entirely fair, but Plaintiffs were not awarded monetary damages." Plaintiffs' Motion at 7 (citing Saliba v. William Penn P'ship, 2010 WL 1641139, at *1 (Del. Ch. April 12, 2010), aff'd, 13 A.3d 749 (Del. 2011); In re Nine Sys. Corp. S'holders Litig., 2014 WL 4383127 (Del. Ch. Sept. 4, 2014)("Nine Sys. I"); In re Nine Sys. Corp. S'holders Litig., 2015 WL 2265669 (Del. Ch. May 7, 2015)("Nine Sys. II"), aff'd sub nom. Fuchs v. Wren Holdings, LLC, 129 A.3d 882 (Del. 2015)("Nine Sys. III")). The Plaintiffs assert:

> Delaware courts hold, "where there has been a breach of the duty of loyalty . . . potentially harsher rules come into play and the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly" but rather "[t]he strict imposition of penalties under Delaware law are designed to discourage disloyalty" and an award of attorneys' fees and costs -- as part of the broad equitable remedy available for breach of fiduciary duty -- "is supported by Delaware law in order to discourage outright acts of disloyalty by fiduciaries."

Plaintiffs' Motion at 8 (quoting <u>William Penn P'ship v. Saliba</u>, 13 A.3d at 758-59).

The Plaintiffs argue that they are entitled to attorney's fees, because the Defendants' wrongdoing "made this litigation necessary." Plaintiffs' Motion at 8 (emphasis omitted). The Plaintiffs contend that, under Delaware law, when a court determines that the defendants breached a fiduciary duty, the defendants "'who violated their fiduciary obligations were the cause of this litigation [and] are the parties who properly should bear the fees and costs made necessary solely by reason of their faithless conduct.'" Plaintiffs' Motion at 8-9 (quoting <u>William Penn P'ship v. Saliba</u>, 13 A.3d at 759, and citing <u>Saliba v. William Penn P'ship</u>, 2010 WL 1641139, at *1; <u>Nine Sys. II</u>, 2015 WL 2265669, at *2). The Plaintiffs note that, in <u>Nine Systems II</u>, the Delaware Court of Chancery "awarded attorney's fees where -- just as here -- Plaintiffs successfully proved a breach of the fiduciary duty of loyalty but received no money damages for the breach." Plaintiffs' Motion at 9 (citing <u>Nine Sys. II</u>, 2015 WL 2265669, at *2). The Plaintiffs explain that the Delaware Court of Chancery held:

> "That is not to say, however, that the Plaintiffs are wholly without a remedy. Based in part on its inherent equitable power to shift attorneys' fees and its statutory authority to shift costs, this Court has exercised its discretion and concluded that, even where a transaction was conducted at a fair price, a finding that the transaction was not entirely fair may justify shifting certain of the plaintiffs' attorneys' fees and costs to the defendants who breached their fiduciary duties."

Plaintiffs' Motion at 9 (quoting <u>Nine Sys. I</u>, 2014 WL 4383127, at *51-52)(emphasis omitted). Similarly, the Plaintiffs note that, in <u>William Penn Partnership v. Saliba</u>, the Supreme Court of Delaware affirmed an attorney's fees award, even though it "declined to award money damages to the plaintiffs." Plaintiffs' Motion at 11 (citing <u>William Penn P'ship v. Saliba</u>, 13 A.3d at 758; <u>Saliba v. William Penn P'ship</u>, 2010 WL 1641139, at *1). The Plaintiffs explain that the Supreme Court of Delaware concluded that the defendants "had failed to prove that their self-dealing transaction involving company property was entirely fair" but determined that the "sales price of the property was 'within the range of fairness.'" Plaintiffs' Motion at 11 (quoting <u>William Penn P'ship v. Saliba</u>, 13 A.3d at 758).

The Plaintiffs argue that <u>Nine Systems II</u> and <u>William Penn Partnership v. Saliba</u> "compel an award of Plaintiffs' fees and costs." Plaintiffs' Motion at 11. According to the Plaintiffs, the equitable power to award attorney's fees applies "'where the situation or the equities dictate that such a burden should not fall on the prevailing party.'" Plaintiffs' Motion at 10 (quoting <u>Nine Sys. II</u>, 2015 WL 2265669, at *2, and citing <u>Reagan v. Randell</u>, 2002 WL 1402233, at *3 (Del. Ch. June 21, 2002); <u>Loretto Literary & Benevolent Inst. v. Blue Diamond Coal Co.</u>, 444 A.2d 256, 260 (Del. Ch. 1982); <u>Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund</u>, 68 A.3d 665, 686-87 (Del. 2013)). The Plaintiffs explain that "'[w]hat particularly drives the [Delaware] Court's conclusion is that the fair price inquiry presented at trial was severely hampered by the unfairness of the process, that the Court found Defendants had employed.'" Plaintiffs' Motion at 11 (quoting <u>Nine Sys. I</u>, 2014 WL 4383127, at *47). The Plaintiffs assert that awarding them attorney's fees would "promote equity," because the Court already concluded that the Defendants breached their fiduciary duties "based

on [their] *complete failure* to take *any steps* to fulfill their fiduciary duty to protect Plaintiffs' interests in the TIR Merger." Plaintiffs' Motion at 11-12 (citing Reconsideration MOO, 264 F. Supp. 3d at 1244-47)(emphasis in original). The Plaintiffs emphasize the Court's conclusion in the Reconsideration MOO that "'even a de novo review of the entire-fairness doctrine does not uncover evidence that the court committed error in its ruling that the defendants are liable for a breach of fiduciary duty.'" Plaintiffs' Motion at 13 (quoting Reconsideration MOO, 264 F. Supp. 3d at 1229).

The Plaintiffs argue that "this litigation was the direct result of Defendants' conduct," because the Defendants did not calculate the fair value of the Plaintiffs' TIR, Inc. shares before entering into a Merger Agreement. Plaintiffs' Motion at 14. See Notice to Former Shareholders of Tulsa Inspection Resources, Inc. of Shareholder Action and Appraisal Rights (dated December 11, 2013), filed April 3, 2015 (Docs. 83-27 and 83-28)("Merger Agreement"). The Plaintiffs contend that "an award of fees is warranted here because 'the fair price inquiry presented at trial was severely hampered by the unfairness of the process.'" Plaintiffs' Motion at 15 (quoting Nine Sys. I, 2014 WL 4383127, at *47). The Plaintiffs argue that they "should not be required to shoulder the costs of Defendants' wrongdoing, which made it necessary for Plaintiffs to bring this action to determine the fair value of TIR's shares." Plaintiffs' Motion at 15.

The Plaintiffs also argue that the "Court should award Plaintiffs their full fees and expenses to prevent them from being penalized for bringing the action that Defendants' conduct required." Plaintiffs' Motion at 15. According to the Plaintiffs, "[a]bsent an award to Plaintiffs of their fees and expenses[,] . . . Plaintiffs would be severely penalized for bringing a successful

claim against the Defendants for breach of their fiduciary duty of loyalty." Plaintiffs' Motion at 15 (citing William Penn P'ship v. Saliba, 13 A.3d at 758-59). The Plaintiffs estimate that they spent over 8,000 hours working on this case and incurred reasonable litigation costs of at least $405,000.00. See Plaintiffs' Motion at 16. The Plaintiffs request that the Court allow them to "provide a submission specifying their attorney's fees and costs after the Court determines that Defendants are liable for such fees and costs." Plaintiffs' Motion at 16 n.8 (citing Fed. R. Civ. P. 54(d)(2)(C)). The Plaintiffs note that they paid the Plaintiffs' counsel only $750,000.00 pursuant to an agreement to pay a flat attorney fee of $250,000.00 per year and a contingency fee based on the value of any recovery. See Plaintiffs' Motion at 16. The Plaintiffs thus argue that the "Plaintiffs' counsel has not been compensated for more than $1.9 million of fees reasonably incurred in this litigation." Plaintiffs' Motion at 16. The Plaintiffs also argue that the Defendants should reimburse them for the "attorney's fees and litigation costs they have paid out of pocket, which total $750,000 in attorney's fees and more than $400,000 in reasonable litigation costs." Plaintiffs' Motion at 17. The Plaintiffs argue that Delaware law "also clearly supports an award for the contingent portion of Plaintiffs' attorney's fees, to incentivize plaintiffs' counsel to police corporate conduct." Plaintiffs' Motion at 17 (citing In re Orchard Enters., Inc. S'holder Litig., 2014 WL 4181912, at *3 (Del. Ch. Aug. 22, 2014)).

The Plaintiffs further contend that the fees that they incurred "are reasonable in light of Plaintiffs' damages." Plaintiffs' Motion at 18. According to the Plaintiffs, the fees that they seek "are *dwarfed* by Plaintiffs' 'plausible pre-trial damages assessment.'" Plaintiffs' Motion at 19 (quoting Nine Sys. II, 2015 WL 2265669, at *3)(emphasis in original). The Plaintiffs estimate that

the amount of Plaintiffs' damages totaled $44,941,244, based on a per-share price of $1,883,162 (with no discount for lack of marketability and assuming a share count of 117.94) -- *i.e*, the difference between $1,883,162 and $451,000 per share multiplied by Plaintiffs' 31.38 shares. . . .   Regardless of the jury's verdict, that analysis was far more than "plausible." Furthermore, as of December 2017, that amount would have been increased by $10,785,899 million in prejudgment interest (at 6% per annum), for a total award of $55,727,143.

Plaintiffs' Motion at 19 (footnote omitted).   The Plaintiffs argue that "the approximately $3 million in fees expended by Plaintiffs' counsel was entirely reasonable in light of Plaintiffs' entirely plausible pre-trial damages assessment of $45 million (before interest).   Indeed, $3 million is only *six percent* of that $45 million assessment."   Plaintiffs' Motion at 19 (footnote omitted)(emphasis in original).   The Plaintiffs contend that caselaw supports awarding them $750,000.00 in fees they have paid their counsel, $405,000.00 in litigation costs, and $1,900,000.00 of remaining attorney's fees, because "it was 'reasonable to anticipate before trial a recovery of' $45 million (before interest)."   Plaintiffs' Motion at 20 (quoting Nine Sys. II, 2015 WL 2265669, at *3)(emphasis omitted).

The Plaintiffs argue that the "Court should also award fees because without a fee award, Plaintiffs would be left without a remedy for Defendants' clearly-established breach of their duty of loyalty, and Defendants would be unpunished . . . for their blatant breach."   Plaintiffs' Motion at 20.   The Plaintiffs emphasize the importance of deterring similar breaches in the future.   See Plaintiffs' Motion at 20.   According to the Plaintiffs, "an award of attorneys' fees and costs 'is supported by Delaware law in order to discourage outright acts of disloyalty by fiduciaries.'"   Plaintiffs' Motion (quoting William Penn P'ship v. Saliba, 13 A.3d at 758-59).   The Plaintiffs also note that, in the Sept. 8 MOO, the Court reasons that the Delaware "Court of Chancery 'awards attorney's fees in appropriate cases' in order 'to police corporate conduct generally.'"

Plaintiffs' Motion at 21 (quoting Sept. 8 MOO at 4). The Plaintiffs argue that "Delaware law requires that Plaintiffs receive an award for Defendants' breach of fiduciary duty of loyalty, not a 'merely symbolic remedy,' and authorizes courts to award attorney's fees and costs as an element of damages in fashioning the broad equitable remedy for breach of the duty of loyalty." Plaintiffs' Motion at 21. The Plaintiffs contend that, "[a]besent a fee award, . . . they would be severely penalized, and Defendants rewarded," for the Defendants' violation of their fiduciary duty. Plaintiffs' Motion at 21. The Plaintiffs further argue that "Delaware law does not permit such a grossly inequitable result." Plaintiffs' Motion at 21 (citing In re Dole Food Co., Inc. S'holder Litig., 2015 WL 5052214, at *44-45 (Del. Ch. Aug. 27, 2015)).

9.    **The Defendants' Response.**

The Defendants responded to the Plaintiffs' Motion on November 7, 2017. <u>See</u> Defendants' Response to Plaintiffs' Motion for Attorney Fees [Doc. 462], filed November 7, 2017 (Doc. 469)("Defendants' Response"). The Defendants first discuss the application of Delaware law to the Plaintiffs' Motion, then discuss the application of Oklahoma law, and they "reserve for separate briefing the question whether Oklahoma law or Delaware law applies to" the Plaintiffs' Motion. Defendants' Response at 2. The Defendants argue that "neither under Delaware law, nor under Oklahoma law, are Plaintiffs entitled to attorney fees or costs." Defendants' Response at 2 (emphasis omitted). The Defendants argue that Delaware law does not entitle the Plaintiffs to attorney's fees and costs, because: (i) the "Plaintiffs engaged in inequitable pre-litigation conduct"; and (ii) the "Plaintiffs cannot show the requisite egregious conduct by Defendants necessary to justify an award of fees based on Defendants' pre-litigation conduct." Defendants' Response at 2. The Defendants recall that, in 2012, the Stuart

Foundation, Inc. planned to "take over" TIR, Inc. at "$369,000 [per share] (later increased to $380,382)," and that, in response, the Defendants made a higher competing offer and proposed to form a master limited partnership ("MLP") and an initial public offering ("IPO") "for the MLP units." Defendants' Response at 3. The Defendants maintain that, after the Plaintiff Stuart Foundation rejected their proposal, the "parties agreed orally to a winner take-all auction" that an independent committee would conduct. Defendants' Response at 3. The Defendants note that the parties' bids "were substantially below the ultimate $451,000 winning bid price" and that "the Plaintiffs agreed not to require that TIR hire an independent financial advisor to conduct a fairness opinion or appraisal." Defendants' Response at 3 (emphasis in original). The Defendants maintain that they offered the highest bid, $451,000.00, to buy the Plaintiffs' shares, which the Plaintiffs rejected, because they "erroneously" thought they could block the Merger to "extract a totally unjustified premium share value." Defendants' Response at 3 (emphasis in original). According to the Defendants, the "Plaintiffs conspired . . . to block the merger and, thereby, thwart the IPO, hoping Defendants would succumb and pay the unjustified premium." Defendants' Response at 3. The Defendants recount that, "[w]hen Plaintiffs discovered they had no legal ability to block the Defendants' business plan, Plaintiffs delivered their share certificates to induce the Defendants to pay the merger consideration." Defendants' Response at 3-4. The Defendants note that the Plaintiffs filed their Complaint six months later. See Defendants' Response at 4. The Defendants explain that they

> do not here ask the Court to reconsider its ruling that Plaintiffs' inequitable behavior was not a defense to the alleged breach of fiduciary duty by the Defendants; but, Defendants do argue that such inequitable behavior establishes Plaintiffs cannot, even under Delaware law, be rewarded for having attempted to

extract an unjustified share premium and, when that strategy failed, filing a lawsuit establishing that $451,000 was fair value.

Defendants' Response at 4.

Next, the Defendants argue that, "[e]ven if Plaintiff's own inequitable pre-litigation conduct does not bar Plaintiff's Motion for Attorney Fees, the Plaintiffs cannot show any egregious conduct by the Defendants permitting the Court to award Plaintiffs their fees or costs incurred prior to Defendants' Offers of Judgment." Defendants' Response at 4-5. The Defendants assert that, under Oklahoma's offer-of-judgment statute, "only fees for work performed <u>before</u> the Offers were made could be awarded Plaintiffs [] if the Plaintiffs were otherwise entitled to them." Defendants' Response at 5 (citing 12 Okla. Stat. Ann. § 1101.1(C))(emphasis in original). The Defendants cite two cases as support. <u>See</u> Defendants' Response at 5 (citing <u>Gentile v. Rossette</u>, 2010 WL 2171613 (Del. Ch. May 28, 2010); <u>Cole v. Kershaw</u>, 2000 WL 1206672 (Del. Ch. Aug. 15, 2000)). According to the Defendants, in <u>Gentile v. Rossette</u>, the Chancery Court of Delaware concluded that, even though the defendant breached his duty of loyalty, "'his behavior . . . did not rise to the level of bad faith necessary to justify a shifting of attorney fees.'" Defendants' Response at 5 (quoting <u>Gentile v. Rosette</u>, 2010 WL 2171613, at *14). Similarly, the Defendants contend that the Delaware Court of Chancery in <u>Cole v. Kershaw</u> "declined to award pre-litigation conduct fees <u>even where the court had found the merger unfair both as to process and as to price</u> because 'the [defendants'] conduct did not rise to the level of egregiousness required to justify fee shifting.'" Defendants' Response at 5 (quoting <u>Cole v. Kershaw</u>, 2000 WL 1206672, at *12)(emphasis in original)(alteration in Defendants' Response).

The Defendants contend that the cases that the Plaintiffs cite in the Plaintiffs' Motion are either "obviously irrelevant" or "prove the rule that the Chancery Court will award a losing plaintiff fees and costs <u>only where the defendant engaged in egregious or bad faith conduct</u>." Defendants' Response at 5 (emphasis in original).  First, the Defendants argue that <u>In re Orchard Enterprises, Inc. Shareholder Litigation</u> is irrelevant, because the plaintiffs in that case did not bring a fee-shifting claim, but rather sought fees "from a common fund obtained for the benefit of the plaintiffs."  Defendants' Response (citing <u>In re Orchard Enters., Inc. S'holder Litig.</u>, 2014 WL 4181912, at *3-5).  Second, the Defendants argue that <u>In re Dole Food Co., Inc. Stockholder Litigation</u> is irrelevant, because the defendants committed fraud and the court decided to award the "plaintiffs a 'fairer price'" and not to award attorney's fees.  Defendants' Response at 6 (quoting <u>In re Dole Food Co., Inc. S'holder Litig.</u>, 2015 WL 5052214, at *45).  Third, the Defendants argue that <u>Loretto Literary & Benevolent Institution v. Blue Diamond Coal Co.</u> involves bad faith conduct, because the "defendants refused to register the transfer of shares to plaintiffs without any reasonable justification."  Defendants' Response at 6 (citing <u>Loretto Literary & Benevolent Inst. v. Blue Diamond Coal Co.</u>, 444 A.2d at 261).  Fourth, the Defendants argue that, in <u>Cantor Fitzgerald, L.P. v. Cantor</u>, the Chancery Court of Delaware determined that the defendants acted in bad faith and awarded attorney's fees, even though the "damages were unquantifiable and unmeasurable."  Defendants' Response at 6 (citing <u>Cantor Fitzgerald, L.P. v. Cantor</u>, 2001 WL 536911, at *3-4 (Del. Ch. May 11, 2000)).  Fifth, the Defendants argue that <u>Auriga Capital Corp. v. Gatz Properties, LLC</u>, 40 A.3d 839 (Del. Ch. 2012), involves bad faith conduct, because the "defendant <u>intended</u> to enrich himself without any regard for minority members, including misleading disclosures and [conducting] an auction

process designed to allow defendant to obtain control at a distress sale price." Defendants' Response at 6 (citing Auriga Capital Corp. v. Gatz Props., LLC, 40 A.3d at 860, 880-81)(emphasis in original). Sixth, the Defendants argue that Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund involves bad faith, because, although the defendants were silent about an "erroneous provision in [an] agreement," on remand, the Delaware Court of Chancery determined that the defendants' silence was "not sufficiently akin to fraud to justify fees." Defendants' Response at 6 (citing ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC, 2013 WL 5152295 (Del. Ch. Sept. 16, 2013)). Seventh, the Defendants argue that Nine Systems I involves egregious conduct, because the defendants did not "disclose information about the company's activities and relocation over several years and [did not] disclose recapitalization and its consequences to the shareholders." Defendants' Response at 6 (citing Nine Sys. I, 2014 WL 4383127, at *52). Eighth, the Defendants argue that Saliba v. William Penn Partnership involves egregious conduct, because the "defendants withheld information, provided misleading information and imposed an artificial deadline on [a] transaction." Defendants' Response at 6 (citing Saliba v. William Penn P'ship, 2010 WL 1641139, at *1). The Defendants emphasize that "fees may be shifted against a party only where that party's pre-litigation conduct was egregious." Defendants' Response at 7 (citing HMG/Courtland Props., Inc. v. Gray, 749 A.2d 94, 125 (Del. Ch. 1999); Abex, Inc. v. Koll Real Estate Grp., Inc., 1994 WL 728827, at *20 (Del. Ch. Dec. 22, 1994)). According to the Defendants, the Supreme Court of Delaware has placed "very narrow limits [on] the ability of the chancery court to reward a losing plaintiff." Defendants' Motion at 7 (citing Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 233).

The Defendants argue that "there is no basis to find Defendants' conduct egregious, much less sufficiently egregious to justify a fee award based on Defendants' pre-litigation conduct." Defendants' Response at 7-8. The Defendants assert that, "[u]nlike the few cases awarding fees to a losing plaintiff, Plaintiffs here were, by their own admission, fully informed of all material facts leading up to the merger." Defendants' Response at 8. The Defendants note that, at trial, the "Plaintiffs expressly asked the jury to consider the fairness of the process by which Plaintiffs received $451,000 for their shares," and the "jury rejected Plaintiffs' express claim that Defendants treated Plaintiffs unfairly." Defendants' Response at 8. The Defendants assert that, in the Reconsideration MOO, the Court based its "finding of breach of fiduciary duty solely on . . . an absence of any prophylactic measure design[ed] to ensure the Defendants . . . pay Plaintiffs the fair value of their shares." Defendants' Response at 8 (citing Reconsideration MOO, 264 F. Supp. 3d at 1246)(emphases in original). The Defendants emphasize that the "Court did not find, and Plaintiffs failed to adduce any evidence of, fraud, misrepresentation, failure to disclose, or other bad faith conduct by Defendants." Defendants' Response at 9. The Defendants thus argue that, under Delaware law, the Court should deny the Plaintiffs' Motion. See Defendants' Response at 9.

Turning to Oklahoma law, the Defendants argue that Oklahoma courts have "clearly rejected awarding fees based on pre-litigation conduct." Defendants' Response at 9 (citing Barnes II, 2004 OK 25, ¶¶ 13-14, 94 P.3d at 29; In re Webb, 2010 OK CIV APP 114, ¶14, 242 P.3d 599, 603; Snider Bros., LLC v. State, 2008 OK CIV APP 80, ¶ 32, 194 P.3d 771, 778; Sooner Trailer Mfg. Co. v. Gay, 1998 OK CIV APP 194, ¶ 6, 972 P.2d 1177, 1179). The Defendants assert that "Oklahoma's strong commitment against fee-shifting is rooted in article 2,

§ 6 of the Oklahoma Constitution." Defendants' Response at 9. That section provides: "'The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.'" Defendants' Response at 10 (quoting Okla. Const. art. 2, § 6). According to the Defendants, the Supreme Court of Oklahoma has "repeatedly recognized that its strict adherence against fee-shifting is constitutionally based." Defendants' Response at 10 (citing Eagle Bluff, LLC v. Taylor, 2010 OK 47, ¶ 16, 237 P.3d 173, 179; Fulsom v. Fulsom, 2003 OK 96, ¶ 8, 81 P.3d 652, 655; State ex rel. Tal v. Okla. City, 2002 OK 97, ¶ 16, 61 P.3d 234, 244; Beard v. Richards, 1991 OK 117, ¶ 12, 820 P.2d 812, 815-17)(emphasis in original). The Defendants argue that there is "no fee-shifting statute on which to base an award of attorney fees for pre-litigation conduct." Defendants' Response at 10. The Defendants also reiterate that, "[e]ven if there were such a statute, the Oklahoma courts are compelled, constitutionally to interpret them strictly." Defendants' Response at 10.

    **10.    The Plaintiffs' Reply.**

    The Plaintiffs replied to the Defendants' Response on July 19, 2018. See Plaintiffs' Reply Brief in Further Support of Plaintiffs' Motion for Attorney's Fees (Doc. 462), filed July 19, 2018 (Doc. 482)("Plaintiffs' Reply"). The Plaintiffs argue that "the Court's finding that Defendants breached their fiduciary duty of loyalty to the Plaintiffs warrants an award to Plaintiffs of their attorney's fees as a remedy for that breach." Plaintiffs' Reply at 2. The Plaintiffs aver that, because the Plaintiffs proved that the Defendants breached their fiduciary duty of loyalty and the jury did not award the Plaintiffs damages, "the Court can and should

award Plaintiffs their attorney's fees and expenses incurred to prove the breach, as part of the broad equitable remedy available for breach of fiduciary duty." Plaintiffs' Reply at 2. The Plaintiffs reiterate that the Defendants' breach made litigation necessary, because the Plaintiffs had to sue the Defendants to determine the fair value of their TIR, Inc. shares. See Plaintiffs' Reply at 3. The Plaintiffs also argue that "Delaware law compels an award," because, if the Court does not award the Plaintiff attorney's fees and expenses, then the "Plaintiffs would be severely penalized for having brought a successful claim against the Defendants." Plaintiffs' Reply at 3. The Plaintiffs add that awarding them attorney's fees also would prevent "leav[ing] Defendants unpunished . . . for their blatant breach." Plaintiffs' Reply at 4.

The Plaintiffs argue that their pre-litigation conduct, which the Defendants assert was "inequitable," is "irrelevant to Defendants' breach of fiduciary duty of loyalty, because they could not prove fair dealing as a matter of law." Plaintiffs' Reply at 5 (citing Reconsideration MOO, 264 F. Supp. 3d at 1227). Plaintiffs further refute that they engaged in any "inequitable pre-litigation conduct." Plaintiffs' Reply at 5. The Plaintiffs assert that "there was no evidence adduced at trial that plaintiffs 'attempted to extract an unjustified share premium.'" Plaintiffs' Reply at 5 (quoting Defendants' Response at 4). The Plaintiffs add that the "Defendants cite no case saying that the 'conduct' of minority shareholder who are *owed* a duty of loyalty is relevant to whether fees are warranted for breach of that duty by the controlling shareholders and directors *owing* that duty." Plaintiffs' Reply at 5 (quoting Defendants' Response at 4)(emphasis in original). The Plaintiffs counter that "attorney's fees are awarded as a remedy based on *defendants*' conduct." Plaintiffs' Reply at 6 (citing William Penn Partnership v. Saliba, 13 A.3d 749, 758-59; In re Dole Food Co., Inc. S'holder Litig., 2015 WL 5052214, at *44-45).

The Plaintiffs reiterate that Nine Systems I supports an attorney's fee award, because the Delaware Court of Chancery in Nine Systems I "concluded that the transaction at issue, 'even if it was conducted at a fair price, was [not] an entirely fair transaction because of the grossly inadequate process employed by the Defendants.'" Plaintiffs' Reply at 6 (quoting Nine Sys. I, 2014 WL 4383127, at *36). The Plaintiffs note that the Delaware Court of Chancery in Nine Systems I determined that, "'even where a transaction was conducted at a fair price, a finding that the transaction was not entirely fair may . . . justify shifting certain of the plaintiffs' attorneys' fees and costs to the defendants who breached their fiduciary duties." Plaintiffs' Reply at 7 (quoting Nine Sys. I, 2014 WL 4383127, at *51-52). The Plaintiffs acknowledge the Defendants' argument that many of the cases that the Plaintiffs' Motion cite involve "'egregious or bad faith conduct,'" Plaintiffs' Reply at 8 (quoting Defendants' Response at 5-8), and they counter that they "have not sought fees based on Defendants' bad faith conduct in *litigation* but rather 'substantive' fees, based on Defendants' *pre-litigation* conduct," Plaintiffs' Reply at 8 (quoting Defendants' Response at 5-8)(emphasis in original). The Plaintiffs argue that "whether Plaintiffs are entitled to fees under an *inapplicable* Delaware exception is irrelevant to whether . . . they are entitled to fees under *applicable* Delaware law." Plaintiffs' Reply at 8-9 (emphasis in original).

The Plaintiffs argue that Delaware law applies to their attorney's fees request, and thus Oklahoma law "does not, and cannot, limit the fees to which Plaintiffs are entitled under Delaware law." Plaintiffs' Reply at 9. Alternatively, the Plaintiffs aver that Oklahoma's offer-of-judgment statute does not bar an award of Plaintiffs' attorney's fees, because it "does not say, as Defendants claim, that fees or costs for work after the date of Defendants' Offers of

Judgment *cannot be awarded*."  Plaintiffs' Reply at 9 (emphasis in original).  The Plaintiffs explain:

> In other words, all the statute says is that fees or costs recoverable for post-Offer work -- if awarded, which the statute nowhere prohibits -- are excluded from the calculation of whether, under § 1101.1(B)(3), "the judgment awarded the plaintiff is less than one or more offers of judgment."  The statute does not say that Plaintiffs cannot be awarded such post-Offer fees and costs.  (And again, even if it did, the Oklahoma statute could not limit Plaintiffs' Delaware-law remedy here.).

Plaintiffs' Reply at 10.  The Plaintiffs further argue that Oklahoma's offer-of-judgment statute "does not affect the Court's ability to follow the Delaware law mandate to avoid penalizing Plaintiffs."  Plaintiffs' Reply at 10.

Last, the Plaintiffs argue that, even if Oklahoma law governs their request, they would still be entitled to attorney's fees and costs.  See Plaintiffs' Reply at 10.  The Plaintiffs assert that "there is no [] Oklahoma public policy barring the fees sought here."  Plaintiffs' Reply at 11.  The Plaintiffs contend that the cases which the Defendants cite do not apply, because they "pertain to 'procedural' fees awarded as *sanctions* for bad-faith *litigation* conduct (which, the cases they cite hold, cannot be based on 'pre-litigation conduct')."  Plaintiffs' Reply at 11 (quoting Defendants' Response at 5-8).  According to the Plaintiffs, the Defendants cite cases that "demonstrate 'no public policy' barring the fees Plaintiffs seek here, which are 'substantive' fees that are 'part and parcel of the cause of action' where 'the right to an award of attorney fees is part of the state substantive right.'"  Plaintiffs' Reply at 11 (quoting <u>Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII</u>, 888 F.3d 455, 460 (10th Cir. 2017))(emphasis in original).  The Plaintiffs conclude that, because "*substantive* fees" are "awarded as elements damages for a

claim based on the outcome of the litigation, [they] are *by definition* based on 'pre-litigation conduct.'"  Plaintiffs' Reply at 11 (quoting Defendants' Response at 5-8)(emphasis in original).

11.     **The Court's Letter.**

On October 30, 2017, the Court sent a letter to the parties' counsel.  <u>See</u> Letter from James O. Browning to Jamison A. Diehl, Stuart Kagen, Daniel A. Cohen, Joshua C. Gillette, Kyla Janine Grant, R. Stratton Taylor, Toney Daniel Foster, Mark H. Ramsey, Clinton Derek Russell, Frederic Dorwart, Paul DeMuro, Sarah Wishard Poston, and Nora Rose O'Neill at 1 (dated October 30, 2017), filed October 31, 2017 (Doc. 467)("Court's Letter").  The Court's Letter states:

> I understand that the Defendants want an immediate judgment, and both the Plaintiffs and Defendants want attorney's fees.  Let me see if I can give you some guidance that will get you where you all need or want to be.
>
> First, as to attorney's fees, I have some concerns about my initial choice-of-law determination.  I think the fact that I used Delaware law to guide our trial was good and sound, because Oklahoma would look at Delaware law for all that we decided.  We did not tell the jury from where the law came; we just gave them the law.  So there is no error there.
>
> It appears, however, that Delaware law and Oklahoma law may diverge with respect to attorney's fees.  Delaware law appears to permit an equitable award of fees to the Plaintiffs while Oklahoma law does not.  Oklahoma law appears to permit an award of fees to the Defendants based on their offer of judgment while Delaware law and the Federal Rules of Civil Procedure do not.  I have some concern that, as Tulsa Inspection Resources, Inc. was incorporated  in Oklahoma, Oklahoma law may apply to one or both of those issues.  I suggest that, before we go to great efforts to calculate attorney's fees, we have a round of briefing only on choice of law, so I can determine which body of law applies to each issue. The parties can then pursue their motions for fees.
>
> Second, the Defendants want a judgment.  There are a lot of motions, reports, and rulings for which I have not written opinions.  I do not want to write opinions that you do not need or want, and I do not want to unnecessarily write

opinions that delay entry of this judgment and appeal. On the other hand, I am not excited about parties appealing rulings or issues for which I have not explained my thoughts. It would help me if both sides would send me a letter setting out the issues on which they intend to appeal and linking those issues, as much as possible, to motions, rulings, jury instructions, the verdict form, etc., by document numbers or other description. That process might bring the case to a conclusion as soon as possible so that you can go to the [United States Court of Appeals for the] Tenth Circuit.

Court's Letter at 1-2.

### 12.    The Defendants' Brief.

The Defendants filed the Defendants' Brief on November 20, 2017. See Defendants' Brief at 1. The Defendants argue that Oklahoma law governs the attorney's fees issues that the Defendants' Motion and the Plaintiffs' Motion raise, and they note that the "Plaintiffs do not dispute that the Offer of Judgment Statute is applicable to" the Defendants' Motion. Defendants' Brief at 1 (citing Plaintiffs' Response). The Defendants identify three reasons why "Oklahoma law governs whether Plaintiffs can recover attorney fees": (i) "Oklahoma law applies, *in toto*, to the claims on which Plaintiffs seek fees and costs"; (ii) "Oklahoma would, under a choice of law analysis, apply Oklahoma law to Plaintiffs' request for attorney fees and costs based on Defendants' pre-litigation conduct," and (iii) "the award of fees and costs for pre-litigation conduct under Delaware law would violate Oklahoma public policy." Defendants' Brief at 2-3.

First, the Defendants note that the Plaintiffs seek attorney's fees and costs pursuant to three breach-of-fiduciary-duty claims, see Defendants' Brief at 3 (citing Amended Complaint at 25-30, filed September 30, 2015 (Doc. 167)), and they argue that "claims of breach of duties to an Oklahoma corporation are subject to the laws of Oklahoma, *in toto*, including claims for fees and costs," Defendants' Brief at 3. The Defendants assert that the Merger Agreement

"between TIR and the Delaware limited liability company into which it was merged expressly provides that Oklahoma law applies without giving effect to any choice of law provision or rule." Defendants' Brief at 3. According to the Defendants, "Delaware law applies only to provisions 'relating to mechanics or effects of the Merger.'" Defendants' Brief at 3 (quoting Merger Agreement § 8.04, at 9)(emphasis in Defendants' Brief and not in Merger Agreement). The Defendants contend that the Merger occurred in Oklahoma, and that their actions "preceded the merger and were not its 'mechanics or effects.'" Defendants' Brief at 4 (quoting Merger Agreement at § 8.04, at 9). The Defendants argue that interpreting "'mechanics and effects' to mean 'the process of effecting the merger' would render the Merger Agreement and its terms and provisions meaningless." Defendants' Brief at 4 (quoting Merger Agreement at § 8.04, at 9, and citing April 25 MOO, 250 F. Supp. 3d at 1027).

Second, the Defendants argue that the "Court should, under a choice of law analysis, apply Oklahoma law in deciding whether Plaintiffs are entitled to an award of fees." Defendants' Brief at 5. The Defendants note that "Oklahoma law prohibits the award of attorney fees based on a defendant's pre-litigation conduct." Defendants' Brief at 5 (citing Defendants' Brief). The Defendants contend that, "even if the Court continued to apply Delaware law to Plaintiffs' First, Second, and Third Claims, a separate choice of law analysis apples [sic] to consideration of" the Plaintiffs' Motion. Defendants' Brief at 5. According to the Defendants, in Boyd Rosene & Associates, Inc. v. Kansas Municipal Gas Agency, 174 F.3d 1115 (10th Cir. 1999)("Boyd Rosene"), the Tenth Circuit "predicted that Oklahoma would divide attorney fee issues into two categories: (i) 'prevailing party' cases where fees are deemed substantive, and (ii) 'bad faith' cases where the entitlement to fees arises out of the conduct of the parties."

Defendants' Brief at 5 (quoting <u>Boyd Rosene</u>, 174 F.3d at 1125-26).  The Defendants explain

that, in the Sept. 8 MOO, the Court concluded that

> the fee issue here, the authority of a Delaware chancery court to award fees based
> on pre-litigation conduct, did not fit into the <u>Boyd Rosene</u> dichotomy, but
> reasoned that Oklahoma would find the issue should be governed by Delaware
> law because Delaware views awards of fees for egregious pre-litigation conduct
> as substantive in breach of fiduciary duty cases. . . .  Focused on the question
> whether the Court or the jury would determine the fee request, and with no
> briefing of the parties available to it on the issue, the Court did not consider
> whether an Oklahoma court would consider Delaware's view to be dispositive of
> the choice of law issue.  Defendants respectfully suggest an Oklahoma court
> would . . . determine that Oklahoma law governs where the entitlement to fees is
> bottomed on pre-litigation conduct of the defendant (as is the case . . . ).

Defendants' Brief at 6 (citing Sept. 8 MOO at 4).

The Defendants argue that both the "internal affairs doctrine" and the "significant

contacts approach" support the conclusion that Oklahoma law governs the Plaintiffs' Motion.

Defendants' Brief at 6 (citing <u>Restatement (Second) of Conflict of Laws</u> §§ 6, 145, 188, 309

(Am. Law Inst. 1971))(emphasis omitted).  The Defendants assert that, under the "internal affairs

doctrine," "the local law of the state of incorporation governs the choice of law rules involving

the internal affairs of a corporation."  Defendants' Brief at 7.  The Defendants quote § 309 of the

<u>Restatement (Second) of Conflict of Laws</u>, which states:

> The local law of the state of incorporation will be applied to determine the
> existence and extent of a director's or officer's liability to the corporation, its
> creditors and shareholders, except where, with respect to the particular issue,
> some other state has a more significant relationship under the principles stated in
> §6 to the parties and the transaction, in which event the local law of the other state
> will be applied.

Defendants' Brief at 7 (quoting <u>Restatement (Second) of Conflict of Laws</u> § 309, and citing

<u>Skyline Potato Co., Inc. v. Tan-O-On Mktg., Inc.</u>, 879 F. Supp. 2d 1228, 1259 n.9 (D.N.M.

2012)(Browning, J.)).  According to the Defendants, the Supreme Court of Delaware holds that "'[a]pplication of the internal affairs doctrine is mandated by constitutional principles, except in the rarest situations.'"  Defendants' Brief at 8 (quoting <u>McDermott Inc. v. Lewis</u>, 531 A.2d 206, 218 (Del. 1987))(alteration in Defendants' Brief).  The Defendants further contend that "Delaware 'has no interest in regulating the internal affairs of foreign corporations.'" Defendants' Brief at 8 (quoting <u>Edger v. MITE Corp.</u>, 457 U.S. 624, 645-46 (1982)).  The Defendants thus argue that the internal-affairs doctrine requires the Court to apply Oklahoma law to the Plaintiffs' Motion, because the Defendants are directors and shareholders of an Oklahoma corporation whom the Plaintiffs sued "for an alleged breach of loyalty to an Oklahoma corporation."  Defendants' Brief at 8.

As for the "significant contacts approach," the Defendants argue that a "comparison" of the parties' "significant contacts with Oklahoma contrasted with the <u>one</u> resulting contact with Delaware compels the application of Oklahoma law."  Defendants' Brief at 8-9 (citing <u>Hawk Enters., Inc. v. Cash Am., Inc.</u>, 2012 OK CIV APP 66, ¶ 10, 282 P.3d 786, 790)(emphasis in original).  The Defendants enumerate the parties' Oklahoma contacts: (i) "[a]ll individual defendants reside in Oklahoma"; (ii) "TIR, Inc. was an Oklahoma corporation" with its "principal place of business in Oklahoma"; (iii) "[a]ll Defendant entities have their principal place of business in Oklahoma"; (iv) "[m]ost, if not all, of the pre-litigation conduct forming the alleged actions of Defendants on which Plaintiffs' Application for Fees is based occurred in Oklahoma"; (v) "[a]ll alleged wrongful actions of the Defendants occurred when only Oklahoma law was applicable"; (vi) the Merger "was negotiated and executed in Oklahoma"; (vii) the "Plaintiffs' claims arose in Oklahoma"; and (viii) the "Plaintiffs filed their suit in Oklahoma,

- 83 -

invoking this Court's diversity jurisdiction." Defendants' Brief at 9. The Defendants state that SFF-TIR, LLC is a Delaware company and Celebration, LLC is a Delaware limited liability company, but the Defendants aver that both entities are owned by citizens residing in different states. See Defendants' Brief at 9. The Defendants further emphasize that all the "Plaintiffs and all principals of all Plaintiff business entities live outside of Delaware," and that none of the business entities has its principal place of business in Delaware. Defendants' Brief at 9-10 (emphasis in original). The Defendants argue that the "Oklahoma contacts are substantial," while the "Delaware contacts are nominal," and thus the significant-contacts approach "overwhelmingly favors, indeed compels, the choice of Oklahoma law." Defendants' Brief at 10.

Last, the Defendants argue that "Oklahoma has clearly rejected awarding fees based on pre-litigation conduct." Defendants' Brief at 10 (citing Barnes II, 2004 OK 25, ¶¶ 13-14, 94 P.3d at 29; In re Webb, 2010 OK CIV APP 114, ¶ 14, 242 P.3d at 603; Snider Bros., LLC v. State, 2008 OK CIV APP 80, ¶ 32, 194 P.3d at 778; Sooner Trailer Mfg. Co. v. Gay, 1998 OK CIV APP 194, ¶ 6, 972 P.2d at 1179)(emphasis omitted). The Defendants assert that Oklahoma courts have rejected "expansions of fee-shifting . . . as against settled Oklahoma public policy." Defendants' Brief at 12 (citing April 25 MOO, 250 F. Supp. 3d at 972-73). The Defendants conclude that, "[t]o the extent Delaware law judicially creates an entitlement to fees for pre-litigation conduct of a party opponent, the application of such law in Oklahoma, would violate Oklahoma's firmly established public policy." Defendants' Brief at 13.

13.     **The Plaintiffs' Brief.**

The Plaintiffs argue that the Court has correctly held that "Delaware law governs both 'Plaintiffs' claims regarding the entire fairness of the cash-out merger,'" Plaintiffs' Brief at 2 (quoting April 25 MOO, 250 F. Supp. 3d at 1025-26), "and 'Plaintiffs' request for attorney's fees,'" Plaintiffs' Brief at 2 (quoting Sept. 8 MOO at 2).  According to the Plaintiffs, TIR, Inc.'s incorporation in Oklahoma "does not alter this conclusion."  Plaintiffs' Brief at 2.  The Plaintiffs contend that "the Court should award Plaintiffs fees under Delaware law which will remove any basis for Defendants to obtain fees based on their offers of judgment under Oklahoma law, even if Oklahoma law applies to Defendants' motion for fees."  Plaintiffs' Brief at 2.

The Plaintiffs maintain that they would be "severely and unfairly prejudiced if the Court were to reverse" its earlier ruling that Delaware law governs Plaintiffs' claims and request for attorney's fees.  Plaintiffs' Brief at 3.  The Plaintiffs recount that, in the April 25 MOO, the Court determined "that it had 'federal-question jurisdiction over the Plaintiffs' federal securities claims' and 'diversity jurisdiction to hear this case.'"  Plaintiffs' Brief at 3 (quoting April 25 MOO, 250 F. Supp. 3d at 1021-23).  The Plaintiffs state that, after applying Erie and Oklahoma's choice-of-law rules, the Court held that it "'must apply Delaware law to the Plaintiffs' claims regarding the cash-out merger.'"  Plaintiffs' Brief at 4 (quoting April 25 MOO, 250 F. Supp. 3d at 1025-26).  The Plaintiffs note that the Merger Agreement states that "the provisions of this Agreement relating to mechanics or the effects of the Merger under Delaware law shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.'"  Plaintiffs' Brief at 4 (quoting Merger Agreement at § 8.04, at 9).  The Plaintiffs argue:

> [A]s a result of Defendants' actions and inactions, one of the "effects of  the Merger"  was  to give Plaintiffs a cause of action under Delaware  law  for breach of Defendants' fiduciary duty of loyalty, subjecting Defendants to all of the remedies available under Delaware law  for  such  a cause of action -- including attorney's fees that Defendants forced Plaintiffs to incur to prove Defendants' breach, which . . . are a component of those remedies.

Plaintiffs' Brief at 5 (quoting Merger Agreement at § 8.04, at 9).  The Plaintiffs add that, even if Oklahoma law applies, "the result would be the same," because "Oklahoma courts have long looked to decisions of the Delaware courts for the law that governs shareholder disputes." Plaintiffs' Brief at 5 (citing Beard v. Love, 2007 OK CIV APP 118, ¶ 29, 173 P.3d 796, 804; Woolf v. Universal Fidelity Life Ins. Co., 1992 OK CIV APP 129, ¶ 7, 849 P.2d 1093, 1095). The Plaintiffs aver that "the operative Oklahoma long-form merger statute -- 18 O.S.C. § 1081 -- is modeled on the Delaware long-form merger statute, 8 Del. C. § 251."  Plaintiffs' Brief at 6.  The Plaintiffs thus argue that "it is likely that Oklahoma law would recognize the settled Delaware right to attorney's fees as a measure of damages for breach of the duty of loyalty by" the Defendants.  Plaintiffs' Brief at 6.

The Plaintiffs argue that the Court correctly held that Delaware law applies, because "attorney's fees are a substantive component of the remedy available to Plaintiffs under Delaware law for their successful Delaware breach-of-fiduciary-duty-of-loyalty claims." Plaintiffs' Brief at 6.  The Plaintiffs recount that, in the Sept. 8 MOO, the Court held that Delaware law applies, because "'an award of attorney's fees premised on a pre-litigation breach of a fiduciary's duty of loyalty is substantive and not procedural.'"  Plaintiffs' Brief at 7 (quoting Sept. 8 MOO at 4).  Quoting the Sept. 8 MOO, the Plaintiffs contend that "'[t]he Delaware Court of Chancery will award attorney's fees in cases of serious loyalty breaches, because *equity*

*demands that the remedy take the reality of litigation costs into account as part of the overall remedy*, lest the plaintiffs be left with a merely symbolic remedy." Plaintiffs' Brief at 7 (quoting Sept. 8 MOO at 4)(emphasis in Plaintiffs' Brief only)(alteration in Plaintiffs' Brief). According to the Plaintiffs, "under Tenth Circuit law," "'[s]ubstantive fees *are part and parcel of the cause of action over which [the Court has] diversity jurisdiction*.'" Plaintiffs' Brief at 8 (quoting Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII, 888 F.3d at 460)(emphasis in Plaintiffs' Brief only). The Plaintiffs contend that, to comply with Erie, the Court should "'ensure that the outcome of the litigation in federal court [is] substantially the same' as [it would be] in Delaware court," and "apply *all* of [] Delaware law, including the law providing that . . . attorneys' fees and expenses . . . [are] an appropriate remedy' for breach of the duty of loyalty." Plaintiffs' Brief at 8-9 (quoting Cantor Fitzgerald, L.P. v. Cantor, 2001 WL 536911, at *2-3)(emphasis in Plaintiffs' Brief only).

Next, the Plaintiffs argue that, if the Court determines that Oklahoma law applies, "it should nonetheless hold that Oklahoma would follow Delaware in permitting an equitable award of attorney's fees under these circumstances." Plaintiffs' Brief at 9. According to the Plaintiffs, "the Court's earlier rulings thoroughly addressed the choice of law issues, and there is no new controlling authority or clear indication that the Court erred," and thus the Court should not reverse its earlier rulings. Plaintiffs' Brief at 9. The Plaintiffs also assert that they "have significantly and reasonably relied on the Court's prior rulings that Delaware law applied to their claims and fee request." Plaintiffs' Brief at 9 (citing Reconsideration MOO, 264 F. Supp. 3d at 1220). The Plaintiffs indicate that they might have proposed different jury instructions or presented different evidence at trial if the "Court reversed its rulings and held before (or even

during) trial that *Oklahoma* law governed Plaintiff's claims or attorney's fee request." Plaintiffs' Brief at 10 (emphasis in original).

The Plaintiffs contend that the Defendants' only basis for requesting attorney's fees is Oklahoma's offer-of-judgment statute. <u>See</u> Plaintiffs' Brief at 10. According to the Plaintiffs, "[e]ven if the Oklahoma offer of judgment statute applies, . . . it would *only* permit an award of fees to the Defendants based on their offer of judgment *if* 'the judgment awarded the plaintiff' is 'less than [the] offer[s] of judgment,'" which the Plaintiffs contend "has not yet occurred." Plaintiffs' Brief at 10-11 (quoting 12 Okla. Stat. Ann. § 1101.1(B)(3) & (C))(emphases in original). The Plaintiffs request that the Court "hold Defendants' fee motion in abeyance until it grants Plaintiffs their reasonable fees and costs under Delaware law as a remedy for Defendants' breach of the fiduciary duty of loyalty, and should then enter a judgment that includes all components of the remedy to which Delaware law entitles Plaintiffs." Plaintiffs' Brief at 11. The Plaintiffs argue that "total judgment awarded, inclusive of attorney's fees and costs, should be more than Defendants' offer of judgment (as to each Plaintiff), in which case the Oklahoma offer of judgment statute would not apply even if it were otherwise applicable under Oklahoma law." Plaintiffs' Brief at 11.

**14.** **<u>The Plaintiffs' Briefing Response</u>.**

The Plaintiffs responded to the Defendants' Brief on December 4, 2017. <u>See</u> Plaintiffs' Brief in Response to Defendants' Brief Regarding Choice of Law (Doc. 473), filed December 4, 2017 (Doc. 476)("Plaintiffs' Briefing Response"). The Defendants argue that the "Defendants admit on the first page of their brief that 'Oklahoma would look to Delaware law *for matters presented in the jury trial*.' . . . That concession ends the matter." Plaintiffs' Briefing Response

at 2 (quoting Defendants' Brief at 1 n.1)(emphasis in Plaintiffs' Briefing Response only). The Plaintiffs contend that the "'matters presented in the jury trial' concerned the relief available to Plaintiffs" and that attorney's fees "are an intrinsic component of that relief, inherent in the Delaware-law cause of action for breach of the fiduciary duty of loyalty." Plaintiffs' Briefing Response at 2 (quoting Defendants' Brief at 1 n.1). The Plaintiffs aver that the "Defendants seek to reargue the Court's pretrial holding that Delaware law governs Plaintiffs' claims," which the Plaintiffs argue "is incorrect, comes far too late, and would indeed require a new trial if accepted." Plaintiffs' Briefing Response at 2.

The Plaintiffs argue that they would be "severely and unfairly prejudiced" if the Court reverses its earlier ruling that Delaware law governs their claims. Plaintiffs' Briefing Response at 3. The Plaintiffs assert that, "[w]hile Defendants are correct that the *same* law governs Plaintiffs' claims '*in toto*, including claims for fees and costs' . . . , that law is Delaware law, not Oklahoma law." Plaintiffs' Briefing Response at 3 (quoting Defendants' Brief at 3)(emphasis in original). The Plaintiffs also argue that granting the Defendants' request would require a new trial, because the jury instructions "were based exclusively on Delaware law, not Oklahoma law." Plaintiffs' Briefing Response at 3 (citing BNSF Ry. Co. v. C.A.T. Constr., Inc., 679 F. App'x 646, 654 (10th Cir. 2017)(unpublished)). The Plaintiffs explain that the Court correctly held that, under Erie, Oklahoma's choice-of-law rules and the Merger Agreement's governing law provision apply, which results in Delaware law governing the Plaintiffs' fiduciary duty claims. See Plaintiffs' Briefing Response at 4 (citing April 25 MOO, 250 F. Supp. 3d at 1026). The Plaintiffs also contend that the Court correctly held that Delaware law applies to the Plaintiffs' cash-out merger claims. See Plaintiffs' Briefing Response at 4 (citing April 25 MOO,

250 F. Supp. 3d at 1026-27).  The Plaintiffs argue that the "Court's reasoning was sound, and Defendants have provided no basis to alter" those holdings.  Plaintiffs' Briefing Response at 4.

The Plaintiffs contend that, because the Court determined that Delaware governs their breach-of-fiduciary-duty claims, Delaware law also must govern the "relief available to Plaintiffs for those claims."  Plaintiffs' Briefing Response at 5.  According to the Plaintiffs, "attorney's fees are a substantive component of Plaintiffs' damages for Delaware breach-of-fiduciary-duty-of-loyalty claims."  Plaintiffs' Briefing Response at 5 (citing Chieftain Royalty Co. Enervest Energy Inst. Fund XIII, 861 F.3d at 1188).  The Plaintiffs also argue that the "result would be the same" under Oklahoma law, because "Oklahoma courts have long looked to decisions of the Delaware courts for the law that governs shareholder disputes."  Plaintiffs' Briefing Response at 5.  The Plaintiffs counter that the internal affairs doctrine is inapplicable, because the doctrine "depends on the state of incorporation."  Plaintiffs' Briefing Response at 6. The Plaintiffs emphasize that their claims involve CEP-TIR, LLC's liability and that CEP-TIR, LCC "is a Delaware Limited Liability Corporation."  Plaintiffs' Briefing Response at 6 (citing April 25 MOO, 250 F. Supp. 3d at 870 n.2).  The Plaintiffs also note that TIR, LLC is a Delaware limited liability company that CEP-TIR, LLC wholly owns.  See Plaintiffs' Briefing Response at 6.  The Plaintiffs also argue that the significant-contacts approach is inapplicable, because CEP-TIR, LLC and TIR, LLC are Delaware entities, and the Merger Agreement "provided that Delaware law applied to the Merger's effects."  Plaintiffs' Briefing Response at 6. The Plaintiffs further contend that, per the Merger Agreement's governing law provision, Delaware law governs the Merger's effects, and the Court has already held that "the cash-out of

Plaintiffs . . . 'implicated the Merger Agreement's effects under Merger Agreement § 2.02.'" Plaintiffs' Briefing Response at 6-7 (quoting April 25 MOO, 250 F. Supp. 3d at 1029).

Last, the Plaintiffs aver that awarding the Plaintiffs attorney's fees will not violate Oklahoma public policy. See Plaintiffs' Briefing Response at 7. According to the Plaintiffs, because "Oklahoma follows Delaware law with respect to shareholder dispute," an award of attorney's fees that is consistent with "settled Delaware law would not violate any public policy of Oklahoma." Plaintiffs' Briefing Response at 7. According to the Plaintiffs, "[e]ach of the cases Defendants cite [about Oklahoma public policy] concerned a court's authority to award fees *as sanctions for litigation conduct*, and the issue was whether *that* exception to the American rule,[48] for such 'procedural' attorney's fees, could be based on pre-litigation conduct." Plaintiffs' Briefing Response at 7 (emphases in original)(quoting Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII, 861 F.3d at 1188, and citing Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 765-69 (10th Cir. 1997); Barnes II, 2004 OK 25, ¶¶ 13-14, 94 P.3d at 29; In re Webb, 2010 OK CIV APP 114, ¶14, 242 P.3d at 603; Snider Bros., LLC v. State, 2008 OK CIV APP 80, ¶ 32, 194 P.3d at 778; Sooner Trailer Mfg. Co. v. Gay, 1998 OK CIV APP 194, ¶ 6, 972 P.2d at 1179). According to the Plaintiffs, the cases that the Defendants cite do "not even address . . . an award of fees based on pre-litigation conduct where, as here, such fees are a 'substantive,' inherent, 'part and parcel' of a state law cause of action." Plaintiffs' Briefing Response at 8 (quoting Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII, 888 F.3d

---

[48]The American Rule "'is shorthand for the general rule that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees.'" Fallen v. GREP Sw., LLC, 247 F. Supp. 3d 1165, 1187 (D.N.M. 2017)(Browning, J.)(quoting Christianburg Garment Co. v. Equal Emp't Opportunity Comm'n, 434 U.S. 412, 415 (1978)).

at 460). The Plaintiffs further argue that "Oklahoma law itself permits an award of attorney's fees, even in the absence of a specific statute or contractual provision so providing, 'where a defendant has committed a tort or breach of contract causing the plaintiff to incur attorney's fees to protect her interest.'" Plaintiffs' Briefing Response at 8 (quoting <u>Cagle v. The James St. Group</u>, 400 F. App'x 348, 354 (10th Cir. 2010)(unpublished)).

**15.      <u>The Defendants' Briefing Response.</u>**

The Defendants responded to the Plaintiffs' Brief on December 4, 2017. <u>See</u> Defendants' Response to Plaintiffs' Opening Brief Respect Choice of Law [Doc. 474], filed December 4, 2017 (Doc. 475)("Defendants' Briefing Response"). The Defendants argue that "Oklahoma would apply Oklahoma's own substantive law to Plaintiffs' pending Fee Application," Defendants' Briefing Response at 1-2, but they add that, "whether one applies Oklahoma or Delaware law, the results are the same: Plaintiffs are not entitled to an award of fees," Defendants' Briefing Response at 2 n.1 (citing <u>Lopez v. Delta Int'l Mach. Corp.</u>, No. CIV 15-0193 JB/GBW, 2017 WL 3142028, at *30 (D.N.M. July 24, 2017)(Browning, J.); <u>Ky. Bluegrass Contracting, LLC v. Cincinnati Ins. Co.</u>, 2015 OK CIV APP 100, ¶ 20, 363 P.3d 1270, 1274). The Defendants assert that "Oklahoma law governs Plaintiffs' fiduciary duty claims because the actions (or rather, inactions) of which the Plaintiffs complain . . . occurred under Oklahoma law. Further, the actions of the Defendants preceded the merger and were not its 'mechanics or effects.'" Defendants' Briefing Response at 3 (quoting Merger Agreement § 8.04, at 9). The Defendants note that the Court previously held that, "'[u]nder the Merger Agreement's terms, the Court is to apply Oklahoma law when adjudicating any claim other than a claim that arises out of the Merger's mechanics and effects.'" Defendants' Briefing Response

at 3 (quoting April 25 MOO, 250 F. Supp. 3d at 1027). The Defendants argue that the Court should not interpret the "proviso respecting 'mechanics and effects of the merger' to mean 'the events preceding the merger.'" Defendants' Briefing Response at 3 (quoting Merger Agreement § 8.04, at 9). According to the Defendants, the "actions about which Plaintiffs complained, which preceded and caused the merger, were performed at a time when only the laws of Oklahoma were in effect and, by the express provisions of the Merger Agreement, the laws of Oklahoma applied to those actions." Defendants' Briefing Response at 3-4.

Next, the Defendants argue that Oklahoma would not apply Delaware law with respect to awarding attorney's fees for pre-litigation conduct. See Defendants' Briefing Response at 4. The Defendants note that "Oklahoma is not bound to follow Delaware law and, where Delaware law conflicts with Oklahoma law, Oklahoma does not." Defendants' Briefing Response at 4 (citing La. Mun. Police Emps.' Ret. Sys. v. McClendon, 2013 OK CIV APP 64, ¶¶ 10-11, 307 P.3d 393, 398). The Defendants argue that Oklahoma would not follow Delaware law, because: (i) "Oklahoma courts have consistently and unambiguously rejected the award of fees based on an opponents' pre-litigation conduct," Defendants' Briefing Response at 5 (citing Towerridge, Inc. v. T.A.O., Inc., 111 F.3d at 765-69; Barnes II, 2004 OK 25, ¶¶ 13-14, 94 P.3d at 29; In re Webb, 2010 OK CIV APP 114, ¶14, 242 P.3d at 603; Snider Bros., LLC v. State, 2008 OK CIV APP 80, ¶ 32, 194 P.3d at 778; Sooner Trailer Mfg. Co. v. Gay, 1998 OK CIV APP 194, ¶ 6, 972 P.2d at 1179); and (ii) "Oklahoma has a strong public policy, grounded in its Constitution's guarantee of open access to the courts, against expanding judicial fee-shifting," Defendants' Briefing Response at 5 (citing Defendants' Brief at 11)(emphasis in original). The Defendants note that, in Barnes v. Oklahoma Farm Bureau Mutual Insurance Co., 2000 OK 55, 11 P.3d 162

("Barnes I"), the Supreme Court of Oklahoma overruled Brashier v. Farmers Insurance Co., 1996 OK 86, 925 P.2d 20 -- which "held that an insured may recover attorney fees as part of damages for [a] bad faith denial claim," Defendants' Briefing Response at 5 (citing Brashier v. Farmers Ins. Co., 1996 OK 86 ¶¶ 5-6, 925 P.2d at 24) -- because the Supreme Court of Oklahoma "found [Brashier v. Farmers Insurance Co.] represented an unwarranted exception from the American Rule strictly enforced in Oklahoma," Defendants' Briefing Response at 5 (citing Barnes I, 2000 OK 55, ¶ 55, 11 P.3d at 182). The Defendants thus argue that Oklahoma would not apply Delaware law to the Plaintiffs' Motion. See Defendants' Briefing Response at 6.

The Defendants maintain that Erie is "irrelevant to the issue presented by the Court." Defendants' Briefing Response at 6. The Defendants note that, in the Sept. 8 MOO, the Court reasoned that "'there is no equivalence between what is substantive under the Erie doctrine and what is substantive for purposes of conflict of laws.'" Defendants' Briefing Response at 6 (quoting Sept. 8 MOO at 6). The Defendants argue that, while one Erie principle is "insuring that the choice of federal versus state forum in diversity cases is not outcome determinative, . . . that principle is not relevant for resolving choice of law issues involving various states' law." Defendants' Briefing Response at 6 (citing Boyd Rosene, 174 F.3d at 1118). Next, the Defendants argue that applying Oklahoma law would not prejudice the Plaintiffs. See Defendants' Briefing Response at 7. The Defendants aver that, "since attorney fees were not at issue at trial, whether Delaware law or Oklahoma law applied to attorney fees could not possibly have any bearing on an award, or not, of fees and costs." Defendants' Briefing Response at 7. The Defendants also argue that the Plaintiffs' reliance on the April 25 MOO's holding that

Delaware law applies to the fiduciary duty claims is misplaced, because, "rather than automatically applying the law of the state providing the substantive contract law, a district court must first apply the forum[] state's choice-of-law rules in resolving attorney fees issues." Defendants' Briefing Response at 7 (quoting Boyd Rosene, 123 F.3d at 1353). According to the Defendants, applying Oklahoma law would not prejudice the Plaintiffs, because the "Plaintiffs present no example of prejudice, only speculation and conjecture that they would have adopted different, unidentified, litigation tactics." Defendants' Briefing Response at 8 n.7 (citing Stouffer v. Duckworth, 825 F.3d 1167, 1181 (10th Cir. 2016)). Last, the Defendants argue that the Court should not hold the Defendants' Motion in abeyance, because the "Plaintiffs cannot recover fees under either Oklahoma or Delaware law." Defendants' Briefing Response at 8.

16.    **The Defendants' Briefing Reply.**

The Defendants replied to the Plaintiffs' Briefing Response on December 18, 2017. See Defendants' Reply in Support of Defendants' Opening Brief Respecting Choice of Law [Doc. 473], filed December 18, 2017 (Doc. 477)("Defendants' Briefing Reply"). The Defendants reiterate that Oklahoma law applies, because the Defendants' "inactions of which the Plaintiffs complain are omissions preceding the merger at a time when only Oklahoma law could conceivably have applied." Defendants' Briefing Reply at 2 (emphasis in original)(footnote omitted). The Defendants argue that the "Plaintiffs' argument . . . that Plaintiffs' claims involve the liability of the surviving Delaware entity is unavailing," because if "the surviving Delaware entity had any liability, . . . that liability would be imposed solely through the Delaware entity's assumption of liabilities of the Oklahoma corporation in the merger. Such 'assumed' liabilities can only be measured by Oklahoma law." Defendants' Briefing Reply at 2 (citing the Plaintiffs'

Briefing Response).  The Defendants next assert that applying Oklahoma does not prejudice the Plaintiffs, because the "Plaintiffs cannot point to a single piece of evidence they would have offered or a single argument they would have made had they known Oklahoma law applied to the determination of the value of the Oklahoma corporation's shares rather than Delaware law." Defendants' Briefing Reply at 3.  The Defendants also assert that the "Plaintiffs fail to give any examples of [jury] instructions which would have been different had the Court initially determined that Oklahoma, not Delaware, law would govern Plaintiffs' fiduciary duty claims." Defendants' Briefing Reply at 3 (footnote omitted).

The Defendants reiterate that "Oklahoma would, under a choice of law analysis, apply Oklahoma law to a request for attorney fees and costs based upon pre-litigation conduct." Defendants' Briefing Reply at 4 (citing Defendants' Brief at 5-10).  According to the Defendants, the "internal affairs doctrine and the significant contacts doctrine are not 'irrelevant' as Plaintiffs assert without supporting argument or authority . . . , but outcome determinative." Defendants' Briefing Reply at 4-5 (quoting Plaintiffs' Briefing Response at 5-6, and citing Defendants' Brief at 5-10).  The Defendants argue that Oklahoma would not follow Delaware law on attorney's fees based on pre-litigation conduct, because "Oklahoma courts have consistently and unambiguously rejected the award of fess based on pre-litigation conduct." Defendants' Briefing Reply at 6.  The Defendants contend that, although "the surviving entity into which TIR was merged is a Delaware entity," the "liability of the surviving entity is liability by attribution only and the attributed liability arises solely under Oklahoma law."  Defendants' Briefing Reply at 6-7.  The Defendants further argue that "the alleged liability of the controlling

shareholders of an Oklahoma corporation to the shareholders of the Oklahoma corporation can only arise under Oklahoma law."  Defendants' Briefing Reply at 7.

### 17.    <u>**The Plaintiffs' Briefing Reply**</u>.

The Plaintiffs replied to the Defendants' Briefing Response on December 18, 2017.  <u>See</u> Plaintiffs' Reply Brief Regarding Choice of Law, filed December 18, 2017 (Doc. 478)("Plaintiffs' Briefing Reply").  The Plaintiffs summarize:

> That is what happened here.  Defendants decided in the choice-of-law rule they inserted in the Merger Agreement (Section 8.04) that Delaware law applies to the mechanics and effects of the merger.  That choice of Delaware law to govern the merger's mechanics and effects was "not contrary to Oklahoma's established public policy" or "repugnant to Oklahoma's established law or public policy."  Indeed, Defendants have not even attempted to show that it was -- perhaps unsurprisingly, since they are the ones who made that choice.

Plaintiffs' Briefing Reply at 2-3 (internal quotation marks omitted).  The Plaintiffs argue that, "because Oklahoma follows Delaware law with respect to the Oklahoma General Corporation Law under which the TIR Merger was effected, . . . it is entirely *consistent with* Oklahoma established law and public policy to import . . . Delaware law governing breach of fiduciary duty claims . . . and the remedies available for such claims."  Plaintiffs' Briefing Reply at 3 (citing <u>Egleston ex rel. Chesapeake Energy Corp. v. McClendon</u>, 2014 OK CIV APP 11, ¶ 10, 318 P.3d 210, 215)(emphasis in original).  The Plaintiffs reiterate that, "as the Court correctly held, it was Plaintiffs' being cashed out without receiving fair value *as a result* of the Merger that gave rise to their claims."  Plaintiffs' Briefing Reply at 4 (citing Plaintiffs' Brief at 2-4; Plaintiffs' Briefing Response at 3, 5-6)(emphasis in original).  According to the Plaintiffs, the "Defendants' actions prior to the Merger are relevant to those claims, [but] the claims would not have existed had Defendants not executed the Merger and triggered its effects."  Plaintiffs' Briefing Reply at 4.

The Plaintiffs next argue that, "because attorney's fees are an element of the remedy available for Plaintiffs' fiduciary duty claims, they too are governed by Delaware law." Plaintiffs' Briefing Reply at 4. The Plaintiffs assert that the Defendants are asking the Court to "sever another element of the remedy available for the Plaintiffs' claim -- attorney's fees -- and apply to that single element an entirely different body of law than the law governing the other elements." Plaintiffs' Briefing Reply at 4. The Plaintiffs reiterate that their "entitlement to recover their attorney's fees is [] an 'effect of the merger,' and thus governed by Delaware law." Plaintiffs' Briefing Reply at 5 (quoting Merger Agreement § 8.04, at 9). The Plaintiffs stress that the "remedy available to minority shareholders" in breach-of-fiduciary-duty actions includes "*both* the fair value of the minority shareholders' shares *and* the attorney's fees and costs incurred by the minority shareholder to establish Defendants' breach." Plaintiffs' Briefing Reply at 5 (emphases in original). The Plaintiffs also counter that the sole case that the Defendants cite to argue that Delaware law and Oklahoma law conflict -- <u>Louisiana v. Municipal Police Employees' Retirement System v. McClendon</u> -- is inapposite, because, in that case, "there was no valid basis to apply Delaware law." Plaintiffs' Briefing Reply at 5-6. The Plaintiffs again argue that "there is no [] Oklahoma public policy barring the fees sought here." Plaintiffs' Briefing Reply at 6 (citing <u>Chieftain Royalty Co. Enervest Energy Inst. Fund XIII</u>, 861 F.3d at 1188). According to the Plaintiffs, the "Defendants' position that Oklahoma has categorically 'rejected the award of fees based on an opponent's pre-litigation conduct' is nonsensical, because that position would invalidate *any* substantive fee award in *any* case, and would permit *only* procedural fees awarded as sanctions for litigation conduct. That is not the law." Plaintiffs' Briefing Reply at 6 (quoting Defendants' Briefing Response at 6, and citing <u>Chapman v. Chase</u>

Manhattan Mortg. Corp., No. 04-CV-0859-CVE-FHM, 2008 WL 2230901, at *8 (N.D. Okla. May 28, 2008)(Eagan, J.); Fulsom v. Fulsom, 2003 OK 96, ¶¶ 11-15, 81 P.3d at 657-58)(emphasis in original).

The Plaintiffs reiterate that revisiting the Court's earlier rulings that Delaware law governs would prejudice Plaintiffs. See Plaintiffs' Briefing Reply at 7. The Plaintiffs maintain that they "reasonably believed" that, in the April 25 MOO, the Court "expressly conducted a choice-of-law rules analysis and ruled that Delaware law governs the 'entire fairness of the cash-out merger'" and the "fiduciary duty claims" and thus concluded that "Delaware law also governed the remedies available . . . , including [] attorney's fees." Plaintiffs' Briefing Reply at 7-8 (quoting April 25 MOO, 250 F. Supp. 3d at 1025-26). The Plaintiffs note that, "[u]nder [] Delaware law on which Plaintiffs relied, the Plaintiffs anticipated that apart from whatever fair value damages they received, they would also be entitled to be reimbursed for their fees." Plaintiffs' Briefing Reply at 8. The Plaintiffs add that they expressed to the Court at a hearing on December 28, 2016, that "a significant factor in Plaintiffs' decision-making was the possibility of fee shifting under Defendants' offer of judgment." Plaintiffs' Briefing Reply at 8 (citing Transcript of Motion Hearing at 378:10-14 (taken December 28, 2016)(Kagen), filed January 23, 2017 (Doc. 250)). The Plaintiffs further note that, throughout the trial, they "reasonably anticipated little likelihood that Defendants would be 'entitled to reasonable litigation costs and reasonable fees' under their Offers of Judgment, because it was unlikely that 'the judgment awarded the plaintiff' -- which would include attorney's fees -- would be 'less than [the] offer[] of judgment.'" Plaintiffs' Briefing Reply at 9 (quoting 12 Okla. Stat. Ann. § 1101.1(B)(3) & (C))(alterations in Plaintiffs' Briefing Reply). The Plaintiffs contend that their "reliance was

reasonable. If Defendants wanted a ruling carving out the attorney fee element of damages for Plaintiffs' Delaware fiduciary duty claims, it was incumbent on Defendants to seek such a ruling before trial." Plaintiffs' Briefing Reply at 9. The Plaintiffs conclude that their "decision to go to trial rather than accept the offers of judgment might well have been different" had they received a "pretrial ruling that Oklahoma law would govern their entitlement to fees." Plaintiffs' Briefing Reply at 10.

      **18.**    <u>**The Defendants' Bench Brief.**</u>

      On the same day as the August 15, 2018, hearing, the Defendants filed the Defendants' Bench Brief Concerning Application of the Oklahoma Offer of Judgment Statute, filed August 15, 2018 (Doc. 483)("Defendants' Bench Brief"). The Defendants' Bench Brief, which supports the Defendants' Motion, argues that Oklahoma's offer-of-judgment statute is procedural and thus applies to the Defendants' Motion "under Oklahoma's choice of law rules." Defendants' Bench Brief at 2. <u>See</u> <u>id.</u> at 3-4 (citing <u>MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.</u>, 197 F.3d 1276, 1282 (9th Cir. 1999); <u>MPEG LA, L.L.C. v. Dell Global B.V.</u>, C.A. No. 7016-VCP, 2013 WL 812489, *4-7 (Del. Ch. March 6, 2013); <u>Zaretsky v. Molecular Biosystems, Inc.</u>, 464 N.W.2d 546, 550-51 (Minn. Ct. App. 1990); <u>Pain Webber Jackson and Curtis, Inc. v. Winters</u>, 22 Conn. App. 640, 649-55, 579 A.2d 545, 550-52 (Conn. App. Ct. 1990)). The Defendants maintain that Oklahoma's offer-of-judgment statute "only applies <u>after</u> litigation has commenced, and is analogous to court mandated alternative dispute resolution processes, which are unquestionably procedural." Defendants' Bench Brief at 4 (emphasis in original). The Defendants conclude that, because Oklahoma's offer-of-judgment statute is

procedural, the statute applies, even if the Court determines that Delaware law applies to the Plaintiffs' substantive claims.  <u>See</u> Defendants' Bench Brief at 5.

       19.      <u>**The August 15, 2018, Hearing.**</u>

       The Court held a motion hearing on August 15, 2018.  <u>See</u> Transcript of Motion Hearing at 1 (taken August 15, 2018), filed September 17, 2018 (Doc. 486)("Tr.").  Starting with the choice-of-law issue, the Court said that it wants "to relook at [the issue].  So it may have been that Oklahoma law applies."  Tr. at 4:19-20 (Court).  The Court noted that, for the issues in the case, most Oklahoma law "look[s] to Delaware law," except for the attorney's fees issue.  Tr. at 4:24 (Court).  The Court expressed that, while it now "think[s] that Delaware law does not apply," it also "think[s] the trial was conducted properly," because "Oklahoma and Delaware would do the same on everything we did through the trial."  Tr. at 5:1-10 (Court).  The Court said that it thinks that Oklahoma law applies to the attorney's fee issue and that "the Oklahoma Supreme Court would continue to adopt this portion of Delaware law that attorneys' fees would apply to a breach of fiduciary duty in these situations."  Tr. at 5:14-19 (Court).  The Court then summarized that it "think[s] . . . attorneys' fees are available to a plaintiff in a breach-of-fiduciary situation under Oklahoma law as they would [be] under Delaware law."  Tr. at 5:23-25 (Court).

       The Plaintiffs argued that the Court was correct at trial that Delaware law applies, and that the "Oklahoma offer-of-judgment statute . . . has virtually no bearing here and is not applicable."  Tr. at 7:1-4 (Kagen).  The Plaintiffs suggested: "It's actually a very clear Erie analysis that I would propose to Your Honor that we need to do."  Tr. at 7:4-6 (Kagen).  The Court interjected and said that its main concern is whether the Merger Agreement's

choice-of-law provision, which "says certain aspects of the merger would be governed by Delaware law," could bind nonparties to the Merger Agreement under Oklahoma's choice-of-law provisions. Tr. at 7:19-20 (Court). The Plaintiffs responded that, under Delaware law, "intended third-party beneficiaries can be beneficiaries of a contract, receive the benefits of the contract, and have it apply to them." Tr. at 8:3-5 (Kagen). The Plaintiffs then asserted that the "Oklahoma offer-of-judgment [statute] is [] substantive law, and therefore, it applies in diversity to Oklahoma claims," and added that the Court "needs to determine on a claim-by-claim basis what law applies," because substantive law "only applies to claims to which that law applies." Tr. at 8:10-16 (Kagen).

The Plaintiffs averred that rule 68 of the Federal Rules of Civil Procedure "doesn't shift fees. Rule 68 does not shift expert costs. Rule 68 only shifts certain specifically delineated litigation trial costs." Tr. at 9:12-16 (Kagen). The Plaintiffs recalled that they had brought federal claims under the Securities Exchange Act of 1934, and that, for those federal claims, Oklahoma substantive law is "inapplicable" and "irrelevant," so "[t]here is no way for defendants to obtain fees" for the federal claims. Tr. at 10:15-17 (Kagen). The Plaintiffs noted that there "was significant argument" about the federal claims, and they argue that "[n]one of that can be subject to the Oklahoma offer-of-judgment statute." Tr. at 11:5-9 (Kagen). The Plaintiffs reiterated that "there is no way at all that an Oklahoma substantive law can apply to federal claims brought to this court under federal question jurisdiction." Tr. at 11:19-21 (Kagen).

The Defendants countered that they are entitled to fees for the federal claims under Oklahoma's offer-of-judgment law. See Tr. at 11:23-12:3 (Court, DeMuro). The Defendants

stated that they agree with the Court's inclination that Oklahoma substantive law applies. <u>See</u> Tr. at 12:4-7 (DeMuro). The Defendants averred, however, that "[w]here [they] diverge with the court is on the issue of whether the Oklahoma Supreme Court would apply the Delaware law with respect to the availability of attorney fees." Tr. at 12:13-15 (DeMuro). The Defendants contended that, although the Tenth Circuit determined in <u>Scottsdale Ins. Co. v. Tolliver</u>, 636 F.3d 1273 (10th Cir. 2011), that "the offer-of-judgment statute is substantive," that "was an Erie determination. The choice there was whether federal or state law applied. That does not even come close to ending the inquiry." Tr. at 12:21-25 (DeMuro). The Defendants emphasized that the <u>Erie</u> analysis "is different than the choice-of-law analysis. Erie concerns federal versus state; choice-of-law concerns . . . what state's law applies." Tr. at 13:4-6 (DeMuro). The Defendants argued that the Court "must apply Oklahoma's choice-of-law rules when it sits in diversity, and under Oklahoma choice-of-law rules, the forum, Oklahoma, governs procedural matters even when Oklahoma's substantive law does not apply." Tr. at 13:10-14 (DeMuro). The Defendants asserted that "there is no equivalency between what is substantive under Erie and what is substantive for purposes of choice-of-law." Tr. at 13:16-18 (DeMuro). The Defendants argued that, while Oklahoma's offer-of-judgment statute is "substantive for Erie purposes," it is "procedural for choice-of-law purposes. . . . And there have been several courts, including the Delaware courts, who have held that offer-of-judgment statutes are procedural for choice-of-law purposes." Tr. at 13:21-14:8 (DeMuro). The Defendants further explained:

> [T]he reason that Erie is divergent from choice-of-law analysis is they serve two different purposes.

The Erie analysis concerns federalism and whether or not somebody's going to try to intentionally get into federal or state court to game that law, [and it] has federalism purposes.

Choice-of-law is not concerned with federalism. Choice-of-law is just an application of concepts like the internal affairs doctrine, substantial test doctrine, etcetera, totally separate inquiries.

Tr. at 14:15-24 (DeMuro).

The Defendants averred that the Plaintiffs' argument ignores the "rule" from Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941) -- "that in diversity this court is to apply the choice-of-law rules of the forum state. Under Oklahoma choice-of-law rules, procedural issues are to be applied by Oklahoma [] law." Tr. at 15:14-18 (DeMuro). The Defendants noted that Oklahoma's offer-of-judgment statute is "a procedural statute that is not a prevailing party attorney fee statute." Tr. at 16:2-3 (DeMuro). According to the Defendants, no Oklahoma court has analyzed whether Oklahoma's offer-of-judgment statute is procedural for choice-of-law purposes, but the Delaware, Minnesota, and Connecticut courts have found similar offer-of-judgment statutes to be procedural. See Tr. at 16:4-15 (DeMuro). The Defendants argued that, in Boyd Rosene, the Tenth Circuit determined that, under Oklahoma law, Oklahoma's prevailing-party attorney's fees statute is substantive for choice-of-law purposes, whereas Oklahoma's bad-faith attorney's fees statute is procedural. See Tr. at 17:10-19 (DeMuro). The Defendants further argued that Oklahoma's "offer-of-judgment statute is procedural," because its purpose is to "encourage settlements." Tr. at 17:23-18:5 (DeMuro)(citing Hubbard v. Kaiser-Francis Oil Co., 2011 OK 50, ¶ 13, 256 P.3d at 73). The Defendants reiterated that Erie does not apply and that the "majority view around the country is that offer-of-judgment statutes are procedural for choice-of-law purposes." Tr. at 20:25-21:1

- 104 -

(DeMuro). According to the Defendants, if a law "is concerned with the administration of justice and how cases are resolved, then it is procedural." Tr. at 21:8-10 (DeMuro)(citing Hubbard v. Kaiser-Francis Oil Co., 2011 OK 50, ¶ 22, 256 P.3d at 75).

The Defendants next argued that the view that the "Oklahoma Supreme Court would apply Delaware substantive law with respect to whether or not attorney fees were a substantive right" does "significant violence[] to Oklahoma's strong constitutionally-based public policy that does not create exceptions to the American rule in common law lightly." Tr. at 22:7-15 (DeMuro). The Defendants emphasized that "no Oklahoma court has ever found that attorney fees are awardable in a breach-of-fiduciary duty case." Tr. at 22:16-18 (DeMuro). The Defendants noted that, under Article II, Section 6 of the Constitution of Oklahoma, "[e]xceptions to the American rule are carved out with great caution." Tr. at 23:17-18 (DeMuro). The Defendants argued that the Supreme Court of Oklahoma would not "find that a breach of fiduciary duty gives rise to a substantive right to attorney fees." Tr. at 24:17-18 (DeMuro).

The Court said that, as to the federal claims, there is no Erie issue or choice-of-law issue. See Tr. at 25:13-14 (Court). "With a federal claim, federal law applies." Tr. at 25:16-17 (Court). The Court expressed that it is "having a very difficult time seeing how the defendants can make any sort of claim under an Oklahoma offer-of-judgment for any sort of fees or costs or anything else on the federal claims." Tr. at 25:20-23 (Court). The Court noted that there are "no Erie issues" with federal claims and that Klaxon Co. v. Stentor Elec. Mfg. Co., Inc. "is an application of Erie," so "it seems to me that the Klaxon case itself just doesn't address [the Plaintiffs' argument]." Tr. at 26:2-8 (Court). The Court also noted that there is no statute providing for "any sort of fee-shifting for federal claims." Tr. at 26:10-11 (Court). The Court

concluded that, "even if I'm inclined to grant the defendants' attorneys' fees under the offer of judgment for its state claims, I'm probably not going to be inclined to allow you to collect any fees for any work on the federal claims." Tr. at 26:18-22 (Court). The Defendants responded:

> By the time we got to trial, this was a straight diversity case, and, in fact, the gravamen of plaintiffs' claim have always been -- always been -- the state claims, the breach-of-fiduciary-duty claims. You'll recall that at the end of the day, the securities claims were hanging on life-support by that forced seller doctrine that really had no application, it was a wing and a prayer to begin with. So this case has always been about fiduciary duty at the heart.
>
> . . . .
>
> [M]ost of the work that we did on the securities claim in attorney fees is so intertwined with the breach-of-fiduciary-duty claims when we're talking about what the directors did and didn't do, what representations were made, what disclosures were made. So when we get down to actually looking at our [attorney fee] application[,] . . . even if you exclude technically the federal law claims under Tenth Circuit attorney fee law, the claims are so intertwined that there's really at the end of the day not going to be much that's excluded in terms of attorney fees.

Tr. at 27:16-28:14 (DeMuro).

The Plaintiffs argued that Oklahoma's offer-of-judgement statute does not "apply to the federal claims in this case." Tr. at 28:25-29:1 (Kagen). The Plaintiffs noted that their federal claims "existed in this case for over two years," during which time the Court maintained federal-question jurisdiction. Tr. at 29:6-7 (Kagen). The Plaintiffs argued that the Court should dismiss the Defendants' Motion. See Tr. at 29:20-24 (Kagen). The Plaintiffs contended that the Court "needs to determine using choice-of-law principles what state's law applies to a given claim, but once that state's law is applied, that is the only state's law that applies." Tr. at 30:25-31:3 (Kagen). The Plaintiffs averred that no Oklahoma law applies to the case. See Tr. at 32:15-33:6 (Kagen). According to the Plaintiffs, there is "no law, no case, no statute . . . that

- 106 -

would permit two states' laws to apply. That violates Erie. That violates diversity jurisdiction." Tr. at 33:23-34:1 (Kagen). The Plaintiffs reiterated that the Court should not "apply the state substantive law of both Delaware and Oklahoma to a claim. That's just error. So we believe Delaware law should apply." Tr. at 35:5-7 (Kagen). Next, the Plaintiffs argued that the significant contacts test is irrelevant, because "the significant contacts test applies only in the absence of a governing choice-of-law provision," which the Merger Agreement contains. Tr. at 35:22-25 (Kagen). The Plaintiffs argued that Delaware law also applies, because the "merger was effectuated pursuant to the Delaware Limited Liability Company Act," Del. Code Ann. tit. 6, §§ 18-101 to 18-1109 (2014), not pursuant to Oklahoma law. Tr. at 36:20-21 (Kagen). The Plaintiffs asserted that Oklahoma's offer-of-judgment statute is "substantive in the same way that a statute of frauds is substantive or a statute of limitations is substantive." Tr. at 38:3-5 (Kagen). The Plaintiffs noted that the surviving entity "is a Delaware limited liability company and Delaware law again has purchase." Tr. at 38:18-19 (Kagen). The Plaintiff agreed that Oklahoma law and Delaware law conflict, and they argued that, under Delaware law, "it is unfair and inequitable for plaintiffs to shoulder the costs of litigation arising out of improper prelitigation conduct." Tr. at 40:12-13 (Kagen). The Plaintiffs added that Delaware law does not have an offer-of-judgment statute and that there "is no way to shift fees onto a winning plaintiff" in Delaware. Tr. at 40:23-25 (Kagen). The Plaintiffs explained that Delaware's public policy "discourages outright acts of disloyalty by fiduciaries" and thus "[w]rongdoers are not to be benefitted by their wrongdoing." Tr. at 42:1-3 (Kagen).

The Plaintiffs characterized the Defendants' position as arguing that Oklahoma's policy is to "enrich wrongdoers." Tr. at 42:20 (Kagen). The Plaintiffs argued that awarding the

Defendants attorney's fees violates <u>Erie</u>, because it is "inconsistent" with Delaware law and contravenes <u>Erie</u>'s principal aim to "put a party . . . in the same position, the same outcome, applying the same state's law as if they were bringing in state court."  Tr. at 43:8-16 (Kagen).

The Plaintiffs asserted that they were "forced to pay to come into court" to determine the price of their shares, and, under Delaware policy, "it would be unfair and inequitable to have plaintiffs shoulder their own litigation costs when the defendants . . . are the wrongdoers."  Tr. at 44:24-45:17 (Kagen).  According to the Plaintiffs, they would be prejudiced if Delaware law does not apply, because they "reasonably relied on the decisions of the court" ruling that Delaware law applies, and "Delaware law does not enforce or recognize an offer of judgment." Tr. at 46:3-7 (Kagen).  The Plaintiffs reiterated that the Merger Agreement stipulates that Delaware law applies to the Merger's effects, and they argued that

> we are clearly intended third-party beneficiaries of that contract under Delaware law, with which I am familiar, because we are intended and named beneficiaries of that contract because all the shares are noted to be canceled and extinguished. That contract clearly was written and designed to have effect upon us.  We're named within it.  The stockholders are the ones that are canceled.
>
> So when third-party beneficiaries are named, the effects can be applicable.

Tr. at 48:6-14 (Kagen).  The Court interjected that, in the April 25 MOO, the Court held

> that Oklahoma law applied to the waiver, the estoppel, the acquiescence, those doctrines.  Because remember what I did is I applied Delaware law to the entire fairness claims and then -- but said Oklahoma law applied to the others.  Because remember the way that [§] 8.03 was structured, Oklahoma law applied as the default rule, the basis law, but then it had this -- it had this provision that said as to the effect and mechanics of the merger Delaware law would apply.  And so the important point on those affirmative defenses that the defendants raised is that they didn't seem to me to be applicable to the effects of the merger.
>
> But here, it would seem to me that, particularly given the provision in the merger agreement, [section] 2.02, where it's flat out labeled "effect of the merger

on capital stock," that is actually the mechanics by which your shares are cashed out and you're paid this amount.  So it's very difficult for me to see how the entire fairness claims would not be an effect of the merger so that what people were contending was -- what people were contending -- what your people were contending, your plaintiffs were contending, was an effect of the merger.

Tr. at 50:1-20 (Court).   In response, the Plaintiffs confirmed that "Delaware law [is] fully applicable here," because the cancellation of their shares was an "effect . . . of the merger."  Tr. at 51:25-52:9 (Kagen).   The Plaintiffs argued, however, that "[o]ne state's law applies only substantively, one and only one. . . .   You're never, ever going to get a situation where Delaware provides some elements and Oklahoma provides some other elements and New York provides some other elements and Wisconsin goes and provides some third elements."  Tr. at 52:17-19 (Kagen).

Turning to the distinction between substantive law and procedural law, the Plaintiffs averred that they "frankly don't understand" the Defendants' argument that Oklahoma's offer-of-judgment statute is procedural.  Tr. at 53:10 (Kagen).  The Plaintiffs argued that, under Erie, federal procedural law applies in diversity cases, so the Oklahoma offer-of-judgment statute "has no bearing, . . . even if this were an Oklahoma-governed law case, which it isn't."  Tr. at 53:22-23 (Kagen).  The Plaintiffs reasoned that, if the Defendants instead argued that the Oklahoma offer-of-judgment statute is substantive, then it does not apply, because "Oklahoma substantive law has no bearing on a Delaware case."  Tr. at 54:8-9 (Kagen).  The Plaintiffs also emphasized that Oklahoma law and Delaware law "are not consistent," because "Delaware has no offer-of-judgment statute."  Tr. at 55:6-7 (Kagen).  The Plaintiffs noted that the jury "never was told that the defendants are wrongdoers," and they argued that, under Delaware law, "a fact-finder must take [the Defendants' liability] into account in determining the appropriate

equitable relief," such as attorney's fees.  Tr. at 57:5-18 (Kagen).  According to the Plaintiffs, there is no Delaware case "where a fact-finder was blinded from knowing the wrongdoing was committed by the wrongdoer in fashioning a remedy."  Tr. at 57:24-25 (Kagen).

After a short break, the Court advised that it is "not really getting . . . what [it] want[s] from any party here in the briefing or the argument."  Tr. at 59:5-7 (Court).  The Court continued:

> Let's go back to [the April 25 MOO], which is the one that I had said I am wondering if I got it right. . . .  [I]t says that the Tenth Circuit has determined that the Supreme Court of Oklahoma would follow Restatement (Second) Conflict of Laws, Section 302, and that the law of the state of incorporation shall be applied to determine the liabilities of a corporation. . . .  [It then] says that the plaintiff's claim involves the liability of the surviving Delaware entity.
>
> . . . .  Are they talking about the original corporation, which was TIR, Inc., which was an Oklahoma corporation, or TIR, LLC, which was a Delaware corporation?
>
> Now, my analysis at the time, as you can see from my opinion, is that there is no TIR, Inc., you didn't sue a TIR, Inc., you didn't sue an Oklahoma corporation, you sued a Delaware corporation. . . .
>
> But to a great extent it wasn't so much TIR, LLC that was the focus of the lawsuit here, it was the individual defendants that were here. . . .  I said that the merger agreement states Delaware law applies to the mechanics and effect [of the merger].  And that's what I've had some concerns about, is how significant of a factor that was. . . .
>
> So those were the three factors that I used to say it didn't fall into the default provision of the Restatement.  It still followed the first portion that the law of the state of incorporation shall be applied to determine the liabilities of a corporation, and the only corporation that was being sued that was part of the merger was the LLC.
>
> And I guess my question is, looking back at the Restatement, what corporation are they talking about there?  Are they talking about the first entity, which was an Oklahoma corporation, or are they talking about the surviving entity?  And then second -- and this is the reason I'm focusing on this merger

agreement and the law that applies -- if you and I are in a business and we agree that Delaware law applies and we're going to squeeze out [a third party], can [the third party] be bound by the agreement that you and I make that Delaware law applies?

Tr. at 59:8-61:9 (Court). The Plaintiffs responded that they would have to think carefully about the Court's questions and respond later in the day. See Tr. at 61:24-62:6 (Kagen). The Plaintiffs next argued that, "the court's rulings with regard to governing law are not . . . likely to be changed." Tr. at 62:10-12 (Kagen). The Court noted:

> The problem with, you know, being too critical of the court is, you recall what I said in my opinion is that I had to do all this work myself. I said that the parties in this case present arguments under both Delaware and Oklahoma law. . . .
>
> So to some degree, if the plaintiffs, you know, feel that they've been prejudiced by the court's decision, it quite frankly should have thought of this issue and briefed the daylights out of it when we were here the first time rather than me really having to do all the spade work for the parties on these choice-of-law issues. . . . When I got here, everybody was talking about Delaware law and they talked about it extensively, they had charts on it. And so it seems to me a little difficult for anybody to say they've been prejudiced if they didn't do any spade work in advance of it.

Tr. at 63:10-64:6 (Court).

The Plaintiffs next reiterated that "only one state's law is going to apply to these state law claims. It's either going to be Delaware or Oklahoma." Tr. at 65:2-3 (Kagen). The Court opined: "I'm not sure I'm buying entirely just because I decide this is a Delaware claim, that no aspect of Oklahoma law would apply." Tr. at 66:8-10 (Court). The Plaintiffs responded that, under Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII, 888 F.3d 455, and Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d 1152 (10th Cir. 2017), "only one state's substantive law is going to apply to this claim." Tr. at 66:25-67:1 (Kagen). The Court noted that

it already had determined, however, "that the affirmative defenses of the defendants were governed by Oklahoma law and [] tossed them out on the basis of Oklahoma law." Tr. at 67:7-9 (Court). The Plaintiffs argued that Delaware law "only applies to effects and mechanics of the Merger. Oklahoma law applies to the other portions of the agreement." Tr. at 67:23-25 (Kagen). The Court stated that, "[i]f Oklahoma law applies to the claims, then certainly I think the offer-of-judgment rule applies. . . . [B]ut it seems to me that [the Defendants have] an argument that [Oklahoma's offer-of-judgment statute] could apply even if Delaware law applies." Tr. at 70:3-9 (Court). The Plaintiffs requested that, if the Court determines that Oklahoma's offer-of-judgment statute applies, the Court exercise its "equitable discretion" and award the Plaintiffs attorney's fees. Tr. at 70:24 (Kagen).

The Court stated that, according to its "memory of [] Delaware law," courts award fees "in the exceptional cases." Tr. at 71:12-15 (Court). The Court said that, if Delaware law applies, this case "would probably fall into the run-of-the-mill breach of fiduciary cases, not exceptional cases," and therefore Plaintiffs "can't satisfy the exceptional case requirement of the Delaware law and . . . shouldn't . . . receive fees at all because [they] would not receive them in Delaware." Tr. at 71:16-72:1 (Court). The Plaintiffs responded that they disagree with the Court's "use of the term 'exceptional.'" Tr. at 73:1-2 (Kagen). According to the Plaintiffs, under Delaware law, there is no "persuasive argument that exceptional cases need be found to award attorneys' fees. It is a matter of equitable discretion for the fact-finder." Tr. at 73:7-9 (Kagen). According to the Plaintiffs, Delaware "cases look at the overall facts and circumstances of the matter so the fact-finder can apply her equitable discretion, . . . which is not fettered or constrained by the finding of the word 'exceptional' or 'egregious' or 'particular' or some other such limiting factor." Tr.

at 75:22-76:2 (Kagen). The Plaintiffs argued that the Court should grant an "equitable remedy," because the "jury was blinded from . . . the [Defendants'] wrongdoing." Tr. at 78:9-10 (Kagen). The Plaintiffs explained:

> [T]his is the way it works. Because the jury was blinded from the wrongdoing, the jury did not include that in its award. Because we did not have the ability to tell that to the jury, we only received what the court deemed to be legal damages. Because of that, the jury could not consider wrongdoing. Because of that, we were not compensated for that. Because of that, Oklahoma's offer of judgment will spring into action and punish us for some substantial sum. It will be far less than what defendants claim. Their motion is thoroughly defective because they did not take out the federal claims but some portion will remain.

Tr. at 79:5-15 (Kagen). The Plaintiffs argue that the Court should use its "discretion to avoid an otherwise never-before-seen consequence under Delaware law, which . . . Oklahoma law strives to emulate." Tr. at 79:21-23 (Kagen).

The Plaintiffs argue that this case is very similar to Nine Systems I and Nine Systems II. See Tr. at 82:21-25 (Court). The Plaintiffs highlight the following four similarities: (i) "the defendants utterly failed to understand their fiduciary relationship with plaintiffs," Tr. at 83:1-3 (Kagen); (ii) the "defendants knowingly excluded from the process . . . the minority shareholders," Tr. at 83:11-13 (Kagen); (iii) the "defendants affected the challenged corporate recapitalization through a [] grossly inadequate process," Tr. at 83:18-20 (Kagen); and (iv) the "defendants sought to avoid full and fair communications with the company's stockholders," Tr. at 84:2-3 (Kagen). The Plaintiffs argued that they disagree with the Court's statement that "this case might not be an exception to the American rule." Tr. at 84:25-85:1 (Kagen). The Plaintiffs said that the Delaware court in Nine Systems I and Nine Systems II used its equitable discretion to shift fees, and they argued that the Court should award the Plaintiffs attorney's fees. See Tr.

at 85:6-10 (Kagen).  The Plaintiffs noted, however, that unlike the Plaintiffs' attorneys, in <u>Nine Systems I</u> and <u>Nine Systems II</u>, the plaintiffs' attorneys worked "on a complete contingency so the plaintiffs didn't incur any out-of-pocket obligation to pay."  Tr. at 85:15-17 (Kagen).

The Defendants argued that, as the Court reasoned in the Sept. 8 MOO, "even if Oklahoma substantive law does not apply" to the Plaintiffs' claims, "Oklahoma procedural law" still applies.  Tr. at 90:6-7 (DeMuro).  The Defendants also emphasized that "the Erie analysis is different than the choice-of-law analysis."  Tr. at 90:3-4 (DeMuro).  The Defendants further explained that, in the Sept. 8 MOO, the Court reasoned that, "under choice-of-law rules, the law of the forum governs procedural issues."  Tr. at 91:14-15 (DeMuro).  The Defendants expressed their disagreement with the Plaintiffs' position that only Delaware law applies, and that Oklahoma law does not apply at all.  <u>See</u> Tr. at 91:20-91:1 (DeMuro).  The Court stated that "dépeçage,"[49] which is a French term meaning that the Court may apply "different state law to different issues in a legal dispute . . . on an issue-by-issue basis," is appropriate.  Tr. at 92:8-11 (Court)(citing <u>Johnson v. Cont'l Airlines Corp.</u>, 964 F.2d 1059, 1064 (10th Cir. 1992)).  The Court explained that the choice-of-law issue is "more nuanced than just saying once we determine Delaware law applies, . . . no other aspect . . . [of] Oklahoma law [] would apply."  Tr. at 94:12-14 (Court).  The Defendants said that they agree with the Court's analysis.  <u>See</u> Tr. at 94:21-22 (DeMuro).  The Defendants further argued that attorney's fees related to the

---

[49]The Tenth Circuit has recognized the principle of "dépeçage," which it defines as "the widely approved process whereby the rules of different states are applied on the basis of the precise issue involved."  <u>Johnson v. Cont'l Airlines Corp.</u>, 964 F.2d 1059, 1062 n.4 (10th Cir. 1992).

"administration of justice and not [the] prevailing [] party" are procedural.  Tr. at 95:9-10 (DeMuro).

Next, the Defendants argued that the internal-affairs doctrine applies and that the "corporation that's meant to be protected by the internal affairs doctrine is TIR, Inc, the original corporation."  Tr. at 97:97:27-18 (DeMuro).  The Defendants said that the "focus of the internal affairs doctrine in . . . this case is an application to the directors of the company and their liability and their relationship and officers to the shareholders and what liability [] the directors of an Oklahoma corporation have."  Tr. at 97:11-15 (DeMuro).  The Court noted that the Restatement (Second) of Conflict of Laws states that the "'law of the state of incorporation will be applied to determine' the liabilities of a corporation."  Tr. at 97:24-91:1 (Court)(quoting Restatement (Second) of Conflict of Laws § 302(2)).  The Court asked: "If the corporation no longer exists, then how do I give content to those words?"  Tr. at 98:2-3 (Court).  The Defendants responded that "any liability of the new company, TIR, LLC, . . . would be derivative of the original company," Tr. at 98:13-16 (DeMuro), and "the liability that's at issue here arose as a result of the directors and officers of . . . Tulsa Inspection Resources, Inc., the old company."  Tr. at 98:22-25 (DeMuro).  The Defendants further explained that "the new company was named because it was what emerged from the merger, but all of the liability-triggering events happened in the old company."  Tr. at 99:4-6 (DeMuro).  The Court noted, however, that, "since the old corporation doesn't exist anymore, the only liabilities of a corporation that could come into play would be the existing or resulting corporation and that would be TIR, LLC."  Tr. at 100:11-14 (Court).  The Defendants then argued that the Court should apply the Restatement (Second) of Conflict of

Laws § 309, because § 309 is "the more specific part of the Restatement that's tailored to what's going on here."  Tr. at 102:5-7 (Court).  Section 309 states:

> The local law of the state of incorporation will be applied to determine the existence and the extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the transaction, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 309.  The Defendants also argued that § 309 applies, because "the case is about the liability of the directors of an Oklahoma corporation."  Tr. at 102:7-8 (DeMuro).  The Defendants added that TIR, LLC was "dismissed as a party at the pretrial conference in August of 2017," before the trial began.  Tr. at 114:11-12 (DeMuro).  The Court noted that some of the Defendants are shareholders and not directors, and the Defendants agreed and noted that § 309 also applies to shareholders.  See Tr. at 117:9-18 (Court, DeMuro).  The Court noted that § 303 applies to shareholder and contains language that closely tracks § 309.  See Tr. at 120:6-13 (Court)(citing Restatement (Second) of Conflict of Laws § 303).

The Defendants argued that the Plaintiffs were not "stripped of millions of dollars," because: (i) the jury verdict indicates that the Plaintiffs "got exactly what they were entitled to"; and (ii) "the act of a cash-out merger . . . is not a liability-triggering event."  Tr. at 102:18-19 (DeMuro).  According to the Defendants, the "omissions by the Oklahoma directors in setting up prophylactic measures premerger[] had nothing to do with the fact that [the Plaintiffs] were cashed out."  Tr. at 102:23-25 (DeMuro).  The Defendants asserted that, under the internal-affairs doctrine, "when you have a case which is alleging breach of fiduciary duty by a director, it's the place of incorporation of that company that the director is a director of."  Tr. at 1039-12

(DeMuro).  Turning to the significant-relationship test, the Defendants argued that Oklahoma law applies, because: (i) the "personal directors were Oklahoma residents"; (ii) TIR, Inc. "was an Oklahoma company"; (iii) "all of the acts alleged to occur and not occur occurred in Oklahoma"; and (vi) "the merger agreement was negotiated and executed in Oklahoma."  Tr. at 103:16-22 (DeMuro).

The Court intervened by highlighting that the parties agree, pursuant the Merger Agreement, that "Delaware law applies to the effect of the merger.  But now we're at trial and you're saying you don't want Delaware law to apply."  Tr. at 105:3-7 (Court).  The Defendants argued that the Plaintiffs were not privy to the Merger Agreement, and they said that the "merger agreement specifically disclaims any third-party rights in paragraph 8.07."  Tr. at 106:10-11 (DeMuro).  The Defendants also averred that the "lack of a procedure before the merger" was not an effect or mechanic of the Merger.  Tr. at 108:14-15 (DeMuro).  Next, the Defendants noted that the Court held in the April 25 MOO that "'Oklahoma recognizes parties' selection of a particular state's law to control a contract agreement as long as the selected law is not contrary to Oklahoma's established public policy.'"  Tr. at 109:9-12 (DeMuro)(quoting April 25 MOO, 250 F. Supp. 3d at 972-73).  The Defendants explained that, "under Oklahoma choice-of-law concepts, the offer-of-judgment is undoubtedly procedural.  And therefore, our forum state has a strong policy . . . against grafting new [] common law exceptions to the American Rule."  Tr. at 111:10-14 (DeMuro).  The Defendants summarized that the "choice-of-law provision in the merger agreement [does not direct] you to Delaware law for the purposes of attorney fees, even if it directed you to Delaware law for the substantive law, because the offer-of-judgment statute

is procedural and the choice-of-law provision in the merger agreement is silent" about attorney's fees.  Tr. at 112:10-15 (DeMuro)(citing <u>Boyd Rosene</u>).

The Defendants next turned to whether the Plaintiffs are entitled to attorney's fees.  <u>See</u> Tr. at 118:25-119:7 (DeMuro).  The Defendants argued that "not a single case in Oklahoma [] has applied the equitable remedy of attorney fees to breach of fiduciary" duty claims.  Tr. at 121:19-21 (DeMuro).  Next, the Defendants contended that, although Oklahoma law often follows Delaware law, "[w]here Delaware law conflicts with Oklahoma law, Oklahoma will not follow Delaware law on corporate matters."  Tr. at 122:2-3 (DeMuro)(citing <u>La. Mun. Police Emps.' Ret. Sys. v. McClendon</u>, 2013 OK CIV APP 64, 307 P.3d 393).  The Defendants argued that Oklahoma courts have a strong public policy not to create new exceptions to "the American rule except under highly unusual circumstances not present here."  Tr. at 122:21-22 (DeMuro)(citing <u>Beard v. Richards</u>, 1991 OK 117, 820 P.2d 812; <u>Barnes II</u>, 2004 OK 25, 94 P.3d 25).  The Defendants asserted that "it's a stretch . . . to say that the Tenth Circuit would predict that Oklahoma law would apply" Delaware law and award the Plaintiffs attorney's fees.  Tr. at 123:19-20 (DeMuro).

The Defendants argued that, if Delaware law applies, the Plaintiffs should not receive attorney's fees, because the Defendants' conduct does not rise to "the level of egregious or exceptional circumstances."  Tr. at 124:7-10 (DeMuro).  The Defendants maintained that "egregiousness is [the] threshold" for awarding attorney's fees as an equitable remedy under Delaware law.  Tr. at 124:17 (DeMuro)(citing <u>Cole v. Kershaw</u>, 2000 WL 1206672, at *5).  According to the Defendants, <u>Nine Systems II</u> uses the word "exceptional."  Tr. at 125:2-3 (Court, DeMuro).  The Defendants asserted that the Delaware Court of Chancery states: "'The

American rule is subject to a number of well-established exceptions such as cases where the underlying prelitigation conduct of the losing party was so egregious as to justify an award of attorney fees as an element of damages.'"  Tr. at 136:4-7 (DeMuro)(quoting <u>Nine Sys. II</u>, 2015 WL 2265669, at *2).  The Defendants noted that the Plaintiffs were "fully informed" whether to accept the merger consideration, and the Defendants argued that, under Delaware law, a "fully informed plaintiff" is not entitled to attorney's fees "where there was no bad faith" or "fraud."  Tr. at 129:1-5 (DeMuro).  The Defendants summarized that "there is nothing in this case that comes close to an egregious set of facts," Tr. at 130:12-13 (DeMuro), and, thus, "even if Delaware law applies," the Plaintiffs "get no fees," Tr. at 132:12-16 (DeMuro).  The Defendants added that, even if the Court awards the Plaintiffs attorney's fees under Delaware's equitable principle, the Court "should still apply the Oklahoma offer-of-judgment statute because under choice-of-law concepts that's a procedural statute that must be applied."  Tr. at 132:20-22 (DeMuro).

Turning to whether the Defendants are entitled to attorney's fees, the Defendants explained that they excluded "three categories" of billing activities.  Tr. at 138:15 (DeMuro)(citing Fees and Expenses at 3).  The Court asked the Defendants: "What does 'prebilling adjustments' mean?"  Tr. at 139:5 (Court)(quoting Fees and Expenses at 2).  The Defendants explained that prebilling adjustments are "courtesy discount, no-bill items."  Tr. at 139:16 (DeMuro).  The Defendants also explained that postbilling adjustments refer to instances in which they "exercised additional discretion," and excluded items that "the court may find to be excessive time spent or maybe something [that] was misbilled."  Tr. at 140:13-18 (DeMuro).  The Defendants said that they applied a ten-percent discount on "block billing" for

about half the months, and no discount for the other half months.  Tr. at 141:18 (DeMuro).  The

Defendants explained their billing process:

> We were trying to really help the court see exactly how we were getting to our bottom-line number that went through at least three different discretionary filters before we got to our fee request, which is why we think it's reasonable.  The first discretionary filter was the prebilling adjustment, where we simply no-charged to the client hours as a matter of a discount or something that we saw that we didn't feel comfortable billing.  The second discretionary adjustment was postbilling adjustment.  The third was block billing.

Tr. at 145:16-25 (DeMuro).  The Court then admitted of each of the Defendants' exhibits: (i) the

Defendants' Flowchart is Defendants' Hearing Exhibit A; (ii) the Defendants' Brief is

Defendants' Hearing Exhibit B; (iii) the color copy of the Defendants' Fees and Expenses is

Defendants' Hearing Exhibit C; (iv) the color copy of the Recapitulation of Defendants' Fees

and Expenses, September 21, 2017, through July 31, 2018, is Defendants' Hearing Exhibit D;

and (v) the color copy of the Billing Invoices is Defendants' Hearing Exhibit E.  <u>See</u> Tr.

at 150:17-152:4 (Court, DeMuro, Deputy Court Clerk); Exhibit List for Motion Hearing at 1,

filed August 15, 2018 (Doc. 484-1).

     Turning to attorneys' rates in Tulsa, the Defendants noted that Oklahoma federal courts

and state courts have cited the Tulsa Rates Surveys "as being evidence of reasonableness of

rates."  Tr. at 148:15-16 (DeMuro).  <u>See</u> Tr. at 152:8-10 (DeMuro)("I've never had a court that's

rejected [the Tulsa Rates Surveys] or not relied upon it in Oklahoma, in Tulsa at least, in the

Northern District.").  According to the Defendants, the Tulsa Rates Surveys are "the only study

that's out there in any systematic fashion that compares the rates of other Tulsa firms to see what

they're charging and what their associates are charging."  Tr. at 148:21-23 (DeMuro).  The

Defendants argued that their "rates fall within the range of market rates charged for other firms

in Tulsa." Tr. at 155:7-9 (DeMuro). The Defendants maintained that Tulsa's paralegal rate depends on a paralegal's experience, and it ranges "from $60 an hour to $200 an hour of the 12 firms surveyed with . . . the most common rates being clustered anywhere from 100 to 135, and even 150." Tr. at 156:4-6 (DeMuro).

The Court turned to the Defendants' application for attorney's fees, and the Plaintiffs said that they "did not file any application for attorneys' fees," because they thought the purpose of the hearing was to determine "whether or not [the Plaintiffs] were entitled to fees." Tr. at 158:25-159:1 (Kagen). The Plaintiffs noted that, in the Plaintiffs' Motion, they indicated that, "if the court were to [] find" that the Plaintiffs are entitled to attorney's fees, then they "would file an application." Tr. at 159:2-3 (Kagen). As a result, the Plaintiffs asserted that they have not challenged the Defendants' application for attorney's fees but "reserved the rights in the event that the court were to . . . award" the Defendants attorney's fees. Tr. at 159: 21-22 (Kagen). The Defendants countered that the Plaintiffs "file[d] a companion motion for reseeking their fees. They actually put a figure . . . of 2.7 million." Tr. at 160:20-22 (DeMuro). The Plaintiffs explained:

> [T]he only reason we put an estimate of the amount of fees that we would seek, in the event that the court were to award us such fees, was so that the court would understand that if we were to receive such fees, it would moot the offers of judgment such that defendants would not be awarded fees. . . .
>
> We expressly said within the papers that we filed that this was not a motion for the seeking of fees; we were seeking leave from the court to file such a thing. That's why the court has no submission from us in terms of the actual time requested, or lodestar, block billing, or any such thing.

Tr. at 161:6-11 (Kagen). The Defendants countered that the Plaintiffs "made a tactical litigation decision to hedge their bets about what your Honor would do and now they have to suffer the

consequences." Tr. at 162:17-19 (DeMuro). The Defendants also argued that the Plaintiffs "don't get to dictate the court's schedule. This motion was set for hearing. It was fully briefed. It's ripe. They responded. They moved for fees as well. We're fully prepared to move forward on their application for fees." Tr. at 163:11-15 (DeMuro). The Court asked how it should deal with excluding fees for federal claims, and the Defendants responded "if there are claims that are fee-bearing and claims that aren't fee-bearing and the claims are so intertwined, you still get the . . . fees for the work that's intertwined." Tr. at 164:2-5 (DeMuro). The Defendants argued that it is "impossible to separate the work we did in the pooled shareholder depositions or any of the other depositions from the work that we did on the fee-bearing claim or the Oklahoma attorney fee statute." Tr. at 164:13-16 (DeMuro). The Defendants added that the Plaintiffs' state law securities claims closely resemble their federal securities claims and thus required "identical work." Tr. at 164:23-24 (DeMuro). According to the Defendants, if the Court is looking for a "reasoned way to reduce" the Defendants' fee applications, "then the most principled way to do it is to look at the work that was done with respect to the briefing on the federal securities claims." Tr. at 165:7-12 (DeMuro). The Defendants offered to file a supplemental brief that calculates attorney's fees and excludes fees related to federal securities claims. See Tr. at 165:13-15 (DeMuro).

The Plaintiffs argued that the Defendants "would only have the right to attorneys' fees in the event that the court would issue a judgment that plaintiffs take nothing. There is no judgment yet." Tr. at 167:21-24 (Kagen). According to the Defendants, rule 54(d)(2)(B)(i) of the Federal Rules of Civil Procedure states that a motion for attorney's fees "is to be filed not later than 14 days after the entry of judgment which creates the right to the fees themselves." Tr. at 168:5-7

(Kagen). The Plaintiffs asserted that, because the Court has not entered final judgment, "any hearing on the attorneys' fees [is] premature and unfair to take." Tr. at 168:11-12 (Kagen)(citing Snyder v. Acord Corp., Civil Action No. 1:14-cv-01736-JLK, 2016 WL 9735141 (D. Colo. July 6, 2016)(Kane, J.)). The Plaintiffs noted that, in the Plaintiffs' Response, they request "that the court set a briefing schedule to permit plaintiffs to provide a submission specifying fees or opposing fees in the event that the court decided issues liability." Tr. at 169:4-6 (Kagen). The Plaintiffs thus "object to proceeding with [a] fee determination, . . . because it is premature and in anticipation of judgment that has not yet even been entered." Tr. at 169:9-13 (Kagen). The Defendants averred that the Court "has the discretion to roll it all up into one ball, enter judgment, award fees, and at the same time, hear the motions in any order it chooses to do." Tr. at 169:18-20 (DeMuro).

The Court said that the parties had not discussed the motions for a judgment, and that it would enter a judgment and "issue an opinion on that series of briefing . . . and then [] issue a separate opinion on the actual attorneys' fees here." Tr. at 170:12-16 (Court). The Defendants agreed with the Court's proposal, and they reiterated that they seek an award of "$1,809,925 in total fees" and "$614,462 in expenses," as well as an additional "fee request of $134,167" and "expense request of $52,856." Tr. at 172:13-20 (DeMuro). The Defendants argued that, other than the federal securities claims fees, the only other fees that may be "divisible from the main case" are the fees related to the "forced seller doctrine as it applied to the federal securities law, not the state law. . . . I can't imagine that being more than $50,000, if Your Honor was making a deduction." Tr. at 173:13-20 (DeMuro). The Defendants noted that their current rates are $475.00 per hour for Fred Dorwart, $410.00 per hour for Paul DeMuro, $375.00 per hour for

Sarah Poston, $350.00 per hour for Mike Medina, and $360.00 per hour for John Clayman.  See Tr. at 174:7-15 (DeMuro).  The Court then admitted the Defendants' "handwritten exhibit that shows the rates that existed as of October 2014 when [the Defendants'] fee [application] begins and the rates that exist as of today when our fee [application] ends, July 2018," Tr. at 174:22-24 (DeMuro), as the Defendants' Hearing Exhibit F, see Exhibit List for Motion Hearing at 1.  The Defendants concluded by arguing that they are "also entitled in Oklahoma to [their] fees on [their] fees," meaning the fees they incurred preparing for the hearing.  Tr. at 175:5 (DeMuro).

The Plaintiffs moved pursuant to rule 54(d)(2)(C) of the Federal Rules of Civil Procedure for "an opportunity for adversary submissions . . . on the value of services."  Tr. at 175:18-23 (Kagen).  The Court said that the Plaintiffs may submit another brief, but it noted that it is "probably [] not coming back [to Oklahoma] to hear it."  Tr. at 177:1-2 (Court).  The Court told the Defendants to send the Court a letter indicating its position on the federal securities claims fees so that Mr. Kagen "know[s] what he's shooting at."  Tr. at 179:23 (Court).  The Court then stated that, after comparing the Defendants' misconduct to that of the defendants in William Penn Partnership v. Saliba, the Defendants' misconduct does not "rise to the level of the egregiousness that was involved in" William Penn Partnership v. Saliba.  Tr. at 182:12-13 (Court).  The Plaintiffs noted that the Court has discretion to decide whether to impose fees, and the Court responded that it would "be reluctant to exercise [] discretion more than . . . the Delaware courts have done."  Tr. at 182:21-23 (Court).  The Court reasoned that this case appears to be "more of a routine or garden-variety breach-of-fiduciary claim rather than something that was unusual" or egregious.  Tr. at 183:7-9 (Court).  The Plaintiffs then said that

Nine Systems I and Nine Systems II are more similar to this case. See Tr. at 183:13 (Kagen).

The Plaintiffs argued:

> [T]he issues that were at hand in the Nine Systems, the reason that attorneys' fees were awarded was that Nine Systems said that even though the transaction issue was conducted at a fair price, it was not an entirely fair transaction because of the grossly inadequate process employed by the defendants; the same as here. The reason was that there was a sole valuation in that case which was a back-of-the-envelope calculation calculated by a part owner of even minority stock holder. In this case, no valuation was ever done by anyone. So I believe that the Nine Systems situation is more favorable to the defendants than the situation here.

> It was also noted in Nine Systems that no director appeared to have any input -- material input into that valuation. In this case, there was no valuation whatsoever. And further, that one of the stockholders did not share his valuation methodology with the board.

> In testimony -- when we received testimony from the board about valuation methodology, several members of the board testified they had no idea as to how the number had come up, vis-a-vis any valuation of the company, because no independent valuation was solicited. In Nine Systems, no independent valuation was solicited.

Tr. at 183:13-194:10 (Kagen). The Plaintiffs further argued that the Defendants' expert estimates that the "fair value" for the price of TIR, Inc. shares "ranged up to $471,000." Tr. at 188:24-25 (Kagen). The Plaintiffs argued that the expert's estimation would have resulted in a "damages award to plaintiffs of over $800,000," which "would moot any offer of judgment." Tr. at 188:9-11 (Kagen). The Plaintiffs asserted that "there is no situation . . . where plaintiffs are successful in finding a breach of fiduciary duty of loyalty and then are punished millions of dollars for having done so." Tr. at 189:16-20 (Kagen).

The Plaintiffs next argued that "Oklahoma does not apply the law of dépeçage." Tr. at 190:6-7 (Kagen). According to the Plaintiffs, they are arguing that they "are entitled to fees as part of [their] fiduciary duty claim; in other words, [attorney's fees are] part and parcel of the

same claim." Tr. at 190:5-191:1 (Kagen). The Plaintiffs argued that "[d]épeçage does not provide for the intra-issue splitting of claims to allow different law on the same claim." Tr. at 191:8-10 (Kagen). The Plaintiffs also averred that the Honorable Robin J. Cauthron, United States District Judge for the United States District Court for the Western District of Oklahoma, has held that "Oklahoma has neither rejected nor adopted the use of dépeçage." Tr. at 191:25 (Kagen)(citing Clemmer v. Columbia Grp., Inc., No. CIV-13-1335-C, 2014 WL 6808786 (W.D. Okla. Dec. 2, 2014)(Cauthron, J.)). The Plaintiffs added, without citing any cases, that the Tenth Circuit has rejected the argument that Oklahoma approves of dépeçage. See Tr. at 192:1-6 (Kagen). The Plaintiffs argued that the Defendants' October 27, 2014, offer of judgment of $10,000.00 per plaintiff was not "a good-faith offer." Tr. at 193:11 (Kagen)(citing Hubbard v. Kaiser-Francis Oil Co., 2011 OK 50, 256 P.3d 69). According to the Plaintiffs, the Court "must determine whether the [Defendants'] offer was a realistic offer that could potentially have settled the case." Tr. at 193:20-21 (Kagen). The Plaintiffs argued that the Defendants' offer of judgment was a "nominal sum" and unreasonable. Tr. at 194:21 (Kagen). The Plaintiffs said that the offers of judgments would have totaled up to $80,000.00, and the Court said that "it's hard for me to say $80,000 is just an unreasonable offer." Tr. at 197:10-11 (Court). The Plaintiffs said that offers of judgment for $10,000.00 were not reasonable, because:

> [A]t the time that the plaintiffs received the offer of judgment . . . , the only relevant information that the plaintiffs had was as follows.
>
> One, no valuation had been done whatsoever; two, there were a series of sales in a completely nonefficient market to no sellers at all because there are no sellers of any share -- there are no purchasers of any shares but the defendants, which were all engineered around the 451 price point. But there wasn't a single third party who was able to pick up any shares because the market was completely

-- completely -- illiquid and so those share prices are unreliable.  In fact, if the court remembers its jury instructions, the court so held.

What else did the plaintiffs have?  What else was there available?  The only other thing that the plaintiffs had was a valuation methodology which everyone was using, . . . that that valuation methodology . . . was giving a per share price at the time in excess of $600,000. . . .  [W]ere that valuation to have been found, that's a multi-million-dollar damages award.  In exchange, the plaintiffs offered $10,000 per plaintiff.  They didn't offer $80,000.  There were eight plaintiffs.  They offered $10,000 each as a complete walk-away.

. . . .

Therefore, the relevant criteria that I think that the court needs to apply in applying this law is at the time of the offer of the settlement. . . .

It's at that time period, when the offer was made on October 27th of 2014, that the court needs to determine whether . . . that amount was [] a reasonable effort to settle.  I would tender to the court there was nothing reasonable about it.  The reason I know that to be case is because that offer had no connection or bearing to the potential damages in this case.

The way that one would analyze this to determine whether or not that's a reasonable offer . . . at the time would be to have a valuation of the company, a valuation of the shares, to indicate this is a reasonable value of the shares, and make an offer that is designed and given to plaintiff so that they can understand it so that it would be a realistic, reasonable offer to resolve the parties' controversy.

That was not done here and no information available to plaintiffs at that period of time permitted it.  Nothing permitted it, other than -- and I'll finish with this -- nothing, nothing at all, other than the share prices.

Tr. at 198:1-201:13 (Kagen).  The Plaintiffs said that they object "to all attorney frees from . . . October 27th, 2014, until July of 2017."  Tr. at 202:4-7 (Kagen).

The Defendants informed the Court that Mr. Dorwart, one of their attorneys, was the "principal drafter" of Oklahoma's offer-of-judgment statute, and that Mr. DeMuro and Mr. Dorwart "were the litigators" in Hubbard v. Kaiser-Francis Oil Co.  Tr. at 202:21-22 (DeMuro).  According to the Defendants, in Hubbard v. Kaiser-Francis Oil Co., the Supreme

Court of Oklahoma held that a $275.00 "per-claim offer" was "reasonable . . . in a case that involved a raging dispute in western Oklahoma about lease interpretation that had consequences of thousands of dollars. 275 bucks, reasonable." Tr. at 203:1-4 (DeMuro). The Defendants noted that two of the four individual Plaintiffs who are "real people, whose real dollars are at stake[,] . . . took the $10,000" offer. Tr. at 203:12-14 (DeMuro). The Defendants then asked: "How can we say that that's not reasonable under [Hubbard v. Kaiser-Francis Oil Co.] when one of the tests is we want to make sure [the offer is] reasonable enough to entice an acceptance, which it did." Tr. at 203:15-17 (DeMuro). The Defendants argued that "the plaintiffs severely misjudged the fair value" of TIR, Inc. shares. Tr. at 204:14-15 (DeMuro). The Defendants asserted that they "knew all along . . . that they were reasonably likely to convince a jury that 451 was a fair value." Tr. at 204:1517 (DeMuro). The Defendants further argued that their tender notice and merger notice contained no misrepresentations and that they did not fail to disclose any information to the Plaintiffs. See Tr. at 206:1-5 (DeMuro).

The Plaintiffs countered that the fact that two Plaintiffs accepted the Defendants' offer of judgment "doesn't make it reasonable." Tr. at 209:10 (Kagen). The Plaintiffs argued that the Defendants' offer was not "realistic," because "it was not a per-share offer." Tr. at 209:14-210:2 (Kagen). The Court noted that the "difficulty with [the Plaintiffs'] argument is that [they] haven't given me what a reasonable offer would be." Tr. at 210:8-10 (Court). The Plaintiffs responded that a "reasonable offer" would be "$650,000 a share." Tr. at 210:11-12 (Kagen). The Plaintiffs argued that, although the Defendants' expert estimated that the shares were worth between $430,000.00 and $470,000.00, the Plaintiffs did not have this information, and they asked: "[H]ow can the plaintiffs accept a settlement offer or determine that it's reasonable

without having that information?" Tr. at 210:20-22 (Kagen). The Court stated: "I don't know how you go back and look at something and say that's a reasonable offer and that's not a reasonable offer. That's the reason you have people go settle is so that you're not making a determination whether it's reasonable or not." Tr. at 211:12-16 (Court). The Plaintiffs explained the "rule" in Hubbard v. Kaiser-Francis Oil Co.: "It says that you must create possibility to encourage settlement, a realistic method. My reading of the word 'realistic' is objective, is objectively reasonable given the facts on the ground at the time of the offer." Tr. at 214:6-10 (Kagen). The Plaintiffs noted that $275.00 was reasonable in Hubbard v. Kaiser-Francis Oil Co., because the plaintiffs in that case had a weak claim "at the time that the offer was made." Tr. at 214:12-13 (Kagen). The Plaintiffs then contrasted the offer Hubbard v. Kaiser-Francis Oil Co. to the offer in this case:

> This offer was not made on a per share basis. It was not designed in a realistic method to offer damages based on what the shares were valued. There was a set quantum which was decided, I believe, because there was a thinking we would be in front of a judge who would say, well, 10,000 is a lot of money, I'm going to accept it. But it's not a realistic method for any reasonable plaintiff because a reasonable plaintiff would say, I have to be paid some amount for my shares. It should be calculated and be proportionate by the per share holding, one.
>
> Two, it should be based on some reasonable metric that existed at the time of the offer which is October 27th of 2014. Not today and not during the time of the trial, then, that would allow a plaintiff to look at it and say objectively -- whether he accepts it or not is of no moment -- objectively that he should have reasonably considered it.
>
> Now, what information did the plaintiffs have at that time? I've said they had nothing. The only things they had were two things: One, totally illiquid share sales of 451 and less which any reasonable financial observer would know these plaintiffs are sophisticated, would know were unreliable and improper and could not be used as the basis for a settlement. And that's, in fact, what the court later held in a jury instruction. And two, the [Plaintiffs' model] predicted at the time a per share value of 650,000, that's all that there was.

. . . .

> The only thing that [the Defendants] did is the in terrorem trial tactic. They gave $10,000 per shareholder because I'm sure they understood $10,000 would sound like a lot of money to a judge and the judge would enforce the settlement. That creates an in terrorem fear on the part of any plaintiff who receives it that he might be jointly and severally liable for fees years down the road. . . . [The Defendants' offer] terrorized people but it didn't foster any settlement because it wasn't realistic in its attempt to do that. In fact, that wasn't the goal and you can see it wasn't the goal in the method of its computation. You asked defendants how it was computed. There was no method of computation. It was designed as a trial tactic. It was designed for this purpose: In the event that plaintiffs took nothing, plaintiffs would be punished.

Tr. at 214:21-217:10 (Kagen).

The Court then asked the Plaintiffs about their jury instruction argument, and the Court said that it is "not sure I gave any language about disregarding [information] to the jury. I just gave them the tools that they needed to try to determine what the fair-market value . . . was of the shares." Tr. at 219:4-8 (Court). According to the Plaintiffs, Jury Instruction No. 19 states: "Reliance on a price determined in a thinly-traded, illiquid market is evidence of the price's unfairness." Tr. at 219:10-13 (Kagen). The Court responded, however, that Jury Instruction No. 23 does not contain "any disregard language." Tr. at 219:18 (Court). Jury Instruction No. 23 states: "To be reliable evidence of fair value, a market price must be established in an active market. You may not defer to the market prices as a measure of fair value if the shares were not traded actively in a liquid market." Final Jury Instructions, Instruction No. 23, at 25, filed September 14, 2017 (Doc. 449). The Plaintiffs argued that "this gets to the same point whether the jury is told . . . you may not defer to the market prices. But that's what I'm hearing defendants saying, one must deter to the market prices. That's the only evidence they had." Tr.

at 220:16-20 (Kagen).  The Plaintiffs further argued that the Defendants did not "even attempt to make an offer that looked like a real offer, which would be a per share offer based on a per share number which would vary based on the share numbers of each particular plaintiff."  Tr. at 221:18-21 (Kagen).

The Court noted that the Plaintiffs "used the word 'terrorized'" to describe the Defendants' offer of judgment, and the Court said that "the whole purpose of an offer of judgment is to shift the risk to the other side."  Tr. at 222:9-12 (Court).  The Court asked: "[D]idn't the offer terrorize several sophisticated plaintiffs to settle and isn't settlement the goal of the statute per [Hubbard v. Kaiser-Francis Oil Co.]?"  Tr. at 222:18-20 (Court).  The Court again noted that "half the individual plaintiffs" were "sophisticated" and accepted the Defendants' offer, and the Court asked why it should "second-guess" whether those two Plaintiffs were unreasonable.  Tr. at 223:4-5 (Court).  The Plaintiffs responded:

> When, as here, there is significant multi-million-dollar potential risk because reasonable men of good faith will differ, that creates terror in the minds of small individuals, sophisticated though they may be, with small pocketbooks and small amounts of money who may be jointly and severally liable for a multi-million-dollar request.
>
> . . . .  One can understand how an attorney might worry about that and advise a client, but that doesn't mean that Hubbard said that's all right.  Hubbard said that's an inappropriate and improper use of the method, I believe.  It's not my position, it's Hubbard's.

Tr. at 223:16-224:6 (Kagen).  The Plaintiffs cite the dissent's reasoning in Hubbard v. Kaiser-Francis Oil Co. for the proposition that the majority opinion imputes a "reasonableness test" on offers of judgment.  Tr. at 224:17 (Kagen).  The Plaintiffs argued that "[r]equiring the trial court to determine the soundness of an offer of judgment unwittingly places the court in a subjective

position of evaluating the evidence, credibility of the witnesses, and trial strategy from the position of an advocate for one of the parties." Tr. at 225:2-6 (Kagen). The Court suggested that what the Plaintiffs call "terroriz[ing]" is "just litigation strategy," and thus it is "very difficult for [the Court] to come back and say it wasn't a reasonable offer if I got a couple of plaintiffs taking it." Tr. at 226:3-8 (Court).

The Plaintiffs argued that the Defendants' offers of judgment were not reasonable, because the offers of judgment did not vary according to the number of shares each Plaintiff owned. See Tr. at 226:22-227:4 (Kagen). The Court opined that "what the majority is trying to do in [Hubbard v. Kaiser-Francis Oil Co.] is to try to keep the Oklahoma [] offer-of-judgment [statute from] totally abrogating the American rule in Oklahoma." Tr. at 228:1-4 (Court). The Court added that the fact that two Plaintiffs accepted the Defendants' offer "is at least evidence that" the offer of judgment was reasonable. Tr. at 228:7 (Court). The Plaintiffs reiterated that the Defendants' offers of judgement to each Plaintiff were unreasonable, because "they're all made simultaneously" and are not proportion to the number of shares each Plaintiff owned. Tr. at 229:25 (Kagen).

The Defendants argued that the Plaintiffs' valuation was "unbelievably inflated," because the jury verdict established that the shares' fair value is $451,000.00. Tr. at 231:3 (DeMuro). The Defendants asserted that "any dollar that" the Plaintiffs who settled received "on top of" $451,000.00 "is per se reasonable." Tr. at 231:7-9 (DeMuro). The Defendants said that Hubbard v. Kaiser-Francis Oil Co. "doesn't say you need to look at [an offer] from the plaintiffs' perspective at the time of the offer" and "doesn't say you've got to make proportionate offers if you have units of assets involved." Tr. at 231:13-16 (DeMuro). According to the Defendants,

the reasonableness test is whether an offer "realistically could prompt a settlement." Tr. at 231:19-20 (DeMuro). The Court then admitted the "plaintiffs' calculation of damages as of September 22nd, 2014," Tr. at 232:9-10 (DeMuro), as the Defendants' Hearing Exhibit G, see Exhibit List for Motion Hearing at 1. According to the Defendants, the Plaintiffs who settled, Buckley and Signorello, "settled a claim that was worth $1.4 million" by accepting the Defendants' offers of judgment, and thus the offers presented "tremendous upside." Tr. at 232:22-233:2 (DeMuro). The Defendants argued that "[t]here can be no rational basis to say that Buckley and Signorello's . . . offer-of-judgment wasn't reasonable because they took it." Tr. at 233:9-12 (DeMuro). The Defendants concluded by saying that "there's never been a case in Oklahoma . . . in which you have a group of plaintiffs and two of them accept the offer and two of them don't and the Oklahoma Supreme Court . . . say[s] that offer is not reasonable." Tr. at 234:8-12 (DeMuro).

The Court then outlined how it would address the parties' motions and arguments:

My intention is to draft an opinion that will take care of all issues . . . in the [Defendants'] corrected motion up to page 4, where it talks about the reasonableness of fees. . . . I hate to bifurcate motions but I think I probably need to do this.

So I will determine the motion for judgment, I will determine the two motions here for attorneys' fees, I will determine the plaintiffs' motion for attorneys' fees, and then I will enter a judgment. I'll probably craft my own judgment, given that there wasn't an agreement on the judgment, and I'll draft that. I will enter it and then I will -- let's see. I think that will take care of 4 -- well, it will take care of portions of everything we've heard today, 457, 458, 459, 462, and I said 459, 458.

Then I will in a separate opinion issue an order actually ordering the attorneys' fees with a specific amount in. That will give Mr. Kagen a chance to respond to your letter or brief telling me how you want to handle the federal securities claims.

Tr. at 235:1-14 (Court).  The Court set deadlines for the Defendants to make any additional deductions to their attorney's fees application and for the Plaintiffs to object to the Defendants' attorney's fees calculations, and the Court said it would then enter an opinion, a judgment, and "an order which, I think, . . . is a final judgment in itself on the attorneys' fees issues."  Tr. at 237:22-24 (Court).  The Court then concluded by stating its inclinations:

> So leaving here today, I do think the better analysis after looking at it is that Oklahoma law applies.  I do think that Oklahoma, giving an Erie prediction, would come out the same way as Delaware and hold that on an entire fairness claim that fees can be awarded for a breach of fiduciary duty.  Again, it would be discretionary.
>
> Based upon my reading of the two cases and then the other cases that have granted fees in Delaware, I don't think that Delaware would award fees in this situation nor do I think Oklahoma would under its law.  And so I will deny the Plaintiffs' requests for attorneys' fees.
>
> I do think that the Oklahoma statute is a procedural statute that under Klaxon is part of the substantive law of Oklahoma, and so I do think the defendants are entitled to attorneys' fees after the time that they made the offer.  I think the offers were reasonable under Oklahoma law.  And so I will grant the defendants their reasonable fees and costs and try to get those entered as soon as possible.

Tr. at 238:2-19 (Court).

### 20.  **The Defendants' Supplemental Brief.**

The Defendants filed the Defendants' Supplemental Brief on August 27, 2018.  See Defendants' Supplemental Brief at 1.  The Defendants recapitulate the Court's requests at the August 15, 2018, hearing for a "supplement . . . with a proposed allocation of fees and expenses related only to the federal securities claim," and "additional briefing thereafter by both parties addressing Defendants' motion for reasonable attorney fees and expenses."  Defendants'

Supplemental Brief at 1-2. The Defendants note that, although Oklahoma law requires apportionment of fees related to fee-bearing claims and non-fee-bearing claims, "apportionment is not necessary" when "attorney time is 'inextricably intertwined' between fee-bearing and non-fee-bearing claims." Defendants' Supplemental Brief at 2 (quoting Bank of Am., N.A. v. Unknown Successors of Lewis, 2014 OK CIV APP 78, ¶ 47, 336 P.3d 1034, 1046). The Defendants assert that the "intertwined nature of Plaintiffs' claims" makes apportioning fees between federal securities law claims and state law claims "a challenging task." Defendants' Supplemental Brief at 4. According to the Defendants, "[p]recisely the same factual allegations underlay Plaintiffs' federal and Oklahoma securities claims." Defendants' Supplemental Brief at 4. The Defendants therefore argue that "nearly all of the work needed to defend the federal securities claims overlapped with, and was equally applicable to, the other claims." Defendants' Supplemental Brief at 4. The Defendants further add that the federal and state securities claims are intertwined, because: (i) "the parties treated the elements of the state and federal securities claims as interchangeable, especially with respect to the forced seller doctrine"; and (ii) "all work done on the federal securities claims was equally useful and relevant to plaintiffs' fiduciary duty claims, which were tried." Defendants' Supplemental Brief at 5. The Defendants conclude that $14,307.00 in attorney's fees and $350.00 in paralegal fees stem from "work performed solely on federal securities claims." Defendants' Supplemental Brief at 2.

Next, the Defendants argue that they are entitled to recover the fees and expenses that they incurred while preparing the Defendants' Motion. See Defendants' Supplemental Brief at 6. The Defendants note that the Defendants' Motion requests fees and expenses incurred between October 27, 2014, and September 20, 2017, and they attach a "summary of Defendants'

requested attorney fees and expenses from September 21, 2017 through August 23, 2018." Defendants Supplemental Brief at 7.  See Summary of Defendants' Supplemental Fees Expenses Incurred September 21, 2017 through August 23, 2018, filed August 27, 2018 (Doc. 485-2)("Defendants' Supplemental Attorney's Fees I").  The Defendants say that, after applying pre-billing and post-billing adjustments, their supplemental fees total $180,586.00 in attorney's fees and $60,655.00 in expenses for 463.2 hours of work.  See Defendants' Supplemental Brief at 7-8.  The Defendants note that their attorney's fees rates "are the same rates Defendants' attorneys routinely billed and collected from their other commercial clients in matters of comparable complexity during the time period for which Defendants seek fees." Defendants' Supplemental Brief at 8.  The Defendants add that the "effective hourly 'lodestar' rate for all of Defendants' requested fees is $369 for attorneys and $124 for paralegals." Defendants' Supplemental Brief at 10 (quoting Bishop v. Smith, 112 F. Supp. 3d 1231, 1238 (N.D. Okla. 2015)(Kern, J.))(footnote omitted).  The Defendants argue that their attorneys' rates "fit comfortably within the range of usual and customary rates charged in the Tulsa market for lawyers and paralegals of comparable skill and experience."  Defendants' Supplemental Brief at 10.  According to the Defendants, "[h]ourly rates between $300 and $450 have been approved by the United States District Court for the Northern District of Oklahoma and by the Tulsa County District Court for lawyers practicing in this District in similarly complex matters." Defendants' Supplemental Brief at 11 (citing Bishop v. Smith, 112 F. Supp. 3d at 1252).

The Defendants argue that 12 Okla. Stat. Ann. § 1101.1(B)(3) entitles them to "reasonable litigation costs."  Defendants' Supplemental Brief at 11.  According to the Defendants, "reasonable litigation costs" include "'copy, expert witnesses, transcripts, deposition

fees, on-line research, travel and meals, postage and delivery service, subpoena service, and witness fees and telephone.'" Defendants' Supplemental Brief at 11 (quoting <u>Fuller v. Pacheco</u>, 2001 OK CIV APP 39, ¶ 31, 21 P.3d at 81). The Defendants aver that their supplemental deposition costs total $8,307.21, their supplemental hearing/trial transcript costs total $964.80, their supplemental on-line legal research costs total $49,915.27, their technology specialist costs total $1,307.50, and their total supplemental litigation costs are $60,654.63. <u>See</u> Defendants' Supplemental Brief at 12 (citing Supplemental Litigation Expenses, filed August 27, 2018 (Doc. 485-3)). The Defendants note that the total deductions they calculate in the Defendants' Motion equal $580,023.04, the total deductions for their supplemental work equals $54,628.12, and their overall total deductions equals $634,51.16. <u>See</u> Defendants' Supplemental Brief at 13. Finally, after adjusting for their deductions, the Defendants state that their total attorney's fees total $2,258,915.68, their total reasonable litigation costs total $406,712.01, and thus their total fees and costs equal $2,665,627.69. <u>See</u> Defendants' Supplemental Brief at 14.

21.    **The Plaintiffs' Supplemental Response.**

The Plaintiffs responded to the Defendants' Supplemental Brief on September 17, 2018. <u>See</u> Plaintiffs' Objections to Defendants' Requests for Attorney's Fees and Litigation Costs (Docs. 459 and 485), filed September 17, 2018 (Doc. 487)("Plaintiffs' Supplemental Response"). The Plaintiffs argue that "the Court should not grant Defendants the fees and costs they request, because those fees and costs are unreasonable." Plaintiffs' Supplemental Response at 2. The Plaintiffs assert that "it is the Defendants' burden to prove the reasonable fees to which they are entitled, which requires them to specify and request only those fees which can be awarded under the Oklahoma Offer of Judgment statute, and remove from their request those which are not."

Plaintiffs' Supplemental Response at 3. The Plaintiffs contend that the "Defendant cannot meet that burden by simply claiming that the federal and state securities claims overlap and were inextricably intertwined." Plaintiffs' Supplemental Response at 4 (citing Parker v. Genson, 2017 OK CIV APP 59, ¶¶ 6-7, 406 P.3d 585, 589). According to the Plaintiffs, the "Defendants' bills and Defendants' pleadings make clear that the securities-law work Defendants incurred was related almost exclusively to Plaintiffs' federal securities law claims." Plaintiffs' Supplemental Response at 5. The Plaintiffs also argue that the Defendants' "proposed reduction of $14,657 is inaccurate," because the Defendants have "billed a total of approximately $59,000 on 51 time entries that related in whole or in part to the federal securities law claims." Plaintiffs' Supplemental Response at 6 (citing Securities Fraud Entries at 2-4, filed September 17, 2018 (Doc. 487-1)). The Plaintiffs contend that many of the fifty-one time entries that they identify refer to the "forced seller doctrine" or misrepresentations made to the "pooled shareholders," which relate "primarily to the securities law claims." Plaintiffs' Supplemental Response at 6. The Plaintiffs also argue that the "Defendants have failed entirely to propose any deduction for Plaintiffs' securities fraud claims from the $406,712.01 in litigation costs they have requested." Plaintiffs' Supplemental Response at 8.

The Plaintiffs next contend that they "should not be required to shoulder the costs of Defendants' fees and costs for numerous meritless motions made by Defendants, all of which were denied." Plaintiffs' Supplemental Response at 9. According to the Plaintiffs, these motions include the "Defendants' baseless motion to compel privileged information, baseless sanctions motion, duplicative and redundant second summary judgment motion, and baseless motion for reconsideration of the Court's order granting Plaintiffs' partial summary judgment."

Plaintiffs' Supplemental Response at 9. The Plaintiffs argue that they should not have to pay the Defendants' fees related to: (i) the Defendants' Motion to Compel Production of Non-Privileged Communications and Brief in Support, filed April 30, 2015 (Doc. 99)("Defendants' Motion to Compel"), which totals $59,136.05; (ii) the Defendants' Sanctions Motion, which totals $44,844.10; (iii) the Defendants' Estoppel MSJ, which totals $62,670.10, for a motion that the Plaintiffs argue was "redundant and duplicative"; (iv) the Defendants' Motion for Reconsideration of Order Granting Plaintiffs' Motion for Partial Summary Judgment on Breach of Fiduciary Duty (Doc. 272) and Memorandum Opinion and Order (Doc. 274), filed May 9, 2017 (Doc. 280)("Defendants' Motion for Reconsideration"), which totals $54,453.00; and (v) responding to the Plaintiffs' Motion for a Discovery Conference and for an Order to Compel Defendants to Produce Responsive Documents, filed October 31, 2014 (Doc. 47)("Plaintiffs' Discovery Motion"), which totals $31,503.25. See Plaintiffs' Supplemental Response at 10-14.

The Plaintiffs aver that, in the Defendants' Supplemental Brief, the "Defendants have apparently removed $268,404.76 of what Defendants claimed in [the Defendants' Motion] were *litigation costs*, but increased their *attorney's fee* request by that same $268,404.76." Plaintiffs' Supplemental Response at 14 (emphasis in original). According to the Plaintiffs, the "Defendants provide no explanation or valid basis for having apparently shifted $268,404.76 of erroneously-claimed costs into their attorney's fee request." Plaintiffs' Supplemental Response at 15. Last, the Plaintiffs argue that the "Court should deduct from any award the $247,858.09 Defendants have requested for 'on-line legal research,' because such research is not an allowable litigation expense under Oklahoma law, and even if it were, Defendants' request for nearly $250,000 is unreasonable." Plaintiffs' Supplemental Response at 15 (footnote omitted). The

Plaintiffs contend that the Supreme Court of Oklahoma has recently held "that on-line legal research costs are not properly awarded as litigation expenses, even when some litigation expenses were otherwise allowable, because '[t]hese research expenses are part of the firm's overhead.'" Plaintiffs' Supplemental Response at 16 (quoting State ex rel. Dep't of Transp. v. Cedars Grp., L.L.C., 2017 OK 12, ¶ 22, 393 P.3d 1095, 1103, and citing Atwood v. Atwood, 2001 OK CIV APP 48, ¶ 77, 25 P.3d 936, 952). The Plaintiffs argue that "Westlaw costs should be considered part of the [Defendants' attorneys'] firm's overhead, and the Court should deny Defendants' $247,858.09 request in its entirety." Plaintiffs' Supplemental Response at 17. The Plaintiffs also add that the Defendants' request for nearly $250,000.00 for Westlaw charges is "patently unreasonable," because "Westlaw offers flat monthly fees that would have permitted Defendants unlimited access to the cases and statutes at issue in this case." Plaintiffs' Supplemental Response at 17.

### 22. The Defendants' Supplemental Reply.

The Defendants replied to the Plaintiffs' Supplemental Response on October 5, 2018. See Defendants' Reply Brief in Support of Corrected Motion for Reasonable Attorney Fees and Litigation Costs (Doc. 459), filed October 5, 2018 (Doc. 488)("Defendants' Supplemental Reply"). The Defendants begin by noting that, in the Plaintiffs' Supplemental Response, the Plaintiffs do not challenge: (i) "the reasonableness of the hourly rates of Defendants' attorneys and paralegals"; (ii) "the reasonableness of defense counsel's total hours worked"; (iii) "the reasonableness and necessity of the vast majority of the work for which Defendants seek fees"; and (iv) the "Defendants' entitlement to recover all but one category of litigation costs -- Westlaw research charges." Defendants' Supplemental Reply at 1. The Defendants note

that the Plaintiffs challenge "$300,581 of Defendants' requested $2.258 million attorney fees," and they argue that this "mere 13% difference . . . demonstrates the application's overall reasonableness." Defendants' Supplemental Reply at 2. The Defendants also argue that their requested attorney's fees are reasonable, because the "Plaintiffs' estimated requested attorney fees ($2.7 million) through trial, which do <u>not</u> include post-trial work, exceed Defendants' requested attorney fees for the entire case -- including post-trial work -- by approximately $500,000." Defendants' Supplemental Reply at 3. The Defendants admit that their overstatement of $268,404.76 in litigation costs -- and understatement of attorney's fees by the same amount -- is a "simple transcription error." Defendants' Supplemental Reply at 4. As to the Plaintiffs' objection to the federal and state securities law fees, the Defendants argue that there "is ample basis for this Court to find <u>either</u> that: (i) Defendants have established the federal and state securities claims are inextricably intertwined such that no reduction is warranted; or (ii) Defendants have adequately segregated the fee-bearing and non-fee-bearing time in their Supplemental Brief." Defendants' Supplemental Reply at 5 (emphasis in original). Next, the Defendants counter that the Plaintiffs' objections to fees related to the Defendants' Sanctions Motion and the Defendants' Motion to Compel are an "unconvincing" effort to "revisit covered territory." Defendants' Supplemental Reply at 6. The Defendants reiterate that the fees related to the Defendants' Motion to Compel, the Defendants' Motion for Reconsideration, and the Defendants' Estoppel MSJ are "necessary and reasonable." Defendants' Supplemental Reply at 8.

The Defendants also contend that their litigation costs are reasonable. <u>See</u> Defendants' Supplemental Reply at 8. The Defendants note that the Plaintiffs object only to the Defendants'

online legal research costs.  <u>See</u> Defendants' Supplemental Reply at 8-9.  The Defendants argue that the cases which the Plaintiffs cite are inapposite, because "neither: (i) involve the offer of judgment statute at issue here, nor (ii) contain the expansive phrase 'reasonable litigation costs' found in 12 O.S. § 1101.1B(3)."  Defendants' Supplemental Reply (quoting 12 Okla. Stat. Ann. § 1101.1B(3)).   According to the Defendants, <u>State ex rel. Department of Transportation v. Cedars Group, L.L.C.</u>, 2017 OK 12, 393 P.3d 1095, has "no application outside condemnation proceedings," and <u>Atwood v. Atwood</u>, 2001 OK CIV APP 48, 25 P.3d 936, involve a different Oklahoma statute under which the Oklahoma Court of Appeals held that "Westlaw fees could not be charged."  Defendants' Supplemental Reply at 9.  The Defendants argue that, unlike the statutes at issue in <u>State ex rel. Department of Transportation v. Cedars Group, L.L.C.</u> and <u>Atwood v. Atwood</u>, Oklahoma's offer-of-judgment statute "uses the term 'litigation costs,' which courts accord a broad meaning."  Defendants' Supplemental Reply at 10-11 (citing <u>BASR P'ship v. United States</u>, 130 Fed. Cl. 286, 312 (2017); <u>Miller v. Alamo</u>, 983 F.2d 856, 862 (8th Cir. 1993); <u>Snyder v. First Tenn. Bank</u>, No. E2015-00530-COA-R3-CV, 2016 WL 423806, *10 (Tenn. App. Ct. Feb. 3, 2016); <u>Blackorby v. BNSF Ry. Co.</u>, No. 4:13-cv-00908-SRB, 2015 WL 5308056, *4 (W.D. Mo. Sept. 10, 2015)(Bough, J.)).  The Defendants conclude by stating that the attached Defendants' Fees and Costs Incurred August 24-September 30, 2018, filed October 5, 2018 (Doc. 488-2)("Supplemental Brief Fees"), outlines the "total attorney fees and costs" related to the Defendants' Motion, the Defendants' Supplemental Brief, and the Defendants' Supplemental Reply, and the Defendants maintain that they have "reduced their gross fees by $634,769.91."  Defendants' Supplemental Reply at 10.

## LAW REGARDING DIVERSITY JURISDICTION AND CHOICE OF LAW

Under Erie, a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007). Accord Mem. Hosp. v. Healthcare Realty Trust Inc., 509 F.3d 1225, 1229 (10th Cir. 2007). The Court has held that if a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]." Guidance Endodontics, LLC v. Dentsply Intern., Inc., 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.). "Just as a court engaging in statutory interpretation must always begin with the statute's text, a court formulating an Erie prediction should look first to the words of the state supreme court." Peña v. Greffet, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J.).[50] If the Court finds only an opinion from an intermediate

---

[50]In performing its Erie-mandated duty to predict what a state supreme court would do if faced with a case, see Comm'r v. Estate of Bosch, 387 U.S. 456 (1987), a federal court may sometimes contradict the state supreme court's own precedent if the federal court concludes that the state supreme court would, given the opportunity, overrule its earlier holding, see Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1247 n.30 (D.N.M. 2014)(Browning, J.). Courts should, obviously, be reticent to formulate an Erie prediction that conflicts with state-court precedent; even if the prediction turns out to be correct, such predictions produce disparate results between cases filed in state and federal courts, as the old state supreme court precedent usually binds state trial courts. The factors to which a federal court should look before making an Erie prediction that a state supreme court will overrule its prior precedent vary depending upon the case, but some consistent ones include: (i) the age of the state supreme court decision from which the federal court is considering departing -- the younger the state case is, the less likely it is that departure is warranted; (ii) the amount of doctrinal reliance that the state courts -- especially the state supreme court -- have placed on the state decision from which the federal court is considering departing; (iii) apparent shifts away from the doctrine that the state decision articulates, especially if the state supreme court has explicitly called an older case's holding into question; (iv) changes in the composition of the state supreme court, especially if mostly dissenting justices from the earlier state decision remain

court of appeals, while "certainly [the Court] may and will consider the Court of Appeal[s']

decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision

in the same way that it would be bound by a Supreme Court decision." Mosley v. Titus, 762 F.

Supp. 2d at 1332 (noting that where the only opinion on point is "from the Court of Appeals, []

the Court's task, as a federal district court sitting in this district, is to predict what the Supreme

Court of New Mexico would do if the case were presented to it")(citing Wade v. EMCASCO Ins.

Co., 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision

exists, the federal court must attempt to predict what the state's highest court would do," and

that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant

state")).[51]   The Court may also rely on decisions by the Tenth Circuit interpreting New Mexico

---

on the court; and (v) the decision's patent illogic or its inapplicability to modern times.  See Peña v. Greffet, 110 F. Supp. 3d at 1132 n.17.  See also Spurlock v. Townes, 2016-NMSC-014, ¶¶ 16-20, 368 P.3d 1213, 1217-18 (adopting the Court's Erie prediction in Peña v. Greffet).  In short, a state supreme court case that a federal court Erie predicts will be overruled is likely to be very old, neglected by subsequent state-court cases -- perhaps because it is in a dusty corner of the common law which does not get much attention or have much application -- and clearly wrong.

[51]The Supreme Court has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

> The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State.  An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.  We have declared that principle in West v. American Telephone and Telegraph Co., 311 U.S. 223 (1940), decided this day. It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court,

law.  See <u>Anderson Living Tr. v. WPX Energy Prod., LLC</u>, 27 F. Supp. 3d at 1243 & n.30.[52]

---

in the absence of a decision by the highest court, whether the question is one of statute or common law.

    . . . .  We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.

. . . .

    The question has practical aspects of great importance in the proper administration of justice in the federal courts.  It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship.  In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

<u>Fid. Union Tr. Co. v. Field</u>, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted).  The Supreme Court has softened this position over the years; federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point."  <u>Comm'r v. Estate of Bosch</u>, 387 U.S. at 465 (citing <u>King v. Order of United Commercial Travelers</u>, 333 U.S. 153, 159 (1948)).  <u>See</u> 17A James Wm. Moore et al., Moore's Federal Practice § 124.20 (3d ed. 1999)("<u>Moore's</u>")("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions.")(emphasis and title case omitted).

    [52]In determining the proper weight to accord Tenth Circuit precedent interpreting New Mexico law, the Court must balance the need for uniformity between federal court and state court interpretations of state law with the need for uniformity among federal judges.  If the Court adheres too rigidly to Tenth Circuit case law, ignoring changes that a state's law in the ensuing years have undergone, then parties litigating state law claims will be subject to a different body of substantive law, depending whether they litigate in state court or federal court.  This result frustrates the purpose of <u>Erie</u>, which held that federal courts must apply state court interpretations of state law, rather than their own, in part so that parties achieve a consistent result regardless of the forum.  <u>See</u> 304 U.S. at 74-77.  This consideration pulls the Court in the

direction of according Tenth Circuit precedent less weight and according state court decisions issued in the ensuing years more weight. On the other hand, when the state law is unclear, it is desirable for there to at least be uniformity among federal judges as to its proper interpretation. Otherwise, different federal judges within the same circuit -- or even the same district, as district courts' decisions are not binding, even upon themselves -- would be free to adopt differing interpretations of a state's law. This consideration pulls the Court towards a stronger respect for vertical stare decisis, because a Tenth Circuit decision on point -- regardless whether it accurately reflects state law -- at least provides consistency at the federal level, so long federal district judges are required to follow it.

The Court must decide how to weigh Tenth Circuit case law against more-recent state court decisions, choosing a point on the spectrum between the two extremes: rigidly adhering to Tenth Circuit precedent unless there is intervening case law directly on point from the state's highest court, on one end; and independently interpreting the state law, regarding the Tenth Circuit precedent as persuasive authority, on the other. In striking this balance, the Court notes that it is generally more concerned about systemic inconsistency between the federal courts and the state courts than it is about inconsistency among federal judges. Judges, even those within a jurisdiction with ostensibly identical governing law, sometimes interpret and apply the law differently from one another; this inconsistency is part and parcel of a common-law judicial system. More importantly, litigants seeking to use forum selection to gain a substantive legal advantage cannot easily manipulate such inconsistency: cases are assigned randomly to district judges in this and many federal districts; and, regardless, litigants cannot know for certain how a given judge will interpret the state law, even if they could determine the identity of the judge pre-filing or pre-removal. All litigants know in advance is that whomever federal district judge they are assigned will look to the entirety of the state's common law in making his or her determination -- the same as a state judge would. Systemic inconsistency between the federal courts and state courts, on the other hand, not only threatens the principles of federalism, but litigants may more easily manipulate the inconsistency. When the Tenth Circuit issues an opinion interpreting state law, and the state courts subsequently shift away from that interpretation, litigants -- if the district courts strictly adhere to the Tenth Circuit opinion -- have a definite substantive advantage in choosing the federal forum over the state forum, or vice versa.

The Court further notes that district courts may be in a better position than the Tenth Circuit to be responsive to changes in state law. Tenth Circuit decisions interpreting a particular state's law on a specific issue are further apart in time than the collective district courts' are. More importantly, the Tenth Circuit does not typically address such issues with the frequency that the state's courts themselves do. As such, Tenth Circuit precedent can lag behind developments in state law -- developments that the district courts may be nimble enough to perceive and adopt. Additionally, much of the benefit of having a consistent Tenth Circuit-wide interpretation of a particular state's law is wasted. Other than Oklahoma, every state encompassed by the Tenth Circuit contains only one federal judicial district, and there is relatively little need for federal judges in Wyoming and Kansas to have a uniform body of New Mexico law to which to look. Last, the Court notes, respectfully, that district courts may be in a

better position than the Tenth Circuit to develop expertise on the state law of the state in which they sit. Every federal judicial district in the nation, except the District of Wyoming, covers at most one state. See 28 U.S.C. § 131 ("Wyoming and those portions of Yellowstone National Park situated in Montana and Idaho constitute one judicial district."). It is perhaps a more workable design for each district court to keep track of legal developments in the state law of its own state(s) than it is for the Tenth Circuit to monitor separate legal developments in eight states.

Having outlined the relevant considerations, the Court thinks the proper stance on vertical stare decisis in the context of federal court interpretations of state law is as follows: the Tenth Circuit's cases are binding as to their precise holding -- what the state law was on the day the opinion was published -- but lack the positive precedential force that its cases interpreting a federal statute or the Constitution of the United States of America possess. A district court considering a state law issue after the publication of a Tenth Circuit opinion on point may not come to a contrary conclusion based only on state court cases available to and considered by the Tenth Circuit, but it may come to such a conclusion based on intervening state court cases.

When interpreting state law, the Tenth Circuit does not and cannot issue a case holding that $x$ is the law in New Mexico; it holds that the proper interpretation of New Mexico law, at the time the opinion is released, is $x$. Its holdings are descriptive, not prescriptive -- interpretive, not normative. Because federal judicial opinions lack independent substantive force on state law issues, but possess such force regarding federal law issues, the Court thinks the following is not an unfair summary of the judicial interpretive process: (i) when interpreting federal law, the federal appellate courts consider the existing body of law, and then issue a holding that both reflects and influences the body of law; that holding subsequently becomes a part of the body of law; but (ii) when interpreting state law, the federal appellate courts consider the existing body of law, and then issue a holding that only reflects the body of law; that holding does not subsequently become a part of the body of law. The federal district courts are bound to conclude that the Tenth Circuit's reflection of the then-existing body of law is accurate. The question is whether they should build a doctrine atop the case and use the existence of the Tenth Circuit's case to avoid any responsibility to independently consider the whole body of state law that exists when the time comes that diversity litigants raise the issue in their courtrooms. Giving such effect to the Tenth Circuit's interpretations of state law is at tension with Erie, giving independent substantive effect to federal judicial decisions -- i.e., applying federal law -- in a case brought in diversity.

The purpose of Erie is well-known and simple, and the Court should not complicate it beyond recognition: it is that the same substantive law governs litigants' cases regardless whether they are brought in a federal or state forum. For simplicity's sake, most courts have settled on the formulation that "the federal court must attempt to predict how the states' highest court would rule if confronted with the issue." Moore's § 124.22[3] (citing Comm'r v. Estate of Bosch, 387 U.S. at 465 ("[A]n intermediate appellate state court [decision] is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.")(citation and internal quotation marks omitted). This formulation may not be the most precise one if the goal

is to ensure identical outcomes in state and federal court -- the Honorable Milton I. Shadur, United States District Judge, looks to state procedural rules to determine in which state appellate circuit the suit would have been filed were it not in federal court, and then applies the state law as that circuit court interprets it, see Abbott Labs. v. Granite State Ins. Co., 573 F. Supp. 193, 196-200 (N.D. Ill. 1983)(noting that the approach of predicting the state supreme court's holdings will often lead to litigants obtaining a different result in federal court than they would in state court, where only the law of the circuit in which they filed -- and certainly not nonexistent, speculative state supreme court law -- governs) -- but it is a workable solution that has achieved consensus. See Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 637 (7th Cir. 2002)("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). This formulation, built out of ease-of-use, does not relieve courts of their Supreme Court-mandated obligation to consider state appellate and trial court decisions. To the contrary, even non-judicial writings by influential authors, statements by state supreme court justices, the closeness of the vote on a prior case addressing the issue, and personnel changes on the court -- considerations that would never inform a federal court's analysis of federal law -- may validly come into play. See generally SFF-TIR, LLC v. Stephenson, 2017 WL 1487439 (N.D. Okla. 2017)(Browning, J.). The question is whether the district courts must abdicate, across-the-board, the "would decide" aspect of the Erie analysis to their parent appellate courts when the Court of Appeals has declared an interpretation of state law.

The Erie doctrine results in federal cases that interpret state law withering with time. While cases interpreting federal law become more powerful over time -- forming the groundwork for doctrines, growing upward from one application (Congress may create a national bank) to many (Congress may set quotas on wheat-growing for personal consumption), expanding outward from the general (states must grant criminal jury trials) to the specific (the jury need not be twelve people, nor must it be unanimous) -- federal cases interpreting state law often become stale. New state court cases -- even when not directly rebuking the federal court's statement of law -- alter the common-law legal landscape with their dicta, their insinuations, and their tone. The Supreme Court, which picks its cases sparingly and for maximum effect, almost never grants certiorari to resolve issues of state law.

The Court's views on Erie, of course, mean little if the Tenth Circuit does not agree. In Wankier v. Crown Equipment Corp., the Tenth Circuit said that,

> [w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. In performing this ventriloquial function, however, the federal court is bound by ordinary principles of *stare decisis*. Thus, when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue.

Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003)(McConnell, J.). From this passage, it seems clear the Tenth Circuit only permits a district court to deviate from its view of state law on the basis of a subsequent case "of the state's highest court." The American Heritage Dictionary of the English Language 1402 (William Morris ed., New College ed. 1976)(defining "unless" as "[e]xcept on the condition that; except under the circumstances that"). A more aggressive reading of the passage -- namely the requirement that the intervening case "resolv[e] the issue" -- might additionally compel the determination that any intervening case law must definitively and directly contradict the Tenth Circuit interpretation to be considered "intervening."

It is difficult to know whether Judge McConnell's limitation of "intervening decision" to cases from the highest state court was an oversight or intentional. Most of the Tenth Circuit's previous formulations of this rule have defined intervening decisions inclusively as all subsequent decisions of "that state's courts," a term which seems to include trial and intermediate appellate courts. Even Koch v. Koch Industries, Inc., 203 F.3d 1202, 1231 (10th Cir. 2000), the primary authority upon which Wankier v. Crown Equipment Corp. relies, uses the more inclusive definition. In fact, Wankier v. Crown Equipment Corp. quotes its relevant passage:

> In the absence of intervening Utah authority indicating that a plaintiff is not required to prove a safer, feasible alternative design, we are bound to follow the rule of *Allen* [v. Minnstar, Inc., 8 F.3d 1470 (10th Cir. 1993), a Tenth Circuit case interpreting an issue of Utah law], as was the district court. "Following the doctrine of stare decisis, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law." Koch v. Koch Indus., Inc., 203 F.3d at 1231.

Wankier v. Crown Equip. Corp., 353 F.3d at 867.

Regardless whether the decision to limit the intervening authority a district court can consider was intentional, the Tenth Circuit has picked it up and run with it. In Kokins v. Teleflex, Inc., the Tenth Circuit, quoting Wankier v. Crown Equipment Corp., refused to consider an opinion from the Court of Appeals of Colorado holding directly the opposite of an earlier Tenth Circuit interpretation of Colorado law. See Kokins v. Teleflex, Inc., 621 F.3d 1290, 1297 (10th Cir. 2010)(Holmes, J.)("[T]he Colorado Court of Appeals decided *Biosera*[, Inc. v. Forma Scientific, Inc., 941 P.2d 284 (Colo. Ct. App. 1998)], so it is not an 'intervening decision of the state's *highest court*.'")(emphasis in original)(quoting Wankier v. Crown Equip. Corp., 353 F.3d at 866).

The Tenth Circuit has set forth a stringent restriction on its district courts' ability to independently administer the Erie doctrine. More importantly, the Tenth Circuit's view may be at tension with the above-quoted Supreme Court precedent, as well as its own prior case law. Moore's lists the Tenth Circuit as having been, at one time, a "court[ that] hold[s] that a prior federal appellate decision [interpreting state law] is persuasive." Moore's § 124.22[4] (citing

Ultimately, "the Court's task is to predict what the state supreme court would do." Wade v. EMCASCO Ins. Co., 483 F.3d at 666. Accord Mosley v. Titus, 762 F. Supp. 2d at 1332 (citation omitted); Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1188-89 (D.N.M. 2008)(Browning, J.)(quoting Wade v. EMCASCO Ins. Co., 483 F.3d at 665-66).

## LAW REGARDING ERIE AND THE RULES ENABLING ACT

"In diversity cases, the Erie doctrine instructs the federal courts must apply state substantive law and federal procedural law." Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d 1152, 1162 (10th Cir. 2017). "If a federal rule of civil procedure answers the question in dispute, that rule governs our decision so long as it does not 'exceed[] statutory authorization or Congress's rulemaking power.'" Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d at 1162 (quoting Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins., 559 U.S. at 398 ("Shady Grove"). "When faced with a choice between a state law and an allegedly conflicting federal rule," the Tenth Circuit "follow[s] the framework described by the Supreme Court in [Shady Grove], as laid out by Justice Stevens in his concurring opinion." Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d at 1162. "First, the court must decide whether the scope of the federal rule is sufficiently broad to control the issue before the court, thereby leaving no room for the operation of seemingly conflicting state law." Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d at 1162 (citations and quotations omitted). There is a conflict between federal

---

State Farm Mut. Auto. Ins. Co. v. Travelers Indem. Co., 433 F.2d 311, 312 (10th Cir. 1970)). Still, the Court is bound to abide by the Tenth Circuit's interpretation of Erie. This scheme may be inefficient, because the plaintiffs may appeal, after trial, the Court's ruling. The Tenth Circuit may certify the question to the Supreme Court of New Mexico, and the Tenth Circuit may then have to reverse the Court after a full trial on the merits.

and state law if there is a "direct collision" that is "unavoidable," but there is no collision if the state and federal rules "can exist side by side . . . each controlling its own sphere of coverage." Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d at 1163 (citations omitted).  If there is no direct collision, "there is no need to consider whether the federal rule is valid, and instead, the analysis must proceed under Erie."  Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d at 1163.

If there is a direct collision, a court must follow the federal rule if it is a valid exercise of the Supreme Court's rulemaking authority under the Rules Enabling Act, 28 U.S.C. § 2072, i.e., it must "not abridge, enlarge or modify a substantive right."  28 U.S.C. § 2072(b).  See Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d at 1163-64.

> Justice Stevens, in his controlling concurrence in Shady Grove, addressed how, in a diversity case where state substantive law applies, to analyze whether a federal rule of procedure abridges, enlarges or modifies a substantive right. [Shady Grove, 559 U.S. at 418-21 (Stevens, J., concurring)]; see Gasperini 518 U.S. at 427.  Justice Stevens advised courts not to rely on "whether the state law at issue takes the form of what is traditionally described as substantive or procedural."  Shady Grove, 559 U.S. at 419 (Stevens, J., concurring).  Rather, a more nuanced approach is required.  [Shady Grove, 559 U.S. at 419-20].  Justice Stevens observed that "[a] state procedural rule, though undeniably 'procedural' in the ordinary sense of the term, may exist to influence substantive outcomes, and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy."  [Shady Grove, 559 U.S. at 419-20](citation and internal quotation marks omitted).  One example of such a law is a procedural rule that "may . . . define the amount of recovery."  [Shady Grove, 559 U.S. at 420].  Ultimately, a court must consider whether the federal procedural rule has displaced "a State's definition of its own rights or remedies."  [Shady Grove, 559 U.S. at 418].  If so, the federal rule may be invalid under the Rules Enabling Act because the federal rule abridges, enlarges or modifies a state substantive right.

Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d at 1164 (citations omitted)(alteration in the original)(quoting Shady Grove, 559 U.S. at 418-20 (Stevens, J., concurring)).  "[W]hen state

law creates a cause of action, it also defines the scope of that cause of action," which includes "the applicable burdens, defenses, and limitations." Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d at 1164-65. Consequently, even though burdens of proof, affirmative defenses, and liability limitations are all legal concepts that savor of procedure, "[f]ailing to enforce such attendant attributes of a state law would lead to different measures of the substantive rights enforced in state and federal courts," i.e., would modify substantive rights. Racher v. Westlake Nursing Home Ltd. P'ship, 871 F.3d at 1165.

## LAW REGARDING LAW OF THE CASE

"Generally, the 'law of the case' doctrine dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case." Been v. O.K. Indus., 495 F.3d 1217, 1224 (10th Cir. 2007)(citing Homans v. City of Albuquerque, 366 F.3d 900, 904 (10th Cir. 2004)). Unlike vertical stare decisis, however, "the rule is a flexible one that allows courts to depart from erroneous prior rulings, as the underlying policy of the rule is one of efficiency, not restraint of judicial power." Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d 818, 823 (10th Cir. 2007)(stating that the doctrine is merely a "presumption, one whose strength varies with the circumstances"). District courts should depart from an appellate court's ruling on the same case only in a few exceptionally narrow circumstances: (i) "when the evidence in a subsequent trial is substantially different;" (ii) "when controlling authority has subsequently made a contrary decision of the law applicable to such issues;" or (iii) "when the decision was clearly erroneous and would work a manifest injustice." McIlravy v. Kerr-McGee Coal Corp., 204 F.3d 1031, 1035 (10th Cir. 2000)(quoting United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir. 1998)). "On the other hand, district courts generally remain free to

reconsider their earlier interlocutory orders." <u>Been v. O.K. Indus.</u>, 495 F.3d at 1225.  In the Tenth Circuit, "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another."  <u>Rimbert v. Eli Lilly & Co.</u>, 647 F.3d 1247, 1252 (10th Cir. 2011)(citing <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d at 1225).

### LAW REGARDING OKLAHOMA CHOICE OF LAW

A federal court sitting in diversity must apply the choice-of-law rules of the state in which the federal court resides, and, therefore, a federal court in Oklahoma must apply Oklahoma's choice-of-law rules when it sits in diversity.  See <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. at 496 ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.  Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side.")(footnote omitted).  Under Oklahoma choice-of-law rules, the law of the forum, <u>i.e.</u>, Oklahoma law, governs procedural matters even when Oklahoma's substantive law does not apply.  See <u>Veiser v. Armstrong</u>, 1984 OK 61, 688 P.2d 796, 799 n.6 ("In a conflict-of-law analysis matters of procedure are governed by the forum." (citing <u>N. Pac. Ry. Co. v. Babcock</u>, 154 U.S. 190, 194 (1894); <u>Shimonek v. Tillman</u>, 150 OK 177, 1 P.2d 154 (1931)).  The Supreme Court of Oklahoma has held that "[t]he lex fori, or law of the jurisdiction in which the relief is sought controls as to all matters pertaining to the remedial as distinguished from the substantive rights."  <u>Shimonek v. Tillman</u>, 150 OK 177, 1 P.2d at 154 (quoting <u>N. Pac. Ry. Co. v. Babcock</u>, 154 U.S. at 194).  See <u>N. Pac. Ry. Co. v. Babcock</u>, 154 U.S. at 197 ("[A]ll that pertains merely to the remedy will be controlled by the law of the state where the action is brought.").  In deciding conflict-of-law issues, Oklahoma courts generally follow the

Restatement (Second) of Conflicts of Laws.  See Robert A. Wachsler, Inc. v. Florafax Int'l, Inc., 778 F.2d 547, 549-550 (10th Cir. 1985)("[W]e are convinced that an Oklahoma court would apply the choice of law rules of the *Restatement (Second) of Conflicts of Law* (1971)."); Yale S. Corp. v. Eclipse Servs., Inc., No. 10-CV-0337-CVE-FHM, 2010 WL 2854687, at *2 (N.D. Okla. July 19, 2010)(Eagan, J.)("Oklahoma follows the Restatement (Second) of Conflicts of Laws.").

Under the Restatement (Second) of Conflicts of Laws, the "law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."  Restatement (Second) of Conflicts of Laws § 187(1).  As the Restatement (Second) of Conflicts of Laws' commentary explains, the "objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract."  Restatement (Second) of Conflicts of Laws comment e.  The Tenth Circuit also has held that, "when a court interprets a contract, as a general matter it applies the law that the parties selected in their contract."  Yavuz v. 61 MM, Ltd., 465 F.3d 418, 427 (10th Cir. 2006).  In contrast, the Restatement (Second) of Conflicts of Laws § 302(2) states: "The local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties."  Restatement (Second) of Conflicts of Laws § 302(2).  Furthermore, the Tenth Circuit also has noted that section 302(2) "provides that the law of the state of incorporation shall be applied to determine issues involving the rights and liabilities of a corporation, unless it is shown that some other state

has a more significant relationship to the occurrence and the parties." Robert A. Wachsler, Inc. v. Florafax Int'l, Inc., 778 F.2d at 550.

## LAW REGARDING DELAWARE LAW'S ENTIRE-FAIRNESS STANDARD

Directors of a Delaware corporation owe fiduciary duties of care and loyalty to all the corporation's shareholders, including its minority shareholders. See Mills Acq. Co. v. Macmillan, Inc., 559 A.2d 1261, 1280 (Del. 1989). The duty of loyalty, in a nutshell, mandates that the corporation's interest and shareholders' interests take precedence over any interest that the directors possess independent of the shareholders. See Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993). Delaware offers directors no safe harbor for divided loyalties if they fail to discharge this duty. See Weinberger v. UOP., Inc., 457 A.2d 701, 710 (Del. 1983). See also McMullin v. Beran, 765 A.2d 910, 923 (Del. 2000).

In 1983, the Supreme Court of Delaware planted itself firmly as a guardian of minority shareholder's rights during corporate mergers in Weinberger v. UOP, Inc. Delaware historically had applied the business-judgment rule to corporate actions. In Weinberger v. UOP, Inc., however, the Supreme Court of Delaware found a case where the company to be subsumed in the merger made no "attempt to structure th[e] transaction on an arm's length basis." 457 A.2d at 710. The Defendants had allowed interested directors to have input into the special committee that the company had established to examine the merger and had not provided disinterested directors with important financial data. See 457 A.2d at 707-10. Concluding that the lack of structures or procedures which would keep the merger decision at arm's length violated the company's fiduciary duty to its minority shareholders, the Supreme Court of Delaware decided that such "divided loyalties" had no safe harbor in the state. Weinberger v. UOP, Inc., 457 A.2d

at 710.  Instead of reviewing such mergers under the deferential business-judgment rule, the

Supreme Court of Delaware said that it would review them under the entire-fairness rule.  <u>See</u>

457 A.2d at 710-11.  The Delaware Court of Chancery has recently elaborated on the entire-

fairness test's purpose:

> One of the fundamental purposes of the entire fairness standard of review is to provide a framework for this Court to review transactions involving conflicted controllers.  A conflicted controller has strong incentives to engage in transactions that benefit him to the detriment of the corporation and its other stockholders.  And, as an "800-pound gorilla" in the board room and at the ballot box, the controller has retributive capacities that lead our courts to question whether independent directors or voting shareholders can freely exercise their judgment in approving transactions sponsored by the controller.  In these circumstances, shareholders are entitled to an independent review where the controller is made to explain why the transaction's process and price were fair.

<u>In re Tesla Motors, Inc. S'holder Litig.</u>, 2020 WL 553902, at *6 (Del. Ch. Feb. 4,

2020)(footnotes omitted).

The Supreme Court of Delaware disserted at length on what the entire-fairness test needs

to capture:

> The concept of fairness has two basic aspects: fair dealing and fair price.  The former embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained.  The latter aspect of fairness relates to the economic and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock.

457 A.2d at 711.  Lest this description be misinterpreted, the Supreme Court of Delaware then

clarified that "the test for fairness is not a bifurcated one as between fair dealing and price.  All

aspects of the issue must be examined as a whole since the question is one of entire fairness."

457 A.2d at 711.  Moreover, "[o]nce entire fairness applies, the defendants must establish 'to the

court's satisfaction that the transaction was the product of both fair dealing and fair price.'" Basho Techs. Holdco B, LLC v. Georgetown Basho Investors, LLC, 2018 WL 3326693, at *36 (quoting Cinerama, Inc. v. Technicolor, Inc., 663 A.2d 1156, 1163 (Del. 1995)). "Although the two aspects may be examined separately, they are not separate elements of a two-part test. '[T]he test for fairness is not a bifurcated one as between fair dealing and price. All aspects of the issue must be examined as a whole.'" Basho Techs. Holdco B, LLC v. Georgetown Basho Investors, LLC, 2018 WL 3326693, at *36 (quoting Weinberger v. UOP, Inc., 457 A.2d at 711). The Delaware Court of Chancery has reasoned about how fair process and fair price interact:

> Consistent with the unitary nature of the entire fairness test, the fair process and fair price aspects interact. The range of fairness has most salience when the controller has established a process that simulates arm's-length bargaining, supported by appropriate procedural protections. A strong record of fair dealing can influence the fair price inquiry and lead to a conclusion that the price was fair. But the range of fairness is not a safe-harbor that permits controllers to extract barely fair transactions. Factors such as coercion, the misuse of confidential information, secret conflicts, or fraud could lead a court to hold that a transaction that fell within the range of fairness was nevertheless unfair compared to what faithful fiduciaries could have achieved. Under those circumstances, the appropriate remedy can be a "fairer" price or an award of rescissory damages. Just as a fair process can support the price, an unfair process can taint the price.

Basho Techs. Holdco B, LLC v. Georgetown Basho Investors, LLC, 2018 WL 3326693, at *37 (footnotes omitted).

Four years later, the Supreme Court of Delaware saw a different fact pattern in the cash-out merger of minority shareholders in Bershad v. Curtiss-Wright Corp., 535 A.2d 840 (1987). In contrast with the defendants in Weinberger v. UOP, Inc., the defendant company in Bershad v. Curtiss-Wright Corp. took multiple steps to safeguard minority shareholders' rights during the merger process before they were cashed out. See Bershad v. Curtiss-Wright Corp., 535 A.2d

at 845-48.  At the same meeting in which the Curtiss-Wright board of directors decided that a merger might be beneficial, it hired a nationally recognized investment bank to evaluate the fairness of the proposed cash-out share offer price.  See Bershad v. Curtiss-Wright Corp., 535 A.2d at 842.  After the investment bank had reported its independent opinion that the cash-out share offer price was fair, see 535 A.2d at 843, the Curtiss-Wright board of directors scheduled a shareholder meeting at which a large majority of Curtiss-Wright's minority shareholders approved of the merger, see 535 A.2d at 843.

The Bershad v. Curtiss-Wright Corp. court did not diverge from Weinberger v. UOP, Inc.'s rule that the entire-fairness test should apply in cash-out mergers, concluding that the entire-fairness standard is necessary to "protect those rights of minority shareholders which have been tainted with unfairness."  535 A.2d at 848.  The Supreme Court of Delaware added a twist, however.  In a merger case in which the defendant company put substantial structures and processes in place to ensure that a controlling shareholder did not simply steamroll minority shareholders, the defendants "retain the burden of proving complete disclosure of all material facts relevant to the merger vote."  535 A.2d at 846.  Under Delaware's entire-fairness standard, the Defendants typically can shift the burden for proving fair dealing under the following conditions: (i) the defendants set up a well-functioning committee of independent directors to examine and approve the merger; and (ii) a fully informed majority of the minority shareholders voted to approve the merger.  See, e.g., Kahn v. Lynch Commc'n Sys., Inc., 638 A.2d 1110 (Del. 1994); In re PNB Holding Co. S'holder Litig., 32 Del. J. Corp. L. 654 (2006)(Strine, J.); Clements v. Rogers, 790 A.2d 1222 (Del. 2001)(Strine, J.).  If the defendants prove complete disclosure by an informed vote of a majority of the minority shareholders, they shift the entire-

fairness burden onto the plaintiffs.  See 535 A.2d at 846.  In other words, the plaintiff must then

bear the burden of proving that the merger was not entirely fair.  See 535 A.2d at 846.

## LAW REGARDING FAIR VALUE UNDER DELAWARE LAW

Under Delaware law, when a controlling shareholder stands on both sides of a cash-out

merger, the controlling shareholder must demonstrate the merger's entire fairness.  See Kahn v.

Lynch Commc'n Sys., Inc., 638 A.2d 1110, 1115 (Del. 1994).  If the controlling shareholder

fails to demonstrate entire fairness, then the minority shareholders are entitled to receive at least

their shares' fair value.  See Weinberger v. UOP Inc., 457 A.2d at 703, 713-14 (indicating that "a

plaintiff's monetary remedy ordinarily should be confined to" fair value, but recognizing that fair

value "may not be adequate in certain cases").

> [W]here a merger is found to have been effected at an unfairly low price, the
> shareholders are normally entitled to out-of-pocket (*i.e.,* compensatory) money
> damages equal to the "fair" or "intrinsic" value of their stock at the time of the
> merger, less the price per share that they actually received.

Strassburger v. Earley, 752 A.2d 557, 579 (Del. Ch. 2000).

Fair value is determined by first valuing the entire company as an operating entity and

then taking a fraction of that value proportional to the dissenting shareholder's ownership

interest without "apply[ing] further weighting factors at the shareholder level."  Cavalier Oil

Corp. v. Harnett, 564 A.2d 1137, 1144 (Del. 1989).  Put another way, fair value is based on the

value of a company as a whole and not the value of particular shares of stock in that company.

See Cavalier Oil Corp. v. Harnett, 564 A.2d at 1144.

> Basically, *Cavalier Oil* focuses the appraisal proceeding on the fair market
> value of the company being appraised, putting aside any issues relevant to the
> value of petitioners' share blocks and trying to exclude any portion of value that
> might be attributed to a synergy premium a buyer might pay to gain control.  That

is, in sum, our case law has been read to value the company on its stand-alone value.

DFC Glob. Corp. v. Muirfield Value Partners, L.P., 172 A.3d 346, 368 (Del. 2017).

## LAW REGARDING ATTORNEY'S FEES

The obligation to pay attorneys' fees can arise by statute or contractual agreement. See United States ex rel. Trs. of the Colo. Laborers Health & Welfare Tr. Fund & Expert Envtl. Control, Inc., 790 F. Supp. 250, 251-52 (D. Colo. 1992)(Kane, J.)(citing F.D. Rich, Inc. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 126 (1974)). Whether the obligation to pay reasonable attorneys' fees arises from statute or contract, a court's analysis of the fees' reasonableness is similar. See United States ex rel. Trs. of the Colo. Laborers Health & Welfare Trust Fund & Expert Envtl. Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc., 834 F.2d 1533, 1548-50 (10th Cir. 1987)). The Tenth Circuit has explained that, in evaluating fees that a contract awards, a court may consider "the familiar factors from the federal court cases awarding fees in the statutory context," as Ramos v. Lamm, 713 F.2d 546 (10th Cir. 1983), defines them. United States ex rel. Trs. of the Colo. Laborers Health & Welfare Trust Fund & Expert Envtl. Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc., 834 F.2d at 1550).

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar is "'the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." Anchondo v. Anderson, Crenshaw & Assoc., LLC, 616 F.3d 1098, 1102 (10th Cir. 2010)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543-44 (2010)).  "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case"; and (ii) "the appropriate hourly rates."  United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000).  See New Mexico v. Valley Meat Co., LLC, No. CIV 14-1100 JB/KBM, 2015 WL 9703255, at *22 (D.N.M. Dec. 14, 2015)(Browning, J.)(citing United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1233).  Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee."  Robinson v. City of Edmond, 160 F.3d at 1281.

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community."  Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)(quoting Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996)).  See New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23.  The party entitled to fees must provide the district court with sufficient information to evaluate prevailing market rates.  See Lippoldt v. Cole, 468 F.3d at 1225.  Moreover, the party must also demonstrate that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community.  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  See Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1255-56 (10th Cir. 1998); Ramos v. Lamm, 713 F.2d at 555 ("The hourly rate should be based on the lawyers' skill and experience in civil

rights or analogous litigation."), overruled in part on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. at 725.  Courts may also consider their own knowledge of market rates.  See Lippoldt v. Cole, 468 F.3d at 1225.  The party seeking fees "should submit evidence supporting the hours worked and rates claimed." Hensley v. Eckerhart, 461 U.S. at 434.  Although "[t]here is no precise rule or formula," district courts have discretion to make an "equitable judgment" as to "eliminate" or "reduce" requested fees "to reflect a plaintiff's overall success level." Hensley v. Eckerhart, 461 U.S. at 436-37.  See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., 122 F. Supp. 3d 1114, 1135 (D.N.M. 2015)(Browning, J.)("A district court may also make adjustments to the lodestar figure to reflect a plaintiff's overall success level."); Ysasi v. Brown, No. CIV 13-0183 JB/CG, 2015 WL 403930, at *10 (D.N.M. Jan. 7, 2015)(Browning, J.).  The court may adjust the lodestar figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest that the litigation advances.  See Farrar v. Hobby, 506 U.S. 103, 120-22 (1992)(O'Connor, J., concurring).  A court has discretion "to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable." United States ex rel. Trs. of the Colo. Laborers Health & Welfare Trust Fund & Expert Envtl. Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc., 834 F.2d at 1548).  In awarding fees, the district court should "provide a concise but clear explanation of its reasons for [a] fee award." Hensley v. Eckerhart, 461 U.S. at 438.

Time that is compensable under § 1988 is time "reasonably expended on the litigation." Hensley v. Eckerhart, 461 U.S. at 433.  Time spent on discrete portions of work product from administrative proceedings may be compensable under § 1988 if the work "was both useful and

of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before

settlement." Webb v. Cty. Bd. of Educ., 471 U.S. at 243.  Where participation in administrative

proceedings is "crucial to the vindication of [a party's] rights," compensation for those activities

is proper.  Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. at 561.

### LAW REGARDING ATTORNEY'S FEES IN DELAWARE

Delaware applies the American Rule, which states that "'each party is normally obligated

to pay only his or her own attorneys' fees.'"  Gatz Props., LLC v. Auriga Capital Corp., 59 A.3d

at 1222 (quoting Johnston v. Arbitrium (Cayman Islands) Handels AG, 720 A.2d 542, 545

(Del. 1998)).  The Delaware Court of Chancery has identified four exceptions to the American

Rule's application:

> Those special circumstances which constitute exceptions to the American Rule
> are limited to: 1) cases where fees are authorized by statute, 2) cases where the
> applicant creates a common fund or non-monetary benefit for the benefit of
> others, 3) cases where the underlying (pre-litigation) conduct of the losing party
> was so egregious as to justify an award of attorneys' fees as an element of
> damages, and 4) cases where the court finds that the litigation was brought in bad
> faith or that a party's bad faith conduct increased the costs of litigation.

Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 231, aff'd, 720 A.2d 542 (Del.

1998).  Under Arbitrium (Cayman Islands) Handels AG v. Johnston's third exception to the

American Rule, courts can "assess attorneys' fees as costs in an appropriate matter although such

an award is unusual and is only made where the situation or the equities dictate that such a

burden should not fall on the prevailing party."  Loretto Literary & Benev. Inst. v. Blue Diamond

Coal Co., 444 A.2d at 260.

The Delaware Court of Chancery will award attorney's fees "[i]n cases of serious loyalty

breaches," because "equity demands that the remedy take the reality of litigation costs into

account as part of the overall remedy, lest the plaintiffs be left with a merely symbolic remedy."

Auriga Capital Corp. v. Gatz Props., 40 A.3d at 882. See also Auriga Capital Corp. v. Gatz Props., 40 A.3d at 181 n.183 (collecting cases). When the Court of Chancery awards attorney's fees because of pre-litigation conduct, such an award is substantive. That the Court of Chancery awards attorney's fees in appropriate cases serves to police corporate conduct generally, not just to control the way corporations litigate. See William Penn P'ship v. Saliba, 13 A.3d at 759 (Del. 2011)("The Chancellor's decision to award attorneys' fees and costs was well within his discretion and is supported by Delaware law in order to discourage outright acts of disloyalty by fiduciaries."). Consequently, an award of attorney's fees premised on a pre-litigation breach of a fiduciary's duty of loyalty is substantive and not procedural even though the authority for such an award is the Chancellor's "broad discretionary power to fashion appropriate equitable relief," William Penn P'ship v. Saliba, 13 A.3d at 758, not a statute, the typical source of loser-pays attorney's fees, see Boyd Rosene, 174 F.3d at 1126.

The Delaware Court of Chancery has admonished that "an award of attorneys' fees is 'unusual relief.'" Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 231 (quoting Weinberger v. UOP, Inc., 517 A.2d at 656). In Arbitrium (Cayman Islands) Handels AG v. Johnston, the plaintiffs argued that the defendants engaged in fraudulent, bad-faith conduct, such as making "undocumented, interest free loans" to themselves and "surreptitiously" converting the plaintiffs' voting stock to non-voting stock in the corporation of which one plaintiff was the majority shareholder. Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 232-33 (internal quotation marks omitted). The Delaware Court of Chancery noted that the defendants "engaged in pervasive deception" of the plaintiffs, but it ultimately concluded

that the defendants' "pre-litigation underlying conduct is not sufficient to support an attorneys' fees award." Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 233-34. The Delaware Court of Chancery also concluded, however, that the defendants' "bad faith conduct" during and after the litigation "independently warrant[ed] an award of attorneys' fees." Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 237. The Defendants' pre-litigation conduct is less repugnant than the defendants' conduct in Arbitrium (Cayman Islands) Handels AG v. Johnston, which the Delaware Court of Chancery held did not warrant an attorney's fees award, because it did not meet the egregiousness standard. The Delaware Court of Chancery reasoned that an attorney's fees award based on egregious pre-litigation conduct "is applied in only the most egregious instances of fraud or overreaching." Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 231.

In Nine Systems I, the Delaware Court of Chancery advised that, "even where a transaction was conducted at a fair price, a finding that the transaction was not entirely fair may justify shifting certain of the plaintiffs' attorneys' fees and costs to the defendants who breached their fiduciary duties." Nine Sys. I, 2015 WL 2265669, at *52. The Delaware Court of Chancery noted that shifting attorney's fees "may" be appropriate, but it did not grant such an award, because "the parties did not fairly present this issue in post-trial briefing." Nine Sys. I, 2015 WL 2265669, at *52. The Delaware Court of Chancery thus granted the plaintiffs leave to submit a petition for attorneys' fees and costs. See Nine Sys. I, 2015 WL 2265669, at *58. Subsequently, in Nine Systems II, the Delaware Court of Chancery determined that the defendants breached their duty of loyalty to the plaintiffs, because the defendants "knowingly excluded from the decision-making process a director who represented a group of minority

shareholders," "effected the recapitalization through a grossly inadequate process," and "sought to avoid full and fair communications with the Company's stockholders."  2015 WL 2265669, at *2.  Noting that the "case [] tests the range of equity's powers," the Delaware Court of Chancery nonetheless concluded that the "broader, unusual circumstances of this case support an equitable shifting of fees."  Nine Sys. II, 2015 WL 2265669, at *3.

In Saliba v. William Penn Partnership, the Delaware Court of Chancery held that "the individual defendants breached their duties as fiduciaries by failing to make full and timely disclosures to plaintiffs and by manipulating the sales process related to the [partnership's sole asset] for the individual defendant's self-interested purposes."  2010 WL 1642239, at *1.  The Delaware Court of Chancery decided to award the plaintiffs attorney's fees, because it determined that "it would be unfair and inequitable to require plaintiffs to shoulder the costs incurred in demonstrating the unfairness of [the] sales process."  Saliba v. William Penn P'ship, 2010 WL 1642239, at *1.  On appeal, the Supreme Court of Delaware noted that the plaintiffs "were left without a typical damage award," because the Court of Chancery's "appraisal of the [asset] came in at a value lower than the sale price."  William Penn P'ship v. Saliba, 13 A.3d at 759.  The Supreme Court of Delaware concluded that the Court of Chancery did not abuse its discretion by awarding the plaintiffs attorney's fees, because the defendants' "prelitigation conduct rose to egregiousness," and, "[a]bsent this award," the plaintiffs "would have been penalized for bringing a successful claim against the [defendants] for breach of their fiduciary duty of loyalty."  William Penn P'ship v. Saliba, 13 A.3d at 752, 759.

## LAW REGARDING ATTORNEY'S FEES IN OKLAHOMA

While Delaware law permits courts to award attorney's fees and costs for egregious pre-litigation conduct, see, e.g., Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 231; HMG/Courtland Props., Inc. v. Gray, 749 A.2d at 124, Oklahoma law does not carve out the same equitable exception to the American Rule, see In re Estate of Webb, 2010 OK CIV APP 114, ¶ 14, 242, P.3d at 603. The Supreme Court of Oklahoma instructs:

> On the award of attorney's fees, Oklahoma follows the so-called American Rule, that is, attorney's fees are not ordinarily recoverable in the absence of a statute or an enforceable contract. City Nat. Bank and Trust Co. v. Owens, Okl., 565 P.2d 4 (1977). Several exceptions exist to the general principle that each party should bear the expenses of his own legal representation. For example, the inherent equitable power of the court allows the award of attorney's fees when an opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reason. They may be awarded where a successful litigant has conferred a substantial benefit upon a class of persons and the court's shifting of the fee acts to spread the cost among the members of the benefited class. Hall v. Cole, 412 U.S. 1 . . . (1973); State ex rel. Burk v. City of Oklahoma City, Okl., 598 P.2d 659 (1979).

Matter of Katschor's Estate, 1981 OK 125, 637 P.2d 855, 856. Citing the Supreme Court of Oklahoma, the Oklahoma Court of Appeals has explained, however, that the "trial court's inherent authority to award attorney fees as a sanction for litigation misconduct is directed only at post-filing conduct." In re Estate of Webb, 2010 OK CIV APP 114, ¶ 14, 242, P.3d at 603 (citing Barnes II, 2004 OK 25 ¶¶ 13-16, 94 P.3d at 29-30). See State ex rel. Tal v. City of Okla. City, 2002 OK 97, ¶ 26, 61 P.3d at 247 (recognizing "the inherent equitable authority of a trial court to award attorney fees against a party for bad faith litigation misconduct -- conduct that is vexatious, wanton or engaged in for oppressive reasons")(emphasis added). The Supreme Court of Oklahoma has held that "[s]anctions exist to ensure the proper functioning of the legal system

and there can be no doubt that they primarily deter and punish." <u>Cities Serv. Co. v. Gulf Oil Corp.</u>, 1999 OK 16, ¶ 8, 976 P.2d 545, 548.

In <u>City National Bank & Trust Co. of Oklahoma City v. Owens</u>, 1977 OK 86, 565 P.2d 4 ("<u>City National Bank</u>"), the Supreme Court of Oklahoma enumerated the exceptions to the American Rule that Oklahoma recognizes:

> The American Rule does not however serve as an absolute bar to the awarding of attorney fees in the absence of statute or contract. Courts have from common law days recognized several exceptions to the general principle that each party should bear the costs of his or her own legal representation. Courts have long recognized that attorney fees may be awarded when an opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reason, or where a successful litigant has conferred a substantial benefit upon a class of person and the court's shifting of the fees operates to spread the costs proportionately among the members of the benefited class. Additionally, courts have also recognized a "private attorney general" rationale.

<u>City Nat. Bank</u>, 1977 OK 86, 565 P.2d at 7 (footnotes omitted). In <u>Barnes II</u>, the Supreme Court of Oklahoma affirmed that there are "certain exceptions to the American Rule in Oklahoma." 2004 OK 25, ¶ 13, 94 P.3d at 29 (citing <u>City Nat. Bank</u>, 1977 OK 86, 565 P.2d at 8). The Supreme Court of Oklahoma recognized that, in <u>City National Bank</u>, it "allowed the award of attorney fees . . . for oppressive litigation conduct" by "exercising its inherent equitable power in awarding such attorney fees." <u>Barnes II</u>, 2004 OK 25, ¶ 13, 94 P.3d at 29. The Supreme Court of Oklahoma then distinguished the defendant's argument in <u>Barnes II</u> from the defendants' argument in <u>City National Bank</u>.

> In the case at bar, the defendant argued that there was no finding of bad faith litigation conduct in this case, as there was in *City National v. Owens*, but rather that the conduct complained of was what led to filing the lawsuit in the first place. The trial court agreed that no *City National* circumstances existed. We recently discussed the difference between bad faith litigation conduct, as in *City*

*National*, and the situation where the conduct sanctioned was for bringing the lawsuit and defending against a motion to dismiss.

. . . .

The conduct complained of in the case at bar by defendant is the conduct that led to the bringing of the action. Defendant's complained-of actions in the case at bar formed the basis of the bad faith claim filed by the plaintiff, and formed the basis for the award of punitive damages in the case.

Barnes II, 2004 OK 25, ¶¶ 14-16, 94 P.3d at 29-30. In sum, "'[t]he egregious conduct which *City National* addressed was bad faith conduct during the litigation, not the conduct occurring which gave rise to the litigation.'" Barnes II, 2004 OK 25, ¶ 19, 94 P.3d at 30 (quoting Sooner Trailer Mfg. Co. v. Gay, 1998 OK CIV APP 194, 972 P.2d 1177, 1179)(emphasis omitted). The Supreme Court of Oklahoma thus concluded that the defendant's pre-litigation conduct "was not oppressive conduct during litigation so as to trigger the trial court's inherent power to award attorneys." Barnes II, 2004 OK 25, ¶ 19, 94 P.3d at 30. Moreover, the Supreme Court of Oklahoma declined to extend the "bad faith litigation conduct exception to the American Rule" to encompass pre-litigation misconduct. Barnes II, 2004 OK 25, ¶ 19, 94 P.3d at 30. Last, in Barnes I, the Supreme Court of Oklahoma provides three examples of situations in which a plaintiff may recover attorney's fees as an "element of damages or otherwise in either an action based on contract or tort," and the Supreme Court of Oklahoma indicates that these examples are exhaustive. 2000 OK 55, ¶ 52, 11 P.3d at 181.

The easiest understood example of when attorney fees are recoverable as damages is where an attorney sues his client to recover a reasonable attorney fee for services rendered when the client refuses to pay. *See Wolfe v. Campbell*, 1924 OK 785, 107 Okla. 112, 230 P. 506. In such a case, when the parties properly dispute the issue as to what amount, if any, should be recovered, the issue as to what would be a reasonable attorney fee for the services rendered is an issue of fact to be determined by the jury from the evidence presented. 230 P. at 506-507.

Another example of when attorney fees are properly recoverable as an item of damage is when an insurance company has a contractual duty to defend its insured from lawsuits brought by third parties against the insured, but insurer wrongfully refuses to defend, necessitating the insured to employ his own counsel to defend the third party suit(s) brought against him. *Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, 653 P.2d 907 is an illustration of this situation and involved an insurance company's wrongful refusal to defend a prior law action brought against the insured pilot by his passenger(s) after an airplane crash. 653 P.2d at 910 and 915. In other words, providing an attorney to defend claims made against the insured was part of the contractual duty of the insurance company, which was wrongfully and tortiously withheld. *See also Iowa Home Mutual Casualty Company v. Mussett*, 1959 OK 143, 342 P.2d 553, 554 *Third Syllabus* (insurer's failure to defend compensation claim within purview of worker's compensation policy issued by insurer constitutes breach of an obligation arising from an insurance contract and the insured employer may maintain an action at law against insurer to recover as an element of damages sustained by him the reasonable attorney fees incurred in defense of the compensation claim before the State Industrial Commission).

Yet another example is where the wrongful acts of the defendant have involved the plaintiff in litigation with others, or have placed him in such relation with others as to make it necessary for him to incur attorney fees to protect his interests, attorney fees being recoverable in such cases as one of the elements of damages flowing from the original wrongful act of the defendant. *Griffin v. Bredouw*, 1966 OK 226, 420 P.2d 546, 547, *Second Syllabus*. *Griffin* involved a situation where the purchasers of a completed house and lot were required to defend a lien foreclosure suit brought by a subcontractor because the vendor of the house and lot wrongfully refused to pay the subcontractor's bill for the erection of a fence -- the vendor's refusal to pay the subcontractor's bill being in violation of his contract with the purchasers. *Griffin* held the purchasers were entitled to recover as an item of damage in a subsequent suit against the vendor, the attorney fees they were compelled to expend in defending the suit by the subcontractor. *See also Security State Bank of Comanche v. W.R. Johnston & Co., Inc.*, 1951 OK 40, 228 P.2d 169. Other than in the above examples, attorney fees are not normally allowed -- in the absence of a contractual provision or specific statute allowing their recovery -- as an element of damage or otherwise in either an action based on contract or tort. *See Hertzel v. Weber*, 1926 OK 318, 246 P. 839.

Barnes I, 2000 OK 55, ¶¶ 52-53, 11 P.3d at 181 (emphasis added).

# LAW REGARDING THE TIMING OF ATTORNEY'S FEES MOTIONS

Rule 54(d)(2) of the Federal Rules of Civil Procedure provides:

(2) Attorney's Fees.

  (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

  (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:

   (i) be filed no later than 14 days after the entry of judgment;

   (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

   (iii) state the amount sought or provide a fair estimate of it; and

   (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

  (C) Proceedings. Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).

Fed. R. Civ. P. 54(d)(2)(A)-(C).  Rule 58(e) provides:

 Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees. But if a timely motion for attorney's fees is made under Rule 54(d)(2), the court may act before a notice of appeal has been filed and become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4 (a)(4) as a timely motion under Rule 59.

Fed R. Civ. P. 58(e).  In its turn, rule 4 of the Federal Rules of Appellate Procedure provides that

motions under rule 59 of the Federal Rules of Civil Procedure extend the time for appeal until

such motions are decided.  See Fed. R. App. P. 4(a)(4)(A)(iv)-(v).  A motion "for attorney's fees

under Rule 54" does the same "if the district court extends the time to appeal under Rule 58."

Fed. R. App. P. 4(a)(4)(A)(iii).

## LAW REGARDING INTERLOCUTORY APPEALS

Rule 54(b) of the Federal Rules of Civil Procedure provides:

> Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and  liabilities.

Fed. R. Civ. P. 54(b).  "A district court order which stops short of adjudicating all claims and

liabilities of all parties is not final and appealable unless it is certified under rule 54(b)."  Hook v.

Regents of Univ. of Cal., 394 F. App'x 522, 530 (10th Cir. 2010)(unpublished)(citing Atiya v.

Salt Lake Cty., 988 F.2d 1013, 1016 (10th Cir. 1993)).   Rule 54(b) allows the district court to

"direct entry of a final judgment as to one or more, but fewer than all, claims or parties" so long

as "the district court expressly determines that there is no just reason for delay."  Fed. R. Civ. P.

54(b).  The general rule, however, is that an order that "determines liability but leaves damages

to be calculated is not final."  Harbert v. Healthcare Servs. Group, Inc., 391 F.3d 1140, 1145

(10th Cir. 2004).  The Court of Appeals reviews a district court's denial of certification for abuse

of discretion. See Graham v. Van Dycke, 318 F. App'x 654, 659 (10th Cir. 2009)(unpublished)(citing Blair v. Shanahan, 38 F.3d 1514, 1522 (9th Cir. 1994)(reviewing for abuse of discretion a district-court's denial of request to certify under Rule 54(b))).

In order to determine whether an order is "final" a district court must first consider the separability of the adjudicated and unadjudicated claims. See Jordan v. Pugh, 425 F.3d 820, 826 (10th Cir. 2005)(stating that, in considering whether an order is final, "the controlling jurisdictional question is . . . whether [the claim that has been resolved] is distinct and separable from the claims left unresolved" (quotation omitted)); Old Republic Ins. Co. v. Durango Air Serv., Inc., 283 F.3d 1222, 1225 (10th Cir. 2002)(same); Okla. Turnpike. Auth. v. Bruner, 259 F.3d 1236, 1243 (10th Cir. 2001)(same). "For purposes of Rule 54(b), a claim comprises all factually or legally connected elements of a case." Jordan v. Pugh, 425 F.3d at 827 (quotation omitted). In determining whether claims are separable, courts should "consider whether the allegedly separate claims turn on the same factual questions, whether they involve common legal issues, and whether separate recovery is possible." Jordan v. Pugh, 425 F.3d at 827. "[C]ourts entering a Rule 54(b) certification should clearly articulate their reasons and make careful statements based on the record supporting their determination of 'finality' and 'no just reason for delay' so that [reviewing courts can] review a 54(b) order more intelligently[] and thus avoid jurisdictional remands." Stockman's Water Co. v. Vaca Partners, L.P., 425 F.3d 1263, 1265 (10th Cir. 2005)(internal quotation marks omitted).

## ANALYSIS

This Memorandum Opinion and Order addresses the Motion for Judgment, the Defendants' Original Motion, the Defendants' Motion, the Plaintiffs' Motion, the Defendants'

Brief, the Plaintiffs' Brief, and the Defendants' Supplemental Brief. During the August 15, 2018, hearing, the Plaintiffs noted that they have not filed an application for attorney's fees, and that the Plaintiffs' Motion addresses only "whether or not we are were entitled to fees. We specifically said, if the court were to so find, then we would file an application." Tr. at 158:25-159:1 (Kagen). The Plaintiffs explained that, if the Court awards attorney's fees to the Defendants and not to the Plaintiffs, then they "assume[d] that [the Court] would simply issue a judgment that plaintiffs take nothing, and then we would deal with attorney fee submissions at a later point . . . and [] object to the extent necessary." Tr. at 158:14-19 (Kagen). The Court thus indicated its intention to "bifurcate" the Defendants' Motion, because the Plaintiffs, unlike the Defendants, had not filed an application for attorney's fees and the Plaintiffs had not objected to the Defendants' attorney's fees requests. Tr. at 234:24 (Court).

At the end of the hearing, the Court proposed that it would draft an opinion resolving the Defendants' Motion for Judgment, the Defendants' Original Motion, the Plaintiffs' Motion, and "up to page 4" of the Defendants' Motion, "where it talks about the reasonableness of fees," Tr. at 234:20-25 (Court), and "then [the Court] will enter a judgment," Tr. at 235:3 4 (Court). The Court explained that this procedure will allow the Defendants to file a "letter or brief" telling the Court how "to handle the federal securities claims." Tr. at 235:12-14 (Court). The Court then set deadlines for the Defendants to submit a brief and for the Plaintiffs to file supplemental briefing on the reasonableness of the Defendants' application for attorney's fees. See Tr. at 235:15-237:21 (Court, DeMuro, Kagen). The Court indicated that a separate Memorandum Opinion and Order will address those briefs. See Tr. at 235:10-11 (Court)("I will in a separate opinion issue an order actually ordering the attorneys' fees with a specific amount.").

Since the hearing, the Defendants filed the Defendants' Supplemental Brief further addressing the reasonableness of the attorney's fees and expenses that they request and proposing how to address attorney's fees and expenses related to the federal securities claims. See Defendants' Supplemental Brief at 1. The Plaintiffs responded and the Defendants replied. See Plaintiffs' Supplemental Response at 1; Defendants' Supplemental Reply at 1. Because this briefing is complete, the Court will not issue a separate Memorandum Opinion and Order addressing the supplemental briefings. Instead, this Memorandum Opinion and Order will address all of the briefings instead of bifurcating the Defendants' Motion and issuing two separate opinions.

To determine whether the Plaintiffs or the Defendants are entitled to attorney's fees, the Court must determine whether Oklahoma law or Delaware law applies. The Court concludes that Oklahoma's offer-of-judgment statute applies, and thus grants the Defendants' Motion and denies the Plaintiffs' Motion. Because the Court determines that neither Oklahoma law nor Delaware law entitles the Plaintiffs to attorney's fees, the Court denies the Plaintiffs' Motion. Accordingly, the Court concludes that the Defendants are entitled to reasonable attorney's fees and costs, and the Plaintiffs are not entitled to attorney's fees and costs and consequently do not need to submit an application for attorney's fees. The Court will address all of the parties' briefs in this Memorandum Opinion and Order, because the parties have fully briefed the reasonableness of the Defendants' attorney's fees request. Finally, the Court will enter judgment that the Defendants are entitled to reasonable attorney's fees and costs and that the Plaintiffs are not entitled to attorney's fees and costs. The Court will award the Defendants $1,895,800.27 in

attorney's fees and $147,748.33 in costs, for a total of $2,043,548.60 in attorney's fees and costs.

The Court will not, however, enter judgment that the Merger was entirely fair.

## I.     OKLAHOMA LAW APPLIES, AND OKLAHOMA'S OFFER-OF-JUDGMENT STATUTE PERMITS THE DEFENDANTS TO RECOVER THEIR ATTORNEY'S FEES AND COSTS.

The Defendants ask the Court to award them their attorney's fees and costs under Oklahoma's offer-of-judgment statute, 12 Okla. Stat. Ann. § 1101.1,[53] see Defendants' Motion at 1-3, because the statute's fee-shifting provisions apply "in diversity cases as a matter of substantive law under the traditional Erie analysis," Defendants' Motion at 2-3 (citing Scottsdale Ins. Co. v. Tolliver, 636 F.3d at 1280). At the August 15, 2018, hearing, the Defendants argued that the Court "must apply Oklahoma's choice-of-law rules when it sits in diversity, and under Oklahoma choice-of-law rules, the forum, Oklahoma, governs procedural matters even when Oklahoma's substantive law does not apply." Tr. at 13:10-14 (DeMuro). The Defendants contended that, although the Tenth Circuit determined in Scottsdale Ins. Co. v. Tolliver that "the offer-of-judgment statute is substantive," that "was an Erie determination. The choice there was whether federal or state law applied. That does not even come close to ending the inquiry." Tr. at 12:21-25 (DeMuro).

_____

[53]That statute permits defendants to file "an offer of judgment for a sum certain to any plaintiff with respect to the action or any claim or claims asserted in the action." 12 Okla. Stat. Ann. § 1101.1(B)(1). If a plaintiff does not accept an offer of judgment, "and the judgment awarded the plaintiff is less than one or more offers of judgment," then the defendant can recover its post-offer attorney's fees and litigation expenses. 12 Okla. Stat. Ann. § 1101.1(B)(3). See Hubbard v. Kaiser-Francis Oil Co., 2011 OK 50, ¶ 14, 256 P.3d at 73 ("[A] judgment entered in favor of a defendant can be the basis for an award of attorney fees and costs under § 1101.1(B)."). But see Delta Air Lines, Inc. v. August, 450 U.S. 346, 354 (1981)(reading rule 68 of the Federal Rules of Civil Procedure -- § 1101's federal analogue -- such that it does not apply "to judgments in favor of the defendant").

The Defendants note that, in the Sept. 8 MOO, the Court reasoned that "'there is no equivalence between what is substantive under the Erie doctrine and what is substantive for purposes of conflict of laws.'" Defendants' Briefing Response at 6 (quoting Sept. 8 MOO at 6). The Defendants argue that, while one Erie principle is ensuring "that the choice of federal versus state forum in diversity cases is not outcome determinative, . . . that principle is not relevant for resolving choice of law issues involving various states' law." Defendants' Briefing Response at 6 (citing Boyd Rosene, 174 F.3d at 1118). The Defendants also argue that the Plaintiffs' reliance on the April 25 MOO's holding that Delaware law applies to the fiduciary duty claims is misplaced, because, "'rather than automatically applying the law of the state providing the substantive contract law, a district court must first apply the forum state's choice-of-law rules in resolving attorney's fees issues.'" Defendants' Briefing Response at 7 (quoting Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency, 123 F.3d 1351, 1353 (10th Cir. 1997)(en banc)).

The Plaintiffs contend that, because the Court determined that Delaware governs their breach-of-fiduciary-duty claims, Delaware law also must govern the "relief available to Plaintiffs for those claims." Plaintiffs' Briefing Response at 5. At the hearing, the Plaintiffs argued that, under Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII and Racher v. Westlake Nursing Home Ltd. Partnership, "only one state's substantive law is going to apply to this claim." Tr. at 66:25-67:1 (Kagen). The Plaintiffs emphasized that, under Erie, federal procedural law applies in diversity cases, so Oklahoma's offer-of-judgment statute "has no bearing, . . . even if this were an Oklahoma-governed law case, which it isn't." Tr. at 53:22-23 (Kagen). The Plaintiffs reasoned that, if the Defendants instead argued that Oklahoma's offer-of-judgment statute is substantive, then it does not apply, because "Oklahoma substantive law has no bearing

on a Delaware case." Tr. at 54:8-9 (Kagen). The Plaintiffs also argued that Oklahoma law and Delaware law "are not consistent," because "Delaware has no offer-of-judgment statute." Tr. at 55:6-7 (Kagen).

When sitting in diversity, the Tenth Circuit directs the Court to determine the applicable law in a two-step inquiry:

> First, the court must determine whether a particular matter is procedural or substantive for <u>Erie Railroad Co. v. Tompkins</u> purposes. If the matter is procedural, then federal law applies; if the matter is substantive, then the court follows the law of the forum state. Second, if the court has determined that the matter is substantive, then it looks to the substantive law of the forum state, including its choice of law principles, to determine the applicable substantive law. These two steps are distinct inquiries; thus, what is substantive or procedural for <u>Erie</u> purposes is not necessarily substantive or procedural for choice-of-law purposes.

<u>Boyd Rosene</u>, 174 F.3d at 1118 (citations omitted). Resolving the first step of that inquiry vis-à-vis attorney's fees is simple, because Tenth Circuit precedent states that, "in diversity cases generally, and certainly in this circuit, attorney fees are determined by state law and are substantive for diversity purposes." <u>King Res. Co. v. Phoenix Res. Co.</u>, 651 F.2d 1349, 1353 (10th Cir. 1981). Additionally, the Tenth Circuit has concluded that 12 Okla. Stat. Ann. § 1101.1(B)(3) applies to "a claim for attorneys' fees based on [an] offer of judgment" when an Oklahoma federal court hears a diversity case. <u>Scottsdale Ins. Co. v. Tolliver</u>, 636 F.3d at 1281. In <u>Scottsdale Insurance Co. v. Tolliver</u>, the Tenth Circuit held that § 1101.1(B)(3) is substantive for <u>Erie</u> purposes, because "statutory provisions permitting an award of attorneys' fees are substantive where the statute permits the prevailing party in certain classes of litigation to recover attorneys' fees." <u>Scottsdale Ins. Co. v. Tolliver</u>, 636 F.3d at 1279.

The Court concludes that Oklahoma's offer-of-judgment statute is substantive for <u>Erie</u> purposes.  <u>See</u> <u>Scottsdale Ins. Co. v. Tolliver</u>, 636 F.3d at 1279-81; <u>McMahan v. Toto</u>, 256 F.3d 1120, 1132 (11th Cir. 2001)("It is clear that statutes allowing for recovery of attorney's fees are substantive for <u>Erie</u> purposes."); <u>MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.</u>, 197 F.3d 1276, 1282 (9th Cir. 1999)("In an action involving state law claims, we apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule.").  As the Supreme Court explains in <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240 (1975):

> [I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.

421 U.S. at 259 n.31 (quotation omitted).  Oklahoma's offer-of-judgment statute provides:

> In the event the plaintiff rejects the offer(s) of judgment and the judgment awarded the plaintiff is less than the final offer of judgment, then the defendant filing the offer of judgment shall be entitled to recover reasonable litigation costs and reasonable attorney fees incurred by that defendant from the date of filing of the final offer of judgment until the date of the verdict.  Such costs and fees may be offset from the judgment entered against the offering defendant; provided, however, that prior to any such offset, the plaintiff's attorney may:
>
> > a.    exercise any attorneys lien claimed in an amount not to exceed twenty-five percent (25%) of the judgment, and
> >
> > b.    recover the plaintiff's reasonable litigation costs, not to exceed an additional fifteen percent (15%) of the judgment or Five Thousand Dollars ($5,000.00), whichever is greater.

12 Okla. Stat. Ann. § 1101.1(B)(3).  Because Oklahoma's offer-of-judgment statute is a state law "giving a right" to attorney's fees, the Court concludes that the law is substantive for <u>Erie</u> purposes.  <u>Alyeska Pipeline Serv. Co. v. Wilderness Society</u>, 421 U.S. at 259 n.31.

The second step of the <u>Erie</u> analysis, however, is more complicated.  Under <u>Klaxon v. Stentor Electric Manufacturing Co.</u>, a state's choice-of-law rules are substantive law for <u>Erie</u> purposes, and Oklahoma's choice-of-law rules therefore apply to this case.  <u>See</u> 313 U.S. at 498; <u>Yavuz v. 61 MM, Ltd.</u>, 576 F.3d 1166, 1178 (10th Cir. 2009)("'[I]n making a choice of law determination, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting.'" (quoting <u>Elec. Distrib., Inc. v. SFR, Inc.</u>, 166 F.3d 1074, 1083 (10th Cir. 1999))(alteration in <u>Yavuz v. 61 MM, Ltd.</u>)).  In deciding conflict-of-law issues, Oklahoma courts generally follow the Restatement (Second) of Conflicts of Laws.  <u>See</u> <u>Robert A. Wachsler, Inc. v. Florafax Int'l, Inc.</u>, 778 F.2d at 549-550 ("[W]e are convinced that an Oklahoma court would apply the choice of law rules of the *Restatement (Second) of Conflicts of Law* (1971).");  <u>Yale S. Corp. v. Eclipse Servs., Inc.</u>, 2010 WL 2854687, at *2 ("Oklahoma follows the Restatement (Second) of Conflicts of Laws.").

The Merger Agreement contains a choice-of-law clause, <u>see</u> Merger Agreement § 8.04, at 9, and, under the Restatement (Second) of Conflicts of Laws, the "law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue," Restatement (Second) of Conflicts of Laws § 187(1).  As the Restatement (Second) of Conflicts of Laws' commentary explains, the "objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract."  Restatement (Second) of Conflicts of Laws, comment e.  The Tenth Circuit also has held that, "when a court interprets a contract, as a general matter it applies the law that the parties selected in their contract."  <u>Yavuz v. 61 MM,</u>

Ltd., 465 F.3d at 427.  As stated in Boyd Rosene, "parties to a contract are empowered to and frequently do choose a particular state's law to apply to the execution and interpretation of the contract."  Boyd Rosene, 174 F.3d at 1121.  Moreover, Oklahoma courts will enforce a contract's choice-of-law clause whenever that choice-of-law clause is valid under ordinary Oklahoma contract law principles.  See Tucker v. Cochran Firm-Criminal Def. Birmingham L.L.C., 2014 OK 112, ¶ 37, 341 P.3d 673, 688; Telex Corp. v. Hamilton, 1978 OK 32, 576 P.2d 767, 769 ("'[T]he usual and most important function of courts of justice is [] to maintain and enforce contracts, . . . unless it clearly appear[s] that they contravene public right or the public welfare.'" (quoting Baltimore & Ohio Sw. Ry. v. Voight, 176 U.S. 498, 505 (1900)); Williams v. Shearson Lehman Bros., 1995 OK CIV APP 154, ¶ 3, 917 P.2d 998, 1002 ("The general rule is that a contract will be governed by the laws of the state where the contract was entered into unless otherwise agreed and unless contrary to the law or public policy of the state where enforcement of the contract is sought.").

The Merger Agreement requires the Court to apply Oklahoma law.  See Merger Agreement § 8.04, at 9.  Section 8.04 gives the following choice-of-law rule to govern the Merger Agreement:

> **Governing Law.**  This Agreement shall be governed by and construed in accordance with the internal laws of Oklahoma without giving effect to any choice or conflict of law provision or rule (whether of Oklahoma or any other jurisdiction) that would cause the application of Laws of any jurisdiction other than those of Oklahoma; provided, however, the provisions of this Agreement relating to mechanics or the effects of the Merger under Delaware law shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.

Merger Agreement § 8.04, at 9.  Under the choice-of-law clause, Oklahoma law is the default

applicable law, with the primary exception being that Delaware law governs a claim that arises

out of the Merger's "mechanics or effects."  Merger Agreement § 8.04, at 9.  The Plaintiffs argue

that Delaware law should apply to the attorney's fees issue, because

> as a result of Defendants' actions and inactions, one of the "effects of  the
> Merger"  was  to give Plaintiffs a cause of action under Delaware  law  for breach
> of Defendants' fiduciary duty of loyalty, subjecting Defendants to all of the
> remedies available under Delaware  law  for  such  a cause of action -- including
> attorney's fees that Defendants forced Plaintiffs to incur to prove Defendants'
> breach, which . . . are a component of those remedies.

Plaintiffs' Brief at 5 (quoting Merger Agreement at § 8.04, at 9).  The Defendants counter that

the Merger occurred in Oklahoma, and that their actions "preceded the merger and were not its

'mechanics or effects.'"  Defendants' Brief at 4 (quoting Merger Agreement at § 8.04, at 9).  The

Defendants argue that the Court should not interpret the "proviso respecting 'mechanics and

effects of the merger' to mean 'the events preceding the merger.'"  Defendants' Briefing

Response at 3 (quoting Merger Agreement § 8.04, at 9).  According to the Defendants, the

"actions about which Plaintiffs complained, which preceded and caused the merger, were

performed at a time when only the laws of Oklahoma were in effect and, by the express

provisions of the Merger Agreement, the laws of Oklahoma applied to those actions."

Defendants' Briefing Response at 3-4.

Although the Court held that Delaware law applies to the Plaintiffs' breach-of-

fiduciary-duty claims,[54] Oklahoma law applies to the Defendants' attorney's fees request,

---

[54]In the April 25 MOO, the Court held that "Delaware law applies to the Plaintiffs'
claims regarding the entire fairness of the cash-out merger."  April 25 MOO, 250 F. Supp. 3d
at 1025.  The Court noted that, under the Merger Agreement, "Oklahoma law is the basis of law

because: (i) attorney's fees do not implicate a provision of the Merger Agreement "relating to mechanics or the effects of the Merger," Merger Agreement § 8.04, at 9; and (ii) even if the Merger Agreement is not binding on the Plaintiffs, Oklahoma's offer-of-judgment statute is procedural under Oklahoma's conflict-of-laws rules. Under the Merger Agreement, Oklahoma law governs the parties' attorney's fees requests. See Merger Agreement § 8.04, at 9 ("This

and the default," but Oklahoma's choice-of-law rules do not apply if they "would lead to a result that some state's law -- other than Oklahoma law -- would apply." April 25 MOO, 250 F. Supp. 3d at 1026 (citing Merger Agreement § 8.04, at 9). The Court nevertheless applied Oklahoma's choice-of-law rules and held that Delaware law applies. See April 25 MOO, 250 F. Supp. 3d at 1025-26. The Court reasoned that "Oklahoma would follow Restatement (Second) Conflict of Laws § 302(2), and that 'the law of the state of incorporation shall be applied to determine . . . the liabilities of a corporation, unless it is shown that some other state has a more significant relationship to the occurrence and the parties.'" April 25 MOO, 250 F. Supp. 3d at 1025-26 (quoting Yale S. Corp. v. Eclipse Servs., Inc., No. 10-CV-0337-CVE-FHM, 2010 WL 2854687, at *2 (D.N.M. July 19, 2010), and citing Robert A. Wachsler, Inc. v. Florafax, Int'l, Inc., 778 F.2d at 550). Because the "Plaintiffs' claim involves the liability of [a] surviving Delaware entity" -- TIR, LLC -- the Court concluded that it "must apply Delaware law to the Plaintiffs' claims regarding the cash-out merger." April 25 MOO, 250 F. Supp. 3d at 1026. The Court also concluded that "[n]o other state has a more significant relationship to the occurrence and the parties," because the Merger Agreement states that "Delaware law applies to the mechanics and effects of the merger." April 25 MOO, 250 F. Supp. 3d at 1025. More specifically, the Merger Agreements states: "[T]he provisions of this Agreement relating to mechanics or the effects of the Merger under Delaware law shall be governed by and construed and enforced in accordance with the laws of the State of Delaware." Merger Agreement § 8.04, at 9.

For slightly different reasons, the Court again concludes that Delaware law applies to the Plaintiffs' breach-of-fiduciary duty claims, because § 1.04 of the Merger Agreement, which is titled "Effects of the Merger," states that "all debts, liabilities, obligations, restrictions and duties of each of the Company and Merger Sub shall become the debts, liabilities, obligations, restrictions and duties of the Surviving Entity." Merger Agreement § 1.04, at 2 (emphasis added). Hence, one of the Merger's "effects" is that TIR, Inc.'s duties and liabilities transfer to TIR, LLC, which is a Delaware entity. Merger Agreement § 1.04, at 2. Under the Merger Agreement, Delaware law must apply to the Merger's "effects." Merger Agreement § 8.04, at 9. Moreover, even if the Court's conclusion that Delaware law applies to the Plaintiffs' breach-of-fiduciary duty claims is incorrect, the Court would have reached the same result under Oklahoma law, because the Supreme Court of Oklahoma has adopted and applied Delaware's entire-fairness test, which the Supreme Court of Oklahoma sometimes calls the "intrinsic fairness test." Warren v. Century Bankcorporation, Inc., 1987 OK 14, 741 P.2d 846, 849 (holding that the entire-fairness test's "application is consistent with Oklahoma's extant jurisprudence").

- 183 -

Agreement shall be governed by and construed in accordance with the internal laws of Oklahoma."). The Merger Agreement states, however, that "the provisions of this Agreement relating to mechanics or the effects of the Merger under Delaware law shall be governed by and construed and enforced in accordance with the laws of the State of Delaware." Merger Agreement § 8.04, at 9. The Merger Agreement lacks, however, any provisions relating to attorney's fees. See Tr. at 112:10-15 (DeMuro)(stating that "the choice-of-law provision in the merger agreement is silent" about attorney's fees). The Merger Agreement contains several provisions relating to the effects of the Merger, and none of these provisions implicates attorney's fees. For example, the Merger Agreement defines the Merger's effects in § 1.04:

> **Effects of the Merger.** The Merger shall have the effects set forth herein and in the applicable provisions of the DLLCA and the OGCA. Without limiting the generality of the foregoing, and subject thereto, from and after the Effective Time, all assets, property, rights, privileges, immunities, powers, franchises, licenses and authority of each of the Company and the Merger Sub shall vest in the Surviving Entity, and all debts liabilities, obligations, restrictions and duties of each of the Company and Merger Sub shall become the debts, liabilities, obligations, restrictions and duties of the Surviving Entity.

Merger Agreement § 1.04, at 2. Section 2.01 of the Merger Agreement addresses the specific effects of the Merger on capital stock. See Merger Agreement § 2.01, at 2. These provisions do not pertain to attorney's fees and costs. Moreover, the Defendants' lack of fair dealing and process before the Merger is a precursor rather than an effect of the Merger and this action. See Tr. at 108:14-15 (DeMuro). Accordingly, under the Merger Agreement, Oklahoma law applies to the Defendants' and Plaintiffs' attorney's fees requests.

The Court concludes that Oklahoma law applies to the attorney's fees issues, even though the Court previously determined that Delaware law applies to the Plaintiffs'

breach-of-fiduciary-duty claims. At the August 15, 2018, hearing, the Court expressed that its main concern is whether the Merger Agreement's choice-of-law provision could bind nonparties to the Merger Agreement under Oklahoma's choice-of-law provisions. See Tr. at 7:19-20 (Court). The Plaintiffs insisted that the Merger Agreement binds them, noting that they "are intended and named beneficiaries of that contract because all the shares are noted to be canceled and extinguished. That contract clearly was written and designed to have effect upon us. We're named within it." Tr. at 8:3 5 (Kagen). The Plaintiffs also argued that "intended third-party beneficiaries can be beneficiaries of a contract, receive the benefits of the contract, and have it apply to them." Tr. at 8:3-5 (Kagen). The Plaintiffs further argue that Delaware law should apply, because "attorney's fees are a substantive component of Plaintiffs' damages for Delaware breach-of-fiduciary-duty-of-loyalty claims." Plaintiffs' Briefing Response at 5 (citing Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII, 861 F.3d at 1188).

Even if the Merger Agreement does not bind the Plaintiffs, the Court concludes that Oklahoma's offer-of-judgment statute applies, because the statute is procedural under Oklahoma's choice-of-law rules. The Tenth Circuit has held that "Oklahoma choice-of-law principles require a court to apply Oklahoma rules to procedural matters even when those principles require the application of the substantive law of another jurisdiction." Boyd Rosene, 174 F.3d at 1118. "In a conflict-of-law analysis[,] matters of procedure are governed by the law of the forum." Veiser v. Armstrong, 1984 OK 61, 688 P.2d at 799 n.6 (citing N. Pac. Ry. Co. v. Babcock, 154 U.S. at 194; Shimonek v. Tillman, 1931 OK 377, 1 P.2d 154). Whether an issue is substantive or procedural for choice-of-law purposes is a state law question. See Boyd Rosene, 174 F.3d at 1118 ("[I]t is this court's responsibility to ascertain how the Oklahoma Supreme

Court would decide the choice-of-law issue."). The Defendants argue that Oklahoma's "offer-of-judgment statute is procedural," because its purpose is to "encourage settlements." Tr. at 17:23-18:5 (DeMuro)(citing Hubbard v. Kaiser-Francis Oil Co., 2011 OK 50, ¶ 13, 256 P.3d at 73). According to the Defendants, if a law "is concerned with the administration of justice and how cases are resolved, then it is procedural." Tr. at 21:8-10 (DeMuro)(citing Hubbard v. Kaiser-Francis Oil Co., 2011 OK 50, ¶ 22, 256 P.3d at 75).

The Court agrees with the Defendants that Oklahoma's offer-of-judgment statute is procedural under Oklahoma's choice-of-law rules. In the Sept. 8 MOO, the Court set out the analysis for determining whether a law permitting a litigant to recover its attorney's fees is procedural or substantive for choice-of-law purposes by distinguishing "loser-pays" attorney's fees statutes and "bad-faith" attorney's fees statutes:

> While applying Oklahoma choice-of-law rules, the United States Court of Appeals for the Tenth Circuit has recognized a distinction between "loser-pays attorney's fees, that is, attorney's fees awarded to a party simply because it prevailed" and bad-faith attorney's fees, i.e., "attorney's fees assessed for a willful violation of a court order or against a losing party who acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency, 174 F.3d at 1125-26. Loser-pays attorney's fees normally "reflect a conscious policy choice by a legislature to depart from the American rule and codify the English rule," Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency, 174 F.3d at 1126, so loser-pays attorney's fees should be classified as substantive for choice-of-law purposes, see Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency, 174 F.3d at 1126 (concluding that the Supreme Court of Oklahoma would classify attorney's fees based on a loser-pays statute as substantive).

> Bad-faith attorney's fees, in contrast, reflect "a court's inherent powers, which it has discretion to exercise in the interests of justice and efficient judicial administration." Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency, 174 F.3d at 1126. Because bad-faith attorney's fees enable courts to "manage [their] own affairs so as to achieve the orderly and timely disposition of cases," Winters v. City of Oklahoma City, 740 P.2d 724, 725 (Okla. 1987), bad-faith attorney's fees

are procedural in the choice-of-law context, see Restatement (Second) of Conflicts of Law § 122 ("A court usually applies its own local law rules prescribing how litigation shall be conducted . . . ."); Restatement (Second) of Conflicts of Law § 130 ("The local law of the forum determines the methods of securing obedience to orders of the court."). See also Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency, 174 F.3d at 1122 (stating that "Oklahoma courts routinely refer" to the Restatement (Second) of Conflicts of Law "on issues relating to choice of law").

Sept. 8 MOO at 3. Like bad-faith attorney's fees, an attorney's fees award under § 1101.1 regulates litigation conduct by encouraging parties to settle their claims:

> The purpose of § 1101.1(B) is to "encourage judgments without protracted litigation" by "provid[ing] additional incentives to encourage a plaintiff to accept a defendant's offer to confess judgment" and to encourage a defendant "to offer an early confession of judgment [to] avoid further increases in costs which may be incurred [for] trial preparation.

Hubbard v. Kaiser-Francis Oil Co., 2011 OK 50, ¶ 13, 256 P.3d at 73 (quoting Boston Ave. Mgmt. Inc. v. Associated Res., Inc., 2007 OK 5, ¶ 13, 152 P.3d 880, 885 (alterations in the original)). See Paine Webber Jackson and Curtis, Inc. v. Winters, 22 Conn. App. at 652, 579 A.2d at 551 (determining that Connecticut's offer-of-judgment statute is a "procedural rule," because it is "punitive in nature," and it "promote[s] fair and reasonable pretrial compromises of litigation").

The Court concludes that, even though § 1101.1 is substantive for Erie purposes, it is procedural for choice-of-law purposes, because it regulates litigation conduct and encourages parties to settle their claims. The Restatement (Second) of Conflicts of Laws further supports this conclusion. The Tenth Circuit has observed that "[c]hapter six of the Restatement is dedicated to the general rule that a forum should apply its own local rules 'prescribing how litigation shall be conducted even when it applies the local rules of another state to resolve other

issues in the case.'" <u>Boyd Rosene</u>, 174 F.3d at 1122 (quoting Restatement (Second) of Conflicts of Laws § 122). Section 122's commentary explains that, for rules related to judicial administration within a forum, each "forum is more concerned with how its judicial machinery functions and how its court processes are administered than is any other state." Restatement (Second) of Conflicts of Laws § 122 comment a. Section 122's commentary identifies four factors for courts to consider in determining whether an issue relates primarily to judicial administration: (i) "whether the issue is one to which the parties are likely to have given thought in the course of entering into the transaction"; (ii) "whether the issue is one whose resolution would be likely to affect the ultimate result of the case"; (iii) "whether the precedents have tended consistently to classify the issue as 'procedural' or 'substantive' for choice-of-law purposes"; and (iv) "whether an effort to apply the rules of the judicial administration of another state would impose an undue burden upon the forum." Restatement (Second) of Conflicts of Laws § 122, comment a.

The Court concludes that all four factors weigh in favor of applying Oklahoma's offer-of-judgment statute. First, the parties did not give thought to the issue of attorney's fees when drafting the Merger Agreement. While the Merger Agreement's governing law section instructs that Oklahoma law is the default law, it does not address specifically the issue of attorney's fees. Because the parties did not "shape[] their actions with reference to the local law of a certain state" with respect to attorney's fees, Oklahoma's laws should apply to attorney's fees. Restatement (Second) of Conflicts of Laws § 122, comment a. Second, resolution of the attorney's fees issue will not "affect the ultimate result of the case." Restatement (Second) of Conflicts of Laws § 122 comment a. Third, although Oklahoma courts have not classified

Oklahoma's offer-of-judgment statute as procedural, a persuasive opinion by the Connecticut Court of Appeals classifies Connecticut's similar offer-of-judgment statute as procedural. <u>See</u> <u>Paine Webber Jackson and Curtis, Inc. v. Winters</u>, 22 Conn. App. at 652, 579 A.2d at 551. Finally, applying Delaware's attorney's fees law would "impose an undue burden," Restatement (Second) of Conflicts of Laws § 122 comment a, because Delaware law does not have a similar offer-of-judgment statute, <u>see</u> Tr. at 40:23-25 (Kagen), and Oklahoma adheres more strictly to the American Rule than does Delaware. <u>Compare</u> <u>Eagle Bluff, L.L.C. v. Taylor</u>, 2010 OK 47, ¶ 16, 237 P.3d at 179 ("Statutes authorizing the award of attorney's fees must be strictly construed, and exceptions to the American Rule are carved out with great caution because liberality of attorney's fees awards against the non-prevailing party have a chilling effect on open access to the courts."), with <u>William Penn P'ship v. Saliba</u>, 13 A.3d at 758 (explaining the Delaware Court of Chancery's "broad discretionary power to fashion appropriate equitable relief"). The American Law Reports further supports the Court's conclusion:

> Offer of judgment rules and statutes are normally deemed to be procedural. Thus, when an offer of judgment is made, the court will generally apply the offer of judgment rule or statute of the forum state to determine if an offer of judgment award will be made, even if another state's law governs the substantive issues of the case. Similarly, state offer of judgment rules and statutes are applied when a federal claim is brought in state court, unless the particular state's offer of judgment rule or statute would defeat a substantive federal right.

2 A.L.R. 6th 279, § 3 (2005). In sum, Oklahoma law applies to the Defendants' request for attorney's fees and costs, even though the Court previously determined that Delaware substantive law governs the Plaintiffs' breach-of-fiduciary-duty claim. It follows that the Defendants can recover their attorney's fees and costs under Oklahoma's offer-of-judgment statute.

At the August 15, 2018, hearing, the Plaintiffs argued that Oklahoma law "does not provide for the intra-issue splitting of claims to allow different law on the same claim." Tr. at 191:8-10 (Kagen). The Court explained that the choice-of-law issue is "more nuanced than just saying once we determine Delaware law applies, . . . no other aspect . . . [of] Oklahoma law [] would apply." Tr. at 94:12-14 (Court). The Court also stated that "dépeçage," which is a French term meaning that the Court may apply "different state law to different issues in a legal dispute . . . on an issue-by-issue basis," is appropriate. Tr. at 92:8-11 (Court)(citing Johnson v. Cont'l Airlines Corp., 964 F.2d at 1064). The Plaintiffs responded that "Oklahoma does not apply the law of dépeçage." Tr. at 190:6-7 (Kagen)(citing Clemmer v. Columbia Grp., Inc., 2014 WL 6808786). According to the Plaintiffs, they are arguing that they "are entitled to fees as part of [their] fiduciary duty claim; in other words, [attorney's fees are] part and parcel of the same claim." Tr. at 190:5-191:1 (Kagen). The Plaintiffs added, without citing any cases, that the Tenth Circuit has rejected the argument that Oklahoma approves of dépeçage. See Tr. at 192:1-6 (Kagen).

The Tenth Circuit has recognized the principle of "dépeçage," which it defines as "the widely approved process whereby the rules of different states are applied on the basis of the precise issue involved." Johnson v. Cont'l Airlines Corp., 964 F.2d at 1062 n.4. Similarly, in Clemmer v. Columbia Group, Inc., Judge Cauthron instructs: "'Depecage occurs where the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate the other issues. The technique permits a more nuanced handling of certain multistate situations and thus forwards the policy of aptness.'" 2014 WL 6808786, at *2 (quoting Corporacion Venezolana de Fomento v. Vintero Sales Corp.,

629 F.2d 786, 794 n.8 (2d Cir. 1980)).  In Perkins v. Chris Hunt Water Hauling Contractor, Inc., 46 F. App'x 903 (10th Cir. 2002)(unpublished), the Tenth Circuit determined that "Oklahoma has not ruled on or adopted the use of dépeçage," nor "demonstrate[d] approval of its use."  46 F. App'x at 906.   Rather, the Tenth Circuit held that "Oklahoma has adopted the significant relationship test from the Restatement (Second) of Conflict of Laws."  Perkins v. Chris Hunt Water Hauling Contractor, Inc., 46 F. App'x at 906.

In Johnson v. Continental Airlines Corp., the Tenth Circuit held that "prejudgment interest, as an integral element of compensatory damages in a personal injury case, is not subject to an independent choice of law analysis," and, thus, as in Perkins v. Chris Hunt Water Hauling Contractor, Inc., the Tenth Circuit did not apply dépeçage.  Johnson v. Continental Airlines Corp., 964 F.2d at 1064.  The district court had previously determined, and the parties agreed, that "Colorado law governs liability and Idaho law governs compensatory damages."  964 F.2d at 1060.  The remaining issue was whether Idaho law governs both compensatory damages and prejudgment interest.  See Johnson v. Continental Airlines Corp., 964 F.2d at 1063.  The Tenth Circuit stressed, however, that it does "not reject the principal of dépeçage."  964 F.2d at 1064.  The Tenth Circuit explained:

> We simply find [dépeçage's] application inappropriate in this case.  Depecage has been said to be appropriate when its application "(a) would result in the application to each issue of the rule of the state with the greatest concern in the determination of that issue, (b) would serve to effectuate the purpose of each of the rules applied, and (c) would not disappoint the expectations of the parties." . . . .  Today we hold depecage is inappropriate when used to fragment issues related to a common purpose or to legitimatize a smorgasbord approach which inures only to the benefit of the party picking and choosing.

Johnson v. Cont'l Airlines Corp., 964 F.2d at 1064 (quoting Willis L.M. Reese, Depecage: A Common Phenomenon In Choice of Law, 73 Colum. L. Rev. 58, 60 (1973)).  The Tenth Circuit concluded that, "when the court applies the law of one state to govern liability and the law of another state to govern compensatory damages, the law governing compensatory damages also governs prejudgment interest."  Johnson v. Cont'l Airlines Corp., 964 F.2d at 1064.

The Court concludes that, even though the Court previously determined that Delaware law governs the Plaintiffs' breach-of-fiduciary-duty claim, Oklahoma law governs the attorney's fees issue.  The Court disagrees with the Plaintiffs' argument that only one state's substantive law applies.  See Tr. at 52:17-19 (Kagen).    The Court noted that it already had determined "that the affirmative defenses of the defendants were governed by Oklahoma law and [] tossed them out on the basis of Oklahoma law."  Tr. at 67:7-9 (Court).  More importantly, the Plaintiffs conceded that Delaware law "only applies to effects and mechanics of the merger.  Oklahoma law applies to the other portions of the agreement."  Tr. at 67:23-25 (Kagen).  Thus, the Court concludes that the Merger Agreement dictates that Oklahoma law applies to all claims, except for those claims that implicate the Merger Agreement's provisions relating to the Merger's mechanics or effects.  As discussed above, the attorney's fees issue is not related to the Merger's mechanics or effects.  Moreover, even if the Merger Agreement does not bind the Plaintiffs, the Court concludes that Oklahoma's offer-of-judgment statute is procedural under Oklahoma's choice-of-law rules.  Finally, the breach-of-fiduciary claims and the attorney's fees issue are not "related to a common purpose," Johnson v. Cont'l Airlines Corp., 964 F.2d at 1064, and, as the Court discusses below, the Defendants' pre-litigation conduct does not justify permitting the Plaintiffs to recover attorney's fees as an element of damages under Oklahoma law.

## II.    NEITHER DELAWARE NOR OKLAHOMA LAW PERMITS THE PLAINTIFFS TO RECOVER THEIR ATTORNEY'S FEES OR COSTS.

The Court concludes that Oklahoma law applies to the Plaintiffs' attorney's fees request. Even if Oklahoma law does not apply, the Court concludes that the Plaintiffs are not entitled to attorney's fees under Delaware law, because the Defendants' conduct does not rise to the level of egregiousness. The Court also concludes that the Plaintiffs are not entitled to attorney's fees under Oklahoma law, because Oklahoma has a strong public policy against courts making new exceptions to the American Rule. Accordingly, the Court denies the Plaintiffs' Motion.

### A.    OKLAHOMA LAW APPLIES TO THE PLAINTIFFS' ATTORNEY'S FEES REQUEST.

In the Sept. 8 MOO, the Court held that "Delaware law [] governs the Plaintiffs' request for attorney's fees." Sept. 8 MOO at 4. The Court concedes that this prior ruling was erroneous. As discussed above, under the Merger Agreement, Oklahoma law governs the Defendants' attorney's fees request, because attorney's fees do not relate to the Merger's mechanics or effects. Moreover, even if the Merger does not bind the parties, Oklahoma law applies, because under Oklahoma's choice-of-law rules, the attorney's fees that the Plaintiffs request are procedural under Oklahoma's choice-of-law rules. The Tenth Circuit has held that "Oklahoma choice-of-law principles require a court to apply Oklahoma rules to procedural matters even when those principles require the application of the substantive law of another jurisdiction." Boyd Rosene, 174 F.3d at 1118. Moreover, the Supreme Court of Oklahoma has held that, "[i]n a conflict-of-law analysis[,] matters of procedure are governed by the law of the forum." Veiser v. Armstrong, 1984 OK 61, 688 P.2d at 799 n.6 (citing N. Pac. Ry. Co. v. Babcock, 154 U.S. at 194; Shimonek v. Tillman, 1931 OK 377, 1 P.2d 154). Whether an issue is substantive or

procedural for choice-of-law purposes is a state law question. See Boyd Rosene, 174 F.3d at 1118 ("[I]t is this court's responsibility to ascertain how the Oklahoma Supreme Court would decide the choice-of-law issue."). Analyzing whether an attorney's fees request is substantive or procedural under Oklahoma's choice-of-law rules, the Court noted in the Sept. 8 MOO that the "Tenth Circuit has recognized a distinction between 'loser-pays attorney's fees, that is, attorney's fees awarded to a party simply because it prevailed' and bad-faith attorney's fees, i.e., 'attorney's fees assessed for a willful violation of a court order or against a losing party who acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Sept. 8 MOO at 3 (quoting Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency, 174 F.3d at 1125-26). As the Court explained in the Sept. 8 MOO, loser-pays attorney's fees "reflect a conscious policy choice by a legislature to depart from the American rule and codify the English rule," Boyd Rosene, 174 F.3d at 1126, and they are "classified as substantive for choice-of-law purposes, Sept. MOO at 3. On the other hand, "[b]ad-faith attorney's fees . . . reflect 'a court's inherent powers, which it has discretion to exercise in the interests of justice and efficient judicial administration.'" Sept. 8 MOO at 3 (quoting Boyd Rosene, 174 F.3d at 1126). Moreover, "bad-faith attorney's fees are procedural in the choice-of-law context." See Restatement (Second) of Conflicts of Law § 122.

The Court determines that the Plaintiffs' attorney's fees request, which is based on the Defendants' pre-litigation misconduct, more closely resembles bad-faith attorney's fees than it resembles loser-pays attorney's fees. The Plaintiffs do not argue that they are the prevailing party and they do not seek attorney's fees pursuant to any statute, so their request does not resemble a loser-pays attorney's fees request. Rather, the Plaintiffs ask the Court to exercise its inherent powers to give them an equitable award of attorney's fees based on the Defendants' pre-

litigation misconduct. The Plaintiffs' attorney's fees request therefore resemble bad-faith attorney's fees awards, which are generally assessed against a "party who acted in bad faith, vexatiously, wantonly, or for oppressive reasons," and derive from "a court's inherent powers." Boyd Rosene, 174 F.3d at 1126.

In the Sept. 8 MOO, the Court held that Delaware law applies to the Plaintiffs' attorney's fees request, because, "[w]hen the [Delaware] Court of Chancery awards attorney's fees because of pre-litigation conduct, such an award is substantive." Sept. 8 MOO at 4. The Court concludes that its reasoning in the Sept. 8 MOO misses the mark. The question is not whether one party's request for attorney's fees based on the opposing party's pre-litigation misconduct is procedural or substantive under Delaware law, but rather whether such a request is procedural or substantive under Oklahoma's choice-of-law rules. The Supreme Court of Oklahoma has held that, "[i]n a conflict-of-law analysis[,] matters of procedure are governed by the law of the forum." Veiser v. Armstrong, 1984 OK 61, 688 P.2d at 799 n.6 (citing N. Pac. Ry. Co. v. Babcock, 154 U.S. at 194; Shimonek v. Tillman, 1931 OK 377, 1 P.2d 154). Oklahoma is the forum, so Oklahoma's choice-of-law rules govern. Even if Delaware's substantive law might apply to the Plaintiffs' attorney's fees request, "Oklahoma choice-of-law principles require a court to apply Oklahoma rules to procedural matters even when those principles require the application of the substantive law of another jurisdiction." Boyd Rosene, 174 F.3d at 1118 (emphasis added). Because the Court determines that the Plaintiffs' attorney's fees request is a "matter of procedure," Oklahoma law governs, and Delaware's substantive law does not apply. Veiser v. Armstrong, 1984 OK 61, 688 P.2d at 799 n.6.

The Court concludes that neither Delaware law nor Oklahoma law would allow the Plaintiff to recover attorney's fees and costs. The Plaintiffs argue that Delaware law permits the Court to award the Plaintiffs attorney's fees and costs as an equitable remedy, and that Oklahoma law would similarly permit the Court to award the Plaintiffs attorney's fees, because Oklahoma courts often look to Delaware law related to shareholder disputes. <u>See</u> Plaintiffs' Brief at 6. Because the Plaintiffs argue that Oklahoma courts would follow Delaware law, the Court first analyzes the Plaintiffs' arguments for attorney's fees under Delaware law. The Court then assesses the availability of attorney's fees under Oklahoma law.

**B.      EVEN IF OKLAHOMA LAW DOES NOT APPLY, DELAWARE LAW DOES NOT ENTITLE THE PLAINTIFFS TO ATTORNEY'S FEES, BECAUSE THE DEFENDANT'S CONDUCT WAS NOT EGREGIOUS.**

Delaware applies the American Rule, which states that "'each party is normally obligated to pay only his or her own attorneys' fees.'"  <u>Gatz Properties, LLC v. Auriga Capital Corp.</u>, 59 A.3d 1206, 1222 (Del. 2012)(quoting <u>Johnston v. Arbitrium (Cayman Islands) Handels AG</u>, 720 A.2d 542, 545 (Del. 1998)).   The Delaware Court of Chancery has identified four exceptions to the American Rule's application:

> Those special circumstances which constitute exceptions to the American Rule are limited to: 1) cases where fees are authorized by statute, 2) cases where the applicant creates a common fund or non-monetary benefit for the benefit of others, 3) cases where the underlying (pre-litigation) conduct of the losing party was so egregious as to justify an award of attorneys' fees as an element of damages, and 4) cases where the court finds that the litigation was brought in bad faith or that a party's bad faith conduct increased the costs of litigation.

<u>Arbitrium (Cayman Islands) Handels AG v. Johnston</u>, 705 A.2d at 231, <u>aff'd</u>, 720 A.2d 542 (Del. 1998).   Under <u>Arbitrium (Cayman Islands) Handels AG v. Johnston</u>'s third exception to the American Rule, courts can "assess attorneys' fees as costs in an appropriate matter although such

an award is unusual and is only made where the situation or the equities dictate that such a burden should not fall on the prevailing party." <u>Loretto Literary & Benev. Inst. v. Blue Diamond Coal Co.</u>, 444 A.2d at 260.

When a defendant breaches its fiduciary duty to the plaintiff, the defendant's pre-litigation conduct may justify an equitable attorney's fees award under Delaware law. <u>See William Penn P'ship v. Saliba</u>, 13 A.3d at 758-59 (basing an attorney's fees award on "improper prelitigation conduct attributable to the [defendants] that amounted to a violation of their fiduciary duties"). In <u>Nine Systems I</u>, the Delaware Court of Chancery reasoned that, "even where a transaction was conducted at a fair price, a finding that the transaction was not entirely fair may justify shifting certain of the plaintiffs' attorneys' fees and costs to the defendants who breached their fiduciary duties." <u>Nine Sys. I</u>, 2014 WL 4383127, at *52. An attorney's fees award is not automatic, however, even if a defendant breached its fiduciary duty to a plaintiff and the breach caused monetary damages. <u>See Weinberger v. UOP, Inc.</u>, 517 A.2d 653, 656 (Del. Ch. 1986)(reasoning that "[the defendant's] breach of fiduciary duty was not a minor or technical error. However, the fact that [the defendant] failed in its obligation to deal fairly with the minority stockholders does not, without more, warrant the unusual relief" of attorney's fees); <u>id.</u> ("To depart from the traditional rules with respect to attorneys' fees, there must be a showing of bad faith, conduct which was totally unjustified, or the like.").

In <u>Cole v. Kershaw</u>, the plaintiff challenged the entire fairness of a merger of the plaintiff's former partnership into a limited liability company in which the merger eliminated the plaintiff's partnership interest. <u>See</u> 2000 WL 1206672, at *1. The Delaware Court of Chancery held that the defendants did not meet "their burden to demonstrate that the merger was entirely

fair either as to process or price." Cole v. Kershaw, 2000 WL 1206672, at *9. The Court determined that: (i) the merger's process was unfair, because the plaintiff "did not receive notice of the merger and its elimination of his partnership interest until almost nine months after the merger became effective," and the value of the plaintiff's "partnership interest was accomplished unilaterally by self-interested parties"; and (ii) the price was unfair, because the valuation was based on two-year-old asset valuations and did not consider the assets' "future earning capacity." Cole v. Kershaw, 2000 WL 1206672, at *8. The Delaware Court of Chancery concluded that the plaintiff was entitled to an award of damages equal to the plaintiff's share of the partnership's fair value. See Cole v. Kershaw, 2000 WL 1206672, at *9. The Court also concluded, however, that although the "merger violated [the defendants'] fiduciary duty," the defendants' "conduct did not rise to the level of egregiousness required to justify fee shifting." Cole v. Kershaw, 2000 WL 1206672, at *12.

The Court concludes that the Defendants' conduct was not egregious, and thus, Delaware law does not entitle the Plaintiffs to attorney's fees. The Defendants' pre-litigation conduct is a far cry from the defendants' inequitable conduct in Cole v. Kershaw, which the Delaware Court of Chancery determined was not egregious. The Plaintiffs challenge both the involuntary cash out of their TIR, Inc. shares and the price as unfair. See April 25 MOO, 250 F. Supp. 3d at 1042. In Weinberger v. UOP, Inc., 457 A.2d 701 (Del. 1983), the Supreme Court of Delaware clarified that "the test for fairness is not a bifurcated one as between fair dealing and price. All aspects of the issue must be examined as a whole since the question is one of entire fairness." 457 A.2d at 711. Whereas the Delaware Court of Chancery held in Cole v. Kershaw that the merger's process and price were both unfair, the jury in this case determined that the Plaintiffs received a

fair price for their TIR, Inc. shares. See Special Verdict Form at 1. The Court previously concluded that the Defendants breached their fiduciary duty, because "the Defendants did not put into place sufficient safeguards protecting minority shareholder rights to meet this burden." April 25 MOO, 250 F. Supp. 3d at 868. This conclusion does not demonstrate, however, that the Defendants' breach of their fiduciary duty was so egregious that the Plaintiffs are entitled to attorney's fees. See ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC, 2013 WL 5152295, at *9 n.2 ("'The mere fact that a corporate director has breached his duty of loyalty to the corporation does not justify an award of attorneys' fees and expenses under the [egregious pre-litigation conduct] exception.'" (quoting HMG/Gourtland Props., Inc. v. Gray, 749 A.2d at 124)(alteration in ASB Allegiance Real Estate Fund)). The Court reasoned in the Reconsideration MOO that

> the Supreme Court of Delaware's admonition that the test for fairness is not a bifurcated one as between fair dealing and fair price, see Weinberger v. UOP, Inc., 457 A.2d at 711, [means] that a strong showing on one factor can compensate for a completely nonexistent showing on the other factor.

Reconsideration MOO, 264 F. Supp. 3d at 1245. While the Merger's process was not entirely fair, the Plaintiffs received a fair price for their TIR, Inc. shares. The Court further identifies no facts that drag the Defendants' conduct across the egregiousness threshold. As the Court reasoned at the August 15, 2018, hearing, this case appears to be "more of a routine or garden-variety breach-of-fiduciary claim rather than something that was unusual" or egregious. Tr. at 183:7-9 (Court).

Further, the Delaware Court of Chancery has admonished that "an award of attorneys' fees is 'unusual relief.'" Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 231

(quoting Weinberger v. UOP, Inc., 517 A.2d at 656). In Arbitrium (Cayman Islands) Handels AG v. Johnston, the plaintiffs argued that the defendants engaged in fraudulent, bad-faith conduct, such as making "undocumented, interest free loans" to themselves and "surreptitiously" converting the plaintiffs' voting stock to non-voting stock in the corporation of which one plaintiff was the majority shareholder. Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 232-33 (internal quotation marks omitted). The Delaware Court of Chancery noted that the defendants "engaged in pervasive deception" of the plaintiffs, but it ultimately concluded that the defendants' "pre-litigation underlying conduct is not sufficient to support an attorneys' fees award." Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 233-34. The Delaware Court of Chancery also concluded, however, that the defendants' "bad faith conduct" during and after the litigation "independently warrant[ed] an award of attorneys' fees." Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 237. The Defendants' pre-litigation conduct is less repugnant than the defendants' conduct in Arbitrium (Cayman Islands) Handels AG v. Johnston. The Delaware Court of Chancery reasoned that an attorney's fees award based on egregious pre-litigation conduct "is applied in only the most egregious instances of fraud or overreaching." Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 231. The Court sees no sound reason to conclude that the Defendants committed fraud or overreached, and thus the Plaintiffs are not entitled to an attorney's fees award.

The Plaintiffs argue that the Supreme Court of Delaware has affirmed attorney's fees awards in situations where "fiduciaries were found to have breached their fiduciary duty of loyalty by failing to prove that a self-dealing transaction was entirely fair, but plaintiffs were not awarded monetary damages." Plaintiffs' Motion at 7 (citing Saliba v. William Penn P'ship, 2010

- 200 -

WL 1641139, at *1, aff'd, William Penn P'ship v. Saliba, 13 A.3d 749 (Del. 2011); Nine Sys. I, 2014 WL 4383127; Nine Sys. II, 2015 WL 2265669, aff'd, Nine Sys. III, 129 A.3d 882).  The Plaintiffs argue that they are entitled to attorney's fees, because the Defendants "'violated their fiduciary obligations,'" "'were the cause of this litigation,'" and "'are the parties who properly should bear the fees and costs made necessary solely by reason of their faithless conduct.'" Plaintiffs' Motion at 8-9 (quoting William Penn P'ship v. Saliba, 13 A.3d at 759, and citing Saliba v. William Penn P'ship, 2010 WL 1641139, at *1; Nine Sys. II, 2015 WL 2265669, at *2).  The Plaintiffs note that, in Nine Systems II, the Delaware Court of Chancery "awarded attorney's fees where -- just as here -- Plaintiffs successfully proved a breach of the fiduciary duty of loyalty but received no money damages for the breach."  Plaintiffs' Motion at 9 (citing Nine Sys. II, 2015 WL 2265669, at *2).

The Plaintiffs rely primarily on Nine Systems I, Nine Systems II, and Saliba v. William Penn Partnership for the propositions that: (i) the Defendants' pre-litigation conduct meets the egregiousness threshold, and thus the Plaintiffs are entitled to an attorney's fees award; and (ii) denying an attorney's fees award to the Plaintiffs would penalize them for the Defendants' breach of their fiduciary duty and would violate Delaware's policy against penalizing plaintiffs for defendants' breach of a fiduciary duty.  See Plaintiffs' Motion at 7-9; Plaintiffs' Response at 6; Plaintiffs' Reply at 10.  The Court concludes, however, that these cases do not support the Plaintiffs' arguments.  The Court determines that the Defendants' pre-litigation was less inequitable -- and thus not egregious -- than the defendants' conduct in the cases that the Plaintiffs cite.  The Court also concludes that not awarding the Plaintiffs attorney's fees and costs does not penalize the Plaintiffs.

In <u>Nine Systems I</u>, the Delaware Court of Chancery advised that, "even where a transaction was conducted at a fair price, a finding that the transaction was not entirely fair may justify shifting certain of the plaintiffs' attorneys' fees and costs to the defendants who breached their fiduciary duties." <u>Nine Sys. I</u>, 2015 WL 2265669, at *52. The Delaware Court of Chancery noted that shifting attorney's fees "may" be appropriate, but it did not grant such an award, because "the parties did not fairly present this issue in post-trial briefing." <u>Nine Sys. I</u>, 2015 WL 2265669, at *52. The Delaware Court of Chancery thus granted the plaintiffs leave to submit a petition for attorneys' fees and costs. <u>See</u> <u>Nine Sys. I</u>, 2015 WL 2265669, at *58. Subsequently, in <u>Nine Systems II</u>, the Delaware Court of Chancery determined that the defendants breached their duty of loyalty to the plaintiffs, because the defendants "knowingly excluded from the decision-making process a director who represented a group of minority shareholders," "effected the recapitalization through a grossly inadequate process," and "sought to avoid full and fair communications with the Company's stockholders." 2015 WL 2265669, at *2. Noting that the "case [] tests the range of equity's powers," the Delaware Court of Chancery nonetheless concluded that the "broader, unusual circumstances of this case support an equitable shifting of fees." <u>Nine Sys. II</u>, 2015 WL 2265669, at *3.

The Court concludes that the Defendants' conduct is less egregious than that of the defendants in <u>Nine Systems I</u>/<u>Nine Systems II</u>. The Delaware Court of Chancery's emphasis on the case's "unusual circumstances" in <u>Nine Systems II</u> indicates that awarding attorney's fees for pre-litigation misconduct is the exception and not the rule. <u>Nine Sys. II</u>, 2015 WL 2265669, at *3. In <u>Nine Systems II</u>, the Delaware Court of Chancery observed that the "bad faith exception [to the American Rule] is limited to cases of intentional misconduct." <u>Nine Sys. II</u>,

2015 WL 2265669, at *2.  In contrast, there is no evidence that the Defendants engaged in intentional misconduct, and, thus, the Court determines that the Defendants' conduct was not egregious or exceptional.  As mentioned above, the Court views the Plaintiffs' breach-of-fiduciary-duty claim as "more of a routine or garden-variety breach-of-fiduciary claim rather than" a claim that the Defendants' pre-litigation conduct was "unusual" or egregious.  Tr. at 183:7-9 (Court).  There is no evidence that the Defendants committed fraud or made intentional misrepresentations to the Plaintiffs.

In Saliba v. William Penn Partnership, the Delaware Court of Chancery held that "the individual defendants breached their duties as fiduciaries by failing to make full and timely disclosures to plaintiffs and by manipulating the sales process related to the [partnership's sole asset] for the individual defendant's self-interested purposes."  2010 WL 1642239, at *1.  The Delaware Court of Chancery decided to award the plaintiffs attorney's fees, because it determined that "it would be unfair and inequitable to require plaintiffs to shoulder the costs incurred in demonstrating the unfairness of [the] sales process."  Saliba v. William Penn P'ship, 2010 WL 1642239, at *1.  On appeal, the Supreme Court of Delaware noted that the plaintiffs "were left without a typical damage award," because the Court of Chancery's "appraisal of the [asset] came in at a value lower than the sale price."  William Penn P'ship v. Saliba, 13 A.3d at 759.  The Supreme Court of Delaware concluded that the Court of Chancery did not abuse its discretion by awarding the plaintiffs attorney's fees, because the defendants' "prelitigation conduct rose to egregiousness," and, "[a]bsent this award," the plaintiffs "would have been penalized for bringing a successful claim against the [defendants] for breach of their fiduciary duty of loyalty."  William Penn P'ship v. Saliba, 13 A.3d at 752, 759.

The Court concludes that the Defendants' conduct was less inequitable than the defendants' egregious conduct in <u>Saliba v. William Penn Partnership</u>, because the Defendants did not intentionally manipulate any processes or act in their own self interests. While the Plaintiffs did not receive damages, this lack of remedy alone does not justify an equitable remedy of attorney's fees, because the egregious pre-litigation conduct "exception to the American rule is 'narrow' and should be applied 'in only the most egregious instances of fraud or overreaching.'" <u>HMG/Gourtland Props., Inc. v. Gray</u>, 749 A.2d at 124 (quoting <u>Boyer v. Wilmington Mats., Inc.</u>, 1999 WL 342326, at *10 (Del. Ch. May 17, 1999)). In the Reconsideration MOO, the Court explained that Defendants made some efforts to institute a fair process, but the Court concluded that the Defendants' efforts fell short of establishing fair dealing under the entire-fairness test.

> The Court understands from [its] review [of Delaware caselaw] that, under Delaware's entire-fairness standard, the Defendants typically could shift the burden for proving fair dealing under the following conditions: (i) the defendants set up a well-functioning committee of independent directors to examine and approve the merger; and (ii) a fully informed majority of the minority shareholders voted to approve the merger. <u>See</u>, <u>e.g.</u>, <u>Kahn v. Lynch Communication Systems, Inc.</u>, 638 A.2d 1110 (Del. 1994); <u>In re PNB Holding Co. Shareholder Litigation</u>, 32 Del. J. Corp. L. 654 (2006)(Strine, J.); <u>Clements v. Rogers</u>, 790 A.2d 1222 (2001)(Strine, J.). In this case, the Defendants satisfied neither criterion needed to shift the evidentiary burden. The Defendants did not form a special committee to consider the merger, nor did they schedule and hold a minority shareholder vote on the merger. Instead, the Defendants informed minority shareholders after the merger had been consummated that their shares had been "automatically canceled and extinguished," and "converted into a right to receive an amount in cash equal to $451,000" a share. Merger Agreement § 2.01(a).

> Nevertheless, as the Defendants assert in the Motion for Reconsideration, an independent committee and a minority vote are not the exclusive ways -- even if they are the standard ways -- for a corporation to ensure that procedural protections safeguard minority shareholders' rights in a self-dealing merger

transaction. The Defendants maintain that it is clear that fair process "embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained." Motion for Reconsideration at 9 (quoting Weinberger v. UOP, Inc., 457 A.2d at 711). As the Defendants understand it, these considerations extend far beyond the question whether directors employed one or more procedural devices to encompass the entire merger process. See Motion for Reconsideration at 9 (citing Kahn v. Lynch, 638 A.2d 1110, 1112-13 (Del. 1994)). Moreover, the Defendants contend, the Plaintiffs have acknowledged on the record that the specific procedural devices mentioned above are not the exclusive means to prove a fair process. See Motion for Reconsideration at 9 (citing December Tr. at 68:21-69:7 (Kagen)). The Defendants therefore conclude that the absence of these particular safeguards does not and cannot by itself justify a finding of unfair process -- much less a finding of a breach of fiduciary duty -- without consideration of fair price. See Motion for Reconsideration at 10.

The Defendants are correct that [the April 25 MOO] can be read to suggest that the only ways that corporate directors can prove fair dealing in a merger transaction is to have an independent committee or a minority shareholder vote. Fair process, as Weinberger v. UOP, Inc. states, embraces questions of (i) when the merger transaction was timed; (ii) how it was initiated; (iii) how it was structured; (iv) how it was negotiated; (v) how it was disclosed to the directors; and (vi) how directors' and shareholders' approval for the merger was obtained. See Weinberger v. UOP, Inc., 457 A.2d at 711; [Nine Sys. I], 2014 WL 4383127, at *34. The Court determines that the Defendants are not correct, however, in their assertion that what they deem to have been a bidding war for TIR, Inc. shares and an independent appraisal commissioned months before the merger transaction qualify as fair dealing even under the expansive Weinberger v. UOP, Inc. criteria. As the Court already noted multiple times in each opinion it has filed in this case, the facts pertaining to and relevant to any determination of the merger transaction's entire fairness do not encompass the bidding war and the appraisal conduct related to it. Reviewing the facts in the light most favorable to the Defendants, the Court concludes that fair dealing was not a hallmark of the merger transaction. Weinberger v. UOP, Inc. does not provide a court with an algorithm to weigh each of the six components it categorizes under fair process. The Court concludes that each component in fact points in unfairness' direction. First, TIR, Inc. initiated the merger with Cypress Energy Partners after TIR, Inc. board of directors resignations. Compare Plaintiffs' MSJ ¶ 10, at 4 (stating the fact of individual Plaintiffs' resignations from the board), with Defendants' Acquiescence MSJ ¶ 20, at 9 (stating when the SEC registration for the merger occurred). See Response to Defendants' Acquiescence MSJ ¶ 1, at 8 (not disputing the SEC registration's timing). Second, TIR, Inc. and Cypress Energy

Partners structured and negotiated the merger in a way that certain shareholder subgroups received sweeteners alongside the tender price, such as promises of lucrative future employment or the option to gross up at a later date. See [April 25 MOO, 250 F. Supp. 3d at 1035-36]. Third, TIR, Inc. did not seek minority shareholders' approval -- by vote or otherwise -- before it cancelled their shares and presented the opposed minority shareholders with a fait accompli. See Defendants' Acquiescence MSJ ¶ 34, at 10 (stating this fact)(relying on Notice to Former Shareholders of Tulsa Inspection Resources, Inc. of Shareholder Action and Appraisal Rights (dated December 11, 2013), filed April 3, 2015 (Doc. 83-27).[55] The problem with the Defendants' argument is that they do not present any evidence of procedural fairness. Despite the Defendants' argument to the contrary, a bidding war is not procedural fairness. The Defendants do not present a supporting case that says a bidding war is procedural fairness or evidence of procedural fairness. Thus, there is no evidence to create a genuine issue of material fact as to the issue of procedural fairness. Accordingly, because (i) every component points in in the direction of the absence of fair dealing; and (ii) the resulting sum axiomatically cannot point, therefore, in the direction of fair dealing, the Court concludes that the Defendants have not proven fair dealing in the merger.

Reconsideration MOO, 264 F. Supp. 3d at 1232-34. The Defendants implemented some efforts to maintain a fair process, but the Court concluded that a "bidding war for TIR, Inc. shares and an independent appraisal commissioned months before the merger transaction qualify as fair

---

[55]In the Defendants' Acquiescence MSJ, the Defendants word this fact as follows: "On December 9, 2013, Cypress and TIR exercised their statutory right to cash-out the Plaintiffs at $451,000 per share." Defendants' Acquiescence MSJ ¶ 34, at 10. The Plaintiffs purport to dispute this fact, asserting that they dispute it "to the extent it suggests that Defendants had any right to cash-out Plaintiffs for an unfair price," adding that the fact "is otherwise admitted." Response to Defendants' Acquiescence MSJ ¶ 9, at 10. The Court notes that the Plaintiffs do not contest the Defendants' assertion that the Defendants' statutory rights included cashing out the Plaintiffs, but only that these statutory rights did not also encompass the right to cash the Plaintiffs out at "an unfair price." Response to Defendants' Acquiescence MSJ ¶ 9, at 10. Whether $451,000.00 is a fair share price for TIR, Inc. shares at the time the merger was effected is a legal question rather than a factual question, or at least a fact for the jury to find -- a legal question or jury question that the Court discussed at length in its analysis of the Defendants' Acquiescence MSJ and the Plaintiffs' Estoppel MSJ in its MOO. The Court therefore reports the fact as it is undisputed.

dealing even under the expansive <u>Weinberger v. UOP, Inc.</u> criteria."  Reconsideration MOO, 264 F. Supp. 3d at 1232-33.  These efforts do not demonstrate, however, that the Defendants' conduct was egregious.  In the end, the Plaintiffs received a fair price for their TIR, Inc. shares. The only problem is that the Defendants did not arrive at that fair price using a process that is sufficiently fair under the entire-fairness test.  Although the Defendants breached their fiduciary duty, the "mere fact that a corporate director has breached his duty of loyalty to the corporation does not justify an award of attorneys' fees and expenses under the [egregious pre-litigation conduct] exception. . . .  'Otherwise, every adjudicated breach of fiduciary duty would automatically result in a fee award.'"  <u>HMG/Gourtland Props., Inc. v. Gray</u>, 749 A.2d at 124 (quoting <u>Ryan v. Tad's Enters., Inc.</u>, 709 A.2d 682, 706 (Del. Ch. 1996)).

The Court also concludes that the absence of an attorney's fees award does not penalize the Plaintiffs, because the Plaintiffs could have accepted the Defendants' offers of judgment under Oklahoma's offer-of-judgment statute, which, as the Court concludes above, applies to this case.  The Plaintiffs assert that they were "forced to pay to come into court," and that, under Delaware policy, "it would be unfair and inequitable to have plaintiffs shoulder their own litigation costs when the defendants . . . are the wrongdoers."  Tr. at 44:24-45:17 (Kagen).  The Plaintiffs were not forced to litigate, however, because they had the option of accepting the Defendants' offers of judgment.  Indeed, two of the Plaintiffs -- Buckley and Signorello -- accepted the Defendants' offers and were subsequently dismissed from the case. <u>See</u> Stipulation of Dismissal with Prejudice at 1, filed December 29, 2014 (Doc. 66).  By rejecting the Defendants' offers, the Plaintiffs took the risk that the Court would award them an amount equal to or less than the Defendants' offered price.  <u>See</u> Tr. at 222:9-12 (Court).  The

Court, therefore, will not exercise its "broad discretionary power" under Delaware law "to fashion" an "equitable" remedy that shifts the Plaintiffs' attorney's fees and costs to the Defendants. <u>William Penn P'ship v. Saliba</u>, 13 A.3d at 758 (citing <u>Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.</u>, 817 A.2d 160, 176 (Del. 2002)).

### C. OKLAHOMA LAW DOES NOT ENTITLE THE PLAINTIFFS TO ATTORNEY'S FEES, BECAUSE COURTS APPLYING OKLAHOMA LAW HAVE LESS DISCRETION THAN COURTS APPLYING DELAWARE LAW TO DEPART FROM THE AMERICAN RULE.

The Court concludes that Oklahoma law does not entitle the Plaintiffs to attorney's fees and costs for the Defendants' pre-litigation conduct. The Plaintiffs emphasize that they "have not sought fees based on Defendants' bad faith conduct in *litigation* but rather 'substantive' fees, based on Defendants' *pre-litigation* conduct." Plaintiffs' Reply at 8 (quoting Defendants' Response at 5-8)(emphasis in original). While Delaware law permits courts to award attorney's fees and costs for egregious pre-litigation conduct, <u>see</u>, <u>e.g.</u>, <u>Arbitrium (Cayman Islands) Handels AG v. Johnston</u>, 705 A.2d at 231; <u>HMG/Gourtland Props., Inc. v. Gray</u>, 749 A.2d at 124, Oklahoma law does not carve out the same equitable exception to the American Rule, <u>see</u> <u>In re Estate of Webb</u>, 2010 OK CIV APP 114, ¶ 14, 242, P.3d at 603. The Supreme Court of Oklahoma instructs:

> On the award of attorney's fees, Oklahoma follows the so-called American Rule, that is, attorney's fees are not ordinarily recoverable in the absence of a statute or an enforceable contract. <u>City Nat. Bank and Trust Co. v. Owens, Okl.</u>, 565 P.2d 4 (1977). Several exceptions exist to the general principle that each party should bear the expenses of his own legal representation. For example, the inherent equitable power of the court allows the award of attorney's fees when an opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reason. They may be awarded where a successful litigant has conferred a substantial benefit upon a class of persons and the court's shifting of the fee acts to spread the cost among the members of the benefited class. <u>Hall v.</u>

      <u>Cole</u>, 412 U.S. 1 . . . (1973); <u>State ex rel. Burk v. City of Oklahoma City, Okl.</u>,
      598 P.2d 659 (1979).

<u>Matter of Katschor's Estate</u>, 1981 OK 125, 637 P.2d at 856.  The Plaintiffs do not invoke -- and

the Court has not identified -- any statute or contractual provision that would entitle the Plaintiffs

to recover their attorney's fees and costs.  Thus, the Plaintiffs request that the Court exercise its

"equitable discretion," and award the Plaintiffs attorney's fees and costs.  Tr. at 70:24 (Kagen).

Citing the Supreme Court of Oklahoma, the Oklahoma Court of Appeals has explained, however,

that the "trial court's inherent authority to award attorney fees as a sanction for litigation

misconduct is directed only at post-filing conduct."  <u>In re Estate of Webb</u>, 2010 OK CIV APP

114, ¶ 14, 242, P.3d at 603 (citing <u>Barnes II</u>, 2004 OK 25 ¶¶ 13-16, 94 P.3d at 29-30).  <u>See</u> <u>State</u>

<u>ex rel. Tal v. City of Okla. City</u>, 2002 OK 97, ¶ 26, 61 P.3d at 247 (recognizing "the inherent

equitable authority of a trial court to award attorney fees against a party for bad faith <u>litigation</u>

<u>misconduct</u> -- <u>conduct</u> that is vexatious, wanton or engaged in for oppressive reasons")(emphasis

added).  The Supreme Court of Oklahoma has held that "[s]anctions exist to ensure the proper

functioning of the legal system and there can be no doubt that they primarily deter and punish."

<u>Cities Serv. Co. v. Gulf Oil Corp.</u>, 1999 OK 16, ¶ 8, 976 P.2d at 548.  Because sanctions are

directed at the functioning of the legal system, it follows that the Court may not exercise any

inherent authority to award the Plaintiffs attorney's fees for the Defendants' pre-litigation

misconduct under Oklahoma law.

      In <u>City National Bank</u>, the Supreme Court of Oklahoma enumerated the exceptions to the

American Rule that Oklahoma recognizes:

          The American Rule does not however serve as an absolute bar to the
      awarding of attorney fees in the absence of statute or contract.  Courts have from

common law days recognized several exceptions to the general principle that each party should bear the costs of his or her own legal representation. Courts have long recognized that attorney fees may be awarded when an opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reason, or where a successful litigant has conferred a substantial benefit upon a class of person and the court's shifting of the fees operates to spread the costs proportionately among the members of the benefited class. Additionally, courts have also recognized a "private attorney general" rationale.

City Nat. Bank, 1977 OK 86, 565 P.2d at 7 (footnotes omitted). In Barnes II, the Supreme Court of Oklahoma affirmed that there are "certain exceptions to the American Rule in Oklahoma." 2004 OK 25, ¶ 13, 94 P.3d at 29 (citing City Nat. Bank, 1977 OK 86, 565 P.2d at 8). The Supreme Court of Oklahoma recognized that, in City National Bank, it "allowed the award of attorney fees . . . for oppressive litigation conduct" by "exercising its inherent equitable power in awarding such attorney fees." Barnes II, 2004 OK 25, ¶ 13, 94 P.3d at 29. The Supreme Court of Oklahoma then distinguished the defendant's argument in Barnes II from the defendants' argument in City National Bank.

> In the case at bar, the defendant argued that there was no finding of bad faith litigation conduct in this case, as there was in *City National v. Owens*, but rather that the conduct complained of was what led to filing the lawsuit in the first place. The trial court agreed that no *City National* circumstances existed. We recently discussed the difference between bad faith litigation conduct, as in *City National*, and the situation where the conduct sanctioned was for bringing the lawsuit and defending against a motion to dismiss.
>
> . . . .
>
> The conduct complained of in the case at bar by defendant is the conduct that led to the bringing of the action. Defendant's complained-of actions in the case at bar formed the basis of the bad faith claim filed by the plaintiff, and formed the basis for the award of punitive damages in the case.

Barnes II, 2004 OK 25, ¶¶ 14-16, 94 P.3d at 29-30. In sum, "'[t]he egregious conduct which *City National* addressed was bad faith conduct during the litigation, not the conduct occurring

which gave rise to the litigation.'" Barnes II, 2004 OK 25, ¶ 19, 94 P.3d at 30 (quoting Sooner Trailer Mfg. Co. v. Gay, 1998 OK CIV APP 194, 972 P.2d 1177, 1179)(emphasis omitted). The Supreme Court of Oklahoma thus concluded that the defendant's pre-litigation conduct "was not oppressive conduct during litigation so as to trigger the trial court's inherent power to award attorneys." Barnes II, 2004 OK 25, ¶ 19, 94 P.3d at 30. Moreover, the Supreme Court of Oklahoma declined to extend the "bad faith litigation conduct exception to the American Rule" to encompass pre-litigation misconduct. Barnes II, 2004 OK 25, ¶ 19, 94 P.3d at 30.

The Plaintiffs distinguish between the attorney's fees award that the defendants sought in Barnes II, and "an award of fees based on pre-litigation conduct where, as here, such fees are a 'substantive,' inherent, 'part and parcel' [aspect] of a state law cause of action." Plaintiffs' Briefing Response at 8 (quoting Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII, 888 F.3d at 460). The Plaintiffs argue that "Oklahoma law itself permits an award of attorney's fees, even in the absence of a specific statute or contractual provision so providing, 'where a defendant has committed a tort or breach of contract causing the plaintiff to incur attorney's fees to protect her interest.'" Plaintiffs' Briefing Response at 8 (quoting Cagle v. The James St. Grp., 400 F. App'x at 354 n.3). While the Supreme Court of Oklahoma recognizes that "there are situations where a plaintiff may be able to recover attorney fees as part of his/her damages in either a contract or tort claim" for pre-litigation conduct, Barnes I, 2000 OK 55, ¶ 52, 11 P.3d at 181, the Court concludes that these situations are few and far between. In Barnes I, the Supreme Court of Oklahoma provides three examples of situations in which a plaintiff may recover attorney's fees as an "element of damages or otherwise in either an action based on

contract or tort," and the Supreme Court of Oklahoma indicates that these examples are

exhaustive. 2000 OK 55, ¶ 52, 11 P.3d at 181.

The easiest understood example of when attorney fees are recoverable as damages is where an attorney sues his client to recover a reasonable attorney fee for services rendered when the client refuses to pay. *See Wolfe v. Campbell*, 1924 OK 785, 107 Okla. 112, 230 P. 506. In such a case, when the parties properly dispute the issue as to what amount, if any, should be recovered, the issue as to what would be a reasonable attorney fee for the services rendered is an issue of fact to be determined by the jury from the evidence presented. 230 P. at 506-507. Another example of when attorney fees are properly recoverable as an item of damage is when an insurance company has a contractual duty to defend its insured from lawsuits brought by third parties against the insured, but insurer wrongfully refuses to defend, necessitating the insured to employ his own counsel to defend the third party suit(s) brought against him. *Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, 653 P.2d 907 is an illustration of this situation and involved an insurance company's wrongful refusal to defend a prior law action brought against the insured pilot by his passenger(s) after an airplane crash. 653 P.2d at 910 and 915. In other words, providing an attorney to defend claims made against the insured was part of the contractual duty of the insurance company, which was wrongfully and tortiously withheld. *See also Iowa Home Mutual Casualty Company v. Mussett*, 1959 OK 143, 342 P.2d 553, 554 *Third Syllabus* (insurer's failure to defend compensation claim within purview of worker's compensation policy issued by insurer constitutes breach of an obligation arising from an insurance contract and the insured employer may maintain an action at law against insurer to recover as an element of damages sustained by him the reasonable attorney fees incurred in defense of the compensation claim before the State Industrial Commission).

Yet another example is where the wrongful acts of the defendant have involved the plaintiff in litigation with others, or have placed him in such relation with others as to make it necessary for him to incur attorney fees to protect his interests, attorney fees being recoverable in such cases as one of the elements of damages flowing from the original wrongful act of the defendant. *Griffin v. Bredouw*, 1966 OK 226, 420 P.2d 546, 547, *Second Syllabus*. *Griffin* involved a situation where the purchasers of a completed house and lot were required to defend a lien foreclosure suit brought by a subcontractor because the vendor of the house and lot wrongfully refused to pay the subcontractor's bill for the erection of a fence -- the vendor's refusal to pay the subcontractor's bill being in violation of his contract with the purchasers. *Griffin* held the purchasers were entitled to recover as an item of damage in a subsequent suit against the vendor, the attorney fees they were compelled to expend in defending the suit by the

subcontractor.  *See also Security State Bank of Comanche v. W.R. Johnston & Co., Inc.*, 1951 OK 40, 228 P.2d 169.  <u>Other than in the above examples, attorney fees are not normally allowed -- in the absence of a contractual provision or specific statute allowing their recovery -- as an element of damage or otherwise in either an action based on contract or tort.</u>  *See Hertzel v. Weber*, 1926 OK 318, 246 P. 839.

<u>Barnes I</u>, 2000 OK 55, ¶¶ 52-53, 11 P.3d at 181 (emphasis added).

The Court concludes that the situation here is unlike the situations in <u>Wolfe v. Campbell</u>, <u>Timmons v. Royal Globe Insurance Co.</u>, and <u>Griffin v. Bredouw</u>, and, thus, the Court concludes that the Plaintiffs are not entitled to attorney's fees "as an element of damages in fashioning the broad equitable remedy for breach of the duty of loyalty."  Plaintiffs' Motion at 21.  First and most obviously, <u>Wolfe v. Campbell</u> is distinguishable, because this case does not involve an attorney suing to recover fees from a client for services rendered.  Second, the situation here is unlike that in <u>Timmons v. Royal Globe Insurance Co.</u>  There, an insurance company failed to provide an attorney to defend against claims brought against an insured, and thus the insurance company violated a contractual duty.  In contrast, here, "we are not dealing with the wrongful or tortious withholding of legal counsel in violation of contractual duty," but rather the Defendants' violation of their fiduciary duty of loyalty.  <u>Barnes I</u>, 2000 OK 55, ¶ 54, 11 P.3d at 181.  Third, <u>Griffin v. Bredouw</u> is inapplicable, because the Plaintiffs do not "claim that the conduct of the [Defendants] involved the [Plaintiffs] in litigation with others, or placed either in such relation with others as to make it necessary to incur attorney fees to protect their interests."  <u>Barnes I</u>, 2000 OK 55, ¶ 54, 11 P.3d at 182.  Although the Plaintiffs stress that the Defendants' breach of their fiduciary duty forced them to sue to protect their interests, the Court concludes above that suing was instead a choice that the Plaintiffs made, because the Plaintiffs could have accepted

the Defendants' offers of judgment. Moreover, unlike in <u>Griffin v. Bredouw</u>, the shareholder dispute here concerns soley the Plaintiffs and the Defendants, and it does not concern the Plaintiffs and some separate "litigation with others" or "relation with others." <u>Barnes I</u>, 2000 OK 55, ¶ 54, 11 P.3d at 182. <u>See</u> <u>Barnes I</u>, 2000 OK 55, ¶ 53, 11 P.3d at 181 ("[W]here the wrongful acts of the defendant have involved the plaintiff in litigation with others, or have placed him in such relation with others as to make it necessary for him to incur attorney fees to protect his interests, attorney fees [are] recoverable . . . as one of the elements of damages flowing from the original wrongful act of the defendant." (citing <u>Griffin v. Bredouw</u>, 1966 OK 226, 420 P.2d 546, 547)).

The Court construes the three situations above narrowly, and thus the Court will not twist the Plaintiffs' claims into a shape that fits within one of the three situations in which Oklahoma courts permit plaintiffs to recover attorney's fees as an element of damages. <u>See</u> <u>Barnes I</u>, 2000 OK 55, ¶¶ 52-53, 11 P.3d at 181 (citing <u>Timmons v. Royal Globe Ins. Co.</u>, 1982 OK 97, 653 P.2d 907, 910; <u>Griffin v. Bredouw</u>, 1966 OK 226, 420 P.2d 546, 547; <u>Wolfe v. Campbell</u>, 1924 OK 785, 230 P. 506, 506-07). Nor will the Court add to the very limited exceptions to the American Rule that Oklahoma courts observe. While the Plaintiffs argue that "there is no [] Oklahoma public policy barring the fees sought here," Plaintiffs' Reply at 11, the Court's reading of <u>Barnes I</u>, <u>Barnes II</u>, <u>City National Bank</u>, and <u>In re Estate of Webb</u> indicates that the opposite is true. In <u>Barnes I</u>, the Supreme Court of Oklahoma overruled <u>Brashier v. Farmers Insurance Co.</u>, 1996 OK 86, 925 P.2d 20, because <u>Brashier v. Farmers Insurance Co.</u> "mistakenly" held that Oklahoma trial courts may "allow the recovery of attorney fees as part of the common law damages [that the plaintiff] was entitled to recover on the basis such fees were

incurred or caused by the insurer's bad faith." <u>Barnes I</u>, 2000 OK 55, ¶ 51, 11 P.3d at 180. <u>See</u> <u>id.</u> ("[W]e decide that *Brashier* should be and is overruled to the extent it improperly deviated from the American Rule."). The Supreme Court of Oklahoma held that "to continue along the path seemingly charted by *Brashier* would be to undermine the firm establishment of the American Rule in Oklahoma without a solid rationale or stable foundation. It would also improperly expand those damages historically recognized as recoverable in both contract and tort cases." <u>Barnes I</u>, 2000 OK 55, ¶ 55, 11 P.3d at 182. The Court concludes that Oklahoma law generally discourages liberal interpretations of the few exceptions to the American Rule that Oklahoma law recognizes, and that Oklahoma's strict adherence to the American Rule counsels against creating new exceptions or expanding existing exceptions. Accordingly, the Court concludes that Oklahoma law does not permit the Plaintiffs to recover their attorney's fees and costs.

The Plaintiffs also argue that, because Delaware law entitles them to recover attorney's fees and costs, Oklahoma law entitles them to such relief as well, because "Oklahoma courts have long looked to decisions of the Delaware courts for the law that governs shareholder disputes." Plaintiffs' Brief at 5 (citing <u>Beard v. Love</u>, 2007 OK CIV APP 118, ¶ 29, 173 P.3d at 804; <u>Woolf v. Universal Fidelity Life Ins. Co.</u>, 1992 OK CIV APP 129, ¶ 7, 849 P.2d at 1095). The Court disagrees with the Plaintiffs' argument for two reasons. First, as discussed above, the Court concludes that Delaware law would not entitle the Plaintiffs to recover attorney's fees and costs, because the Defendants' pre-litigation conduct does not rise to a level of egregiousness that would entitle the Plaintiffs to recover attorney's fees and costs. <u>See</u> <u>William Penn P'ship v.</u> <u>Saliba</u>, 13 A.3d at 752, 759; <u>HMG/Gourtland Props., Inc. v. Gray</u>, 749 A.2d at 124; <u>Nine Sys. II,</u>

2015 WL 2265669, at *2; Boyer v. Wilmington Mats., Inc., 1999 WL 342326, at *10.  Thus, even if an Oklahoma court would apply Delaware law to determine whether the Plaintiffs are entitled to recover attorney's fees and costs, the result would be the same as it would be under Oklahoma law in this instance, i.e., the Plaintiffs would recover nothing.

Second, the Court concludes that Oklahoma courts would not follow Delaware law on attorney's fees, because Oklahoma law does not permit courts to award attorney's fees for pre-litigation conduct.  The Defendants argue that "Oklahoma is not bound to follow Delaware law and, where Delaware law conflicts with Oklahoma law, Oklahoma does not."  Defendants' Briefing Response at 4 (citing La. Mun. Police Emps.' Ret. Sys. v. McClendon, 2013 OK CIV APP 64, ¶¶ 10-11, 307 P.3d at 398).  The Defendants also note that, although Oklahoma law often follows Delaware law with respect to corporate law issues, "[w]here Delaware law conflicts with Oklahoma law, Oklahoma will not follow Delaware law on corporate matters." Tr. at 122:2-3 (DeMuro).  In Woolf v. Universal Fidelity Life Insurance Co., the Oklahoma Court of Appeals held that "the Oklahoma General Corporation Act[, 18 Okla. Stat. Ann. §§ 1001-1144,] is based upon the Delaware General Corporations Act, [Del. Code Ann. tit. 8, §§ 101-398,] and should be interpreted in accordance with Delaware decisions."  1992 OK CIV APP 129, ¶ 7, 849 P.2d at 1095.  Quoting the Supreme Court of Oklahoma, the Court of Appeals of Oklahoma noted that "'[i]t is a settled rule that when one state adopts a statute from another, it is presumed to adopt the construction placed upon that statute by the highest court of the other state.'"  Woolf v. Universal Fidelity Life Ins. Co., 1992 OK CIV APP 129, ¶ 7, 849 P.2d at 1095 (quoting Bank of the Lakes v. First State Bank, Langley, Okla., 1985 OK 81, ¶ 9, 708 P.2d 1089, 1091).  The Oklahoma Court of Appeals thus determined that Delaware decisions analyzing the

Delaware General Corporations Act are "very persuasive," and it concluded that, because the "Delaware court has rejected the discount rule, Oklahoma should follow the same rule" to calculate the value of the plaintiffs' stock. Woolf v. Universal Fidelity Life Ins. Co., 1992 OK CIV APP 129, ¶¶ 10-11, 849 P.2d at 1095 (citing Cavalier Oil Corp. v. Harnett, 564 A.2d 1137, 1145 (Del. 1989)). Similarly, Beard v. Love recognizes that the Oklahoma General Corporation Act is based on the Delaware General Corporations Act, and it therefore reasons that, "in the absence of Oklahoma authority[,] we may consult decisions from the courts of Delaware and other jurisdictions concerning derivative actions." 2007 OK CIV APP 118, ¶ 21, 173 P.3d at 802.

Here, in contrast, there is no absence of Oklahoma authority. The Supreme Court of Oklahoma is clear that "'Oklahoma follows the American Rule,'" and that "'courts are without authority to assess attorney fees in the absence of a specific statute or contract allowing for their recovery.'" Fulsom v. Fulsom, 2003 OK 96, ¶ 8, 81 P.3d at 655 (quoting State ex rel. Tal v. City of Okla. City, 2002 OK 97, ¶ 16, 61 P.3d at 243). The Supreme Court of Oklahoma is hesitant to depart from the American Rule, because awarding "attorney fees has a chilling affect on our open access to the courts guarantee" in the Constitution of the State of Oklahoma. Beard v. Richards, 1991 OK 117, 820 P.2d at 816. See Okla. Const. art. 6, § 2.

The Plaintiffs do not invoke any provisions of the Oklahoma General Corporate Act as a basis for attorney's fees. Moreover, the Plaintiffs do not ask the Court to interpret an Oklahoma statute in accordance with how Delaware courts interpret an analogous statute allowing a party to recover attorney's fees. Cf. Bank of Lakes v. First State Bank, 1985 OK 81, ¶ 9, 708 P.2d at 1091 ("[W]hen one state adopts a statute from another, it is presumed to adopt the construction

placed upon that statute by the highest court of the other state."). Attorney's fees awards are equitable remedies under Delaware law. See Nine Sys. II, 2015 WL 2265669, at *3; William Penn P'ship v. Saliba, 13 A.3d at 758. As discussed above, while Delaware law permits courts to award attorney's fees and costs for egregious pre-litigation conduct, see, e.g., Arbitrium (Cayman Islands) Handels AG v. Johnston, 705 A.2d at 231; HMG/Gourtland Props., Inc. v. Gray, 749 A.2d at 124, Oklahoma law does not carve out the same equitable exception to the American Rule, see In re Estate of Webb, 2010 OK CIV APP 114, ¶ 14, 242, P.3d at 603. The Supreme Court of Oklahoma's forceful statements cautioning against departures from the American Rule, see Fulsom v. Fulsom, 2003 OK 96, ¶ 8, 81 P.3d at 655; State ex rel. Tal v. City of Okla. City, 2002 OK 97, ¶ 16, 61 P.3d at 243; Beard v. Richards, 1991 OK 117, 820 P.2d at 816, indicate that Oklahoma courts do not "look[] to decisions of the Delaware courts for the law" when deciding attorney's fees issues, Plaintiffs' Brief at 5. Because the Supreme Court of Oklahoma generally prohibits courts from awarding attorney's fees "'in the absence of a specific statute or contract allowing for their recovery,'" Fulsom v. Fulsom, 2003 OK 96, ¶ 8, 81 P.3d at 655 (quoting State ex rel. Tal v. City of Okla. City, 2002 OK 97, ¶ 16, 61 P.3d at 243), the Court concludes that Oklahoma courts do not look to Delaware courts' decisions when determining whether to award attorney's fees and costs.

**III. THE COURT WILL REDUCE THE DEFENDANTS' ATTORNEY'S FEES AWARD BY $385,841.66 AND THE DEFENDANTS' COSTS AWARD BY $261,306.01, RESULTING IN A TOTAL AWARD OF $2,043,548.60, BECAUSE THE COURT CONCLUDES THAT THE DEFENDANTS ARE NOT ENTITLED TO ATTORNEY'S FEES OR COSTS RELATED TO: (i) THE PLAINTIFFS' FEDERAL SECURITIES LAW CLAIMS, (ii) THE CLAIMS ON WHICH THE COURT DID NOT GRANT SUMMARY JUDGMENT IN THE APRIL 25 MOO; (iii) THE SANCTIONS MOTION; (iv) THE MOTION FOR RECONSIDERATION; (v) OPPOSING THE PLAINTIFFS' MOTION TO COMPEL; (vi) ONLINE LEGAL SERVICE EXPENSES; OR (vii) WORK THAT THE DEFENDANTS PERFORMED AFTER THE JURY RETURNED ITS <u>VERDICT ON SEPTEMBER 14, 2017.</u>**

After reviewing the briefings and conducting an independent review, the Court determines that the Defendants' application for attorney's fees and costs does not contain too many improper billing requests. The Court will deduct, however, some of the attorney's fees and costs that the Plaintiffs challenge as being unreasonable. As for attorney's fees, the Plaintiffs do not conduct a line-by-line inquiry of the Fees and Expenses' hourly time entries. Instead, the Plaintiffs argue that several of the Defendants' motions -- which the Court discusses below -- were baseless and thus attorney's fees related to such motions are unreasonable. <u>See</u> Plaintiffs' Supplemental Response at 2. The Plaintiffs calculate the amount of attorney's fees related to each prior motion or matter by totaling the time entries in the Fees and Expenses' monthly reports for each matter. <u>See</u> Plaintiffs' Supplemental Response at 10. As for litigation costs, the Plaintiffs challenge that the Defendants are not entitled to costs for online legal services, such as Westlaw. <u>See</u> Plaintiffs' Supplemental Response at 16-17. The Court concludes that the Defendants' requests for attorney's fees for some, but not all, of the challenged matters are unreasonable, and that the Defendants' request for costs for online legal services is unreasonable. The Court also concludes that the Defendants are not entitled to

attorney's fees and costs for work performed after the jury returned its verdict on September 14, 2017. After accounting for the Plaintiffs' proposed deductions of which the Court approves and deducting attorney's fees and costs for work performed after the jury returned its verdict, the Court concludes that the Defendants are entitled to $2,043,548.60 in attorney's fees and costs.

The Plaintiffs argue that "the Court should not grant Defendants the fees and costs they request, because those fees and costs are unreasonable." Plaintiffs' Supplemental Response at 2. The Plaintiffs assert that "it is the Defendants' burden to prove the reasonable fees to which they are entitled, which requires them to specify and request only those fees which can be awarded under the Oklahoma Offer of Judgment statute, and remove from their request those which are not." Plaintiffs' Supplemental Response at 3. The Plaintiffs contend that the "Defendant cannot meet that burden by simply claiming that the federal and state securities claims overlap and were inextricably intertwined." Plaintiffs' Supplemental Response at 4 (citing Parker v. Genson, 2017 OK CIV APP 59, ¶¶ 6-7, 406 P.3d at 589). According to the Plaintiffs, the "Defendants' bills and Defendants' pleadings make clear that the securities-law work Defendants incurred was related almost exclusively to Plaintiffs' federal securities law claims." Plaintiffs' Supplemental Response at 5. The Plaintiffs also argue that the Defendants' "proposed reduction of $14,657 is inaccurate," because the Defendants have "billed a total of approximately $59,000 on 51 time entries that related in whole or in part to the federal securities law claims." Plaintiffs' Supplemental Response at 6 (citing Securities Fraud Entries at 2-4, filed September 17, 2018 (Doc. 487-1)).

In addition, the Plaintiffs contend that they "should not be required to shoulder the costs of Defendants' fees and costs for numerous meritless motions made by Defendants, all of which

were denied." Plaintiffs' Supplemental Response at 9. Specifically, the Plaintiffs argue that they should not have to pay the Defendants' fees related to: (i) the Defendants' Motion to Compel, which totals $59,136.05; (ii) the Defendants' Sanctions Motion, which totals $44,844.10; (iii) the Defendants' Estoppel MSJ, which totals $62,670.10, for a motion that the Plaintiffs argue was "redundant and duplicative"; (iv) the Defendants' Motion for Reconsideration, which totals $54,453.00; and (v) responding to the Plaintiffs' Motion to Compel. See Plaintiffs' Supplemental Response at 10-14. Last, the Plaintiffs argue that the "Court should deduct from any award the $247,858.09 Defendants have requested for 'on-line legal research,' because such research is not an allowable litigation expense under Oklahoma law, and even if it were, Defendants' request for nearly $250,000 is unreasonable." Plaintiffs' Supplemental Response at 15 (footnote omitted). The Plaintiffs contend that the Supreme Court of Oklahoma has recently held "that on-line legal research costs are not properly awarded as litigation expenses, even when some litigation expenses were otherwise allowable, because '[t]hese research expenses are part of the firm's overhead.'" Plaintiffs' Supplemental Response at 16 (quoting State ex rel. Dep't of Transp. v. Cedars Grp., L.L.C., 2017 OK 12, ¶ 22, 393 P.3d at 1103, and citing Atwood v. Atwood, 2001 OK CIV APP 48, ¶ 77, 25 P.3d at 952).

The Defendants counter that, although Oklahoma law requires apportionment of fees related to fee-bearing claims and non-fee-bearing claims, "apportionment is not necessary" when "attorney time is 'inextricably intertwined' between fee-bearing and non-fee-bearing claims." Defendants' Supplemental Brief at 2 (quoting Bank of Am., N.A. v. Unknown Successors of Lewis, 2014 OK CIV APP 78, ¶ 47, 336 P.3d 1034, 1046). The Defendants assert that the "intertwined nature of Plaintiffs' claims" makes apportioning fees between federal securities law

claims and state law claims "a challenging task." Defendants' Supplemental Brief at 4. According to the Defendants, "[p]recisely the same factual allegations underlay Plaintiffs' federal and Oklahoma securities claims." Defendants' Supplemental Brief at 4. The Defendants conclude that $14,306.88 in attorney's fees and $350.00 in paralegal fees stem from "work performed solely on federal securities claims." Defendants' Supplemental Brief at 2. The Defendants further argue that they are entitled to recover the fees and expenses that they incurred while preparing the Defendants' Motion. See Defendants' Supplemental Brief at 6. The Defendants say that, after applying pre-billing and post-billing adjustments, their supplemental fees total $180,586.00 in attorney's fees and $60,655.00 in expenses for 463.2 hours of work for the period between September 21, 2017 and August 23, 2018. See Defendants' Supplemental Brief at 7-8. The Defendants note that their attorney's fees rates "are the same rates Defendants' attorneys routinely billed and collected from their other commercial clients in matters of comparable complexity during the time period for which Defendants seek fees." Defendants' Supplemental Brief at 8. The Defendants aver that the "effective hourly 'lodestar' rate for all of Defendants' requested fees is $369 for attorneys and $124 for paralegals." Defendants' Supplemental Brief at 10 (quoting Bishop v. Smith, 112 F. Supp. 3d at 1238)(footnote omitted).

The Defendants also argue that 12 Okla. Stat. Ann. § 1101.1(B)(3) entitles them to "reasonable litigation costs." Defendants' Supplemental Brief at 11. According to the Defendants, "reasonable litigation costs" include "'copy, expert witnesses, transcripts, deposition fees, on-line research, travel and meals, postage and delivery service, subpoena service, and witness fees and telephone.'" Defendants' Supplemental Brief at 11 (quoting Fuller v. Pacheco, 2001 OK CIV APP 39, ¶ 31, 21 P.3d at 81). After adjusting for their deductions, the Defendants

state that their attorney's fees total $2,258,915.68, their reasonable litigation costs total

$406,712.01, and thus their total fees and costs equal $2,665,627.69.  See Defendants'

Supplemental Brief at 14.

> **A.** **THE COURT CONCLUDES THAT: (i) DEFENDANTS' PROPOSED DEDUCTION FOR WORK ON THE FEDERAL SECURITIES LAW CLAIMS IS ADEQUATE AND REASONABLE; (ii) THE DEFENDANTS ARE ENTITLED TO ATTORNEY'S FEES FOR WORK ON THEIR MOTION TO COMPEL AND HALF OF ATTORNEY'S FEES RELATED TO THE DEFENDANTS' ESTOPPEL MSJ; AND (iii) THE DEFENDANTS ARE NOT ENTITLED TO ATTORNEY'S FEES FOR WORK ON THEIR SANCTIONS MOTION, THEIR MOTION FOR RECONSIDERATION OR FOR OPPOSING TO THE PLAINTIFFS' MOTION TO COMPEL.**

State law governs both the right to attorney's fees and costs and their calculation method.

See Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII-A, L.P., 888 F.3d at 462.  Under

Oklahoma law, "the hourly rate times the number of hours spent . . . [is] the 'lodestar' of the

court's fee determination."  State ex rel. Burk v. City of Okla. City, 1979 OK 115, 589 P.2d 659,

660-61.  See Anchondo v. Anderson, Crenshaw & Assocs., L.L.C., 616 F.3d 1098, 1102 (10th

Cir. 2010)("The lodestar, of course, is the 'the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate,' . . . which produces a presumptively reasonable

fee that may in rare circumstances be adjusted to account for the presence of special

circumstances." (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)));  Robinson v. City of

Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998)("To determine the reasonableness of a fee

request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant

is entitled to the presumption that this lodestar amount reflects a reasonable fee.")(internal

quotation marks omitted); Silver Creek Invs., Inc. v. Whitten Constr. Mgmt., Inc., 2013 OK CIV

APP 49 ¶ 18, 307 P.3d 360, 367.  "The party requesting attorney fees bears the burden of

proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case"; and (ii) "the appropriate hourly rates." United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000). See New Mexico v. Valley Meat Co., LLC, No. CIV 14-1100 JB/KBM, 2015 WL 9703255, at *22 (D.N.M. Dec. 14, 2015)(Browning, J.)(citing United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1233). Once a court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a reasonable fee." Robinson v. City of Edmond, 160 F.3d at 1281 (internal quotation marks omitted).

Here, the Plaintiffs do not object to the hourly rates that the Defendants' counsel requests. The Court therefore will use the hourly rates that the Defendants' Supplemental Brief uses: the "Defendants' attorneys' hourly billing rates ranged from $225 to $475, and the paralegal hourly rate ranged between $108 and $140." Defendants' Supplemental Brief at 9. Consequently, the "effective hourly 'lodestar' rate for all of Defendants' requested fees is $369 for attorneys and $124 for paralegals." Defendants' Supplemental Brief at 10 (footnotes omitted). The Court concludes that these hourly rates are reasonable for federal court practice in the Northern District of Oklahoma. See Bishop v. Smith, 112 F. Supp. 3d at 1252 (concluding that the plaintiff's "requested rate of $400 is reasonable"); Weiser v. Pathway Servs. Inc., Case No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *2 (N.D. Okla. Aug. 26, 2019)(Frizzell, J.)(concluding that $350.00 is a "reasonable rate in [Tulsa] for a lawyer"); Busby v. City of Tulsa, Case No. 11-CV-447-JED-JFJ, 2018 WL 7286180, at *3 (N.D. Okla. Oct. 23, 2018)(Jayne, J.)(concluding that hourly rates up to $400.00 are reasonable); Tulsa Rates Surveys at 12 (depicting hourly rates ranging from $125.00 to over $700.00 for Tulsa attorneys with over twenty-five years of

experience); Defendants' Supplemental Brief at 10. Moreover, all but one of the "paralegals for whom Defendants seek recovery . . . have between 7 and 28 years' experience," Defendants' Supplemental Brief at 10, and the hourly rate for Tulsa paralegals ranges from $60.00 to over $200.00 for paralegals with over seven years of experience, Tulsa Rate Surveys at 15. The Defendants' hourly billing rate "ranged between $108 and $140," and the hourly lodestar rate is $124.00 for paralegals, which the Court concludes is reasonable for paralegals in Tulsa. Defendants' Supplemental Brief at 9-10.

The Plaintiffs object, however, that the hours worked are not reasonable. See Plaintiffs' Supplemental Response at 2. The Plaintiffs argue that the Court should deduct fees for six categories of work: (i) work related to the Plaintiffs' federal securities law claims; (ii) work on the Motion to Compel; (iii) work on the Sanctions Motion; (iv) work on the Defendants' Estoppel MSJ; (v) work on the Motion for Reconsideration; and (vi) work responding to the Plaintiffs' Discovery Motion. See Plaintiffs' Supplemental Response at 3-14. The Plaintiffs conducted a line-by-line analysis of the Defendants' Fees and Expenses, and they calculated the total attorney's fees related to each of these motions.[56] See Plaintiffs' Supplemental Response

---

[56]The Plaintiffs calculate the amount of attorney's fees related to each prior motion or matter by totaling the time entries in the Fees and Expenses' monthly reports for each motion. See Plaintiffs' Supplemental Response at 10. The Plaintiffs admit:

> These totals include many entries for the motions indicated that Defendants have block-billed with other matters, without identifying which portion of the entries are for the motion. Some of these entries include time spent on more than one of these motions, so the fee amounts shown in this chart and its supporting exhibits overlap to some extent.

Plaintiffs' Supplemental Response at 10. The Defendants emphasize the Plaintiffs' omission, and they argue that the "Plaintiffs ask the Court to exclude many entries documenting

at 10. The Plaintiffs do not scrutinize each line of the Fees and Expenses but instead argue that awarding attorney's fees for time spent on these motions is categorically unreasonable. See Plaintiffs' Supplemental Response at 9-10. "With respect to the hours worked, the district court must exclude from the lodestar calculation 'hours that were not reasonably expended on the litigation.'" Payne v. Tri-State Careflight, LLC, No. CIV 14-1044 JB/KBM, 2016 WL 5376321, at *14 (D.N.M. Aug. 17, 2016)(Browning, J.)(quoting David C. V. Leavitt, 900 F. Supp. 1547, 1556 (D. Utah 1995)(Winder, J.)). See Hensley v. Eckerhart, 461 U.S. at 434. Moreover, Oklahoma's offer-of-judgment statute entitles the Defendants "to reasonable litigation costs and reasonable attorney fees incurred by the defendant with respect to the action," 12 Okla. Stat. Ann. § 1101.1(B)(3), and the Supreme Court of Oklahoma has acknowledged "the reasonableness requirement of an award of attorney fees under § 1101.1." Hubbard v. Kaiser-

unchallenged work along with the work Plaintiffs claim to have been unnecessary. Even if the Court believes a deduction for work on these motions is appropriate, which Defendants' dispute, Plaintiffs' proposed reduction is overstated." Defendants' Supplemental Reply at 8. The Defendants identify only two examples of overlapping reductions that the Plaintiffs propose. See Defendants' Supplemental Reply at 8 nn.9-10. The first example of overlapping deductions refers to the Defendants' time spent working on responding to the Plaintiffs' federal-law-securities claims and time spent on the Motion to Compel. As discussed below, the Court determines that the Defendants are entitled to all the attorney's fees related to the Motion to Compel and responding to the Plaintiffs' federal-securities-law claims, after accounting for the Defendants' proposed reduction. Accordingly, the Court's deductions do not reduce the challenged time entries twice, so the Court's deductions are not overstated. The Defendants' second example of overlapping deductions refers to the Defendants' time spent working on the Motion to Compel and the Defendants' Estoppel MSJ. As discussed below. the Court determines that the Defendants are entitled to all the attorney's fees related to the Motion to Compel and half of the attorney's fees related to the Defendants' Estoppel MSJ. Accordingly, the Court's deductions do not reduce the challenged time entries twice, so the Court's deductions are not overstated. The Defendants identify no further overlapping deductions, and the Court concludes that its deductions -- which, as discussed below, reduce the Defendants' attorney's fees award for work on some, but not all, of the Plaintiffs' challenged matters -- are reasonable and adequate.

<u>Francis Oil Co.</u>, 2011 OK 50, ¶ 12, 256 P.3d at 75 (citing <u>Fuller v. Pacheco</u>, 2001 OK CIV APP 39, 21 P.3d 74).

<blockquote>
1.      <b><u>The Court Will Deduct $14,306.88 in Attorney's Fees and $350.00 in Costs for the Defendants' Work Related to the Plaintiffs' Federal Securities Law Claims.</u></b>
</blockquote>

The Court concludes that the Defendants have reasonably segregated time spent working solely on the Plaintiffs' federal securities law claims and "propose[d] a deduction to their fee application attributable to work on" these claims. Defendants' Supplemental Brief at 4. In <u>Parker v. Genson</u>, the Oklahoma Court of Appeals noted that the "burden of proof lies with the party seeking attorney fees to prove entitlement and to 'document[] the appropriate hours expended and hourly rates.'" 2017 OK CIV APP 59, ¶ 7, 406 P.3d at 589 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. at 437)(alteration in <u>Parker v. Genson</u>). See <u>Prager's Paris Fashion v. Seidenbach</u>, 1925 OK 761, 242 P. 260, 263 ("[I]t was the duty of the plaintiffs, when their cause of action was predicated on an obligation providing for the recovery of reasonable attorneys' fees, to show that the amount the plaintiffs had paid or become liable to pay was the usual customary fees paid for such services, and that such amount was reasonable."). Although "apportionment [between fee-bearing and non-fee-bearing claims] is the rule," <u>Arnold Oil Props., L.L.C. v. Schlumberger Tech. Corp.</u>, 508 F. App'x 715, 716-17 (10th Cir. 2013)(unpublished), if "'a court finds all of the time devoted to the alleged non-fee-bearing claim . . . would have been necessarily incurred in connection with a claim that is fee-bearing . . . then apportionment is not required,'" <u>Parker v. Genson</u>, 2017 OK CIV APP 59, ¶ 7, 406 P.3d at 589 (quoting <u>Arnold Oil Props., L.L.C. v. Schlumberger Tech. Corp.</u>, 508 F. App'x

at 716-17)(emphasis omitted).  See Transpower Constrs. v. Grand River Dam Auth., 905 F.2d

1413, 1423 (10th Cir. 1990).

Although the Defendants argue that "nearly all of the work needed to defend the federal

securities claims overlapped with, and was equally applicable to, the other claims," the Court

concludes that the Defendants have not demonstrated that the federal and state securities law

claims are so intertwined that apportionment is not required.   Instead, the Defendants'

line-by-line analysis sufficiently shows that the Defendants made a reasonable effort to segregate

the federal securities law work that did not overlap with work on other claims.  See Defendants'

Supplemental Brief at 4; Proposed Reductions to Defendants' Fee Application For Work Related

Solely to Federal Securities Law Claims at 1-2, filed August 27, 2018 (Doc. 485-1).   The

Plaintiffs aver that, although the Defendants argue that "all of their work on federal securities

claims 'overlapped with, and was equally applicable to' the state claims, the converse is equally

true."  Plaintiffs' Supplemental Response at 5 (quoting Defendants' Supplemental Brief at 4).

That the Defendants' work on other, fee-bearing claims overlaps with work on the federal

securities law claims does not preclude the Defendants from recovering attorney's fees for work

on the authorized claims.  The Plaintiffs chose to bring the claims in their Complaint, and the

"Defendants are unable to identify a single deposition, or discovery request or response, that

would not have occurred if the federal securities claims were not in the case."  Defendants'

Supplemental Brief at 4.  Furthermore, the Court determines that the Plaintiffs' federal and state

securities law claims are closely related, because both sets of claims involve similar factual

questions and common legal issues.  See Jordan v. Pugh, 425 F.3d at 827.  The Court concludes

that the Defendants' proposed reduction of $14,306.88 in attorney's fees and $350.00 in costs is

reasonable and adequately excludes attorney's fees and expenses related solely to work on the federal-securities-law claims. The Court will reduce the attorney's fees and costs by $14,356.88.

**2.     The Defendants Are Entitled to $59,136.05 for Their Work on Their Motion to Compel.**

The Plaintiffs next contend that the Defendants should not recover attorney's fees and costs for the Motion to Compel, the Sanctions Motion, the Defendants' Estoppel MSJ, and the Motion for Reconsideration -- all of which the Defendants filed -- because these motions were "meritless" and "baseless." Plaintiffs' Supplemental Response at 9. The Plaintiffs argue that the Court has the discretion to discount the Defendants' fee request for motions that were "unsuccessful" and "unreasonable." Plaintiffs' Supplemental Response at 10. There is a "'strong presumption' that the lodestar represents a 'reasonable' fee.'" City of Burlington v. Dague, 505 U.S 557, 562 (1992)(quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)). Thus, "adjustments to the lodestar figure are proper only in certain 'rare' and 'exceptional cases.'" Bywater v. United States, 670 F.3d 1221, 1229 (Fed. Cir. 2012)(quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. at 565).

First, the Court concludes that the attorney's fees related to work on the Motion to Compel are reasonable. The Defendants maintain that they requested "critical communications" to "demonstrate Plaintiffs' belief of the fair value of their TIR shares." Defendants' Supplemental Brief at 7. The Plaintiffs counter that the Motion to Compel "was denied in its entirety, because it sought documents that were clearly privileged." Plaintiffs' Supplemental Response at 11. The Plaintiffs cite Laube v. Allen, 506 F. Supp. 2d 969 (M.D. Ala.

2007)(Thompson, J.), to support their argument that the Defendants should not recover attorney's fees for the Motion to Compel. In <u>Laube v. Allen</u>, the Honorable Myron H. Thompson, United States District Judge for the United States District Court for the Northern District of Alabama, held that "the plaintiffs cannot recover fees for time spent on [their] unsuccessful motion to compel," because the fees were not "directly and reasonably incurred in proving any rights violation or in securing any form of court-ordered relief." 506 F. Supp. 2d at 982. The Court determines that <u>Laube v. Allen</u> is inapposite, because that case involved a federal statute that allowed "prevailing plaintiffs to recover attorney's fees for work recognized to be part of the *process* of enforcing the relief." 506 F. Supp. 2d at 999 (citing 42 U.S. § 1997e(d)(1)(B)(ii))(emphasis in original). In contrast, Oklahoma's offer-of-judgment statute does not contain an analogous limiting clause. It states: "If no offer of judgment or counteroffer of judgment is accepted and the judgment awarded the plaintiff is less than one or more offers of judgment, <u>the defendant shall be entitled to reasonable litigation costs and reasonable attorney fees incurred by the defendant</u> with respect to the action." 12 Okla. Stat. Ann. § 1101.1(B)(3) (emphasis added). If the Oklahoma Legislature intended to restrict recovery of attorney's fees to fees related to successful motions or motions that prove a rights violation, then it would have included such language. The Court concludes that the Oklahoma's offer-of-judgment statute contains broad language that entitles the Defendants to "reasonable litigation costs and reasonable attorney fees incurred by the defendant with respect to the action." 12 Okla. Stat. Ann. 1101.1(B)(3). Accordingly, the Court will not discount attorney's fees related to the Motion to Compel from the Defendants' attorney's fees award.

### 3. The Defendants Are Entitled to $31,335.05 for Their Work on the Defendants' Estoppel MSJ.

Next, the Court concludes that half of the attorney's fees related to work on the Defendants' Estoppel MSJ are reasonable, because the Defendants' Estoppel MSJ moved for summary judgment against the Plaintiffs on all eight claims, and the Court granted the Defendants summary judgment on four of the Plaintiffs' claims. See Plaintiffs' Supplemental Response at 12. The Plaintiffs argue that the Defendants' Estoppel MSJ "was wholly redundant and duplicative of Defendants' first, April 2015 motion for summary judgment based on acquiescence, and was equally contrary to controlling Delaware law." Plaintiffs' Supplemental Response at 12 (internal quotation marks omitted). The Defendants counter that the attorney's fees that they incurred while pursuing the Defendants' Estoppel MSJ were reasonable, because the Defendants' Estoppel MSJ: (i) "was the first and only vehicle by which Defendants raised their Oklahoma common law defenses to Plaintiffs' breach of fiduciary duty claims"; and (ii) "was the first and only vehicle by which Defendants challenged Plaintiffs' securities law claims on their merits." Defendants' Supplemental Reply at 7. In the Estoppel MSJ, the Defendants moved for summary judgment against the Plaintiffs for all eight of the Plaintiffs' claims. See Defendants' Estoppel MSJ at 5. In the April 25 MOO, the Court observed that the Defendants' Estoppel MSJ's factual section "largely duplicates" the Defendants' Acquiescence MSJ's factual section. April 25 MOO, 250 F. Supp. 3d at 1038. The Court granted the Defendants summary judgment on the Plaintiffs' federal and state securities law claims, which include four of the Plaintiffs' eight claims. See April 25 MOO, 250 F. Supp. 3d at 1042-46. The Court denied, however, the Defendants summary judgment on the Plaintiffs' first four claims,

which include the Plaintiffs' three breach-of-fiduciary-duty claims and one unjust enrichment claim. See April 25 MOO, 250 F. Supp. 3d at 1039-42. Because the Defendants' Estoppel MSJ disposed of half of the Plaintiffs' claims, the Court concludes that the Defendants' Estoppel MSJ was not "wholly redundant." Plaintiffs' Supplemental Response at 12. Because the April 25 MOO also granted the Plaintiffs summary judgment for their breach-of-fiduciary-duty claims, the Court concludes that it would be unreasonable to force the Plaintiffs to pay the entire attorney's fees for the Defendants' work related to the Defendants' Estoppel MSJ. It would be unreasonable for the Court to make the Plaintiffs pay the Defendants for countering the Plaintiffs' successful arguments that the Defendants breached their fiduciary duty. The Court thus concludes that the Defendants are entitled to recover half of the attorney's fees related to the Defendants' Estoppel MSJ. Accordingly, the Court will deduct $31,335.05 from the $62,670.10 attorney's fees request for work related to the Defendants' Estoppel MSJ.

### 4. The Defendants Are Not Entitled to Attorney's Fees for Their Work on Their Sanctions Motion.

The Court concludes that the attorney's fees related to work on the Sanctions Motion are unreasonable. Before filing the Sanctions Motion, the Defendants sent the Plaintiffs a letter, see Letter from Frederic Dorwart to Stuart Kagen (dated July 10, 2015), filed July 31, 2015 (Doc. 136-2)("July 10 Letter"), which requested that the Plaintiffs "delete all allegations" from their Complaint that allege that the Defendants effected the Merger in a "'grossly unfair and deceptive manner.'" July 10 Letter at 1 (quoting Complaint ¶ 3, at 2). In the Sept 25 Order, the Honorable Terence Kern, United States District Judge for the United States District Court for the Northern District of Oklahoma, noted that the Plaintiffs and the Defendants "were unable to

reach an agreement regarding" the allegations, and that the Plaintiffs filed their Motion to Amend, which "removes the offending allegations." Sept. 25 Order at 2. Judge Kern also states that the Defendants subsequently filed the Sanctions Motion, "which reiterates the allegations from" the July 10 Letter, but "does not acknowledge" the Plaintiffs' response to the July 10 Letter or the Motion to Amend. Sept. 25 Order at 2. Judge Kern ultimately concluded that the "Plaintiffs' willingness to make the changes requested by Defendants moots the need for any further Rule 11 investigation, and Defendants' Motion for Sanctions is therefore denied." Sept. 25 Order at 3. Although Judge Kern denied the Sanctions Motion, he did not conclude that the motion was "baseless," Plaintiffs' Supplemental Response at 11, but instead determined only that the Sanctions Motion's requests had become moot.

The Court concludes that awarding attorney's fees to the Defendants for their work on the Sanctions Motion would be unreasonable, because the Defendants do not acknowledge the Plaintiffs' response to the July 10 Letter or the Motion to Amend in their Sanctions Motion. See Sept. 25 Order at 2; Sanctions Motion at 1-15. The Plaintiffs responded to the July 10 Letter on July 25, 2015. See Letter from Stuart Kagen to Frederic Dorwart (dated July 25, 2017), filed July 31, 2015 (Doc. 137)("July 25 Letter"). Although the Plaintiffs maintain in the July 25 Letter that "[n]othing in [their] Complaint violated Rule 11," the Plaintiffs agree to file an amended complaint that "remove[s] allegations concerning false statements or omissions in the tender offer," because they want "to avoid motion practice." July 25 Letter at 3. The Plaintiffs explain:

> Nothing in Plaintiffs' Complaint violated Rule 11. . . . Nonetheless, to avoid motion practice, we have attached a proposed Amended Complaint reflecting the allegations we have agreed to amend or withdraw. Please let us

know by close of business on July 31, 2015 whether Defendants will consent to the filing of the Amended Complaint.

As that Amended Complaint makes clear, our securities fraud claims are predicated on the "forced seller" doctrine, *i.e.*, that Defendants committed fraud in acquiring control of TIR in June 2013, thereby causing Plaintiffs' loss. While we believe that the Merger Notice contained false or misleading statements, Plaintiffs' securities fraud does not depend on such allegations. We also have removed allegations concerning false statements or omissions in the tender offer.

We believe the Amended Complaint moots Defendants' proposed sanctions motion.

July 25 Letter at 3. The July 25 Letter's remainder sets out in detail the Plaintiffs' proposed amendments to their Complaint. See July 25 Letter at 3-20. In the Sanctions Motion, the Defendants argue that the Plaintiffs had "conceded" that their allegations concerning false statements "are false," and the Defendants contend that, "[p]ursuant to FRCP 11(c)(2), Plaintiffs' Counsel and Plaintiffs were given twenty-one days within which to withdraw the four false allegations and have failed to do so." Sanctions Motion at 3-5.

The problem with the Defendants' argument is that the Plaintiffs had agreed to remove the allegations. See July 25 Letter at 3. The Defendants filed the Sanctions Motion on August 4, 2015 -- ten days after the Plaintiffs drafted the July 25 Letter -- and yet the Sanctions Motion ignores the July 25 Letter and the Plaintiffs' proposed amendments to their Complaint. The Court will not award the Defendants attorney's fees for the Sanctions Motion, because the Defendants could have avoided filing the Sanctions Motion had they cooperated with the Plaintiffs, who were willing to amend their Complaint by making the Defendants' requested changes. See July 25 Letter at 3 ("Nonetheless, to avoid motion practice, we have attached a proposed Amended Complaint reflecting the allegations we have agreed to amend or

withdraw.").  The Court concludes that it would be unreasonable to award the Defendants attorney's fees for the Sanctions Motion, which became moot before the Defendants even filed it. See Sept. 25 Order at 3.  Accordingly, the Court will deduct all attorney's fees for the Defendants' work on the Sanctions Motion, which total $33,833.10.

### 5. The Defendants Are Not Entitled to Attorney's Fees for the Their Work on the Motion for Reconsideration.

The Court concludes that that the attorney's fees related to work on the Motion for Reconsideration are unreasonable.  In the Reconsideration MOO, the Court noted that a motion for reconsideration is not an appropriate vehicle

> "to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion. . . .  Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."

Reconsideration MOO, 264 F. Supp. 3d at 1214-1215 (quoting Servants of the Paraclete v. Does, 204 F.3d at 1012).  In Servants of the Paraclete v. Does, the Tenth Circuit held that "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."  204 F.3d at 1012.  The Tenth Circuit emphasized that, "[a]bsent extraordinary circumstances, . . . the basis for the second motion must not have been available at the time the first motion was filed."  Servants of the Paraclete v. Does, 204 F.3d at 1012.  Thus, a motion for reconsideration "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."  Servants of Paraclete v. Does, 204 F.3d at 1012 (citing Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991)).

The Court concludes that the Motion for Reconsideration was largely unfounded and unnecessary, and thus the Court will not award the Defendants attorney's fees for work related to the Motion for Reconsideration. See Comm'r, Immigration and Naturalization Serv. v. Jean, 496 U.S. 154, 163 (1990)("Exorbitant, unfounded, or procedurally defective fee applications -- like any other improper position that may unreasonably protract proceedings -- are matters that the district court can recognize and discount."). In the Reconsideration MOO, the Court stated:

> The Court does not identify any material in either the Motion for Reconsideration or in the hearing transcript that presents new controlling authority, new evidence, or a clear indication that the Court erred. Reference to internal citations and footnotes in the [April 25 MOO] demonstrate that the Court examined the controlling cases to which the Defendants advert. In the Defendants' recitation of the merger process' history -- even in the lengthier version which the Court repeatedly has determined is not part of the merger transaction -- the Defendants have not presented any new facts of which the Court was not advised before it issued the [April 25 MOO]. The Defendants also do not demonstrate convincingly that the Court erred in its application of the entire-fairness doctrine.

Reconsideration MOO, 264 F. Supp. 3d at 1229. Because the Motion for Reconsideration presented arguments and facts that the Defendants previously had presented, the Court concludes that the Motion for Reconsideration was inappropriate under Servants of the Paraclete v. Does. Accordingly, the Court will deduct all attorney's fees related to the Motion for Reconsideration, which total $54,453.00, from the Defendants' attorney's fees award.

### 6. The Defendants Are Not Entitled to Attorney's Fees for Responding to the Plaintiffs' Motion to Compel.

Finally, the Court concludes that the Defendants are not entitled to attorney's fees for responding to the Plaintiffs' Motion to Compel. The Plaintiffs contend that the Plaintiffs' Motion to Compel "was made necessary by Defendants' failure to produce thousands of relevant

documents, even while Defendants insisted on expediting depositions before producing said documents." Plaintiffs' Supplemental Response at 14. The Plaintiff argue that they "should not now have to bear Defendants' fees to litigate that motion, which the Court granted." Plaintiffs' Supplemental Response at 14. The Defendants counter that the "Plaintiffs' victory on the motion was narrow, related to two of seven issues raised." Defendants' Supplemental Reply at 6 (internal quotation marks). According to the Defendants, the "other five issues required no adjudication because Defendants -- who had delivered over 212,000 pages of documents to Plaintiffs in 45 days -- had already produced the information Plaintiffs sought." Defendants' Supplemental Reply at 6. The Court concludes that awarding attorney's fees for responding to the Plaintiffs' Motion to Compel would not be reasonable. First, the Court determines that the Plaintiffs should not be forced to pay attorney's fees, because the Plaintiffs' Motion to Compel was ultimately granted. See Minute Sheet, filed January 7, 2015 (Doc. 67)("Motion to Compel #47 [is] granted as set forth in the hearing."). Second, the Court determines that <u>Hensley v. Eckerhart</u> -- which involved attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 -- is instructive. In <u>Hensley v. Eckerhart</u>, the Supreme Court generalized about attorney's fees' reasonability:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . [T]he most critical factor is the degree of success obtained.

Hensley v. Eckerhart, 461 U.S. at 435-36. The Defendants' success level falls into the latter category described above, because the Court concluded in the April 25 MOO that "the Defendants are liable for breaching their duty of entire fairness, because . . . the Defendants did not put into place sufficient safeguards protecting minority shareholder rights to meet this burden." April 25 MOO, 250 F. Supp. 3d at 1046. Although Oklahoma's offer-of-judgment statute entitles the Defendants "to reasonable litigation costs and reasonable attorney fees incurred by the defendant with respect to the action," 12 Okla. Stat. Ann. § 1101.1(B)(3), the Court concludes that awarding the Defendants attorney's fees for responding to the Plaintiffs' Motion to Compel -- which was not baseless -- would not be reasonable. Accordingly, the Court will deduct from the Defendants' attorney's fees award all fees related to the Defendants' response to the Plaintiffs' Motion to Compel, which total $31,503.25.

**B.      THE COURT CONCLUDES THAT THE DEFENDANTS ARE NOT ENTITLED TO THE LITIGATION COSTS THAT THEY INCURRED THROUGH ONLINE RESEARCH.**

As for litigation costs, the Plaintiffs argue that the "Court should deduct from any award the $247,858.09 Defendants have requested for 'on-line legal research,' because such research is not an allowable litigation expense under Oklahoma law, and even if it were, Defendants' request for nearly $250,000 is unreasonable." Plaintiffs' Supplemental Response at 15 (footnote omitted). The Plaintiffs contend that the Supreme Court of Oklahoma has recently held "that on-line legal research costs are not properly awarded as litigation expenses, even when some

litigation expenses were otherwise allowable, because '[t]hese research expenses are part of the firm's overhead.'"  Plaintiffs' Supplemental Response at 16 (quoting <u>State ex rel. Dep't of Transp. v. Cedars Grp., L.L.C.</u>, 2017 OK 12, ¶ 22, 393 P.3d at 1103, and citing <u>Atwood v. Atwood</u>, 2001 OK CIV APP 48, ¶ 77, 25 P.3d at 952).  The Plaintiffs argue that "Westlaw costs should be considered part of the [the Defendants' attorneys'] firm's overhead, and the Court should deny Defendants' $247,858.09 request in its entirety."  Plaintiffs' Supplemental Response at 17.  The Plaintiffs also add that the Defendants' request for nearly $250,000.00 for Westlaw charges is "patently unreasonable," because "Westlaw offers flat monthly fees that would have permitted Defendants unlimited access to the cases and statutes at issue in this case."  Plaintiffs' Supplemental Response at 17.

The Defendants counter that their litigation costs are reasonable.  <u>See</u> Defendants' Supplemental Reply at 8.  The Defendants argue that the cases which the Plaintiffs cite are inapposite, because "neither: (i) involve the offer of judgment statute at issue here, nor (ii) contain the expansive phrase 'reasonable litigation costs' found in 12 O.S. § 1101.1B(3)."  Defendants' Supplemental Reply (quoting 12 Okla. Stat. Ann. § 1101.1B(3)).  According to the Defendants, <u>State ex rel. Department of Transportation v. Cedars Group, L.L.C.</u> has "no application outside condemnation proceedings," and <u>Atwood v. Atwood</u> involves a different Oklahoma statute under which the Oklahoma Court of Appeals held that "Westlaw fees could not be charged."  Defendants' Supplemental Reply at 9.  The Defendants argue that, unlike the statutes at issue in <u>State ex rel. Department of Transportation v. Cedars Group, L.L.C.</u> and <u>Atwood v. Atwood</u>, Oklahoma's offer-of-judgment statute "uses the term 'litigation costs,' which courts accord a broad meaning."  Defendants' Supplemental Reply at 10-11 (citing <u>BASR</u>

P'ship v. United States, 130 Fed. Cl. at 312); Miller v. Alamo, 983 F.2d at 862; Snyder v. First

Tenn. Bank, 2016 WL 423806, at *10; Blackorby v. BNSF Ry. Co., 2015 WL 5308056, at *4).

In State ex rel. Department of Transportation v. Cedars Group, L.L.C., the Supreme

Court of Oklahoma noted that, "where a party receives a jury verdict in a condemnation case in

excess of the commissioners' award[,] that party is entitled to recover costs of the jury trial based

on our interpretation of 66 O.S. §§ 55 and 56." 2017 OK 12, ¶ 19, 393 P.3d at 1103 (citing Okla.

Turnpike Auth. v. New, 1993 OK 42, ¶ 4, 853 P.2d 765, 766). The Supreme Court of Oklahoma

reasoned:

> this court held [in Oklahoma Turnpike Authority v. New that] the condemnor was
> subject to assessment of attorney, appraisal and engineering fees and costs in a
> condemnation proceeding. However, this Court held litigation expenses were not
> recoverable as a separate item because they were part of the overhead of the
> provider. The items that were disallowed included expenses for copying, mileage,
> long distance telephone calls, telefax expenses, and postage.

State ex rel. Dep't of Transp. v. Cedars Grp., L.L.C., 2017 OK 12, ¶ 21, 393 P.3d at 1103

(citations omitted). In Oklahoma Turnpike Authority v. New Life Pentecostal Church of Jenks,

1994 OK 9, 870 P.2d 762, the Supreme Court of Oklahoma reaffirmed Oklahoma Turnpike

Authority v. New's reasoning:

> [Oklahoma Turnpike Authority v. New, 1993 OK 42, 853 P.2d 765] teaches that
> in condemnation proceedings the Authority qua condemnor is subject to an
> assessment of attorney's, appraisal, and engineering fees (27 O.S. 1991 §§ 9, 11),
> expert witness fees (66 O.S. 1991 §§ 55, 57) and of court costs (66 O.S. 1991
> §§ 55, 56). But [Oklahoma Turnpike Authority v. New] rejects the allowability of
> other litigation expenses -- i.e., copying, mileage, telephone and telefax expenses,
> and postage. The latter items constitute *components of the lawyer's overhead*.

Okla. Turnpike Auth. v. New Life Pentecostal Church of Jenks, 1994 OK 9, ¶ 10, 870 P.2d

at 764 (footnotes omitted)(emphasis in original). In Atwood v. Atwood, the Court of Appeals of

Oklahoma relied on <u>Oklahoma Turnpike Authority v. New</u> and <u>Oklahoma Turnpike Authority v. New Life Pentecostal Church of Jenks</u>, held that "expenses" in 60 Okla. Stat. Ann. § 175.57 -- which gives courts "discretion" to "award costs and expenses" for litigation arising out of a trustee's alleged violation of a duty owed to the trust's beneficiary -- does not extend to "costs incurred by [the trustee's] attorneys for Westlaw and Internet and miscellaneous office supplies." <u>Atwood v. Atwood</u>, 2001 OK CIV APP 48, ¶ 77, 25 P.3d at 952 (citing <u>Wilson v. Glancy</u>, 1995 OK 141, ¶ 9, 913 P.2d 286, 292; <u>Okla. Turnpike Auth. v. New Life Pentecostal Church of Jencks</u>, 1994 OK 9, ¶¶ 3-4, 870 P.2d at 764; <u>Okla. Turnpike Auth. v. New</u>, 1993 OK 42, ¶ 10, 853 P.2d at 767). The Court of Appeals of Oklahoma reasoned that, "[u]nder those cases, these items are part of the attorney's overhead rather than 'expenses' under Section 175.57(D)." <u>Atwood v. Atwood</u>, 2001 OK CIV APP 48, ¶ 77, 25 P.3d at 952 (quoting 60 Okla. Stat. Ann. § 175.57(D)).

In <u>Fuller v. Pacheco</u>, the Court of Appeals of Oklahoma noted that neither Oklahoma's offer-of-judgment statute "nor Oklahoma case law has defined what 'reasonable litigation costs' entails." <u>Fuller v. Pacheco</u>, 2001 OK CIV APP 39, ¶ 29, 21 P.3d at 80 (quoting 12 Okla. Stat. Ann. § 1101.1). The Court of Appeals of Oklahoma thus looked to "the ways in which federal authorities have defined litigation costs," and it noted that 26 U.S.C. § 7430(c)(1) defines "reasonable litigation costs as: (1) reasonable court costs; (2) the reasonable expenses of expert witnesses; (3) 'the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case'; and (4) reasonable attorney fees." <u>Fuller v. Pacheco</u>, 2001 OK CIV APP 39, ¶¶ 29-30, 21 P.3d at 80 (quoting 26 U.S.C. § 7430(c)(1)). Moreover, the Court of Appeals of Oklahoma noted that the

Honorable Anita B. Brody, United States District Judge for the United States District Court for the Eastern District of Pennsylvania, "interpreted the phrase 'reasonable litigation costs' to include such things as 'copying, expert witnesses, transcripts, deposition fees, on-line research, travel and meals, postage and delivery services, subpoena service, and witness fees and telephone.'" Fuller v. Pacheco, 2001 OK CIV APP 39, ¶ 30, 21 P.3d at 80-81 (quoting Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 151 (E.D. Pa. 2000)(Brody, J.)). In addition, in Hebble v. Shell Wester E&P, Inc., No. CJ-1995-234L, 2010 WL 2798024 (Okla. Dist. June 28, 2010), the District Court of Oklahoma held that "reasonable litigation costs . . . include on-line research fees." Hebble v. Shell Wester E&P, Inc., 2010 WL 2798024, at *10 (citing Cullen v. Whitman Med. Corp., 197 F.R.D. at 151).

The Court concludes that awarding the Defendants litigation costs for online research expenses would be unreasonable. Although the Oklahoma Court of Appeals' reasoning in Fuller v. Pacheco offers support that reasonable litigation costs extend to online research expenses under Oklahoma's offer-of-judgment statute, the Court concludes that, based on the Supreme Court of Oklahoma's more recent holding in State ex rel. Department of Transportation v. Cedars Group, L.L.C., the Supreme Court of Oklahoma likely would determine that online research costs are part of a firm's overhead, and thus "reasonable litigation costs" in Oklahoma's offer-of-judgment statute does not encompass online research costs. 12 Okla Stat. Ann. § 1101.1(B)(3). In State ex rel. Department of Transportation v. Cedars Group, L.L.C., the Supreme Court of Oklahoma affirmed the trial court's denial of "Westlaw and research charges," because "[t]hese research expenses are part of the law firm's overhead." State ex rel. Dep't of Transp. v. Cedars Grp., L.L.C., 2017 OK 12, ¶ 21, 393 P.3d at 1103. Although the Defendants

argue that State ex rel. Department of Transportation v. Cedars Group, L.L.C. has "no application outside condemnation proceedings," Defendants' Supplemental Reply at 9, the Supreme Court of Oklahoma in that case did not limit its analysis to the condemnation proceeding context.   Indeed, the Supreme Court of Oklahoma cites to Wilson v. Glancy, a foreclosure-related case, in which the Supreme Court had held that "Westlaw research . . . is not a recoverable cost."   Wilson v. Glancy, 1995 OK 141, 913 P.2d at 292.   See State ex rel. Dep't of Transp. v. Cedars Grp., L.L.C., 2017 OK 12, ¶ 21, 393 P.3d at 1103.

The Plaintiffs argue that "Westlaw costs should be considered part of the [Defendants' attorneys'] firm's overhead, and the Court should deny Defendants' [Westlaw costs] request in its entirety."   Plaintiffs' Supplemental Response at 17.   The Defendants do not respond to the Plaintiffs' argument and thus do not deny that their counsel's monthly overhead expenses cover their monthly Westlaw expenses.   See Defendants' Supplemental Reply at 8-10.   Online legal services providers charge users using three different methods: "flat rate (users pay a fixed rate each year, no matter how much or how little they use the service); per-minute (users pay per minute of use); and transactional (users pay fixed charges per search, per citation Shepardized, etc.)."   Lynn Foster, Electronic Legal Research, Access to the Law, and Citation Form for Case Law: Comparison, Contrasts, and Suggestions for Arkansas Practitioners, 16 U. Ark. Little Rock L. Rev. 233, 245 (1994).   In particular, "Westlaw offers a multitude of subscription plans.   Some plans are based on hourly usage and database cost, while others are based on a discounted rate for specified databases.   Smaller law offices often pay a flat monthly rate for a few specified databases."   Mark Rumsey, Update: A Guide to Fee-Based U.S. Legal Research Databases, New York University Hauser Global Law School Program, https://www.nyulawglobal.org/globalex/

US_Fee-Based_Legal_Databases1.html#WestlawNext (last accessed April 2, 2020). Many law firms pay for a Westlaw subscription using a flat-rate billing plan, and the Defendants do not deny that their counsel uses a flat-rate billing plan. See Foster, 16 U. Ark. Little Rock L. Rev. at 245. The Court concludes that awarding the Defendants nearly $250,000.00 in litigation costs to reimburse Westlaw expenses would be unreasonable, because, for many law firms, Westlaw expenses now constitute a fixed cost that law firms' overhead expenses encompass.

The Defendants also argue that Oklahoma's offer-of-judgment statute "uses the term 'litigation costs,' which courts accord a broad meaning." Defendants' Supplemental Reply at 10-11 (citing BASR P'ship v. United States, 130 Fed. Cl. at 312); Miller v. Alamo, 983 F.2d at 862; Snyder v. First Tenn. Bank, 2016 WL 423806, at *10; Blackorby v. BNSF Ry. Co., 2015 WL 5308056, at *4). The Defendants' cited cases do not indicate, however, that the Supreme Court of Oklahoma interprets the phrase "reasonable litigation costs" any more broadly than it interprets "costs" in Wilson v. Glancy and State ex rel. Department of Transportation v. Cedars Group, L.L.C. Moreover, the Supreme Court of Oklahoma has held that "[s]tatutes authorizing the award of attorney's fees must be strictly construed, and exceptions to the American Rule are carved out with great caution." Eagle Bluff, L.L.C. v. Taylor, 2010 OK 47, ¶ 16, 237 P.3d at 179. See Kay v. Venezuelan Sun Oil Co., 1991 OK 16, ¶ 5, 806 P.2d 648, 650 ("Exceptions to the American Rule are narrowly defined."); Beard v. Richards, 1991 OK 117, ¶ 12, 820 P.2d 812, 816 ("[S]tatutes authorizing prevailing party attorney fees are strictly applied by this Court. . . . Exceptions to the American Rule are carved out with great caution.")(citations omitted). None of the Defendants' cited cases interprets Oklahoma's offer-of-judgment statute, nor did the Tenth Circuit or an Oklahoma court decide the Defendants' cited cases. While the

court in each of the four cases employs a broad interpretation of reasonable litigation costs, none of the four cases approved an award that reimbursed online research costs. See Miller v. Alamo, 983 F.2d at 862 (granting the plaintiffs reimbursement for costs related to travelling, mailing, photocopying, paying for paralegals, and responding to the government's opposition to attorney's fees and costs); BASR P'ship v. United States, 130 Fed. Cl. at 312 ("In this case, BASR's requested litigation costs include: court reporter fees; copying fees; travel expenses for depositions; courier costs; travel expenses for oral argument; and filing fees for notice of a Cross-Appeal to the United States Court of Federal Claims." (citations omitted)); Snyder v. First Tenn. Bank, 2016 WL 423806, at *10 n.6 (noting "the distinction between court costs and broader litigation costs, as defined" by two relevant Tennessee statutes (internal quotation marks omitted)); Blackorby v. BNSF Ry. Co., 2015 WL 5308056, at *4 (noting that 49 U.S.C. § 20109(e)'s provision entitling the prevailing party to "'litigation costs, expert witness fees and reasonable attorney fees'" is "extremely broad," and thus granting litigation costs "[t]o make the plaintiff whole" (quoting 49 U.S.C. § 20109(e))). The Court will not interpret reasonable litigation costs more broadly than the Supreme Court of Oklahoma has interpreted costs, because such a reading would contravene Oklahoma courts' strict construction of statutes that carve out exceptions to the American Rule.

Finally, the Court denies the Defendants' request for online research costs, because the Defendants' monthly fees and expenses reports lack sufficient details. The Defendants' monthly fees and expenses reports are ordered chronologically by month. See Fees and Expenses at 3-177. Although the hourly time entries are detailed, the expense section for each month states only "Westlaw -- Research" and the monthly expense total. Fees and Expenses at 4, 13,

17, 22, 30, 39, 48, 53, 60, 66, 69, 75, 80, 86, 89, 90, 96, 102, 105, 110, 116, 119, 124, 128, 132, 138, 150, 169, 177.  The Court faced a similar situation in <u>Payne v. Tri-State Careflight, LLC</u>.

> The Court will not, however, award costs for LexisNexis legal research. The Court has, to be sure, awarded online research costs in the past.  <u>See</u>, <u>e.g.</u>, <u>Lane v. Page</u>, 862 F. Supp. 2d 1182, 1206 (D.N.M. 2012)(Browning, J.)(awarding costs for LexisNexis and Westlaw research); <u>Bank of New York v. Mehner</u>, No. CIV 05-355 JB/WDS, 2005 WL 3664743, at *2 (D.N.M. Nov. 15, 2005)(Browning, J)("[T]he Court . . . finds persuasive the fact that Westlaw charges are awardable under the fee-shifting provision of 42 U.S.C. § 1988."). The Plaintiffs do not provide any information about what they researched, or for what purpose: the Fee Statement states that they incurred LexisNexis costs of $8.02 on October 16, 2014, $32.28 on January 15, 2015, $19.73 on February 10, 2015, $50.78 on June 11, 2015, and $43.19 on September 14, 2016.  <u>See</u> Fee Statement at 25.  The Supp. Fee Statement lists LexisNexis costs of $385.32 incurred on February 7, 2017.  <u>See</u> Supp. Fee Statement at 2.  There are no fee entries corresponding to those dates that might offer guidance on what they researched or for what purpose.  <u>See</u> Fee Statement at 1 (featuring November 5, 2015 as the earliest entry).  The Court cannot soundly award LexisNexis costs without knowing for what the Plaintiffs used LexisNexis.

<u>Payne v. Tri-State Careflight, LLC</u>, 278 F. Supp. 3d at 1276.[57]  The Court similarly concludes that awarding the Defendants their online research costs would be unreasonable, because the

---

[57]The Court's thinking about Westlaw and LexisNexis charges has evolved over the years as Westlaw's and Lexis' pricing structures for their products have changed.  In the old days -- and today -- no one would have thought that a lawyer could bill a client for his or her library. There was the occasional example where a client wanted a particular lawyer to represent the client, but the attorney did not know anything about the subject matter.  For example, if a really good boutique litigation firm represents a client in its litigation, the client all of a sudden has its first copyright claim, the client really wants the litigation firm to handle the copyright claim, and the law firm has never handled a copyright case, the litigation firm might ask the client to pay for a set of Nimmer on Copyright treatises, because it may never use that set of books again.  This might have applied to other specialty books and materials as well.  By and large, however, lawyers did not bill their clients for their library; a library was considered the cost of being a lawyer and part of a lawyer's overhead costs.

As for Westlaw's and LexisNexis' electronic tools, in the early stages of the technology, starting in the 1980s, firms typically charged clients for research using these search tools.  The thought was that associates doing research were more efficient doing electronic research than

Defendants "do not provide any information about what they researched, or for what purpose."

Payne v. Tri-State Careflight, LLC, 278 F. Supp. 3d at 1276. Accordingly, the Defendants are

---

manually searching through Westlaw Key Number digests and Shepardizing each case manually, so the client should pay for these electronic tools.

> Prior to online legal research an attorney could not assign the pages of a digest or reporter that were looked at to charge a particular client for the maintenance of his library. The charges for the maintenance of a law library were folded into the attorney's hourly rate as an overhead expense because it was a fixed cost. With online research attorneys can feasibly bill a client for this expense (formerly considered overhead) because it is quantifiable and identifiable to particular client. Now an attorney can charge clients for the time he spends researching *and* charge the client a specific fee attributed to online charges. This "double charge" can be justified by the fact that an attorney spends less time on the books thereby reducing billable hours.

Sarah Wise, Comment, Show Me the Money! The Recoverability of Computerized Legal Research Expenses by the Prevailing Party in the Federal Courts, 36 Capital U. L. Rev. 455, 459-60 (2007)(footnotes omitted)(emphasis in original).

As time has gone on, however, Westlaw and LexisNexis largely have replaced physical libraries for many lawyers at law firms. As discussed above, many lawyers just pay a monthly fee for unlimited Westlaw or LexisNexis research, making the double charge for time spent researching and online research costs harder to justify. See Laura Johnson, Howard Tollin, Marci Waterman, and Sarah Mills-Dirlam, Establishing Best Billing Practices Through Billing Guidelines: Fostering Trust and Transparency on Legal Costs, 39 U. Ark. Little Rock L. Rev. 1, 18 (2016)("Expenses associated with the overhead cost of maintaining a law office should not be passed on to the client because those costs are subsumed into a firm's hourly rates. Such overhead costs may include . . . the cost of subscriptions to legal research databases such as Westlaw and LexisNexis."). As commentators on online legal research recently have noted, the "trend" "is moving toward law firms absorbing research cost[s] into overhead, and savvy clients know these types of charges can be negotiated." Patrick Flanagan and Michelle Hook Dewey, Where Do We Go from Here? Transformation and Acceleration of Legal Analytics in Practice, 35 Ga. St. U. L. Rev. 1245, 1260 n.79 (2019). Even for small firms, state bars help negotiate good research packages for solo lawyers and small law firms. Overall, fewer law firms are passing online research costs onto clients. See Rachel M. Zahorsky, "Firms Wave Goodbye to Billing for Research Costs," ABA Journal (Nov. 4, 2012), https://www.abajournal.com/lawscribbler/article/firms_wave_goodbye_to_billing_for_research_costs (last accessed March 27, 2020). Thus, today, Westlaw and Lexis research costs more closely resemble a law firm's traditional overhead costs, such as the costs of maintaining a library, and the Court is less inclined to allow recovery of such costs.

not entitled to the online research costs that they incurred as part of their litigation costs award, which total $197,942.82 from October 27, 2014, to September 20, 2017.

### C. THE COURT CONCLUDES THAT THE DEFENDANTS' ADMITTED TRANSCRIPTION ERROR DOES NOT JUSTIFY REDUCING THEIR ATTORNEY'S FEES AND COSTS AWARD.

The Plaintiffs argue that, in the Defendants' Supplemental Brief, the "Defendants have apparently removed $268,404.76 of what Defendants claimed in [the Defendants' Motion] were *litigation costs*, but increased their *attorney's fee* request by that same $268,404.76." Plaintiffs' Supplemental Response at 14 (emphasis in original). According to the Plaintiffs, the "Defendants provide no explanation or valid basis for having apparently shifted $268,404.76 of erroneously-claimed costs into their attorney's fee request." Plaintiffs' Supplemental Response at 15. The Plaintiffs thus argue that, "absent a valid explanation from Defendants, . . . the Court should deduct the entire $268,404.76 from any award." Plaintiffs' Supplemental Response at 15-16. The Defendants counter that their overstatement of $268,404.76 in litigation costs -- and understatement of attorney's fees by the same amount -- is a "simple transcription error." Defendants' Supplemental Reply at 4. The Defendants explain that the "summary" in the Defendants' Motion

> mistakenly states Defendants' "Reasonable Litigation Costs" to be $614,462.14 -- $268,404.76 more than the correct amount ($346,057.38) stated in the [Fees and Expenses]. At the same time, the summary in the brief mistakenly states Defendants' requested fees as $1,809,925.29 -- $268,404.76 <u>less</u> than the correct total ($2,078,330.05) reflected in the [Fees and Expenses].

Defendants' Supplemental Reply at 4 (quoting Defendants' Motion at 8)(emphasis in Defendants' Supplemental Reply). The Defendants contend that their error "was an error in transcription only, and does not lead to a 'necessary reduction' as Plaintiffs advocate."

Defendants' Supplemental Reply at 4 (quoting Plaintiffs' Supplemental Response at 15). Because the Court determines that the Defendants provide a "valid explanation," Plaintiffs' Supplemental Response at 15, for their "transcription error," Defendants' Supplemental Reply at 4, the Court concludes that the Defendants' attorney's fees and costs award should not be reduced by $268,404.76. Accordingly, the Court determines that the requests in the Defendants' Motion -- before accounting for the Court's additional deductions -- should total $2,078,330.05 in attorney's fees and $346,057.38 in litigation costs. See Defendants' Supplemental Brief at 14; Defendants' Supplemental Reply at 4. The Court will not penalize the Defendants for this simple error.

>
**D. THE COURT CONCLUDES THAT THE DEFENDANTS ARE NOT ENTITLED TO ATTORNEY'S FEES AND COSTS THAT THEY INCURRED AFTER THE JURY RETURNED ITS VERDICT.**

The Defendants provide a table, see Defendants' Motion for Reasonable Attorney Fees and Litigation Costs -- Summary Table, filed October 5, 2018 (Doc. 488-4)("Summary Table"), summarizing their requests for attorney's fees and costs for the following three periods: (i) October 27, 2014, through September 20, 2017; (ii) September 21, 2017, through August 23, 2018; and (iii) August 24, 2018, through September 30, 2018. The Court reproduces below the Summary Table.

| Defendants' Motion for Reasonable Attorney Fees and Ligtgation Costs - Summary Table | | | | |
|---|---|---|---|---|
| | Defendants' First Motion (Doc. 459)<br><br>October 27, 2014 through September 20, 2017 | Defendants' Supplemental Brief (Doc. 485)<br><br>September 21, 2017 through August 23, 2018 | Defendants' Reply Brief<br><br>August 24 through September 30, 2018 | Total<br><br>October 27, 2014 through September 30, 2018 |
| Pre-Billing Adjustments | ($342,182.99) | ($14,053.75) | --- | ($356,236.74) |
| Post Billing Adjustments | ($221,732.25) | ($40,574.37) | ($118.75) | ($262,425.37) |
| Block Billing Adjustments | ($16,107.80) | --- | | ($16,107.80) |
| Total Deductions | ($580,023.04) | ($54,628.12) | ($118.75) | ($634,769.91) |
| Reasonable Fees Requested | $2,078,330.05 | $180,585.63 | $22,726.25 | $2,281,641.93 |
| Reasonable Litigation Costs Requested | $346,057.38 | $60,654.63 | $2,342.33 | $409,054.34 |
| Total Fees and Costs Requested | $2,424,387.43 | $241,240.26 | $25,068.58 | $2,690,696.27 |

Summary Table at 1. In the Defendants' Motion, the Defendants request attorney's fees and costs that they incurred between October 27, 2014 -- the day that the Defendants made offers of judgment to each Plaintiff -- and September 20, 2017. See Fees and Expenses at 2-177; Affidavit of Frederic Dorwart at 2-4. This request is in the Summary Table's second column. The Defendants also note in the Defendants' Motion that they "seek their attorney fees for the period following September 20, 2017 until the Court enters judgment on this Application, which additional amount will be substantiated by a supplemental filing." Defendants' Motion at 4. In the Defendants' Supplemental Brief, the Defendants "supplement and bring current Defendants' original motion to request attorney fees and expenses incurred from September 21, 2017 through August 23, 2018." Defendants' Supplemental Brief at 2. See Defendants' Supplemental Attorney's Fees I at 1. This request is in the Summary Table's third column. In the Defendants' Supplemental Reply, the Defendants request additional "attorney fees and costs from August 24,

2018 through September 30, 2018." Defendants' Supplemental Reply at 10. See Defendants'

Fees and Costs Incurred August 24-September 30, 2018 at 1-5, filed October 5, 2018

(Doc. 488-2)("Defendants' Supplemental Attorney's Fees II"); Affidavit of Frederic Dorwart

¶¶ 1-8, at 1-3 (dated October 4, 2018), filed October 5, 2018 (Doc. 488-3). This request is in the

Summary Table's fourth column.

Although the Plaintiffs do not object to post-verdict attorney's fees and costs, the Court

concludes that, under Oklahoma's offer-of-judgment statute, the Defendants are not entitled to

attorney's fees and costs that they incurred after the jury entered its verdict on September 14,

2017. See Special Verdict Form at 1. Oklahoma's offer-of-judgment statute provides:

> In the event the plaintiff rejects the offer(s) of judgment and the judgment
> awarded the plaintiff is less than the final offer of judgment, then the defendant
> filing the offer of judgment shall be entitled to recover reasonable litigation costs
> and reasonable attorney fees incurred by that defendant from the date of filing of
> the final offer of judgment until the date of the verdict.

12 Okla. Stat. Ann. § 1101.1(B)(3) (emphasis added). The Court of Appeals of Oklahoma faced

this issue in Fuller v. Pacheco. See Fuller v. Pacheco, 2001 OK CIV APP 39, ¶¶ 25-26, 21 P.3d

at 80. There, the Court of Appeals of Oklahoma determined that the trial court correctly

concluded that the defendants, Pacheco and Vickrey, were entitled to attorney's fees, because the

plaintiffs rejected the defendants' offer of judgment, which the defendants made on July 30,

1998, and the jury rendered a verdict in favor of the defendants on February 11, 1999. See Fuller

v. Pacheco, 2001 OK CIV APP 39, ¶ 25, 21 P.3d at 80. The defendants subsequently requested

attorney's fees that they incurred after February 11, 1999. See Fuller v. Pacheco, 2001 OK CIV

APP 39, ¶ 26, 21 P.3d at 80. The Oklahoma Court of Appeals rejected the post-verdict

attorney's fees request:

We disagree, however, with the amount of the attorney fees awarded by the trial court. Section 1101.1 expressly states that the defendant is only entitled to fees incurred from the date of the offer to confess judgment *until the date of the verdict*. Here, Pacheco sought fees incurred from February 12, 1999, through March 8, 1999, totaling $285. Vickrey requested attorney fees incurred from February 12, 1999, through March 10, 1999, totaling $850. Since these post-verdict attorney fees are not recoverable under section 1101.1, Pacheco's award is reduced to $13,634, and Vickrey's award is reduced to $21,680.

Fuller v. Pacheco, 2001 OK CIV APP 39, ¶ 26, 21 P.3d at 80 (emphasis in original). The Court determines that the Supreme Court of Oklahoma would agree with the Oklahoma Court of Appeals' interpretation in Fuller v. Pacheco of 12 Okla. Stat. Ann. 1101.1(B), because the Supreme Court of Oklahoma has held that "[s]tatutes authorizing the award of attorney's fees must be strictly construed, and exceptions to the American Rule are carved out with great caution." Eagle Bluff, L.L.C. v. Taylor, 2010 OK 47, ¶ 16, 237 P.3d at 179. See Kay v. Venezuelan Sun Oil Co., 1991 OK 16, ¶ 5, 806 P.2d 648, 650 ("Exceptions to the American Rule are narrowly defined."); Beard v. Richards, 1991 OK 117, ¶ 12, 820 P.2d 812, 816 ("[S]tatutes authorizing prevailing party attorney fees are strictly applied by this Court. . . . Exceptions to the American Rule are carved out with great caution.")(citations omitted). Accordingly, the Court concludes that the Defendants are not entitled to attorney's fees and costs that they incurred after September 14, 2017, because the jury entered its verdict on that day. See Special Verdict Form at 1. Between September 15, 2017, and September 20, 2017, the Defendants incurred $17,098.50 in attorney's fees and $16.23[58] in costs. See Fees and Expenses at 176-77. Between

---

[58]The Court concludes above that it will deduct online legal service expenses from the Defendants' award of reasonable litigation costs. To avoid double-deducting, the Court does not deduct the Westlaw expense for $20,897.40 on September 20, 2017, see Fees and Expenses at 177, because the Court's $197,942.82 deduction for online legal services accounts for the September 20, 2017, Westlaw expenses between August 27, 2014, and September 20, 2017. The

September 21, 2017, and August 23, 2018, the Defendants incurred $180,585.63 in attorney's fees and $60,654.63 in costs.  See Summary Table at 1.  Last, between August 24, 2018, and September 30, 2018, the Defendants incurred $22,726.25 in attorney's fees and $2,342.33 in costs.  Thus, the Court will reduce the Defendants' attorney's fees award by $220,410.38, and the Court will reduce the Defendants' costs award by $63,013.19.

E.   **THE COURT CONCLUDES THAT THE DEFENDANTS ARE ENTITLED TO $2,043,548.60 IN ATTORNEY'S FEES AND COSTS.**

The Defendants request $2,281,641.93 in attorney's fees and $409,054.34 in costs, totaling $2,690,696.27 in attorney's fees and costs.  See Defendants' Supplemental Reply at 10; Summary Table at 1.  The Court will apply several reductions to the Defendants' attorney's fees and costs award based on the Court's above conclusions.  First, the Court determines above that the Defendants' proposed reduction in attorney's fees and costs related to their work on the Plaintiffs' federal securities claims is adequate and reasonable.  The Court thus reduces the Defendants' attorney's fees award by $14,306.88 and the Defendants' costs award by $350.00 based on the Defendants' proposed reduction.  See Defendants' Supplemental Brief at 2. Second, the Court determines above that the Defendants are entitled to reasonable attorney's fees for their Motion to Compel.  The Court therefore will not reduce the Defendants' attorney's fees for their work on this motion.  Third, the Court determines above that the Defendants are entitled to half of the attorney's fees for the Defendants' Estoppel MSJ.  The Defendants request $62,670.10 in attorney's fees for the Defendants' Estoppel MSJ.  See Defs' 2d MSJ Entries

_____

Court also deducts online legal service expenses from the Defendants' award for the period between September 21, 2017, and September 30, 2018, because the $197,942.82 deduction for online legal services does not account for Westlaw expenses incurred after September 20, 2017.

at 2-4, filed September 17, 2018 (Doc. 487-5); Plaintiffs' Supplemental Response at 10. The Court thus will reduce the Defendants' attorney's fees award by $31,335.05 for this matter. Fourth, the Court determines above that the Defendants are not entitled to attorney's fees for their Sanctions Motion, their Motion for Reconsideration, and for opposing and responding to the Plaintiffs' Motion to Compel. The Defendants request: (i) $33,833.10 in attorney's fees for their Sanctions Motion, see Sanctions Motion Entries at 2-4, filed September 17, 2018 (Doc. 487-4); Plaintiffs' Supplemental Response at 10; (ii) $54,453.00 in attorney's fees for their Motion for Reconsideration, see Defs' M Reconsider Entries at 2-4, filed September 17, 2018 (Doc. 487-6); Plaintiffs' Supplemental Response at 10; and (iii) $31,503.25 in attorney's fees for opposing the Plaintiffs' Motion to Compel, see Plaintiffs' M to Compel Entries at 2-3, filed September 17, 2018 (Doc. 487-2); Plaintiffs' Supplemental Response at 10. The Court thus will reduce the Defendants' attorney's fees award by $119,789.35 for these matters. Fourth, the Court determines above that the Defendants are not entitled to litigation costs that cover their online research expenses, and the Court thus will reduce the Defendants' costs award by $197,942.82 for online research expenses incurred before September 21, 2017. Finally, the Court determines above that the Defendants are not entitled to attorney's fees and costs that they incurred after the jury returned its verdict on September 14, 2017. The Court will reduce the Defendants' attorney's fees award by $220,410.38, and the Court will reduce the Defendants' costs award by $63,013.09. The Court represents each of these deductions in the following table.

|  | Attorney's Fees | Costs |
|---|---|---|
| Defendants' Requests | $2,281,641.93 | $409,054.34 |
| | Total: $2,690,696.27 | |
| Reductions for opposing Plaintiffs' Federal Securities Law Claims | ($14,306.88) | ($350.00) |
| Reductions for Defendants' Motion to Compel | ($0.00) | ($0.00) |
| Reductions for Defendants' Estoppel MSJ | ($31,335.05) | ($0.00) |
| Reductions for Sanctions Motion | ($33,833.10) | ($0.00) |
| Reductions for Motion for Reconsideration | ($54,453.00) | ($0.00) |
| Reductions for opposing Plaintiffs' Motion to Compel | ($31,503.25) | ($0.00) |
| Reductions for Westlaw/online research expenses | ($0.00) | ($197,942.82) |
| Reductions for work between September 15, 2017, and September 20, 2017 | ($17,098.50) | ($16.23) |
| Reductions for work between September 21, 2017, and August 23, 2018 | ($180,585.63) | ($60,654.63) |
| Reductions for work between August 24, 2018, and September 30, 2018 | ($22,726.25) | ($2,342.33) |
| **Totals** | $1,895,800.27 | $147,748.33 |
| | $2,043,548.60 | |

The Court will reduce the Defendants' attorney's fees award by $385,841.66 to $1,895,800.27. The Court will reduce the Defendants' costs award by $261,306.01 to $147,748.33. The Court therefore concludes that the Defendants are entitled to $2,043,548.60 in attorney's fees and costs.

**IV.    BECAUSE THE COURT HAS RESOLVED THE ATTORNEY'S FEES ISSUES, THE COURT ENTERS JUDGMENT IN FAVOR OF THE DEFENDANTS, BUT THE COURT WILL NOT INDICATE THAT THE MERGER WAS ENTIRELY FAIR.**

The Plaintiffs argue that "entry of judgment would be premature before the Court rules on Plaintiffs' request for attorney's fees" under rules 54 and 58 of the Federal Rules of Civil Procedure.  Plaintiffs' Letter at 2.  The Plaintiffs contend that, "[a]lthough Rule 58(b)(2)(A) provides for entry of judgment when the jury returns a special verdict, that provision does not apply where, as here, the jury's verdict 'adjudicates fewer than all the claims' for relief under Rule 54(b)."  Plaintiffs' Letter at 1 (quoting Fed. R. Civ. P. 54(b)).  The Plaintiffs add that rule 58 is "'subject to Rule 54(b).'"  Plaintiffs' Letter at 2 (quoting Fed. R. Civ. P. 58(b)(2)(A)).  The Plaintiffs further argue that, because the jury's verdict is a "partial judgment," rule 58 does not apply and "entry of judgment would be premature."  Plaintiffs' Letter at 2.

In the Motion for Judgment, which the Defendants filed before either party filed motions requesting attorney's fees, the Defendants ask the Court to enter judgment on the verdict that: "(i) the Plaintiffs take nothing and (ii) the December 2013 merger was entirely fair."  Motion for Judgment at 1.  The Defendants argue that the Plaintiffs are "entitled to take nothing" and that the Defendants are "entitled to judgment," because the "jury found the fair value of the Plaintiffs' TIR, Inc. shares as of the time of the December 9, 2013 TIR merger was $451,000," which is how much the Plaintiffs received per share.  Motion for Judgment at 2.  The Defendants also argue that they are "entitled to judgment that the merger was entirely fair,"  because "fair price is the predominant inquiry in determining entire fairness."  Motion for Judgment at 2-3.  Moreover, the Defendants emphasize that, "[w]hile this Court found on summary judgment that

Defendants failed to adduce any evidence of affirmative fair process, the jury found that the Defendants proved the ultimate fairness facts -- the Plaintiffs were fully informed and the Defendants paid the Plaintiffs the fair value." Motion for Judgment at 6 (emphasis omitted).

The Plaintiffs counter that "it would be premature for the Court to enter judgment until after the Court rules on Plaintiffs' request for their attorney's fees." Judgment Response at 5. The Plaintiffs assert that rule 54(b) contains a "*limited* exception permitting courts to 'direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay.'" Judgment Response at 8 (quoting Fed. R. Civ. P. 54(b))(emphasis in original). The Plaintiffs contend that, under rule 54(b), the jury verdict is not a final order, but rather a partial order, because it "'adjudicate[s] fewer than all the claims' for relief in this case. Thus, according to the Plaintiffs, the Court cannot 'adhere[] strictly to the rule's requirement' to make the 'express determinations . . . that the [jury's verdict] is a final order.'" Judgment Response at 8 (quoting <u>Schrock v. Wyeth, Inc.</u>, 727 F.3d at 1278)(alterations in Judgment Response). The Plaintiffs further assert that the Court's decision to "reserv[e] to itself the adjudication of . . . Plaintiffs' attorney's fees and costs . . . necessarily determined that the jury's verdict does not warrant entry of a final 'judgment adjudicating all the claims and all the parties' rights and liabilities' under Rule 54(b)." Judgment Response at 10. The Plaintiffs add that "entry of judgment based solely on the jury's verdict will result in needless, piecemeal litigation -- and potential piecemeal appeals -- about whether such a partial judgment entitled Defendants to enforce their offers of judgment." Judgment Response at 12 (citing <u>St. Paul Sober Living, LLC v. Bd. Of Cty. Comm'rs, Garfield Cty, Colo.</u>, 2013 WL

5303484, at *2; <u>Radian Asset Assurance Inc. v. Coll. of the Christian Bros. of N.M.</u>, 2011 WL 10977180, at *63-64).

The Plaintiffs also argue that the Court should "deny Defendants' request to enter a judgment 'that . . . the December 2013 merger was entirely fair.'" Judgment Response at 13 (quoting Motion for Judgment at 1). The Plaintiffs note that the Court already has ruled that the Merger was not entirely fair, and that the Defendants make "the very same legal argument they made twice before, that 'fair price is the predominant inquiry in determining entire fairness.'" Judgment Response at 14 (quoting Motion for Judgment at 2-3). The Plaintiffs add that the Court, in its Reconsideration MOO, "expressly stated that it 'is not inviting a second motion to reconsider after trial.'" Judgment Response at 15 (quoting Reconsideration MOO, 264 F. Supp. 3d at 1246 n.73). The Plaintiffs assert that, although the jury found that $451,000.00 is the fair value of their TIR, Inc. shares, this finding does "not establish the entire fairness of the TIR Merger given the Court's finding of the absence of fair dealing." Judgment Response at 17.

The parties briefly discussed the Motion for Judgment at the August 15, 2018, hearing. <u>See</u> Tr. at 168:11-170:16 (Kagen, DeMuro, Court); <u>id.</u> at 235:1-14 (Court). The Plaintiffs asserted that, because the Court has not entered final judgment, "any hearing on the attorneys' fees [is] premature and unfair to take." Tr. at 168:11-12 (Kagen)(citing <u>Snyder v. Acord Corp.</u>, 2016 WL 9735141). The Plaintiffs thus "object to proceeding with [a] fee determination, . . . because it is premature and in anticipation of judgment that has not yet even been entered." Tr. at 169:9-13 (Kagen). The Defendants averred that the Court "has the discretion to roll it all up into one ball, enter judgment, award fees, and at the same time, hear the motions in any order it chooses to do." Tr. at 169:18-20 (DeMuro). The Court observed that the parties had not

discussed the Motion for Judgment in much detail, and it stated that it would enter a judgment and "issue an opinion on that series of briefing . . . and then [] issue a separate opinion on the actual attorneys' fees here." Tr. at 170:12-16 (Court). The Court explained:

> My intention is to draft an opinion that will take care of all issues . . . in the [Defendants'] corrected motion up to page 4, where it talks about the reasonableness of fees. . . . I hate to bifurcate motions but I think I probably need to do this.
>
> So I will determine the motion for judgment, I will determine the two motions here for attorneys' fees, I will determine the plaintiffs' motion for attorneys' fees, and then I will enter a judgment. I'll probably craft my own judgment, given that there wasn't an agreement on the judgment, and I'll draft that. I will enter it and then I will -- let's see. I think that will take care of 4 -- well, it will take care of portions of everything we've heard today, 457, 458, 459, 462, and I said 459, 458.
>
> Then I will in a separate opinion issue an order actually ordering the attorneys' fees with a specific amount in. That will give Mr. Kagen a chance to respond to your letter or brief telling me how you want to handle the federal securities claims.

Tr. at 235:1-14 (Court). Since the hearing, the Defendants filed the Defendants' Supplemental Brief, <u>see</u> Defendants' Supplemental Brief at 1, to which the Plaintiffs responded and the Defendants replied, <u>see</u> Plaintiffs' Supplemental Response at 1; Defendants' Supplemental Reply at 1. Because this briefing is complete, this Memorandum Opinion and Order addresses all of the briefings.

### A.    ENTERING JUDGMENT WAS NOT PROPER AFTER THE JURY RETURNED ITS VERDICT, BECAUSE THE COURT STILL HAD TO DECIDE WHETHER THE PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES AS A COMPONENT OF DAMAGES FOR THEIR BREACH-OF-FIDUCIARY DUTY CLAIMS.

The Court thought that it would be able to enter Final Judgment right after the jury returned its verdict and deal with attorney's fees later as a collateral matter.

If a merits judgment is final and appealable prior to the entry of a fee award, then the remaining fee issue must be "collateral" to the decision on the merits. Conversely, the collateral character of the fee issue establishes that an outstanding fee question does not bar recognition of a merits judgment as "final" and "appealable."

White v. N.H. Dep't of Emp't Sec., 455 U.S. 445, 452 n.14 (1982)(quoting Obin v. Dist. No. 9, Int'l Assn. of Machinists and Aerospace Workers, 651 F.2d 574, 584 (8th Cir. 1981))). See, e.g., Autorama Corp. v. Stewart, 82 F.2d 1284, 1286 (10th Cir. 1986)("[C]ourts view attorney's fees as collateral to the merits of the original case."); Copar Pumice Co., Inc. v. Morris, No. CIV 07-0079 JB/ACT, 2012 WL 2383667, at *13 (D.N.M. June 13, 2012)(Browning, J.)("[T]he Tenth Circuit has held that 'an award of attorneys fees for the case is perhaps the paradigmatic example of a collateral issue.'" (quoting McKissick v. Yuen, 618 F.3d 1177, 1196 (10th Cir. 2010)). The parties could then appeal the Final Judgment addressing their arguments' merits, and the Court and the parties could sort out attorney's fees later.

The Plaintiffs and Defendants took actions, however, that made it difficult to bring the merits to a conclusion immediately following the jury verdict. First, thirteen days after the jury returned its verdict, the Defendants filed the Motion for Judgment, which basically asks the Court to reconsider its determination that the Defendants breached their fiduciary duty, because they did not establish that the Merger was entirely fair. Compare Motion for Judgment at 1 (asking the Court to enter judgment on the jury verdict that the "December 2013 merger was entirely fair"), with Reconsideration MOO, 264 F. Supp. 3d at 1246 ("The Court's unitary conclusion, consequently, is that the Defendants did not meet their burden for proving that the

merger transaction was entirely fair.").[59]  Second, the Plaintiffs argue that their request for attorney's fees is not collateral, but rather "a component of the overall equitable remedy available to Plaintiffs as damages for Defendants' breach of their fiduciary duty of loyalty." Judgment Response at 9.  Thus, both sides made it difficult for the Court to declare the merits finished and enter Final Judgment after the jury returned its verdict.

The Court then considered a final judgment under rule 54(b) on some claims, but the Court now determines that this piecemeal procedure does not make sense.  As the Court discusses below, the remaining issues raised by the Motion for Judgment are interrelated with the issues that the Court decided in the April 25 MOO and in the Reconsideration MOO, the issues that the jury decided at trial, and the issues that the parties' motions for attorney's fees raise. Accordingly, the Court concludes that it would be improper to enter judgment on the jury verdict until it has decided all of these interrelated issues.

---

[59]In the Reconsideration MOO, the Court also addressed the Defendants' argument that their failure "to provide an independent committee, a minority shareholder vote, or other standard procedural safeguards to protect minority shareholders' rights . . . only shifts the burden to prove procedural fairness to the Defendants, not that it can be said as a matter of law that they did not provide procedural fairness."  Reconsideration MOO, 264 F. Supp. 3d at 1245 n.72.  The Court held that "the Defendants do not point to anything that could qualify as a procedural protection. . . .  Hence, not only did the Defendants have the burden of proving procedural fairness, but they also did not meet that burden of proof by creating a genuine issue of material fact on procedural fairness."  Reconsideration MOO, 264 F. Supp. 3d at 1245 n.72.  The Court concluded that the Defendants could not establish that the Merger was entirely fair, because they did not provide sufficient evidence of fair dealing.  See Reconsideration MOO, 264 F. Supp. 3d at 1246.  The Defendants now argue that they "do not [] ask the Court to revisit those issues" regarding lack of fair process.  Judgment Reply at 2.  Instead, the Defendants argue that the jury's finding that the Defendants paid the Plaintiffs a fair price "'can compensate for a completely nonexistent showing on one factor can compensate for a completely nonexistent showing on the other factor.'"  Judgment Reply at 5 (quoting Reconsideration MOO, 264 F. Supp. 3d at 1245.

Rules 54 and 58 of the Federal Rules of Civil Procedure address the process of entering judgment. Rule 58(b) provides:

(b) Entering Judgment.

(1) Without the Court's Direction. Subject to Rule 54(b) and unless the court orders otherwise, the clerk must, without awaiting the court's direction, promptly prepare, sign, and enter the judgment when:

(A) the jury returns a general verdict;

(B) the court awards only costs or a sum certain; or

(C) the court denies all relief.

(2) Court's Approval Required. Subject to Rule 54(b), the court must promptly approve the form of the judgment, which the clerk must promptly enter, when:

(A) the jury returns a special verdict or a general verdict with answers to written questions; or

(B) the court grants other relief not described in this subdivision (b).

Fed. R. Civ. P. 58(b). Rule 54(b), in turn, provides:

(b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

The Court agrees with the Plaintiffs that rule 54 applies and that rule 58 does not apply, because rule 58(b) is "[s]ubject to Rule 54(b)." Fed. R. Civ. P. 58(b). The action "presents more than one claim for relief" and "multiple parties are involved," so "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). <u>See</u> Plaintiffs' Letter at 2. As the Court discusses below, there is just reason for delay, because entering judgment after ruling on attorney's fees will prevent piecemeal litigation on appeal, and, when the Tenth Circuit receives this case, it will have the Court's reasoning on all related issues. Although the Court left "the determination of damages for the Defendants' breach of their fiduciary duty to be decided at trial," April 25 MOO, 250 F. Supp. 3d at 1049, the Plaintiffs argue that their request for attorney's fees is not collateral, but rather a component of damages for their breach-of-fiduciary-duty claims. <u>See</u> Judgment Response at 9-10 (citing <u>Auriga Capital Corp. v. Gatz Props.</u>, 40 A.3d at 882). The Court waited until after trial to decide the attorney's fees issues; the Plaintiffs' request for attorney's fees is a part of their breach-of-fiduciary-duty claims, whereas the Defendants' request for fees is collateral, but the Defendants' request to vacate the finding of breach of fiduciary duty is also a merits issue and is not collateral. Thus, determining whether the Court may enter final judgment on the jury verdict requires that the Court first decide whether the Plaintiffs are entitled to attorney's fees as a component of damages for their breach-of-fiduciary-duty claims, and whether the Defendants are entitled to finding that they did not breach their fiduciary duty to the Plaintiffs.

Entering judgment under rule 54(b) "'is only appropriate when a district court adheres strictly to the rule's requirement that a court make two express determinations.'" <u>Schrock v.</u>

Wyeth, Inc., 727 F.3d at 1278 (quoting Okla. Turnpike Auth. v. Bruner, 259 F.3d 1236, 1242 (10th Cir. 2001).  The Tenth Circuit elaborates: (i) "'the district court must determine that the order it is certifying is a final order'"; and (ii) "'the district court must determine that there is no just reason to delay review of the final order until it has conclusively ruled on all claims presented by the parties to the case.'"  Schrock v. Wyeth, Inc., 727 F.3d at 1278 (quoting Okla. Turnpike Auth. v. Bruner, 259 F.3d at 1242).

After the jury returned its verdict, the Defendants requested that the Court immediately enter judgment under rule 54, but they asked for a judgement that is not consistent with the Court's pre-trial ruling that they breached their fiduciary duty to the Plaintiffs.  See Motion for Judgment at 1.  The Court concludes that entering judgment under rule 54 was not appropriate at that time, because the Court still had to determine whether the Plaintiffs were entitled to attorney's fees as a component of damages for their breach-of-fiduciary-duty claims.  The Court has instructed: "In order to determine whether an order is 'final' a district court must first consider the separability of the adjudicated and unadjudicated claims."  Radian Asset Assur. Inc. v. Coll. of the Christian Bros. of N.M., No. CIV 09-0885 JB/DJS, 2011 WL 10977180, at *13 (D.N.M. Jan. 24, 2011)(Browning, J.).   See Jordan v. Pugh, 425 F.3d 820, 826 (10th Cir. 2005)(stating that, in considering whether an order is final, "the controlling jurisdictional question is . . . whether [the claim that has been resolved] is distinct and separable from the claims left unresolved" (quotation omitted)); Old Republic Ins. Co. v. Durango Air Serv., Inc., 283 F.3d 1222, 1225 (10th Cir.2002)(similar); Okla. Turnpike Auth. v. Bruner, 259 F.3d at 1243 (similar).  In determining whether claims are separable, courts should "consider whether the allegedly separate claims turn on the same factual questions, whether they involve common legal

issues, and whether separate recovery is possible." Jordan v. Pugh, 425 F.3d at 827. The Court

determined in the April 25 MOO that the Defendants' Merger process was not fair, see April 25

MOO, 250 F. Supp. 3d at 1048, and the Court left "the determination of damages for the

Defendants' breach of their fiduciary duty to be decided at trial," April 25 MOO, 250 F. Supp.

3d at 1049. The Court also left deciding the attorney's fees issues for after trial. See

Reconsideration MOO, 264 F. Supp. 3d at 1246. The jury then determined the TIR, Inc. shares'

fair price. See Special Verdict Form at 1. Meanwhile, the Plaintiffs' attorney's fees request

revolves, in part, around the Defendants' pre-litigation conduct, and thus the Plaintiffs'

attorney's fees request, the Court's determination of fair process, and the jury's determination of

fair price "turn on the same factual questions" and "involve common legal issues." Jordan v.

Pugh, 425 F.3d at 827. The Court concludes that the jury verdict is not a final order, because the

Court still had to determine whether the Plaintiffs are entitled to attorney's fees as a component

of damages for their breach-of-fiduciary duty claims. Accordingly, entering judgment on the

jury verdict before deciding at least the Plaintiffs' attorney's fees arguments is inappropriate

under rule 54. See Schrock v. Wyeth, Inc., 727 F.3d at 1278 (citing Okla. Turnpike Auth. v.

Bruner, 259 F.3d at 1242).

The Court also concludes that there is "'just reason to delay review of the final order until

[the Court] has conclusively ruled on all claims presented by the parties to the case.'" Schrock v.

Wyeth, Inc., 727 F.3d at 1278 (quoting Okla. Turnpike Auth. v. Bruner, 259 F.3d at 1242.

Entering judgment before deciding the Plaintiffs' attorney's fees arguments and the Defendants'

request to vacate the Court's pre-trial ruling that the Defendants breached their fiduciary duty to

the Plaintiffs would likely result in piecemeal appeals of incomplete decisions and rulings, and

thus delay is warranted.  In <u>Radian Asset Assurances Inc. v. College of the Christian Brothers of New Mexico</u>, the Court reasoned:

> In many cases -- if not most -- some claims are dismissed before trial.  If the Court certifies every claim dismissed, litigation would be brought to a halt. Unless the issue is seriously in doubt, the Court should resolve all issues before sending the case to the Court of Appeals; the district court should avoid sending issues piecemeal to the court of appeals.

<u>Radian Asset Assurance Inc. v. Coll. of the Christian Bros. of N.M.</u>, 2011 WL 10977180, at *64.

Moreover, one treatise explains: "Because of the strong federal policy against piecemeal review several courts have stated that the district court should make the express determination only in the infrequent case in which a failure to do so might have a harsh effect."  10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2659, ¶ 2 (4th ed. 2019).  Because the parties may appeal the Court's entire-fairness ruling and its rulings on attorney's fees, entering judgment after ruling on the Plaintiffs' attorney's fees arguments and the Defendants' request to vacate the finding of breach of fiduciary duty would likely "avoid sending issues piecemeal to the court of appeals."  <u>Radian Asset Assurance Inc. v. Coll. of the Christian Bros. of N.M.</u>, 2011 WL 10977180, at *64.  Accordingly, the Court denies the Defendants' request that the Court enter judgment on the jury's verdict before resolving the Plaintiffs' attorney's fees arguments and the Defendants' request to vacate the finding of breach of fiduciary duty.

**B.      THE COURT WILL ENTER JUDGMENT FOR THE DEFENDANTS THAT THE PLAINTIFFS TAKE NOTHING, BUT THE COURT WILL NOT INDICATE THAT THE MERGER WAS ENTIRELY FAIR.**

Now that the Court has resolved the Plaintiffs' attorney's fees arguments, the Court will enter judgment that the Plaintiffs take nothing, but the Court will not enter judgment that the

Merger was entirely fair. The Defendants ask that the Court enter judgment that the Plaintiffs take nothing. See Motion for Judgment at 2. The Defendants explain:

> The jury found the fair value of each of the Plaintiffs' TIR, Inc. shares as of the time of the December 9, 2013 TIR merger was $451,000. The Plaintiffs were paid and received $451,000 per share. The Plaintiffs are, thus, as the Special Verdict Form provides, entitled to take nothing by way of their claims. . . . Defendants are entitled to judgment on that verdict.

Motion for Judgment at 1. The Plaintiffs counter that the Court first should rule on the Plaintiffs' request for attorney's fees, because the Court may decide that the Plaintiffs may be entitled to attorney's fees and costs as an "equitable remedy" for the "Defendants' breach of their fiduciary of loyalty." Judgment Response at 6. The Court concludes above that the Plaintiffs are not entitled to attorney's fees. Moreover, the jury determined that the fair price of the Plaintiffs' TIR, Inc. shares is $451,000.00, which is how much consideration the Plaintiffs received per share. See Special Verdict Form at 1-2. Accordingly, the jury found that the Plaintiffs are not entitled to damages, and the Court further concludes that the Plaintiffs are not entitled to an equitable remedy. The Court thus agrees with the Defendants that they are entitled to judgment that the Plaintiffs take nothing and dismisses the Plaintiffs' unjust enrichment claim. See Amended Complaint ¶¶ 157-60, at 30.

The Defendants also request that the Court enter judgment that the "merger was entirely fair," because, under the "predominant inquiry rule,"[60] "fair price is the predominant inquiry in

---

[60]The Defendants note that the Supreme Court of Delaware has "consistently held that, although entire fairness review comprises the dual components of fair dealing and fair price, in a non-fraudulent transaction 'price may be the preponderant consideration outweighing other features of the merger.'" Kahn v. M & F Worldwide Corp., 88 A.3d 635, 644-45 (Del. 2014)(quoting Weinberger v. UOP, Inc., 457 A.2d at 711). See Motion for Judgment at 3 n.2 (citing Kahn v. M & F Worldwide Corp., 88 A.3d at 644-45; Weinberger v. UOP, Inc., 457 A.2d

determining entire fairness."  Motion for Judgment at 2.  The Defendants argue that the predominant inquiry rule applies for two reasons.  See Motion for Judgment at 3.  First, the Defendants contend that, "[b]ecause there was no fraud or wrongdoing evidenced in the merger and because the Plaintiffs were fully informed, the predominant inquiry rule is . . . applicable."  Motion for Judgment at 4.  Second, the Defendants assert that applying the predominant inquiry rule is appropriate, because, at trial, the Plaintiffs "raised and presented substantial fair process evidence in their effort to persuade the jury, by unfair process argument and evidence, that the merger price was not fair," even though the jury's only task was to determine if the Plaintiffs received a fair price for their shares.  Motion for Judgment at 4.  The Defendants conclude:  "While this Court found on summary judgment that Defendants failed to adduce any evidence of affirmative fair process, the jury found that the Defendants proved the ultimate fairness facts -- the Plaintiffs were fully informed and the Defendants paid the Plaintiffs the fair value."  Motion for Judgment at 6.

The Plaintiffs argue that the Court already has ruled that the Merger was not entirely fair and that the Defendants make "the very same legal argument they made twice before, that 'fair price is the predominant inquiry in determining entire fairness.'"  Judgment Response at 14 (quoting Motion for Judgment at 2-3).  The Plaintiffs note that the Court has evaluated the Defendants' arguments in two separate Memorandum Opinion and Orders.  See Judgment Response at 14 n.6 (citing April 25 MOO, 250 F. Supp. 3d at 908, 1048, and Reconsideration

at 711; In re Dole Food Co., Inc. S'holder Litig., 2015 WL 5052214, at *3; Zimmerman v. Crothall, 62 A.3d 676, 708 (Del. Ch. 2013)).  The Court understands the "predominant inquiry rule" to be a rule that the Defendants inferred from and coined based on the Supreme Court of Delaware's reasoning.  Motion for Judgment at 3.

MOO, 264 F. Supp. 3d at 1185, 1186, 1189). The Plaintiffs say that the Court, in its Reconsideration MOO, "expressly stated that it 'is not inviting a second motion to reconsider after trial.'" Judgment Response at 15 (quoting Reconsideration MOO, 264 F. Supp. 3d at 1246 n.73).[61] The Plaintiffs also argue that the jury did not decide whether the Merger was "entirely fair" and thus a judgment that the Merger was entirely fair would contradict the jury's verdict. Judgment Response at 15. The Plaintiffs also assert that, although the jury found that $451,000.00 is the fair value of their TIR, Inc. shares, this finding does "not establish the entire fairness of the TIR Merger given the Court's finding of the absence of fair dealing." Judgment Response at 17.

The Court disagrees with the Defendants' argument that they are entitled to judgment that the Merger was entirely fair. In the Reconsideration MOO, the Court undertook a de novo review of its prior ruling in the April 25 MOO that the Defendants are liable for a breach of fiduciary duty. See Reconsideration MOO, 264 F. Supp. 3d at 1229-47. The Court reexamined the entire-fairness doctrine and again determined that the Defendants did not prove fair dealing in the Merger. See Reconsideration MOO, 264 F. Supp. 3d at 1234. Accordingly, the Court concluded that "the Defendants did not meet their burden for proving that the merger was

---

[61]In the Reconsideration MOO, the Court also stated: "If, however, the jury determines that the stock is worth only $100,000.00, the Defendants' arguments are going to look different when the Court has to consider the Plaintiffs' application for attorney fees even if the law should not change." Reconsideration MOO, 264 F. Supp. 3d at 1246 n.73. The Court's statement is directed at how the Court would view the Defendants' arguments for the purposes of awarding attorney's fees and not how the Court would reconsider the Defendants' entire-fairness conclusion for judgment purposes. As the Court discusses above, if the Court determines that Delaware law applies and that the Plaintiffs are entitled to attorney's fees, then the Merger's fairness would be relevant to awarding attorney's fees, because pre-litigation conduct may justify an equitable attorney's fees award under Delaware law. See William Penn P'ship v. Saliba, 13 A.3d at 758-59.

entirely fair." Reconsideration MOO, 264 F. Supp. 3d at 1245. The Defendants now argue that "[e]ntire fairness can [] only be determined <u>after</u> fair price is known. In this case, entire fairness could only have been determined <u>after</u> the jury determined fair price." Judgment Reply at 3 (emphasis in original). In essence, the Defendants argue that, despite breaching their fiduciary duty through a lack of fair dealing, their conduct satisfies the entire-fairness standard, because the jury found that the TIR, Inc. shares' fair price is $451,000.00 -- which the Plaintiffs received -- and "fair value is the predominant inquiry in determining entire fairness." Judgment Reply at 6.

The Court again concludes that "both fair process and fair price are necessary to prove that a transaction is in accord with the entire-fairness standard's requirements." Reconsideration MOO, 264 F. Supp. 3d at 1244. The Defendants stress that their Motion for Judgment is "not an attempt to dissuade the Court from what the Defendants persist in believing were fundamental errors urged by the Plaintiffs and accepted by the Court [in the April 25 MOO and the Reconsideration MOO]." Judgment Reply at 6. The Defendants' argument that fair price alone can establish entire fairness nevertheless appears to be a reincarnation of earlier arguments that the Court addressed at length in the Reconsideration MOO.

> The Defendants argue in the Motion for Reconsideration that, even if the Court deems that there was not fair dealing in the merger transaction, it is an error of law to rule that the Defendants' failure to prove fair dealing results in a failure of the Defendants to prove the transaction's entire fairness without a prior evaluation of whether the share price at which the Defendants cashed out the minority shareholders was fair. <u>See</u> Motion for Reconsideration at 8-9. According to the Defendants, the test for entire fairness "is <u>not a bifurcated one as between fair dealing and fair price</u>. All aspects of the use must be examined as a whole, since the question is one of entire fairness. Thus, all aspects of the transaction must be considered before making an [sic] <u>unitary determination</u>." <u>See</u> Motion for Reconsideration at 10 (quoting <u>Gatz Properties, L.L.C. v. Auriga</u>

Capital Corp., 59 A.3d at 1214)(emphases added in the Motion for Reconsideration).

During the motion hearing, the Plaintiffs asserted that the Defendants' contention that the entire-fairness standard requires a unitary determination is erroneous, directing the Court's attention to Merritt v. Colonial Foods, Inc.[, 505 A.2d 757 (Del. Ch. 1986).] In that case, decided by Chancellor Allen, whom the Plaintiffs characterized as one of the country's foremost experts in Delaware corporate law, the Plaintiffs noted that the court granted the case's plaintiffs "partial summary judgment on the issue of liability." Transcript of Motion Hearing at 128:12-19 (Kagen)(taken June 29, 2017), filed July 14, 2017 (Doc. 306)("June Tr.")(quoting Merritt v. Colonial Foods, Inc., 505 A.2d at 766). The Plaintiffs contended that they had found the black swan that disproves what they purport to be the Defendants' core argument, i.e., that no Delaware court ever has granted partial summary judgment on process under the entire fairness standard. See June Tr. at 128:18-19 (Kagen). The Plaintiffs then recounted the facts in Merritt v. Colonial Foods, Inc., painting the defendant in that case as having frozen out minority shareholders in a self-dealing transaction. See June Tr. at 128:20-129:22 (Kagen). According to the Plaintiffs, the Delaware Court of Chancery concluded that the defendants had employed unfair process and thereby breached their duty of fair dealing. See June Tr. at 129:23-131:14 (Kagen). The main takeaway from Merritt v. Colonial Foods, Inc., in the Plaintiffs' estimation, therefore, was that "one of the top national authorities in corporate law, found and granted partial summary judg[ment] on the basis of process alone. He did not deal with the fairness of the price." June Tr. at 133:4-9 (Kagen). Chancellor Allen wrote in footnote seven of the opinion in that case:

> I note, for the guidance of the parties, that disposition of the pending motions has not required me to make any judgment concerning the fairness of the $3 per share merger price. . . . It may be that such price fully reflected the fair value of the minority shares . . . even when a proportionate share of any value of the derivative claims may have had is considered. . . . That determination cannot be made on this record.

Merritt v. Colonial Foods, Inc., 505 A.2d at 766 n.7.

. . . . [T]he Court notes that the entire-fairness standard has two prongs: fair process and fair price. Analysis of these two prongs, the parties agree, must lead the Court to a unitary determination whether the Defendants meet their burden to prove the entire fairness of the merger transaction. See June Tr. at 166:22-23 (DeMuro); id. at 170:18-20 (Kagen). Where the parties essentially diverge, however, is in how the Court should interpret the word "and." The

Plaintiffs appear to interpret "and" to be multiplicative, so that a complete absence of fair process always results in a failure to prove a transaction's entire fairness. See, e.g., June Tr. at 133:21-22 (Kagen). The Defendants, in contrast, seem to interpret "and" to be additive, such that a defendant can prove entire fairness by summing zero fair process with manifestly fair price. See, e.g., [Transcript of Motion Hearing at 256:8-15 (DeMuro)(taken April 26, 2017), filed June 5, 2017 (Doc. 282)("April Tr.")].

. . . .

The Court recognizes that -- as the Defendants' and Plaintiffs' different interpretations of the conjunctive suggest -- that a split has arisen in Delaware Court of Chancery cases whether what the Court here has shorthanded as the multiplicative or the additive interpretation of "and" is correct. The Delaware Court of Chancery lent the multiplicative interpretation of "and" greater purchase in [Nine Systems I] when it explicitly rejected the notion that fair price alone could salvage the entire fairness of a transaction that showed no signs of fair dealing. See [Nine Systems I], 2014 WL 4383127, at *47.

> If the oft-repeated holding of the Delaware Supreme Court's decision in *Weinberger* regarding the entire fairness standard -- that the analysis is *not bifurcated* but is to be a *unitary conclusion* -- has any purchase, then, even if the fair price component may be the preponderant consideration for most non-fraudulent decisions or transactions, it must hold true that a grossly unfair process can render an otherwise fair price . . . not entirely fair.

[Nine Systems I, 2014 WL 4383127, at *47] (emphasis in original)(internal quotation marks omitted). In Owen v. Cannon, 2015 WL 3819204 (Del. Ch. June 17, 2015)(Bouchard, J.), the Delaware Court of Chancery again interpreted the burden of proving entire-fairness of a transaction to be met only when a controlling stockholder establishes "to the court's satisfaction that the transaction was the product of both fair dealing and fair price." 2015 WL 3819204, at *29 (citing Cinerama, Inc. v. Technicolor, Inc., 663 A.2d 1156, 1163 (Del. 1995))(emphases added). Shortly after Bershad[ v. Curtiss-Wright Corp., 535 A.2d 840 (1987)], the Delaware Court of Chancery in Merritt v. Colonial Foods, Inc. considered "and" in the multiplicative sense, concluding that a complete lack of fair dealing permitted the court to assign liability for breach of fiduciary duty without examining the entire-fairness standard's fair price prong. See Merritt v. Colonial Foods, Inc., 505 A.2d at 766 n.7 ("I note, for the guidance of the parties, that disposition of the pending motions has not required me to make any judgment concerning the fairness of the $3 per share merger price."). This line of cases

notwithstanding, the Defendants do not conjure an additive interpretation as some deus ex machina to salvage their argument. In In re Trados[ Shareholder Litigation, 73 A.3d 17 (Del. Ch. 2013)], the Delaware Court of Chancery held that a merger transaction was fair even though "the defendant directors did not adopt any protective provisions, failed to consider the common stockholders, and sought to exit without recognizing the conflicts of interest presented by the Merger . . . ." In re Trados, 73 A.3d at 76.

The Court acknowledges the split. It nevertheless determines that the Merritt[ v. Colonial Foods, Inc.] line of cases chooses the more defensible interpretation in light of the history of Delaware merger law, the evil that Weinberger[ v. UOP, Inc.] sought to redress, and other public policy reasons.

. . . .

Public policy rationales for safeguarding fair dealing in merger transactions that force out minority shareholders are as pronounced now as they were when the Supreme Court of Delaware decided Weinberger v. UOP, Inc. in 1983. The Defendants' interpretation of the conjunction binding the entire-fairness standard's two prongs is that a corporation's directors can offer no process to minority shareholders but still rescue a merger's entire fairness by cashing minority shareholders out at a fair price. Such an interpretation makes the entire-fairness standard's fair dealing prong meaningless. . . . It also creates a set of incentives that reinforce rather than remedy the evil that Weinberger v. UOP, Inc. seeks to exorcise from Delaware corporate law; corporations confident in the fairness of a cash-out price would have no self-interest in providing any process at all.

Consequently, despite the Delaware Court of Chancery's split on how to interpret the entire-fairness standard's conjunctive, the Court is convinced that the most natural reading of the word "and" as multiplicative is also the correct reading. That is to say, zero fair process results in a failure to meet the burden of proving entire fairness regardless how fair the share price is at which the Defendants cashed out the minority shareholders. The Court is not the first federal court to reach such a conclusion. In ASARCO LLC v. Americas Mining Corp., 396 B.R. 278, 411 (Bankr. S.D. Tex. August 30, 2008)(Hansen, J.), the Bankruptcy Court for the United States District Court for the Southern District of Texas concluded that Weinberger v. UOP, Inc. required both fair dealing and fair price to meet the burden for proving a transaction's entire fairness. See ASARCO LLC v. Americas Mining Corp., 396 B.R. at 411 ("AMC has the burden to prove both fair dealing and fair price."). In In re Dwight's Piano Co., 424 B.R. 260 (Bankr. S.D. Ohio. September 9, 2009)(Rose, J.), the Bankruptcy Court for the United States District Court for the Southern District of Ohio ruled that both fair

dealing and fair price are required for entire fairness, and that even comparatively minor lacks of procedure such as a lack of disclosure on the part of a CEO can render a transaction unfair.  See In re Dwight's Piano Co., 424 B.R. at 284.  In In re Adelphia Communications Corp., 323 B.R. 345 (Bankr. S.D.N.Y. March 24, 2005)(Lynch, J.), the Bankruptcy Court for the United States District Court for the Southern District of New York concluded that a self-dealing transaction "must be justified under both elements of a two-pronged inquiry into the fair process and the fair price of a transaction."  In re Adelphia Communications Corp., 323 B.R. at 385.  The Supreme Court of Delaware also implicitly came down on the side of the multiplicative interpretation of "and" in 2011, holding in William Penn Partnership v. Saliba that

> The concept of entire fairness consists of two blended elements: fair dealing and fair price.  Fair dealing involves analyzing how the transaction was structured, the timing, disclosures, and approvals.  Fair price relates to the economic and financial considerations of the transaction.  We examine the transaction as a whole and both aspects of the test must be satisfied; a party does not meet the entire fairness standard simply by showing that the price fell within a reasonable range that would be considered fair.

William Penn Partnership v. Saliba, 13 A.3d at 756-57 (citing Cinerama, Inc. v. Technicolor, Inc., 663 A.2d at 1162-63; HMG/Courtland Props., Inc. v. Gray, 749 A.2d 94, 116-17 (Del. Ch. 1999)).

. . . .

        . . . .  Entire fairness, the court reiterates, requires that "[a]ll aspects of the issue must be examined as a whole since the question is one of entire fairness." Americas Mining Corp. v. Theriault, 51 A.3d at 1244 (internal quotation marks omitted).  Fair dealing has significant probative value to demonstrate the fairness of the price obtained, but by itself it cannot prove entire fairness in the absence of fair price as well.   In conformity with what the Court has termed the multiplicative approach to the conjunctive "and," but understanding the test by means of an alternate metaphor, the Americas Mining Corp. v. Theriault court appears to capture the entire-fairness test as a sort of tuning fork.  A tuning fork has two prongs, but the tuning fork qua tuning fork is a unitary object that only serves its purpose if both prongs function in unison.  If one prong is missing, the tuning fork cannot prove that a note rings true when debate exists.  Similarly, the Americas Mining Corp. v. Theriault court holds that both fair process and fair price are necessary to prove that a transaction is in accord with the entire-fairness standard's requirements.  In other words, for a transaction to be entirely fair, it must be entirely -- procedurally and in valuation -- fair.  This does not imply that

the inverse also is true, i.e., that both fair dealing and fair price must be absent for a merger transaction to be proven to be entirely unfair. The facts in Americas Mining Corp. v. Theriault were such that the Supreme Court of Delaware affirmed the Delaware Court of Chancery in its holding that process and price both were unfair in that case, but the Supreme Court of Delaware did not mandate that both fair dealing and fair price be absent to prove entire unfairness.

. . . .

The Court's unitary conclusion, consequently, is that the Defendants did not meet their burden for proving that the merger transaction was entirely fair. This failure to prove the transaction's entire fairness is determinative for purposes of liability. See Emerald Partners v. Berlin, 787 A.2d 85, 93 (Del. 2001)("[T]he determination that a board has failed to satisfy the entire fairness standard will constitute the basis for a finding of substantive liability."); Cinerama, Inc. v. Technicolor, Inc., 663 A.2d at 1165. The Defendants did not have to appoint an independent committee or to hold a minority shareholder vote on the merger, but the absence of any prophylactic action -- whether it be an independent committee, a vote, or otherwise -- to ensure the merger's entire fairness means that, under Delaware law, liability for a breach of fiduciary duty attaches to the Defendants. See Merritt v. Colonial Foods, Inc., 505 A.2d at 766. See also See Emerald Partners v. Berlin, 787 A.2d 85, 93 (Del. 2001)("[T]he determination that a board has failed to satisfy the entire fairness standard will constitute the basis for a finding of substantive liability."); Cinerama, Inc. v. Technicolor, Inc., 663 A.2d at 1165.

Reconsideration MOO, 264 F. Supp. 3d at 1234-46 (emphasis in original)(footnotes omitted).

The Court will not second-guess its earlier determinations that demonstrating both fair process and fair price is necessary to satisfy the entire-fairness standard. See Cinerama, Inc. v. Technicolor, Inc., 663 A.2d at 1179 ("[T]he entire fairness standard is exacting and requires the board of directors to 'establish to the court's satisfaction that the transaction was the product of both fair dealing and fair price.'" (quoting Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993)(emphasis in Cede & Co. v. Technicolor, Inc.)). That is, the Court will not reconsider -- for a second time -- its conclusion that, "for a transaction to be entirely fair, it must be entirely -- procedurally and in valuation -- fair." Reconsideration MOO, 264 F. Supp. 3d

at 1244.  The Court noted in the Reconsideration MOO that it had "expended substantially greater than average time and energy reassessing the entire-fairness standard's requirements." Reconsideration MOO, 264 F. Supp. 3d at 1224.  Although the Defendants contend that price is the predominant inquiry in determining entire fairness, the Defendants also conceded at the June 29, 2017, hearing that "the two entire-fairness prongs -- fair process and fair price -- are conjunctive: 'You've got to have both under the entire fairness standard of review.'" Reconsideration MOO, 264 F. Supp. 3d at 1206 (quoting June Tr. at 118:21-22 (DeMuro)).  The jury determined whether the Plaintiffs received a fair price for their TIR, Inc. shares, but the jury did not find -- and was not asked to find -- that the Defendants established that Merger was entirely fair.  See Special Verdict Form at 1-2.  As the Court emphasized in the Reconsideration MOO, the "only question before the jury is [] whether the price that the Plaintiffs received for their shares is fair.  The jury can render two different verdicts: the price is fair or the price is unfair."  Reconsideration MOO, 264 F. Supp. 3d at 1246.  While both fair dealing and fair price are necessary to establish entire fairness, the Court also concluded that the absence of one of these factors -- without a strong showing of the other factor -- is enough to prove entire unfairness.  See Reconsideration MOO, 264 F. Supp. 3d at 1245 ("[T]he Supreme Court of Delaware did not mandate that both fair dealing and fair price be absent to prove entire unfairness."); id. ("[A] strong showing on one factor can compensate for a completely nonexistent showing on the other factor.").  The Court ultimately determined before trial that the Merger was not entirely fair, because the Defendants did not establish fair dealing.

Although the Court advised that it "is not inviting a second motion to reconsider after trial," Reconsideration MOO, 264 F. Supp. 3d at 1246 n.73, the Defendants nevertheless argue

that the jury's finding that $451,000.00 is the fair price of the TIR, Inc. shares alters the Court's earlier determination that the Merger was not entirely fair.  See Judgment Reply at 4.  The Defendants cite the following passage from the Reconsideration MOO as support:

> "With regard to the In re Trados line of Delaware Court of Chancery cases which the Court deems to not reflect a correct interpretation of the entire fairness standard's conjunctive 'and,' the Court is mindful that the Delaware Court of Chancery in In re Trados has held that a merger can satisfy the entire-fairness standard even though there was no fair process provided to minority shareholders. . . .  At first glance, that holding is in tension with the Court's conclusion. . . .  That tension is produced not by a disagreement between the Court and the Delaware Court of Chancery regarding the law but by the fact that the two courts address distinct legal issues.  The Court needs to determine, on summary judgment, what legal effect to give to the Defendants' complete failure to introduce evidence regarding fair process.  The Delaware Court of Chancery, on the other hand, needs to resolve factual disputes and determine the legal effect to give an all-things considered judgment that minority shareholders did not receive fair process.  This Court understands the Supreme Court of Delaware's admonition that the test for fairness is not a bifurcated one as between fair dealing and fair price, see Weinberger v. UOP, Inc., 457 A.2d at 711, to mean that a strong showing on one factor can compensate for a completely nonexistent showing on the other factor. This understanding is in accord with In re Trados Shareholder Litigation as well as the other chancery opinions that the Court has surveyed.
>
> . . . .
>
> ". . . .  The sole way in which the interpretation of the entire-fairness standard's 'and' can make a difference is if the jury determines that the price is fair; there will be no damages awarded to the Plaintiffs, but any error committed by reading the conjunctive 'and' in a multiplicative rather than additive sense would not be moot.  The Plaintiffs would no doubt still seek the award of attorney fees.  Hence, the Court may see the Defendants approach the Court again with this issue if they prevail at trial, arguing that they should not have to pay attorney's fees for not proving procedural fairness."

Judgment Reply at 4 (quoting Reconsideration MOO, 264 F. Supp. 3d at 1245-46)(emphasis added in Judgment Reply).  The Defendants also acknowledge the Reconsideration MOO's footnote 73, which states: "'If, however, the jury determines that the stock is worth only

$100,000.00, the Defendants' arguments are going to look different when the Court has to consider the Plaintiffs' application for attorney fees even if the law should not change.'" Judgment Reply at 4 (quoting Reconsideration MOO, 264 F. Supp. 3d at 1246 n.73).

The Court concludes that the jury's verdict does not affect the Court's pre-trial determination that the Defendants did not satisfy the entire-fairness standard. First, footnote 73 barely supports the Defendants' argument that "things [] now look different," Judgment Reply at 5, because, if the jury had found that the TIR, Inc. shares' value is one dollar higher, then the Defendants' offered price would be below the fair price and hence unfair. While the Court reasoned that things would "look different" if the "jury determines that the stock is worth only $100,000," Reconsideration MOO, 264 F. Supp. 3d at 1246 n.73, such an outcome has not materialized. In sum, the jury did not find that the shares' fair price is lower than what the Defendants offered.

Second, the Court's statement that "things would look different" was directed explicitly at how the Court would view the Defendants' arguments for the purposes of awarding attorney's fees and not how the Court would reconsider the Defendants' entire-fairness conclusion for judgment purposes. Reconsideration MOO, 264 F. Supp. 3d at 1246 n.73 ("[T]he Defendants' arguments are going to look different <u>when the Court has to consider the Plaintiffs' application for attorney fees</u> even if the law should not change.")(emphasis added). The Court concludes above that the Defendants are entitled to attorney's fees and costs and that the Plaintiffs are not entitled to attorney's fees and costs. Under these circumstances, determining that the Merger was entirely fair would not affect the Court's conclusion that the Plaintiffs are not entitled to attorney's fees.

Finally, as the Defendants acknowledge, a strong showing on one factor can compensate for a completely nonexistent showing on the other factor.  See Reconsideration MOO, 264 F. Supp. 3d at 1245.  The Court concludes that the jury's finding that the shares' fair price equals the exact amount that the Defendants offered to the Plaintiffs plus the Defendants' evidence regarding fair price do not add up to a "strong showing" on fair price that is capable of "compensat[ing]" for the Defendants' lack of fair dealing.  Reconsideration MOO, 264 F. Supp. 3d at 1245.  The Supreme Court of Delaware has reasoned that, "while 'in a non-fraudulent transaction . . . price *may* be the preponderant consideration,' . . . it is not necessarily so." Rabkin v. Philip A. Hunt Chem. Corp., 498 A.2d 1099, 1105 (Del. 1985)(quoting Weinberger v. UOP, Inc., 457 A.2d at 711)(first alteration and emphasis added in Rabkin v. Philip A. Hunt Chem. Corp.).  The Supreme Court of Delaware also has held that "a party does not meet the entire fairness standard simply by showing that the price fell within a reasonable range that would be considered fair."  William Penn P'ship v. Saliba, 13 A.3d at 757 (citing Cinerama, Inc. v. Technicolor, Inc., 663 A.2d at 1162-63; HMG/Courtland Props., Inc. v. Gray, 749 A.2d at 116-17).  The Court concludes that, under the Supreme Court of Delaware's precedent, the Defendants' showing of fair price is not strong enough to outweigh the Defendants' lack of fair dealing, and thus the jury verdict does not render the Merger entirely fair.  The Defendants arrived at a fair price, but they arrived at that price with their own mechanisms, none of which assured anybody but them that the price was fair.[62]  They substituted their own mechanisms and

---

[62]In the April 25 MOO, the Court noted: "The Defendants did not form a special committee to consider the merger, nor did they schedule and hold a minority shareholder vote on the merger.  Instead, the Defendants informed minority shareholders after the merger had been consummated that their shares had been 'automatically canceled and extinguished' and

procedures for the ones that Delaware law recognizes as "sufficient safeguards protecting minority shareholders." April 25 MOO, 250 F. Supp. 3d at 1046. Accordingly, the Court reiterates its prior "unitary conclusion . . . that the Defendants [do] not meet their burden for proving that the merger transaction was entirely fair." Reconsideration MOO, 264 F. Supp. 3d at 1245.

**IT IS ORDERED** that (i) the Defendants' Motion for Judgment and Statement in Support Thereof, filed September 27, 2017 (Doc. 457), is granted in part and denied in part; (ii) the Defendants' Motion for Reasonable Attorney Fees and Litigation Costs and Brief in Support, filed October 3, 2017 (Doc. 458), is granted; (iii) the Defendants' Corrected Motion for Reasonable Attorney Fees and Litigation Costs and Brief in Support, filed October 3, 2017 (Doc. 459), is granted; (iv) the Plaintiffs' Motion for Attorney's Fees, and Brief in Support, filed October 18, 2017 (Doc. 462), is denied; (v) the requests in the Defendants' Choice of Law Opening Brief Pursuant to Court's Request [Doc. 467], filed November 20, 2017 (Doc. 473), are granted; (vi) the requests in the Plaintiffs' Brief Regarding Choice of Law Applicable to the Parties' Motions for Attorney's Fees, filed November 20, 2017 (Doc. 474), are granted; (vii) the requests in the Defendants' Supplemental Brief in Support of their Corrected Motion for

---

'converted into a right to receive an amount in cash equal to $451,000' a share. . . . The Court therefore concludes that the undisputed facts demonstrate that the Defendants failed to meet their burden to prove that they satisfied their fiduciary duty of fair dealing." April 25 MOO, 250 F. Supp. 3d at 1048 (quoting Merger Agreement § 2.01(a)). The Court further reasoned in the Reconsideration MOO that "[f]air process, as Weinberger v. UOP, Inc. states, embraces questions of (i) when the merger transaction was timed; (ii) how it was initiated; (iii) how it was structured; (iv) how it was negotiated; (v) how it was disclosed to the directors; and (vi) how directors' and shareholders' approval for the merger was obtained." Reconsideration MOO, 264 F. Supp. 3d at 1232 (citing Weinberger v. UOP, Inc., 457 A.2d at 711). Applying these six factors, the Court concluded that "each component . . . points in unfairness' direction." Reconsideration MOO, 264 F. Supp. 3d at 1233.

Reasonable Attorney Fees and Litigation Costs (Doc. 459), filed August 27, 2018 (Doc. 485), are granted; (viii) the Defendants are awarded $1,895,800.27 in attorney's fees and $147,748.33 in costs against the Plaintiffs, for a total of $2,043,548.60 in attorney's fees and costs; and (ix) a separate Final Judgment will be entered.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jamison A. Diehl
Akin Gump Strauss Hauer & Feld LLP
New York, New York

-- and --

Stratton Taylor
Mark H. Ramsey
Clinton Russell
Jacob R. Daniel
The Law Firm of Taylor, Foster, Mallett, Downs, Ramsey, & Russell
Claremore, Oklahoma

-- and --

Stuart Kagen
Daniel A. Cohen
Joshua C. Gillette
Kyla Janine Grant
Joel M. Taylor
Kagen & Caspersen
New York, New York

*Attorneys for Plaintiffs SFF-TIR, LLC, Stuart Family Foundation, Inc., Alan Stuart 2012 GST Family Trust, Stuart 2005 GST Family Trust, Celebration, LLC, Anurag Agarwal, Peter Buckley, Vincent Signorello, and Rodney M. Reynolds*

Toney D. Foster
The Law Firm of Taylor, Foster, Mallett, Downs, Ramsey, & Russell
Claremore, Oklahoma

*Attorneys for Plaintiff Stuart 2005 GST Family Trust*

Frederic Dorwart
Paul DeMuro
Sarah Poston
Nora Rose O'Neill
John D. Clayman
Fredric Dorwart Lawyers PLLC
Tulsa, Oklahoma

*Attorneys for the Defendants*