## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF OKLAHOMA

SFF-TIR, LLC; STUART FAMILY
FOUNDATION, INC.; ALAN STUART 2012
GST FAMILY TRUST; STUART 2005 GST
FAMILY TRUST; CELEBRATION, LLC;
ANURAG AGARWAL; PETER BUCKLEY;
VINCENT SIGNORELLO; and RODNEY M.
REYNOLDS,

      Plaintiffs,

vs.                                                                                           No. CIV 14-0369 JB\FHM

CHARLES C. STEPHENSON, JR.; CYNTHIA
A. FIELD; PETER BOYLAN, III;
LAWERENCE FIELD; CYPRESS ENERGY
PARTNERS-TIR, LLC; CEP CAPITAL
PARTNERS, LLC; CYPRESS ENERGY
HOLDINGS, LLC; and TULSA INSPECTION
RESOURCES, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendants' Motion to Strike

Plaintiffs' Contentions in Proposed Pretrial Order Relating to Disgorgement and Punitive

Damages, filed July 19, 2017 (Doc. 307)("Motion to Strike"); (ii) the Plaintiffs' Objection to the

Introduction of Testimony or Evidence from Defendants' Undisclosed Proferred [sic] Expert,

Stout Risius Ross, filed August 22, 2017 (Doc. 363)("Stout Objection"); and (iii) the Plaintiffs'

Objection to Defendants' Attempted Use of Demonstrative Exhibits without Foundation, filed

September 2, 2017 (Doc. 387)("Exhibits Objection").  The Court held a hearing on the Motion to

Strike on August 15, 2017, and the Court addressed the Stout Objection and the Exhibits Objection

at the September 6, 2017, proceeding, and the September 5, 2017, proceeding, respectively.  See

Minutes of Proceedings, filed September 5, 2017 (Doc. 397)(text-only entry).  The primary issues are: (i) whether the Court should strike from the Pretrial Order, filed August 9, 2017 (Doc. 346), the Plaintiffs' contentions that disgorgement and punitive damages are issues to be tried, because the Court already denied the Plaintiffs' attempts to pursue a disgorgement remedy, and because punitive damages are unavailable for breaches of fiduciary duty under Delaware law; (ii) whether the Court should admit expert testimony or materials relating to Stout, Risius, Ross, LLC, a valuation advisory, investment banking, and consulting firm, because the Pretrial Order does not include five of the Defendants' exhibits that Stout, Risius, Ross, LLC produced, and because the Defendants did not submit an expert report for their witness, Shishir Khetan, who is Stout, Risius, Ross, LLC's Valuation Advisory Group Managing Director; (iii) whether the Defendants' Demonstrative Exhibit Nos. 9, 12, 13, 14, 15, 16, 23, and 24 are based on admissible evidence such that the Defendants may use the exhibits during their opening statement; (iv) whether the Defendants' Demonstrative Exhibit Nos. 1, 4, 5, 9, 12, 13, 14, 15, 16, 23, and 24 rely on undisclosed expert opinion to summarize or support their disclosed experts' opinion, such that the Court should exclude the exhibits as untimely; and (v) whether the Defendants' Demonstrative Exhibit Nos. 25 and 26 summarize undisclosed, inadmissible evidence such that the Court should exclude both exhibits.  The Court concludes that: (i) it will not strike the Plaintiffs' arguments pertaining to disgorgement and punitive damages from the Pretrial Order, because, although all parties understand that disgorgement and punitive damages are not part of this trial, the Plaintiffs seek to preserve their positions, and thus striking their contentions from the Pretrial Order is not warranted; (ii) it will admit testimony and materials relating to Stout, Risius, Ross, LLC, because such evidence is factual evidence, and the Court can give the jury limiting instructions to ensure that the jury does not treat Khetan's testimony as expert testimony; (iii) the Defendants'

Demonstrative Exhibit Nos. 9, 12, 13, 14, 15, 16, 23, and 24 are based on admissible evidence, and thus the Court will not exclude the exhibits; (iv) the Defendants' Demonstrative Exhibit Nos. 1, 4, 5, 9, 12, 13, 14, 15, 16, 23, and 24 will aid the jury's ability to organize and digest voluminous information and rely on evidence already in the record, and thus the Court will not exclude the exhibits; and (v) the Defendants' Demonstrative Exhibit Nos. 25 and 26 do not summarize undisclosed, inadmissible information and will aid the jury's ability to organize and digest voluminous information, and thus the Court will not exclude the exhibits.

## FACTUAL BACKGROUND

The Court has already recounted the factual background of this case at some length.  See Memorandum Opinion and Order, 250 F. Supp. 3d 856, 869-89 (N.D. Okla. 2017)(Browning, J.)("April 25 MOO").   To summarize briefly, the Plaintiffs were minority shareholders in Tulsa Inspection Resources, Inc. ("TIR, Inc.") when, on December 9, 2013, TIR, Inc. and a new entity, Defendant Tulsa Inspection Resources, LLC ("TIR, LLC"), completed a merger.  April 25 MOO, 250 F. Supp. 3d at 873-83.  TIR Inc.'s majority shareholders received equity in TIR, LLC proportional to their ownership interest -- relative to the other majority shareholders -- in TIR, Inc., see April 25 MOO, 250 F. Supp. 3d at 873-74, while the minority shareholders of TIR, Inc. received $451,000.00 per share but did not receive any equity in TIR, LLC, see April 25 MOO, 250 F. Supp. 3d at 879-80.

## PROCEDURAL BACKGROUND

The Plaintiffs sued the Defendants -- TIR, Inc.'s directors and majority shareholders -- asserting that the Defendants owed fiduciary duties to the Plaintiffs -- TIR, Inc.'s minority shareholders.  See Complaint ¶¶ 141, 154, at 28, 31, filed July 3, 2014 (Doc. 1)("Complaint"). According to the Plaintiffs, the Defendants breached those duties when they implemented the

merger.  See Complaint ¶¶ 142, 155, at 28, 31.  On October 27, 2014, the Defendants offered to settle all claims against them "by offering a money judgment" for each Plaintiff and "against the Defendants in the total sum of $10,000.00."   Defendants' Offer of Judgment Pursuant to Fed.R.Civ.P. 68 and 12 O.S. § 1101.1(B) at 2, 6, 10, 14, 18, 22, 26, 30, 34, filed October 3, 2017 (Doc. 459-1)("Offer of Judgment").   Because Buckley and Signorello accepted the Defendants' offers, Buckley and Signorello stipulated to dismissing the "action with prejudice to refiling all claims made herein without costs or fees to any party."  Stipulation of Dismissal with Prejudice at 1, filed December 29, 2014 (Doc. 66).  Plaintiffs SFF-TIR, LLC, Stuart Family Foundation, Inc., Alan Stuart 2012 GST Family Trust, Stuart 2005 GST Family Trust, Celebration, LLC, Anurag Agarwal, and Reynolds rejected the Defendants' Offer of Judgment, and they gave the following counteroffers to settle their claims: (i) SFF-TIR, LLC counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $6,9703,360.00"; (ii) the Stuart Foundation counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $413,640.00"; (iii) Alan Stuart 2012 GST Family Trust counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $632,340.00"; (iv) Stuart 2005 Trust counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $632,340.00"; (v) Celebration, LLC counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $2,700,000.00"; (vi) Agarwal counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $4,222,800"; and (vii) Reynolds counteroffered "to each Defendant that judgment be entered against such Defendant . . . in the amount of $1,441,800." Notice of Counteroffers at 2, 6, 10, 14, 18, 22, 26.

At the summary-judgment stage, the Court first determined that it has federal-question jurisdiction over the Plaintiffs' federal-securities claims, and the Court considered sua sponte whether it has diversity jurisdiction over the case.  See April 25 MOO, 250 F. Supp. 3d at 1022 ("Neither the Plaintiffs nor the Defendants have challenged federal diversity jurisdiction in this case.  Rule 12(h)(3) of the Federal Rules of Civil Procedure allows, however, for the Court to raise this question sua sponte.").  The Court concluded that it has diversity jurisdiction over the case. See April 25 MOO, 250 F. Supp. 3d at 1023 ("Based on [the Court's] analysis, which shows complete party diversity, the Court concludes that it has diversity jurisdiction to hear this case.").  The Court then granted summary judgment to the Defendants on the Plaintiffs' federal-securities claims and dismissed those claims.  See April 25 MOO, 250 F. Supp. 3d at 1045.

The Court also considered the contract defenses that the Defendants raised in the Defendants' Motion for Summary Judgment on Acquiescence Defense and Brief in Support ¶ 1, at 7, filed April 3, 2015 (Doc. 83)("Defendants' Acquiescence MSJ"), and in the Defendants' Second Motion for Summary Judgment and Brief in Support Thereof, filed September 14, 2015 (Doc. 154)("Defendants' Estoppel MSJ").  April 25 MOO, 250 F. Supp. 3d at 1030-46.  The Court determined that Delaware law applies to the Defendants' acquiescence defense, and Oklahoma law applies to the Defendants' contract defenses of equitable estoppel, waiver, and unclean hands. See April 25 MOO, 250 F. Supp. 3d at 868.  The Court denied the Defendants' Acquiescence MSJ; denied the Defendants' Estoppel MSJ in part as it relates to the Oklahoma common-law clean hands doctrine, the Oklahoma common law of waiver, and the Oklahoma common law of estoppel; and granted the Defendants' Estoppel MSJ in part as it relates to securities claims, dismissing the securities claims.  See April 25 MOO, 250 F. Supp. 3d at 868.

Last, the Court determined that Delaware law governs the Plaintiffs' breach-of-fiduciary-duty claims, see April 25 MOO, 250 F. Supp. 3d at 867, 1026, and that the Defendants bear the burden of proving that the merger is entirely fair to the minority shareholders, see April 25 MOO, 250 F. Supp. 3d at 1034.  See also id. at 1047-48 ("The entire fairness standard . . . require[s] a company to ensure that minority shareholders receive fair dealing and a fair price if the company cashes out their shares in a merger's wake.").  The Court also determined that the Defendants "do not present any evidence of [the merger's] procedural fairness," and "zero fair process results in a failure to meet the burden of proving entire fairness regardless how fair the share price is at which the Defendants cashed out the minority shareholders."  Memorandum Opinion and Order, 264 F. Supp. 3d 1148, 1233, 1242-43 (N.D. Okla. 2017)(Browning, J.)("Reconsideration MOO").[1] Accordingly, the Court entered partial summary judgment on the liability issue in the Plaintiffs' favor, but the Court left a determination of damages for trial.  See April 25 MOO, 250 F. Supp. 3d at 1048-49.  See also Reconsideration MOO, 264 F. Supp. 3d at 1246 ("The Court . . . will make every effort to withhold from the jury its conclusion that the Defendants are liable for breach of fiduciary duty.  The only question before the jury is, therefore, whether the price that the Plaintiffs received for their shares is fair." (citation omitted)).

1. __The Motion to Strike__.

In the Motion to Strike, the Defendants move to strike from the Proposed Pretrial Order the "Plaintiffs' contentions that disgorgement and punitive damages are issues to be tried."  Motion to Strike at 2.  The Defendants argue that the Plaintiffs are not entitled to seek disgorgement,

---

[1]The Court originally granted partial summary judgment to the Plaintiffs in the April 25 MOO, see April 25 MOO, 250 F. Supp. 3d at 1067-68, but the Court explained its reasoning more fully in the Reconsideration MOO, see Reconsideration MOO, 264 F. Supp. 3d at 1222-46.

because the Court already rejected the Plaintiffs' attempts to pursue a disgorgement remedy.  <u>See</u> Motion to Strike (citing Memorandum Opinion and Order, 262 F. Supp. 3d 1165, 1234 (N.D. Okla. 2017)(Browning, J.)("July 5 MOO")).   The Defendants also argue that the Plaintiffs are not entitled to seek punitive damages, because Delaware law does not permit punitive damages.  <u>See</u> Motion to Strike at 3 (citing <u>Hampshire Grp., Ltd. v. Kuttner</u>, C.A. No. 3607-VCS, 2010 WL 2739995 (Del. Ch. July 12, 2010)(unpublished); <u>Gesoff v. IIC Indus., Inc.</u>, 902 A.2d 1130, 1154 (Del. Ch. 2006)).   The Defendants contend that, if the Court allows the Plaintiffs to pursue a punitive damages claim, then the Court must "admit all the historical evidence of the actions of the Plaintiffs which the Court has had to spend an inordinate amount of time to adjudicate." Motion to Strike at 3.  The Defendants further note that punitive damages are permitted only when a defendant's conduct "has been egregious," and they argue that the "record is clear that the Defendants committed no bad acts."  Motion to Strike at 3.

> **2.      The Motion to Strike Response.**

The Plaintiffs responded to the Motion to Strike on August 9, 2017.  <u>See</u> Plaintiffs' Response to Defendants' Motion to Strike Plaintiffs' Contentions in Proposed Pretrial Order Relating to Disgorgement and Punitive Damages, filed August 9, 2017 (Doc. 345)("Motion to Strike Response").  The Plaintiffs concede that disgorgement and punitive damages remedies "are precluded by the Court's prior ruling that fair process evidence will not be admitted at trial, which is law of the case."  Motion to Strike Response at 2 (citing July 5 MOO, 262 F. Supp. 3d at 1234). The Plaintiffs note, however, that, "[a]side from Defendants' contention that the remedies are barred by law of the case," the Plaintiffs "reserve, and do not waive or concede," the right to dispute later the arguments that the Defendants make in their Motion to Strike, such as the

Defendants' contention that the Court has rejected the Plaintiffs' efforts to pursue a disgorgement remedy.  Motion to Strike Response at 3.

       **3.**      **The August 15, 2017, Hearing.**

      The Court held an evidentiary hearing on August 15, 2017.  <u>See</u> Transcript of Telephonic Hearing Proceedings at 1, filed August 21, 2017 (Doc. 358)("Aug. 15 Tr.").  The Court confirmed that the jury will determine only damages at the trial, <u>see</u> Aug. 15 Tr. at 4:16-5:5 (Taylor, Court), and that "a finding of liability is not to be contested at trial," Aug. 15 Tr. at 7:2-5 (Taylor, Court).  The Court then turned to the Motion to Strike.  <u>See</u> Aug. 15 TR. at 13:3-8 (Court).  Starting with the Defendants' disgorgement arguments, the Court noted that "everyone is in agreement that [] disgorgement is not going to be part of the trial; everybody is just preserving their positions."  Aug. 15 Tr. at 13:11-14 (Court).  As to punitive damages, the Court said that it appears that the Plaintiffs and the Defendants agree that punitive damages would not be part of the trial and that the Plaintiffs are "continuing to preserve their position."  Aug. 15 Tr. at 13:18-19 (Court).  The Court said that it is "not sure we need to strike the contentions [in the Proposed Pretrial Order], if those are mainly there to preserve positions, but make clear that disgorgement and punitive damages will not be part of the trial."  Aug. 15 Tr. at 14:19-22 (Court).  The Plaintiffs and the Defendants agreed with the Court's characterizations.  <u>See</u> Aug. 15 Tr. at 13:23-14:4 (Court, DeMuro, Taylor).  The Plaintiffs argued, however, that, "because defendants are utilizing the Court's prior evidentiary rulings as a means of precluding our damages request, . . . they should be judicially estopped if they seek to introduce evidence that is process oriented, rather than damages oriented."  Aug. 15 Tr. at 14:5-11 (Taylor).  The Court then summarized that, "without striking the things from the pretrial order so that the plaintiffs are free to preserve their position,

it's understood that disgorgement and punitive damages will not be part of this trial." Aug. 15 Tr. at 14:18-22 (Court). The Court thus denied the Motion to Strike.

### 4.        **The Stout Objection.**

In the Stout Objection, the Plaintiffs object to the "Defendants' proposed introduction at trial of any expert testimony or materials relating to Stout, Risius, Ross, LLC . . . because Defendants are attempting to proffer undisclosed expert testimony through this expert litigation and valuation firm." Stout Objection at 2. The Plaintiffs argue that the Defendants never disclosed Stout, Risius, Ross, LLC as an expert and never produced an expert report for the witness. See Stout Objection at 2 (citing Fed. R. Civ. P. 26(a)(2)(A), (B)). The Plaintiffs argue that, with only days before the trial, the Defendants seek to amend the Pretrial Order to submit testimony and evidence from Stout, Risius, Ross, LLC's Valuation Advisory Group Managing Director, Shishir Khetan, as well as introduce five exhibits that the Pretrial Order does not include. See Stout Objection at 2 (citing Joint Motion to Revise Pretrial Order, filed August 15, 2017 (Doc. 352)). These five exhibits include: (i) the Valuation of Certain Assets Acquired Pursuant to FASB ASC 805 as of June 26, 2013 (dated December 9, 2013), filed August 22, 2017 (Doc. 363-3)("Dec. 9 Valuation Report"); (ii) the Valuation of Certain Assets Acquired Pursuant to FASB ASC 805 as of June 26, 2013 (dated September 27, 2013), filed August 22, 2017 (Doc. 363-5)("Sept. 27 Valuation Report"); (iii) the Determination of Enterprise Value and Invested Capital As of December 1, 2013 (dated March 4, 2014), filed August 22, 2017 (Doc. 363-4)("March 4 Valuation Report"); (iv) Email from Les Austin to Peter C. Boylan III (sent December 15, 2013)(Defendants' Trial Exhibit D344)("Dec. 15 Email"); and (v) Email from Peter C. Boylan III to Les Austin (sent December 30, 2013)(Defendants' Trial Exhibit D345)("Dec. 30 Email"). The Plaintiffs contend that the Defendants "*never* identified Khetan as an expert" and "*never* made any disclosure of any

expert report" from Stout, Risius, Ross, LLC, as rule 26 of the Federal Rules of Civil Procedure requires.  Stout Objection at 5 (emphases in original).  The Plaintiffs argue that the Defendants should not be able to use Khetan's expert testimony or the five exhibits from Stout, Risius, Ross, LLC at the trial.  See Stout Objection at 6 (citing Hall v. Furest, No. 02-70625, 2006 WL 2375677 (E.D. Mich. 2006)(Duggan, J.)).

The Plaintiffs contend that admitting Khetan's testimony would prejudice them and cause unfair surprise, because the trial is set to begin in two weeks.  See Stout Objection at 6.  The Plaintiffs note that the Defendants were required to identify their experts and submit expert reports by May 4, 2015, and that, since that time, the Defendants have not sought to offer Stout, Risius, Ross, LLC as an expert and have not submitted any of Stout, Risius, Ross, LLC's reports.  See Stout Objection at 6 (citing Scheduling Order at 1, filed September 16, 2014 (Doc. 38)).  The Plaintiffs asset that the Defendants confirmed at a deposition that they would not use expert testimony or reports from Stout, Risius, Ross, LLC at the trial.  See Stout Objection at 7 (citing Oral Deposition of Shishir R. Khetan at 2:3-7 (taken July 20, 2015), filed August 22, 2017 (Doc. 363-6)).  The Plaintiffs argue that admitting the expert testimony and reports would cause unfair surprise "if Defendants were permitted to, a little over two years later, go back on their word and admit and use *the very Stout Risius evidence* that they abandoned on the record earlier."  Stout Objection at 7 (emphasis in original).  The Plaintiffs argue that the "Defendants' statement on the record forswearing any effort should estop them from using this evidence now, to their obvious benefit and to Plaintiff's unfair detriment."  Stout Objection at 8 (citing Raymond v. Saturn Corp., No. 1:04-0065, 2005 WL 1983836, at *6 (M.D. Tenn. Aug. 17, 2005)(Haynes, J.)).

The Plaintiffs argue that there is no way to cure the prejudice that admitting the expert testimony and exhibits would cause, because there is "no time for either briefing or arguments"

before the trial begins.  Stout Objection at 9 (citing <u>Oklahoma v. Tyson Foods, Inc.</u>, No. 05-CV-329-GKF-PJC, 2009 WL 2252129, at *6 (N.D. Okla. July 24, 2009)(Frizzell, J.)).  The Plaintiffs further argue that admitting the evidence would disrupt the trial and cause jury confusion, because a jury might assume that the evidence is relevant to the fair value of TIR, Inc.'s shares, even though "Stout Risius itself said that none of this material is relevant to fair value."  Stout Objection at 9 (citing Fed. R. Evid. 403).  The Plaintiffs next contend that the Defendants' "effort to backtrack on their representation now, at the very eve of trial, suggests bad faith."  Stout Objection at 10.  Last, the Plaintiffs assert that the Defendants' justifications for admitting the evidence are meritless, because (i) the evidence is not fact evidence; and (ii) that the evidence was used at Stout, Risius, Ross, LLC's deposition is irrelevant to deciding whether to admit the evidence at trial.  <u>See</u> Stout Objection at 10-11.

     **5.**     <u>**The Stout Objection Response.**</u>

     The Defendants responded to the Stout Objection on August 31, 2017.  <u>See</u> Defendants' Response to Plaintiffs' Objection to the Introduction of Testimony or Evidence from Stout, Risius, Ross (Doc. 363), filed August 31, 2017 (Doc. 385)("Stout Objection Response").  The Defendants argue that the Plaintiffs' Objection is "grounded on a false premise," because the Defendants do not intend to use the Stout, Risius, Ross, LLC testimony and exhibits as expert opinion evidence but rather "as **fact** evidence, and thus [the evidence] is not subject to the expert disclosure requirements of Rule 26."  Stout Objection Response at 1 (bold in original).  The Defendants contend that they first sought to introduce the Stout, Risius, Ross, LLC valuation reports "on July 26, 2017 -- not two weeks before trial as Plaintiffs assert."  Stout Objection Response at 2.  The Defendants note that, after they notified the Plaintiffs of the new exhibits, the "Plaintiffs advised that if Defendants wished to reopen their exhibit list to add the three identified [Stout, Risius, Ross,

LLC] documents, Plaintiffs would seek to add an addition 18 exhibits . . . <u>and</u> would designate certain deposition testimony of Mr. Shishir Khetan." Stout Objection Response at 3 (citing Email from Paul DeMuro to Joel Taylor and Sarah Poston (sent August 3, 2017), filed August 31, 2017 (Doc. 363-1))(emphasis in Stout Objection Response, but not in email). The Defendants note that they then added two additional documents to their trial exhibit list, for a total of five exhibits. <u>See</u> Stout Objection Response at 3.

The Defendants argue that they intend to introduce the five Stout, Risius, Ross, LLC exhibits "as <u>factual</u> evidence to: (i) address the Plaintiffs' heavy reliance on the projections provided to [Scott, Risius, Ross, LLC], and (ii) help illustrate the context for certain aspects of Mr. Wilcox's and Mr. Makholm's opinions." Stout Objection Response at 3 (citing Recalculation of Plaintiffs' Expert's Discounted Cash Flow Model at 1, filed October 13, 2015 (Doc. 174-34))(emphasis in original). The Defendants argue that they do not intend to offer Stout, Risius, Ross LLC's valuation reports for the valuations that they contain, and the Defendants note that none of the valuation reports includes a per share valuation. <u>See</u> Stout Objection Response at 4 & n.1.

The Defendants argue that they are not required to comply with rule 26's expert-disclosure procedure, because they do not intend to use the Stout, Risius, Ross, LLC evidence as expert opinion. <u>See</u> Stout Objection Response at 4 (citing <u>Boutwell v. SW Commercial Mgmt.</u>, No. CIV 07-1103 JB/LFG, 2009 WL 2950839 (D.N.M. Aug. 7, 2009)(Browning, J.)). The Defendants contend that, "[i]n this case, as in <u>Boutwell[ v. SW Commercial Management</u>], the reports at issue were created prior to this litigation, and [Stout, Risius, Ross, LLC]'s testimony about them would be limited to what is necessary to identify and authenticate the documents." Stout Objection Response at 5. The Defendants assert that admitting the documents and Khetan's testimony would

not prejudice the Plaintiffs, because the "Plaintiffs have had ample opportunity to question Mr. Khetan, as they took his deposition in 2015." Stout Objection Response at 5. The Defendants argue that the United States Court of Appeals for the Tenth Circuit faced the same issue in United States v. Orr, 692 F.3d 1079 (10th Cir. 2012), where the Tenth Circuit affirmed a district court's decision to admit the United States' expert reports as fact evidence. See Stout Objection Response at 5-6. The Defendants argue that their "intended use of the [Stout, Risius, Ross, LLC] evidence is much more modest than the use of the expert by the United States in Orr." Stout Objection Response at 6. Last, the Defendants reiterate that "an expert, when providing factual information, is not subject to the strictures of Rule 26." Stout Objection Response at 6 & n.3 (citing United States v. Cuti, 720 F.3d 453, 457-58 (2d Cir. 2013); United States v. McMillan, 600 F.3d 434, 455-67 (5th Cir. 2010); United States v. Rigas, 490 F.3d 208, 224 (2d Cir. 2007)).

### 6. The Stout Objection Reply.

The Plaintiffs replied to the Stout Objection Response on September 3, 2017. See Plaintiffs' Reply in Support of the Exclusion of Testimony or Evidence from Defendants' Undisclosed Witness, Stout Risius Ross, filed September 3, 2017 (Doc. 388)("Stout Objection Reply"). The Plaintiffs argue that the "Defendants were required to disclose Stout Risius as non-retained experts under Fed. R. Civ. P. 26(2)(C) and failed to do so, which failure requires exclusion at trial." Stout Objection Reply at 2 (capitalization and bold omitted). According to the Plaintiffs, although the Defendants do not intend to use any Stout, Risius, Ross, LLC witnesses as retained experts, the "testimony and valuation reports of Stout Risius Managing Director of Valuation Shishir Khetan that Defendants want to show the jury are still undisclosed expert opinion testimony." Stout Objection Reply at 2. The Plaintiffs argue that, for any non-retained expert opinion testimony, rule 26 requires that the Defendants provide a disclosure stating: "(i) the

subject matter on which the witness was expected to present evidence under Fed. R. Evid. 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness." Stout Objection Reply at 2 (citing Fed. R. Civ. P. 26(2)(C)(i)-(ii)).  According to the Plaintiffs, the "Defendants did none of this." Stout Objection Reply at 2.  The Plaintiffs contend that the Defendants' failure to comply with rule 26 "mandates exclusion." Stout Objection Reply at 2 (citing Velasquez v. Danny Herman Trucking, Inc., CIVIL ACTION H-14-2791, 2015 WL 8764271, at *2 (S.D. Tex. Dec. 15, 2015)(Miller, J.); Watkins v. Cook Inc., Civil Action No. 2:13-cv-20370, 2015 WL 1395773, at *21 (S.D. W.Va. Mar. 25, 2015)(Goodwin, J.)).  Specifically, the Plaintiffs argue that the Court should exclude the Dec. 9 Valuation Report, the Sept. 27 Valuation Report, the March 4 Valuation Report, and the Dec. 30 Email -- which are Defendants' Trial Exhibits D341, D342, D343, and D345, respectively.  See Stout Objection Reply at 3.  As to the Dec. 15 Email -- Defendants' Trial Exhibit D344 -- the Plaintiffs do not object if the Court gives a "limiting instruction that no testimony on opinions reached by Stout Risius may be offered." Stout Objection Reply at 3.

The Plaintiffs argue that, even if the Defendants did not retain Stout, Risius, Ross, LLC for this litigation, rule 26 "still mandates that 'a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.'" Stout Objection Reply at 5 (quoting Fed. R. Civ. P. 26(a)(2)(A)).  The Plaintiffs contend that Stout, Risius, Ross, LLC's valuation opinions and testimony constitute opinion evidence under rules 702, 703, and 705 of the Federal Rules of Evidence.  See Stout Objection Reply at 5.  The Plaintiffs assert that the Defendants were required to disclose the subject matter of a witness' testimony and a summary of the facts to which a witness is expected to testify, neither of which the Defendants did.  See Stout Objection Reply at 6.  The Plaintiffs argue that the "[f]ailure to

make such a disclosure is not harmless and all expert opinion from [the Defendants'] expert must consequently be excluded." Stout Objection Reply at 7. The Plaintiffs further assert that the two cases on which the Defendants rely in the Stout Objection Response -- Boutwell v. SW Commercial Management and United States v. Orr -- are inapposite, because neither case addresses rule 26(a)(2)(C)'s requirements. See Stout Objection Reply at 7. Last, the Plaintiffs reiterate that

> permitting use of Stout Risius reports opinion on the "fair value" of certain TIR assets would cause substantial trial disruption, undue prejudice, and jury confusion under Rule 403, because a jury would likely (and reasonably) assume that this Stout Risius work should have some bearing on the fair value of TIR's shares around the merger dates, which the reports themselves expressly state was not the case.

Stout Objection Reply at 7-8.

### 7.     The September 6, 2017, Proceeding.

The jury trial commenced on September 5, 2017. See Minute Sheet -- Civil Trial at 1, filed September 14, 2017 (Doc. 448). On the second day of the trial, before the jury entered the courtroom, the Plaintiffs raised the arguments that they made in the Stout Objection. See Transcript of Jury Trial Proceedings at 5:7 (held September 6, 2017)(Kagen), filed September 8, 2017 (Doc. 401)("Sept. 6 Tr."). The Plaintiffs said they "don't want to discuss it or argue it," but they asked that the Court rule on their Stout Objection by the next day. Sept. 6 Tr. at 5:7-8 (Kagen). The Court responded:

> Well, I think that I'm going to allow those submissions. If you need some limiting instructions -- and this should go to all the rulings I've made on both hearsay and also anything you need as far as making sure they don't treat this as expert testimony -- I'd be glad to give those. And so if you want to sketch something out, I'd be glad to give it . . . if you want me to just give it. But do ask for it when you want it, if you decide you want it. Sometimes people don't want that so I don't want to intrude because it can sometimes emphasize things that you don't want emphasized. But it did seem to me that there was expectation that that

material was coming in, and I think we can solve it with limiting instructions so I will not exclude that evidence.  So your counter-designations will come in as well.

Sept. 6 Tr. at 5:14-6:4 (Court).  The Plaintiffs said that those issues "were the only two issues," and they added that they believe that the Defendants did not comply with rule 26.  Sept. 6 Tr. at 6:10 (Kagen).

### 8.    The Exhibits Objection.

The Plaintiffs filed the Exhibits Objection on September 2, 2017.  See Exhibits Objection at 1.  The Plaintiffs argue that, on September 1, 2017, the "Defendants first informed Plaintiffs they intend to use *fifty-four* demonstrative exhibits at trial," which the Plaintiffs say the Court should preclude.  Exhibits Objection at 2 (emphasis in original).  The Plaintiffs aver that the "Defendants propose to use fourteen demonstrative exhibits for which they provide no citation to admissible evidence."  Exhibits Objection at 2.  The Plaintiffs aver that the Defendants have the burden to ensure that demonstrative exhibits are based on admissible evidence and that the Defendants have not met this burden.  See Exhibits Objection at 4 (citing United States v. Irvin, 682 F.3d 1254, 1262 (10th Cir. 2012)).  The Plaintiffs note that, at the June 29, 2017, hearing, the Court instructed the Defendants to "'mak[e] sure [their] demonstrative are going to contain information that you know is going to come in and the other side knows it's going to come in.'"  Exhibits Objection at 4 (quoting Transcript of Motion Hearing at 88:22-24 (held June 29, 2017)(Court), filed July 14, 2017 (Doc. 36)("June 29 Tr.")).  According to the Plaintiffs, the

Defendants have not established that Demonstrative Exhibit Nos. 9,[2] 12,[3] 13,[4] 14,[5] 15,[6] 16,[7] 21,[8] 23,[9] 24,[10] 33,[11] 38, 39,[12] 40,[13] and 41[14] are based on admissible evidence.  See Exhibits Objection at 4.

---

[2]The Defendants' Demonstrative Exhibit No. 9 is a chart of past sales in of TIR, Inc. shares in 2012-13.

[3]The Defendants' Demonstrative Exhibit No. 12 is a slide titled "What 'headwinds' did TIR face in Dec. 2013?," and it lists several financial issues that TIR, Inc. was facing at that time, such as growing debt and interest costs, uncertain financing, and shrinking profit margins.

[4]The Defendants' Demonstrative Exhibit No. 13 is a slide that lists side-by-side Wilcox' credentials and conclusions and the credentials and conclusions of the Plaintiffs' expert, and it graphically displays each party's expert's opinions.

[5]The Defendants' Demonstrative Exhibit No. 14 is a slide that chronologically depicts the TIR, Inc. Board of Directors' process for finding buyers for the Board members' shares.

[6]The Defendants' Demonstrative Exhibit No. 15 is a slide that chronologically depicts the TIR, Inc. Board of Directors' process for finding buyers for the Board members' shares.

[7]The Defendants' Demonstrative Exhibit No. 16 is a slide that chronologically depicts the TIR, Inc. Board of Directors' process for finding buyers for the Board members' shares.

[8]The Defendants' Demonstrative Exhibit No. 21 is a slide featuring three $100.00 bills and, next to each bill, the following names and titles: (i) TIR, Inc. Chief Financial Officer Dan O'Keefe; (ii) TIR, Inc. President Trent Foley; and (iii) TIR, Inc. General Counsel John O'Conner.

[9]The Defendants' Demonstrative Exhibit No. 23 is a slide that explains what Discount Cash Flow ("DCF") is and how investors use it to calculate a company's share value.

[10]The Defendants' Demonstrative Exhibit No. 24 is a slide that explains what DCF is and how investors use it to calculate a company's share value.

[11]The Defendants' Demonstrative Exhibit No. 33 is a slide stating several facts about TIR, Inc.'s business model.

[12]The Defendants' Demonstrative Exhibit No. 39 is a slide that defines several business terms, such as "discount rate," "fully diluted shares," and "equity capital and debt capital."

Next, the Plaintiffs contend that Demonstrative Exhibit No. 44 violates the Court's Order, filed March 31, 2017 (Doc. 266)("March 31 Order"). Exhibits Objection at 5. The Plaintiffs note that, in the March 31 Order, the Court held that it "will exclude under [Fed. R. Evid.] 403 *any mention of Stephenson as a philanthropist or other reference to Stephenson's charitable activities*.'" Exhibits Objection at 5 (quoting March 31 Order at 2)(emphasis and alteration in Exhibits Objection and not in March 31 Order). The Plaintiffs aver that the Defendants' Demonstrative Exhibit No. 44 refers to Defendant Charles C. Stephenson, Jr.'s charitable activities four times and thus violates the March 31 Order. The Plaintiffs note that Demonstrative No. 44 states: (i) that Stephenson is the "'Founder of the Charles & Peggy Stephenson Family Foundation'"; (ii) that Defendant Cynthia A. Field is the "'Managing Director of the Charles & Peggy Stephenson Family Foundation'"; (iii) that C. Field sits "'on [the] Gilcrease Museum National Advisory (former Chairman)'"; and (iv) that Defendant Lawrence Field sits "'on [the] Board of Directors for the Stephenson Cancer Institute.'" Exhibits Objection at 5 (quoting Profiles of Defendants at 1, filed September 2, 2017 (Doc. 387-10)). The Plaintiffs assert that these references to the Charles & Peggy Stephenson Family Foundation and the Stephenson Cancer Institute constitute references to Stephenson's philanthropic and charitable activities. See Exhibits Objection at 6. The Plaintiffs also argue that these references would generate prejudice, because knowledge of C. Field's and C. Stephenson's charitable activities might make it more difficult for jurors to remain objective. See Exhibits Objection at 7. The Plaintiffs assert that the Court should

---

[13]The Defendants' Demonstrative Exhibit No. 40 is a slide that lists TIR, Inc.'s pooled shareholders and states the number of shares each shareholder once owned and the price at which each shareholder sold his or her shares.

[14]The Defendants' Demonstrative Exhibit No. 41 is a slide that lists the TIR, Inc. shareholders who sold shares in October, 2013.

exclude Demonstrative Exhibit No. 44 until the Defendants revise the exhibit to conform with the March 31 Order.  See Exhibits Objection at 7.

The Plaintiffs also argue that the Defendants propose to use twenty-four demonstrative exhibits that summarize or support the Defendants' expert opinion and that it is too late to provide these exhibits.  See Exhibits Objection at 2, 7.  The Plaintiffs note that, for each expert opinion, the Defendants are "'required to provide a 'written report -- prepared and signed by the witness -- if the witness is one retained or specially employed to provide expert testimony in the case or one whose dut[ies] [] as the party's employee regularly involve giving expert testimony.'"  Exhibits Objection at 7 (quoting Fed. R. Civ. P. 26(a)(2)(B))(alterations added).  The Plaintiffs assert that the Defendants had until June 25, 2015, to submit a written report that includes any exhibits that summarize or support an expert opinion.  See Exhibits Objection at 7; Amended Scheduling Order ¶ 4a, at 1, filed June 11, 2015 (Doc. 124).  According to the Plaintiffs, the report that the Defendants submitted "does not include a vast number of exhibits that Defendants now wish to use at trial to both summarize and support those opinions."  Exhibits Objection at 7 (emphasis in original).  The Plaintiffs aver that the Defendants had until the pretrial disclosure deadline, May 9, 2016, to supplement their expert disclosures.  See Exhibits Objection at 8 (citing Amended Scheduling Order ¶ 9, at 1, filed May 9, 2016 (Doc. 217)).  The Plaintiffs list each of the twenty-four demonstrative exhibits to which they object in a chart, see Exhibits Objection at 15-24, and they attach each of the demonstrative exhibits as well, see Defendants' Demonstrative Exhibit

Nos. 1,[15] 2,[16] 4,[17] 5,[18] 9, 10,[19] 11,[20] 12, 13, 14, 15, 16, 24, 25,[21] 29,[22] 30,[23] 31,[24] 32,[25] 33, 36,[26] 39,

40, 46,[27] 47,[28] at 1-24, filed September 2, 2017 (Doc. 387-3).

---

[15]The Defendants' Demonstrative Exhibit No. 1 is a slide containing a timeline of several Defendants' offers to buy the Plaintiffs' TIR, Inc. shares at steadily increasing prices.

[16]The Defendants' Demonstrative Exhibit No. 2 is a slide containing a timeline of several Defendants' offers to buy the Plaintiffs' TIR, Inc. shares at steadily increasing prices.

[17]The Defendants' Demonstrative Exhibit No. 4 is a slide depicting TIR, Inc.'s primary shareholders and the proportion of TIR, Inc.'s shares that each shareholder owns.

[18]The Defendants' Demonstrative Exhibit No. 5 is a slide depicting chronological events relevant to the case, such as offers to buy TIR, Inc.'s shares and the TIR, Inc. Board of Director's votes on such offers.

[19]The Defendants' Demonstrative Exhibit No. 10 is a slide depicting several financial groups' bids to purchase TIR, Inc. shares.

[20]The Defendants' Demonstrative Exhibit No. 11 is a slide depicting several financial groups' bids to purchase TIR, Inc. shares.

[21]The Defendants' Demonstrative Exhibit No. 25 is a graph comparing changes in TIR, Inc.'s earnings before interest, taxes, depreciation, and amortization ("EBITDA") to changes in the price per barrel of crude oil between 2006 to 2013.

[22]The Defendants' Demonstrative Exhibit No. 29 is a slide depicting several financial groups' bids to purchase TIR, Inc. shares, and how the average bid compares to Halifax Group's bids.

[23]The Defendants' Demonstrative Exhibit No. 30 is a slide depicting several financial groups' bids to purchase TIR, Inc. shares, and how the average bid compares to Halifax Group's bids.

[24]The Defendants' Demonstrative Exhibit No. 31 is a slide depicting several financial groups' bids to purchase TIR, Inc. shares, and how the average bid compares to Halifax Group's bids.

[25]The Defendants' Demonstrative Exhibit No. 32 is a slide depicting several financial groups' bids to purchase TIR, Inc. shares, and how the average bid compares to Halifax Group's bids.

According to the Plaintiffs, the "Tenth Circuit has held all such exhibits should be excluded from trial." Exhibits Objection at 8 (citing Dahlberg v. MCT Transp., LLC, 571 F. App'x 641, 647 (10th Cir. 2014)(unpublished)). The Plaintiffs aver that, in Dahlberg v. MCT Transportation, LLC, the Tenth Circuit held that, "'unless a court order says otherwise, any exhibit that summarize[s] or support[s] an expert opinion *must be disclosed well in advance of trial*." Exhibits Objection at 9 (quoting Dahlberg v. MCT Transp., LLC, 571 F. App'x at 647, and Fed. R. Civ. P. 26(a)(2)(B)(iii))(alteration in Exhibits Objection and in Dahlberg v. MCT Transportation, LLC)(emphasis in Exhibits Objection and not in Dahlberg v. MCT Transportation, LLC). The Plaintiffs contend that the "Defendants' claim that the exhibits concern facts in the case is [] no basis to allow them." Exhibits Objection at 10. The Plaintiffs also argue that the assertion that the demonstrative exhibits "are merely 'demonstrative aids' and not substantive evidence . . . lacks merit." Exhibits Objection (quoting Raley v. Hyundai Motor Co., Ltd., No. CIV-08-0376-HE, 2010 WL 545860, at *2 (W.D. Okla. Feb. 9, 2010)(Heaton, J.)). The Plaintiffs state that, in Raley v. Hyundai Motor Co., Ltd., the Honorable Joe Heaton, United States District Judge for the United States District Court for the Western District of Oklahoma, "held that [he] 'cannot accept a definition of supplementation which would essentially allow for unlimited bolstering of expert opinions.'" Exhibits Objection at 11 (quoting Raley v. Hyundai Motor Co., Ltd., 2010 WL

---

[26]The Defendants' Demonstrative Exhibit No. 36 is a slide comparing the valuations of TIR, Inc.'s share prices by the Defendants' expert and the Plaintiffs' expert alongside the actual prices that financial groups offered.

[27]The Defendants' Demonstrative Exhibit No. 46 is a slide containing a diagram that shows how Wilcox determined his share valuation based on TIR, Inc.'s historical income information.

[28]The Defendants' Demonstrative Exhibit No. 47 is a slide containing a diagram that shows how Wilcox determined his share valuation based on TIR, Inc.'s historical income information.

545860, at *3).  The Plaintiffs also argue that Demonstrative Exhibit Nos. 1, 2, and 3 are "unduly argumentative because they set forth hotly-disputed topics as if they were facts in the case." Exhibits Objection at 11.  The Plaintiffs contend that these three demonstrative exhibits are prejudicial and that the Court should exclude them.  See Exhibits Objection at 11, 23; Timeline of Key Events, filed September 2, 2017 (Doc. 378-8)("Demonstrative Exhibit No. 3").

Last, the Plaintiffs argue that the Court should exclude Demonstrative Exhibit Nos. 25 and 26, because "they purport to summarize undisclosed, inadmissible evidence."  Exhibits Objection at 12.  See TIR EBITDA vs. Crude Oil Prices at 1, filed September 2, 2017 (Doc. 387-5)("Demonstrative Exhibit No. 25"); TIR EBITDA vs. Oil & Gas Rigs at 1, filed September 2, 2017 (Doc. 387-5)("Demonstrative Exhibit No. 26").  The Plaintiffs argue that both Demonstrative Exhibit Nos. 25 and 26 are graphs "based on undisclosed data never produced in this action."  Exhibits Objection at 12.  According to the Plaintiffs, rule 1006 of the Federal Rules of Evidence bars the use of both demonstrative exhibits.  See Exhibits Objection at 13.  The Plaintiffs aver that they "cannot agree that this evidence is correct when they have never seen the underlying data, and thus had no opportunity to inspect it, and challenge or explain it (or have an expert do so)."  Exhibits Objection at 13.

### 9.     The Exhibits Objection Response.

The Defendants responded to the Exhibits Objection on September 3, 2017.  See Defendants' Response to Plaintiffs' Objection to Defendants' Demonstrative Exhibits (Doc. 387), filed September 3, 2017 (Doc. 389)("Exhibits Objection Response").  The Defendants argue that their demonstrative exhibits "are based on admissible evidence" and "uncontested facts," and that they are "designed to help the jury understand and evaluate complex evidence."  Exhibits Objection Response at 1 (citing United States v. Cmty. Health Sys., Inc., No. CIV 05-0279

WJ/ACT, 2013 WL 10914292, at *5 (D.N.M. Nov. 27, 2013)(Johnson, J.)).  The Defendants argue that the Exhibits Objection "fails to advise the Court that the Defendants provided Plaintiffs additional foundational sources for Defendants' demonstrative exhibits before Plaintiffs filed their motion."  Exhibits Objection Response at 2 (emphasis in original).  The Defendants also contend that many of their Demonstrative Exhibits "simply display uncontested evidence."  Exhibits Objection Response at 2.  The Defendants argue that their Demonstrative Exhibits "neither expand, nor supplement," their experts' reports, and that many of the Demonstrative Exhibits, such as Nos. 5, 6, 23, and 24, "depict diagrams of valuation formulas . . . that counsel could draw on a board during trial."  Exhibits Objection Response at 2.  The Defendants also note that the Plaintiffs did not object to their Demonstrative Exhibit No. 44 in the pre-filing objections, but the Defendants nevertheless withdraw the exhibit.  See Exhibits Objection Response at 3 n.3.

The Defendants assert that, for all but four of the Demonstrative Exhibits to which the Plaintiffs object, the Defendants "provided detailed source information" the day before the Plaintiffs filed the Exhibits Objection.  Exhibits Objection Response at 3 (citing Email Chain Between Stuart Kagen and Paul DeMuro (dated September 1-2, 2017), filed September 2, 2017 (Doc. 387-9)("Sept. 1-2 Email Chain")).  According to the Defendants, the Tenth Circuit has held that, in "'assessing foundation in this context, courts consider (among other things) whether the proffered demonstrative exhibit fairly and accurately summarize[s] previously admitted competent evidence.'"  Exhibits Objection Response at 3 (quoting Dahlberg v. MCT Transp., LLC, 571 F. App'x at 647)(alteration in Exhibits Objection Response and Dahlberg v. MCT Transportation, LLC)(internal quotation marks omitted).  The Defendants aver that the "Plaintiffs acknowledged in their conference with Defendants that that there is no requirement that sources be identified expressly on the face of a demonstrative exhibit, as long as sources are identified by counsel."

Exhibits Objection Response at 3 (citing United States v. Cmty. Health Sys., Inc., 2013 WL 10914292, at *5). The Defendants state that, in United States v. Community Health Systems, Inc., the defendants challenged a demonstrative exhibit containing the names and titles of the defendant's personnel, because "the exhibit lacked a reliable foundation because it contained no relevant facts to substantiate any information on the chart." Exhibits Objection Response at 4. According to the Defendants, the Honorable William P. Johnson, Chief United States District Judge for the United States District Court for the District of New Mexico, denied the defendants' motion, because the demonstrative exhibit "'would make this case less confusing to a jury, should the case proceed to trial.'" Exhibits Objection Response at 4 (quoting United States v. Cmty. Health Sys., Inc., 2013 WL 10914292, at *5). The Defendants argue that the same reasoning applies to their demonstrative exhibits. See Exhibits Objection Response at 4.

Next, the Defendants assert that the Plaintiffs "contort the facts and the law as to demonstrative exhibits intended to help the jury understand Defendants' expert opinions, not to change, expand or support these opinions." Exhibits Objection Response at 4 (bold, capitalization, and emphasis omitted). The Defendants argue that the Court previously instructed the parties that "their experts will need to 'teach' the jury about the concepts used to value TIR." Exhibits Objection Response at 5 (quoting Transcript of Hearing at 77:12 (held April 27, 2017)(Court), filed June 5, 2017 (Doc. 283)("April 27 Tr.")). The Defendants say that, "[b]y showing parts of the experts' fully disclosed analysis, the exhibits will help the jury understand the expert's trial testimony," which the Defendants argue "is precisely the purpose of demonstrative exhibits." Exhibits Objection Response at 5. The Defendants further argue that the "Plaintiffs have similar exhibits summarizing, highlighting or comparing expert testimony in slides Plaintiffs did not

previously disclose in their Rule 26 expert disclosure."  Exhibits Objection Response at 5 (citing Plaintiffs' Exhibit Slides, filed September 3, 2017 (Doc. 389-2)).

The Defendants argue that <u>Dahlberg v. MCT Transportation, LLC</u>, on which the Plaintiffs rely in the Exhibits Objection, does "not support exclusion of Defendants' demonstrative exhibits, which are critical aids to the jury's ability to organize the evidence."  Exhibits Objection Response at 6.  The Defendants note that, in that case, the plaintiffs argued that their demonstrative exhibits were not subject to rule 26, because the exhibits clarified, and did not summarize or support, their experts' testimony.  <u>See</u> Exhibits Objection Response at 6.  According to the Defendants, the "<u>Dahlberg</u> court found that argument implausible, since plaintiffs' stated aim in introducing the exhibits -- to make the expert's testimony clear -- could not help but support the testimony."  Objections Response at 6.  The Defendants argue that, unlike in <u>Dahlberg v. MCT Transportation, LLC</u>, "[t]here is no dispute . . . that the expert opinions have been fully disclosed.  The exhibits are squarely based on evidence long-ago discovered and fully disclosed to Plaintiffs."  Exhibits Objection Response at 7.

Last, the Defendants request that the Court delay ruling on the Plaintiffs' objections to Demonstrative Exhibit Nos. 25 and 26 "until the time of [Defendant Peter] Boylan's testimony."  Exhibits Objection Response at 7.  The Defendants note that these two exhibits relate to Boylan's testimony.  <u>See</u> Exhibits Objection Response at 7.  The Defendants argue that "[c]ourts frequently defer ruling on evidence until the issue concerning the particular exhibit is fleshed out at trial."  Exhibits Objection Response at 7 (citing <u>Sheedy v. BSB Props.</u>, Case No. 2:13-cv-290-JNP, 2016 WL 6902542, at *2 (D. Utah March 3, 2016)(Parrish, J.); <u>Innovation Toys, LLC v. MGA Entm't, Inc.</u>, Civil Action No. 07-6510, 2012 WL 5398476, at *9 (E.D. La. Nov. 4, 2012)(Morgan, J.); <u>Klatch-Maynard v. Sugarloaf Twp.</u>, Civil Action No. 3:06-cv-0845, 2011 WL 3476814, at *2

(M.D. Pa. Aug. 9, 2011)(Kane, C.J.); <u>United States v. Chhoun</u>, No. 2:06-CR-460-TC, 2007 WL 4562901, at *4 (D. Utah Dec. 20, 2007)(Campbell, C.J.)).

        **10.**        **<u>The September 5, 2017, Proceeding</u>.**

        On the first day of the trial, before the Court began jury selection, the Plaintiffs raised the arguments that they made in the Exhibits Objection.  <u>See</u> Transcript of Jury Trial Proceedings at 10:18 (held September 5, 2017)(Kagen), filed September 8, 2017 (Doc. 400)("Sept. 5 Tr.").  The Plaintiffs noted that the Defendants intend to use twenty-seven demonstrative exhibits during their opening statement, and the Plaintiffs argued that "most of them should be excluded either because they're not accurate renditions of the evidence or because they violate the applicable federal civil rules."  Sept. 5 Tr. at 10:24-11:1 (Kagen).  The Plaintiffs explained that they previously objected to the Defendants introducing summaries of their expert reports, "[s]o this issue was live and advised and anticipated by all the parties back in June."  Sept. 5 Tr. at 14:6-7 (Kagen).  The Plaintiffs said that they do not want the Court to admit any demonstrative exhibits, expert reports, or report summaries "that aren't based on admissible evidence."  Sept. 5 Tr. at 14:13-14 (Kagen).  The Plaintiffs said that there was very little discussion among the parties about demonstrative exhibits until the day before the deadline, August 30, 2017, when the parties agreed to a one-day extension for exhibits.  <u>See</u> Sept. 5 Tr. at 14:23-15:2 (Kagen).  The Plaintiffs said that they did not receive the Defendants' demonstrative exhibits until 5:31 p.m. on September 1, 2017, at which time the Plaintiffs "immediately realized that there are a bunch of problems with a lot of them."  Sept. 5 Tr. at 15:5-6 (Kagen).  The Plaintiffs then gave the Court a chart of the Defendants' demonstrative exhibits to which they object.  <u>See</u> Sept. 5 Tr. at 15:10-13 (Court, Kagen).

        The Court asked the Defendants which demonstrative exhibits they intend to use during their opening statement.  <u>See</u> Sept. 5 Tr. at 15:22-23 (Court).  The Defendants said they intended

to use Demonstrative Exhibit Nos. 1, 3, 4, 5, 7, 9, 10, 12, 13, 14, 15, 16, 17, 22, 23, and 24.  See Sept. 5 Tr. at 15:24-16:1 (DeMuro).  The Defendants added that they probably would not use all of the demonstrative exhibits and that they might use some of the Plaintiffs' exhibits, to which the Plaintiffs do not object.  See Sept. 5 Tr. at 16:1-9 (DeMuro, Court).

The Plaintiffs said that they and the Defendants tried to resolve their problems.  See Sept. 5 Tr. at 16:12-13 (Kagen).  According to the Plaintiffs, they discussed their objections with the Defendants on September 2, 2017, "and as a result [the Defendants] withdrew two exhibits but the rest of the objections [the Defendants] said were meritless."  Sept. 5 Tr. at 16:22-24 (Kagen).  The Plaintiffs argued that the Defendants' demonstrative exhibits are "filled with hotly disputed topics" and that many of the exhibits lack any "basis in fact."  Sept. 5 Tr. at 17:1-3 (Kagen).  The Plaintiffs said that they object to the Demonstrative Exhibit No. 1, because it suggests that there was an auction to sell TIR, Inc., which is misleading and "didn't happen."  Sept. 5 Tr. at 18:17 (Kagen).  The Plaintiffs said Demonstrative Exhibit No. 1 also contains information about topics that are the subject of expert testimony.  See Sept. 5 Tr. at 18:24-19:2 (Kagen).  The Plaintiffs argued that, under rule 26(a)(2)(B), the Defendants were required to append to their expert report any exhibits that summarize or support an expert opinion, which the Defendants did not do.  See Sept. 5 Tr. at 20:17-20 (Kagen).

The Plaintiffs noted that the Defendants had the opportunity to supplement their expert report with the exhibits under rule 26(e) by May 9, 2016, but the Plaintiffs did not receive any of the exhibits until September 1, 2017.  See Sept. 5 Tr. at 21:8-13 (Kagen).  The Plaintiffs said that, in Dahlberg v. MCT Transportation, LLC, the plaintiffs sought to file numerous demonstrative exhibits that summarized and supported an expert report, which the Tenth Circuit held was not allowed, because the deadline to do so had passed.  See Sept. 5 Tr. at 21:14-22:8 (Kagen).  The

Plaintiffs said that they cited the case to the Defendants, and the Defendants responded that the Plaintiffs "are wrong on the facts and law" but did not cite any contrary caselaw.  Sept. 5 Tr. at 22:12-13 (Kagen).  According to the Defendants, Dahlberg v. MCT Transportation, LLC applies to facts and does not apply to expert opinions, which the Plaintiffs argued "makes no sense," because "[a]ll expert opinions relate to facts."  Sept. 5 Tr. at 22:23-24 (Kagen).  The Plaintiffs conceded that the Court is not likely to exclude the demonstrative exhibits, but they "want to point out just for the record how [they] tried to get this done in advance."  Sept. 5 Tr. at 23:24-25 (Kagen).  The Plaintiffs concluded by arguing that they should not be "prejudiced" by the Defendants' decision to submit the demonstrative exhibits at the "last minute."  Sept. 5 Tr. at 24:22 (Kagen).

The Defendants argued that "[a]lmost everything [the Plaintiffs] said about the procedure was misleading and inaccurate."  Sept. 5 Tr. at 25:7-8 (DeMuro).  The Defendants said that they are the ones who have been pushing for all parties to disclose their demonstrative exhibits and that it is "amazing" that the Plaintiffs "would make the representations [that they] did to the court."  Sept. 5 Tr. at 25:10-11 (DeMuro).  The Defendants said that in complicated cases such as this one, parties must "contextualize complicated information in more simple and organized forms" for the jury, and "there's nothing better to do that than proper demonstratives."  Sept. 5 Tr. at 26:3-5 (DeMuro).

Next, the Defendants noted that they spent "many hours . . . making sure that every fact that we put in [Demonstrative Exhibit No. 1[29]] and every other demonstrative was right out of the record."  Sept. 5 Tr. at 26:8-10 (DeMuro).  The Defendants argued that Demonstrative Exhibit

---

[29]The Defendants' Demonstrative Exhibit No. 1 is a slide containing a timeline of several Defendants' offers to buy the Plaintiffs' TIR, Inc. shares at steadily increasing prices.

No. 1 "has nothing to do with" expert testimony and "is a summary of facts in the record." Sept. 5 Tr. at 26:13-14 (DeMuro). The Defendants asserted that every fact, figure, and date in the exhibit is accurate, and based on evidence in the record. See Sept. 5 Tr. at 27:5-13 (DeMuro). The Defendants said that their Demonstrative Exhibit No. 1 is "intended . . . to help the jury organize a complicated set of facts." Sept. 5 Tr. at 27:12-13 (DeMuro). The Defendants argued that the exhibit is "proper," because it "is just a graphic presentation of key facts based on the plaintiffs' own words." Sept. 5 Tr. at 27:17-19 (DeMuro). The Defendants added that rule 26 does not preclude their demonstrative exhibits. See Sept. 5 Tr. at 27:14-16 (DeMuro). The Defendants argued that, if at trial their counsel were to write on a chalkboard in the courtroom about the case's key evidence, he would "be able to do it without proper objection if these are all summaries of facts that are going to come into the record and me telling the jury what I think the evidence will show." Sept. 5 Tr. at 28:3-6 (DeMuro). The Defendants contended that, if it is "permissible" to demonstrate the evidence "in that fashion," then it should be permissible to demonstrate the evidence with their Demonstrative Exhibit No. 1, because it is "no different." Sept. 5 Tr. at 28:6-8 (DeMuro).

The Plaintiffs said that the main issue with Demonstrative Exhibit No. 1 is whether the term "control premium" is a "fact that a fact witness can testify to." Sept. 5 Tr. at 28:19-25 (Kagen). The Plaintiffs argued that "[t]here is no such thing as a control premium as a fact," because it is an opinion. Sept. 5 Tr. at 28:25-29:1 (Kagen). The Plaintiffs contended that "control premium" is "an opinion on the amount of money a person would pay in premium [or] in excess to control [a] company." Sept. 5 Tr. at 29:7-8 (Kagen). The Plaintiffs stressed that how much one must pay to control a company is an opinion under rule 702. See Sept. 5 Tr. at 29:14-20 (Kagen). The Plaintiffs argued that control premium opinions come from experts and that the Defendants'

Demonstrative Exhibit No. 1 "is an expert exhibit."   Sept. 5 Tr. at 30:11-12 (Kagen).   The Plaintiffs said that, under rule 26, if an exhibit summarizes or supports an expert's opinion, the Defendants should have "disclosed [it] two and a half years ago.   Or [they] could have supplemented it at the time of [their] (a)(3) disclosures under 26(a).   That passed a year and a couple of months ago [on May 9, 2016].   Too late."   Sept. 5 Tr. at 30:18-21 (Kagen).   The Plaintiffs argued that, under United States v. Irvin, the Defendants cannot put on evidence in the form of a demonstrative aid if the aid is misleading, inaccurate, or based on inadmissible evidence.   See Sept. 5 Tr. at 31:23-32:8 (Kagen).   The Plaintiffs asserted that the Defendants' Demonstrative Exhibit No. 1 is misleading, because it incorrectly suggests that there was a series of escalating bids at the auction for TIR, Inc.   See Sept. 5 Tr. at 32:9-21 (Kagen).   The Plaintiffs characterized the Defendants' argument as "saying, well, if it's a fact, then I get to twist it whichever way I want and I can put it in."   Sept. 5 Tr. at 33:2-3 (Kagen).   The Plaintiffs argued that there was no "auction" for TIR, Inc.'s shares, because TIR, Inc. received only two offers for the exact same price, and thus it is "more than reasonable to believe that there was collusion" in which "information was shared."   Sept. 5 Tr. at 34:10-12 (Kagen).   The Court said that it would not exclude the Defendants' Demonstrative Exhibit No. 1, because rule 26 does not require that a demonstrative chart be excluded.   See Sept. 5 Tr. at 34:15-18 (Court).   The Court then began jury selection and did not return to the remaining demonstrative exhibits.   See Sept. 5 Tr. at 35:6-12 (Court).

## LAW REGARDING RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 26(a)(1)(A) requires parties to make initial disclosures to the other parties:

*In General.*   Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

> (i)     the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii)     a copy -- or a description by category and location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (iii)     a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
>
> (iv)     for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(A).  Rule 26(e) requires a party who has made a disclosure under rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- to supplement or correct its disclosure or response in a timely manner, or as ordered by the court, if it learns that the disclosure or response is incomplete or incorrect:

> (1)     *In General.*  A party who has made a disclosure under Rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- must supplement or correct its disclosure or response:
>
> (A)     in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B)     as ordered by the court.

Fed. R. Civ. P. 26(e)(1).

Rule 37(c) provides the court with means to address failures to disclose:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  "This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56."  Fed. R. Civ. P. 37 advisory committee's note.  The Court may also sanction the party through other actions, including shifting fees, informing the jury of a party's failure to disclose, striking pleadings, or dismissing the action.  See Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii); Fed. R. Civ. P. 37(c)(1)(A)-(C).

Whether a rule 26(a) violation is substantially justified or harmless is a question for the district court's discretion.  See Woodworker's Supply, Inc. v. Principal Mut. Life Ins., 170 F.3d 170 F.3d 985, 993 (10th Cir. 1999)("The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."  (citing Mid-Am. Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996)).  The Tenth Circuit has directed district courts to consider: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  Woodworker's Supply, Inc. v. Principal Mut. Life Ins., 170 F.3d at 993.

The Court has concluded that an untimely disclosure prejudices an opposing party, that the prejudice is incurable, and that the untimely disclosure disrupts trial when the disclosure occurs close to trial, the party did not previously know of the information contained in the disclosure, and/or the opposing party does not have an opportunity to engage in further discovery or

depositions.  See, e.g., Leon v. FedEx Ground Package Sys., Inc., No. CIV 13-1005 JB/SCY, 2016

WL 1158079, at *12-14 (D.N.M. March 1, 2016)(Browning, J.); Guidance Endodontics, LLC v.

Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2009 WL 3672502, at *4-5 (D.N.M. Sept. 29,

2009)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101

JB/RLP, 2009 WL 3672373, at *12-14 (D.N.M. Sept. 24, 2009)(Browning, J.).  For instance, in

Leon v. FedEx Ground Package Systems, Inc., the Court concluded that, even though there was

no indication of bad faith or willfulness, the factors pointed against admitting expert testimony on

additional statutory violations, because: (i) the testimony would surprise and prejudice the other

party, because the expert could choose from many statutes on which to testify; (ii) the prejudice

would be incurable, because the expert could explore any statutory violation so the opposing party

could not prepare; (iii) the expert testimony would disrupt trial, because the last-minute testimony

would force the opposing party to go on a fishing expedition on cross examination, and the Court

would likely have to delay trial to allow the opposing party time to respond to the testimony; and

(iv) there were no indications of bad faith or willfulness.  See 2016 WL 1158079, at *12-14.

Regarding the first element -- prejudice -- in Guidance Endodontics, LLC v. Dentsply

International, Inc., the Court explained that a supplemental expert report disclosed soon before

trial was prejudicial, because

> [t]he trial of a case is a substantial undertaking that consumes most or all of an
> attorney's time.  Delivering an expert report to opposing counsel on the first day of
> trial, therefore, is not helpful.  There is no time to prepare a rebuttal expert or
> investigate the principles underlying the expert's opinions.

2009 WL 3672502, at *5.  The Court noted that the defendants could not "prepare a new or existing

expert witness," that the new expert report referenced "some recent research," of which the

defendants were not informed, and this prejudice was incurable, because the trial had begun and

the defendants were subject to a preliminary injunction, and that the defendants did not want to delay the trial and remain subject to the preliminary injunction.  2009 WL 3672502, at *5.  The Court excluded the expert even though the Court found no evidence of bad faith or willfulness.  See 2009 WL 3672502, at *5.  In Guidance Endodontics, LLC v. Dentsply International, Inc., the Court also concluded that: (i) the defendants were prejudiced and surprised when a supplemental report increased the damages estimate "from $1.2 million to $75.2 million," and the plaintiff had previously not disclosed the measure of damages it would seek; and (ii) the prejudice was incurable, because the defendants could not "re-depose [expert] McDonald and find a new rebuttal expert this late in the game when Guidance could have, with due diligence, disclosed this measure of damages during the discovery period."  2009 WL 3672373, at *12.  The Court further noted that the trial would be disrupted, because the defendants did not know the plaintiff would seek such damages and had no rebuttal expert to the expert.  See 2009 WL 3672373, at *14.  See also Lewis v. Goldsberry, No. CIV 11-0283 JB/ACT, 2012 WL 681800, at *10 (D.N.M. Feb. 27, 2012)(Browning, J.)(concluding that a failure to disclose was not harmless where the plaintiff missed the disclosure deadline, "the Defendants [were] unable to ascertain to what each of Lewis' expert witnesses will testify or obtain their own experts to address that testimony," and without such information, deposing the experts would be futile).

When a party has time to respond to the information in an untimely disclosure or expert report, or when the party already knew of the information, the Court is less likely to conclude that the party has been prejudiced, that the prejudice is incurable, or that the trial will be disrupted.  See, e.g., Coffey v. United States, No. CIV 08–0588 JB/LFG, 2012 WL 2175747, at *12-13 (D.N.M. May 26, 2012)(Browning, J.); Wheeler Peak, LLC v. L.C.I.2, Inc., No. CIV 07-1117 JB/WDS, 2010 WL 611141, at *3 (D.N.M. Jan. 31, 2010)(Browning, J.); Gulfstream Worldwide

Realty, Inc. v. Philips Elecs. N. Am. Corp., No. CIV-06-1165 JB/DJS, 2007 WL 4707080, at *4

(D.N.M. Aug. 14, 2007)(Browning, J.).   For example, in Coffey v. United States, the Court

reviewed the factors and concluded that, where the plaintiff filed an amended report: (i) there was

"little or no prejudice or surprise," because the United States had approximately ten months to find

an expert to testify on conduct at the Gallup Indian Medical Center if it needed; (ii) the prejudice

was curable, because the United States had the amended report when it deposed the expert, the

United States was on notice of the report's opinions, and the United States could have sought relief

by contacting the other party or the Court; (iii) the trial would not be disrupted, because the United

States had the report for around ten months and could find additional witnesses; and (iv) there was

no evidence of bad faith or willfulness.  2012 WL 2175747, at *12-13.  In Wheeler Peak, LLC v.

L.C.I.2, Inc., the Court deemed that a party suffered little prejudice from an expert report that:

> (i) was not signed, (ii) does not contain a complete statement of the basis of his
> opinions, and does not properly identify the facts, documents, or testimony upon
> which he relied; (iii) does not identify any summarizing exhibits to be used at trial;
> and (iv) does not provide his curriculum vitae, or his qualifications, publications,
> or testimony, all of which rule 26 requires.

2010 WL 611141, at *3.  The Court reasoned that:

> (i) Hicks has since provided a signed report; (ii) Wheeler Peak made the two boxes
> of materials upon which Hicks relied available to [defendant] de la Torre at Hicks'
> deposition, and can make those materials available again if de la Torre wants to see
> them; (iii) Hicks produced his cv on June 22, 2009; and (iv) while Hicks submitted
> his second report about a month and a half after the deadline in the Court's
> Scheduling Order, de la Torre had Hicks' second report for almost seven months
> before Hicks' deposition.

2010 WL 611141, at *3 (citations to transcript omitted).  See Gulfstream Worldwide Realty, Inc.

v. Philips Elecs. N. Am. Corp., 2007 WL 4707080, at *4 (concluding that Gulfstream Realty did

not suffer prejudice where Philips Electronics provided the report in an untimely manner, but

Gulfstream Realty was aware of the information in the report seven weeks before the discovery deadline and before deposing the expert).

## LAW REGARDING RULE 1006 OF THE FEDERAL RULES OF EVIDENCE

Rule 1006 states:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.  "The materials upon which the summary is based need not themselves be admitted into evidence."  United States v. Samaniego, 187 F.3d 1222, 1223 (10th Cir. 1999)(citing 6 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 1006.02 (Joseph M. McLaughlin, ed., 1999)).  The Tenth Circuit has held that rule 1006 "clearly permits the use of a summary of business records provided 'all of the records from which it is drawn are otherwise admissible.'"  Harris Mkt. Research v. Marshall Mktg. & Comm'cns, Inc., 948 F.2d 1518, 1525 (10th Cir. 1991)(quoting State Office Sys., Inc. v. Olivetti Corp. of Am., 762 F.2d 843, 845 (10th Cir. 1985)).  See United States v. Samaniego, 187 F.3d at 1223 ("Admission of summaries, however, is conditioned on the requirement that the evidence upon which they are based, if not admitted, must be admissible."); Ram v. N.M. Dep't of Env't, No. CIV 05-1083 JB/WPL, 2006 WL 4079623, at *19 (D.N.M. Dec. 15, 2006)(Browning, J.).  Otherwise, litigants could "avoid[] [the] rules governing the admission of evidence such as hearsay."  United States v. Samaniego, 187 F.3d at 1224 (citing United States v. Johnson, 594 F.2d 1253, 1255 (9th Cir. 1979)).  Moreover, the "admission of summaries under Rule 1006 is within the sound discretion of the trial

court."  Harris Mkt. Research v. Marshall Mktg. & Comm'cns, Inc., 948 F.2d at 1525 (citing Gomez v. Great Lakes Steel Div. Nat'l Steel Corp., 803 F.2d 250, 257 (6th Cir. 1986)).

In Anderson Living Trust v. WPX Energy Production, LLC, No. CIV 12-0040 JB/KBM, 2015 WL 7873715 (D.N.M. Nov. 6, 2015)(Browning, J.), the plaintiffs argued that one of the defendants' exhibits violated rule 1006, because it did "not accurately summarize [several] underlying leases," which the exhibit purported to summarize.  Anderson Living Trust v. WPX Energy Prod., LLC, 2015 WL 7873715, at *8.  The Court disagreed with the plaintiffs.  See 2015 WL 7873715, at *8.  First, the Court noted that the exhibit's "summary is based on admissible evidence -- the leases' language -- and does not misstate the facts."  2015 WL 7873715, at *8.  Second, the Court reasoned that the exhibit adds "substantial probative value by summarizing complex, detailed contractual language and parsing out what at least one expert considers to be the relevant language."  Anderson Living Trust v. WPX Energy Prod., LLC, 2015 WL 7873715, at *8.  The Court added that the plaintiffs had not shown that the defendants' exhibit violates rule 1006 beyond arguing that the exhibit is based on inadmissible evidence.  See Anderson Living Trust v. WPX Energy Prod., LLC, 2015 WL 7873715, at *8.  Finally, the Court concluded that the defendants "can rebut any prejudice by challenging Exhibit 428's findings on cross-examination and through the testimony of their own expert."  Anderson Living Trust v. WPX Energy Prod., LLC, 2015 WL 7873715, at *8.

## ANALYSIS

The Court denies the Motion to Strike and overrules the Stout Objection and the Exhibits Objection.  At the August 15, 2017, hearing, the parties agreed that the Pretrial Order contains the Plaintiffs' contentions pertaining to disgorgement and punitive damages to preserve the Plaintiffs' positions, and they agreed that disgorgement and punitive damages are not part of the trial.  See

Aug. 15 Tr. at 14:19-22 (Court); Aug. 15 Tr. at 13:23-14:4 (Court, DeMuro, Taylor).  Thus, the Court will not strike the Plaintiffs' disgorgement and punitive damages contentions from the Pretrial Order.  See Aug. 15 Tr. at 14:18-22 (Court).  As to the Stout, Risius, Ross, LLC materials and testimony, the Court determined at the September 6, 2017, proceeding that such evidence is factual evidence and that, at the Plaintiffs' request, the Court will give the jury limiting instructions to ensure that the jury does not treat Khetan's testimony as expert testimony.  See Sept. 6 Tr. at 5:14-6:4 (Court).  Thus, the Court will not exclude testimony and materials relating to Stout, Risius, Ross, LLC.  Last, the Court will not exclude the Defendants' Demonstrative Exhibits, because the exhibits will aid the jury in organizing and digesting large volumes of information in this two-week trial.  The Defendants noted at the September 5, 2017, proceeding that they intend to use Demonstrative Exhibit Nos. 1, 3, 4, 5, 7, 9, 10, 12, 13, 14, 15, 16, 17, 22, 23, and 24, and thus the Court primarily focuses on the Plaintiffs' objections to these sixteen demonstrative exhibits.  See Sept. 5 Tr. at 15:24-16:1 (DeMuro).  The Defendants also note that the Plaintiffs did not object to their Demonstrative Exhibit No. 44 in the pre-filing objections, but the Defendants nevertheless withdraw the exhibit.  See Exhibits Objection Response at 3 n.3.

I.      **THE COURT WILL NOT EXCLUDE THE DEFENDANTS' DEMONSTRATIVE EXHIBIT NOS. 9, 12, 13, 14, 15, 16, 23, AND 24, BECAUSE THE COURT CONCLUDES THAT THESE EXHIBITS ARE BASED ON ADMISSIBLE EVIDENCE.**

The Plaintiffs argue that the Defendants have not established that Demonstrative Exhibit Nos. 9, 12, 13, 14, 15, 16, 21, 23, 24, 33, 38, 39, 40, and 41 are based on admissible evidence.  See Exhibits Objection at 4.  The Plaintiffs aver that the Defendants have the burden to ensure that these fourteen demonstrative exhibits are based on admissible evidence and that the Defendants have not met this burden.  See Exhibits Objection at 4 (citing United States v. Irvin, 682 F.3d at

1262).  The Plaintiffs note that, at the June 29, 2017, hearing, the Court instructed the Defendants to "'mak[e] sure [their] demonstratives are going to contain information that you know is going to come in and the other side knows it's going to come in.'"  Exhibits Objection at 4 (quoting June 29 Tr. at 88:22-24 (Court)).  Of these fourteen demonstrative exhibits, the Defendants stated at the September 5, 2017, hearing that they intend to use Demonstrative Exhibit Nos. 9, 12, 13, 14, 15, 16, 23, and 24 in their opening statement.  See Sept. 5 Tr. at 15:24-16:1 (DeMuro).

The Defendants counter that their demonstrative exhibits "are based on admissible evidence" and "uncontested facts," and they are "designed to help the jury understand and evaluate complex evidence."  Exhibits Objection Response at 1 (citing United States v. Cmty. Health Sys., Inc., 2013 WL 10914292, at *5).  According to the Defendants, the Tenth Circuit has held that, in "'assessing foundation in this context, courts consider (among other things) whether the proffered demonstrative exhibit fairly and accurately summarize[s] previously admitted competent evidence.'"  Exhibits Objection Response at 3 (quoting Dahlberg v. MCT Transp., LLC, 571 F. App'x at 647)(alteration in Exhibits Objection Response and Dahlberg v. MCT Transportation, LLC)(internal quotation marks omitted).  The Defendants also argue that, for all but four of their demonstrative exhibits, they "provided detailed source information" the day before the Plaintiffs filed the Exhibits Objection.  Exhibits Objection Response at 3 (citing Sept. 1-2 Email Chain).  Moreover, the Defendants assert that their demonstrative exhibits "neither expand, nor supplement" their experts' reports, and that many of the Demonstrative Exhibits "depict diagrams of valuation formulas . . . that counsel could draw on a board during trial."  Exhibits Objection Response at 2.

The Court concludes that the Defendants' Demonstrative Exhibit Nos. 9, 12, 13, 14, 15, 16, 23, and 24 are based on admissible evidence.  The Tenth Circuit has long "recognized the value

of exhibits that summarize data contained in other exhibits and that present the evidence in a 'simpler form.'" Dahlberg v. MCT Transp., LLC, 571 F. App'x at 647 (quoting United States v. Downen, 496 F.2d 314, 321 (10th Cir. 1974)). Demonstrative exhibits "may be effective in illustrating relevant information to a jury, assuming a proper foundation is laid." Dahlberg v. MCT Transp., LLC, 571 F. App'x at 647 (citing Sanchez v. Denver & Rio Grande W. R.R., 538 F.2d 304, 306 (10th Cir. 1976)). For example, in Wilson v. United States, 350 F.2d 901 (10th Cir. 1965), the Tenth Circuit affirmed a district court's admission of charts as demonstrative evidence, because the "evidence was involved and complicated and . . . the charts fairly and accurately summarized previously admitted competent evidence." 350 F.2d at 907. For the reasons discussed below, the Court concludes that each of the Defendants' demonstrative exhibits to which the Plaintiffs object is based on admissible evidence, and fairly and accurately displays complicated information for the jury. At the April 27, 2017, the Court impressed upon the parties the need to "teach" the jury about methods for valuing TIR, Inc.'s shares. April 27 Tr. at 77:12 (Court). Thus, the Court will not exclude the Defendants' Demonstrative Exhibit Nos. 9, 12, 13, 14, 15, 16, 23, and 24.

Beginning with the Defendants' Demonstrative Exhibit No. 9, although the Plaintiffs argue that the exhibit is an "[a]ttempt[] to show that Plaintiffs' demands are unreasonable given prior sales of TIR company stock," the Court determines that the demonstrative exhibit is a chart of past sales in of TIR, Inc. shares in 2012-13 and that the Defendants have provided the exhibit's

information sources -- the Defendants' Trial Exhibits D29,[30] D37,[31] D222,[32] and D236,[33] and the Plaintiffs' Trial Exhibits P104 and P176[34] -- and, thus, the Court will not exclude the Defendants' Demonstrative Exhibit No. 9.   Plaintiffs' APPENDIX A -- Defendants' Responses Added in Column Titled "Basis for Allowing" at 2, filed September 3, 2017 (Doc. 389-1)("Demonstrative Exh. Chart").   Next, the Defendants' Demonstrative Exhibit No. 12 is a slide titled "What 'headwinds' did TIR face in Dec. 2013?," and it lists several financial issues that TIR, Inc. was facing at that time, such as growing debt and interest costs, uncertain financing, and shrinking profit margins.   The Plaintiffs assert that the demonstrative exhibit summarizes and supports the Defendants' expert Jason N. Wilcox' "opinions regarding TIR's operating margins," the Court concludes that the demonstrative exhibit is based on admissible evidence, including two of the Plaintiffs' trial exhibits.   Demonstrative Exh. Chart at 4.   The Defendants' Demonstrative Exhibit No. 12's information sources include the Defendants' Trial Exhibit D222, and the Plaintiffs' Trial

---

[30]The Defendants' Trial Exhibit D29 is an email, dated December 24, 2020, from Hillel Schechter to Ronda Lubin about Alan Stuart's purchase of 1.5 TIR, Inc. shares from Scott Dickman.

[31]The Defendants' Trial Exhibit D37 is an email, dated February 20, 2013, from Hillel Schechter to Ronda Lubin and Alan Stuart containing an attached letter from Hillel Schechter to J.W. Lorrett.

[32]The Defendants' Trial Exhibit D222 is an offer by Defendant Cypress Energy Partners-TIR, LLC to purchase TIR, Inc. shareholders' shares on October 31, 2013.

[33]The Defendants' Trial Exhibit D236 is a diagram displaying TIR, Inc.'s shareholders and ownership percentages on December 9, 2013.

[34]The Plaintiffs' Trial Exhibit P176 is a purchase agreement between Cypress Energy Partners-TIR, LLC, TIR, Inc., Cypress Energy Investments, LLC, Cypress Energy Holdings, LLC, Triangle Mezzanine Fund, LLLP, Triangle Capital Corporation, Fidus Mezzanine Capital, L.P., Salem Halifax Capital Partners, Limited Partnership, SPP Mezzanine Funding II-A, L.P., and SPP Mezzanine Funding II Holdings, LLC.

Exhibits P132 and P158.  Accordingly, the Court will not exclude the Defendants' Demonstrative Exhibit No. 12.  The Plaintiffs next argue that the Defendants' Demonstrative Exhibit No. 13 is an "[e]xplicit summary" of Wilcox' opinions.  Demonstrative Exh. Chart at 5.  The demonstrative exhibit lists side-by-side Wilcox' credentials and conclusions and the credentials and conclusions of the Plaintiffs' expert.  <u>See</u> Defendants' Demonstrative Exhibit No. 13.  This demonstrative exhibit does not expand upon Wilcox' expert opinion, and it graphically displays each party's expert's opinions in an easily digestible format for the jury.  Thus, the Court will not exclude the Defendants' Demonstrative Exhibit No. 13.

The Defendants' Demonstrative Exhibit No. 14 chronologically depicts the TIR, Inc. Board of Directors' process for finding buyers for the Board members' shares.  The Defendants' Demonstrative Exhibit No. 14 is based on the Defendants' Trial Exhibits D8,[35] D15,[36] D24,[37] D66,[38] and D288.[39]  The Plaintiffs argue that the Court should exclude this demonstrative exhibit, because it "supports Wilcox's opinion that Halifax 'won' the sales process with the 'best' offer and that such evidence is reflective of TIR's value."  Demonstrative Exh. Chart at 5 (quoting

---

[35]The Defendants' Trial Exhibit D8 is an email, dated October 2, 2012, from Lawrence Field, to Alan Stuart, Rod Reynolds, Trent Foley, Randall Lorett, and Doug Vaughn.

[36]The Defendants' Trial Exhibit D15 is the meeting minutes for a meeting of TIR, Inc.'s Board of Directors on November 12, 2012.

[37]The Defendants' Trial Exhibit D24 is a fax from Alan Stuart to Rod Reynolds containing a draft evaluation of TIR, Inc.'s deal with Halifax.

[38]The Defendants' Trial Exhibit D66 is an email, dated May 10, 2013, from Alana Stuart, to Nate Allen, containing an agenda for TIR, Inc.'s May 13, 2013, board meeting.

[39]The Defendants' Trial Exhibit D288 is Halifax' Letter of Intent ("LOI"), dated November 8, 2013, to purchase all of TIR, Inc.'s shares.

Defendants' Demonstrative Exhibit No. 14).  The Court concludes, however, that, just as past sales to sophisticated buyers provide evidence of fair value, see Order at 2, filed March 31, 2017 (Doc. 271)("March 31 Order"), sophisticated buyers' offers also provide relevant evidence of fair value that is not prejudicial to the Plaintiffs.  Accordingly, the Court will not exclude the Defendants' Demonstrative Exhibit No. 14.  The Defendants' Demonstrative Exhibit Nos. 15 and 16 continue the Demonstrative Exhibit No. 14's chronological narrative, and the Plaintiffs raise the same objection to their inclusion as they did to Demonstrative Exhibit No. 14's inclusion.  See Demonstrative Exh. Chart at 6.  Demonstrative Exhibit No. 15 is based on the Defendants' Trial Exhibits D48,[40] D66, D85,[41] and D135,[42] and Demonstrative Exhibit No. 16 is based on the Defendants' Trial Exhibits D134,[43] D156,[44] D236, D252,[45] and D254,[46] and the Plaintiffs' Trial Exhibits P115 and P176.  The Court concludes that both the Defendants' Demonstrative Exhibit

---

[40]The Defendants' Trial Exhibit D48 is a set of emails, dated April 5-8, 2013, between Peter C. Boylan III, Nate Allen, and Lawrence Field about TIR, Inc.'s Draft Term Sheet.

[41]The Defendants' Trial Exhibit D85 is the June 5, 2013, meeting minutes for TIR, Inc.'s Special Committee.

[42]The Defendants' Trial Exhibit D135 is a set of emails, dated July 2-3, 2013, between Anurag Agrawal and Vincent Signorello about replacing TIR, Inc.'s Board of Directors and about reviewing TIR, Inc.'s bylaws.

[43]The Defendants' Trial Exhibit D134 is a set of emails, dated July 2-3, 2013 between Anurag Agrawal, Doug Vaughn, Vincent Signorello, and Peter Buckley about majority shareholders needing 90% of shares to force a merger.

[44]The Defendants' Trial Exhibit D156 is the August 12, 2013, meeting minutes for TIR, Inc.'s Special Committee.

[45]The Defendants' Trial Exhibit D252 is a set of emails, dated December 18-21, 2013, between Anurag Agrawal and Nate Allen about procedures to submit stock certificates.

[46]The Defendants' Trial Exhibit D254 is a set of emails, dated December 31, 2013, between Doug Vaughn and Anurag Agrawal about accepting an offer to buy TIR, Inc. shares.

Nos. 15 and 16 break down the case's major events in an easily readable manner, and thus the Court will not exclude either demonstrative exhibit.

Finally, the Defendants' Demonstrative Exhibit Nos. 23 and 24 are slides explaining what discounted cash flow ("DCF") is and how investors use it to calculate a company's share value. Defendants' Demonstrative Exhibit Nos. 23 and 24. Whereas the Plaintiffs argue that both demonstrative exhibits "obviously summarize[] Wilcox' DCF methodology and must be excluded," the Defendants contend that the exhibits "illustrate the basis of discounted cash flow for the jury." Demonstrative Exh. Chart at 7. Neither demonstrative exhibits mentions Wilcox' name, however, and, because DCF is a common valuation method that the parties must explain to the jury, the Court will not exclude the Defendants' Demonstrative Exhibit Nos. 23 and 24.

## II.     THE COURT WILL NOT EXCLUDE THE DEFENDANTS' DEMONSTRATIVE EXHIBIT NOS. 1, 4, 5, 9, 10, 12, 13, 14, 15, 16, 23, AND 24, BECAUSE THESE DEMONSTRATIVE EXHIBITS WILL AID THE JURY'S ABILITY TO ORGANIZE AND DIGEST VOLUMINOUS INFORMATION.

The Plaintiffs also argue that the Court should exclude the Defendants' Demonstrative Exhibit Nos. 1, 2, 4, 5, 9, 10, 11, 12, 13, 14, 15, 16, 23, 24, 29, 30, 31, 32, 33, 36, 39, 40, 46, and 47, because they support opinion of the Defendants, and because the Defendants provided these exhibits too late. See Exhibits Objection at 2, 7. Of these twenty-four demonstrative exhibits, the Defendants state that they intend to use Demonstrative Exhibits Nos. 1, 4, 5, 9, 10, 12, 13, 14, 15, 16, 23, and 24 during their opening statement. See Sept. 5 Tr. at 15:24-16:1 (DeMuro). The Plaintiffs assert that the Defendants had until June 25, 2015, to submit a written report that includes any exhibits that summarize or support an expert opinion. See Exhibits Objection at 7. According to the Plaintiffs, the report that the Defendants submitted "does *not* include a vast number of exhibits that Defendants now wish to use at trial to both summarize and support those opinions."

Exhibits Objection at 7 (emphasis in original).  The Plaintiffs aver that the Defendants had until the pretrial disclosure deadline, May 9, 2016, to supplement their expert disclosures.  <u>See</u> Exhibits Objection at 8 (citing Amended Scheduling Order ¶ 9, at 1).  The Plaintiffs contend that the "Defendants' claim that the exhibits concern facts in the case is [] no basis to allow them." Exhibits Objection at 10.  The Plaintiffs also argue that the assertion that the demonstrative exhibits "are merely 'demonstrative aids' and not substantive evidence . . . lacks merit."  Exhibits Objection (quoting <u>Raley v. Hyundai Motor Co., Ltd.</u>, 2010 WL 545860, at *2).  The Plaintiffs state that, in <u>Raley v. Hyundai Motor Co., Ltd.</u>, Judge Heaton "held that it 'cannot accept a definition of supplementation which would essentially allow for unlimited bolstering of expert opinions.'" Exhibits Objection at 11 (quoting <u>Raley v. Hyundai Motor Co., Ltd.</u>, 2010 WL 545860, at *3).

The Defendants assert that their demonstrative exhibits are "intended to help the jury understand Defendants' expert opinions, not to change, expand or support these opinions." Exhibits Objection Response at 4 (bold, capitalization, and emphasis omitted).  The Defendants say that, "[b]y showing parts of the experts' fully disclosed analysis, the exhibits will help the jury understand the expert's trial testimony," which the Defendants argue "is precisely the purpose of demonstrative exhibits." Exhibits Objection Response at 5.  The Defendants note that, in <u>Dahlberg v. MCT Transportation, LLC</u>, the plaintiffs argued that their demonstrative exhibits were not subject to rule 26, because the exhibits clarified, and did not summarize or support, their experts' testimony.  <u>See</u> Objections Response at 6.  According to the Defendants, the "<u>Dahlberg</u> court found that argument implausible, since plaintiffs' stated aim in introducing the exhibits -- to make the expert's testimony clear -- could not help but support the testimony."  Objections Response at 6. The Defendants argue that, unlike in <u>Dahlberg v. MCT Transportation, LLC</u>, "[t]here is no dispute

. . . that the expert opinions have been fully disclosed.  The exhibits are squarely based on evidence long-ago discovered and fully disclosed to Plaintiffs."  Objections Response at 7.

The Court concludes that Demonstrative Exhibits Nos. 1, 4, 5, 9, 10, 12, 13, 14, 15, 16, 23, and 24 are based on admissible evidence that was properly and timely disclosed, and thus the Court will not exclude the demonstrative exhibits.  Rule 26(a)(1)(A) requires parties to make initial disclosures to the other parties, and rule 26(e) requires a party who has made a disclosure under rule 26(a) to supplement or correct its disclosure or response in a timely manner, or as ordered by the court, if it learns that the disclosure or response is incomplete or incorrect.  See Fed. R. Civ. P. 26(a)(1), (e).  Moreover, rule 26(a)(2) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence," and this "disclosure must be accompanied by a written report -- prepared and signed by the witness -- if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."  Fed. R. Civ. P. 26(a)(2).  Rule 26(a)(2)'s expert disclosure requirement's purpose is "'to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial.'"  Dahlberg v. MCT Transp., LLC, 571 F. App'x at 648 (quoting Cook v. Rockwell Int'l Corp., 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006)(Kane, J.)). Previously, the Court has concluded that an untimely disclosure prejudices an opposing party, that the prejudice is incurable, and that the untimely disclosure disrupts trial when the disclosure occurs close to trial, the party did not previously know of the information contained in the disclosure, and/or the opposing party does not have an opportunity to engage in further discovery or depositions.  See, e.g., Leon v. FedEx Ground Package Sys., Inc., 2016 WL 1158079, at *12-14; Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672502, at *4-5; Guidance

Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672373, at *12-14.  When a party has time to respond to the information in an untimely disclosure or expert report, or when the party already knew of the information, the Court is less likely to conclude that the party has been prejudiced, that the prejudice is incurable, or that the trial will be disrupted.  See, e.g., Coffey v. United States, 2012 WL 2175747, at *12-13;  Wheeler Peak, LLC v. L.C.I.2, Inc., 2010 WL 611141, at *3;  Gulfstream Worldwide Realty, Inc. v. Philips Elecs. N. Am. Corp., 2007 WL 4707080, at *4.

        In Dahlberg v. MCT Transportation, LLC, the Tenth Circuit affirmed the district court's admission of the plaintiff's demonstrative aids, because the Tenth Circuit held that the plaintiff's demonstrative aids not only summarized and supported the plaintiff's expert opinion, but also "convey[ed] [the expert's] undisclosed opinions."  571 F. App'x at 648.  The Tenth Circuit explained that rule 26(a)(2) excludes undisclosed expert opinion.  See Dahlberg v. MCT Transp., LLC, 571 F. App'x at 648.  The Tenth Circuit reasoned that "[t]he problem with allowing the undisclosed opinions, of course, is that Defendants had no notice that [the plaintiff's expert] would testify about the mechanics of the accident," which was the subject matter of the plaintiff's demonstrative aids.  571 F. App'x at 648.  In sum, although the plaintiff argued that her demonstrative aids merely made her expert's testimony "clear" for the jury, the Tenth Circuit concluded that the demonstrative aids' exclusion was proper under rule 26(a)(2), because the demonstrative aids conveyed undisclosed information that extended beyond the scope of the plaintiffs' expert report.  See Dahlberg v. MCT Transp., LLC, 571 F. App'x at 648.

        Here, the Defendants' demonstrative exhibits are not based on undisclosed expert opinion.  Each of the Defendants' demonstrative exhibits is based on admissible evidence, and the Defendants had already disclosed their export report for Wilcox, which provides an adequate basis for their demonstrative exhibits' admission.  Moreover, the Defendants' demonstrative exhibits do

not exceed the scope of Wilcox' designated expert opinions.  As the Court discusses above, the Defendants' Demonstrative Exhibit Nos. 9, 12, 13, 14, 15, 16, 23, and 24 are based on admissible trial exhibits.  The Court further concludes that each demonstrative exhibit conveys information that the Defendants previously have disclosed: (i) Demonstrative Exhibit No. 9 is a chart of past sales in of TIR, Inc. shares in 2012-13; (ii) Demonstrative Exhibit No. 12 is a slide titled "What 'headwinds' did TIR face in Dec. 2013?," and it lists several financial issues that TIR, Inc. was facing at that time, such as growing debt and interest costs, uncertain financing, and shrinking profit margins; (iii) Demonstrative Exhibit No. 13 lists side-by-side Wilcox' credentials and conclusions and the credentials and conclusions of the Plaintiffs' expert -- it does not expand upon Wilcox' previously disclosed expert opinion, and it graphically displays each party's expert's opinions in an easily digestible format for the jury; (iv) Demonstrative Exhibit No. 14 chronologically depicts the TIR, Inc. Board of Directors' process for finding buyers for the Board members' shares; (v) Demonstrative Exhibit Nos. 15 and 16 continue Demonstrative Exhibit No. 14's chronological narrative by breaking down the case's major events in an easily readable manner; and (vi) Demonstrative Exhibit Nos. 23 and 24 are slides explaining what DCF is and how investors use it to calculate a company's share value.

The Court also concludes that the Defendants' Demonstrative Exhibits No. 1, 4, and 5 are also based on admissible evidence already in the record.  Moreover, the demonstrative exhibits "will make this case less confusing to a jury" and do not exceed the scope of previously disclosed evidence, and, thus, the Court will not exclude them.  United States v. Cmty. Health Sys., Inc., 2013 WL 10914292, at *5.  The Defendants' Demonstrative Exhibit No. 1 is a slide containing a timeline of several Defendants' offers to buy the Plaintiffs' TIR, Inc. shares at steadily increasing prices.  The demonstrative exhibit's information sources include the Defendants' Trial Exhibits

D24, D42,[47] D48, D62,[48] D65,[49] D120,[50] and D121.[51]   At the September 5, 2017, hearing, the Plaintiffs said that the main issue with Demonstrative Exhibit No. 1 is whether the term "control premium" is a "fact that a fact witness can testify to."   Sept. 5 Tr. at 28:19-25 (Kagen).   The Plaintiffs argued that "[t]here is no such thing as a control premium as a fact," because it is an opinion.   Sept. 5 Tr. at 28:25-29:1 (Kagen).   The Plaintiffs contended that "control premium" is "an opinion on the amount of money a person would pay in premium [or] in excess to control [a] company."   Sept. 5 Tr. at 29:7-8 (Kagen).   The Plaintiffs argued that control premium opinions come from experts, and thus the Defendants' Demonstrative Exhibit No. 1 "is an expert exhibit." Sept. 5 Tr. at 30:11-12 (Kagen).

The Defendants noted that they spent "many hours . . . making sure that every fact that we put in [Demonstrative Exhibit No. 1] and every other demonstrative was right out of the record." Sept. 5 Tr. at 26:8-10 (DeMuro).   The Defendants argued that Demonstrative Exhibit No. 1 "has

---

[47]The Defendants' Trial Exhibit D42 is a presentation by A.L. Stuart Family Office Investments to TIR, Inc.'s Board of Directors, dated March 21, 2013.

[48]The Defendants' Trial Exhibit D62 is a presentation by A.L. Stuart Family Office Investments to TIR, Inc.'s Board of Directors, dated May 7, 2013.

[49]The Defendants' Trial Exhibit D65 is an email, dated May 10, 2013, from Dan O'Keefe, to Randall Lorett, Trent Foley, Lawrence Field, Rod Reynolds, Alan Stuart, and Doug Vaughn that includes presentation materials for TIR, Inc.'s board meeting on May 13, 2013.

[50]The Defendants' Trial Exhibit D120 is an email, dated June 25, 2013, from Nate Allen to Alan Stuart that includes an offer letter for TIR, Inc.'s shares from A.L. Stuart Family Office, LLC and A.L. Stuart Investments, LLC.

[51]The Defendants' Trial Exhibit D121 is an email, dated June 25, 2013, from Peter C. Boylan III, to Les Austin, Lawrence Field, J.W. Lorrett, S. Walton, and Amanda Lovelace including Cypress Energy Partners' confidential proposal to pooled shareholders to purchase TIR, Inc.'s shares.

nothing to do with" expert testimony and "is a summary of facts in the record."  Sept. 5 Tr. at 26:13-14 (DeMuro).  The Defendants argued that the exhibit will help the jury organize complicated information and that it is "proper," because it "is just a graphic presentation of key facts based on the plaintiffs' own words."  Sept. 5 Tr. at 27:17-19 (DeMuro).  At the conclusion of the hearing, the Court said that it would not exclude the Defendants' Demonstrative Exhibit No. 1, because rule 26 does not require that a demonstrative chart be excluded.  <u>See</u> Sept. 5 Tr. at 34:15-18 (Court).  The demonstrative exhibit is based on facts in the record, and thus the Court will not exclude the exhibit.

The Defendants' Demonstrative Exhibit No. 4 is a slide depicting TIR, Inc.'s primary shareholders and the proportion of TIR, Inc.'s shares that each shareholder owns.  Defendants' Demonstrative Exhibit No. 4.  The slide is titled "Who's Competing for Control?," and it states that the "Winner gets >50% of TIR," that is, control of the company.  Defendants' Demonstrative Exhibit No. 4.  The exhibit's information sources include the Defendants' Trial Exhibit D302[52] and the Plaintiffs' Trial Exhibit P92.  Defendants' Demonstrative Exhibit No. 5 is a slide depicting chronological events relevant to the case, such as offers to buy TIR, Inc.'s shares and the TIR, Inc. Board of Director's votes on such offers.  The exhibit's information sources include the Defendants' Trial Exhibits D15, D156, and D206,[53] and the Plaintiffs' Trial Exhibit P176.  The Plaintiffs argue that the Court should exclude the exhibits, because the exhibits support Wilcox' opinion that the appropriate valuation method for TIR, Inc.'s shares is the "prior sales of company

---

[52]The Defendants' Trial Exhibit D302 is a diagram displaying the cost of share purchases of TIR, Inc.'s shares from June 27, 2013, to October 31, 2013.

[53]The Defendants' Trial Exhibit D206 is Triangle Capital Corporation's Form 10-Q, dated September 30, 2013.

equity approach." Demonstrative Exh. Chart at 1.  The Court disagrees, however, because neither slide mentions this approach and, although the slides depict prior offers and sales of equity, the slides do not support that the valuation method of the Defendants' expert is most appropriate. Moreover, as the Court noted in the March 31 Order, past sales to sophisticated buyers provide strong evidence of fair value, see March 31 Order at 2, and, furthermore, sophisticated buyers' credible offers also provide relevant evidence of fair value.  The information depicted by the Defendants is thus based on evidence already in the record and that this information is not prejudicial to the Plaintiffs.   Accordingly, the Court will not exclude the Defendants' Demonstrative Exhibit Nos. 4 and 5.

The Plaintiffs raise generalized objections that the Defendants' demonstrative exhibits are misleading and not based on admissible evidence, but the Plaintiffs do not object specifically to the evidence upon which each of the Defendants' demonstrative exhibits is based.  The Plaintiffs argued at the hearing that, under United States v. Irvin, the Defendants cannot put on evidence in the form of a demonstrative aid if the aid is misleading, inaccurate, or based on inadmissible evidence.  See Sept. 5 Tr. at 31:23-32:8 (Kagen).  In United States v. Irvin, the Tenth Circuit ruled that the United States failed to establish that its exhibit summarized files that met the business records exception and thus did not constitute hearsay.  See 682 F.3d at 1262.  Unlike here, the United States' exhibits in United States v. Irvin were not based on evidence that was admissible and already in the record.  See United States v. Irvin, 682 F.3d at 1262 (rejecting the United States' argument that its exhibit was a "hybrid summary chart" that summarized files which the business record exception did not cover and which did not contain admissible witness testimony).  The Plaintiffs have not objected to the evidence upon which the Defendants' demonstrative exhibits

are based, and the Court concludes that the Defendants' demonstrative exhibits are based on admissible evidence.  Thus, the Court will not exclude the Defendants' demonstrative exhibits.

III.    **THE COURT WILL NOT EXCLUDE THE DEFENDANTS' DEMONSTRATIVE EXHIBIT NOS. 25 AND 26, BECAUSE NEITHER DEMONSTRATIVE EXHIBIT SUMMARIZES UNDISCLOSED, INADMISSIBLE INFORMATION, AND BOTH DEMONSTRATIVE EXHBIBITS WILL AID THE JURY'S ABILITY TO ORGANIZE AND DIGEST VOLUMINOUS INFORMATION.**

Last, the Plaintiffs argue that the Court should exclude Demonstrative Exhibit Nos. 25 and 26, because "they purport to summarize undisclosed, inadmissible evidence."  Exhibits Objection at 12.  The Plaintiffs argue that both Demonstrative Exhibit Nos. 25 and 26 are graphs "based on undisclosed data never produced in this action."  Exhibits Objection at 12.  According to the Plaintiffs, rule 1006 bars the use of both demonstrative exhibits.  See Exhibits Objection at 13. The Plaintiffs aver that they "cannot agree that this evidence is correct when they have never seen the underlying data, and thus had no opportunity to inspect it, and challenge or explain it (or have an expert do so)."  Exhibits Objection at 13.  In response, the Defendants request that the Court delay ruling on the Plaintiffs' objections to Demonstrative Exhibit Nos. 25 and 26 "until the time of Boylan's testimony."  Objections Response at 7.  The Defendants note that these two exhibits relate to the subject matter of Boylan's testimony.  See Objections Response at 7.  The Defendants argue that "[c]ourts frequently defer ruling on evidence until the issue concerning the particular exhibit is fleshed out at trial."  Objections Response at 7 (citing Sheedy v. BSB Props., 2016 WL 6902542, at *2; Innovation Toys, LLC v. MGA Entm't, Inc., 2012 WL 5398476, at *9; Klatch-Maynard v. Sugarloaf Twp., 2011 WL 3476814, at *2; United States v. Chhoun, 2007 WL 4562901, at *4).

The Court concludes that the Defendants' Demonstrative Exhibit Nos. 25 and 26 do not violate rule 1006, because they are based on admissible evidence.  Rule 1006 states:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006.  Demonstrative Exhibit No. 25 is a graph comparing changes in TIR, Inc.'s earnings before interest, taxes, depreciation, and amortization ("EBITDA") to changes in the price per barrel of crude oil between 2006 to 2013.  The graph's information sources include TIR, Inc. and the United States Energy Information Administration ("EIA"), which is a federal agency that "collects, analyzes, and disseminates independent and impartial energy information to promote sound policymaking, efficient markets, and public understanding of energy and its interaction with the economy and the environment."   About EIA, U.S. Energy Information Administration, https://www.eia.gov/about/ (last visited May 29, 2020).  Demonstrative Exhibit No. 26 is a graph comparing changes in TIR, Inc.'s EBITDA to changes in the number of oil and gas rigs that operated in the world between 2006 to 2013.  The graph's information sources include TIR, Inc. and Baker Hughes, which is an oil and gas company.  See About us, Baker Hughes, https://www.bakerhughes.com/company/about-us (last visited May 29, 2020).

The Court concludes that both demonstrative exhibits are based on admissible evidence and do not misstate the facts.  The changes in TIR, Inc.'s EBITDA are admissible, and, although the Plaintiffs argue that they "cannot agree that this evidence is correct when they have never seen the underlying data, and thus had no opportunity to inspect it," Exhibits Objection at 13, the data that the demonstrative exhibits summarize are readily available on the EIA's website and Baker Hughes' website.  The Court notes that the "materials upon which [a] summary is based need not themselves be admitted into evidence." United States v. Samaniego, 187 F.2d at 1223.  The Court

concludes that both demonstrative exhibits display "the content of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. Admitting these demonstrative exhibits will aid the jury in comprehending complex information in a clear and concise format, and the Plaintiffs will have the opportunity at trial to challenge the demonstrative exhibits' accuracy and the underlying data. Accordingly, the Court will admit the Defendants' Demonstrative Exhibit Nos. 25 and 26.

**IT IS ORDERED** that: (i) the Defendants' Motion to Strike Plaintiffs' Contentions in Proposed Pretrial Order Relating to Disgorgement and Punitive Damages, filed July 19, 2017 (Doc. 307), is denied; (ii) the Plaintiffs' Objection to the Introduction of Testimony or Evidence from Defendants' Undisclosed Proferred [sic] Expert, Stout Risius Ross, filed August 22, 2017 (Doc. 363), is overruled; and (iii) the Plaintiffs' Objection to Defendants' Attempted Use of Demonstrative Exhibits without Foundation, filed September 2, 2017 (Doc. 387), is overruled.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Jamison A. Diehl
Akin Gump Strauss Hauer & Feld LLP
New York, New York

-- and --

Stratton Taylor
Toney D. Foster
Mark H. Ramsey
Clinton Russell
Jacob R. Daniel
The Law Firm of Taylor, Foster, Mallett, Downs, Ramsey, & Russell
Claremore, Oklahoma

-- and --

Stuart Kagen
Joshua C. Gillette
Daniel A. Cohen
Kyla Janine Grant
Joel M. Taylor
Kagen & Caspersen
New York, New York

      *Attorneys for the Plaintiffs*

Frederic Dorwart
Paul DeMuro
Sarah Poston
Nora Rose O'Neill
John D. Clayman
Fredric Dorwart, Lawyers PLLC
Tulsa, Oklahoma

      *Attorneys for the Defendants*